# EXHIBIT B

1   JACOB M. HEATH (STATE BAR NO. 238959)
    jheath@orrick.com
2   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
3   Menlo Park, CA  94025-1015
    Telephone:     +1 650 614 7400
4   Facsimile:     +1 650 614 7401

5   Attorneys for Defendant
    FACEBOOK, INC.
6

Electronically
**FILED**
By Superior Court of California, County of San Mateo
ON       05/05/2022
By    /s/  Jimenez, Vanessa
         **Deputy Clerk**

Electronically
**RECEIVED**
4/26/2022

CLERK OF THE SUPERIOR COURT
SAN MATEO COUNTY

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                              COUNTY OF SAN MATEO

10

11   DR. ANDREW FORREST, an individual,          Case No. 21-CIV-05055

12                   Plaintiff,                   **[PROPOSED] ORDER SUSTAINING**
                                                  **DEFENDANT FACEBOOK INC's**
13          v.                                    **DEMURRER**

14   FACEBOOK, INC., a Delaware Corporation,      Hearing Date:    April 22, 2022
     and DOES 1 through 20, inclusive,            Time:            9am
15                                                Dept:            Department 21
                     Defendant.                   Judge:           Robert D. Foiles
16                                                Trial Date:      None Set
                                                  Date Action Filed: September 17, 2021
17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] ORDER**

On April 22, 2022, the Court heard oral argument on Defendant Facebook, Inc.'s ("Facebook") demurrer ("Demurrer") to Plaintiff Dr. Andrew Forrest's First Amended Complaint ("FAC").  After hearing and considering the parties' positions as to the Demurrer, the Court adopted its April 21, 2022 tentative ruling ("Tentative Ruling") sustaining the Demurrer with prejudice as to the Fifth Cause of Action of Plaintiff's FAC and without prejudice as to First through Fourth Causes of Action of the FAC.

The Court granted Plaintiff until June 3, 2022 to file and serve a Second Amended Complaint with respect to the First through Fourth Causes of Action.  The Tentative Ruling, attached to this order as **Exhibit A**, is otherwise adopted.

**IT IS ORDERED.**

Electronically
**SIGNED**
By /s/ Foiles, Robert
05/04/2022

Dated _____, 2022

_____
HON. ROBERT D. FOILES
JUDGE OF THE SUPERIOR COURT

[PROPOSED] ORDER SUSTAINING DEFENDANT FACEBOOK INC.'S DEMURRER

# EXHIBIT A

9:00
LINE: 6

21-CIV-05055   DR. ANDREW FORREST VS. FACEBOOK, INC.


DR. ANDREW FORREST                      BRIAN E. KLEIN
FACEBOOK, INC.                          JACOB M. HEATH

HEARING ON DEMURRER TO PLAINTIFF'S AMENDED COMPLAINT BY DEFENDANT
FACEBOOK, INC.
**TENTATIVE RULING:**

**Demurrer based on Communications Decency Act**

Demurrer to the entire complaint based on the Communications Decency
Act ("CDA") is sustained as to the first, second, third, fourth, and
fifth causes of action. (47 U.S.C. § 230, subd. (c)(1).)

In *Force v. Facebook*, the plaintiffs were survivors of persons who
were killed in Israel by members of Hamas. The plaintiffs alleged that
Facebook was liable for "giving Hamas a forum with which to
communicate and for actively bringing Hamas' message to interested
parties." Like Plaintiff Forrest, the plaintiffs in *Force* alleged that
Facebook "does not act as a publisher," because "it uses algorithms to
suggest content to users, resulting in 'matchmaking.'" The Court of
Appeal held that using "matchmaking" algorithms to direct content to
readers is a function of a publisher. "[A]rranging and distributing
third-party information inherently forms 'connections' and 'matches'
among speakers, content, and viewers of content, whether in
interactive internet forums or in more traditional media. That is an
essential result of publishing." (*Force v. Facebook, Inc*. (2d Cir.
2019) 934 F.3d 53, 66.)

Like a publisher, Facebook decided "where . . . particular third-party
content should reside and to whom it should be shown. . . ., [and]
what type and format of third-party content they will display." (*Force
v. Facebook, Inc*. (2d Cir. 2019) 934 F.3d 53, 66-67.)

> Facebook's algorithms might cause more such
> "matches" than other editorial decisions. But that
> is not a basis to exclude the use of algorithms
> from the scope of what it means to be a
> "publisher" under Section 230(c)(1). The matches
> also might . . . present users with targeted
> content of even more interest to them . . . . But
> it would turn Section 230(c)(1) upside down to
> hold that Congress intended that when publishers
> of third-party content become especially adept at

performing the functions of publishers, they are
no longer immunized from civil liability.

(Id.)

The *Force* case involved algorithms that directed content to readers
who might be more interested in the content ("matchmaking") Plaintiff
Forrest's complaint repeatedly describes Facebook's acts as "curating
the user experience." Without defining "curating," Plaintiff alleges
that Facebook is doing exactly what it was doing in the *Force* case:
using algorithms to direct content to a subset of users based on those
users' interests and demographics ("data points" (see FAC ¶¶ 3-4, 11,
53, 57, 71.)

As in *Force*, Forrest's claims are based on Facebook's using automation
to determine where certain ads are seen and by whom. Facebook is being
sued for its role as a publisher of ads. Therefore, Section 230(c)(1)
immunizes Facebook from liability for all claims arising from
Facebook's role as a publisher.

Demurrers to the first, second, third, fourth, and fifth claims are be
sustained because each of those claims is based on allegations that
Facebook committed acts in the role of a publisher, which Section
230(c)(1) precludes.

**Additional Grounds for Sustaining Demurrer**

In addition to immunity under the CDA, demurrer to the Second, Fourth,
and Fifth causes of action is sustained for the following reasons.

Demurrer to the Second Cause of Action is sustained because
"substantial assistance" may occur only when the Defendant's "own
conduct, separately considered, constitutes a breach of duty to the
third person." (*Saunders v. Super. Ct.* (1994) 27 Cal. App.4th 832,
846.) "It is essential that the defendant's own conduct was tortious.
The particular defendant who is to be charged with responsibility must
have proceeded tortiously - i.e., with intent to commit a tort or with
negligence." (*Coffman v. Kennedy* (1977) 74 Cal. App. 3d 28, 32.) The
FAC does not allege any acts by Facebook that are independently
tortious.

Demurrer to the Fourth Cause of Action is sustained because a duty to
warn does not exist absent a special relationship between Facebook and
Plaintiff. (*Tarasoff v. Regents of Univ. of Cal.* (1976) 17 Cal. 3d
425, 435.) Plaintiff Forrest argues that a special relationship is
required only when "nonfeasance" causes harm, whereas Plaintiff
alleges "misfeasance." (Opp. at 12-13.) The alleged misfeasance,
however, consists of acts of a publisher, which are immunized by the
CDA.

Demurrer to the Fifth Cause of Action is sustained without leave to amend because Negligent design is a products liability concept. (See Opp. at 12:16-18.) Plaintiff cites no authority holding that the legal theory of products liability, including duty of care, extends to interactive computer services.

**Terms of Service and Statute of Limitations Arguments Lack Merit.**

1.    Demurrer based on Terms of Service lacks merit. The Terms of Service document provides that the Terms govern "your" use of Facebook.  (Mov. RJN, Ex. A, at p.1.) The claims in the FAC are not based on Plaintiff's use of Facebook; they are based on Facebook's conduct. Therefore, the Terms of Service do not apply to Forrest's claims. The claims asserted by Forrest  could be asserted by a person who never used Facebook, but suffered the same harm. It is unreasonable to hold that the Terms of Service are a defense against a Facebook user, but not against a non-Facebook user who has suffered the same harm.

2.    Demurrer based on statute of limitations lacks merit. The demurrer is based on the allegation that Forrest knew of his claims "on or about late March 2019." (Mov. at 20:10.) When a Complaint alleges that a cause of action accrued "on or about" a specific date, a statute-of-limitations argument does not support demurrer. (*Childs v. State of California* (1983) 144 Cal. App. 3d 155, 159-60.) Further, Judicial Council Emergency Rule 9.12 extends the limitations period for six months. Even if "on or about late March 2019" could be an operative date of accrual, the six-month tolling extends the limitations period to some unspecified date in September 2021. The demurrer does not establish that the common law claims are time-barred as a matter of law.

**Ruling**

Demurrer is sustained as to all causes of action. Plaintiff is granted leave of court to file and serve a Second Amended Complaint addressing the above defects, except for the Fifth Cause of action for which leave is not granted, no later than May 20, 2022.

If the tentative ruling is uncontested, it shall become the order of the Court. Thereafter, counsel for Defendant Facebook, Inc.  shall prepare a written order consistent with the Court's ruling for the Court's signature, pursuant to California Rules of Court, Rule 3.1312, and provide written notice of the ruling to all parties who have appeared in the action, as required by law and the California Rules of Court.