JACOB M. HEATH (STATE BAR NO. 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

DANIEL S. GUERRA (STATE BAR NO. 267559)
dguerra@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105-2669
Telephone:  +1 415 773 5700
Facsimile:  +1 415 773 5759

Attorneys for Defendant,
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DR. ANDREW FORREST,<br><br>               Plaintiff,<br><br>     v.<br><br>FACEBOOK, INC., A DELAWARE CORPORATION,<br><br>               Defendant. | Case No. 5:22-cv-03699-EJD<br><br>**CORRECTED DEFENDANT FACEBOOK INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:    January 19, 2023<br>Time:    9:00 a.m.<br>Judge:  Hon. Edward J. Davila<br>Courtroom 4 – 5th Floor<br><br><br>Trial Date:  None Set |

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................................2

II.     BACKGROUND ..................................................................................................................3

III.    LEGAL STANDARD...........................................................................................................4

IV.     ARGUMENT.......................................................................................................................5

      A.      Despite a Spate of New Conclusory Allegations, Section 230 of the Communications Decency Act Bars All Of Plaintiff's Claims ...............................5

            1.      Section 230 applies in this case. ..................................................................5

            2.      Facebook is an interactive computer service provider.................................7

            3.      The purported advertisements at issue were "provided by another information content provider," not Facebook..............................................8

            4.      All of Plaintiff's claims seek to treat Facebook as the scam's "publisher". ..............................................................................................11

      B.      Plaintiff Fails To State Any Viable Claim For Relief ...........................................14

            1.      Misappropriation of name and likeness ......................................................14

            2.      Aiding and abetting fraud ..........................................................................15

             3.      Unfair Competition Law............................................................................17

             4.      Negligent failure to warn ...........................................................................18

             5.      Lanham Act................................................................................................19

             6.      Unjust Enrichment .....................................................................................21

      C.      Plaintiff Should Not Be Granted Further Leave To Amend...................................22

V.      CONCLUSION..................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Crash over the Taiwan Strait on May 25, 2002*,
   331 F. Supp. 2d 1176 (C.D. Cal. 2004) ...............................................................................7

*Al-Ahmed v. Twitter, Inc.*,
   No. 21-CV-8017, 2022 WL 1605673 (N.D. Cal. May 20, 2022)...........................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................................4, 5

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ...............................................................................................21

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ..............................................................................................11

*Brittain v. Twitter, Inc.*,
   No. 19-CV-114, 2019 WL 2423375 (N.D. Cal. June 10, 2019)............................................22

*Brown v. Wells Fargo Bank, N.A.*,
   No. 19-CV-260, 2019 WL 3318551 (E.D. Cal. July 24, 2019).............................................22

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ...................................................................................................17, 18

*Chen v. PayPal, Inc.*,
   61 Cal. App. 5th 559 (2021) .................................................................................................16

*Children's Health Def. v. Facebook Inc.*,
   546 F. Supp. 3d 909 (N.D. Cal. 2021) ..................................................................................20

*Coffman v. Kennedy*,
   74 Cal. App. 3d 28 (1977) ....................................................................................................16

*Cross v. Facebook, Inc.*,
   14 Cal. App. 5th 190 (2017) ...................................................................................12, 14, 15

*Delgado v. Trax Bar & Grill*,
   36 Cal. 4th 224 (2005) .........................................................................................................18

*Diaz v. Intuit, Inc.*,
   No. 5:15-cv-01778, 2018 WL 2215790 (N.D. Cal. May 15, 2018).......................................17

*Doe v. Reddit, Inc.*,
   No. 21-CV-768, 2021 WL 5860904 (C.D. Cal. Oct. 7, 2021)................................8, 10, 11, 13

ii

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ..................................................................................7, 9, 18, 19

*Ebeid v. Facebook, Inc.*,
   No. 18-cv-07030, 2019 WL 2059662 (N.D. Cal. May 9, 2019)................................................7

*Enigma Software Grp USA, LLC v. Malwarebytes, Inc.*,
   946 F.3d 1040 (9th Cir. 2019) ...............................................................................................13

*In re Facebook, Inc.*,
   625 S.W.3d 80 (Tex. 2021)....................................................................................................13

*Fair Hous. Council of San Fernando Valley v. Roommates.com LLC*,
   521 F.3d 1157 (9th Cir. 2008) ..........................................................................................9, 11

*Fed. Agency of News LLC v. Facebook, Inc.*,
   432 F. Supp. 3d 1107 (N.D. Cal. 2020) ...................................................................................7

*Fields v. Twitter, Inc.*,
   200 F. Supp. 3d 964 (N.D. Cal. 2016) ....................................................................................5

*Fields v. Twitter, Inc.*,
   217 F. Supp. 3d 1116 (N.D. Cal. 2016) .................................................................................12

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
   778 F.3d 1059 (9th Cir. 2015) ...............................................................................................19

*Fiol v. Doellstedt*,
   50 Cal. App. 4th 1318 (1996) ................................................................................................16

*Force v. Facebook, Inc.*,
   304 F. Supp. 3d 315 (E.D.N.Y. 2018) .....................................................................................6

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019)......................................................................................................9

*Fyk v. Facebook, Inc.*,
   808 F. App'x 597 (9th Cir. 2020) ..........................................................................................11

*Gentry v. eBay, Inc.*,
   99 Cal. App. 4th 816 (2002) .........................................................................................5, 12, 13

*Goddard v. Google, Inc.*,
   640 F. Supp. 2d 1193 (N.D. Cal. 2009) ........................................................................9, 10, 11

*Goddard v. Google, Inc.*,
   No. 08-CV-2738, 2008 WL 5245490 (N.D. Cal. Dec. 17, 2008)............................................11

*Gonzalez v. Google LLC*,
   2 F.4th 871 (9th Cir. 2021) ............................................................................................ *passim*

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) .................................................................................18

*Herrick v. Grindr, LLC*,
   306 F. Supp. 3d 579 (S.D.N.Y. 2018)....................................................................................12

*Howard v. Superior Court*,
   2 Cal. App. 4th 745 (1992) ....................................................................................................16

*Joude v. WordPress Found.*,
   No. 14-CV-1656, 2014 WL 3107441 (N.D. Cal. July 3, 2014)..............................................12

*Kashani v. Tsann Kuen China Enterprise Co.*,
   118 Cal. App. 4th 531 (2004) ..................................................................................................7

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) .................................................................................................9

*King v. Facebook, Inc.*,
   No. 21-CV-4573, 2021 WL 5279823 (N.D. Cal. Nov. 12, 2021) ...........................................22

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014) .............................................................................................19

*Ladd v. Cnty. of San Mateo*,
   12 Cal. 4th 913 (1996) ...........................................................................................................18

*Leadsinger, Inc. v. BMG Music Publ'g*,
   512 F.3d 522 (9th Cir. 2008) .................................................................................................22

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ...................................................................................................5

*Long v. Dorset*,
   854 F. App'x 861 (9th Cir. 2021) ...........................................................................................12

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ...............................................................................................22

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) .................................................................................................18

*Maxwell v. Dolezal*,
   231 Cal. App. 4th 93 (2014) ..................................................................................................14

*Mazur v. eBay Inc.*,
   No. 07-CV-3967, 2008 WL 618988 (N.D. Cal. Mar. 3, 2008)...............................................10

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) .................................................................................................4

*Miller v. Yokohama Tire Corp.*,
   358 F.3d 616 (9th Cir. 2004) ...................................................................................22

*Morton v. Twitter, Inc.*,
   No. 20-CV-10434, 2021 WL 1181753 (C.D. Cal. Feb. 19, 2021) ...................................13, 14

*Palomino v. Facebook, Inc.*,
   No. 16-CV-4230, 2017 WL 76901 (N.D. Cal. Jan. 9, 2017).......................................................7

*Perfect 10, Inc. v. CCBill LLC*,
   481 F.3d 751 (9th Cir. 2007) ...................................................................................................5

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ...................................................................................5, 12, 13

*Perfect 10, Inc. v. Google, Inc.*,
   No. CV 04-9484, 2010 WL 9479060 (C.D. Cal. July 30, 2010) ...............................................15

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ...................................................................................................15

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583 (2008) ...............................................................................................21

*Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*,
   No 17-CV-12007, 2021 WL 2188138 (E.D. May 28, Cal. 2021) ...........................................21

*Schulz v. Neovi Data Corp.*,
   152 Cal. App. 4th 86 (2007) ...................................................................................................16

*Shaeffer v. Califia Farms, LLC*,
   44 Cal. App. 5th 1125 (2020) ...............................................................................................17

*Sikhs for Just. "SFJ," Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015) ...................................................................................7

*Tarasoff v. Regents of Univ. of Cal.*,
   17 Cal. 3d 425 (1976) ...............................................................................................................18

*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001).......................................................................................................................6

*United States v. Little Lake Misere Land Co.*,
   412 U.S. 580 (1973).....................................................................................................................6

*In re Vortex Fishing Sys. Inc.*,
   277 F.3d 1057 (9th Cir. 2002) ...................................................................................................7

*Warner v. Tinder Inc.*,
   105 F. Supp. 3d 1083 (C.D. Cal. 2015) ...............................................................................17

*Williams v. Facebook, Inc.*,
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) ...................................................................................7

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ...............................................................................................10

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
    525 F. Supp. 3d 1017 (N.D. Cal. 2021) ................................................................................19

**Statutes**

15 U.S.C. § 1125(a) ................................................................................................... *passim*

47 U.S.C. § 230(c) ...........................................................................................5, 8, 11, 22

47 U.S.C. § 230(e) ...................................................................................................6, 13

47 U.S.C. § 230(f)(2) ....................................................................................................7

Cal. Civ. Code § 1798.140........................................................................................18

California's Unfair Competition Law, Bus. & Prof. Code § 17200 ..................................... *passim*

**Other Authorities**

Restatement (Second) of Conflict of Laws................................................................................6, 7

CORRECTED DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS
Case No. 5:22-cv-03699-EJD

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on January 19, 2023, at 9:00 a.m., or as soon thereafter as may be heard, in Courtroom 4 on the 5th Floor of the above-captioned Court, Defendant Facebook, Inc., will and hereby does move to dismiss Plaintiff's Second Amended Complaint, Notice of Removal Ex. C, ECF No. 1-2.  Facebook seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing with prejudice all of Plaintiff's claims in their entirety.

### STATEMENT OF ISSUES TO BE DECIDED

1. Whether Section 230 bars Plaintiff Andrew Forrest's claims against Facebook, Inc., all of which are premised on allegedly harmful scam ads created by third-party fraudsters on Facebook's self-service advertising platform.

2.  Whether Plaintiff has alleged facts sufficient to support his claims for (1) misappropriation-of-likeness, (2) aiding and abetting fraud, (3) violations of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200; (4) negligent failure-to-warn; (5) violations of the Lanham Act, 15 U.S.C. § 1125(a); and (6) unjust enrichment.

CORRECTED DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS
Case No. 5:22-cv-03699-EJD

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Andrew Forrest's claims against Facebook, Inc. ("Facebook")[1] have already failed once.  When dismissing Plaintiff's First Amended Complaint ("FAC"), the San Mateo County Superior Court recognized that Plaintiff's claims arose from Facebook's purported distribution of scam ads created by *third-party fraudsters* that purportedly use Plaintiff's name and likeness to promote an investment scheme.  Accordingly, the court concluded that Section 230 of the Communications Decency Act—which prohibits liability based on a website's publication, distribution (algorithmic or otherwise), and/or removal of third-party content—barred Plaintiff's claims. 47 U.S.C. § 230 *et seq*.  Now on his *third* attempt to plead a viable claim, Plaintiff's Second Amended Complaint ("SAC") tries to plead around Section 230's protection.  As established herein, none of his new allegations overcome the defects of his prior complaints.

*First,* Plaintiff's assertion that Australian law should somehow apply to a lawsuit that Plaintiff filed in the United States against a U.S.-based company borders on frivolous.  This is a clear attempt to bypass Section 230 altogether, which must fail.  There is no legal basis for applying Australian law here, especially given that Plaintiff is seeking affirmative relief under U.S. law—*i.e.*, the Lanham Act.

*Second,* because Section 230 applies here, it continues to bar Plaintiff's claims, which seek to hold Facebook liable for third-party content.  Plaintiff's allegations that Facebook acted as a "digital advertising agency," purportedly making Facebook a "co-developer" of the ads shown on its platform, does not overcome Section 230's preclusive effect.  In fact, courts across the country have recognized that organizing, recommending, and amplifying third-party content is *not* the same as creating it, and that challenging the targeting of content inherently treats a defendant as a publisher or speaker.  Section 230, therefore, continues to bar Plaintiff's lawsuit in its entirety.

*Third,* Plaintiff's lawsuit independently fails because the SAC does not allege facts

---

[1] On October 28, 2021, Facebook, Inc. changed its name to Meta Platforms, Inc.  Because Plaintiff's Second Amended Complaint refers to Meta as "Facebook," for ease of reference this motion does likewise.

sufficient to state any of his claims, which include (1) misappropriation-of-likeness, (2) aiding and abetting fraud, (3) violations of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200; (4) negligent failure-to-warn; (5) violations of the Lanham Act, 15 U.S.C. § 1125(a); and (6) unjust enrichment.  Accordingly, this Court should dismiss the SAC, with prejudice.

## II.     BACKGROUND

Defendant Facebook operates the Facebook social-networking platform, which enables users to view, promote, and share content on their Facebook profiles.  SAC ¶ 11  The Facebook platform also enables advertisers to create ads which, for a fee, Facebook displays to users as they navigate the platform.  *Id.* ¶¶ 12, 14.  Plaintiff purports to be a "prominent Australian businessman and philanthropist."  SAC ¶¶ 32-45.

At the crux of Plaintiff's case are allegations that third-party fraudsters (which the SAC calls "The Syndicate") operate an investment scam in which they "doctor" Plaintiff's likeness, quotations, and interview footage to create ads that "appear as though Dr. Forrest is sponsoring a particular investment 'opportunity' or … promoting a particular product."  *Id.* ¶¶ 50, 46-51. These third-party fraudsters allegedly use Facebook's targeted advertising tools, specifically the Self-Service Ads Platform, to create and distribute the ads across the Facebook platform and thereby coerce other Facebook users into giving them money.  *Id.* ¶¶ 48, 54-68.  Since Plaintiff first learned of the scam ads in March 2019, he says he has spent significant time and money "monitoring Facebook's platform," reporting scam ads to Facebook, and "demand[ing]" that "Facebook dedicate its enormous and sophisticated machine and human resources to prevent any further dissemination of such ads." *Id.* ¶¶ 52, 71-77.  He alleges that Facebook has "fail[ed] to stop" the third-party fraudsters.  *Id.* ¶¶ 77-79.

In September 2021, Plaintiff filed this lawsuit in San Mateo County Superior Court.  He amended the complaint in November 2021, asserting claims for common law misappropriation-of-likeness, aiding and abetting fraud, negligent failure-to-warn, and negligent design, as well as violations of California's UCL.  Facebook demurred and in April 2022, the state court sustained Facebook's demurrer to the FAC on multiple grounds.  *See* Notice of Removal Ex. B, ECF No. 1-

3

2 at 3 (hereinafter "Order").  The court first recognized that all of Plaintiff's claims were barred by Section 230, which "immunizes Facebook from liability … arising from Facebook's role as a publisher." *Id.* at 6.  In so holding, the court rejected Plaintiff's argument that Facebook's *targeting* of scam ads to susceptible users made Section 230 inapplicable; "[D]etermin[ing] where certain ads are seen and by whom," the court observed, is a key, protected publisher function.  *See id.*  The court further held that, even independent of Section 230, Plaintiff failed to state claims for aiding and abetting fraud (liability does not exist because Facebook's actions are not independently tortious), negligent failure-to-warn (there is no duty to warn absent a "special relationship" between Facebook and Plaintiff), and negligent design (the legal theory of products liability does not apply to interactive computer services).  *See id.* at 6-7.  The court therefore dismissed all claims and the negligent design claim with prejudice.

On June 17, 2022, Plaintiff filed his SAC, alleging (1) misappropriation-of-likeness, (2) aiding and abetting fraud, (3) violations of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200; (4) negligent failure-to-warn; (5) violations of the Lanham Act, 15 U.S.C. § 1125(a); and (6) unjust enrichment.

The SAC adds supposed details about Facebook's advertising tools and now repeatedly refers to Facebook as the "co-developer" of the scam ads.  *E.g. id.* ¶¶103-135.  But, as before, Plaintiff cannot allege that Facebook came up with the scheme, wrote any ad copy, or created any "doctored" image of Plaintiff.  *See id.* ¶¶110-112 (acknowledging that the advertiser, not Facebook, "submits … the content of [the] ad," including "the headline and text," the "images or videos," and "a traffic destination to send the user to if they click.").  Nor does he allege that Facebook has any relationship or communication with the third-party fraudsters.  He merely alleges that "the Syndicate" used Facebook's targeted advertising tools—the same ones available to all other advertisers—to create and distribute scam ads.  *See id.* ¶¶ 53-54, 83, 87.

### III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Dismissal is appropriate "where the complaint lacks a

4

cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  In conducting a Rule 12(b)(6) analysis, the court may consider the complaint, material relied upon in the complaint, and material subject to judicial notice.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).  The court must generally accept "well-pleaded factual allegations" as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678-79 (citation omitted).

## IV.    ARGUMENT

### A.    Despite a Spate of New Conclusory Allegations, Section 230 of the Communications Decency Act Bars All Of Plaintiff's Claims

Section 230 "establish[es] broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 481 F.3d 751, 767 (9th Cir. 2007) (internal quotations and citations omitted), opinion amended and superseded on denial of reh'g, 488 F.3d 1102 (9th Cir. 2007); accord *Fields v. Twitter, Inc*., 200 F. Supp. 3d 964, 969 (N.D. Cal. 2016).  Specifically, Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

Under Section 230, a claim should be dismissed if (1) "the defendant [is] a provider … of an interactive computer service"; (2) "the information at issue [is] provided by another information content provider"; and (3) "the cause of action treat[s] the defendant as a publisher or speaker of information[.]" *Gentry v. eBay, Inc*., 99 Cal. App. 4th 816, 830 (2002).  Plaintiff's claims meet all three of Section 230's requirements.

#### 1.    Section 230 applies in this case.

Section 230 is a federal statute that applies "in American courts." *Gonzalez v. Google LLC*, 2 F.4th 871, 888 (9th Cir. 2021) (citation omitted).  SAC ¶ 15.  Accordingly, Forrest is incorrect by insisting that this Court must bypass Section 230 altogether and apply Australian law instead.

The touchstone for any choice of law question is the intent of the legislature.  "When [the

5

legislature's] intentions can be ascertained . . . the court will apply a local statute in the manner intended by the legislature even when [another jurisdiction's laws] would be applicable under usual choice-of-law principles."  Restatement (Second) of Conflict of Laws § 6 cmt. b (Am. L. Inst. 1971).  And here, Congress's intent is manifest.  As the Ninth Circuit has instructed, "Congress intended" Section 230 to apply to claims filed "in American courts," regardless of "the place where the claims principally arose."  *Gonzalez*, 2 F.4th at 887-88 (applying Section 230 even though "all relevant conduct [took] place outside the United States").

Section 230 has a list of enumerated exceptions that "preclude the application of . . . immunity."  *Id.* at 890; *see* 47 U.S.C. § 230(e) (listing exceptions).  But none of the exceptions applies to this case.  Plaintiff ignores the application of Section 230 because he believes his claims arise out of "Australian acts and omissions."  SAC ¶¶ 162, 166.  Section 230, however, contains no exception for so-called "foreign" claims, and "the absence of any carve-out for [such] claims . . . indicate[s] that no such exception was intended."  *Force v. Facebook, Inc.*, 304 F. Supp. 3d 315, 324 (E.D.N.Y. 2018) ("[A] conflict-of-laws analysis [cannot] prevent[] the application of federal statutes to foreign-law-based claims."); *see TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied." (citation omitted)).  Accordingly, as the Ninth Circuit has recognized, "Congress intended [Section 230] to have an effect" on *all* claims filed "in American courts," regardless of "the place where the claims principally arose."  *Gonzalez*, 2 F.4th at 888.

Thus, in enacting Section 230, Congress decisively answered the choice of law question. *See* Restatement (Second) of Conflict of Laws § 6 ("A court . . . will follow a statutory directive of its own state on choice of law.").  Application of Australian law—assuming it does not provide for a similar immunity—would be "plainly not in accord with the federal program implemented by [Section 230]" and, thus, would *not* be "a permissible choice here."  *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 604 (1973).  In such cases, "[t]he choice of law merges with the constitutional demands of controlling federal legislation," and the federal courts must "turn away from [Australian] law by default."  *Id.*; *see also Force*, 304 F. Supp. 3d at 324 ("[A]

conflict-of-laws analysis [cannot] prevent[] the application of federal statutes to foreign-law-based claims.").  There is no further choice of law analysis to be done.[2]

By enacting Section 230, "Congress intended [to limit] liability" for lawsuits filed "in American courts," even if "the claims principally arose" elsewhere.  *Gonzalez*, 2 F.4th at 888.  Plaintiff has provided no reason to displace Congress's determination.  Thus, Section 230 applies.[3]

### 2.    Facebook is an interactive computer service provider

Section 230 defines an interactive computer service provider as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).  "Websites are the most common interactive computer services."  *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019).  Plaintiff alleges that Facebook provides a "website" that encompasses a "social media platform" and an "Ad Platform."  *See e.g.* SAC ¶ 5, 88-92, 110-116, 174, 194.  Thus—as this Court has repeatedly held—Facebook is a "interactive computer service" for purposes of Section 230.  *See, e.g.*, *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020); *Ebeid v. Facebook, Inc.*, No. 18-cv-07030, 2019 WL 2059662, at \*3 (N.D. Cal. May 9, 2019); *Sikhs for Just. "SFJ," Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015), *aff'd*

---

[2] Even under a traditional choice of law analysis, Section 230 would govern.  Where, as here, "jurisdiction is based on the existence of a federal question, federal common law [governs] the choice-of-law analysis."  *In re Air Crash over the Taiwan Strait on May 25, 2002,* 331 F. Supp. 2d 1176, 1209 (C.D. Cal. 2004).  Federal common law "follow[s] the approach of the Restatement (Second) of Conflict of Laws."  *In re Vortex Fishing Sys. Inc.*, 277 F.3d 1057, 1069 (9th Cir. 2002).  And the Second Restatement instructs that courts "must follow the directions of its legislature.  Restatement (Second) of Conflict of Laws § 6 cmt. a (Am. L. Inst. 1971).  Specifically, because "the legislature intended that [Section 230] should be applied to the out-of-state facts involved, the court should so apply it."  *Id.* § 6 cmt. b.

[3] Plaintiff's choice of law analysis also overlooks the express choice of law clause in Facebook's Terms of Service: "For any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Meta Products," "the laws of the State of California will govern [your] claim."  *See* Facebook, Terms of Service, https://www.facebook.com/legal/terms (last visited July 18, 2022).  Because "California law includes federal law," *Kashani v. Tsann Kuen China Enterprise Co.*, 118 Cal. App. 4th 531, 543 (2004), Section 230 governs Plaintiff's claims.  To argue otherwise flies in the face of numerous precedents that have read this precise choice of law provision to "encompass[] *all* causes of action arising from or related to [Facebook's Terms of Service], regardless of how they are characterized."  *Palomino v. Facebook, Inc.*, No. 16-CV-4230, 2017 WL 76901, at \*2 (N.D. Cal. Jan. 9, 2017) (emphasis added); *see also Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1055 (N.D. Cal. 2018) (holding the provision to govern a deceptive practices claim against Facebook).

7

*sub nom. Sikhs for Just., Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017).

### 3. The purported advertisements at issue were "provided by another information content provider," not Facebook.

Section 230 protection applies to published content "provided by another information content provider," which is defined as someone who is "responsible, in whole or in part, for the creation or development of" the offending content. 47 U.S.C. § 230(c), (f)(3). Plaintiff admits, as he must, that "third parties"—and not Facebook—"submit[] the text and images that comprise the content of [a Facebook] ad." SAC ¶¶ 11, 110. And nowhere in the SAC does Plaintiff allege that Facebook was otherwise directly involved in the creation of the offending ads. Plaintiff does not allege, for example, that Facebook coordinated with the Syndicate, participated in the Syndicate's doctoring of images, or drafted any of the misleading ad copy. Thus, the offending ads were provided by "another information content provider" and qualify for Section 230 protection.

Plaintiff nonetheless insists Facebook *itself* was partially responsible for developing the offending ads, which would bar the application of Section 230. *See* SAC ¶¶ 103-43. But a website "creat[es] or develop[s]" content only if it "mak[es] a *material* contribution to [its] creation or development." *Gonzalez*, 2 F.4th at 892 (citation omitted). That is, the website must not "merely augment[] the content generally," but "materially contribut[e] *to its alleged unlawfulness*." *Id.* (citation omitted). Thus, to defeat Section 230 immunity, Plaintiff must allege that Facebook "specifically targeted [illegal] content, or designed its website to encourage" illegal content. *Id.* at 895; *see Doe v. Reddit, Inc.*, No. 21-CV-768, 2021 WL 5860904, at *5 (C.D. Cal. Oct. 7, 2021) (applying Section 230 absent some allegation that the website "ha[d] a special way of handling [unlawful content] that [was] particularly permissive relative to other kinds of content"). The SAC is entirely devoid of any such allegation.

Plaintiff points to four features of Facebook's advertising business that purportedly render it "*de facto* a co-developer" of the ads it publishes. SAC ¶ 111. First, Plaintiff relies on various ad development tools that Facebook offers to all its advertisers. *See id.* ¶¶ 94-102, 116, 125. Second, Plaintiff points to Facebook's advertising algorithm. *See id.* ¶ 102, 109. Third, Plaintiff asserts that Facebook has insufficiently monitored its advertising business. *See id.* ¶¶ 137-40. Fourth, Plaintiff claims that Facebook is a "co-developer" of the ads because the Syndicate "hired

8

Facebook to provide advertising services." *Id.* ¶ 86.

Precedent forecloses each of these arguments. *First*, the various ad development tools Facebook purportedly offers—including customizable templates for ads, *see id.* ¶ 116, a guide of "[b]est [p]ractices" for ads, *see id.* ¶ 125, and user tracking technology, *see id.* ¶¶ 94-102—do not render Facebook a "co-developer" of the allegedly unlawful ads because none of these generic website features "required" or "prompted" the Syndicate "to post unlawful content." *Gonzalez*, 2 F.4th at 896. As the Ninth Circuit has repeatedly affirmed, a website does not lose protection simply because it "provides neutral tools that a user exploits" to create illegal content. *Dyroff*, 934 F.3d at 1099. As long as Facebook's ad development tools do not "require[]" or "prompt[]" users to submit illegal content, they do not deprive Facebook of protection. *Gonzalez*, 2 F.4th at 896; *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1199 (N.D. Cal. 2009) (demanding some "alleg[ation] that Google effectively 'requires' advertisers to engage in illegal conduct" to preclude Section 230 immunity); *cf. Fair Hous. Council of San Fernando Valley v. Roommates.com LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008) (denying Section 230 protection to a website that "require[d] the use of [illegal] criteria"). Plaintiff makes no allegation of this sort.[4]

*Second,* Plaintiff's argument about Facebook's advertising algorithm fares no better. The Ninth Circuit has repeatedly held that websites like Facebook are not deprived of Section 230 protection simply for "target[ing] users for advertising" using data about "the content [they] have selected and other information about [them]." *Gonzalez*, 2 F.4th at 894-95; *Dyroff*, 934 F.3d at 1098-99 (applying Section 230 to website's "algorithms" that "analyze[d] user posts" in order to "recommend[] other user groups"); *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270-71 (9th Cir. 2016) (same); *see also Force v. Facebook, Inc.*, 934 F.3d 53, 65 (2d Cir. 2019) (applying Section 230 to Facebook's "advertising algorithms and 'remarketing' technology allow[ing] advertisers to target ads to its users who are likely most interested in those ads"). And while Forrest alleges that

---

[4] Plaintiff also emphasizes that Facebook "determine[s] the size, placement and positioning of your ads." SAC ¶ 93 (emphasis omitted). But that fact is irrelevant to the Section 230 analysis. "A website operator who edits user-created content . . . retains his immunity for any illegality in the user-created content, provided that the edits are unrelated to the illegality." *Roommates*, 521 F.3d at 1169. The size, placement, and positioning of the offending ads are unrelated to their allegedly fraudulent nature or the alleged misappropriation of Plaintiff's likeness.

9

Facebook's advertising algorithm "delivered" the scam ads to users who were particularly "likely to fall victim to the scam," there is no suggestion that Facebook's algorithm treated the scam ads differently than it treats all other ads. On the contrary, the SAC makes clear that delivering content to the users most likely to engage is an inherent and uniform feature of Facebook. To defeat application of Section 230, Plaintiff must allege more: that Facebook's algorithm "treat[ed] [Scam Crypto Ads] differently than any other third-party created content." *Gonzalez*, 2 F.4th at 894; *Reddit*, 2021 WL 5860904, at *5 (requiring some allegation that the website "ha[s] a special way of handling [unlawful content] that is particularly permissive relative to other kinds of content"). He makes no such allegation, which is fatal to his argument.[5]

*Third,* the alleged deficiencies with Facebook's monitoring of illegal content also do not defeat the application of Section 230. Plaintiff asserts that because of "sales quotas," Facebook has "encourag[ed] scammers to buy fraudulent ads" and has refrained from implementing "sufficient systems" for monitoring illegal content. SAC ¶¶ 137-40; *see* SAC ¶ 139 ("It's immoral. [Facebook doesn't] ask where [the ad is] coming from.").[6] But the alleged underenforcement of Facebook's monitoring policies cannot give rise to liability. A website is afforded Section 230 protection even if the publishing of unlawful content arises out of a "refusal to enforce [the website's] policies." *Reddit*, 2021 WL 5860904, at *4. Similarly, it is irrelevant whether Facebook knew about the alleged fraud. Section 230 applies when a website "provides third parties with neutral tools to create web content, even if the website *knows* that the third parties are using such tools to create illegal content." *Goddard*, 640 F. Supp. 2d at 1196 (N.D. (emphasis added); *see also Mazur v. eBay Inc.*, No. 07-CV-3967, 2008 WL 618988, at *9 (N.D. Cal. Mar. 3, 2008) (ignoring "plaintiff's assertion that eBay knew of the seller's illegal conduct and failed to prevent it"); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 333 (4th Cir. 1997) (holding

---

[5] It is similarly immaterial that Facebook relies on "data collection" to enhance its advertising algorithm. SAC ¶ 182. A website that "targets users for advertising" based on data about "their historical actions"—irrespective of how that data is collected—is not a developer of content, and is eligible for Section 230 protection. *Gonzalez*, 2 F.4th at 894-95.

[6] Elsewhere, Plaintiff acknowledges that Facebook's advertising policies prohibit these scams and that Facebook employs numerous technological systems designed to diminish the prevalence of scam ads, including account verification and automated review of ads for compliance with terms of service. *See* SAC ¶¶ 54, 85.

10

CORRECTED DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS
Case No. 5:22-cv-03699-EJD

that provider is shielded from liability despite receiving actual notice of objectionable content on its website).

Finally, Plaintiff's "work for hire" argument finds no support in precedent. "[T]he fact that a website elicits online content for profit is immaterial." *Goddard v. Google, Inc.*, No. 08-CV-2738, 2008 WL 5245490, at *3 (N.D. Cal. Dec. 17, 2008) (holding that allegations "that a website elicits online content for profit [are] immaterial"); *Roommates*, 521 F.3d at 1161, 1174-75 (finding it immaterial that website derived "revenue from advertisers and subscribers"); *Fyk v. Facebook, Inc.*, 808 F. App'x 597, 598 (9th Cir. 2020) ("[M]onetary purposes do[] not somehow transform Facebook into a content developer.").

In short, Plaintiff cannot identify a single feature of Facebook's advertising business that "play[s] any special role in the illegality of [the Scam Crypto Ads]." *Reddit*, 2021 WL 5860904, at *5. Facebook's advertising tools certainly do not "effectively 'require[]' advertisers to engage in illegal conduct." *Goddard*, 640 F. Supp. 2d at 1199. Nor is Facebook alleged to "have a special way of handling [scam ads] that is particularly permissive relative to other kinds of content." *Reddit*, 2021 WL 5860904 at *5. Thus, Facebook cannot be considered the creator or developer of any of the ads at issue, which means that Section 230's second requirement is met.

### 4.    All of Plaintiff's claims seek to treat Facebook as the scam's "publisher".

Under Section 230, a plaintiff's claim treats a defendant as a "publisher" when it seeks to hold a service provider liable for its purported exercise of "editorial functions"—such as "deciding whether to publish, withdraw, postpone, or alter content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009), *as amended* (Sept. 28, 2009) (barring negligent undertaking claim under Section 230). What matters is not the "name of the cause of action," but "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, Section 230(c)(1) precludes liability." *Id.* at 1101-02.

Section 230 bars all of Plaintiff's claims. As the San Mateo Superior Court rightly held in dismissing Plaintiff's prior complaint, "each of [Plaintiff's] claims is based on allegations that Facebook committed acts in the role of publisher, which Section 230(c)(1) precludes." Order, Ex.

11

B at 6.  And nothing in the SAC changes that conclusion.

The SAC repleads four causes of action from the prior complaint, all of which still suffer from the precise defects that compelled the San Mateo Superior Court to dismiss them under Section 230.  The **misappropriation of likeness** claim still seeks to hold Facebook liable for the dissemination of *third-party ad content* that allegedly misused Plaintiff's "name, image, voice, likeness, [and] photos [and] videos."  SAC ¶ 173.  The **aiding and abetting** claim still alleges that Facebook furthered fraudulent conduct by showing *third-party ad content* to users who were "most likely to click and purchase."  *Id.* ¶ 181.  The **unfair competition law** claim still asserts that Facebook engaged in "unlawful" competition by disseminating *third-party ad content* that misappropriated Plaintiff's likeness and engaged in "unfair" competition by enabling "underlying bad actors" to target certain users with *third-party ads*.  *Id.* ¶¶ 193-94.  And the **negligent failure-to-warn** claim still asserts that Facebook breached a duty to "warn its users, including [Plaintiff], of the [misleading content] of the Scam Crypto Ads"—which would have required Facebook to monitor the content of those *third-party ads*.  *Id.* ¶ 204.

Ultimately, each of these theories of liability remains "the classic kind of claim that [has been] found to be preempted by section 230," and California and federal courts have "uniformly rejected" them.  *Gentry*, 99 Cal. App. 4th at 835.  Indeed, the sheer number of cases dismissing these precise claims under Section 230 is overwhelming.  *See, e.g.*, *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 208 (2017) (dismissing **misappropriation-of-likeness** claim under Section 230); *Joude v. WordPress Found.*, No. 14-CV-1656, 2014 WL 3107441, at *7 (N.D. Cal. July 3, 2014) (dismissing "[p]laintiff's allegation of **misappropriation of likeness**" under Section 230 (emphasis added)); *Long v. Dorset*, 854 F. App'x 861, 865 (9th Cir. 2021) (dismissing claim "that Facebook **aided and abetted** [unlawful conduct] under Section 230); *Gonzalez*, 2 F.4th at 892 (holding that Section 230 barred liability if "publication itself is the form of support Google allegedly provided); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1121 (9th Cir. 2007) (affirming Section 230 immunity "as to the **unfair competition**" claim); *Gentry*, 99 Cal. App. 4th at 834-36 (rejecting **unfair competition** claim under Section 230); *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 591-92 (S.D.N.Y. 2018) (dismissing a **failure-to-warn claim** because a duty to

12

warn would require the defendant to "police or remove objectionable content"); *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1126 (N.D. Cal. 2016) (dismissing **failure-to-warn claim** because the "theory of liability is inherently tied to content" and would "effectively requir[e defendant] to police and restrict its provision of [user] accounts"); *In re Facebook, Inc.*, 625 S.W.3d 80, 94 (Tex. 2021) (dismissing **failure-to-warn** claim).

The SAC adds two new causes of action—and both also fail under Section 230 because they, too, seek to treat Facebook as the publisher of third-party content. The claim under the **Lanham Act**—specifically, 15 U.S.C. § 1125(a), which "govern[s] . . . false association and false advertising," *Enigma Software Grp USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019)—alleges that Facebook "confused [users] into believing that Dr. Forrest endorses the Scam Crypto Ads" by "target[ing]" third-party ads using Plaintiff's name and likeness to users who would be "highly susceptible to Dr. Forrest's endorsement," SAC ¶¶ 213-14. But as the Ninth Circuit has held, a claim of "false and misleading advertising" against an internet service provider is barred by Section 230 if the offending advertisements "originat[ed] with a third-party user." *Perfect 10, Inc.*, 488 F.3d at 1108, 1118 (affirming that Section 230 barred a false advertising claim); *see also Morton v. Twitter, Inc.*, No. 20-CV-10434, 2021 WL 1181753, at *4 n.3 (C.D. Cal. Feb. 19, 2021) ("Section 230 clearly reaches the allegedly false advertising statements here," precluding the plaintiff's "false advertising claim based upon the Lanham Act"); *Gentry*, 99 Cal. App. 4th at 836 (holding that Section 230 barred liability for publication of third-party "marketing and advertising [that] was untrue and/or misleading"). At base, Plaintiff's Lanham Act claim—like his other claims—simply seeks to hold Facebook liable for publishing third-party content. This claim, too, should be dismissed.[7]

Finally, the **unjust enrichment** claim alleges that Facebook "wrongly received ad revenue" by publishing the third-party ads, at the expense of Plaintiff's "reputation, name, likeness, and endorsement." SAC ¶ 221-22. This claim, too, seeks to hold Facebook liable for

---

[7] Plaintiff's claim does not fall under Section 230's exception for "intellectual property" claims. *See* 47 U.S.C. § 230(e)(2). As the Ninth Circuit has expressly held, this "narrow[]" exception to Section 230 does not extend to "claims brought under § 1125(a) of the Lanham Act" because such claims do not "directly involve intellectual property rights." *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019).

13

publishing third-party content. It is "readily apparent" that Section 230 bars "a claim for unjust enrichment" premised on a "quintessential [publisher] function" like displaying a third-party ad. *Reddit*, 2021 WL 58860904, at \*6. Unsurprisingly, courts have routinely dismissed unjust enrichment claims under Section 230. *See Al-Ahmed v. Twitter, Inc.*, No. 21-CV-8017, 2022 WL 1605673, at \*16 (N.D. Cal. May 20, 2022) (dismissing unjust enrichment claim); *Morton*, 2021 WL 1181753, at \*4 (holding that "unjust enrichment claim[s]" have "been found by courts to be barred by Section 230"). This Court should do the same.

### B.     Plaintiff Fails To State Any Viable Claim For Relief

Even beyond Section 230, Plaintiff cannot state a viable claim for misappropriation of likeness, aiding and abetting fraud, negligent failure to warn, violation of § 1125(a) of the Lanham Act, violation of the UCL, or unjust enrichment. The causes of action simply do not contemplate the theories of liability that Plaintiff is seeking to advance.

### 1.     Misappropriation of name and likeness

To plead misappropriation of likeness, a plaintiff must show: (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to the defendant's advantage; (3) lack of consent; and (4) resulting injury. *Maxwell v. Dolezal*, 231 Cal. App. 4th 93, 97 (2014). Here, Plaintiff's misappropriation-of-likeness claim fails for two reasons.

*First,* Plaintiff has not alleged facts showing that Facebook, as opposed to the so-called Syndicate, "used" Plaintiff's name or likeness to support misappropriation liability. In *Cross v. Facebook, Inc,* for instance, the court recognized that the "use" element was not met when "third parties," and not Facebook, were the ones who actually "posted" the "unauthorized Facebook pages" that featured the plaintiff's name and likeness. 14 Cal. App. 5th at 209. Facebook's actions in hosting the content and "generating revenue" from the content within its broader platform, the court recognized, were not "use." *Id.* Here, as in *Cross*, the misappropriating content was designed and uploaded by a third party and Facebook merely distributed the content on the same terms that it distributes all advertising content. *See supra* Section IV.A.3. This is

insufficient to establish Facebook's "use" of Plaintiff's likeness.[8]

*Second,* Plaintiff's allegations that Facebook generally profits by keeping users engaged and selling advertisements, *see, e.g.*, SAC ¶171, do not sufficiently demonstrate that Facebook misappropriated Plaintiff's likeness *to its advantage or benefit*.  As the Ninth Circuit explained in *Newcombe v. Adolf Coors Co.*—which addressed a similar situation—an advertisement that misappropriates somebody's likeness "could not be said to have directly benefited … the *publisher* of [the advertisement], because the benefit [the publisher] received—payment for the advertising space—was unrelated to the contents of the advertisement."  157 F.3d 686, 693 (9th Cir. 1998) (emphasis added).  Other courts have likewise dismissed claims in which the alleged benefit is generalized advertising revenue rather than a benefit specifically related to the illegality of the advertising content.  *See, e.g.*, *Cross*, 14 Cal. App. 5th at 211 (dismissing misappropriation claim because any "any 'benefit' to Facebook" from selling ad space near misappropriated content is "'unrelated to the content[]'" itself) (quoting *Newcombe*, 157 F.3d at 693); *Perfect 10*, 2010 WL 9479060, at *13 (declining to find Google liable for misappropriation claims when it derived advertising revenue from a third-party content provider's displays of models' likenesses on blog pages).  Here, Plaintiff does not allege that the purported benefit Facebook derived from the alleged misappropriation is connected to the alleged illegality of that content or distinct in any way from the purported benefit Facebook derives from any other content made available on its platform.  Accordingly, the claim must be dismissed.

### 2.    Aiding and abetting fraud

California imposes liability for aiding and abetting a tort if the defendant (1) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (2) gives substantial assistance to the other in accomplishing a tortious result

---

[8] Notably, California courts have even rejected claims like Forrest's under secondary liability or aiding and abetting theories.  *See Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484, 2010 WL 9479060, at *13-14 (C.D. Cal. July 30, 2010), *aff'd*, 653 F.3d 976 (9th Cir. 2011) (concluding allegations that Google hosted advertisements for third-party websites that displayed models' names and likenesses did not mean that Google was "inappropriately *using* the models' likenesses" for purposes of a right-of-publicity claim); *accord Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 809 (9th Cir. 2007) (rejecting claim for aiding and abetting right of publicity violation as unsupported by California law).  Transmission of misappropriating third-party content does not constitute "use."

and the defendant's own conduct, separately considered, constitutes a breach of duty to the plaintiff. *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (1996). Plaintiff fails to clear this bar because—as the San Mateo Superior Court recognized in sustaining the demurrer—Facebook's provision of its standard advertising services to a bad actor does not constitute "substantial assistance" in carrying out the investment scheme. Order, Ex. B at 6.

To start, substantial assistance requires "[t]hat … the particular defendant who is to be charged with responsibility must have proceeded tortiously i.e., with intent to commit a tort or with negligence." *Coffman v. Kennedy*, 74 Cal. App. 3d 28, 32 (1977) (affirming dismissal of aiding and abetting claim against car passenger who served intoxicated driver alcohol before collision). In other words, a plaintiff must allege facts that show the defendant "reach[ed] a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *Howard v. Superior Court*, 2 Cal. App. 4th 745, 749 (1992). Not only does the SAC fail to make this allegation—it alleges only that Facebook provided its standard targeted advertising tools, SAC ¶¶ 183-84—*it actually asserts the opposite*. The SAC admits that Facebook's advertising terms of service prohibits the Syndicate's behavior, that Facebook employs "computer architecture" designed to weed out violating ads, and that the Syndicate was only able to post the scam ads by "using sham entities, fake information, and false addresses" to *evade* Facebook's rules. SAC ¶¶ 7, 53-54, 85-88. Plaintiff's inability to allege that Facebook intended to facilitate the scam ads precludes liability. *See Chen v. PayPal, Inc.*, 61 Cal. App. 5th 559, 584 (2021) (aiding and abetting claim properly dismissed when allegations indicated only that PayPal knew about bad actors "tak[ing] advantage of PayPal's allegedly buyer-friendly dispute resolution practices," not "that PayPal implements its dispute resolution practices in a manner *intended* to aid buyers in defrauding sellers").

Indeed, California law makes clear that merely "providing [a company's] usual, legitimate service" to underlying fraudsters, even with knowledge that the service is being used fraudulently, does not constitute "substantial assistance." *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 94, 96, 97 (2007) (holding that substantial assistance was not pled for defendants that merely "'set[] up a system'" that enabled fraud and "fail[ed] to police" the actions of others or

16

"repudiate" the primary fraudster's actions).  In *Barrett v. Apple Inc.*, this Court declined to find that Apple substantially assisted unlawful acts on its platform, despite allegations that it designed the gift card ecosystem to facilitate unlawful payments, "retained funds" from the unlawful scheme, and "made misleading or false statements" about its ability to respond to unlawful conduct.  523 F. Supp. 3d 1132, 1145 (N.D. Cal. 2021); *see also Diaz v. Intuit, Inc.*, No. 5:15-cv-01778, 2018 WL 2215790, at *8 (N.D. Cal. May 15, 2018) (dismissing aiding and abetting claims against defendant, who provided tax preparation software over which fraud was perpetrated and failed to stop that fraud).  Here, too, Forrest fails to allege any acts that constitute "substantial assistance," and therefore fails to state an aiding and abetting claim.

### 3. Unfair Competition Law

California's UCL bars any "business act or practice" that is (1) "fraudulent," (2) "unlawful," or (3) "unfair."  Cal. Bus. & Prof. Code § 17200; *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1135 (2020).  Plaintiff does not assert that Facebook's business practices are fraudulent, and he fails to state a claim that Facebook's business practices are either unlawful or unfair.  *See* SAC ¶¶ 189-200.

Plaintiff's claim under the UCL's "unlawful" prong is premised on (1) Facebook's alleged misappropriation of Plaintiff's name and likeness; and (2) Facebook's alleged violation of the Lanham Act's prohibition on false endorsement.  SAC ¶ 193; *cf. Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("[S]ection 17200 'borrows' violations of other laws and treats them as unlawful practices…" (citation omitted)).  As explained above, *see supra* Section IV.B.1, however, Facebook's alleged conduct—publishing ads created by third parties who misused Plaintiff's likeness—does not constitute misappropriation-of-likeness under California law.  And as explained below, *see infra* Section IV.B.5, it does not support a false endorsement claim under the Lanham Act either.  Because those underlying claims fail, Plaintiff's "unlawful" UCL claim must fail as well.  *See Cel-Tech*, 20 Cal. 4th at 182; *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1095 (C.D. Cal. 2015) ("Where the predicate claims on which a plaintiff's UCL claim are based fail, the UCL claim fails as well.").

As to the "unfair" prong, Plaintiff asserts that collecting user data and "leveraging this

17

data to provide targeted ad capabilities" constitutes an "unfair" business practice. SAC ¶ 194. It is not. To start, courts have recognized that "where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the … unlawful prong[] of the UCL"—as they clearly do here since both claims are premised on Facebook's alleged promotion of the scam ads through targeted advertising—"the unfair prong of the UCL cannot survive if the claims under the other [prong does] not survive." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017).

Moreover, "courts may not use the unfair competition law to condemn actions the Legislature permits," *Cel-Tech*, 20 Cal. 4th at 184, and the California legislature *permits* the general practice of targeted advertising. Indeed, the California Consumer Privacy Act of 2018 and the California Privacy Rights Act (which amends the former and will take effect on January 1, 2023) regulate—but allow—the exact "cross-context behavioral advertising" conduct Plaintiff says is "unfair" here. *See also* Cal. Civ. Code § 1798.140. While Plaintiff may personally believe targeted advertising is unfair, he makes no attempt to tie that assertion to any legislatively declared policy prohibiting such conduct. *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007) (conduct may be "unfair" if it violates a legislatively-declared policy). The UCL claim fails.

### 4.    Negligent failure to warn

A negligent failure-to-warn claim requires facts demonstrating (1) a legal duty to use due care; (2) a breach of that duty; (3) proximate or legal cause; and (4) resulting injury. *Ladd v. Cnty. of San Mateo*, 12 Cal. 4th 913, 917-18 (1996). As the San Mateo Superior Court recognized, Plaintiff's claim fails at the first prong "because a duty to warn does not exist absent a special relationship between Facebook and the plaintiff." Order, Ex. B at 6; *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal. 3d 425, 435 (1976) ("[A]s a general rule, one … owe[s] no duty to control the conduct of another, nor to warn those endangered by such conduct," absent a defendant's "special relationship to either the person whose conduct needs to be controlled" or "to the foreseeable victim of that conduct." (internal citations omitted)).

While courts have recognized a special relationship between innkeepers and guests,

common carriers and passengers, and medical professionals and patients, *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 235, 236 n.14 (2005), they have repeatedly rejected attempts to fashion a "special relationship" between websites and their users.  *See Dyroff*, 934 F.3d at 1101 ("No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content."); *see also Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014) (no special relationship between Facebook and its users); *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1039 (N.D. Cal. 2021) (declining to find a "special relationship" between users and software platform).

Plaintiff alleges that a duty exists absent any "special relationship" because Facebook's ad targeting conduct constitutes "misfeasance" rather than nonfeasance. SAC ¶ 204.  But, as the state court observed, the alleged misfeasance is merely acts within Facebook's editorial discretion.  Order, Ex. B at 6.  And the Ninth Circuit's decision in *Dyroff* made clear that characterizing a site's promotion of allegedly harmful content based on "machine-learning algorithms" as "misfeasance" rather than "nonfeasance" is a "misguided premise." *Dyroff*, 934 F.3d at 1095, 1100.  Such "content-neutral" recommendation features, the court explained, do not make a plaintiff who is harmed by third-party content "worse off" to constitute misfeasance.  *Id.* at 1101.  Because Facebook has no duty to protect users from third-party content on its platform, Plaintiff cannot state a claim.

Plaintiff also fails to plausibly allege causation.  Plaintiff's theory, apparently, is that "Facebook had a duty to warn Dr. Forrest" of the Scam Crypto Ads and that "[a]s a direct and proximate consequence of Facebook's failure to warn," "Dr. Forrest has been severely harmed."  SAC ¶¶ 204, 207.  But it is logically unclear how warning *Dr. Forrest* about scam ads featuring his likeness would have done anything to stop the harm allegedly caused by the presence of such ads on the Facebook platform.  Indeed, the SAC makes clear that Dr. Forrest was well aware of the scam ads.  *Id.* ¶ 47.  Facebook's supposed failure to warn Plaintiff about ads that Plaintiff already knew about could not possibly have caused the alleged harm.

### 5.   Lanham Act

Plaintiff has also failed to state any claims under Section 43(a) of the Lanham Act, which

19

regulates (among other things) the use of false or misleading representations in connection with goods or services. 15 U.S.C. § 1125(a)(1)(A); (codifying Lanham Act §43(a); SAC ¶ 210 (alleging false endorsement claim). While the Ninth Circuit has interpreted §43(a) to permit claims for false endorsement of a product or service, *see Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1068 (9th Cir. 2015), Plaintiff's unconventional application of that principle cannot fit within the Lanham Act's statutory language.

To start, Facebook is the wrong defendant. The statute targets "*[a]ny person* who" uses a "word, term, name, symbol, or device" in a way that causes confusion as to "the affiliation … of *such person* with another person" or the "approval of *his or her* [services] by another person." 15 U.S.C. § 1125(a)(1)(A). The statutory language therefore requires confusion as to *the defendant's own* goods or services (here, Facebook's goods or services) with "another person" (here, Plaintiff). Plaintiff alleges only that Facebook's publication of the scam ads created confusion between Plaintiff's likeness and the Syndicate's crypto scheme. *E.g.* SAC ¶ 213. He does not (and could not) allege that the scam ads created any confusion between Plaintiff's likeness and *Facebook's* products or services.

Plaintiff also fails to state a Lanham Act false endorsement claim because Facebook was not "us[ing]" Plaintiff's likeness "in commerce," as required by the statute. As alleged, the scam ads used Plaintiff's likeness in the context of fake news articles; Plaintiff does not allege that the ads themselves purported to sell or offer any product or service. SAC ¶ 48 (reproducing ads); *see also* SAC ¶ 57, 61, 62 (describing other ads, all similarly structured as fake news). The ads reproduced in the Complaint, for instance, generally contain a photo of Plaintiff designed to look like it is from a news article—one with a nonsensical headline like "Everyone Know What This Man Did" or "Clean Your Houses" —and a corresponding, equally nonsensical piece of text like "Who is He and Who Will Be Interested To Know Him." SAC ¶ 48. They do not even mention a product, much less Plaintiff's endorsement of any particular product. This is insufficient to constitute "use" of a likeness "in commerce," as required to state a claim. *See Children's Health Def. v. Facebook Inc.*, 546 F. Supp. 3d 909, 936 (N.D. Cal. 2021) (collecting cases dismissing Lanham Act claims on grounds that commentary *about* products or services, but not offering

20

commercial transactions itself, is not sufficiently commercial).[9]

For similar reasons, the scam ads *themselves*—vague and nonsensical as they were—could not "cause confusion" regarding Plaintiff's endorsement of any crypto scheme.  15 U.S.C. § 1125(a)(1)(A).  Nobody could mistakenly believe that Plaintiff was endorsing a product that was not even mentioned.  And Plaintiff acknowledges that the ads were "not facially credible even as fraudulent 'news reports.'" SAC ¶ 48.  Instead, Plaintiff alleges that the confusion arose when users "click[ed] through" the ads and were led to a new page, separate from the scam ads, containing fake "interviews" in which Plaintiff appears to be "sponsoring a particular investment 'opportunity'" along with "testimonials describing how investors have become millionaires in a matter of months with even small deposits such as $250."  SAC ¶¶ 50-51.  In short, the language Lanham Act false endorsement provision simply does not encompass Plaintiff's claim.

### 6.    Unjust Enrichment

When a plaintiff alleges unjust enrichment," California courts generally "construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted) (noting that "there is not a standalone cause of action for 'unjust enrichment'").  The elements of a quasi-contract claim—which are identical to unjust enrichment—are: (1) receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another.  *Peterson v. Cellco P'ship,* 164 Cal. App. 4th 1583, 1593 (2008).  Crucially, the benefit received by the defendant must be "obtained … *directly* from [the plaintiff]." *Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*, No 17-CV-12007, 2021 WL 2188138, at *14 (E.D. May 28, Cal. 2021).

The SAC does not properly plead either element.  Tellingly, Plaintiff never alleges that he conveyed any benefit to Facebook, let alone that Facebook retained the benefit at Plaintiff's expense.  Instead, Plaintiff alleges that Facebook "wrongly received ad revenue" from a Bulgarian-based Syndicate related to Scam Crypto Ads that "misused Dr. Forrest's reputation,

---

[9] Additional, for the same reasons explained above, Facebook was not the one "us[ing]" Forrest's likeness at all, as Facebook's alleged transmission of the ads and compensation for the ad space occurred completely without regard to the ads' content or the inclusion of Forrest's likeness. *See supra* §IV.B.1.

21

name, likeness, and endorsement." SAC ¶¶ 221-22. This is not enough. Plaintiff has not identified a benefit that Facebook received "directly from [Plaintiff]," and thus his "unjust enrichment claim [cannot be saved] as a quasi-contract claim." *Roadrunner*, 2021 WL 2188138, *14 (holding that an allegation that the defendant received "increased profits flowing from business with [a third party]" did not sufficiently plead a direct benefit).

What is more, even if the claim were properly pleaded, it would still be independently barred because Plaintiff also brought tort claims predicated on the same underlying facts. Unjust enrichment is appropriate only "where the defendant obtained a benefit from the plaintiff [and] the plaintiff has chosen not to sue in tort." *Brown v. Wells Fargo Bank, N.A.*, No. 19-CV-260, 2019 WL 3318551, at *8 (E.D. Cal. July 24, 2019). In a case *with* parallel tort claims, an unjust enrichment claim merges with—and is duplicative of—the tort claims. For that reason, too, the unjust enrichment claim should be dismissed.

### C.    Plaintiff Should Not Be Granted Further Leave To Amend

Leave to amend is generally inappropriate if an amendment would be futile or if the plaintiff has already been permitted to amend the complaint. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Both rationales support denying leave here.

Leave to amend is also inappropriate because Plaintiff's "pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted). Plaintiff's claims seek to hold Facebook liable for its actions as a publisher, so they will be barred by Section 230(c)(1) no matter what additional facts he pleads. That is why courts generally deny leave to amend when "there is CDA immunity." *King v. Facebook, Inc.*, No. 21-CV-4573, 2021 WL 5279823, at *13 (N.D. Cal. Nov. 12, 2021) (dismissing claims barred by Section 230 with prejudice because "it would be futile for [Plaintiff] to try to amend the claim[s]"); *Brittain v. Twitter, Inc.*, No. 19-CV-114, 2019 WL 2423375, at *4 (N.D. Cal. June 10, 2019) (dismissing claims barred by Section 230 with prejudice "[b]ecause plaintiff cannot cure this defect"). Moreover, as established above (*see supra* § B), each of Plaintiff's claims suffer other fatal deficiencies that he cannot overcome with further amendments.

Moreover, the Court's discretion to dismiss a claim without leave to amend is particularly broad where the plaintiff has previously filed an amended complaint, *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004),  and Plaintiff has already amended his complaint twice: once by right in November 2021, and again in June 2022 after the San Mateo Superior Court dismissed the claims on multiple grounds, but nonetheless "granted leave … to file and serve a Second Amended Complaint."  Order, Ex. B at 7.  Plaintiff has therefore had ample opportunity to craft a valid pleading.  Even if amendment wouldn't be futile (and it would), there is no reason to give Plaintiff yet another opportunity to replead.

## V.    CONCLUSION

For the foregoing reasons, Facebook respectfully requests that the Court dismiss the Second Amended Complaint with prejudice.

Dated:  July 19, 2022

ORRICK, HERRINGTON & SUTCLIFFE LLP


By:    */s/ Jacob M. Heath*
JACOB M. HEATH

Attorney for Defendant FACEBOOK, INC.

CORRECTED DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS
Case No. 5:22-cv-03699-EJD