JACOB M. HEATH (SBN 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

DANIEL S. GUERRA (SBN 267559)
dguerra@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105-2669
Telephone:  +1 415 773 5700
Facsimile:  +1 415 773 5759

Attorney for Defendant Facebook, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DR. ANDREW FORREST,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FACEBOOK, INC., A DELAWARE CORPORATION,<br><br>　　　　　Defendant. | Case No. 5:22-cv-03699-EJD<br><br>**REPLY IN SUPPORT OF DEFENDANT FACEBOOK INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:　　February 2, 2023<br>Time:　　9:00 AM<br>Judge:　Hon. Edward J. Davila<br><br>Date Complaint Filed:<br><br>Trial Date:  None Set |

# TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION ..................................................................................................................1

II.    ARGUMENT........................................................................................................................1

     A.     Section 230 of the Communications Decency Act Bars All Of Plaintiff's
            Claims .......................................................................................................................1

           1.     Plaintiff has no basis for evading U.S. law. ................................................1

           2.     Facebook did not "co-develop" the ads within the meaning of the
               statute. ...........................................................................................................3

           3.     All of Plaintiff's claims seek to treat Facebook as the scam's
               "publisher." ...................................................................................................6

           4.     Section 230's intellectual property exception does not apply to
               Plaintiff's publicity-rights-based claims. .....................................................7

     B.     Plaintiff Fails To State Any Viable Claim For Relief .............................................8

           1.     Misappropriation of name and likeness .......................................................8

           2.     Aiding and abetting fraud ...........................................................................10

           3.     Unfair Competition Law..............................................................................11

           4.     Negligent failure to warn ...........................................................................12

           5.     Lanham Act..................................................................................................13

           6.     Unjust Enrichment ......................................................................................14

III.   CONCLUSION...................................................................................................................15

REPLY IN SUPPORT OF DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS
Case No. 5:22-cv-03699-EJD

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,
No. 21-MD-2985, 2022 WL 4009918 (N.D. Cal. Sept. 2, 2022) (Davila, J.) ..................4, 5, 7

*In re Vortex Fishing Sys. Inc.*,
277 F.3d 1057 (9th Cir. 2002) ......................................................................................................3

*Ariix, LLC v. NutriSearch Corp.*,
985 F.3d 1107 (9th Cir. 2021) ...............................................................................................13, 14

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ......................................................................................................6

*Barrett v. Apple Inc.*,
523 F. Supp. 3d 1132 (N.D. Cal. 2021) ......................................................................................10

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ......................................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................................................................4

*Blazevska v. Raytheon Aircraft Co.*,
522 F.3d 948 (9th Cir. 2008) .......................................................................................................2

*Brown v. Wells Fargo Bank, N.A.*,
No. 19-CV-260, 2019 WL 3318551 (E.D. Cal. July 24, 2019)..............................................15

*Camacho v. Control Grp. Media Co.*,
No. 21-CV-1954, 2022 WL 3093306 (S.D. Cal. July 18, 2022) ..............................................4

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ................................................................................................................11

*Chen v. PayPal, Inc.,*
Cal. App. 5th 559 (2021) ............................................................................................................10

*Cross v. Facebook, Inc.*,
14 Cal. App. 5th 190 (2017) ..........................................................................................................9

*CVS Pharmacy, Inc. v. Doe, One*,
142 S. Ct. 480 (2021).....................................................................................................................12

*Dastar Corp. v. Twentieth Cent. Fox Film Corp.*,
539 U.S. 23 (2003)..........................................................................................................................7

ii

*Diaz v. Intuit, Inc.*,
　　No, 5:15-cv-01776, 2018 WL 2215790 (N.D. Cal. May 15, 2018).........................................11

*Doe v. CVS Pharmacy, Inc.*,
　　982 F.3d 1204 (9th Cir. 2020) ...............................................................................................11

*Doe v. Reddit, Inc.*,
　　No. 21-CV-768, 2021 WL 5860904 (C.D. Cal. Oct. 7, 2021)...............................................4, 5

*Dyroff v. Ultimate Software Grp., Inc.*,
　　934 F.3d 1093 (9th Cir. 2019) ...........................................................................................4, 12

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*
　　946 F.3d 1040 (9th Cir. 2019) .................................................................................................7

*Enters. Rent-A-Car Co. v. Advantage Rent-A-Car, Inc.*,
　　330 F.3d 1333 (Fed. Cir. 2003)................................................................................................8

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
　　521 F.3d 1157 (9th Cir. 2008) ............................................................................................3, 6

*Farah v. Esquire Magazine*,
　　736 F.3d 528 (D.C. Cir. 2013) ...............................................................................................13

*Federal Trade Commission v. LeadClick Media, LLC*,
　　838 F.3d 158 (2d Cir. 2016).....................................................................................................5

Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.,
　　778 F.3d 1059 (9th Cir. 2015) ...............................................................................................13

*First Nationwide Sav. v. Perry*,
　　11 Cal. App. 4th 1657 (1992) .................................................................................................14

*Force v. Facebook, Inc.*,
　　304 F. Supp. 3d 315 (E.D.N.Y. 2018) .....................................................................................3

*Force v. Facebook, Inc.*,
　　934 F.3d 53 (2d Cir. 2019)...............................................................................................2, 14

*Georges v. Bank of Am., N.A.*,
　　845 F. App'x 490 (9th Cir. 2021)...........................................................................................11

*Goddard v. Google, Inc.*,
　　640 F. Supp. 2d 1193 (N.D. Cal. 2009) ...................................................................................6

*Gonzalez v. Google LLC*,
　　2 F.4th 871 (9th Cir. 2021) ............................................................................................2, 3, 4

*Hauck v. Advanced Micro Devices, Inc.*,
　　816 F. App'x 39 (9th Cir. 2020).............................................................................................11

iii

*HomeAway.com, Inc. v. City of Santa Monica*,
   918 F.3d 676 (9th Cir. 2019) ..................................................................................6, 7

*Kane v. Chobani, Inc.*,
   973 F. Supp. 2d 1120 (N.D. Cal. 2014) ......................................................................15

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) ......................................................................................4

*Klein v. Earth Elements, Inc.*,
   59 Cal. App. 4th 965 (1997) ........................................................................................11

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) ......................................................................................11

*Newcombe v. Adolf Coors Co.*,
   157 F.3d 686 (9th Cir. 1998) ........................................................................................10

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ......................................................................................7

*Twitter, Inc. v. Taamneh*,
   No. 21-1496, 2022 WL 4651263 (U.S. Oct. 3, 2022)....................................................2

*United States v. Little Lake Misere Land Co.*,
   412 U.S. 580 (1973)......................................................................................................3

*In re Vortex Fishing Sys. Inc.*,
   277 F.3d 1057 (9th Cir. 2002) ......................................................................................3

Waits v. Frito-Lay, Inc.,
   978 F.2d 1093 (9th Cir. 1992) (applying pre-1988 version of the Act) ..................................13

*WesternGeco LLC v. ION Geophysical Corp.*,
   138 S. Ct. 2129 (2018)..................................................................................................2

*Williams v. Apple, Inc.*,
   No. 19-CV-04700, 2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) ........................................15

**Statutes**

15 U.S.C. 1127...................................................................................................................8

15 U.S.C. § 1125(a)(1)......................................................................................................13

Cal. Civ. Code § 1798.100 *et seq.*.....................................................................................11

Communications Decency Act Section 230, 47 U.S.C. § 230 *et seq.* .................................. *passim*

**Other Authorities**

Matthew Bunker, Emily Erickson, *Of Circuit Splits, Dictionaries & Legal Essences: The Right of Publicity As "Intellectual Property"*, 29 UCLA Ent. L. Rev. 1, 17 (2022) ...........................................................................................................8

Restatement (Second) of Conflict of Laws § 6 cmt. a ....................................................................3

REPLY IN SUPPORT OF DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS
Case No. 5:22-cv-03699-EJD

## I.  INTRODUCTION

Plaintiff Andrew Forrest's ("Plaintiff" or "Forrest") Opposition, Dkt. No. 24 ("Opp"), confirms that the Second Amended Complaint, Dkt. No. 1-3 ("SAC"), should be dismissed. Plaintiff admits that Ninth Circuit precedent squarely forecloses his near-frivolous argument that Section 230 of the Communications Decency Act, 47 U.S.C. § 230 *et seq.* ("Section 230"), should not apply in cases brought in U.S. courts.  And, because Plaintiff can point to no allegation that Facebook contributed to the misappropriating nature of the ads or treated the complained-of ads differently than it would have treated any other user-submitted content, Section 230 precludes Plaintiff's attempt to hold Facebook liable as a "co-developer" of the ads.  In any event, all of Plaintiff's causes of action should be dismissed for failure to plead facts sufficient to state a claim.  This Court should dismiss the SAC with prejudice.

## II.  ARGUMENT

### A.  Section 230 of the Communications Decency Act Bars All Of Plaintiff's Claims

Plaintiff makes four arguments to try to evade Section 230, none of which have merit:  (1) that the Court should apply Australian law and not Section 230 ( Opp. at 22-25); (2) that Facebook's purported editing and optimization of ad content amounted to "co-development" of the scam ads (Opp. at 9-13); (3) that claims targeting Facebook as an "Advertising Agency" do not treat Facebook as a "publisher" of the scam ads (Opp. at 13-14); and (4) that the Lanham Act and misappropriation of likeness claims may proceed regardless of the Section 230 analysis because they fall under the statute's intellectual property exception (Opp. at 7-9).  Each one fails.

#### 1.  Plaintiff has no basis for evading U.S. law.

Plaintiff resists application of Section 230 by invoking the presumption against extraterritoriality (Opp. at 22-23) and choice of law principles (Opp. at 23-25).  Plaintiff is wrong on both counts.  *See* Defendant Facebook Inc's Motion to Dismiss, Dkt. No. 13 at 5-7 ("Mot.").

Plaintiff argues that applying Section 230 would be an improper extraterritorial application of the statute because the conduct that gave rise to his claims "occurred outside the United States."  Opp. at 23.  It is "doubtful" whether the presumption against extraterritoriality applies at all to Section 230, as it simply "afford[s] an affirmative defense to civil liability."

1

*Force v. Facebook, Inc.*, 934 F.3d 53, 73 (2d Cir. 2019).  Even so, applying the presumption here results in a conclusion that Plaintiff's case involves permissible domestic application of Section 230, and the place where he lives or where users viewed scam ads is irrelevant to that inquiry.  To determine whether a case involves an extraterritorial application of a statute, courts "identif[y] the statute's focus and ask[] whether the conduct relevant to that focus occurred in United States territory."  *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018) (internal punctuation omitted).  Because "the focus of Section 230(c)(1) is limiting liability," "the relevant conduct occurs where immunity is imposed . . . i.e., at the situs of this litigation."  *Gonzalez v. Google LLC*, 2 F.4th 871, 888 (9th Cir. 2021)[1]; *Force*, 934 F.3d at 74 ("The regulated conduct— the litigation of civil claims in federal courts—occurs entirely domestically.").

Plaintiff ultimately admits that Facebook "accurately" applied the Ninth Circuit's "holding that domestic application of Section 230 exists every time a party sues in the U.S." Opp. at 22 (internal quotation marks omitted); *see* Mot. at 5-7.  But he argues that *Gonzalez* "eviscerates the presumption against extraterritoriality."  Opp. at 22.  It does not.  The "presumption against extraterritoriality simply is not implicated" by statutes (like Section 230) that do not "govern conduct occurring abroad."  *Blazevska v. Raytheon Aircraft Co*., 522 F.3d 948, 953 (9th Cir. 2008).  Here, "[t]he only conduct [Section 230] could arguably be said to regulate is the ability of a party to initiate an action . . . in American courts—an entirely domestic endeavor."  *Id.* at 953.  Thus, it is entirely consonant with the presumption against extraterritoriality to say that certain statutes (like Section 230) do not raise extraterritoriality problems when applied in U.S. courts.

Plaintiff also invokes California choice of law principles, arguing that Australian immunity law should govern because "Australia's interest [in applying its law] is far greater" than California's.  Opp. at 25.  But as Facebook explained, the application of a federal statute like

---

[1] The Supreme Court recently granted *certiorari* in *Gonzalez* and a related case, *see Twitter, Inc. v. Taamneh*, No. 21-1496, 2022 WL 4651263, at *1 (U.S. Oct. 3, 2022), but the portions of *Gonzalez* pertaining to extraterritoriality are not under review.

Section 230 does not turn on this kind of choice of law analysis. *See* Mot. at 5-7. "Congress intended" Section 230 to apply to claims filed "in American courts," regardless of "the place where the claims principally arose." *Gonzalez*, 2 F.4th at 888. That legislative decision overrides any contrary directive from California state law, including its choice of law rules. "It is almost too obvious to state that [California] law, including the law governing conflict of laws, could not direct courts to disregard federal law." *Force v. Facebook, Inc.*, 304 F. Supp. 3d 315, 324 (E.D.N.Y. 2018). In short, "[California] law is not a permissible choice here," "[t]he choice of law merges with the constitutional demands of controlling federal legislation," and the federal courts must "turn away from state law [and Australian law] by default." *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 604 (1973).[2] Section 230, not Australian law, applies.

### 2.    Facebook did not "co-develop" the ads

Section 230 protection applies only to published content "provided by another information content provider," which is defined as someone who is "responsible, in whole or in part, for the creation or development of" content. 47 U.S.C. § 230(c), (f)(3). The crux of Plaintiff's Section 230 argument is that Facebook cannot be immune because it "co-developed" the offending advertisements. Opp. at 9-13. But, as Facebook explained (Mot. at 8-11), a publisher of third-party content becomes a "co-developer" of the content only if the publisher "materially contribut[es] *to its alleged unlawfulness.*" *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1167-68 (9th Cir. 2008) (en banc) (emphasis added). So "[a] website operator who edits user-created content—such as by correcting spelling, removing obscenity or trimming for length—retains his immunity for any illegality in the user-created content, provided that the edits are unrelated to the illegality." *Id.* at 1169. Here, Plaintiff has not and cannot plead (as he must) that Facebook edited or developed the ads in a way "that [was]

---

[2] The same result occurs under federal choice of law principles. *See In re Vortex Fishing Sys. Inc.*, 277 F.3d 1057, 1069 (9th Cir. 2002) (federal common law follows Restatement); Restatement (Second) of Conflict of Laws § 6 cmt. a, b (Am. L. Inst. 1971) (courts should apply a statute if "the legislature intended that [the statute] be applied to the out-of-state facts involved").

3

*particularly permissive* relative to other kinds of content." *Doe v. Reddit, Inc.*, No. 21-CV-768, 2021 WL 5860904, at *5 (C.D. Cal. Oct. 7, 2021) (emphasis added). At most, the SAC alleges that Facebook "augment[ed] the content generally" in the same way it treats all other ads. *Camacho v. Control Grp. Media Co.*, No. 21-CV-1954, 2022 WL 3093306, at *15 (S.D. Cal. July 18, 2022); *see* SAC ¶¶ 88-93, 103-135 (no indication that Facebook treated these ads differently than other ads or that Facebook's contributions were what made content unlawful). Countless cases have affirmed that such content-neutral activity is not enough. *Camacho*, 2022 WL 3093306 at *16 (collecting cases). And, of course, Plaintiff's tactic of repeatedly calling Facebook a "co-developer" cannot carry the day. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (legal conclusions need not be taken as true on a motion to dismiss even if they are couched as a factual allegation).

Plaintiff raises two arguments for why Facebook did more than "provide[] neutral tools to bad actors." Opp. at 11. First, he argues that Facebook "assumed editorial control" by "co-developing an ad's form, appearance, and presentation, including changing its appearance, offering suggested language and themes, and offering various versions of the near-completed ad." Opp. at 11 (citing SAC ¶¶ 88-93, 103-135). Second, he argues that Facebook made "targeting choices" and "optimize[d] ads" in order to "perfect[] the [ads]" and reach users who would be particularly susceptible to them. *Id.* Both arguments are fatally defective. Mot. at 9-11. The ad development tools Facebook allegedly offers—such as ad templates, *see* SAC ¶ 116, and a guide of "[b]est [p]ractices" for ads, *id.* ¶ 125—"did not specify or prompt the type of content to be submitted" and thus do not render Facebook a "co-developer" of the ads. *Gonzalez*, 2 F.4th at 895; *see In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, No. 21-MD-2985, 2022 WL 4009918, at *18 (N.D. Cal. Sept. 2, 2022) (Davila, J.) (noting that "the tools … [must] encourage the alleged illegality"). Without any allegation that Facebook's ad development tools prompted users to create illegal content, as opposed to any other content, §230 applies.

Likewise, Facebook's alleged optimization and targeting of ads does not make it a "co-developer," as the Ninth Circuit has consistently held. *See Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098-99 (9th Cir. 2019) (applying §230 to website's "algorithms" that "analyze

4

user posts" in order to "recommend[] other user groups"); *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270-71 (9th Cir. 2016) (same). This Court recently affirmed these holdings in *Casino-Style Games*, 2022 WL 4009918, at *17. There, social media companies who allegedly "develop[ed] specific advertisements meant to attract users to [unlawful] social casino apps" and "shar[ed] data with the social casino app developers to make their illegal product more appealing" were held to be §230 protected because they were acting as "editors"—"helping develop the social casino apps using big data to make the games more profitable." *Id.* at *18. Facebook's alleged targeting and optimization similarly constitutes an "editorial role," which is protected by §230.[3]

At their core, Plaintiff's arguments suffer the same flaw: they do not allege (as they must) that Facebook "ha[d] a special way of handling [the offending ads] that [was] particularly permissive relative to other kinds of content." *Reddit*, 2021 WL 5860904, at *5. Indeed, *all* of the website features identified in the SAC were available to *any user* who wished to publish an advertisement through Facebook. Thus, Plaintiff's allegations mirror those in *Casino-Style Games*: Facebook is alleged to have "work[ed] . . . to target and exploit [certain] users" by "aid[ing] in the design and direction of targeted advertising aimed at [those] users," to have "rel[ied] on algorithms to amplify and direct users to [unlawful] content," and to "ha[ve] an incentive"—namely, "significant profits"—"to do so." *Id.* at *17-18. *Casino-Style Games* recognized that such allegations still amount to a "classic editorial role"—because the defendant there (like Facebook here) did not contribute what made the content illegal, but rather was merely "providing edits or suggestions" by means of "neutral" tools available to any user of the platform. *Id.* Plaintiff likewise does not (and cannot) allege that Facebook treated this content differently

---

[3] In the other cases cited by Plaintiff (Opp. at 10-11), which are not binding on this court, the Defendant similarly contributed to the *illegality* of the content, rather than simply formatting and amplifying on a content-neutral basis. *E.g. Federal Trade Commission v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016) (defendant ad agency hired advertising affiliates, managed their operations, and made substantive changes to fake news sites produced by the affiliates as part of a deceptive ad scheme).

than any other third-party created content, so Section 230 bars his claims.[4]

### 3.    All of Plaintiff's claims seek to treat Facebook as the scam's "publisher."

Plaintiff argues that his claims do not treat Facebook as a "publisher," and therefore, Section 230 does not apply, because "Facebook's tortious acts as an advertising agency occurred before the fraudulent ads ever . . . [were] published."  Opp. at 13.  In other words, Plaintiff suggests that his "only" complaint is with Facebook's "ad business" (which "facilitated the development of the ads") and not Facebook's "social media arm" (which subsequently "published" them).  *Id.* at 13-14; *see also id.* at 14 (discussing the supposedly "clear line between [Facebook's] user platform and its ad business").  But Plaintiff cannot circumvent Section 230 by narrowing his complaint to encompass only the editing step of the publication process.  As the Ninth Circuit has observed, "a publisher reviews material submitted for publication, . . . edits it for style or technical fluency, … then decides whether to publish it"—and such a publisher is protected by §230 for the *entire* course of conduct.  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009); *see also Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003) (holding that Section 230 "precludes liability for exercising the usual prerogative of publishers . . . to edit the material" before publishing it).

*HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019), is therefore distinguishable.  *But see* Opp. at 13-14.  There, §230 was held not to apply to an ordinance that required websites to "refrain from completing any [vacation rental] booking transaction for

---

[4]  Forrest's various arguments about sales employees, Opp. at 12, 18, 20, do not change the calculus because (1) he does not allege sales employees interacted with the Syndicate in *this* case, and (2) he does not allege sales employees *encouraged* scam content in *any* case, as opposed to simply continuing to sell regardless of content.  SAC ¶139 (summarizing 2018 *Bloomberg* article reporting).  At most, the SAC alleges that Facebook employees had "knowledge of [the existence of] deceptive schemes," SAC ¶ 139, but "know[ledge] that third parties are using [neutral] tools to create illegal content" does not "affect the availability of [Section 230 protection]."  *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1198 (N.D. Cal. 2009); *Roommates*, 521 F.3d at 1169 n.24.

6

[unlicensed] properties" because engaging in those rental transactions was not an editorial function.  *HomeAway.com*, 918 F.3d at 680-82.  Here, by contrast, all of Facebook's alleged conduct "is fairly seen as a classic editorial role," which means that its editorial choices are protected by Section 230.  *Casino-Style Games*, 2022 WL 400918, at \*18.

### 4. Section 230's intellectual property exception does not apply to Plaintiff's publicity-rights-based claims.

Forrest argues that two claims—common law misappropriation of name and likeness and false endorsement under § 1125(a) of the Lanham Act—can move forward regardless of the analysis above because they fall under Section 230's so-called intellectual property exception.  *See* 47 U.S.C. § 230 (e)(2); Opp. at 7-8, 16.  They do not.  As the Ninth Circuit made clear in *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, the exception only applies to claims that (1) arise under "federal law," and (2) "pertain[] to an established intellectual property right under federal law" like "a patent, copyright, or trademark."  946 F.3d 1040, 1053 (9th Cir. 2019) (noting that, "because Congress did not define the term 'intellectual property law,' it should be construed narrowly to advance the CDA's express policy of providing broad immunity").  Neither of Plaintiff's claims meet those requirements.

The misappropriation of name and likeness claim fails at the first prong because it arises under state (not federal) law.  *See id.* (exception only covers federal claims)*; Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-1119 (9th Cir. 2007) (same).  While Plaintiff identifies a circuit split as to whether the exception covers claims arising under state law (*see* Opp. at 16), that is simply beside the point.  This Court is bound by Ninth Circuit law.

As to the Lanham Act claim, Plaintiff simply presumes without analysis that false endorsement is "a traditional 'intellectual property' claim" under federal law.  *See* Opp. at 7-8.  No controlling law supports that view.  Section 1125(a), the Lanham Act provision on which Plaintiff relies, "is one of the few provisions that goes beyond trademark protection."  *Dastar Corp. v. Twentieth Cent. Fox Film Corp.*, 539 U.S. 23, 28–29 (2003); *Enigma Software*, 946 F.3d at 1053 ("[E]ven though the Lanham Act is known as the federal trademark statute, not all claims brought under the statute involve trademarks.").  And while Forrest posits that a Lanham Act false endorsement claim treats the plaintiff's "persona" as an unregistered "trademark" for

7

purposes of the confusion analysis, Opp. at 7, the leading treatise explains that treating "a human persona or identity [as] a kind of 'trademark'" in such cases "is merely an *analogy* to traditional 'trademark' law" made to facilitate application of the likelihood of confusion factors.  5 McCarthy on Trademarks and Unfair Competition § 28:15 (5th ed.).  The persona is not *literally* a trademark and, indeed, "Lanham Act § 43(a)(1)(A) does not require that the plaintiff's identity have all the traditional indicia of a 'trademark' for a false endorsement to occur."[5]  *Id.*

Here, while the SAC alleges that Dr. Forrest has "celebrity status," SAC ¶¶ 42-45, 210, 213., it does not even attempt to allege facts showing that Dr. Forrest uses his name and likeness in commerce as a valid, source-identifying "mark."  *See* 15 U.S.C. 1127 (under the Lanham Act, a "trademark" must be "used by a person …  to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.").  And while publicity rights are entitled to protection, they are not "an established intellectual property right under federal law" like "a patent, copyright, or trademark."  *Enigma Software*, 946 F.3d at 1053; *see also* 5 McCarthy on Trademarks and Unfair Competition § 28:9 (5th ed.) (outlining "significant differences between trademarks and the right of publicity"); Matthew Bunker, Emily Erickson, *Of Circuit Splits, Dictionaries & Legal Essences: The Right of Publicity As "Intellectual Property",* 29 UCLA Ent. L. Rev. 1, 17 (2022) (explaining that persona-based rights are not intellectual property, including under Section 230's intellectual property exception).

### B.  Plaintiff Fails To State Any Viable Claim For Relief

#### 1.  Misappropriation of name and likeness

As Facebook explained, Forrest's misappropriation claim fails in the first instance because he has not alleged facts showing that Facebook, as opposed to the third-party fraudsters, "used"

---

[5] Notably, courts have recognized that even registered trademarks are fundamentally different from traditional intellectual property like copyrights and patents.  *See e.g. Enters. Rent-A-Car Co. v. Advantage Rent-A-Car, Inc*., 330 F.3d 1333, 1338 (Fed. Cir. 2003) (summarizing development of federal trademark law, distinguishing trademark from intellectual property, and citing cases).  A "persona" is even farther afield.

8

his name or likeness.  *See* Mot. at 14-15; *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 210 (2017).  Forrest's primary response is to double down on his "co-development" spin—but, again, the SAC, at most, alleges Facebook's involvement in non-substantive components of ads (like formatting and organization), *see supra* 3-5, not the substantive incorporation of Dr. Forrest's photo or name that would constitute "use."  And while Forrest suggests that "use" of a likeness can arise from simply "harvesting and monetizing data" based on content featuring that likeness (Opp. at 15), he offers no case law to support that proposition.  In *Cross*, as here, Facebook was purportedly using data about a page featuring plaintiff's image to post relevant ads on that page and increase overall engagement, but the Court found no "use" because "third parties," not Facebook, were the ones who created the content featuring plaintiff's name and image.  *Cross*, 14 Cal. App. 5th at 209.  Similarly, in *Perfect 10, Inc. v. Google, Inc.*, there was no "use" even though Google's AdSense placed ads relevant to models' likenesses.  No. CV 04-9484, 2010 WL 9479060, at *5 (C.D. Cal. July 30, 2010), aff'd, 653 F.3d 976 (9th Cir. 2011).  Finally, the fact that similar conduct has been held insufficient to support secondary liability strongly suggests that it cannot support the primary violation either, regardless of whether Plaintiff raised a secondary liability claim in this case.  Mot. 15, n.8.

While Forrest argues that Facebook "provided … ads for other third-party websites and mobile apps to publish on their sites" (Opp. 15), there is no such allegation in the SAC.  The only allegation in the SAC about content on third-party sites is that Facebook provides a piece of code—the "Meta Pixel"—that "[a]dvertisers [can] install … on their own websites" to collect information about the effectiveness of their Facebook ads (for example, the number of users visiting the URL after viewing an ad).  SAC ¶¶ 95-101.  The SAC concedes that the Meta Pixel is an "invisible" "snippet of JavaScript code;" it does not include Dr. Forrest's name or picture and thus could not possibly constitute misappropriation of his likeness.  SAC ¶¶ 95-96.  Plus, there is no allegation that the Syndicate installed a Meta Pixel on their landing page here.

As for Facebook's point that any misappropriation is not "to [Facebook's] advantage or benefit," (Mot. at 15), Forrest attempts to dodge by saying the issue is too "fact-reliant" to be decided on a motion to dismiss (Opp. at 16), but the SAC simply does not allege *any* fact

indicating that the benefit Facebook supposedly derives from advertisements featuring Dr. Forrest's likeness (whether direct advertising dollars or a generalized user engagement benefit) is different from the benefit that Facebook derives from advertisements that do not feature Dr. Forrest's likeness.  *See* Opp. at 16 (collecting SAC cites).  Thus, as in *Newcombe v. Adolf Coors Co.*, "the benefit [the defendant] received" by publishing ads is "unrelated to the contents of the advertising," and the misappropriation of likeness claim fails.  157 F.3d 686, 693 (9th Cir. 1998).

### 2.    Aiding and abetting fraud

Facebook established that Plaintiff has not adequately pleaded aiding and abetting fraud because Facebook's provision of its standard advertising services to a bad actor does not constitute "substantial assistance" in carrying out the allegedly fraudulent scheme.  Mot. at 15-17. Forrest again insists that Facebook's optimization and targeting of ad content—in particular, "assist[ing] the users in selecting various options on how to display ad content" and "modif[ying] ads before approval and publishing"—constitutes "substantial assistance."  Opp. at 19 (citing SAC ¶¶ 88-93).  But, again, the actual allegations in the SAC (and the sources cited therein) make clear that the system optimized and targeted *all* ad content in the same way.  *Supra* 3-5.[6]  And Forrest's allegations regarding sales employees are a red herring for the reasons explained above. *Supra* n.4.  Thus, this case is no different from *Chen v. PayPal, Inc.*, which held that setting up "buyer-friendly dispute resolution practices" and knowingly allowing buyers to defraud sellers through that process is insufficient to constitute "substantial assistance" under California law.  61 Cal. App. 5th 559, 584 (2021); *see* Opp. at 18 (wrongly attempting to distinguish *Chen* on the basis that it alleged "simple knowledge of the illicit acts and passive compliance").  And, despite Forrest's attempt to distinguish *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132 (N.D. Cal. 2021) and

---

[6] Again, the "options" and "modifications" on which Forrest relies involved formatting, display, and distribution of the ads.  *See, e.g.* SAC ¶ 93 (Facebook "will determine the size, placement and positioning of … ads"); "Facebook Ads Guide" (URL cited at SAC ¶124 n.20, available at https://tinyurl.com/4pjmzxuv) (setting out "design specifications and technical requirements" for ads including "dimensions, file sizes, character limits and more.").  In other words, Facebook did not contribute to the *fraudulent nature* of the scam ads. *Supra* 3-5.

10

*Diaz v. Intuit, Inc.*, No, 5:15-cv-01776, 2018 WL 2215790, at \*8 (N.D. Cal. May 15, 2018) as "failure to act" cases, Opp. at 19, they are on point as well.  Both cases make clear that *designing a system* in a way that allegedly facilitates wrongful conduct does not constitute substantial assistance.  *See* Mot. 17.  Here Plaintiff faults Facebook for offering an advertising product that, in his view, *did not do enough* to verify advertiser identity, identify scam ads, and remove scam ads when they occur.  That provision of a neutral service to bad actors—whether characterized as acting or failing to act—cannot constitute substantial assistance under California law.

### 3.      Unfair Competition Law

Forrest does not dispute that, if his underlying claims fail, so too must his claim under the UCL's "unlawful" prong.  Opp. at 17; *see Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999).  As Facebook has explained elsewhere, the predicate acts on which Forrest relies—misappropriation-of-likeness under California law and false endorsement claim under the Lanham Act—are both barred by §230 and fail on their own merits.

Likewise, Plaintiff's claim under the UCL's "unfair" prong also fails because the SAC is devoid of any allegations that Facebook itself is engaged in "deceptive or sharp practices."  *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 970 (1997) (citation omitted).  Forrest does not dispute that Facebook's alleged actions—collecting user data and leveraging it to provide targeted advertising—are a common practice across the industry that the state of California has chosen to regulate rather than prohibit.  *See* Cal. Civ. Code § 1798.100 et seq.  And while he characterizes the Lanham Act and similar state law as reflecting a legislatively-declared policy against false celebrity endorsements (Opp. at 17), he forgets that §230 reflects a legislatively-declared policy of *not* holding websites like Facebook liable for third-party content.  Moreover, contrary to Plaintiff's suggestion, courts routinely dismiss claims under the UCL's unlawful and unfair prongs at the motion to dismiss stage.  *See Levitt v. Yelp! Inc.*, 765 F.3d 1123 (9th Cir. 2014) (Affirming dismissal of claim under both prongs); *Georges v. Bank of Am., N.A.*, 845 F. App'x 490 (9th Cir. 2021) (Affirming dismissal of claim under "unlawful" prong of UCL after finding predicate acts lawful); *Hauck v. Advanced Micro Devices, Inc.*, 816 F. App'x 39 (9th Cir. 2020) (Affirming dismissal of claim under "unfair" prong of UCL); *Doe v. CVS Pharmacy, Inc.*, 982

11

F.3d 1204 (9th Cir. 2020), cert. granted in part, 141 S. Ct. 2882 (2021), and cert. dismissed sub nom. *CVS Pharmacy, Inc. v. Doe, One*, 142 S. Ct. 480 (2021) (same).  Plaintiff's UCL claim thus fails under either prong and should be dismissed.

### 4.      Negligent failure to warn

Forrest's failure to warn claim fails at the "duty" prong because, as the San Mateo Superior Court recognized, "a duty to warn does not exist absent a special relationship between Facebook and the plaintiff."  Dkt. No. 1-2 at 6 (San Mateo Superior Court Order); Mot. at 18-19.  Forrest concedes that there was no special relationship here.  Instead, he relies on the same argument he made before the superior court: repeatedly characterizing the alleged conduct by Facebook as misfeasance rather than nonfeasance.  Opp. at 20.  *Dyroff*, however, makes clear that this falls under the nonfeasance umbrella.  When a system operates in a "content-neutral" manner—meaning that it treats the allegedly harmful content the same as it treats other content— the system does not make a plaintiff who is harmed by the harmful third-party content "worse off" to constitute misfeasance.  *Dyroff*, 934 F.3d at 1096, 1100-1101.  And, despite Forrest's repeated invocation of buzzwords like "co-develop," the SAC does not (and cannot) allege that anything in the Facebook system works to make advertisements fraudulent or promotes or optimizes the scam ads differently from any other ad.  *See also supra* n.4 (addressing sales employees).  He therefore cannot overcome *Dyroff*.

Plaintiff also fails to plausibly allege causation because, as Facebook explained, warning Dr. Forrest about ads featuring *his own* likeness (which is the failure-to-warn theory Plaintiff advances, *see* SAC ¶¶ 204, 207, Opp. at 19-21) could not possibly stop Dr. Forrest from experiencing harm resulting from *other users* falling for the third-party scam.  *See* Mot at 19.  And this is doubly so given that, according to the SAC, Dr. Forrest knew about the ads by March 2019, *before* he expended any time or money trying to stop their proliferation.  Plaintiff does not even attempt to explain how warning Dr. Forrest about ads he already knew about and *didn't* himself fall for would have mitigated harm.

Finally, while Plaintiff insists (without citation) that "Facebook possessed the tools and the knowledge to identify and warn [Dr. Forrest] about any Scam Crypto Ads… prior to March

12

2019," (Opp. at 21), there is no such allegation in the SAC.  In any case, even if Facebook had inquiry knowledge prior to Dr. Forrest's discovery, Plaintiff would still fail to allege causation because a warning *to Dr. Forrest* would not stop the alleged harm.  And to the extent Plaintiff is alleging that Facebook had a duty to affirmatively identify scam ads featuring Dr. Forrest and then warn him, that simply makes clear that this claim is barred by Section 230.

### 5.    Lanham Act

As Facebook explained, Plaintiff failed to state a false endorsement claim under the Lanham Act, both because Facebook was "the wrong defendant" and because Plaintiff's likeness was not being used "in commerce."  Mot. at 19-21.  To reach the opposite conclusion, Plaintiff's Opposition ignores both statutory text and precedent.

First, Plaintiff ignores that the proper defendant in a false endorsement suit is someone who is falsely passing off *his or her own product* as endorsed by another.  The text of the Act is clear: a "person … shall be liable" if his or her use of a mark "in connection with any goods … is likely to cause confusion … as to the origin, sponsorship, or approval *of his or her goods*."  15 U.S.C. § 1125(a)(1).  Tellingly, Plaintiff makes no argument that Facebook is liable under the text of the statute.  *See* Opp. at 7-9.  Instead, Plaintiff cites two cases for the proposition that Lanham Act liability lies if the defendant misleads consumers as to a third party's goods.  *See id.* at 8.  Neither case, however, stands for the proposition.  The first, *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, involved a claim against a defendant for the use of a mark "on Defendants' [own] merchandise."  778 F.3d 1059, 1072 (9th Cir. 2015).  And the second, *Waits v. Frito-Lay, Inc.*, involved a prior version of the Lanham Act that omitted the limiting language of the current statute.  978 F.2d 1093, 1106 (9th Cir. 1992) (applying pre-1988 version of the Act).  Plaintiff's position therefore finds no support in statutory text or his own precedent.

Second, Plaintiff has not alleged that his likeness was used "in commerce."  As Plaintiff acknowledges, to be used "in commerce," a likeness must typically be used to "propose a commercial transaction."  *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021); *see* Opp. at 9; *see also Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013) ("Every circuit … has held that the [Lanham Act] appl[ies] only to commercial speech.").  But the speech

13

at issue in this case bears little resemblance to traditional commercial speech—there is no allegation, for example, that any ad provided "price or availability information" or "refer[red] to specific products." *Ariix*, 985 F.3d at 1116. The only advertisements reproduced in the complaint *do not* reference any cryptocurrency product at all. *See* Mot. at 20; SAC ¶¶ 5, 48. Thus, the SAC simply does not establish that this speech was commercial.[7]

### 6.     Unjust Enrichment

Plaintiff insists that unjust enrichment is supposed to function as an "out of the box" way to enforce "justice." Opp. at 21 (quoting from a section of *LeBrun v. CBS Television Studios, Inc*., 68 Cal. App. 5th 199, 211 (2021) that summarizes arguments that the court ultimately *rejects*). He does not appear to dispute, however, that there is no standalone cause of action for unjust enrichment under California law, and that such claims must fulfill the requirements of quasi-contract claims seeking restitution—namely, that *Plaintiff* conveyed a benefit to Facebook and that *Facebook* retained that benefit at the expense of Plaintiff—in order to proceed. *See* Mot. at 21-22. As Facebook explained, Plaintiff does not plead those elements here because the alleged benefit (ad revenue and data) came from the Syndicate, not Plaintiff, and was not a benefit that Plaintiff should have properly received. *Id.* And *First Nationwide Sav. v. Perry* does not say otherwise, as that case involved a third-party seller of real property who proceeded with the sale despite knowing about a prior mistaken reconveyance of a deed of trust that unjustly enriched him at plaintiff's expense. 11 Cal. App. 4th 1657, 1661 (1992). This case neither involves mistake, nor the transfer of real property.

Plaintiff also fails to overcome Facebook's argument that he may not proceed with an unjust enrichment claim that is duplicative of his other claims. *Astiana v. Hain Celestial Group, Inc.* is inopposite because the claims there—a misleading labeling claim and an unjust enrichment

---

[7] While Plaintiff alleges that users who viewed the ads were ultimately taken in by the Syndicate's scheme, he also has not established that *the ads themselves* were likely to "cause confusion." *See* Mot. at 21. Nobody could mistakenly believe that Plaintiff was endorsing a product that wasn't even mentioned. And Plaintiff acknowledges that the ads were "not facially credible even as fraudulent 'news reports.'" SAC ¶ 48.

14

claim based on allegations that the defendant's misleading labels duped the plaintiff into purchasing a product—were not necessarily overlapping.  783 F.3d 753, 762 (9th Cir. 2015). Indeed, this Court has since explained that *Astiana* did not repudiate the "basic doctrine of equity jurisprudence that courts of equity should not act when the moving party has an adequate remedy at law."  *Williams v. Apple, Inc.*, No. 19-CV-04700, 2020 WL 6743911, at *9 (N.D. Cal. Nov. 17, 2020) (citations omitted); *see also Brown v. Wells Fargo Bank, N.A.*, No. 19-CV-260, 2019 WL 3318551, at *8 (E.D. Cal. July 24, 2019) (dismissing duplicative unjust enrichment claim). Plaintiff's unjust enrichment claim should therefore be dismissed.

## III.    CONCLUSION

For the foregoing reasons, Facebook respectfully requests that the Court dismiss the Second Amended Complaint with prejudice.[8]

---

[8] It is unclear whether Forrest seeks an opportunity to amend *beyond* his currently-pending motion to amend the SAC to re-allege the negligent design cause of action that the state court already dismissed with prejudice.  *See* Dkt. No. 17.  That effort to file a Third Amended Complaint ("TAC") is procedurally improper considering the prior prejudicial dismissal and futile because the proposed negligent design claim (like Plaintiff's other claims) is barred by Section 230.  Dkt. No. 19; *see also supra* §II.A.  And Plaintiff's continued attempts to rejigger the complaint only confirm that dismissal *with* prejudice is appropriate here.  Given the ample time and unusually robust factual and legal background (including two MTDs and a court order) against which Plaintiff has drafted his SAC and TAC, further amendment would not just be futile, *see* Mot. at 22-23, but also unfair.  Facebook "should not be required to respond to a continually moving target."  *Kane v. Chobani, Inc.,* 973 F. Supp. 2d 1120, 1136 (N.D. Cal. 2014).

15

Dated:  October 14, 2022

ORRICK, HERRINGTON & SUTCLIFFE LLP


By:    */s/ Jacob M. Heath*
       JACOB M. HEATH

       Attorney for Defendant FACEBOOK, INC.

16