JACOB M. HEATH (BAR NO. 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

DANIEL S. GUERRA (BAR NO. 267559)
dguerra@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

MARK C. SMITH (BAR NO. 319003)
mark.smith@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, California 95814
Telephone:    +1 916 447 9200
Facsimile:    +1 916 329 4900

Attorneys for Defendant Facebook, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| DR. ANDREW FORREST, | Case No. 22-cv-03699-EJD |
| Plaintiff, | **DEFENDANT FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO STAY LITIGATION PENDING RESOLUTION OF PLAINTIFF'S CRIMINAL PROCEEDING AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION** |
| v. | |
| FACEBOOK, INC., | |
| Defendant. | |
| | Date:    March 23, 2023 |
| | Time:    9:00 am |
| | Judge:   Hon. Edward J. Davila |
| | Trial Date: None Set |

# NOTICE OF MOTION AND MOTION

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF DR. ANDREW FORREST AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 23, 2023, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Edward J. Davila, Courtroom 4, United States District Court, Northern District of California, located at 280 South 1st Street, San Jose, CA 95113, Defendant Facebook, Inc. ("Facebook") will and hereby does move for an order staying this action in its entirety pending resolution of the criminal proceedings against Facebook in Australia. This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Reply brief that will be filed in support of this Motion, the papers on file in this action, Facebook's Request for Judicial Notice, oral argument at the hearing, and any other matters that the Court may properly consider.

Dated: January 6, 2023                ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _/s/ Jacob M. Heath_
                    JACOB M. HEATH

                  Attorney for Defendant FACEBOOK, INC.

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 3

        A.      Plaintiff Sues Facebook in the California Court Based on Its Purported
                Decision to Not Remove Cryptocurrency Scam Ads ............................................. 3

        B.      After Facebook Demurs to Plaintiff's FAC, Plaintiff Commences *Private*
                Criminal Prosecution in His Home Country of Australia. ...................................... 4

        C.      The California Court Sustains Facebook's Demurrer to Plaintiff's FAC. ............... 7

III.    LEGAL STANDARD ......................................................................................... 8

IV.     ARGUMENT ...................................................................................................... 9

        A.      This Litigation and Plaintiff's Criminal Proceeding Are Parallel
                Proceedings Because They Arise from the Same Factual Nexus. ......................... 9

        B.      Absent a Stay, Plaintiff Could Use This Lawsuit to Circumvent Facebook's
                Rights as a Criminal Defendant in Plaintiff's Criminal Proceeding. .................... 11

        C.      A Stay Will Not Prejudice Plaintiff Because This Case Is Still in Its
                Infancy ...................................................................................................... 16

        D.      A Stay Would Align with the Convenience of the Court. ................................... 19

        E.      A Stay Would Align with the Interests of Third Parties. .................................... 19

        F.      A Stay Would Be in the Public's Interest. ....................................................... 19

V.      CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brock v. Tolkow*,
   109 F.R.D. 116 (E.D.N.Y. 1985) ............................................................................. 12, 13

*Chao v. Fleming*,
   498 F. Supp. 2d 1034 (W.D. Mich. 2007) .......................................................................... 11

*Cho v. City of Jose*,
   No. 21-cv-5503-VKD, 2022 WL 11902198 .......................................................................... 10

*Doe v. Cnty. Of Milwaukee*,
   No. 14-C-200, 2014 WL 3728078 (E.D. Wis. July 29, 2014) ........................................ 12

*Douglas v. United States*,
   Nos. C 03-4518 JW, C04-5357 JW, 2006 WL 2038375 (N.D. Cal. July 17,
   2006) ................................................................................................................................. 16, 19

*eBay, Inc. v. Digital Point Solutions, Inc.*,
   No. C 08-4052 JF, 2010 WL 702463 (N.D. Cal. Feb. 25, 2010) ............................... 10

*ESG Capital Partners LP v. Stratos*,
   22 F. Supp. 3d 1042 (C.D. Cal. 2014) ............................................................................... 15

*Forrest v. Facebook*,
   Case No. 21-CIV-05055 (Sep 17, 2021) ........................................................................... 3

*Four in One Co., Inc. v. SK Foods, L.P.*,
   No. CIV S 08-CV-3017 MCE, 2010 WL 4718751 (E.D. Cal. Nov. 12, 2010) ............... 15, 19

*Grubbs v. Irey*,
   No. Civ. S-06-1714 RRB, 2008 WL 906246 (E.D. Cal. Mar. 31, 2008)........................ 14

*Hatton v. Triplet*,
   No. 2:21-CV-1206 TLN, 2022 WL 12064524 (E.D. Cal. Oct. 20, 2022) ...................... 9

*Jones v. Conte*,
   No. C 04-5312S1, 2005 WL 1287017 (N.D. Cal. Apr. 19, 2005) .................................. 17

*Keating v. Off. of Thrift Supervision*,
   45 F.3d 322 (9th Cir. 1995) ................................................................................................ 9

*L.C. v. Gilbert*,
   No. C09-5586 BHS, 2010 WL 1641533 (W.D. Wash. Apr. 21, 2010) ......................... 9, 10

*Lopez v. City of Anaheim*,
   No. SACV 22-1351 JVS, 2022 WL 16859969 (C.D. Cal. Oct. 20, 2022) ................... 8, 17

*Maxwell v. R*
    (1996) 135 ALR 1 ................................................................................ 4

*Metzler v. Bennett*,
    No. 97-CV-148, 1998 WL 187454 (N.D.N.Y. Apr. 15, 1998) ................................. 9

*Neuchatel Swiss General Ins. Co. v. Lufthansa Airlines*,
    925 F.2d 1193 (9th Cir. 1991) ................................................................ 11

*Ochoa v. City of Los Angeles*,
    No. 2:20-CV-6963-AB, 2021 WL 6752249 (C.D. Cal. Dec. 29, 2021) ................... 16, 17

*Rex & Roberta Ling Living Trust U/B December 6, 1990 v. B Comm'ns Ltd.*,
    346 F. Supp. 3d 389 (S.D.N.Y. Sep. 27, 2018) .............................................. 11

*Reynaldo Gonzalez, et al. v. Google LLC*,
    Supreme Court No. 21-1333 .............................................................. 3, 17

*S.E.C. v. Nicholas*,
    569 F. Supp. 2d 1065 (C.D. Cal. 2008) ...................................................... 12

*S.E.C. v. Sandifur*,
    No. C05-1631 C, 2006 WL 3692611 (W.D. Wash. Dec. 11, 2006) ......................... 18

*SEC v. Alexander*,
    No. 10-CV-4535-LHK, 2010 WL 5388000 (N.D. Cal. Dec. 22, 2010) .............. *passim*

*Securities & Exchange Comm'n v. Dresser Indus.*,
    628 F.2d 1368 (D.C. Cir. 1980) ......................................................... *passim*

*Strickland v. Commonwealth Director of Public Prosecutions*
    (2018) 266 CLR 325 ............................................................................ 5

*Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*,
    No. 09-CV-0954 FCD, 2009 WL 2136986 ........................................... 15, 16, 17

*Townsend v. McDonnell*,
    No. 18-CV-10011-R, 2019 WL 13237088 (C.D. Cal. Mar. 20, 2019) ................... 10, 19

*U.S. S.E.C. v. Cioffi*,
    No. 08-CV-2457 (FB), 2008 WL 4693320 (E.D.N.Y. Oct. 23, 2008) ...................... 18

*U.S. Securities & Exchange Comm'n v. Dobkin*,
    No. 5:21-CV-9285-EDJ, 2022 WL 16924454 (N.D. Cal. Nov. 14, 2022) .................. 8

*United States v. Kordel*,
    397 U.S. 1 (1970) ........................................................................ 8, 18

*United States v. Pemberton*,
    435 F. Supp. 3d 250 (D. Me. 2020) .......................................................... 12

*Walsh Securities, Inc. v. Cristo Property Mgmt., Ltd.*,
  7 F. Supp. 2d 523 (D.N.J. 1998) ................................................................. 18

*Wimbledon Fund v. Graybox, LLC*,
  No. CV15-6633-CAS, 2017 WL 11628850 (C.D. Cal. Jan. 9, 2017) ...................... 8

*Wroth v. City of Rohnert Park*,
  No. 17-cv-5339-JST, 2018 WL 888466 (N.D. Cal. Feb. 14, 2018) ......................... 19

*X7 v. AUSTRALIAN CRIME COMMISSION and Another*
  (2013) 298 ALR 570 CLR 92 ................................................................. 5, 12, 13

*In re Zinnel*,
  No. 2:12-cv-249 MCE, 2013 WL 1284339 (E.D. Cal. Mar. 28, 2013) ................... 19

**Statutes**

Australian Consumer Law and the Australian Securities and Investments
  Commission Act ................................................................................ 6

California's Unfair Competition Law, Bus. & Prof. Code § 17200 ...................... 4

Communications Decency Act Section 230 ................................................. 1, 4, 7

Communications Decency Act Section 230(c)(1) .......................................... 7

The Criminal Code 1995 (Cth), section 400.7(2) .......................................... 5

Lanham Act ...................................................................................... 7

§13, Crimes Act 1914 ......................................................................... 4

§44, Criminal Procedure Act (WA) 2004 ................................................... 6

**Other Authorities**

Fifth Amendment ................................................................................ 19

Fed. R. Civ. P. 8(b) .......................................................................... 2, 13

Federal Rule of Criminal Procedure 16(b) ................................................. 8, 12

DEFENDANT FACEBOOK, INC.'S MOTION TO STAY LITIGATION PENDING RESOLUTION OF
PLAINTIFF'S CRIMINAL PROCEEDING AND MEMO OF POINTS & AUTHORIES IN SUPPORT
Case No. 22-cv-03699

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Facebook, Inc. ("Facebook" or "Defendant") respectfully submits this Motion to Stay Litigation pending resolution of Plaintiff Dr. Andrew Forrest's ("Plaintiff") criminal prosecution of Facebook in the Magistrates Court of Western Australia.

## I.    INTRODUCTION

In September 2021, Plaintiff, an Australian citizen and resident, sued Facebook[1] in California Superior Court (the "California Court"), asserting claims arising from alleged cryptocurrency scam ads that purportedly used his name and likeness. Plaintiff's lawsuit centers on allegations that Facebook purportedly failed to remove and prevent the cryptocurrency scam ads at issue. In January 2022, Facebook demurred to Plaintiff's First Amended Complaint ("FAC"), arguing—*inter alia*—that Section 230 of the Communications Decency Act ("Section 230") barred each of Plaintiff's claims for relief.

Just two weeks later, Plaintiff commenced a *criminal* prosecution against Facebook in the Magistrates Court of Western Australia (the "Australian Criminal Court"), where he resides. But this was not like any ordinary criminal proceeding, brought by an impartial government prosecutor. Rather, Plaintiff himself commenced the criminal proceeding and is now serving as the *criminal prosecutor* (aka "Prosecutor Forrest")[2] against Facebook. Put simply, the civil litigant here and the criminal prosecutor against Facebook *are one and the same.* Plaintiff's dual roles present an extraordinary situation—likely one of first impression—where an Australian private prosecutor is pursuing criminal charges against a corporation in his home country while also serving as the plaintiff in a parallel civil action in the United States.

If that were not sufficiently troubling, Plaintiff has prosecutorial authority over the criminal proceeding against Facebook—deciding, *inter alia*, what charges to pursue and what punishments to seek. And although Plaintiff has charged Facebook under different laws in his

---

[1] On October 28, 2021, Facebook, Inc., changed its name to Meta Platforms, Inc. ("Meta"). Because Plaintiff's Second Amended Complaint refers to Meta as "Facebook," for ease of reference this motion does likewise.

[2] This is how Plaintiff refers to himself in the pleadings when referring to his role as prosecutor against Facebook. *See* Second Amended Complaint ¶ 155.

criminal proceeding, the proceeding undoubtedly arises from the same factual allegations in the present lawsuit—*i.e.*, Facebook's purported failure to remove cryptocurrency ads.

The law is clear: a court may stay civil proceedings pending the resolution of parallel criminal proceedings, in the interest of justice, to avoid prejudice to the defendant. As established herein, because Plaintiff is serving as both civil litigant and criminal prosecutor in parallel proceedings (that he commenced), justice warrants a stay of this litigation pending a resolution of Plaintiff's criminal proceeding to avoid the significant and irreparable prejudice Facebook could suffer as a criminal defendant in Australia.

Crucially, absent a stay, Plaintiff would undermine Facebook's rights as a criminal defendant. As in criminal proceedings in the United States, Prosecutor Forrest alone carries the burden of proof. Indeed, Facebook need not present any response to the charges or produce evidence—let alone preview defense strategies in the Australian criminal proceeding. Yet, as a civil litigant here, that is exactly what Plaintiff will get—*i.e.*, access to *pleadings* (which per Fed. R. Civ. P. 8(b) will require Facebook to make denials, admissions, and disclose its potential defense to each of the allegations in Plaintiff's complaint)*, discovery,* and *evidence* from Facebook, all of which will undoubtedly reveal Facebook's theory of its case and its defense strategies. And, given that both proceedings arise from the same factual nexus, there is no doubt Plaintiff could leverage the discovery and knowledge gained in this litigation in his criminal prosecution against Facebook. This unfair advantage and threat to Facebook's rights as a criminal defendant warrant a stay.

Further, there are no remedies short of a stay, *e.g.*, a protective order, that would prevent this harm to Facebook. Notably, Plaintiff's attorneys—in the ordinary course of advising their client—are likely to disclose to Plaintiff information obtained in this lawsuit about Facebook's strategy and defenses based on the pleadings, discovery, and knowledge they have learned in this lawsuit. Plaintiff, in turn, could use what he has learned here in his criminal proceeding. And once this bell has been rung, there is no way to unring it. Allowing Plaintiff to use this civil litigation to build his criminal case would result in substantial prejudice to Facebook, as it would effectively force Facebook to decide between defending itself in the civil case or preserving its

rights in the criminal proceeding. No criminal defendant should face this untenable choice.

By contrast, a stay results in no prejudice to Plaintiff, who has taken virtually no steps to prosecute this lawsuit. Among other things, Plaintiff is seeking leave to file a Third Amended Complaint ("TAC"), substituted counsel in October 2022, took nearly *three* months to respond to Facebook's proposed protective order, and is now asking this Court to defer ruling on Meta's motion to dismiss the Second Amended Complaint ("SAC") until after the United States Supreme Court issues a decision in the pending case entitled *Reynaldo Gonzalez, et al. v. Google LLC*, Supreme Court No. 21-1333, effectively seeking a stay of this litigation. Further, staying this litigation would preserve judicial resources by avoiding duplicative litigation and the possibility of inconsistent rulings.

For all these reasons and all those discussed below, the Court should exercise its discretion to stay this litigation.

## II. BACKGROUND

Meta operates the Facebook service, which enables users to view, promote, and share content on their Facebook profiles. *See* SAC, Dkt. No. 1-3, ¶ 11. The Facebook service also enables advertisers to create ads, which Facebook displays to users as they navigate the platform. *Id.* ¶¶ 12, 14. Plaintiff is an Australian citizen, a "prominent Australian businessman and philanthropist," and was "Western Australia's 2017 Australian of the Year . . . ." *Id.* ¶¶ 32-45.

### A. Plaintiff Sues Facebook in the California Court Based on Its Purported Decision to Not Remove Cryptocurrency Scam Ads.

In September 2021, Plaintiff sued Facebook in state court in California. *See Forrest v. Facebook*, Case No. 21-CIV-05055 (Sep 17, 2021), San Mateo Superior Court ("State Ct. Dkt."), Complaint, Dkt. No. 2. Plaintiff's action asserts that third-party scammers misappropriated his name and likeness in cryptocurrency scam ads, and that Facebook failed to remove and prevent the scam ads. *See generally* State Ct. Dkt. No. 12 (FAC). Plaintiff further alleged that Facebook's purported practice of targeting content with the goal of driving user engagement makes it equally liable for the ads. FAC ¶¶ 56, 72, 74-75, 80. Plaintiff's FAC asserted five claims against Facebook—including California state law claims for common law

misappropriation-of-likeness, aiding and abetting fraud, negligent failure-to-warn, and negligent design, as well as violations of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200.  *See generally* FAC.

**B.** **After Facebook Demurs to Plaintiff's FAC, Plaintiff Commences *Private* Criminal Prosecution in His Home Country of Australia.**

On January 18, 2022, Facebook demurred to Plaintiff's FAC.  State Ct. Dkt. No 24. Facebook argued, among other things, that Section 230 barred each of Plaintiff's claims because Plaintiff sought to hold Facebook liable for its role as "publisher" of the third-party content—*i.e.*, the scam ads.  *Id.* at 7-12.  Less than two weeks later, on or around January 31, 2022, Plaintiff commenced a "private prosecution" against Facebook in the Australian Criminal Court, seeking to hold Facebook criminally liable for the purported third-party cryptocurrency scam ads.  SAC ¶ 152; *see also* Request for Judicial Notice ("RJN"), Ex. A ("Prosecution Notice"); *see also* Decl. of Jacob M. Heath ("Heath Decl.") ¶ 1.

Unlike a typical criminal proceeding where an independent and impartial government prosecutor initiates and prosecutes the criminal proceeding, Plaintiff acts as private prosecutor. *See* RJN, Ex. B (§13, Crimes Act 1914 (Cth) ("Australian Criminal Code")).  This is more than just a ministerial title or role.  Rather, once the government consents to and approves the initiation of a private prosecution, the private prosecutor wields powers identical to those of a traditional government prosecutor—such that Plaintiff has *full autonomy* over the criminal proceeding, *e.g.*, the ability to make charging decisions, to choose what punishments to pursue, and to otherwise conduct the proceedings as he deems appropriate.  *See generally* RJN, Ex. C (*Maxwell v. R* (1996) 135 ALR 1 (recognizing the authority and discretion of prosecutors) (decision by the High Court of Australia, Australia's highest appeals court equivalent to the United States Supreme Court)).  Indeed, Australian law gives a private prosecutor broad latitude to determine how to prosecute the case.  *Id.* (holding that the "decision whether to charge a lesser offence, or to accept a plea of guilty to a lesser offence than that charged, is for the prosecution and does not require the approval of the court" because the "role of the prosecution in this respect, as in many others, 'is such that it cannot be shared with the trial judge without placing in jeopardy the essential

independence of that office in the adversary system.'") (citation omitted).

As prosecutor, Plaintiff bears the burden of proof to establish each element of the alleged crimes beyond a reasonable doubt. *See generally* RJN, Ex. D (*X7 v. AUSTRALIAN CRIME COMMISSION and Another* (2013) 298 ALR 570, 248 CLR 92 ("*X7*") (decision by the High Court of Australia)). The rights of an accused in Australia includes the right to put the prosecution to proof, the right not to be required to give notice of the accused's defense to the criminal proceeding before the close of the prosecution's case, and the right to have the opportunity to assess the strength of the prosecution's evidence presented at trial before electing whether to mount a defense (and if so, on what basis). *X7* at ¶ 57-59. That is, the criminally accused are not required to engage in discovery, provide documents or information, or otherwise present evidence or a case in a criminal proceeding. *Id.* at ¶ 34 (recognizing the criminal defendant's right "to give or not to give evidence, and to reserve defenses," which requires "steps to prevent the prosecution from obtaining an unfair forensic advantage in the trial.") The Australian courts have recognized that prejudice to an accused's rights arises where a prosecutor derives an advantage by reason of either direct or derivative use of evidence on information gleaned from a civil proceedings, an advantage to which the prosecutor is not entitled in the criminal justice system. *Id.* at ¶ 52. This may require "steps to prevent the prosecution from obtaining an unfair forensic advantage in the trial . . . ." *Id.* at ¶ 34. If an accused had to "answer questions about the subject matter of the pending charge" in advance of the trial, that would "fundamentally alter the accusatorial judicial process" because "[n]o longer could the accused person decide the course which he or she should adopt at trial…according *only* to the strength of the prosecution's case." *See id.* at ¶ 124; RJN, Ex. E (*Strickland v. Commonwealth Director of Public Prosecutions* (2018) 266 CLR 325 (decision by the High Court of Australia)).

Plaintiff's criminal complaint asserts three criminal claims against Facebook, all relating to The Criminal Code 1995 (Cth), section 400.7(2) ("*Proceeds of crime etc.--money or property worth $1,000 or more.*"). *See* Prosecution Notice; *see also* SAC ¶¶ 152-53; RJN, Ex. F (The Criminal Code 1995 (Cth)). Plaintiff alleges that Facebook was criminally "reckless" because it purportedly did not take sufficient steps to stop the cryptocurrency scam ads. *See* Prosecution

Notice, Charge Nos. 1-3 (asserting that Facebook "was reckless as to the fact that there was a risk" its website "would become an instrument of crime . . ."); *see also* SAC ¶ 152. The allegations forming Plaintiff's criminal proceeding are nearly identical to those Plaintiff asserted in his SAC. *See SAC* at ¶ 162 (asserting that "the [Australian] Criminal Proceedings … concern" the "same … acts and omissions" as this proceeding); *see also id.* ¶ 151 (describing the Australian criminal proceeding as "relating to and arising from the Crypto Scam Ads."). Facebook was allegedly served with criminal process and was deemed to have pleaded not guilty, as it did not appear at the March 28, 2022, initial hearing. *See id.* ¶¶ 154, 157. Meta has since appeared at four disclosure/committal hearings ("DCHs") in the Australian criminal proceeding: on June 17, 2022; August 26, 2022; November 4, 2022; and December 9, 2022. Heath Decl. ¶ 2. The purpose of a DCH is for the Australian Criminal Court to satisfy itself that the prosecutor has complied with their disclosure obligations before committing the accused for trial. *See* §44, Criminal Procedure Act 2004 (WA). Plaintiff has disclosed documents to date in the Australian Criminal Court, but these disclosures remain ongoing. Heath Decl. ¶ 2. Hence, the Australian Criminal Court has not committed the matter for trial, and a fifth DCH has been scheduled for February 24, 2023. *Id.*

On October 6, 2022, Facebook voluntarily submitted to the Australian Criminal Court's jurisdiction (on a one-time basis) to defend against the specific charges in the case. *See* Heath Decl. ¶ 3. The criminal proceedings remain ongoing in Australia. *Id.*[3]

---

[3] In addition to the parallel criminal and civil proceedings against Facebook, on March 18, 2022, the Australian Competition and Consumer Commission ("ACCC")—*i.e.*, the regulatory agency tasked with enforcing competition and consumer protection laws—initiated a proceeding against Facebook, "alleging violation of the Australian Consumer Law and the Australian Securities and Investments Commission Act, further alleging that Facebook aided and abetted or was knowingly concerned in false or misleading conduct and representations by advertisers of scam advertisements featuring prominent Australian public figures . . . ." SAC ¶ 159; Heath Decl. ¶ 4. The ACCC's lawsuit similarly centers on allegations that Facebook purportedly failed to remove and prevent the cryptocurrency scam ads, including ads featuring the Plaintiff. The SAC's allegations strongly imply that the ACCC's regulatory action against Facebook concerns overlapping legal issues as those arising in this civil action. *See* SAC at ¶¶ 159–162. Furthermore, documents voluntarily provided by the ACCC divulge interaction, and possible coordination between the ACCC and the Plaintiff's representatives, including his personal lawyer, concerning the United States civil proceedings. *See* Section IV.B., *infra* (discussing Heath Decl. Exs. C–E).

**C.     The California Court Sustains Facebook's Demurrer to Plaintiff's FAC.**

On April 22, 2022, the California Court sustained Facebook's demurrer as to each of Plaintiff's claims. *See* Dkt No. 1-2 (adopted Tentative Order). The California Court held that Section 230 barred Plaintiff's claims for misappropriation of name or likeness, aiding and abetting fraud, unfair competition, negligent failure to warn, and negligent design because Plaintiff sought to hold Facebook, an interactive computer service provider, liable for third-party content. *See* Dkt No. 1-2, at 13 (sustaining the demurrer as to each of Plaintiff's claims "because each of those claims is based on allegations that Facebook committed acts in the role of a publisher, which Section 230(c)(1) precludes."). Apart from the negligent design claims, the California Court gave Plaintiff leave to amend.

In June 2022, Plaintiff filed his SAC, reasserting his original, previously dismissed claims and new claims for alleged violations under the Lanham Act, declaratory relief, and for unjust enrichment. *See generally*, SAC. As with his FAC and criminal proceeding, Plaintiff's SAC alleges that third-party scammers used Facebook's targeted advertising tools to create and distribute scam cryptocurrency advertisements featuring his name and likeness on Facebook's website. SAC ¶¶ 46-77. Likewise, Plaintiff alleges that Facebook "fail[ed] to stop" the purported scammers. *Id.* ¶¶ 77-79. As to his criminal proceeding, Plaintiff concedes in his SAC that his civil and criminal proceedings both relate and arise from the same "Crypto Scam Ads." *Id.* ¶ 151 (describing his criminal proceeding as "relating to and arising from the Crypto Scam Ads" at issue in his civil lawsuit). In addition to this concession, Plaintiff argues in his complaint that Facebook has engaged in "jurisdictional arbitrage," claiming that Facebook had refused to submit to the criminal proceedings "in order to seek to apply a uniquely U.S. statute that purports to afford immunity to Facebook." *See id.* ¶¶ 15, 149-167.

On June 23, 2022, Facebook removed the case to the U.S. District Court for the Northern District of California. *See* Dkt. No. 1. On July 18, 2022, Facebook moved to dismiss Plaintiff's SAC, Mot. to Dismiss, Dkt. No. 13, and on July 25, 2022, Plaintiff filed a motion for leave to file a TAC. *See* Mot. to Amend, Dkt. No. 17. Both motions are scheduled for a February 2, 2023, hearing. *See* Dkt. Entry dated 08/17/2022 (resetting hearings).

While in the California Court, Plaintiff issued discovery, including Form Interrogatories and 32 Requests for Production ("RFP") on February 18, 2022. Heath Decl. ¶¶ 5-6, Exs. A-B. Plaintiff's RFPs sought, *inter alia*, all documents related to: Plaintiff; the purported cryptocurrency scam that used Plaintiff's name and likeness; Facebook's internal research into and communications about fraudulent content on the platform; and Facebook's knowledge of any cryptocurrency scams or schemes directed to audiences in Australia. Heath Decl., Ex. B. Otherwise, Plaintiff has not propounded discovery since February 2022, Heath Decl. ¶ 7, and substituted counsel in October 2022. Dkt. No. 36.

## III. LEGAL STANDARD

A court—in the interest of justice—has discretion to stay civil litigation pending the completion of a parallel criminal proceeding. *Lopez v. City of Anaheim*, No. SACV 22-1351 JVS, 2022 WL 16859969, at *1 (C.D. Cal. Oct. 20, 2022) (staying litigation where defendants were under criminal investigation arising from the same facts at issue in the civil litigation). Such a stay is generally warranted "when the interests of justice seem to require such an action." *U.S. Securities & Exchange Comm'n v. Dobkin*, No. 5:21-CV-9285-EDJ, 2022 WL 16924454, at *2 (N.D. Cal. Nov. 14, 2022); *see United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970) (same) (collecting cases). Staying civil litigation pending resolution of a parallel criminal proceeding is based on "the particular circumstances and compelling interests involved in the case." *Wimbledon Fund v. Graybox, LLC*, No. CV15-6633-CAS, 2017 WL 11628850, at *3-5 (C.D. Cal. Jan. 9, 2017) (granting stay where the civil proceeding "could seriously burden [the defendant] and prejudice his criminal defense.").

Although the Ninth Circuit considers several factors in determining whether a stay is appropriate, the primary factor is whether civil and criminal proceedings are parallel—*i.e.*, whether "the civil proceeding wholly or substantially overlaps with the criminal proceeding." *SEC v. Alexander*, No. 10-CV-4535-LHK, 2010 WL 5388000, at *3 (N.D. Cal. Dec. 22, 2010) (citing *Securities & Exchange Comm'n v. Dresser Indus.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980) (*en banc*)). The "strongest case" for a stay is presented when the defendant is already "under indictment," because when a criminal action is underway, the possibility for "potential prejudice

to [the] civil defendant" *is plain*. *See Dresser*, 628 F.2d at 1375-76 ("The noncriminal proceeding, if not deferred, might . . . expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case."); *see also L.C. v. Gilbert*, No. C09-5586 BHS, 2010 WL 1641533, at *2 (W.D. Wash. Apr. 21, 2010) (granting stay and recognizing that courts have considered "the extent of the overlap" between the criminal and civil proceedings as "the 'most important factor'" warranting a stay).

Courts will also consider (1) the plaintiff's interest in proceeding expeditiously in the civil litigation and the potential prejudice of a delay; (2) the burden the civil litigation would place on the defendant; (3) the efficient use of judicial resources and the convenience of the court in managing its docket; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir. 1995); *see, e.g.*, *Hatton v. Triplet*, No. 2:21-CV-1206 TLN, 2022 WL 12064524, at *3 (E.D. Cal. Oct. 20, 2022) ("Relevant considerations generally include the extent to which the [defendant's] rights are implicated, and five further factors.").

## IV. ARGUMENT

As established below, each of the factors weigh heavily in favor of staying Plaintiff's civil litigation until his criminal proceeding against Facebook is resolved. *First*, there is no doubt that this lawsuit and Plaintiff's criminal proceeding are parallel proceedings because both arise from the same factual nexus—*i.e.*, Facebook's purported failure to remove and prevent the scam cryptocurrency ads that allegedly use his name and likeness. *Second*, this proceeding will severely prejudice Facebook's ability to defend itself in the criminal proceeding. *Third*, there is no reason to think that a stay of this proceeding would prejudice Plaintiff. *Finally*, the remaining factors also weigh in favor of a stay.

### A. This Litigation and Plaintiff's Criminal Proceeding Are Parallel Proceedings Because They Arise from the Same Factual Nexus.

The most important factor in the stay analysis is whether the civil and criminal proceedings are parallel. *Gilbert*, 2010 WL 1641533, at *2; *Metzler v. Bennett*, No. 97-CV-148

(RSP/GJD), 1998 WL 187454, at *6 (N.D.N.Y. Apr. 15, 1998) ("[T]he extent to which the issues in the criminal case overlap with those in the civil case, is regarded as the most important factor because [i]f there is no overlap, then there would be no danger of self-incrimination and no need for a stay.") (internal quotations and citation omitted).

Two proceedings are "likely" to be parallel when they arise out of "the same event or occurrence." *Cho v. City of Jose*, No. 21-cv-5503-VKD, 2022 WL 11902198, at *2; *see Townsend v. McDonnell*, No. 18-CV-10011-R, 2019 WL 13237088, at *1 (C.D. Cal. Mar. 20, 2019) ("Overlap occurs when simultaneous civil and criminal proceedings involve the same or closely related facts."). Such circumstances present "the strongest case for deferring civil proceedings" because "allowing the civil action to proceed" while there is a pending criminal proceeding is likely to "expand criminal discovery beyond the limits of [the applicable rules], expose the defense strategy to the prosecution before the criminal trial, or cause other prejudice." *Alexander*, 2010 WL 5388000, at *3; *Gilbert*, 2010 WL 1641533, at *2 (granting stay and noting that courts often consider this "the most important factor"). This factor weighs even heavier in favor of a stay where the defendant is already "under indictment." *Dresser*, 628 F.2d at 1375-76 ("[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter."). Such is the case because once a "criminal action is underway," the possibility for "potential prejudice to [the] civil defendant" **is plain**. *eBay, Inc. v. Digital Point Solutions, Inc.*, No. C 08-4052 JF, 2010 WL 702463, at *3 (N.D. Cal. Feb. 25, 2010).

Here, this factor weighs heavily in favor of a stay because Plaintiff's civil and criminal proceedings are undoubtedly parallel. As established above (*see* Section II.B., *supra*), the crux of Plaintiff's civil and criminal proceedings against Facebook are the nearly identical allegations that third parties misappropriated Plaintiff's name and likeness in cryptocurrency scam ads, and that Facebook allegedly failed to remove and prevent the scam ads, such that individuals in Australia purportedly viewed and believed the scam ads. *See* SAC ¶¶ 6, 14, 51, 77, 127. Leaving no doubt, Plaintiff himself concedes in his SAC that the proceedings are parallel, admitting that

his civil litigation and criminal proceeding arise from the same underlying facts. *See* SAC ¶ 152 (stating that "[o]n or about January 31, 2022, a Prosecution Notice issued out of the Magistrates Court of Western Australia . . . charg[ed] Facebook with three counts of federal crimes under [Australian law]"); *see also id.* ¶ 162 (asserting that "the [Australian] Criminal Proceedings … concern" the "same … acts and omissions" as this proceeding); *id.* ¶ 151 (describing the Australian criminal proceeding as "relating to and arising from the Crypto Scam Ads"). Indeed, Plaintiff dedicates nearly 20 paragraphs in his SAC to explain the connections between his civil and criminal proceedings. *See id.* ¶¶ 149-67.

Further, this factor weighs more heavily in favor of a stay because Plaintiff's criminal proceeding is well past the initial, pre-indictment phase and into the prosecutorial phase. *See* SAC ¶¶ 152, 154, and 157 (recounting that Facebook was charged "with three counts of [Australian] crimes," "served with [criminal] process," and pleaded not guilty). Thus, the prejudice to Facebook (*see* Section IV.B., *infra*) is no longer hypothetical, but instead real and present, underscoring the need for a stay.[4]

## B. Absent a Stay, Plaintiff Could Use This Lawsuit to Circumvent Facebook's Rights as a Criminal Defendant in Plaintiff's Criminal Proceeding.

Allowing Plaintiff as both civil litigant and criminal prosecutor to pursue simultaneously his civil and criminal proceedings will undoubtedly prejudice Facebook. The preeminent prejudice Facebook would suffer without a stay is the eroding of its rights as a criminal defendant. *See, e.g.*, *Alexander*, 2010 WL 5388000, at *5 (observing that erosion of a "Defendant's … rights" was a "well-recognized" source of prejudice arising from "parallel criminal and civil proceedings"); *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1038 (W.D. Mich. 2007) (granting stay and noting that stays are "most likely to be granted where the civil and

---

[4] That Plaintiff's criminal proceeding happens to be foreign, not domestic, is of no consequence. As the Ninth Circuit instructed in *Neuchatel Swiss General Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1194 (9th Cir. 1991), "the fact that the parallel proceedings are pending in a foreign jurisdiction rather than in a [domestic] court" should ordinarily be "immaterial" to the stay analysis. Lower courts have followed this instruction, applying the standard stay factors to state proceedings and foreign proceedings alike. *See, e.g.*, *Rex & Roberta Ling Living Trust U/B December 6, 1990 v. B Comm'ns Ltd.*, 346 F. Supp. 3d 389, 395 (S.D.N.Y. Sep. 27, 2018) (applying the stay factors to decide whether a civil action should be stayed pending resolution of parallel criminal proceedings in Israel).

criminal actions involve the same subject matter" and are "even more appropriate when both

actions are brought by the government.").

As explained above (*see* Section II.B., *supra*), because Plaintiff as criminal prosecutor

carries the burden of proof in his criminal proceeding, Facebook enjoys several protections as a

criminal defendant. Most notable is a criminal defendant's well-recognized right to "wait and

see"—put differently, the right holds the prosecution to its burden of proof, permitting Facebook

to refuse discovery, withhold notice of its defense theory before the close of the prosecution's

case, wait to decide whether to mount a defense, and decide how to defend the case *after*

considering the strength of the prosecution's evidence presented at trial. *See, e.g.*, *X7* at ¶ 34

(recognizing the right "to give or not to give evidence, and to reserve defenses," which requires

"steps to prevent the prosecution from obtaining an unfair forensic advantage in the trial"); *see*

*also United States v. Pemberton*, 435 F. Supp. 3d 250, 256 (D. Me. 2020) (observing that a

criminal defendant has no obligation "to show his defense hand before trial."). This right to

essentially *do nothing* to prevail in the criminal proceeding is fundamental to criminal justice in

the United States and Australia alike. *See Pemberton*, 435 F. Supp. 3d at 256; *X7* at ¶ 34.

Thus, it is no surprise that there is a strong aversion to circumstances where a criminal

defendant would be forced to expose the basis of their defense or theory of the case through civil

discovery. *See Alexander*, 2010 WL 538800 at *5 (holding that a stay was favored when "civil

discovery would unfairly expand the scope of criminal discovery"); *see also Dresser*, 628 F.2d at

1376; *see Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) ("If the defendants are served

with interrogatories in the civil case," responding to them "risk[s] providing the government with

leads or evidence that may be used against them in the criminal case."). Indeed, courts in both

jurisdictions recognize the importance of "prevent[ing] the prosecution from obtaining an unfair

forensic advantage . . . over and above what the prosecution would be accorded under normal trial

procedure." *X7* at ¶ 34; *see also Doe v. Cnty. Of Milwaukee*, No. 14-C-200, 2014 WL 3728078,

at *6 (E.D. Wis. July 29, 2014) ("[T]he Supreme Court . . . [has] favored a rule that trial courts

should prevent a defendant in a criminal case from using discovery in a related civil case to gather

evidence not available under criminal discovery rules."). Indeed, for these very reasons, criminal

discovery in both jurisdictions is tightly controlled. *See* Fed. R. Crim. P. 16(b) (stating that criminal discovery is "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witness from harassment and intimidation, and to level the playing field between the government and the defendant"); *see also S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065, 1071-72 (C.D. Cal. 2008) (observing that courts have rejected "attempt[s] to use civil discovery mechanisms to obtain disclosures that are otherwise unavailable under the criminal rules"); *X7* at ¶ 57 (discussing various "statutory prohibition[s] and safeguards" that limit the use of "compulsorily obtained evidence" in Australian criminal cases).

Here, to allow Plaintiff's parallel civil and criminal proceedings would effectively erode these fundamental protections. Crucially, if the Court does not dismiss Plaintiff's SAC fully, Facebook would be required to file an answer to any surviving claims. In so doing, Facebook would be required to deny, potentially admit, and disclose its defenses as to each allegation in Plaintiff's complaint—of which there are at least 227. *See* Fed. R. Civ. P. 8(b) (requiring an answer to include "short and plain terms its defense to each claim asserted against it" and "admit or deny the allegations . . ."). This would undoubtedly reveal Facebook's defensive strategy and require Facebook to admit to certain facts, something it need not do in the criminal proceeding.

Further, even though Facebook is not under a general obligation to disclose documents or provide evidence to Plaintiff in his criminal prosecution, Plaintiff in this lawsuit would be entitled to seek written discovery and depositions against Facebook that may require Facebook to provide documents, information, and testimony that Plaintiff could then use in the parallel criminal proceedings. Indeed, as explained above, (*see* Section II.C., *supra*), Plaintiff—as evidenced from his discovery requests in the California Court—intends to seek expansive civil discovery against Facebook purportedly related to, *inter alia*, the allegations that Facebook purportedly failed to remove and prevent the cryptocurrency scam ads. Facebook's discovery responses in this civil proceeding will, by necessity, divulge substantial insight into its criminal defenses. Accordingly, Facebook will be forced to "expos[e] the basis of the defense to the prosecution in advance of criminal trial," in direct violation of its rights. *Dresser*, 628 F.2d at 1376; *see Brock*, 109 F.R.D. at 120 (holding that responding to discovery in the civil case "risk[s] providing the government

with leads or evidence that may be used against them in the criminal case.").

Even Facebook's own discovery requests will "expose the basis of [Facebook's] defense to the criminal charges." *Alexander*, 2010 WL 5388000, at *5. That, too, threatens the fundamental rights afforded to every defendant in a criminal proceeding. As courts have consistently observed, these risks are "well-recognized consequences of parallel criminal and civil proceedings," and they strongly "support a stay." *Id.*; *see also Grubbs v. Irey*, No. Civ. S-06-1714 RRB, 2008 WL 906246, at *2 (E.D. Cal. Mar. 31, 2008) ("[C]ourts have been hesitant to permit a civil plaintiff to use the liberal civil discovery procedures to . . . [obtain] an otherwise impermissible preview of [the] criminal case.").

This risk to Facebook is even more acute here because the civil litigant and criminal prosecutor are one and the same—Plaintiff. There are no walls to be erected. Any pleadings, documents, information, or knowledge of Facebook's defense or theory of the case here will inherently give Plaintiff a material advantage via access to these materials in his criminal prosecution. No protective order can sufficiently ensure that Plaintiff will not use information he learns in civil discovery to attain an "unfair forensic advantage" in the Australian proceeding—for the obvious reason that Plaintiff cannot unlearn what he has learned as a litigant or through civil discovery. This goes beyond just the civil discovery. For example, Plaintiff could use any public pleadings—such as Facebook's potential answer—regardless of a protective order. Plaintiff could also use information obtained through this civil litigation that could help him compel testimonial and documentary evidence from third parties in the criminal prosecution. Moreover, it would be unrealistic to assume that Plaintiff's attorneys—in keeping Plaintiff informed of the developments in this civil litigation—would not disclose information and knowledge they learned of Facebook's defense and case theory here to Plaintiff. And, once that bell is rung, it cannot be unrung. *See Alexander*, 2010 WL 5388000, at *5 (finding a stay necessary because the plaintiff "confirmed that it anticipate[d] sharing information with the [prosecutor]"). Simply put, it is inevitable that information about Facebook's defenses and case theories will be shared with Plaintiff, who could, in turn, use them in his capacity as criminal prosecutor.

In fact, this risk is not merely hypothetical. Documents from the Australian regulatory and criminal actions show that Plaintiff's representatives, including his personal lawyer, have been sharing information about the California proceeding with the ACCC, including information about the strategic timing of the California proceeding and the criminal proceeding.[5] Given Plaintiff's demonstrated propensity to coordinate his strategy in the California proceeding with ACCC, Plaintiff will continue to leverage the information, documents, and evidence obtained in this litigation in his criminal prosecution against Facebook in Australia.[6]

Short of a stay, there is no other way to protect Facebook's rights as a criminal defendant in the Australian proceeding. Countless courts have issued stays in this precise context. *See Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*, No. 09-CV-0954 FCD, 2009 WL 2136986, at*2 (finding that a stay was favored when civil proceedings would "expose [the defendant's] strategy or theories with respect to the criminal case"); *see generally Four in One*

---

[5] These documents include, in part: a September 1, 2021, handwritten file note of meeting between ACCC and Forrest's representatives (*see* Heath Decl., ¶8, Ex. C at p. 4) (stating that "US proceeding [ ] Still going ahead time bar issues looming in Sept - hard decisions, as to what to do 6 claims we're advancing. . . . test case. Strategy offensive to driving it after criminal case[.]"); September 1, 2021, file notes of meeting between ACCC and Forrest's representatives (*see* Heath Decl., Ex. D at p. 4) (stating that "SC [Forrest's representative] explained that they have civil proceedings that they planned to advance in conjunction with the Australian proceedings. SC said that they face time bars in September so if there were further delays to the AG's decision, it was likely they would abandon the US proceedings for commercial and strategic reasons. SC said this information was highly confidential.")); April 14, 2021 file note of meeting between ACCC and Forrest's representatives (*see* Heath Decl., Ex. E at p. 4) (Forrest's representative disclosed that "[o]ne expert is based in California, who has helped them unravel how the advertising actually works, and where the Facebook servers sit . . . . [and that] they are going to simultaneously launch a civil action in California against Facebook based on the same facts."); September 1, 2021, email file note of meeting between ACCC and Forrest's representatives (*see* Heath Decl., ¶9, Ex. F at p. 1) (stating that "American proceeding? Still planning civil proceedings. Timing is essential here for us.")); April 14, 2021, email file note of meeting between ACCC and Forrest's representatives (*see* Heath Decl., Ex. G at p. 2) (noting the "sharing" of the "Californian experts"); September 21, 2021, email from Forrest's representative to ACCC (*see* Heath Decl., Ex. H at p. 1) ("Last Friday 17 September 2021, Dr Forrest filed a civil claim in California - San Mateo County - copy of the conformed Complaint attached."); and September 27, 2021, email from Forrest's representative to ACCC (*see* Heath Decl., Ex. I at p. 1) ("Have you been following the Wall Street Journal's article the Facebook Files? - prepared with a Whistleblower source. Dr Forrest's counsel in California is co- counsel.")).

[6] Prosecutor Forrest disclosed additional documents pursuant to his prosecutorial obligations to Facebook's Australian counsel that may further show his ongoing coordination concerning these parallel civil and criminal proceedings. Counsel for Facebook in this California proceeding do not yet have access to or have reviewed these documents because leave must first be granted by the relevant Australian court to share the documents outside of the criminal proceeding. Facebook reserves the right to exhibit or otherwise reference these documents in further pleadings once leave is granted.

DEFENDANT FACEBOOK, INC.'S MOTION TO STAY LITIGATION PENDING RESOLUTION OF
PLAINTIFF'S CRIMINAL PROCEEDING AND MEMO OF POINTS & AUTHORIES IN SUPPORT
Case No. 22-cv-03699

*Co., Inc. v. SK Foods, L.P.*, No. CIV S 08-CV-3017 MCE, 2010 WL 4718751, at *5 (E.D. Cal. Nov. 12, 2010) (collecting cases). This Court should do the same.

**C.    A Stay Will Not Prejudice Plaintiff Because This Case Is Still in Its Infancy.**

The next factor—"the plaintiff's interests in proceeding expeditiously"—acknowledges that "a civil plaintiff has an interest in having [his] case resolved quickly." *ESG Capital Partners LP v. Stratos*, 22 F. Supp. 3d 1042, 1045-46 (C.D. Cal. 2014). But to show that he will be unduly prejudiced by a stay, Plaintiff must "set forth . . . [specific] evidence," "beyond mere speculation and argument," that a delay will lead to prejudice. *Taylor*, 2009 WL 2136986, at *4 (E.D. Cal. July 15, 2009); *see also Alexander*, 2010 WL 5388000, at *4 (finding no prejudice to the plaintiff absent a showing of specific "circumstances [that] justify . . . immediate discovery").

Here, there are several reasons as to why Plaintiff will not suffer any particular prejudice because of a stay. Foremost, this case is still in its infancy and nowhere close to trial. In fact, when "[n]o answer has been filed," *Taylor*, 2009 WL 2136986, at *4, and there is a pending motion to dismiss, *see Ochoa v. City of Los Angeles*, No. 2:20-CV-6963-AB, 2021 WL 6752249, at *4 (C.D. Cal. Dec. 29, 2021), there is a good chance that the plaintiff will be able to "make use of materials [from] the [criminal] case to narrow the issues," which means that a stay "may in fact benefit the [plaintiff]." *Douglas v. United States*, Nos. C 03-4518 JW, C04-5357 JW, 2006 WL 2038375, at *4 (N.D. Cal. July 17, 2006). Thus, if a civil case remains in its early stages, this factor is less likely to "weigh against the implementation of a stay." *Ochoa*, 2021 WL 6752249, at *4 ("[T]he civil action has not significantly progressed as demonstrated by Defendants' Motion to Dismiss the SAC."). Here, the pleadings are not set. There is still a pending motion to dismiss Plaintiff's SAC and Plaintiff's motion for leave to file a TAC. Dkt. Nos. 13, 17. In fact, it is not even clear that Plaintiff has any viable claims as the California Court has already sustained a demurrer to his claims. Dkt. No. 1-2, at 3. Thus, at this early phase, a stay of these civil proceedings pending resolution of Plaintiff's criminal prosecution of Facebook will not result in prejudice.

Additionally, Plaintiff's own behavior of delay in this litigation demonstrates that a stay will not result in prejudice. Throughout this lawsuit, Plaintiff has requested additional time to

amend his complaint, (*see* State Ct. Dkt. No. 51), and now seeks leave to file a TAC, Dkt. No. 17. Plaintiff also has not propounded any discovery requests since February 2022, while in the California Court, Heath Decl. at ¶ 7, and took nearly ***three*** months to respond to Facebook's proposed protective order Heath Decl. at ¶ 10. Further, with the parties' pending motions for dismissal and to amend, the pleadings themselves remain in flux—especially because on December 23, 2022, Plaintiff informed Meta that he intends to ask this Court to defer ruling on the pending motions to dismiss and to amend the complaint until after the United States Supreme Court issues a decision in the pending case entitled *Reynaldo Gonzalez, et al. v. Google LLC*, Supreme Court No. 21-1333, effectively seeking to stay this litigation for at least several months. Heath Decl. at ¶ 11. Additionally, on January 5, 2023, Plaintiff offered to stipulate to a stay of the entire case, except for his demand that Facebook issue supplemental initial disclosures, pending resolution of *Gonzalez*. Heath Decl. at ¶ 12, Ex. J. It is therefore difficult to imagine how Plaintiff could be prejudiced by waiting until a final resolution is reached in his parallel criminal prosecution against Facebook in Australia.

Nor are there other reasons to think that Plaintiff would be prejudiced by a stay. There is, for example, no real "risk of evidence becoming stale." *Lopez*, 2022 WL 16859969, at *3. The SAC alleges recent events, most occurring after 2019. *See* SAC ¶ 5 ("Beginning in late March 2019, [Plaintiff] learned that fraudulent cryptocurrency advertisements were appearing on the Facebook platform."); *id.* ¶ 78 ("Between late 2019 and at least February 2022, the Scam Crypto Ads have still been co-developed, reviewed and approved for public dissemination by [Facebook]."). And "any potential loss of evidence is mitigated by the fact that [Plaintiff] is conducting a parallel criminal investigation." *Lopez*, 2022 WL 16859969, at *3 (concluding that because "[e]vidence is likely to be preserved through the [criminal] investigation," the plaintiff would "not be unduly prejudiced by a stay"); *Ochoa*, 2021 WL 6752249, at *4 ("[B]ecause the subject matter of the criminal case and this civil action is closely related . . . the relevant evidence will be preserved through the criminal case.").

Further, the risk of prejudice to Plaintiff is additionally mitigated because the SAC primarily seeks money damages. *See* SAC at 44-45. For damages claims, a stay does not raise

the prospect of prejudice because damages can always be "recouped through various means if [Plaintiff] obtains a judgment in [his] favor after the stay is lifted." *Taylor*, 2009 WL 2136986, at *4; *see also Jones v. Conte*, No. C 04-5312S1, 2005 WL 1287017, at *2 (N.D. Cal. Apr. 19, 2005) (granting a stay because the plaintiff's "harms may be remedied by monetary damages . . . after the stay has lifted."). Although Plaintiff may assert that his injury will be ongoing throughout the duration of the stay, such an injury would not be "particularly unique," as he would be "protected from monetary harm . . . by [his] ability to obtain interest as part of [any] ultimate judgment." *Walsh Securities, Inc. v. Cristo Property Mgmt., Ltd.*, 7 F. Supp. 2d 523, 528 (D.N.J. 1998). Nor is there any risk that Plaintiff "would not be able to recover on a judgment" because Facebook might dissipate its assets. *Id.* For these reasons, the availability of money damages weighs in favor of a stay.

Finally, any remaining arguments that Plaintiff would suffer prejudice from a stay should not be entertained by the Court because Plaintiff "voluntarily chose to institute [these] actions at the same time." *S.E.C. v. Sandifur*, No. C05-1631 C, 2006 WL 3692611, at *3 (W.D. Wash. Dec. 11, 2006). Courts have been "justifiably skeptical" of prejudice claims by litigants who are "responsible for the simultaneous proceedings in the first place." *U.S. S.E.C. v. Cioffi*, No. 08-CV-2457 (FB), 2008 WL 4693320, at *1 (E.D.N.Y. Oct. 23, 2008). As one court observes, if Plaintiff "thought this was a serious problem," he could "easily" have "wait[ed] until after the criminal matter was resolved to institute civil proceedings." *Sandifur*, 2006 WL 3692611, at *3; *cf. Kordel*, 397 U.S. at 11-12 (endorsing a stay of civil proceedings if the litigant "has brought a civil action solely to obtain evidence for its criminal prosecution"). Indeed, Plaintiff himself argues extensively in the SAC that this dispute should be litigated in Australia, not the United States, and that Facebook should submit "to jurisdiction in Australia," (SAC ¶ 167), because "[i]n this action the activities of the Syndicate have no connection to the United States other than the fact that they accessed and worked with Facebook's architecture of computer clusters around the world to develop, optimize, and then deliver the Scam Crypto Ads to members of the Australian public." *Id*. ¶ 163. Just as Plaintiff requested in his SAC, Facebook voluntarily submitted to the Australian Criminal Court's jurisdiction, on a one-time basis, on October 6, 2022—Plaintiff

cannot now claim prejudice on account of getting exactly what he asked for.

For all these reasons, there is no evidence that a stay would prejudice Plaintiff. Accordingly, this factor weighs in favor of a stay.

### D.  A Stay Would Align with the Convenience of the Court.

The next factor, the convenience of the court, clearly favors a stay, as "[t]here is significant judicial efficiency in granting a stay when it is likely that the parallel proceedings will rely on much of the same evidence and many of the same witnesses and the two cases will raise similar, if not identical issues." *Townsend*, 2019 WL 13237088, at *2.  Here, it is "apparent [that] the criminal case may later streamline discovery in the civil case." *Four in One Co., Inc.*, 2010 WL 4718751, at *6.  As Plaintiff himself alleges, the Australian criminal proceeding "concern[s]" the "same . . . acts and omissions" as this one.  SAC ¶ 162.  Accordingly, both proceedings are likely to involve "common issues of fact," which means that "the criminal matter [will likely] narrow the scope of civil discovery." *Wroth v. City of Rohnert Park*, No. 17-cv-5339-JST, 2018 WL 888466, at *3 (N.D. Cal. Feb. 14, 2018).  This factor therefore favors a stay.

### E.  A Stay Would Align with the Interests of Third Parties.

The interests of third parties also favor a stay.  Consider, for example, the possibility "that discovery may touch on . . . witnesses who are not parties . . . but who may be targets of the criminal investigation." *In re Zinnel*, No. 2:12-cv-249 MCE, 2013 WL 1284339, at *6 (E.D. Cal. Mar. 28, 2013).  A stay would obviate their dilemma "of having to choose between responding to questions at depositions or asserting their Fifth Amendment rights." *Four in One*, 2010 WL 4718751, at *6.  Consider, too, that the criminal matter will likely "narrow down the list of deponents" in this proceeding, "saving some witnesses the time and costs of appearing at all." *Douglas*, 2006 WL 2038375, at *6.  This factor weighs in favor of a stay.

### F.  A Stay Would Be in the Public's Interest.

Finally, the public has several relevant interests in staying this civil litigation.  As many courts have recognized, "where a criminal case on the same matter is already underway . . . the criminal case is of primary importance to the public, and the public's strongest interest is in ensuring the integrity of the criminal proceeding." *Alexander*, 2010 WL 5388000.  There is

therefore a strong public interest in safeguarding the right of criminal defendants to a fair trial. *See id.* And there is a strong public interest in ensuring that the "criminal process is not subverted by ongoing civil cases." *Douglas*, 2006 WL 2038375, at *6. Both interests strongly favor a stay of this civil proceeding. Thus, while the public "has some interest in the speedy resolution of the [civil] action . . . it is the public's interest in fair criminal proceedings" that ultimately "takes precedence." *Alexander*, 2010 WL 5388000, at *6. This factor, too, favors a stay.

## V.   CONCLUSION

This case presents what courts have repeatedly described as "one of the strongest [contexts] for granting a stay"—namely, "where a party under indictment for a serious offense is required to defend a civil . . . action involving the same matter." *Id.* at *7 (quoting *Dresser*, 628 F.2d at 1375-76). Here, all of the relevant factors favor a stay, and—in particular—allowing the civil case to proceed would "undermine [the] privilege against self-incrimination," "expand rights of criminal discovery beyond the [ordinary] limits," "expose the basis of the defense to the prosecution in advance of criminal trial," and "otherwise prejudice the [criminal] case." *Dresser*, 628 F.2d at 1376. Given the unique circumstances in this case, these "well-recognized [problems with] parallel criminal and civil proceedings" are preventable only by staying this civil action. *Alexander*, 2010 WL 5388000, at *5.

For these reasons, Facebook respectfully requests that this case be stayed pending final resolution of Plaintiff's parallel criminal prosecution against Facebook in Australia.

Dated:  January 6, 2023

ORRICK, HERRINGTON & SUTCLIFFE LLP


By:   */s/ Jacob M. Heath*
JACOB M. HEATH

Attorney for Defendant FACEBOOK, INC.