1           UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4   DR. ANDREW FORREST, AN          )  C-22-03699 PCP
    INDIVIDUAL,                      )
5                                    )  SAN JOSE, CALIFORNIA
                PLAINTIFF,           )
6                                    )  OCTOBER 26, 2023
            VS.                      )
7                                    )  PAGES 1-28
    FACEBOOK, INC., A DELAWARE       )
8   CORPORATION, AND DOES 1 THROUGH  )
    20, INCLUSIVE,                   )
9                                    )
                DEFENDANTS.          )
10  _____

11

12           TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE P. CASEY PITTS
13          UNITED STATES DISTRICT JUDGE

14  A P P E A R A N C E S:

15  FOR THE PLAINTIFF:    BAILEY & GLASSER LLP
                          BY:  LESLIE BRUECKNER
16                        1999 HARRISON STREET, SUITE 660
                          OAKLAND, CALIFORNIA  94612
17
                          DEREK G. HOWARD LAW FIRM, INC.
18                        BY:  DEREK G. HOWARD
                          42 MILLER AVENUE
19                        MILL VALLEY, CALIFORNIA  94941

20  FOR THE DEFENDANT:    ORRICK, HERRINGTON & SUTCLIFFE LLP
                          BY:  JACOB M. HEATH
21                        1000 MARSH ROAD
                          MENLO PARK, CALIFORNIA  94025
22

23  OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                CERTIFICATE NUMBER 9595
24

25       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
            TRANSCRIPT PRODUCED WITH COMPUTER

```
 1      SAN JOSE, CALIFORNIA                    OCTOBER 26, 2023

 2                       P R O C E E D I N G S

 3          (COURT CONVENED AT 1:23 P.M.)

 4              THE CLERK:  ALL RIGHT.  CALLING CASE NUMBER

 5      22-CV-3699, FORREST VERSUS FACEBOOK.

 6          WILL THE PARTIES PLEASE APPROACH AND STATE YOUR

 7      APPEARANCES FOR THE RECORD, BEGINNING WITH PLAINTIFF'S COUNSEL.

 8              MS. BRUECKNER:  GOOD AFTERNOON, YOUR HONOR.

 9          MY NAME IS LESLIE BRUECKNER.  I'M HERE ON BEHALF OF

10      ANDREW FORREST.

11              THE COURT:  GOOD AFTERNOON.

12              MR. HOWARD:  GOOD AFTERNOON, YOUR HONOR.

13          DEREK HOWARD FOR THE PLAINTIFF.

14              THE COURT:  GOOD AFTERNOON.

15              MR. HEATH:  GOOD AFTERNOON, YOUR HONOR.

16          JACOB HEATH FROM ORRICK, HERRINGTON & SUTCLIFFE ON BEHALF

17      OF FACEBOOK AND META, AND HERE I HAVE A CLIENT REPRESENTATIVE

18      AS WELL.

19              THE COURT:  GOOD AFTERNOON.  WELCOME.

20          SO I UNDERSTAND WE HAVE A JOINT CASE MANAGEMENT STATEMENT

21      THAT'S HERE.  I THINK THE, THE SUBJECT OF DISCUSSION IS THE

22      STAY THAT IS IN PLACE UNTIL NOVEMBER 3RD AND WHETHER THERE WILL

23      BE AN EXTENSION OF THAT STAY MOVING FORWARD.

24          AND LET ME START WITH -- LET ME START WITH MR. HEATH,

25      COUNSEL FOR META.
```

1          CAN YOU EXPLAIN TO ME WHAT THE -- YOU KNOW, THIS CASE HAS

2     BEEN PENDING FOR AWHILE.

3               MR. HEATH:  IT HAS.

4               THE COURT:  THERE IS -- YOU KNOW, THERE HAVE BEEN

5      SOME PROCEEDINGS ABOUT THE MERITS OF THE COMPLAINT, THERE'S

6      BEEN PROCEEDINGS ALREADY, FACEBOOK HAD FILED A MOTION TO

7      DISMISS EARLIER IN THE PROCEEDINGS, SO UNDERSTANDABLY BEFORE

8      THE INITIATION OF THE AUSTRALIAN CRIMINAL MATTER.

9          WHAT WOULD BE -- I UNDERSTAND YOUR CONCERNS ABOUT FILING

10     AN ANSWER, ABOUT GETTING INTO DISCOVERY.

11         I'M NOT SURE I SEE A REAL KIND OF HARM THAT COULD RESULT

12     FROM, FROM SORT OF SQUARING UP THE PLEADINGS WHILE WE ARE

13     WAITING FOR WHATEVER IS GOING TO HAPPEN IN AUSTRALIA TO HAPPEN.

14         SO, YOU KNOW, OBVIOUSLY, AGAIN, IF -- IF -- GENERALLY I

15     WOULD THINK WE WOULD BE LITIGATING THAT QUESTION ON ASSUMING

16     THE TRUTH OF THE ALLEGATIONS IN THE COMPLAINT.  I MEAN, I

17     SUPPOSE IF YOU THOUGHT THERE WAS SOME SECRET AFFIRMATIVE

18     DEFENSE THAT THEY'VE LITIGATED THEMSELVES INTO, I MEAN, THAT

19     WOULD BE SOMETHING.

20         I MEAN, WE KNOW SECTION 230, PRESUMABLY WE'LL SEE THAT IN

21     A MOTION TO DISMISS.

22               MR. HEATH:  RIGHT.

23               THE COURT:  SO I GUESS ONE QUESTION IS GENERALLY,

24      WHAT IS THE RISK OF DOING THAT?

25               AND, YOU KNOW, OKAY, ASSUMING THERE IS -- EVEN IF THERE

1    WERE A RISK, IF THAT CAME UP, COULDN'T THAT BE ADDRESSED BY

2    ALLOWING SOME DEGREE OF SEALING FOR THE TIME BEING OF

3    PROCEEDINGS -- OF THE BRIEFING, AN ATTORNEYS' EYES ONLY

4    PROTECTION, OR IS THERE A WAY THAT WE COULD GET THIS DONE IN A

5    WAY THAT -- IF THAT CONCERN EXISTS -- I'M STILL NOT SURE I SEE

6    WHY IT'S A CONCERN.

7            MR. HEATH:  SURE.  AND IT'S A GREAT PLACE TO START,

8     YOUR HONOR.

9        SO I THINK YOU HIT IT ON THE NAIL, WHICH IS THERE ARE ALL

10    THE POSSIBILITIES, WE OBVIOUSLY HAVEN'T SEEN THEIR AMENDED,

11    THEIR PROPOSED AMENDED COMPLAINT AND WHAT THAT MAY LOOK LIKE,

12    BUT THERE ARE ABSOLUTELY POSSIBILITIES THAT META MAY HAVE

13    DEFENSES THAT APPEAR ON THE FACE OF THE COMPLAINT, TAKING THEIR

14    FACTS AS TRUE, THAT WE WOULD HAVE TO ARGUE THOSE DEFENSES AND

15    WE OBVIOUSLY WOULD.  SECTION 230 IS ONE ISSUE, BUT THERE MAY BE

16    OTHERS.  THERE MAY BE TERMS OF SERVICE.

17        THERE MAY BE A HOST OF OTHER DEFENSES THAT THE COURT MAY

18    BE ABLE TO RULE ON AS A MATTER OF LAW THAT WOULD UNDOUBTEDLY

19    REVEAL HOW WE VIEW THE CASE, OUR THEORY OF THE CASE, AND THAT

20    IS SOMETHING THAT WE DON'T HAVE TO REVEAL IN THE AUSTRALIAN

21    PROCEEDING RIGHT NOW, OR EVER, AND THAT'S SOMETHING THAT THE

22    COURT FOUND PRIOR.

23        NOW, WITH RESPECT TO WHETHER THEY WANT TO AMEND NOW AND

24    WHETHER THAT'S FEASIBLE, POSSIBLE, APPROPRIATE -- AND I THINK

25    WE'VE TOLD THIS TO PLAINTIFF'S COUNSEL AND WE WILL SAY IT AGAIN

1    HERE -- WE'RE HAPPY TO TAKE A LOOK AT THE PROPOSED AMENDED

2    COMPLAINT.

3         WHAT WE WOULD NOT WANT TO DO IS HAVE TO RESPOND TO THAT IN

4    ANY GIVEN TIME UNTIL AFTER, AT A MINIMUM, THE STAY IS LIFTED.

5    WE THINK THE STAY SHOULD STAY IN PLACE THROUGH THE CRIMINAL

6    PROCEEDING FOR ALL THE REASONS WE'VE ALREADY ARTICULATED IN OUR

7    MOTION.

8         AGAIN, IF THEY WANT TO AMEND THEIR COMPLAINT AND THERE'S A

9    GOOD FAITH BASIS FOR THEM TO DO SO, WE CAN HAVE THAT

10   DISCUSSION.

11        I THINK, GIVEN THAT THE COMMITTAL HEARING HAS BEEN KICKED

12   OUT MANY TIMES OVER THE LAST SIX MONTHS, IT COULD BE ANOTHER

13   SIX MONTHS.  SO WHY HAVE THEM DO THE WORK NOW WHEN THEY CAN DO

14   IT SIX MONTHS FROM NOW OR AFTER THAT'S TAKEN PLACE TO SAVE

15   THEIR OWN RESOURCES?

16        OUR CONCERN IS MAKING SURE THAT WE DON'T PREJUDICE

17   OURSELVES BY REVEALING ANYTHING THAT WE ARE NOT OTHERWISE

18   REQUIRED TO DO IN THE AUSTRALIAN PROCEEDING, WHICH IS RIGHT NOW

19   NOTHING, TO PREJUDICE OURSELVES THERE.  ONCE THAT HAPPENS, WE

20   CAN'T TAKE THAT BACK.

21        SO YOUR POINT IS WELL TAKEN.  WE DON'T KNOW WHAT'S GOING

22   TO BE IN THEIR AMENDED COMPLAINT, PROBABLY AN ISSUE WITH

23   SECTION 230, BUT THERE MAY BE OTHER DEFENSES THAT WE HAVE THAT

24   WE PROPOSE NOT TO HAVE TO SAY AND REVEAL THAT FOR THE

25   AUSTRALIAN PROCEEDING.

1            WITH RESPECT TO --

2                THE COURT:  I GUESS I DON'T FULLY UNDERSTAND THAT,

3        THOUGH, RIGHT?  BECAUSE THE LITIGATION HERE WILL BE SOLELY

4        ABOUT, YOU KNOW, WHETHER THE COMPLAINT STATES A CLAIM FOR

5        RELIEF.  THERE WILL BE A -- YOU KNOW, IT'S A LEGAL QUESTION

6        ABOUT THEIR COMPLAINT AND THE VALIDITY OF THAT COMPLAINT, AND I

7        DON'T KNOW -- YOU KNOW, PRESUMABLY YOU -- THAT'S THE QUESTION

8        YOU WILL BE ANSWERING.

9            IT DOESN'T SAY ABOUT HOW YOU MIGHT DEFEND YOURSELF IN AN

10       AUSTRALIAN CRIMINAL PROCEEDING UNDER THE STANDARDS THAT GOVERN

11       PLEADING IN FEDERAL COURT.  IS THIS COMPLAINT VALID?  DOES IT

12       STATE A VALID CLAIM FOR A RELIEF, OR ARE THERE LEGAL

13       INVALIDITIES THAT ARE APPLICABLE?

14           I REALLY DON'T -- YOU KNOW, IT SEEMS PRETTY ABSTRACT AND

15       FARFETCHED TO SUGGEST THAT --

16               MR. HEATH:  YEAH, I CAN TRY TO PUT SOME MEAT THAT.

17           ONE OF THE DEFENSES THAT HAS BEEN LITIGATED NUMEROUS TIMES

18       IN CASES REGARDING META IS TERMS OF SERVICE, RIGHT?  THE TERMS

19       OF SERVICE MAY APPLY.  THE TERMS OF SERVICE MAY, FOR EXAMPLE --

20       THESE ARE ISSUES THAT HAVE BEEN LITIGATED.  I'M NOT TALKING

21       SPECIFICALLY ABOUT HERE GIVEN WE DON'T KNOW WHAT'S IN THE

22       PROPOSED AMENDED COMPLAINT.

23           BUT AS A MATTER OF LAW, COURTS HAVE SAID, THESE TERMS

24       APPLY, THEY ABSOLVE META OF ANY WRONGDOING, OR AT LEAST

25       LIABILITY IN THIS CONTEXT.

1          THAT IS A POSSIBILITY -- THAT'S A POSSIBLE ARGUMENT

2    DEPENDING ON WHAT THEY PUT IN THEIR COMPLAINT.  THAT COULD GIVE

3    RISE TO A -- THAT COULD DISCLOSE, IN THE AUSTRALIAN PROCEEDING,

4    HOW WE VIEW THIS CASE, HOW WE THEORIZE WHAT WE THINK OUR

5    RESPONSIBILITIES ARE AS META VIS-A-VIS THE ALLEGATIONS IN THE

6    AUSTRALIAN CASE AS WELL, AND I DON'T THINK YOU CAN REALLY

7    SEPARATE THOSE TWO OUT.

8          NOW, AGAIN, WE DON'T KNOW WHAT'S IN THEIR AMENDED, OR WHAT

9    WILL BE IN THEIR PROPOSED AMENDED COMPLAINT.  BUT THAT IS ONE

10   SIMILAR ISSUE THAT COMES UP ON A REGULAR BASIS IN THESE TYPES

11   OF LAWSUITS THAT COULD COME UP HERE IF WE HAD TO RESPOND.

12          THE COURT:  AND, I MEAN, AGAIN, I UNDERSTAND YOUR

13   POINT ABOUT YOU DON'T HAVE ANY BURDEN IN THE AUSTRALIAN

14   PROCEEDINGS, BUT IF -- YOU KNOW, IF YOU EXPLAIN NOW -- I MEAN,

15   PRESUMABLY THIS ONLY COMES UP IF THEY REFERENCE THE TERMS OF

16   SERVICE BECAUSE THEY WOULD HAVE TO BE INCORPORATED BY REFERENCE

17   IN THE COMPLAINT FOR YOU TO RELY ON THEM ON A 12(B)(6) MOTION

18   PRESUMABLY.

19          SO, AGAIN, WE'RE SORT OF STILL IN THE THEORETICAL WORLD OF

20   WHAT'S THEIR COMPLAINT, NOT WHAT'S YOUR POSITION.

21          MR. HEATH:  RIGHT.

22          THE COURT:  BUT AT SOME POINT, YOU KNOW, THIS IS

23   GOING TO COME UP.  WHAT'S THE HARM IN SAYING, META SAYING THESE

24   ARE THE SERVICE TERMS OF SERVICE THAT WERE IN PLACE AND THIS IS

25   HOW WE INTERPRET THEM?  HOW IS THAT GOING TO PREJUDICE YOU IN

1     AN AUSTRALIAN CRIMINAL PROCEEDING?

2          MR. HEATH:  SO, AGAIN, IN THE AUSTRALIAN CRIMINAL

3     PROCEEDING, WE HAVE ABSOLUTELY NO BURDEN WHATSOEVER TO PUT

4     FORTH ANY -- ANYTHING ABOUT EITHER FACTS, EVIDENCE, OUR

5     THEORIES OF THE CASE, OUR THEORIES OF LIABILITY, OR AFFIRMATIVE

6     DEFENSES.

7          I DO THINK -- AND, AGAIN, I'M NOT PROSECUTING THE CASE --

8     BUT I DO THINK THERE IS A POSSIBILITY THAT YOU COULD HAVE

9     SOMEONE -- YOU COULD HAVE THE -- YOU COULD HAVE A SITUATION

10    WHERE REVEALING THE FACT THAT WE THINK OUR TERMS OF SERVICE,

11    FOR EXAMPLE, DO NOT MAKE US LIABLE FOR THIS TYPE OF BEHAVIOR

12    MAY GO TO MENS REA WITH RESPECT TO -- SOME OF THOSE CLAIMS MAY

13    BE -- IN THE AUSTRALIAN COURT MAY GO TO WHETHER WE KNEW OR HAD

14    REASON TO KNOW.

15         AND, AGAIN, THAT PREJUDICE, ONCE IT'S OUT THERE, CAN'T BE

16    UNDONE.  SO WE WOULD NEED TO DECIDE TO BRING -- YOU KNOW, THIS

17    ISN'T A SITUATION WHERE THE AUSTRALIAN CRIMINAL COURT DECIDED

18    TO BRING CLAIMS AGAINST META.  IT WAS THE SAME PERSON WHO SUED

19    US HERE IN FEDERAL COURT, IN STATE COURT FIRST AND THEN FEDERAL

20    COURT WHEN WE REMOVED IT, AND DID THIS, AS WE SET FORTH IN OUR

21    PAPERS BEFORE JUDGE DAVILA IN MARCH, DID THIS AS SORT OF A

22    PLANNED ATTACK, RIGHT?

23         SO, YES, IS THERE THE POSSIBLY OF PREJUDICE TO META?

24    ABSOLUTELY IF WE HAVE TO RESPOND.

25          THE COURT:  AGAIN, I'M STILL TRYING TO UNDERSTAND

1     THAT.  SO THE PREJUDICE, IT'S -- YOU KNOW, SOMETHING MIGHT BE

2     OUT THERE THAT YOU DON'T HAVE AN OBLIGATION TO.  THAT DOESN'T

3     MEAN IT'S PREJUDICIAL THAT IT'S OUT THERE ABOUT YOUR POSITION

4     ABOUT THE MEANING OF THE TERMS OF SERVICE.  YOUR POSITION THAT

5     WE DIDN'T HAVE MENS REA BECAUSE, IN FACT, WE'RE NOT OBLIGATED

6     TO DO ANY OF THIS.  YOU KNOW, THAT'S -- I MEAN, WE'RE SORT OF

7     IN AN ABSTRACT UNKNOWN, AND I GUESS I'M WONDERING, TO KEEP THIS

8     CASE INDEFINITELY ON HOLD, NOT EVEN TRY TO GET THROUGH THE

9     PLEADINGS, I'M CONCERNED ABOUT THAT.

10         THE OTHER QUESTION IS, COULD WE USE AN ATTORNEYS' EYES

11    ONLY UNSEALING MECHANISM IN ORDER TO ADDRESS THOSE CONCERNS?

12              MR. HEATH:  I WAS GOING TO GET TO THAT POINT, YOUR

13    HONOR.

14         SO MY UNDERSTANDING IS, AND THIS COMES FROM THEIR EXPERT'S

15    DECLARATION THAT WE CITED IN OUR MOTION BEFORE JUDGE DAVILA, IS

16    DR. FORREST -- EVEN IF IT'S COMMITTED AND EVEN IF HE IS NO

17    LONGER THE, QUOTE-UNQUOTE, PROSECUTOR, RIGHT, AND SOMEONE ELSE

18    DECIDES TO TAKE OVER THE PROSECUTION, HE COULD STILL BE ORDERED

19    TO GIVE OVER WHATEVER INFORMATION IS IN HIS POSSESSION,

20    CUSTODY, OR CONTROL, RIGHT?  PRESUMABLY THAT WOULD BE

21    PLEADINGS, EVEN IF THEY'RE UNDER SEAL.

22         WITH DUE RESPECT TO THE COURT, I DON'T KNOW THAT THIS

23    COURT, OR ANY COURT IN THE U.S., COULD ORDER AN AUSTRALIAN

24    COURT ORDER NOT TO SEEK MATERIAL THAT WOULD OTHERWISE BE

25    AVAILABLE TO DR. FORREST AND HIS ATTORNEYS.

1          SO WHILE DR. FORREST AND HIS ATTORNEYS MAY BE BOUND BY A

2     PROTECTIVE ORDER HERE THAT SAYS THEY CAN'T REVEAL THAT,

3     DR. FORREST MAY STILL BE BOUND BY AN ORDER IN AUSTRALIA THAT

4     REQUIRES HIM TO TURN THAT INFORMATION OVER.

5          SO THAT --

6             THE COURT:  I MEAN, THAT'S HIS PROBLEM IF HE'S

7     FACING -- YOU KNOW, WHO HE WANTS TO BE HELD IN CONTEMPT BY IF

8     HE ENDS UP IN THAT SITUATION.

9          I SUSPECT THAT WOULDN'T HAPPEN.  I SUSPECT THAT -- I DON'T

10    KNOW THAT THE AUSTRALIAN PROSECUTORS WOULD BE ALL THAT

11    INTERESTED IN THE PLEADINGS IN A FEDERAL CIVIL CASE HERE WHICH,

12    YOU KNOW, ON THIS ABSTRACT, MAYBE THERE'S SOMETHING THERE THAT

13    SOMEHOW RELATES TO THIS.  I DON'T KNOW.

14         IT'S STILL SEEMING A LITTLE FAR FETCHED AS A RISK.

15            MR. HEATH:  IT IS, PERHAPS.  BUT ONCE IT HAPPENS AND

16    IF THEY ARE INTERESTED AND IF THEY DO GET THAT INFORMATION --

17    AND, AGAIN, IT'S A SITUATION NOT WHERE THE INFORMATION MAY BE

18    EXCULPATING OR INCULPATING TO META.  IT DOESN'T MATTER.

19         IT'S THAT WE DON'T HAVE TO PROVIDE ANY INFORMATION

20    WHATSOEVER IN THE AUSTRALIAN PROCEEDING.  THE PREJUDICE IS

21    HAVING TO DO SOMETHING THAT WE'RE NOT OTHERWISE OBLIGATED TO

22    DO, EVEN IF IT'S IN OUR BEST INTEREST.

23         SO THAT'S THE PREJUDICE WE'RE TRYING TO BASICALLY MITIGATE

24    AGAINST.

25            AND, YOUR HONOR, RESPECTFULLY, IT IS DIFFICULT TO DO

1    WHAT -- IT'S DIFFICULT TO KNOW WITHOUT KNOWING WHAT'S IN THE

2    PROPOSED AMENDED COMPLAINT.

3              THE COURT:  I TAKE YOUR POINT ON THAT.  I SUPPOSE THE

4    OTHER SOLUTION HERE IS AN UNDERSTANDING THAT, YOU KNOW, IF WE

5    WERE TO PROCEED JUST AS TO THE PLEADINGS AND THAT I WOULD

6    UNDERSTAND -- YOU KNOW, META COULD PRESERVE ITS POSITION AS TO

7    SOME ARGUMENTS THAT IT -- YOU KNOW, AND I THINK I WOULD HAVE

8    THE AUTHORITY TO SAY THAT IF THERE IS AN ARGUMENT THAT TRULY

9    CANNOT BE RAISED AT THIS POINT WITHOUT A RISK OF PREJUDICE, I

10   WOULD PRESERVE ITS ABILITY TO RAISE THAT IN A 12(F) MOTION, FOR

11   EXAMPLE, OR TO IDENTIFY ARGUMENTS THAT WOULD BE RAISED BUT NOT

12   ARGUED BECAUSE OF THE PENDENCY OF THE PROCEEDINGS.  IT SEEMS

13   LIKE WE COULD COME UP WITH A WAY OF MOVING FORWARD SOME, AT

14   LEAST INCREMENTALLY IN THE MEANTIME.

15             MR. HEATH:  THE OTHER THING --

16             THE COURT:  BUT I TAKE YOUR POINT THAT YOU NEED TO

17   SEE THE COMPLAINT.

18        I WOULD SAY, YOU KNOW, THAT OBVIOUSLY IF THERE IS GOING TO

19   BE A MOTION -- IF WE DO OPEN THE CASE AND THERE'S A MOTION TO

20   FILE A THIRD AMENDED COMPLAINT, THERE HAS TO BE A MEET AND

21   CONFER IN ADVANCE OF THAT, AND I THINK THAT THE APPROPRIATE WAY

22   TO HANDLE THAT IS -- WOULD BE TO SHARE THE COMPLAINT WITH

23   DEFENSE AND HOPEFULLY, YOU KNOW -- I MEAN, I'VE ALREADY WRITTEN

24   THIS, I EXPECT AS A MATTER OF COLLEGIALITY AND PROFESSIONALISM

25   THAT REASONABLE AMENDMENTS ARE, ARE STIPULATED TO AND WE DON'T

1    HAVE TO HAVE A WHOLE ROUND OF FIGHTING OVER FUTILITY,

2    NON-FUTILITY.  THAT CAN HAPPEN ON A RULE 12 MOTION INSTEAD OF

3    ON A MOTION TO AMEND.

4         SO MY HOPE IS THAT, YOU KNOW, WE WOULD -- THAT YOU WOULD

5    SHARE THE COMPLAINT, YOU WOULD SEE THE COMPLAINT, AGREE THAT,

6    YOU KNOW -- YOU MAY NOT AGREE WITH ITS LEGAL MERITS, BUT YOU

7    WOULD AGREE THAT IT WOULD BE APPROPRIATE TO ALLOW IT TO BE

8    FILED SO THAT WE CAN SORT OF FIGHT OUT THIS CASE ON THE HEART

9    OF IT INSTEAD OF ON THAT PROCEDURAL ISSUE.

10        YOU KNOW, SO -- I DON'T KNOW THAT THERE'S NOT A REASON FOR

11   US NOT TO GO THERE AT THIS TIME.

12            MR. HEATH:  RIGHT.  THE ONLY OTHER THING I WOULD ADD,

13   YOUR HONOR, WHICH IS -- AND THEN I WILL BE QUIET --

14   CIRCUMSTANCES REALLY HAVEN'T CHANGED, QUITE FRANKLY, FROM WHEN

15   THE STAY WAS ENTERED THE FIRST TIME.  GRANTED, WE NOW HAVE THE

16   DECISION FROM THE SUPREME COURT.

17            THE COURT:  THE NON-DECISIONS.

18            MR. HEATH:  RIGHT, BASICALLY.

19        BUT WE HAVE THOSE NOW, AND THE COURT HAS CONTINUED TO

20   EXTEND THE STAY GIVEN THE FACT THAT THERE'S BEEN NO DECISION IN

21   THE AUSTRALIAN PROCEEDING WITH RESPECT TO THE COMMITTAL.

22        SO I WOULD SAY THE STAY SHOULD DEFINITELY STAY IN PLACE AT

23   LEAST WITH RESPECT TO DISCOVERY.  I WOULD URGE THE COURT TO

24   HAVE THE STAY IN PLACE WITH RESPECT TO THE PLEADINGS.

25        BUT EVEN IF THE COURT IS INCLINED NOT TO DO THAT WITH

1    RESPECT TO THE PLEADINGS, I WOULD SAY LET'S AT LEAST WAIT UNTIL

2    AFTER THE COMMITTAL HEARING IN NOVEMBER, I GUESS NOVEMBER 20TH,

3    AS WE HAVE CONSISTENTLY.  BECAUSE IF, FOR EXAMPLE, THE COURT

4    SAYS, WE'RE NOT GOING TO COMMIT THIS, THERE'S NOT ENOUGH

5    EVIDENCE, OR THERE HASN'T BEEN SUFFICIENT DISCLOSURES, WE'RE

6    REALLY NO WORSE OFF.

7         AND, FRANKLY, IF THEIR POSITION IS THINGS CONTINUE TO

8    HAPPEN IN THE INTERIM, I THINK THAT WOULD ACTUALLY WEIGH

9    AGAINST AMENDING UNTIL WE KNOW THAT WE'RE GOING TO BE BACK IN

10   FRONT OF THIS COURT WITHOUT DEALING WITH THE COMMITTAL HEARING.

11   BUT --

12             THE COURT:  YEAH, OTHER THAN, YOU KNOW, KIND OF

13    FIGURING OUT WHAT THE COMPLAINTS ARE AND IF THERE'S A COMPLAINT

14    HERE AND, YOU KNOW, THEN -- IF THERE -- IT MAY BE THAT THERE'S

15    A NEED FOR INTERIM RELIEF, WHICH OBVIOUSLY HAS NOT BEEN VIABLE

16    IN THE -- WHILE A STAY IS IN PLACE.

17         I'LL SAY IT BETTER THAN I DID.

18         I DO WANT TO GIVE YOUR COLLEAGUE AN OPPORTUNITY TO ADDRESS

19   THESE ISSUES.

20         IN PARTICULAR, I'M CONCERNED -- YOU KNOW, YOU'VE HEARD MY

21   THOUGHTS ABOUT THE -- GETTING THE PLEADINGS SORT OF SQUARED

22   AWAY AT THIS TIME.

23         I KNOW YOU'VE ASKED FOR THIS CASE TO TOTALLY OPEN UP NOW,

24   OR AS OF NOVEMBER 3RD.

25         I MEAN, IT DOES SEEM LIKE THEY'VE SET FORTH SOME, SOME

1      CONCERNS, AT LEAST UNTIL WE KNOW WHAT'S HAPPENING WITH THE

2      COMMITTAL, WITH RESPECT TO HAVING AN ANSWER FILED OR HAVING

3      DISCOVERY TAKE PLACE.

4           SO WHY SHOULDN'T WE CONTINUE THE STAY WITH RESPECT TO

5      DISCOVERY AND WITH RESPECT TO ANY OBLIGATION TO RESPOND TO THE

6      COMPLAINT THROUGH THE FORM OF AN ANSWER AS OPPOSED TO THROUGH A

7      RULE 12(B) MOTION FOR THE TIME BEING?

8           MS. BRUECKNER:  THANK YOU, YOUR HONOR.

9           SO OUR ARGUMENTS ABOUT WHY NO STAY AT ALL SHOULD BE IN

10     PLACE ARE SET FORTH AT GREAT LENGTH IN OUR ORIGINAL MOTION,

11     ORIGINAL OPPOSITION TO THE STAY.

12          IN BRIEF, THIS IS NOT THE KIND OF RARE CIRCUMSTANCE WHERE

13     A STAY IS WARRANTED.  FACEBOOK IS NOT GOING TO GO TO JAIL.

14     THERE'S NO CRIMINAL HERE WHO HAS FIFTH AMENDMENT RIGHTS.

15          THE MAXIMUM PENALTY THAT FACEBOOK WILL EVER FACE, WORST

16     CASE SCENARIO, IN AUSTRALIA IS IN THE NEIGHBORHOOD OF 250,000

17     AMERICAN DOLLARS.

18          SO THE STAKES ARE SIMPLY NOT OF THE SORT THAT WOULD

19     WARRANT THE EXTRAORDINARY REMEDY OF A STAY.

20          THAT BEING SAID, HOWEVER, WE COULD CERTAINLY LIVE WITH,

21     FOR THE TIME BEING, A LIMITED STAY AS TO DISCOVERY SO THAT WE

22     COULD GO FORWARD AND SETTLE THE PLEADINGS, PRECISELY AS YOUR

23     HONOR HAS JUST DISCUSSED WITH MY FRIEND ON THE OTHER SIDE.

24          I'D JUST LIKE TO MAKE A FEW POINTS AS TO YOUR DISCUSSION

25     WITH HIM, IF I MAY?

1           THE COURT:  CERTAINLY.

2           MS. BRUECKNER:  UNLESS YOU'D LIKE TO HEAR MORE FROM

3      ME ABOUT WHY THERE SHOULD BE NO STAY AT ALL?  I'D BE HAPPY TO

4      GO ON ABOUT THAT AT GREAT LENGTH IF YOU THINK THAT WOULD BE

5      USEFUL.

6           THE COURT:  I THINK WE'LL FOLLOW THE BRIEFING.  I CAN

7      FOLLOW THE BRIEFING ON THAT.

8           MS. BRUECKNER:  ALL RIGHT.  THANK YOU, YOUR HONOR.

9           SO POINT NUMBER ONE IS THAT META HAS ALREADY MOVED TO

10     DISMISS THIS CASE, AND THERE WAS FULL BRIEFING ON THAT, AND

11     META NEVER ONCE RAISED ANY ISSUE OF POTENTIAL PREJUDICE BASED

12     ON THE PENDENCY OF THE AUSTRALIAN CRIMINAL PROCEEDING, WHICH

13     WAS PENDING AND HAD BEEN PENDING FOR QUITE AWHILE AT THE TIME

14     THAT META MOVED TO DISMISS.

15          AND THERE'S NO REASON WHY THE PREJUDICE, ARGUMENT FOR

16     PREJUDICE IS ANY DIFFERENT NOW THAN IT WOULD HAVE BEEN THEN.

17          I AGREE WITH YOUR HONOR THAT TO THE EXTENT THERE IS ANY

18     ARGUMENT FOR PREJUDICE, WE COULD USE AN ATTORNEYS' EYES ONLY OR

19     SEALING MECHANISM.

20          I WOULD SAY IN RESPONSE TO THAT, MR. HEATH SAID THAT

21     DR. FORREST COULD BE REQUIRED TO TURN OVER INFORMATION TO THE

22     AUSTRALIAN PROCEEDING, TO THE AUSTRALIAN PROSECUTORS, AND

23     THAT'S ALMOST IMPOSSIBLE TO IMAGINE THAT, THAT THAT WOULD EVER

24     OCCUR.

25          AS YOUR HONOR SAID, IT'S HARD TO EVEN SEE, AS A COMMON

1    SENSE MATTER, WHY THE AUSTRALIAN PROSECUTORS MIGHT WANT

2    INFORMATION FROM THIS CASE.  BUT EVEN IF THEY DID, THEY WOULD

3    HAVE TO GO THROUGH AN EXTREMELY CUMBERSOME PROCEDURE BY

4    INVOKING THE MUTUAL LEGAL ASSISTANCE TREATY IN ORDER TO GET

5    ACCESS TO MATERIALS IN AN AMERICAN COURT.  THEN THEY WOULD HAVE

6    TO OVERCOME THE FACT THAT THERE'S A PROTECTIVE ORDER IN PLACE

7    IN THIS PROCEEDING.

8         SO IT'S VERY UNLIKELY THAT THAT WOULD EVER OCCUR,

9    PARTICULARLY GIVEN THAT THE CASE IS ONLY ABOUT 250,000 AMERICAN

10   DOLLARS.  IT SIMPLY WOULDN'T BE WORTH IT FOR THE AUSTRALIAN

11   PROSECUTORS TO EVER DO THAT.

12         THE COURT:  I COULD SEE WHY THEY WOULD WANT THE

13    ANSWER AND THE DISCOVERY.  I THINK IF I WERE PROSECUTING A

14    PARTY, I'D WANT ANY DISCOVERY THEY TURN OVER IN ANOTHER

15    PROCEEDING PROBABLY.

16         SO I TAKE -- I UNDERSTAND THAT, YOU KNOW, AND THAT'S A

17   SLIGHTLY DIFFERENT CONSIDERATION FROM WHEN WE'RE TALKING REALLY

18   SPECIFICALLY ABOUT THE PLEADINGS IN THIS CASE.

19         MS. BRUECKNER:  EXACTLY, YOUR HONOR.

20         AND AS TO THE ARGUMENT THAT CIRCUMSTANCES HAVE NOT

21    CHANGED, WE STRONGLY DISAGREE WITH THAT FOR THREE REASONS.

22         FIRST, AS WE NOTED IN OUR BRIEF AND OPPOSITION TO THE

23    STAY, DR. FORREST DISCOVERED IN APRIL OF 2023 THAT FACEBOOK

24   CONTINUES TO FLOOD THE AUSTRALIAN FACEBOOK PLATFORM WITH

25   CONTINUED FRAUDULENT ADS FEATURING DR. FORREST.  LITERALLY

1    1,000 NEW ADS HAVE APPEARED JUST IN THE BRIEF PERIOD FROM APRIL

2    THROUGH AUGUST.

3         SO DR. FORREST FEELS AN INCREDIBLE AMOUNT OF URGENCY TO GO

4    FORWARD.  WE DIDN'T KNOW THIS AT THE TIME WE ORIGINALLY ARGUED

5    ABOUT A STAY THAT THIS WAS CONTINUING TO OCCUR.  SO WE FEEL

6    THAT EVERY DAY THAT THIS CONTINUES TO HAPPEN, HIS REPUTATION

7    INCURS FURTHER DAMAGE, MORE AUSTRALIANS POTENTIALLY ARE

8    STRIPPED OF THEIR LIFE SAVINGS.  SO THAT IS ONE CIRCUMSTANCE

9    THAT HAS CHANGED.

10         THE SECOND, OF COURSE, IS THAT GONZALES HAS BEEN DECIDED.

11    THAT WAS ONE OF THE BASES FOR JUDGE DAVILA'S DECISION TO ISSUE

12    A STAY.

13         AND SO -- AND THE THIRD CIRCUMSTANCE THAT'S CHANGED IS

14    THAT NOW WE'RE REALLY ONLY ASKING THE COURT -- BEFORE WHEN I

15    WAS STANDING BEFORE JUDGE DAVILA, WE WERE SEEKING DISCOVERY,

16    AND NOW ALTHOUGH WE THINK NO STAY IS WARRANTED, WE ARE WILLING

17    TO AGREE TO A STAY ONLY AS TO DISCOVERY SO LONG AS WE CAN JUST

18    PROCEED AND GET THE PLEADINGS SETTLED.

19         SO WE WOULD ASK THE COURT TO ALLOW US FOR LEAVE TO FILE AN

20    AMENDED COMPLAINT, AND THEN ENTERTAIN PROCEEDINGS ON ANY

21    RESULTING MOTION TO DISMISS.

22         THE COURT:  AND IF -- THE QUESTION IS IF, AS I SAY, I

23    THINK THAT ANY -- YOU WOULD -- AS A STARTING POINT, THERE WOULD

24    BE AN OBLIGATION TO SEEK TO MEET AND CONFER OVER THE PROPRIETY

25    OF FILING A THIRD AMENDED COMPLAINT.  SO HOW SOON WOULD YOU BE

1       ABLE TO PROVIDE, YOU KNOW, A COPY OF THE PROPOSED THIRD AMENDED

2       COMPLAINT TO FACEBOOK FOR THEM TO CONSIDER WHETHER THEY WOULD

3       STIPULATE TO ITS SUBMISSION?

4               MS. BRUECKNER:  YES, YOUR HONOR.  SO IN OUR

5       ORIGINAL -- WE WERE THINKING AT THE EARLIEST WE COULD FILE A

6       MOTION TO AMEND THE THIRD -- TO AMEND THE COMPLAINT, ALONG WITH

7       A COPY OF THE PROPOSED AMENDMENT, ON OR ABOUT NOVEMBER 10TH.

8           I HAD -- FRANKLY, WE HAD NOT BUILT IN TIME FOR A MEET AND

9       CONFER PROCESS.  I MEAN, IF FACEBOOK IS WILLING TO SPEND JUST A

10      COUPLE OF DAYS LOOKING AT IT, WE COULD PROBABLY GET THEM A

11      DRAFT BY THE 10TH.

12              THE COURT:  I MEAN, I WOULD -- I THINK THAT -- MY

13      EXPECTATION IN THIS CONTEXT IS THAT THE PARTY PROPOSING TO

14      AMEND ITS PLEADINGS PROVIDE A COPY TO THE OTHER SIDE --

15              MS. BRUECKNER:  YES.

16              THE COURT:  -- AND THAT THE OTHER SIDE BE ENTIRELY

17      REASONABLE AS A MATTER OF PROFESSIONAL COURTESY IN ALLOWING,

18      YOU KNOW, AMENDMENTS THAT ARE -- YOU KNOW, THAT REFLECT THE

19      OTHER PARTY'S GOOD FAITH POSITION AND, YOU KNOW, AND THEN WE

20      CAN FIGHT ABOUT THE FUTILITY, VIABILITY, WE CAN FIGHT ABOUT

21      THOSE ISSUES IN RULE 12.

22          SO THAT'S -- YOU KNOW, YOU'VE HEARD -- I'M PRONE TO GRANT

23      MOTIONS TO AMEND AND TO POSTPONE ISSUES ON THE MERITS SO THAT

24      YOU CAN CONSIDER THAT.

25              SO IF NOVEMBER 10TH IS THE DATE, I MEAN, I -- THAT -- BUT

1    I WOULD EXPECT THERE TO BE A SHARING OF THE COMPLAINT AND THEN

2    A GOOD FAITH ATTEMPT TO STIPULATE TO ITS SUBMISSION IN ANY

3    EVENT.

4         MS. BRUECKNER:  IF I MAY INTRODUCE MY COLLEAGUE,

5    DEREK HOWARD, HE IS -- WE AGREED IN ADVANCE THAT HE WOULD BE

6    THE CZAR OF ALL SCHEDULING MATTERS SHOULD WE GET TO THAT POINT.

7    SO IF I MAY HAND THE PODIUM OVER TO HIM?

8         THE COURT:  YES.

9         MR. HEATH:  YOUR HONOR, BEFORE WE GET TO SCHEDULING,

10   I THINK THERE'S A COUPLE OF POINTS I DO WANT TO RESPOND TO VERY

11   QUICKLY.

12        NUMBER ONE, WHETHER IT'S $1, WHETHER IT'S $250,000, META

13   HAS RIGHTS, AND THOSE RIGHTS CANNOT BE TRAMPLED ON, AND THE

14   POSSIBILITY OF A DECISION IN A CRIMINAL COURT, IN A FOREIGN

15   COURT, IS IMPORTANT.

16        SO I DO THINK THAT -- I DON'T WANT TO -- I DON'T WANT TO

17   UNDERSTATE THAT.

18        THE COURT:  TALK THROUGH THE -- THAT'S ONE ISSUE I

19   HAD AN EYE ON, BECAUSE I KNOW THIS WAS ARGUED A LOT THE FIRST

20   TIME AROUND, BUT WHAT ARE -- OBVIOUSLY, YOU KNOW, IT SEEMS LIKE

21   PEOPLE AGREE META HAS A RIGHT NOT TO PUT FORTH ANYTHING IN THE

22   AUSTRALIAN PROCEEDING, RIGHT?  THAT'S A RIGHT THAT IT HAS.

23        IS PLAINTIFF RIGHT THAT AS A CORPORATION, WE AREN'T

24   WORRYING BEING FIFTH AMENDMENT, SELF INCRIMINATION ISSUES AT

25   THIS TIME?

1          MR. HEATH:  SURE, YOUR HONOR.

2          THE COURT:  OKAY.

3          MR. HEATH:  AND I THINK WE DIDN'T EVEN ARGUE THAT IN

4     OUR MOTION.

5          NOW, JUDGE DAVILA DID FIND THAT THE RIGHTS WE HAVE IN

6     AUSTRALIA ARE PRETTY MUCH AKIN TO -- AND THAT WAS STATED IN HIS

7     ORDER -- PRETTY MUCH AKIN TO A FIFTH AMENDMENT RIGHT, EVEN

8     THOUGH IT'S NOT.  WE DO HAVE THE RIGHT NOT TO SAY ANYTHING AND

9     TO HOLD DR. FORREST AT THIS POINT TO HIS PROOF.

10          MY POINT WAS MORE OF A, IT DOES MATTER TO US, AND IT IS

11     IMPORTANT TO US, AND PROTECTING THOSE RIGHTS IS IMPORTANT,

12     NUMBER ONE.

13          NUMBER TWO, THERE'S A -- THEY -- MY FRIENDS ON THE OTHER

14     SIDE DID MAKE THE STATEMENT THAT THESE ARE ADS THAT ARE BEING

15     PUSHED OUT BY META, AND THOSE ARE ALLEGATIONS I PRESUME ARE

16     GOING TO BE IN THE COMPLAINT.

17          THOSE MAY BE SUBJECT TO A MOTION TO STRIKE, BUT TO DO

18     THAT, AGAIN, WE'D HAVE TO REVEAL SOMETHING ABOUT HOW WE THINK

19     ABOUT THE CASE, OUR THEORY OF THE CASE, OUR THEORY OF THE

20     FACTS.

21          THAT'S THE PROBLEM.  THAT'S THE PROBLEM.  AND WE'RE NOT

22     REQUIRED TO DO THAT IN AUSTRALIA, AND THAT, IF IT'S ON THE

23     PUBLIC DOCKET, IF DR. FORREST IS ENTITLED TO SOMEHOW BE ADVISED

24     BY HIS ATTORNEYS ABOUT THOSE FACTS WHILE HE'S STILL PROSECUTED,

25     THAT COULD GO AGAINST US.

1        AND ONCE THAT HAPPENS, IT CAN'T BE UNRUNG.  IT CAN'T BE

2   UNDONE.  OTHERWISE WE JUST HAVE TO SIT AND LET THOSE

3   ALLEGATIONS SIT ON THE DOCKET AND NOT ADDRESS THEM.

4        SO THERE IS A REALISTIC PROBLEM EVEN WITH ADDRESSING THE

5   PLEADINGS, EVEN IF IT'S NOT IN AN ANSWER ITSELF, EVEN ON A

6   MOTION TO STRIKE, EVEN IN A MOTION FOR JUDGMENT ON THE

7   PLEADINGS, EVEN IN THE MOTION TO DISMISS.

8        I WILL SAY, WE'RE HAPPY TO TAKE A LOOK AT THEIR AMENDED

9   COMPLAINT WHEN THEY HAVE IT READY.  BUT WE HAVE CONCERNS ABOUT

10  THE ABILITY TO MOUNT A FULL THROATED DEFENSE, EVEN ON A MOTION

11  TO DISMISS, AND STILL HAVE OUR RIGHTS PROTECTED IN AUSTRALIA.

12       THE OTHER -- THE ONLY OTHER POINT WOULD BE THIS:  WE DID

13  FILE A MOTION TO DISMISS, WE WERE SUCCESSFUL, IN STATE COURT.

14  THAT WAS PRIOR TO US SUBMITTING TO THE JURISDICTION IN THE

15  AUSTRALIAN COURT, WHICH DIDN'T HAPPEN UNTIL OCTOBER OF 2022.

16       SO THERE IS A DIFFERENCE.  AND AFTER THAT, WE TOOK A

17  DIFFERENT POSITION.  SO I WANT TO BE CLEAR ABOUT THAT.  AND

18  THAT'S ON THE RECORD AS WELL.

19            THE COURT:  WAS THERE A MOTION TO DISMISS ALSO FILED

20   BEFORE JUDGE DAVILA?

21            MR. HEATH:  THERE WAS, BUT I THINK STILL AT THAT

22   POINT IN TIME WE HAD NOT SUBMITTED TO THE JURISDICTION IN

23   AUSTRALIA.  THAT DID NOT HAPPEN UNTIL OCTOBER, I BELIEVE, YOUR

24   HONOR.

25            THE COURT:  AND WHEN DID -- OKAY.  WHEN DID THE --

```
1    WHEN WAS THE -- THE MOTION TO STAY HERE WAS GRANTED IN MARCH;

2    CORRECT?

3              MR. HEATH:  IN MARCH OF 2023, YOUR HONOR.

4              THE COURT:  OKAY.  SO THAT -- WHEN WAS YOUR MOTION TO

5    DISMISS THE SECOND --

6              MR. HEATH:  THAT IS A GOOD QUESTION THAT I WOULD HAVE

7    TO LOOK UP.

8              THE COURT:  OBVIOUSLY BEFORE THE MOTION -- BECAUSE IT

9    WAS TERMINATED WITH THE FILING OF THE MOTION.

10             MR. HEATH:  RIGHT.

11             THE COURT:  OR THE STAY.

12             MR. HEATH:  I BELIEVE IT WAS ALL PENDING AT THE SAME

13   TIME, YOUR HONOR.  BUT I DON'T RECALL IF WE FILED IT

14   OCTOBER 1ST OR SEPTEMBER 30TH, 2022.  I DON'T THINK IT WAS

15   NOVEMBER OF 2022, YOUR HONOR, BUT MY COLLEAGUES WILL CORRECT ME

16   IF I'M WRONG.

17             THE COURT:  WELL, PRESUMABLY I CAN PULL IT UP ON THE

18   DOCKET AS WELL.

19        OKAY.  DID YOU HAVE THOSE DATES AT ALL BY ANY CHANCE

20   OFFHAND WHEN THE VARIOUS THINGS WERE HAPPENING?

21             MR. HOWARD:  WE CAN LOOK FOR IT, BUT I DON'T

22   REALLY -- HONESTLY, YOUR HONOR, I'M NOT SURE THAT'S RELEVANT TO

23   WHAT WE'RE TRYING TO DO HERE, WHICH IS TO KEEP THINGS MOVING.

24        AND THE FIRST THING I WANT TO SAY IS THAT WHEN WE TENDER

25   THE FIRST AMENDED -- I GUESS WE'RE GOING TO CALL IT THE THIRD
```

1    AMENDED COMPLAINT, THAT'S WHAT WE'RE CALLING IT BECAUSE OF

2    JUDGE DAVILA'S TERMINATION OF THE PREVIOUS MOTIONS, AT THAT

3    POINT, CERTAINLY META WILL HAVE A CHANCE TO LOOK AT IT AND SAY,

4    GEE, YOU KNOW, THIS IS REALLY FORCING US TO RAISE DEFENSES.

5        I DON'T -- I THINK THIS ENTIRE ARGUMENT IS SO ABSTRACT I

6    DON'T EVEN KNOW IF IT EXISTS.

7        BUT CERTAINLY IN THE SPIRIT OF MEET AND CONFER, IF THEY

8    COME BACK TO US AND THEY SAY, GEE, YOU KNOW, WE REALLY HAVE

9    PROBLEMS, WE CAN TAKE THAT ON AT THE SAME TIME.

10       BUT AGAIN, YOU KNOW, THE CONTROVERSY IS KIND OF ALREADY

11   BEFORE THE COURT, IT'S A SECTION 230 CASE, AND I DON'T THINK

12   THERE'S GOING TO BE ANYTHING POPPING OUT OF THE WOODWORK THAT'S

13   GOING TO --

14       THE COURT:  YEAH, PRESUMABLY IT IS, LIKE -- I GUESS

15   THE OTHER POINT THAT I TAKE IS YOU WOULD HAVE TO SHOW, THIS IS

16   DIFFERENT IN KIND THAN WHAT WE ALREADY PUT ON THE DOCKET IN OUR

17   PRIOR MOTIONS TO DISMISS IN THIS CASE.

18       MR. HOWARD:  OH, YEAH.

19       THE COURT:  THAT WOULD BE -- LIKE, IF IT'S THE SAME,

20   IF THIS ARGUMENT IS ALREADY APPARENT, IF YOU PULL UP THE

21   BRIEFING ON THE PRIOR MOTION TO DISMISS THAT WAS TERMINATED BY

22   JUDGE DAVILA, THEN IT'S HARD TO SAY THERE'S ADDITIONAL --

23   ACTUALLY RULING ON IT WILL CAUSE ANY DISTINCTION.

24       MR. HEATH:  UNDERSTOOD, YOUR HONOR.

25       MR. HOWARD:  YES, AND THERE WILL BE NEW FACTS, QUITE

1     A BIT OF NEW FACTS, AND THIS IS LEADING TO WHY I GET TO DO THE

2     CALENDAR.

3              THE COURT:  RIGHT.

4              MR. HOWARD:  BUT, YOU KNOW, AGAIN, I THINK WE ARE NOT

5     EXPECTING ANY NEW LEGAL ARGUMENTS, IF YOU KNOW WHAT I MEAN.  IN

6     OTHER WORDS, IT'S A -- WE KNOW WHAT THE CONTROVERSY IS ABOUT

7     AND WE EXPECT THAT IT'S GOING TO BE A REGULAR RULE 12 BRIEFING,

8     ALL FACTS ACCEPTED AS TRUE.

9         I HAVE BEEN TRYING TO IMAGINE HOW THIS IS SOMEHOW GOING TO

10    PREJUDICE META'S RIGHTS IN AUSTRALIA.  I HAVEN'T HEARD ANYTHING

11    TODAY, AND I HAVEN'T HEARD ANYTHING PRIOR.

12        BUT IF IT COMES OUT, WE WILL CERTAINLY MEET AND CONFER

13    WITH COUNSEL.  SO I'M GIVING MY WORD ON THAT.

14        OKAY.  SO NEXT THING.  THE -- I'M LOOKING AT THE COURT'S

15    CALENDAR, AND I SEE THAT THE COURT IS FULLY BOOKED UNTIL

16    DECEMBER 14TH, AND I THOUGHT IT MIGHT BE HELPFUL JUST TO RUN

17    THROUGH THESE DATES WITH EVERYBODY.

18        AND THIS IS NOT GETTING -- THIS IS JUST ON THE MERITS OF

19    THE, OF GETTING THE PLEADING BEFORE THE COURT.

20        SO I WOULD -- I ANTICIPATE -- WHILE THE COMPLAINT, AMENDED

21    COMPLAINT IS NOT DONE YET, I WOULD AUTOMATICALLY GIVE MR. HEATH

22    AND HIS TEAM AT LEAST TWO WEEKS TO RESPOND OVER THE REGULAR

23    BRIEFING PERIOD, OPPOSITION --

24              THE COURT:  I WAS GOING TO SAY, TWO WEEKS IS NOT

25     GIVING THEM ANYTHING, BUT FOUR WEEKS, YEAH.

1          MR. HOWARD:  THAT'S WHAT WE CAN TALK ABOUT.  WE CAN

2    GIVE -- THIS IS WHAT I WANT JAKE TO BE ABLE TO RESPOND TO,

3    WHICH IS DOES HE -- YOU KNOW, LET'S, AT THE VERY LEAST, GIVE

4    THEM TWO WEEKS TODAY, AND IF HE NEEDS MORE, HE CAN HAVE MORE.

5    IF THE COURT THINKS THAT'S NOT ENOUGH, WE CAN GIVE HIM THREE

6    WEEKS, FOUR WEEKS, WHATEVER.  BUT THE POINT I'M GETTING AT IS

7    THAT --

8          (DISCUSSION OFF THE RECORD BETWEEN PLAINTIFF'S COUNSEL.)

9          MR. HOWARD:  YOUR HONOR, I'M TALKING ABOUT SETTING

10   THE BRIEFING SCHEDULE ON THE RULE 12 MOTION.  SEE WHAT I'M

11   SAYING?  IN OTHER WORDS, WE'LL TURN THE COMPLAINT OVER --

12         THE COURT:  YEAH.  I MEAN, AGAIN, THAT ASSUMES THAT

13   WE'RE GOING TO HAVE A BRIEFING SCHEDULE ON A RULE 12 MOTION,

14   WHICH I HAVEN'T DETERMINED YET, AND I THINK I'M NOT PREPARED TO

15   MAKE A DETERMINATION ON THAT AT TODAY'S HEARING.  I WANT TO GO

16   BACK AND REVIEW THE PLEADINGS AND CONSIDER THE ARGUMENTS.

17         MR. HOWARD:  OKAY.  SO WOULD IT BE POSSIBLE -- I

18   DIDN'T MEAN TO OVERSTEP.  I WAS TRYING TO THINK AHEAD HERE

19   ABOUT SETTING UP A RULE 12 BRIEFING SCHEDULE.

20       HOW WOULD THE COURT LIKE TO PROCEED ON THE MOTION TO

21   AMEND, OR --

22         THE COURT:  I THINK WHAT I --

23         MR. HOWARD:  I'M JUST TRYING TO GET SOME DATES DOWN.

24         THE COURT:  I THINK I WOULD ASK -- IF WE REOPEN -- IF

25   I CHOOSE TO REOPEN THIS FOR SOME OR ALL PURPOSES, CERTAINLY I

```
1        WILL EXPECT THE AMENDED COMPLAINT TO BE SHARED --

2              MR. HOWARD:  YES.

3              THE COURT:  -- BY NOVEMBER 10TH.

4              MR. HOWARD:  CORRECT.

5              THE COURT:  AND ANY STIPULATION TO THE FILING OF THE

6        COMPLAINT OR MOTION TO AMEND TO BE, I WOULD SAY -- LET'S SEE.

7        THE 10TH IS A THURSDAY.  SO I WOULD SAY WITHIN TWO WEEKS.

8              MR. HOWARD:  OKAY.

9              THE COURT:  I MEAN, I WON'T -- DOES THAT --

10             MR. HOWARD:  THAT WORKS ON OUR SIDE.

11             THE COURT:  THAT'S THE DAY AFTER THANKSGIVING.

12         ANYWAY, I WOULD SAY EXPECT THE COMPLAINT TO BE FILED BY

13        STIPULATION OR THERE TO BE A MOTION BY FRIDAY, THE 24TH.

14         AS I SAY, I CERTAINLY HOPE THAT IT IS A STIPULATION.  THAT

15        WOULD BE MY EXPECTATION RIGHT NOW, NOT HAVING SEEN THE

16        ARGUMENTS, NOT PRE-JUDGING THE ARGUMENTS.

17             MR. HOWARD:  SURE.

18             THE COURT:  I HOPE THE PARTIES CAN AGREE TO STIPULATE

19        TO THE FILING OF THAT.

20         AND THEN I WOULD SAY, WITH THAT, PROVIDE A PROPOSED

21        BRIEFING -- A PROPOSED DEADLINE FOR META TO RESPOND WITH A

22        RULE 12 MOTION IF THAT'S WHERE WE'RE GOING.

23             MR. HOWARD:  YES.

24             THE COURT:  ASSUMING THAT'S WHERE WE'RE GOING.

25             MR. HOWARD:  YES.
```

1          THE COURT:  AND THEN THE TIME THAT, THAT BOTH PARTIES

2     THINK IS APPROPRIATE FOR BRIEFING, AND THEN A HEARING DATE, AND

3     I THINK -- OBVIOUSLY ON THIS SCHEDULE, THAT'S GOING TO BE WELL

4     INTO THE NEW YEAR.

5          MR. HOWARD:  CORRECT.

6          THE COURT:  SO YOU SHOULD BE ABLE TO FIND A DATE.

7        THINK ABOUT THE TIME EACH SIDE IS GOING TO NEED TO DO THE

8     BRIEFING AND ARGUMENT, AND THEN KIND OF MOVE -- FIGURE OUT AN

9     APPROPRIATE HEARING DATE FOR THAT.

10         MR. HOWARD:  OKAY.  THANK YOU, YOUR HONOR.

11         MR. HEATH:  THAT SOUNDS FINE, YOUR HONOR, IF WE'RE

12    GOING TO GO THE ROUTE OF A 12(B)(6) MOTION OR 12(B) MOTION,

13    WHICH I UNDERSTAND YOUR HONOR HAS NOT MADE THAT DECISION YET.

14    BUT WE CAN OBVIOUSLY --

15         THE COURT:  AND I TAKE THEIR COMMITMENT THAT ONCE --

16    AS PART OF THIS PROCESS, IF FACEBOOK DOES IDENTIFY A REAL

17    IMMEDIATE RISK, DISTINCT RISK THAT'S PROPOSED BY THE NEW

18    COMPLAINT THAT IS PRESENT, THAT THAT WILL BE ANOTHER SUBJECT OF

19    THE PARTIES' DISCUSSION, AND IF -- YOU KNOW, IF THERE IS A NEED

20    TO COME BACK AT THAT POINT, THEN WE CAN DO THAT.

21         MR. HEATH:  UNDERSTOOD, YOUR HONOR.

22         MR. HOWARD:  SOUNDS GOOD.

23         THE COURT:  IS THERE ANYTHING ELSE THAT WE NEED TO

24    ADDRESS TODAY?

25         MR. HEATH:  NO, YOUR HONOR, NOT FROM US.

1          THE COURT:  OKAY.

2          MR. HOWARD:  THANK YOU, YOUR HONOR.

3          MS. BRUECKNER:  THANK YOU VERY MUCH.  APPRECIATE IT.

4          THE COURT:  THANK YOU VERY MUCH.

5          MR. HEATH:  THANK YOU, YOUR HONOR.

6          THE CLERK:  THANK YOU.  COURT IS CONCLUDED.

7       (THE PROCEEDINGS WERE CONCLUDED AT 1:56 P.M.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18             DATED:  NOVEMBER 27, 2023

19

20

21

22

23

24

25