1  JACOB M. HEATH (STATE BAR NO. 238959)
jheath@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
3  Menlo Park, CA  94025-1015
Telephone:     +1 650 614 7400
4  Facsimile:     +1 650 614 7401

5  Attorneys for Defendant
Meta Platforms, Inc.

6

7                    UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9

10

11  DR. ANDREW FORREST,                Case No.  22-cv-03699-PCP

12            Plaintiff,               **DEFENDANT'S MOTION TO DISMISS
                                       PLAINTIFF'S THIRD AMENDED
13       v.                            COMPLAINT WITH PREJUDICE AND
                                       MEMORANDUM OF POINTS AND
14  META PLATFORMS, INC.,              AUTHORITIES IN SUPPORT THEREOF**

15            Defendant.               Date:        March 28, 2024
                                       Time:        10:00 a.m.
16                                     Courtroom:   Courtroom 8
                                       Judge:       Hon. Casey P. Pitts
17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................2

II.  FACTUAL BACKGROUND ................................................................................3

    A.  Plaintiff Claims He Discovered the Scam Ads in 2014 ...........................3

    B.  Plaintiff Sues Meta in the California Court Based on Its Purported Decision to Not Remove Cryptocurrency Scam Ads..............................................4

    C.  Plaintiff Commences Private Criminal Prosecution in Australia. ...........4

    D.  The California Court Sustains Meta's Demurrer and Plaintiff Files His SAC...........................................................................................................5

    E.  The Court Implements a Stay, Lifts the Stay in Part, and Plaintiff Files His TAC...........................................................................................................5

III.  LEGAL STANDARD ..........................................................................................6

IV.  ARGUMENT ........................................................................................................6

    A.  Section 230 of the Communications Decency Act Bars Plaintiff's Claims............6

        1.  Section 230 applies in this case. ...................................................7

        2.  Meta is an interactive computer service provider. ......................8

        3.  The content at issue was provided by another information content provider, not Meta.......................................................................9

        4.  Each of Plaintiff's claims seek to treat Meta as a "publisher."...................13

    B.  Plaintiff's Claims Are Time Barred. .......................................................15

        1.  Misappropriation of name and likeness. ....................................15

        2.  Unjust enrichment. .....................................................................16

    C.  Plaintiff Fails to State Any Viable Claim For Relief. .............................16

        1.  Misappropriation of name and likeness. ....................................16

        2.  Negligence and negligent failure to warn. .................................18

        3.  Unjust enrichment. .....................................................................20

        4.  Declaratory Relief. .....................................................................21

    D.  Plaintiff Should Not Be Granted Leave to Amend. ................................22

V.  CONCLUSION...................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Achal v. Gate Gourmet, Inc.*,
114 F.Supp.3d 781 (N.D. Cal. July 14, 2015) ...................................................................22

*Al-Ahmed v. Twitter, Inc.*,
648 F. Supp. 3d 1140 (N.D. Cal. 2023) ............................................................................16

*Al-Ahmed v. Twitter, Inc.*,
No. 21-CV-8017, 2022 WL 1605673 (N.D. Cal. May 20, 2022) ........................................15

*Arenas v. Shed Media U.S. Inc.*,
881 F. Supp. 2d 1181 (C.D. Cal.) ....................................................................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................................6

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ...........................................................................................20

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) .....................................................................................7, 13

*Beckman v. Match.com, LLC*,
743 F. App'x 142 (9th Cir. 2018) ....................................................................................19

*Bel Air Rd., LLC v. Zillow Grp., Inc.*,
2020 WL 774354 (C.D. Cal. Feb 18, 2020) ......................................................................12

*Bibicheff v. PayPal, Inc.*,
844 F. App'x 394 (2d Cir. 2021) .....................................................................................19

*Brittain v. Twitter, Inc.*,
No. 19-CV-114, 2019 WL 2423375 (N.D. Cal. June 10, 2019) ..........................................22

*Brown v. Wells Fargo Bank, N.A.*,
No. 19-CV-260, 2019 WL 3318551 (E.D. Cal. July 24, 2019) ..........................................21

*Calise v. Meta Platforms, Inc.*,
2022 WL 1240860 (N.D. Cal. April 27, 2022) .............................................................8, 10

*Christoff v. Nestle USA, Inc.*,
47 Cal.4th 468 (2009) ......................................................................................................15

*Cross v. Facebook, Inc.*,
14 Cal. App. 5th 190 (2017) ......................................................................7, 15, 17, 18

*Cusano v. Klein*,
    264 F.3d 936 (9th Cir. 2001) ...................................................................................15

*Delgado v. Trax Bar & Grill*,
    36 Cal. 4th 224 (2005) .....................................................................................19, 20

*Doe II v. MySpace Inc.*,
    175 Cal.App.4th 561 (2009) ..................................................................................14

*Doe No. 1 v. Uber Technologies, Inc.*,
    No. 310131, 2022 WL 1769112 (N.D. Cal. June 1, 2022) .....................................19

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001) ................................................................................17

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ..................................................................... *passim*

*Ebeid v. Facebook, Inc.*,
    No. 18-cv-07030, 2019 WL 2059662 (N.D. Cal. May 9, 2019)...............................8

*In re Facebook, Inc.*,
    625 S.W.3d at 94 ...................................................................................................14

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ..............................................................................11

*Federal Deposit Ins. Corp. v. Dintino*,
    167 Cal.App.4th 333 (Cal. Ct. App. 2008) ...........................................................16

*Fields v. Twitter, Inc.*,
    217 F. Supp. 3d 1116 (N.D. Cal. 2016) ................................................................15

*Force v. Facebook, Inc.*,
    304 F. Supp. 3d 315 (E.D.N.Y. 2018) ....................................................................7

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019)..............................................................................11, 13

*Forrest v. Facebook*,
    Case No. 21-CIV-05055 (Sept. 17, 2021).................................................................4

*Fyk v. Facebook, Inc.*,
    808 F. App'x 597 (9th Cir. 2020) .........................................................................12

*Goddard v. Google, Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) .....................................................11, 12, 13

*Gonzalez v. Google LLC*,
    2 F.4th 871 (9th Cir. 2021) .................................................................................7, 11

*Hicks v. Bradford*,
    2023 WL 6190884 (C.D. Cal. Aug. 17, 2023)...................................................................9

*Jackson v. Airbnb, Inc.*,
    654 F.Supp.3d 990 (C.D. Cal. 2023) ...................................................................19

*Joude v. WordPress Found.*,
    No. 14-CV-1656, 2014 WL 3107441 (N.D. Cal. July 3, 2014)..............................15

*Kimball v. Flagstar Bank F.S.B.*,
    881 F. Supp. 2d 1209 (S.D. Cal. 2012)...................................................................21

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ...................................................................9, 10

*King v. Facebook, Inc.*,
    No. 21-CV-4573, 2021 WL 5279823 (N.D. Cal. Nov. 12, 2021) .........................22

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) ...................................................................19

*Klayman v. Zuckerberg*,
    910 F. Supp. 2d 314 (D.D.C. 2012) ...................................................................10

*Leadsinger, Inc. v. BMG Music Publ'g*,
    512 F.3d 522 (9th Cir. 2008) ...................................................................22

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ...................................................................6

*Lloyd v. Facebook, Inc.*,
    2022 WL 4913347 (N.D. Cal. Oct. 3, 2022)....................................................8, 22

*Loomer v. Zuckerberg*,
    2023 WL 6464133 (N.D. Cal. Sept. 30, 2023) .......................................................8

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000)  ...................................................................22

*Marshall's Locksmith Serv. Inc. v. Google*,
    LLC, 925 F.3d 1263 (D.C. Cir. 2019) ...................................................................11

*Melton v. Boustred*,
    183 Cal. App. 4th 521 (2010) ...................................................................19

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ...................................................................6

*Miller v. Yokohama Tire Corp.*,
    358 F.3d 616 (9th Cir. 2004) ...................................................................22

DEFENDANT'S MOTION TO DISMISS
Case No.  22-cv-03699-PCP

*Morton v. Twitter, Inc.*,
   2021 WL 1181753 (C.D. Cal. Feb. 19, 2011)....................................................................8, 12

*Newton v. Meta Platforms, Inc.*,
   2023 WL 5749258 (N.D. Cal. Sept. 6, 2023) ..........................................................................8

*Oja v. United States Army Corps of Engineers*,
   440 F.3d 1122 (9th Cir. 2006) .............................................................................................15

*Penrose Hill, Ltd. v. Mabray*,
   479 F. Supp. 3d 840 (N.D. Cal. 2020) .................................................................................16

*Perfect 10, Inc. v. Google, Inc.*,
   No. CV 04-9484, 2010 WL 9479060 (C.D. Cal. July 30, 2010) ....................................17, 18

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ...............................................................................................17

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583 (2008) ............................................................................................20

*Rigsby v. GoDaddy Inc.*,
   2023 WL 1489914 (9th Cir. Feb. 3, 2023) ..........................................................................10

*Ripple Labs Inc. v. YouTube LLC*,
   2020 WL 6822891 (N.D. Cal. 2020) ....................................................................................14

*Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*,
   2021 WL 2188138 (E.D. May 28, Cal. 2021) ......................................................................21

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ...............................................................................................6

*Tarasoff v. Regents of Univ. of Cal.*,
   17 Cal. 3d 425 (1976) ..........................................................................................................20

*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001)..................................................................................................................7

*Tuttle v. Chase Ins. Life & Annuity Co.*,
   2007 WL 2790359 (N.D. Cal. Sept. 20, 2007) ....................................................................18

*United States v. Little Lake Misere Land Co.*,
   412 U.S. 580 (1973)................................................................................................................7

*Ynfante v. Google LLC*,
   2023 WL 3791652 (S.D.N.Y. June 1, 2023) .....................................................................8, 11

*Youngevity International, Corp. v. Smith*,
   224 F.Supp.3d 1022 (N.D. Cal. 2016) .................................................................................15

DEFENDANT'S MOTION TO DISMISS
Case No.  22-cv-03699-PCP

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
    525 F. Supp. 3d 1017 (N.D. Cal. 2021) ................................................................19

**Statutes**

Cal. Civ. Code § 338(d) ................................................................................................16

Cal. Civ. Code § 339(1) ................................................................................................16

Cal. Civ. Code § 3425.3 ................................................................................................15

California Civil Code § 3344 ........................................................................................17

California's Unfair Competition Law ..............................................................................4

Communications Decency Act Section 230 ......................................................... *passim*

Lanham Act ....................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ......................................................................................2, 3, 5, 6

DEFENDANT'S MOTION TO DISMISS
Case No.  22-cv-03699-PCP

## <u>NOTICE OF MOTION AND MOTION</u>

**PLEASE TAKE NOTICE** that on March 28 2024, at 10:00 AM, or as soon thereafter as may be heard by the Honorable Judge Casey Pitts, United States District Court, San Francisco Division, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Meta Platforms, Inc. will and hereby does move to dismiss Plaintiff's Third Amended Complaint on the grounds that Plaintiffs fail to state a claim upon which relief can be granted and Plaintiff's claims are moreover barred by Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230(c)(1).

This motion is based upon this notice of motion and motion, the memorandum of points and authorities in support thereof, the proposed order filed concurrently herewith, all pleadings and papers on file in this action, the arguments of counsel, and upon such further oral and written argument and evidence as may be presented at or prior to the hearing on this motion.

Dated:  January 19, 2023

ORRICK, HERRINGTON & SUTCLIFFE LLP


By:   */s/ Jacob M. Heath*
Jacob M. Heath

Attorney for Defendant
META PLATFORMS, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Meta Platforms, Inc. ("Meta") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Dr. Andrew Forrest's ("Plaintiff") the Third Amended Complaint ("TAC") Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion").

## I.    INTRODUCTION

In September 2021, Plaintiff sued Meta in San Mateo County Superior Court asserting several claims arising from Meta's purported role in the distribution of scam ads that purportedly used Plaintiff's name and likeness to promote an investment scheme.  Plaintiff admitted in that complaint that those scam ads were created by *third-party* fraudsters.  The California State Court dismissed Plaintiff's claims concluding, *inter alia*, that Section 230 of the Communications Decency Act (47 U.S.C. § 230 *et seq*.)—which prohibits liability based on a website's publication, distribution (algorithm or otherwise), and removal of third-party content—barred Plaintiff's claims.  Nearly ***three*** years later, Plaintiff seeks to have his ***fourth*** bite at the proverbial apple, bringing a TAC that, once again, asserts nearly identical claims arising from the same alleged scam ads.  Although Plaintiff has attempted to reframe his allegations to avoid Section 230's protection, none of the facts have changed.  As established herein, none of his new allegations overcome the defects of his prior complaints.

*First,* Plaintiff's assertion that Australian law should somehow apply to a lawsuit that Plaintiff filed in the United States, asserting California law claims, against a U.S.-based company is meritless.  This is an obvious attempt to bypass Section 230 altogether, which must fail, as there is no legal basis for Plaintiff's argument.

*Second,* because Section 230 applies here, it continues to bar Plaintiff's claims, which seek to hold Meta liable as publisher of third-party content.  Plaintiff's erroneous efforts to frame Meta as the "producer" of ads on its website, simply because Meta purportedly offers a "suite of advertising tools and applications," does not overcome Section 230's preclusive effect.  In fact, courts across the country have consistently recognized that the precise activity Plaintiff alleges Meta engaged in—including organizing, recommending, and amplifying third-party content—is *not* the same as creating it, particularly where there is no allegation that Meta materially

contributed to the purported unlawfulness of the scam ads at issue.  Section 230, therefore, continues to bar Plaintiff's lawsuit in its entirety.

*Third,* Plaintiff's claims are barred by the applicable statute of limitations.  Crucially, Plaintiff admits in his TAC that he has been aware of the alleged scam ads and Meta's purported involvement in the alleged distribution of those ads since *2014,* well beyond any applicable statute of limitations here.

*Finally,* Plaintiff's lawsuit fails because the TAC does not allege facts sufficient to state any of his claims for (1) misappropriation-of-likeness, (2) negligence (3) negligent failure-to-warn; and (4) unjust enrichment.  Accordingly, this Court should dismiss the TAC, with prejudice.[1]

## II.   FACTUAL BACKGROUND

### A.   Plaintiff Claims He Discovered the Scam Ads in 2014

Defendant Meta operates Facebook, which helps give people the power to build community and bring the world closer together, and also enables advertisers to create ads, launch and manage advertising campaigns.  Plaintiff, Dr. Andrew Forrest, purports to be a "prominent Australian businessman and philanthropist."  TAC ¶ 31.  At the crux of Plaintiff's case are allegations that "Scam Ads"—fake ads "using his name and likeness to endorse cryptocurrency and other fraudulent investment products"—are running on "the Facebook platform."  TAC ¶ 54. Plaintiff claims that "[s]cammers operating on Meta's (then Facebook's) Australian social media platforms have been co-opting Dr. Forrest's name and image in order to swindle innocent Australians since 2014."  TAC ¶ 44.

Plaintiff claims that he ***first*** learned of these scam ads in 2014 after he discovered that his "image was being used by a number of internet scammers who were setting up 'imposter' pages appearing to belong to Dr. Forrest."  TAC ¶ 46.  According to Plaintiff, upon discovering these ads in 2014, he "commenced an investigation to determine who was behind these fake pages."

---

[1]     The TAC also alleges a promissory estoppel claim, which Meta does not address in this Motion.  Plaintiff has agreed to dismiss the claim voluntarily, *without prejudice*, subject to a tolling agreement between the parties tolling the statute of limitations for the claim for 12 months. The parties have also agreed that Plaintiff can amend his complaint to add the promissory estoppel in the future, and that Meta reserves its right to file a Rule 12 motion as to this claim.

*See id.* ¶ 47.  Plaintiff claims that the investigation revealed that the scammers were outside of the U.S., purportedly used false identities, that were recreating the pages.  *Id.* ¶ 48.  Plaintiff further claims that he "repeatedly brought this to the attention of Meta and Meta's legal department."  *Id.* Based on these allegations, Plaintiff claims that "as of at least 2014, Meta was aware that Dr. Forrest's name and image were being misused to dupe Australian users of Meta's social media platforms...."  *See id.* ¶ 49.

Plaintiff claims that in or about "late March 2019," he further learned that "fake ads using his name and likeness" were running on Facebook.  *Id.* ¶ 54.  Although Plaintiff claims these "Scam Ads were produced by Meta Ads, not by social media user postings," he concedes that the people behind the "Scam Ads" are third-party fraudsters involved "with entities from various foreign countries, using sham entities, fake information, and false addresses."  TAC ¶ 60. Plaintiff claims that the impact of these ads "on Australian users has been far reaching."  TAC ¶ 62.

Since Plaintiff purportedly learned of the scam ads in March 2019, he says he has "mobilized an effort to identify and capture evidence of these Scam Ads."  TAC ¶ 69.  Plaintiff claims that despite this lawsuit, "Scam Ads featuring Dr. Forrest's misappropriated image are still being produced and disseminated by Meta Ads."  *Id.*  ¶ 79.

**B.    Plaintiff Sues Meta in the California Court Based on Its Purported Decision to Not Remove Cryptocurrency Scam Ads.**

In September 2021, Plaintiff filed his initial lawsuit in San Mateo County Superior Court. *Forrest v. Facebook*, Case No. 21-CIV-05055 (Sept. 17, 2021), San Mateo Superior Court ("State Ct. Dkt."), Complaint, Dkt. No. 2.  He amended his complaint in November 2021, asserting claims for common law misappropriation-of-likeness, aiding and abetting fraud, negligent failure-to-warn, and negligent design, as well as violations of California's Unfair Competition Law.  *See generally* State Ct. Dkt. No. 12 ("FAC").

**C.    Plaintiff Commences Private Criminal Prosecution in Australia.**

On or around January 31, 2022, Plaintiff commenced a "private prosecution" against Meta in the Magistrates Court of Western Australia, seeking to hold Meta criminally liable for the purported third-party cryptocurrency scam ads.  *See* Dkt. No. 49.

4

**D.      The California Court Sustains Meta's Demurrer and Plaintiff Files His SAC.**

Meta demurred Plaintiff's FAC, and in April 2022, the state court sustained Meta's demurrer on multiple grounds. *See* Notice of Removal Ex. B, ECF No. 1-2 at 3 (hereinafter "Order"). The California Court recognized that all of Plaintiff's claims were barred by Section 230, which "immunizes Facebook from liability … arising from [Meta's] role as a publisher." *Id.* at 6. In so holding, the court rejected Plaintiff's argument that Meta's targeting of scam ads to susceptible users made Section 230 inapplicable; "[D]etermin[ing] where certain ads are seen and by whom," the court observed, is a key, protected publisher function. *See id.* The California Court also held independent of Section 230 that Plaintiff failed to state a claim for negligent failure-to-warn (there is no duty to warn absent a "special relationship" between Meta and Plaintiff), along with other claims. *See id.* at 6-7.

In June 2022, Plaintiff filed his SAC, reasserting his original claims and new claims for alleged violations under the Lanham Act, declaratory relief, and for unjust enrichment. *See generally*, SAC. On June 23, 2022, Meta removed the case to the U.S. District Court for the Northern District of California. *See* Dkt. No. 1.

**E.      The Court Implements a Stay, Lifts the Stay in Part, and Plaintiff Files His TAC.**

On March 29, 2023, the Court granted Meta's Motion to Stay Litigation Pending Resolution of Plaintiff's Criminal Proceeding, Dkt. 48, and stayed the action in its entirety. Dkt. 79 at 5 (granting a stay until after the next disclosure/committal hearing in Plaintiff's Australian Criminal proceedings because "[d]oing so will potentially provide more clarity on the status of the criminal proceedings and Dr. Forrest's role in those proceedings").[2] On October 27, 2023, the Court lifted the stay in part. Dkt. 95. The Court retained the stay of discovery and any obligation for Meta to file a responsive pleading but lifted the stay as to Meta's Rule 12 motion practice. *Id.* at 2.[3] With the stay partially lifted, on December 1, 2023, Dr. Forrest filed his TAC, reasserting

---

[2]      The Court extended the stay until November 3, 2023, and then again until November 20, 2023. Dkt. 86.

[3]      In this Order, the Court specifically communicated that Meta could seek guidance from the Court regarding "any potential prejudice concerns [Meta] believes would be presented by filing a Rule 12 motion responding to the amended complaint." Dkt. 95 at 2.

some of his former claims and bringing a new claim for negligence.[4]  The TAC also adds

additional supposed details about Meta's advertising tools and once again attempts to reframes

Meta's involvement in the alleged scam ads—now referring to Meta as the "producer" of the

scam ads, which he has never previously claimed.  *See, e.g.*, TAC ¶¶152, 232.  But, as before,

Plaintiff concedes that third parties created the content at issue.  *See, e.g.*, TAC ¶¶ 44, 60.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient

factual matter to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (citation omitted).  Dismissal is appropriate "where the complaint lacks a

cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v.

Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  In conducting a Rule 12(b)(6)

analysis, the court may consider the complaint, material relied upon in the complaint, and

material subject to judicial notice.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir.

2001).  The court must accept "well-pleaded factual allegations" as true, but need not "accept as

true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 664, 678; *see also

Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim

may not simply recite the elements of a cause of action, but must contain sufficient allegations of

underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

## IV.    ARGUMENT

### A.    Section 230 of the Communications Decency Act Bars Plaintiff's Claims.

Plaintiff devotes the majority of his TAC to various flawed arguments on why Section

230(c)(1) purportedly does not apply here.  *See* TAC ¶¶ 84-213.  His efforts fail.

Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service

shall be treated as the publisher or speaker of any information provided by another information

content provider."  47 U.S.C. § 230(c)(1).  Section 230(e)(3) gives teeth to this intent by stating

unequivocally that "[n]o cause of action may be brought and no liability may be imposed under

any State or local law that is inconsistent with this section."  47 U.S.C. § 230(e)(3).  Section 230 is

---

[4]    *See supra* regarding the dismissal of Plaintiff's promissory estoppel claim.

to be "construed broadly, 'to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles.'" *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 206 (2017).  Crucially, Section 230 bars claims based on a service provider's decisions about "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009).

Under Section 230(c)(1), a claim should be dismissed if (1) the defendant is a "provider . . . of an interactive computer service[;]" (2) the content at issue was "provided by another information content provider[;]" and (3) the plaintiff's claim treats the defendant as the "publisher or speaker" of that content. 47 U.S.C. § 230(c)(1).  All three elements are present here.

### 1.     Section 230 applies in this case.

As an initial matter, Dr. Forrest is incorrect by insisting that this Court should bypass Section 230 altogether because his claims arise out of activity in Australia.  Indeed, Section 230 is a federal statute that applies "in American courts." *Gonzalez v. Google LLC*, 2 F.4th 871, 888 (9th Cir. 2021) (citation omitted), *vacated on other grounds*, 598 U.S. 617 (2023).   As the Ninth Circuit has instructed, "Congress intended" Section 230 to apply to claims filed "in American courts," regardless of "the place where the claims principally arose." *Gonzalez*, 2 F.4th at 888 (applying Section 230 even though "all relevant conduct [took] place outside the United States").

Plaintiff rejects the application of Section 230 because he believes his claims arise out of "Australian locus and impact of fraud." TAC ¶¶ 213.  Section 230, however, contains no exception for so-called "foreign" claims, and "the absence of any carve-out for [such] claims . . . indicate[s] that no such exception was intended." *Force v. Facebook, Inc.*, 304 F. Supp. 3d 315, 324 (E.D.N.Y. 2018) ("[A] conflict-of-laws analysis [cannot] prevent[] the application of federal statutes to foreign-law-based claims."); *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied." (citation omitted)).  Application of Australian law would be "plainly not in accord with the federal program implemented by [Section 230]" and, thus, would not be "a permissible choice here." *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 604 (1973).  Thus, Section 230 applies here.

**2.      Meta is an interactive computer service provider.**

Section 230 defines an interactive computer service provider as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).  "Websites are the most common interactive computer services."  *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019).  And courts have uniformly held that Meta meets Section 230's "interactive computer service provider" definition.  *See, e.g., Sikhs for Justice, Inc. v. Facebook,* Inc., 144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd*, 697 Fed. Appx. 526 ("it is undisputed that Facebook is an interactive computer service provider"); *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *8 (N.D. Cal. Oct. 3, 2022) ("Meta and/or Facebook is an interactive computer service provider); *Loomer v. Zuckerberg*, 2023 WL 6464133, at *12 (N.D. Cal. Sept. 30, 2023) (same); *Ebeid v. Facebook, Inc.*, No. 18-cv-07030, 2019 WL 2059662, at *3 (N.D. Cal. May 9, 2019) (same).

In an effort to avoid Section 230, Plaintiff argues "***Meta Ads*** is not an interactive computer service."  *See* TAC ¶ 84 (emphasis added).  Plaintiff's argument fails for several reasons.  *First*, Plaintiff fails to allege that "Meta Ads"—a name Plaintiff created himself—is an actual entity, much less an entity distinct from Meta Platforms, Inc.  While Meta provides advertising services to its users, courts have held that the fact an entity allegedly "generates revenue as an advertising agency" does not change that the entity also "provides or enables computer access by multiple users to a computer service."  *Sikhs for Justice "SFJ", Inc.*, 144 F. Supp. 3d at 1093 (finding Facebook is an interactive computer service provider).  Indeed, courts have applied Section 230 to bar claims involving Meta's and other interactive computer service provider's advertising businesses.  *See, e.g., Calise v. Meta Platforms, Inc.*, 2022 WL 1240860, at *2 (N.D. Cal. April 27, 2022) (applying Section 230 to claims alleging Meta solicits, encourages, and assists scam advertisers); *Newton v. Meta Platforms, Inc.*, 2023 WL 5749258, at *2 (N.D. Cal. Sept. 6, 2023) (applying Section 230 to allegations regarding Meta's restrictions on advertisements); *Morton v. Twitter, Inc.*, 2021 WL 1181753, at *3 (C.D. Cal. Feb. 19, 2011) (rejecting argument that Twitter is not an interactive computer service provider because it "operates its own Content Delivery Network" through advertising); *Ynfante v. Google LLC*, 2023

WL 3791652, at *2 (S.D.N.Y. June 1, 2023) (dismissing claims under Section 230 involving alleged scam advertisements posted through "Google Ads"); *see also* Order (sustaining demurrer under Section 230).  Accordingly, Meta is an interactive computer service provider.

### 3.    The content at issue was provided by another information content provider, not Meta.

Section 230 protection applies to content "provided by another information content provider," which is defined as someone who is "responsible, in whole or in part, for the creation or development of" the offending content.  47 U.S.C. § 230(c), (f)(3).  The Ninth Circuit has narrowly interpreted "development" to provide "immunity for passive conduits" and preclude immunity for "co-developers" who do "not merely ... augment[ ] the content generally, but ... materially contribut[e] to [the content's] alleged unlawfulness." *Hicks v. Bradford*, 2023 WL 6190884, at *3 (C.D. Cal. Aug. 17, 2023) (citing *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008)).

Here, although Plaintiff alleges erroneously that the purported "Scam Ads" were produced by "Meta's advertising business" or "Meta Ads," Plaintiff concedes that the "material" at issue— *i.e.*, the scam ads themselves—were "***supplied by criminal scammers***."  TAC ¶ 4 (emphasis added).  Indeed, Plaintiff repeatedly concedes that third parties—***not Meta***—created the offending content.  *See, e.g.*, TAC ¶ 44 ("Scammers…have been co-opting Dr. Forrest's name and image in order to swindle innocent Australians since 2014"); TAC ¶ 60 ("Dr. Forrest learned that the people behind the Scam Ads were involved with entities from various foreign countries); TAC ¶ 58 (noting the Scam Ads "generate[] targets for the criminal organization sponsoring the Scam Ads"); TAC ¶ 59 (noting third-party "criminals" are "behind the Scam Ads").  Thus, the ads were provided by "another information content provider" and qualify for Section 230 protection.

Plaintiff insists Meta was responsible for "producing" the offending ads, which he claims bars application of Section 230 here.  *See* TAC ¶ 143.  But the TAC does not sufficiently allege how Meta made a "material contribution" to the "creation or development" of the purportedly unlawful content, as is required in the Ninth Circuit.  *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 (9th Cir. 2016) (emphasis added).  A "material contribution" does not refer to "merely ... augmenting the content generally, but to materially contributing to its alleged unlawfulness."

1    *Calise*, 2022 WL 1240860, at *3 (emphasis added) (finding Section 230 barred plaintiff's claims

2    where Meta did not contribute to the *illegality* of the third-party content).  The "material

3    contribution" test thus "draw[s] the line at the 'crucial distinction between, on the one hand,

4    taking actions ... that are necessary to display ... actionable content and, on the other hand,

5    responsibility for what makes the displayed content illegal or actionable." *Id.* at 1269 n.4.  Thus,

6    to avoid Section 230, Meta must have functioned as the information content provider "for the

7    portion of the statement or publication ***at issue***"—*i.e.*, the alleged scam content involving Dr.

8    Forrest.  *Rigsby v. GoDaddy Inc.*, 2023 WL 1489914, at *5 (9th Cir. Feb. 3, 2023) (finding

9    defendant did not materially contribute to the content of the gambling site) (emphasis added);

10   *Klayman v. Zuckerberg*, 910 F. Supp. 2d 314 (D.D.C. 2012) (finding that while the defendants

11   "might well be information content providers as to some information on their website," they were

12   not information content providers as to the posts at issue).  The TAC is devoid of any such

13   allegation.

14   　　　Plaintiff points to certain features of Meta's advertising business that he incorrectly claims

15   render it the developer of the ads it generally publishes.  Plaintiff's arguments fail for the

16   following reasons:

17   　　　*First*, the various ad development tools Plaintiff claims that Meta purportedly offers—

18   such as tools that (1) allow advertisers to "select certain demographics" (TAC ¶ 113), (2)

19   "optimize the ad creative for each person viewing the ads" (TAC ¶ 12)1, (3) make ads "more

20   appealing when they are ultimately shown to individual viewers on Facebook" (TAC ¶ 123), and

21   (4) help "improve ad performance" (TAC ¶¶ 125, 128)—do not render Meta a "co-developer" of

22   the allegedly unlawful scam ads.  As courts have already determined, these are merely "tools

23   meant to facilitate the communication and content of others"—the very functionality that courts

24   have consistently held protected by Section 230.  *Dyroff*, 934 F.3d at 1098; *Kimzey* 836 F.3d at

25   1270 (Yelp's star rating system did "absolutely nothing to enhance the defamatory sting of the

26   message"); *Calise*, 2022 WL 1240860, at *6 (rejecting plaintiff's argument that Meta was the

27   information content provider because it purportedly "actively solicits and encourages third-party

28   advertisers it knows or should know are scammers" to advertise on Facebook).

Indeed, none of these website features "required" or "prompted" the alleged third-party "criminals" (TAC ¶ 165) "to post [the] unlawful content" in the first instance. *Gonzalez*, 2 F.4th at 896. The Ninth Circuit has repeatedly affirmed that a website does not lose protection simply because it "provides neutral tools that a user exploits" to create illegal content. *Dyroff*, 934 F.3d at 1099 (finding certain functions, including "recommendations and notifications—are tools meant to facilitate the communication and content of others. They are not content in and of themselves."). Merely "making information more available" through tools that make the offending ads "more appealing" or improve their performance is an "essential part of traditional publishing; it does not amount to 'developing' that information within the meaning of Section 230." *Force v. Facebook, Inc.*, 934 F.3d 53, 68 (2d Cir. 2019); *see, e.g., Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1199 (N.D. Cal. 2009) (demanding some "alleg[ation] that Google effectively 'requires' advertisers to engage in illegal conduct" to preclude Section 230 immunity); *Ynfante*, 2023 WL 3791652, at *3 (explaining features "such as the official 'Ad' label are [] 'neutral tools for navigating websites' that 'merely provide a framework that could be utilized [by others] for proper or improper purposes.' In other words, Google did nothing to make the content of the advertisement itself more unlawful."); *Herrick* 765 F. App'x at 591 (app did not create content by providing "tools and functionality available equally to bad actors and the app's intended users").

Plaintiff also alleges that Meta can determine what "completed, paid-for ads will look like, and who will see them," which allegedly renders Meta the creator of the scam content itself. TAC ¶ 119 (emphasis added). That allegation, however, is irrelevant to the Section 230 analysis as here. "A website operator who edits user-created content . . . retains his immunity for any illegality in the user-created content, provided that the edits are unrelated to the illegality." *Roommates*, 521 F.3d at 1169 (emphasis added); *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1268 (D.C. Cir. 2019) (service providers' decision to present third-party data in map format "does not constitute the 'creation' or 'development' of information"). Here, the alleged placement, performance, and positioning of the offending ads are unrelated to their alleged fraudulent nature or the alleged misappropriation of Plaintiff's likeness.

1      *Second*, the alleged deficiencies with Meta's monitoring and removal of allegedly illegal

2   content do not defeat the application of Section 230, as explained further.  Plaintiff claims that

3   Meta has failed to implement technology to "detect and screen out scam ads" and to "compl[y]

4   with its own policies" in order to "discover[] and prevent[] the Scam Ads."  TAC ¶¶ 138-139,

5   150; *see also* TAC ¶ 137 ("Meta could have chosen to design and manage its advertising business

6   to prevent or minimize the kind of Scam Ads that gave rise to this litigation").  But the alleged

7   underenforcement of Meta's monitoring policies cannot give rise to liability here.  A website is

8   afforded Section 230 protection even if the publishing of unlawful content arises out of a "refusal

9   to enforce [the website's] policies," as numerous courts have held.  *Reddit*, 2021 WL 5860904, at

10  *4; *see, e.g.*, *Bel Air Rd., LLC v. Zillow Grp., Inc.*, 2020 WL 774354, at *9 (C.D. Cal. Feb 18,

11  2020) (Section 230 barred false light claim against Zillow for failing "prevent users from ...

12  posting false content" on its website).  Similarly, it is irrelevant whether Meta knew or knows

13  about the alleged fraudulent ads.  Section 230 applies when a website "provides third parties with

14  neutral tools to create web content, even if the website knows that the third parties are using such

15  tools to create illegal content."  *Goddard*, 640 F. Supp. 2d at 1196 (emphasis added) (while

16  "[p]laintiff allege[d] that Google has a Content Policy designed to exclude advertisements by

17  fraudulent MSPPs, but ... 'intentionally refuse[d] to enforce its policies,'" the court held that these

18  allegations were "insufficient to overcome the 'robust' protections of the CDA").

19     *Finally*, the fact that Meta allegedly derives revenue from the offending ads does not turn

20  Meta into an information content provider either.  The "fact that a website elicits online content

21  for profit is immaterial" to the Section 230 analysis.  *Goddard*, 2008 WL 5245490, at *3 (holding

22  that allegations "that a website elicits online content for profit [are] immaterial"); *Morton*, 2021

23  WL 1181753, at *3 (same); *Fyk v. Facebook, Inc.*, 808 F. App'x 597, 598 (9th Cir. 2020)

24  ("[M]onetary purposes do[] not somehow transform Facebook into a content developer."); *Fed.*

25  *Agency of News LLC*, 432 F.Supp.3d at 1119 ("insofar as Plaintiffs assert that Section 230 does

26  not protect Facebook's 'data mining' efforts because they 'generate billions in revenue, there is no

27  'for-profit exception to § 230's broad grant of immunity.'").

28     In short, Plaintiff has alleged no feature of Meta's advertising business that "play[s] any

special role in the illegality of [the Scam Ads]." *Reddit*, 2021 WL 5860904, at *5.  Indeed, Meta's advertising tools certainly do not "effectively 'require[]' advertisers to engage in illegal conduct," *Goddard*, 640 F. Supp. 2d at 1199, but rather provide neutral tools for all advertisers to use.  *Dyroff*, 934 F.3d at 1099.  As alleged, Meta has not materially contributed to the scam content at issue.  Thus, Meta is not the creator or developer of the ads at issue, which means that Section 230's second requirement is met.

### 4.   Each of Plaintiff's claims seek to treat Meta as a "publisher."

Under Section 230, a plaintiff's claim treats a defendant as a "publisher" when it seeks to hold a service provider liable for its purported exercise of "editorial functions"—such as "deciding whether to publish, withdraw, postpone, or alter content."  *Barnes*, 570 F.3d at 1102 (9th Cir. 2009) (barring negligent undertaking claim under Section 230).  What matters is not the "name of the cause of action," but "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'  If it does, Section 230(c)(1) precludes liability."  *Id.* at 1101-02.  The statutory phrase "treat as a publisher" is construed broadly in favor of immunity.  *Force*, 934 F.3d at 65 (noting "capacious conception of what it means to treat a website operator as the publisher ... of information provided by a third party").

Here, Plaintiff's claims, regardless of their labels, challenge third-party content on Facebook and Meta's alleged decisions about what content to publish—including the selection, arrangement, display, and promotion of that content (and, conversely, screening, withdrawing, and removing it).  All of these activities are protected by Section 230.  Indeed, as the San Mateo Superior Court rightly held in dismissing Plaintiff's FAC, "each of [Plaintiff's] claims is based on allegations that [Meta] committed acts in the role of publisher, which Section 230(c)(1) precludes."  Order, Ex. B at 6.  And while Plaintiff now brings some additional claims, nothing in the TAC changes that conclusion.  For example, Plaintiff's misappropriation of likeness claim seeks to hold Meta liable for the dissemination of third-party ad content that allegedly misused Plaintiff's "name and likeness."  TAC ¶ 216.  Plaintiff's negligence claim involves Meta's purported failure to postpone, block, or withdraw user-provided content from Facebook.  *Id.* ¶

234.  And Plaintiff's negligent failure-to-warn claims asserts that Meta breached a duty to "warn about Scam Ads—which would have required Meta to monitor the content of those third-party ads. *Id.* ¶ 248.  Finally, Plaintiff's unjust enrichment claim alleges that Meta "wrongly received ad revenue" by publishing the third-party ads, at the expense of Plaintiff's "reputation, name, likeness, and endorsement." *Id.* ¶¶ 255-6.  This claim, too, seeks to hold Meta liable for publishing third-party content.

Moreover, Plaintiff cannot circumvent Section 230 by alleging that Meta (1) failed to implement features to detect and remove scam advertisements (TAC ¶ 138); or (2) did not enforce its policies that would have discovered and prevented the scam advertisements (TAC ¶ 150).  These theories still treat Meta as publisher: They claim that Meta is liable because it does not postpone, block, or withdraw user-provided content from their services.  Courts nationwide have consistently applied Section 230 to bar similar claims.  For example, in *Ripple Labs Inc. v. YouTube LLC*, 2020 WL 6822891 (N.D. Cal. 2020), the plaintiff challenged alleged spoofing videos that impersonated the plaintiff and its CEO to sell fraudulent cryptocurrency.  *Id.* at *1. The plaintiff "alerted YouTube about the scam" and "[a] Forbes article in November 2019 reported the scam," but YouTube "did not take down the fraudulent channels for days, weeks, or months after notice," and in fact "[n]ew instances of the scam 'continued to appear, often amassing thousands of views and creating more victims by the day.'"  *Id.* at *2.  Nevertheless, the court held that "YouTube has immunity under § 230(c)."  *Id.* at *7; *see also Herrick*, 765 F.App'x at 591 ("Herrick's failure to warn claim is inextricably linked to Grindr's alleged failure to edit, monitor, or remove the offensive content … accordingly, it is barred by § 230."); *In re Facebook, Inc.*, 625 S.W.3d at 94 (allegations about Facebook's alleged "lack of safety features" seek to hold Facebook "liable for its failure to combat" offensive third-party content); *Doe II v. MySpace Inc.*, 175 Cal.App.4th 561, 573 (2009) ("That appellants characterize their complaint as one for failure to adopt reasonable safety measures does not avoid the immunity granted by section 230.").  Such claims impermissibly treat Meta as publisher of third-party content too.

Ultimately, each of Plaintiff's theories of liability remains "the classic kind of claim that [has been] found to be preempted by section 230," and California and federal courts have

1   "uniformly rejected" them.  *Gentry*, 99 Cal. App. 4th at 835; *see, e.g.*, *Cross v. Facebook, Inc.*, 14

2   Cal. App. 5th 190, 208 (2017) (dismissing misappropriation-of-likeness claim under Section

3   230); *Joude v. WordPress Found.*, No. 14-CV-1656, 2014 WL 3107441, at *7 (N.D. Cal. July 3,

4   2014) (dismissing "[p]laintiff's allegation of misappropriation of likeness" under Section 230

5   (emphasis added)); *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1126 (N.D. Cal. 2016)

6   (dismissing failure-to-warn claim because the "theory of liability is inherently tied to content" and

7   would "effectively requir[e defendant] to police and restrict its provision of [user] accounts");

8   *Reddit*, 2021 WL 58860904, at *6 (it is "readily apparent" that Section 230 bars "a claim for

9   unjust enrichment" premised on a "quintessential [publisher] function" like displaying a third-

10  party ad); *Al-Ahmed v. Twitter, Inc.*, No. 21-CV-8017, 2022 WL 1605673, at *16 (N.D. Cal. May

11  20, 2022) (dismissing unjust enrichment claim).

12      Thus, because Plaintiff's claims each attempt to treat Meta as the publisher or speaker of

13  the content at issue, Section 230(c)(1)'s final requirement is met.

14      **B.    Plaintiff's Claims Are Time Barred.**

15      Several of Plaintiff's claims are further barred by their respective statutes of limitations.

16          **1.    Misappropriation of name and likeness.**

17      The statute of limitations for a claim for misappropriation of name and likeness in

18  California is **two years**.  *See Christoff v. Nestle USA, Inc.*, 47 Cal.4th 468, 474 (2009); *see also*

19  *Cusano v. Klein*, 264 F.3d 936, 950 (9th Cir. 2001) ("The statute of limitations for infringement

20  of the right of publicity in California is two years.").  The single publication rule, as codified in

21  Cal. Civ. Code § 3425.3, applies to these claims, such that there is "but a single potential action"

22  for an instance of misappropriation regardless of how many times it was republished.  *Christoff*,

23  47 Cal.4th at 476-78 (noting that the statute of limitations period begins to run, upon "the first

24  general distribution of the publication to the public").  "In the context of websites, republication

25  does not occur so long as the statement is not substantively altered or directed to a new audience."

26  *Youngevity International, Corp. v. Smith*, 224 F.Supp.3d 1022, 1027 (N.D. Cal. 2016); *see also*

27  *Oja v. United States Army Corps of Engineers*, 440 F.3d 1122, 1132 (9th Cir. 2006) (rejecting

28  plaintiff's argument that a defendant continuously republished information by hosting the

information on a website); *Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 850-52 (N.D. Cal. 2020) (holding that internet post containing link to allegedly defamatory blog post published over 18 months earlier was not republication of original blog post).

Here, Dr. Forrest's claim accrued in 2014 when it first came to Dr. Forrest's attention that his image was being used on Facebook.  TAC ¶ 46 ("During 2014, it came to Dr. Forrest's attention that his image was being used by a number of internet scammers who were setting up 'imposter' pages appearing to belong to Dr. Forrest."); *id.* ¶ 49 ("Thus, as of at least 2014, Meta was aware that Dr. Forrest's name and image were being misused…").  Because Dr. Forrest's misappropriation claim arises from these ads, *see id.* ¶ 215, this claim is barred by the two-year statute of limitations and must be dismissed with prejudice.

## 2.  Unjust enrichment.

A claim for unjust enrichment is subject to either a ***two-year*** or ***three-year*** statute of limitations depending on the underlying wrong.  *Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1157 n.2 (N.D. Cal. 2023).  If the claim is founded on a quasi-contract theory, the statute of limitations is two years under Cal. Civ. Code § 339(1).  *Id.*  If the claim is based on conversion, fraud, or mistake, the statute of limitations is three years under Cal. Civ. Code § 338(d).  *Id.*  An unjust enrichment claim is subject to the discovery rule and accrues when a plaintiff actually or reasonably should have discovered the actions resulting in unjust enrichment.  *Federal Deposit Ins. Corp. v. Dintino*, 167 Cal.App.4th 333, 349 (Cal. Ct. App. 2008)

Regardless of which of these standards applies, Plaintiff's unjust enrichment claim is time barred.  The basis for Plaintiff's unjust enrichment claim is that Meta was "unjustly enriched through the receipt of ad revenue derived in connection with" the alleged exploitation of Plaintiff's name and likeness.  TAC ¶ 257.  His claim accordingly accrued in 2014 when he first became aware that there were pages on Facebook using his image.  *Id.* ¶¶ 44, 46.  His unjust enrichment claim is therefore time-barred.

## C.  Plaintiff Fails to State Any Viable Claim For Relief.

### 1.  Misappropriation of name and likeness.

Plaintiff asserts that Meta misappropriated his name and likeness because of alleged "co-

1   opting" of Plaintiff's "name and image in order to swindle innocent Australians" and the setting

2   up of "'imposter' pages" on Facebook.  TAC ¶¶ 44, 46.

3          Under California law, such a claim may arise in both common law and California Civil

4   Code § 3344.  To allege a common law claim, Plaintiff must show "(1) the defendant's use of the

5   plaintiff's identity; (2) the appropriation of [the] plaintiff's name or likeness to [the] defendant's

6   advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury."  *Arenas v.*

7   *Shed Media U.S. Inc.*, 881 F. Supp. 2d 1181 (C.D. Cal.), *aff'd sub nom. Arenas v. Shed Media US,*

8   *Inc.*, 462 F. App'x 709 (9th Cir. 2011) (citations omitted).  For a claim under § 3344, a plaintiff

9   must allege all the elements of a common law claim plus "a knowing use by the defendant" and

10  "a direct connection between the alleged use and the commercial purpose."  *Downing v.*

11  *Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001).

12         Here, Plaintiff's misappropriation-of-likeness claim fails for two reasons.  *First,* Plaintiff

13  has not alleged facts showing that Meta, as opposed to third-party Facebook users, "used"

14  Plaintiff's name or likeness to support misappropriation liability.  In *Cross v. Facebook, Inc,* for

15  instance, the court recognized that the "use" element was not met when "third parties," and not

16  Facebook, were the ones who actually "posted" the "unauthorized Facebook pages" that featured

17  the plaintiff's name and likeness.  14 Cal. App. 5th at 209.  Facebook's actions in hosting the

18  content and "generating revenue" from the content within its broader platform, the court

19  recognized, were not "use."  *Id.*  Here, as in *Cross*, the misappropriating content was designed

20  and uploaded by a third party, and Facebook merely distributed the content on the same terms that

21  it distributes all advertising content.  *See supra* Section IV.A.3.  This is insufficient to establish

22  Meta's "use" of Plaintiff's likeness.[5]

23         *Second,* Plaintiff's allegations that Meta generally profits by keeping users engaged and

---

[5] Notably, California courts have even rejected claims like Forrest's under secondary liability or aiding and abetting theories.  *See Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484, 2010 WL 9479060, at *13-14 (C.D. Cal. July 30, 2010), *aff'd*, 653 F.3d 976 (9th Cir. 2011) (concluding allegations that Google hosted advertisements for third-party websites that displayed models' names and likenesses did not mean that Google was "inappropriately *using* the models' likenesses" for purposes of a right-of-publicity claim); *accord Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 809 (9th Cir. 2007) (rejecting claim for aiding and abetting right of publicity violation as unsupported by California law).  Transmission of misappropriating third-party content does not constitute "use."

selling advertisements, *see, e.g.*, TAC ¶ 118, do not sufficiently demonstrate that Meta misappropriated Plaintiff's likeness *to its advantage or benefit*.  As the Ninth Circuit explained in *Newcombe v. Adolf Coors Co.*—which addressed a similar situation—an advertisement that misappropriates somebody's likeness "could not be said to have directly benefited … the *publisher* of [the advertisement], because the benefit [the publisher] received—payment for the advertising space—was unrelated to the contents of the advertisement."  157 F.3d 686, 693 (9th Cir. 1998) (emphasis added).  Other courts have likewise dismissed claims in which the alleged benefit is generalized advertising revenue rather than a benefit specifically related to the illegality of the advertising content.  *See, e.g.*, *Cross*, 14 Cal. App. 5th at 211 (dismissing misappropriation claim because "any 'benefit' to Facebook" from selling ad space near misappropriated content is "'unrelated to the content[]'" itself) (quoting *Newcombe*, 157 F.3d at 693); *Perfect 10*, 2010 WL 9479060, at *13 (declining to find Google liable for misappropriation claims when it derived advertising revenue from a third-party content provider's displays of models' likenesses on blog pages).  Here, Plaintiff does not allege that the purported benefit Meta derived from the alleged misappropriation is connected to the alleged illegality of that content or distinct in any way from the purported benefit Meta derives from any other content made available on its platform.  Accordingly, the claim must be dismissed.

### 2.     Negligence and negligent failure to warn.

Plaintiff cannot state either of his negligence-based claims against the Meta because he does not and cannot allege that Meta owes him a cognizable duty of care.  It is Plaintiff's burden to plead facts establishing the existence of a duty.  *See Tuttle v. Chase Ins. Life & Annuity Co.*, 2007 WL 2790359, at *3-4 (N.D. Cal. Sept. 20, 2007).  Plaintiff has failed to do so here.

As for negligence, Plaintiff claims that Meta owes a "duty to the public, including Dr. Forrest, to design and operate its advertising business in a commercially reasonable manner."  TAC ¶ 234.  But Meta does not owe a duty to users—including Dr. Forrest—to control the actions of alleged third-party scam advertisers.  And while Plaintiff claims Meta breached this duty by "acting as an advertising agency for the Scam Advertisers, knowingly producing Scam Ads," as described above, ***third parties*** "produced" the alleged Scam Ads, not Meta.  Plaintiff's

own allegations show—at base—that he seeks to hold Meta liable for **third-party users** having

posted those ads on Facebook.

Indeed, as a general rule, an "actor is under no duty to control the conduct of third

parties." *Melton v. Boustred*, 183 Cal. App. 4th 521, 535 (2010); *see e.g.*, *Doe No. 1 v. Uber*

*Technologies, Inc.*, No. 310131, 2022 WL 1769112 (N.D. Cal. June 1, 2022) (holding Uber did

not have a duty to protect plaintiffs from third-party conduct where there was no special

relationship to protect from third-party harm).  While there are some common-law exceptions to

this general rule, none applies here.  For example, while courts have recognized a special

relationship between innkeepers and guests, common carriers and passengers, and medical

professionals and patients, *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 235, 236 n.14 (2005),

they have consistently rejected attempts to fashion a "special relationship" between websites and

their users.  *See Dyroff*, 934 F.3d at 1101 ("No website could function if a duty of care was

created when a website facilitates communication, in a content-neutral fashion, of its users'

content."); *Jackson v. Airbnb, Inc.*, 654 F.Supp.3d 990, 995 (C.D. Cal. 2023) (finding no special

relationship where defendant could only remove listings and revoke membership, not control the

property at issue); *Beckman v. Match.com, LLC*, 743 F. App'x 142, 143 (9th Cir. 2018) (affirming

dismissal of negligence-based claim because plaintiff "failed sufficiently to allege a special

relationship between her and [online dating website]"); *In re Zoom Video Commc'ns Inc. Priv.*

*Litig.*, 525 F. Supp. 3d 1017, 1039 (N.D. Cal. 2021) (declining to find a "special relationship"

between users and software platform); *see also Klayman v. Zuckerberg*, 753 F.3d 1354, 1359

(D.C. Cir. 2014) (no special relationship between Facebook and its users); *Bibicheff v. PayPal,*

*Inc.*, 844 F. App'x 394, 395-96 (2d Cir. 2021) (affirming dismissal of negligence-based claim

because PayPal did not have a special relationship with its users). Even more specifically, internet

service providers do not have a duty to prevent users from publishing or consuming objectionable

content.  *See, e.g.*, *Herrick*, 306 F.Supp.3d at 585-87, 599 (social networking application did not

have a duty to prevent publication of allegedly dangerous and harassing content).

Plaintiff's negligent failure to warn claim fails for the same reason.  As the San Mateo

Superior Court previously recognized, and as explained above, this claim fails at the first prong

"because a duty to warn does not exist absent a special relationship between Facebook ***and the plaintiff***."  Order, Ex. B at 6; *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal. 3d 425, 435 (1976) ("[A]s a general rule, one … owe[s] no duty to control the conduct of another, nor to warn those endangered by such conduct," absent a defendant's "special relationship to either the person whose conduct needs to be controlled" or "to the foreseeable victim of that conduct." (internal citations omitted)).

Here, Plaintiff alleges that a duty to Dr. Forrest exists absent any "special relationship" because Facebook's ad targeting conduct constitutes "misfeasance" rather than nonfeasance. TAC ¶ 251.  But, as the state court already observed, the alleged misfeasance is merely acts within Meta's editorial discretion.  Order, Ex. B at 6.  And the Ninth Circuit's decision in *Dyroff* made clear that characterizing a site's promotion of allegedly harmful content as "misfeasance" rather than "nonfeasance" is a "misguided premise." *Dyroff*, 934 F.3d at 1095, 1100.  Because Meta has no duty to protect users from third-party content on its platform, Plaintiff cannot state a negligence claim.[6]

Accordingly, because Plaintiff cannot allege that Meta owed him a cognizable duty of care, his negligence and negligent failure to warn claims both fail.

### 3.    Unjust enrichment.

When a plaintiff alleges unjust enrichment, California courts generally "construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted) (noting that "there is not a standalone cause of action for 'unjust enrichment'").  The elements of a quasi-contract claim—which are identical to unjust enrichment—are: (1) receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another. *Peterson v. Cellco P'ship,* 164 Cal. App. 4th 1583, 1593 (2008).  Crucially,

---

[6] Confoundingly, Plaintiff claims that Meta owed a duty to the Australian public to warn about the scam ads, but also argues that any purported "special relationship" in negligence (to the extent there is one) is ***between Meta and Dr. Forrest***, as Meta allegedly suggested Dr. Forrest create a verified Facebook page in 2014.  TAC ¶ 252.  Plaintiff has not and cannot establish that Meta's purported suggestion gives rise to a "special relationship" under California law, as special relationships of this nature are rare and limited to, for example, common carriers and their passengers.  *Delgado*, 36 Cal. 4th 224 at 235; *Dyroff*, 934 F.3d at 1101.  And as discussed above, Meta does not owe any negligence duty to all Facebook users, including Dr. Forrest.

1  the benefit received by the defendant must be "obtained … *directly* from [the plaintiff]."

2  *Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*, 2021 WL 2188138, at *14 (E.D. May

3  28, Cal. 2021).

4      The TAC does not properly plead either element.  Tellingly, Plaintiff never alleges that he

5  conveyed any benefit to Meta, let alone that Meta retained the benefit at Plaintiff's expense.

6  Instead, Plaintiff alleges that Meta "wrongly received ad revenue in return for producing Scam

7  Ads" produced by "criminals" that "misused Dr. Forrest's reputation, name, likeness, and

8  endorsement."  TAC ¶¶ 255-56.  This is not enough.  Plaintiff has not identified a benefit that

9  Meta received "***directly*** from [Plaintiff]," and thus his "unjust enrichment claim [cannot be saved]

10  as a quasi-contract claim."  *Roadrunner*, 2021 WL 2188138, *14 (emphasis added) (holding that

11  an allegation that the defendant received "increased profits flowing from business with [a third

12  party]" did not sufficiently plead a direct benefit).

13      What is more, even if the claim were properly pleaded, it would still be independently

14  barred because Plaintiff also brought tort claims predicated on the same underlying facts.  Unjust

15  enrichment is appropriate only "where the defendant obtained a benefit from the plaintiff [and]

16  the plaintiff has chosen not to sue in tort."  *Brown v. Wells Fargo Bank, N.A.*, No. 19-CV-260,

17  2019 WL 3318551, at *8 (E.D. Cal. July 24, 2019).  In a case with parallel tort claims, an unjust

18  enrichment claim merges with—and is duplicative of—the tort claims.  For that reason, too, the

19  unjust enrichment claim should be dismissed.

20                    **4.    Declaratory Relief.**

21      Plaintiff also asks that the Court "estop[] and otherwise equitably preclude[]" Meta from

22  relying on Section 230 as a defense here.  TAC ¶ 260.  This endeavor fails.  Contrary to the

23  unsupported assertions in its TAC, Plaintiff has not demonstrated the requisite "substantial

24  controversy" entitling him to a declaratory judgment because, as explained above, *supra* Section

25  IV.A, Meta can rely on Section 230 to bar Plaintiff's claims.  *See Kimball v. Flagstar Bank*

26  *F.S.B.*, 881 F. Supp. 2d 1209, 1219-20 (S.D. Cal. 2012) ("[B]ecause the other causes of action fail

27  to state a claim, Plaintiffs have not demonstrated the requisite 'substantial controversy' for

28  declaratory judgment.").  Moreover, such relief is unnecessary, as it is duplicate of the relief

already sought by Plaintiff in his TAC.  The Court can determine as a matter of law whether Section 230 applies here.  *Lloyd v. Facebook, Inc.*, 2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) (claims barred "as a matter of law under Section 230").  It does not also need to preclude Meta from relying on the defense.  *Achal v. Gate Gourmet, Inc.*, 114 F.Supp.3d 781, 819 (N.D. Cal. July 14, 2015) (dismissing prayer for declaratory relief where the declaratory relief sought was "commensurate with the relief sought through [plaintiff's] substantive claims.").

### D. Plaintiff Should Not Be Granted Leave to Amend.

Leave to amend is generally inappropriate if an amendment would be futile or if the plaintiff has already been permitted to amend the complaint.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).  Both rationales support denying leave here.

Leave to amend is also inappropriate because Plaintiff's "pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).  Plaintiff's claims seek to hold Meta liable for its actions as a publisher, so they will be barred by Section 230(c)(1) no matter what additional facts he pleads.  That is why courts generally deny leave to amend when "there is CDA immunity."  *King v. Facebook, Inc.*, No. 21-CV-4573, 2021 WL 5279823, at *13 (N.D. Cal. Nov. 12, 2021) (dismissing claims barred by Section 230 with prejudice because "it would be futile for [Plaintiff] to try to amend the claim[s]"); *Brittain v. Twitter, Inc.*, No. 19-CV-114, 2019 WL 2423375, at *4 (N.D. Cal. June 10, 2019) (dismissing claims barred by Section 230 with prejudice "[b]ecause plaintiff cannot cure this defect").  Moreover, as established above (*see supra* § B), each of Plaintiff's claims suffer other fatal deficiencies that he cannot overcome with further amendments.

The Court's discretion to dismiss a claim without leave to amend is particularly broad where the plaintiff has previously filed an amended complaint, *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004), and Plaintiff has already amended his complaint three times: once by right in November 2021, and again in June 2022 after the San Mateo Superior Court dismissed the claims on multiple grounds, but nonetheless "granted leave … to file and serve a Second Amended Complaint, and once again after Meta agreed that Plaintiff could file his Third Amended Complaint. Plaintiff has therefore had ample opportunity to craft a valid pleading.

1   Even if amendment was not futile (and it is), there is no reason to give Plaintiff yet another

2   opportunity to replead.

3   **V.      CONCLUSION**

4         For the foregoing reasons, Meta respectfully requests that the Court dismiss Plaintiff's

5   TAC in its entirety with prejudice.

6   Dated:  January 19, 2024                              ORRICK, HERRINGTON & SUTCLIFFE LLP

7

8                                  By:    *Jacob M. Heath*

9                                          Jacob M. Heath

10                                      Attorney for Defendant
                                        META PLATFORMS, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28