JACOB M. HEATH (STATE BAR NO. 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:     +1 650 614 7400
Facsimile:     +1 650 614 7401

Attorneys for Defendant
Meta Platforms, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. ANDREW FORREST,<br><br>              Plaintiff,<br><br>        v.<br><br>META PLATFORMS, INC.,<br><br>              Defendant. | Case No.  22-cv-03699-PCP<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT WITH PREJUDICE**<br><br>Date:          April 11, 2024<br>Time:          10:00 a.m.<br>Courtroom:  Courtroom 8<br>Judge:        Hon. Casey P. Pitts |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................................1

II.     ARGUMENT....................................................................................................................1

        A.      Section 230 of the Communications Decency Act Bars Plaintiff's Claims.............1

                1.      The presumption against extraterritoriality does not apply ........................2

                2.      Section 230 applies in this case .................................................................3

                        a.      Meta is an interactive computer service provider ...........................4

                        b.      Meta is not the information content provider of the "Scam
                                Ads" ...............................................................................................6

                        c.      Plaintiff's claims seek to treat Meta as the "Scam Ads'"
                                "publisher" .....................................................................................9

        B.      Plaintiff's Claims Are Time Barred........................................................................11

        C.      Plaintiff Fails to State Any Viable Claim For Relief.............................................12

                1.      Misappropriation of name and likeness .....................................................12

                2.      Negligence and negligent failure to warn ..................................................13

                3.      Unjust enrichment......................................................................................15

                4.      Declaratory relief .......................................................................................15

III.    CONCLUSION...............................................................................................................16

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Achal v. Gate Gourmet, Inc.*,
    114 F.Supp.3d 781 (N.D. Cal. July 14, 2015) ........................................................................15

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,
    625 F. Supp. 3d 971 (N.D. Cal. Sept. 2, 2022) ...............................................................7, 8, 10

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) ................................................................................................10

*Blazevska v. Raytheon Aircraft Co.*,
    522 F.3d 948 (9th Cir. 2008) ................................................................................................2, 3

*Boilermakers Nat. Annuity Tr. Fund v. WaMu Mortg. Pass Through Certificates,*
    *Series AR1*,
    748 F. Supp. 2d 1246 (W.D. Wash. 2010)..............................................................................11

*Brown v. Wells Fargo Bank, N.A.*,
    2019 WL 3318551 (E.D. Cal. July 24, 2019) .........................................................................15

*Calise v. Meta Platforms, Inc.*,
    2022 WL 1240860 (N.D. Cal. April 27, 2022)..........................................................................6

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) ..................................................................................................2

*Cross v. Facebook, Inc.*,
    14 Cal. App. 5th 190 (2017) .............................................................................................12, 13

*Delgado v. Trax Bar & Grill*,
    36 Cal.4th 224 (2005) .............................................................................................................15

*Doe v. Reddit, Inc.*,
    2021 WL 5860904 (C.D. Cal. Oct. 7, 2021)..........................................................................7, 8

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ...............................................................................4, 5, 14, 15

*F.T.C. v. LeadClick Media, LLC*,
    838 F.3d 158 (2d Cir. 2016)...................................................................................................5, 9

*In re Facebook, Inc.*,
    625 S.W.3d 80 (Tex. 2021)......................................................................................................11

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ...............................................................................................6, 9

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019)..............................................................................................2, 3, 9

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
Case No.  22-cv-03699-PCP

*Gentry v. eBay, Inc.*,
　99 Cal. App. 4th 816 (2002) ...............................................................................................11

*Ginsberg v. Google Inc.*,
　586 F. Supp. 3d 998 (N.D. Cal. 2022) ...............................................................................14

*Goddard v. Google, Inc.*,
　640 F. Supp. 2d 1193 (N.D. Cal. 2009) ...........................................................................5, 7

*Gonzalez v. Google LLC*,
　2 F.4th 871 (9th Cir. 2021) ..........................................................................................2, 3, 7

*Gonzalez v. Google LLC*,
　598 U.S. 617 (2023)..............................................................................................................3

*Herrick v. Grindr LLC*,
　765 F. App'x 586 (2d Cir. 2019) ..........................................................................................7

*Hicks v. Bradford*,
　2023 WL 6190884 (C.D. Cal. Aug. 17, 2023).....................................................................4

*HomeAway.com, Inc. v. City of Santa Monica*,
　918 F.3d 676 (9th Cir. 2019) ..............................................................................................10

*Jackson v. Airbnb, Inc.*,
　654 F.Supp.3d 990 (C.D. Cal. 2023) ..................................................................................14

*Jacobs v. Meta Platforms, Inc.*,
　2024 WL 1097923 (Cal. Sup. Ct. Mar. 5, 2024) ................................................................14

*Kimzey v. Yelp! Inc.*,
　836 F.3d 1263 (9th Cir. 2016) ...........................................................................................6, 7

*Klayman v. Zuckerberg*,
　753 F.3d 1354 (D.C. Cir. 2014) ...........................................................................................2

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
　572 U.S. 118 (2014)............................................................................................................12

*Lloyd v. Facebook, Inc.*,
　2022 WL 4913347 (N.D. Cal. Oct. 3, 2022)........................................................................4

*Loomer v. Zuckerberg*,
　2023 WL 6464133 (N.D. Cal. Sept. 30, 2023) ....................................................................4

*McCarthy v. Amazon.com, Inc.*,
　2023 WL 4201745 (W.D. Wash. June 27, 2023)..................................................................5

*Morton v. Twitter, Inc.*,
　2021 WL 118175 (C.D. Cal. Feb. 19, 2021).........................................................................5

*Narayan v. EGL, Inc.*,
　616 F.3d 895 (9th Cir. 2010) ................................................................................................3

iii

*Nestle Purina PetCare Co. v. Blue Buffalo Co.*,
2015 WL 1782661 (E.D. Mo. Apr. 20, 2015)..........................................................................................12

*Newcombe v. Adolf Coors Co.*,
157 F.3d 686 (9th Cir. 1998) ...........................................................................................................13

*Onuoha v. Facebook, Inc.*,
2017 WL 11681325 (N.D. Cal. April 7, 2017).........................................................................................9

*Perfect 10, Inc. v. Google, Inc.*,
2010 WL 9479060 (C.D. Cal. July 30, 2010)..................................................................................12, 13

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) ...........................................................................................................13

*Rigsby v. GoDaddy Inc.*,
59 F.4th 998 (9th Cir. 2023) ..............................................................................................................7

*Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*,
2021 WL 2188138 (E.D. May 28, Cal. 2021) .........................................................................................15

*Seo v. All Makes Overhead Door*,
97 Cal.App.4th 1193 (2002) ............................................................................................................14

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd*, 697 Fed. Appx. 526....................................4, 5

*In re Social Media Adolescent Addiction/Personal Injury Product Liability Litig.*,
No. 4:22-MD-03047-YGR, 2023 WL 7524912 (N.D. Cal. Nov. 14, 2023)
..........................................................................................................6, 10, 11, 14

*Twitter, Inc. v. Taamneh*,
143 S.Ct. 1206 (2023).....................................................................................................................3

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023).......................................................................................................................13

*U.S. v. Phillips*,
413 F.3d 1288 (11th Cir. 2005) ........................................................................................................3

*Waits v. Frito-Lay, Inc.*,
978 F.2d 1093 (9th Cir. 1992) .........................................................................................................12

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
2010 WL 4117477 (N.D. Cal. Oct. 19, 2010).........................................................................................12

*Wozniak v. YouTube, LLC*,
2024 WL 1151750 (Cal. Ct. App. March 15, 2024).............................................................................8, 10

*Ynfante v. Google LLC*,
2023 WL 3791652 (S.D.N.Y. June 1, 2023) ...........................................................................................6

**Statutes**

47 U.S.C. § 230................................................................................................... *passim*

iv

## I.    INTRODUCTION

Plaintiff Andrew Forrest's ("Plaintiff" or "Forrest") Opposition only underscores why his Third Amended Complaint ("TAC") should be dismissed *with prejudice*.

*First*, Plaintiff's efforts to bypass the Communications Decency Act, 47 U.S.C. § 230 *et seq.* ("Section 230") fail.  Plaintiff's argument that the presumption against extraterritoriality prevents application of Section 230 here—*i.e.*, a lawsuit asserting California law claims, against a U.S. company, in U.S. federal court—is meritless.  The presumption against extraterritoriality *does not* bar the application of Section 230 to litigation in the U.S.  Plaintiff's argument that Meta is not an interactive computer service provider ("ICSP") is also without merit.  Countless courts have held that Meta is an ICSP, and that conclusion is not changed because Meta provides advertising services on its websites.  Plaintiff's argument that Meta is the "information content provider" of *third-party* "Scam Ads" simply because it purportedly offers a "suite of advertising tools and applications" is also baseless.  The Ninth Circuit has consistently held that a defendant must have made a "material contribution" to the "creation or development" of the specific *unlawful content*.  There are no such allegations against Meta here.  Finally, Plaintiff's claims are barred by Section 230 because they would hold Meta liable as a publisher or speaker of third-party information.

*Second*, Plaintiff cannot avoid the two-year time-bar to his claims for misappropriation of name and likeness and unjust enrichment—those claims accrued in 2014 when he alleged that he first learned of the purported fraudulent activity underlying his claims.

*Finally*, the Opposition fails to resolve the many deficiencies highlighted in Meta's Motion, including that Plaintiff alleges no facts showing that Meta, as opposed to the third-party fraudsters, "used" his name or likeness, or that Meta owes Plaintiff or any Facebook user a duty in negligence to prevent third parties from publishing scam content on Facebook.  Accordingly, all his claims should be dismissed for failure to plead facts sufficient to state a claim.

## II.    ARGUMENT

### A.    Section 230 of the Communications Decency Act Bars Plaintiff's Claims

Plaintiff makes four arguments in his futile attempt to evade Section 230: that (1) the

1

presumption against extraterritoriality bars application of Section 230 to his claims because certain alleged conduct purportedly occurred in Australia (Opp. at 5-8); (2) Meta is not an ICSP (*id.* at 10-15); (3) Meta allegedly produced the third-party "Scam Ads" (*id*. at 15-17); and (4) Plaintiff's claims do not treat Meta as the "publisher" of the "Scam Ads" (*id*. at 17-19).  Each argument fails.

### 1.      The presumption against extraterritoriality does not apply

Courts consistently hold that Section 230 applies to claims filed in U.S. courts, regardless of where they arose.  *See* Mot. at 6-7; *see also Force v. Facebook, Inc.*, 934 F.3d 53, 72–74 (2d Cir. 2019) (presumption against extraterritoriality does not affect application of Section 230 to claims in U.S. courts, as its focus is to limit liability in those courts); *Gonzalez v. Google LLC*, 2 F.4th 871, 888 (9th Cir. 2021) (applying Section 230 even though the relevant events took place in Europe) (citation omitted), *vacated on other grounds*, 598 U.S. 617 (2023).  And multiple courts have applied Section 230 to state-law claims concerning conduct abroad.  *See, e.g*., *Carafano v. Metrosplash.com, Inc*., 339 F.3d 1119, 1125 (9th Cir. 2003) (suit concerning false dating profile posted in Berlin); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1356 (D.C. Cir. 2014) (suit concerning "Third Palestinian Intifada" page).

Plaintiff argues that the presumption against extraterritoriality applies because "none of the 'conduct relevant to [the CDA's] focus'" occurred in the U.S.  Opp. at 6.[1]  This misstates the applicable law on extraterritoriality.  As the Ninth Circuit has explained, the "presumption against extraterritoriality simply is not implicated" by statutes—like Section 230— that restrict "the ability of a party to initiate an action for damages against a [defendant] in American courts," as that is *not* "govern[ing] conduct occurring abroad."  *Blazevska v. Raytheon Aircraft Co*., 522 F.3d 948, 953 (9th Cir. 2008) (presumption against extraterritoriality did not bar application of statute that "eliminates the power of any party to bring a suit for damages" against specified defendant).  Here, Section 230's "regulat[ion of] the ability of a party to initiate an action . . . in American

---

[1] Plaintiff disingenuously claims that Meta "structured its entire business to avoid the reach of Australia's civil jurisdiction."  Opp. at 8.  Plaintiff omits critical context about this litigation: it was **Dr. Forrest** who ***strategically chose*** to pursue his civil claims in California, while simultaneously pursuing criminal claims in Australia.  *See* Meta's Mot. Stay, Dkt. No. 48 at 15 n.15.

2

courts—[is] an entirely domestic endeavor." *Id.* at 953. Statutes like Section 230 do not raise extraterritoriality problems when applied in U.S. courts.

Under *Blazevska*, *Force*, and other cases, the application of Section 230 here to California claims asserted in federal court against a U.S. corporation does not raise an extraterritoriality issue. *See Force*, 934 F.3d at 74 (because the focus of Section 230 is to limit liability in U.S. courts, its application does not implicate the presumption against extraterritoriality). Because "[t]he regulated conduct—the litigation of civil claims in federal courts—occurs entirely domestically in its application," the presumption "is no barrier to the application of Section 230(c)(1)." *Id.*; *accord Gonzalez*, 2 F.4th at 888 (Congress intended Section 230 to apply to claims filed "in American courts," regardless of "the place where the claims principally arose.").

Plaintiff's attempts to distinguish these cases fail. In *Gonzalez*, the Ninth Circuit's decision did not rest on the fact that the plaintiffs were U.S. citizens or that the conduct and harm at issue occurred in the U.S. (*see* Opp. at 9), but rather on the fact that ***redress was sought here***. 2 F.4th at 888. The Ninth Circuit rejected the plaintiffs' argument that the presumption against extraterritoriality barred application of Section 230, explaining that "the location of the conduct relevant to that focus 'must be where redress is sought and immunity is needed,'… *i.e.*, through this litigation, which is in this district." *Id.* (internal citation omitted).[2] In *Force*, contrary to Plaintiff's characterization, the Second Circuit concluded that the "regulated conduct" at issue for extraterritoriality purposes was the location of the litigation. *Force*, 934 F.3d at 74. Here, as in *Force* (*see id.*), Plaintiff's claim calls for Meta to be "treated" as a publisher or speaker in California—where "redress is sought and immunity is needed."

### 2. Section 230 applies in this case

Despite Plaintiff's transparent efforts to plead around Section 230, the statute bars his claims against Meta.

---

[2] *Gonzalez* was vacated on different grounds. *Gonzalez v. Google LLC*, 598 U.S. 617, 620 (2023) (declining to address Section 230 argument and remanding for further proceedings in light of *Twitter, Inc. v. Taamneh*, 143 S.Ct. 1206 (2023)). Thus, contrary to Plaintiff's assertion, its reasoning is still instructive here. *See, e.g.*, *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010) (citing as "instructive" case that was vacated on other grounds); *U.S. v. Phillips*, 413 F.3d 1288, 1292 (11th Cir. 2005) (same).

### a.  Meta is an interactive computer service provider

Many courts have held that Meta is an ICSP under Section 230.  *See, e.g., Sikhs for Justice, Inc. v. Facebook, Inc*., 144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd*, 697 Fed. Appx. 526 ("Facebook is an interactive computer service provider"); *Lloyd v. Facebook, Inc.,* 2022 WL 4913347, at *8 (N.D. Cal. Oct. 3, 2022) ("Meta and/or Facebook is an interactive computer service provider); *Loomer v. Zuckerberg*, 2023 WL 6464133, at *12 (N.D. Cal. Sept. 30, 2023) (same).  In an effort to avoid this well-settled conclusion, Plaintiff argues that Meta is not an ICSP because his TAC asserts that "**Meta Ads** is not an interactive computer service provider within the meaning of the CDA."  Opp. at 11. [3]  To be clear, there is no "Meta Ads" entity; it is a fictitious and meaningless moniker Plaintiff created.  Besides, Meta Platforms, Inc.—not "Meta Ads"—is the defendant here.  Regardless, Plaintiff's argument fails.

On its face, the TAC establishes that Meta is an ICSP.  "Websites," like Meta's, "are the most common interactive computer services."  *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019).  Here, the TAC repeatedly alleges that third parties posted the "Scam Ads" on Meta's "social media platforms" *online*, and that users *viewed those ads on Facebook*, purportedly causing Plaintiff's harm.  TAC ¶ 83.  Indeed, crucial to Plaintiff's claims is that the "Scam Ads" were allegedly *published to users of Meta's Facebook service*—*i.e*., an "information service, system, or access software provider that provides or enables computer access by multiple users to a computer service."  47 U.S.C. § 230(f)(2); *see Hicks v. Bradford*, 2023 WL 6190884, at *2 (C.D. Cal. Aug. 17, 2023) (Facebook was an ICSP where basis for plaintiff's negligence claim was that "Facebook facilitated the worldwide distribution of lies about Hicks on its social media network").

Plaintiff cannot avoid this well-settled authority by pointing to Meta's purported "ad production" conduct (Opp. at 11), which he argues is "commercial speech" and thus not focused

---

[3] Plaintiff's current framing is entirely inconsistent with his prior allegations, which essentially concede Meta is an ICSP. *See, e.g.*, ¶ 5, 88–92, 110–116, 174, 194 (alleging that Facebook provides a "website" that encompasses a "social media platform" and an "Ad Platform").  In fact, in Plaintiff's Opposition to Meta's Motion to Dismiss Plaintiff's Second Amended Complaint, he did not even dispute that Meta is an ICSP.  Dkt. No. 24.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
Case No.  22-cv-03699-PCP

on "providing or enabling computer access" under Section 230.[4]  Courts have consistently applied Section 230's broad definition of ICSP to include parties that offer more than just "online message boards, website exchange systems, or search engines," including websites like Meta that provide advertising services in the commercial context.  *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1197 (N.D. Cal. 2009) (extending immunity to Google for ad services); *McCarthy v. Amazon.com, Inc.*, 2023 WL 4201745, at *8 (W.D. Wash. June 27, 2023) (Amazon is an ICSP).[5] Meta is unaware of a single case that applies Plaintiff's proposal to sever an ICSP's advertising business from its other activity when analyzing its ICSP status.

*Morton v. Twitter, Inc.*, 2021 WL 118175, at *3 (C.D. Cal. Feb. 19, 2021) is instructive. The court there held that Twitter is "clearly an 'interactive computer service provider," a conclusion that was not changed by the fact that "Twitter '***generates revenue as an advertising agency*** and a data broker.'"[6]  *Id.* (emphasis added).  The court noted that Twitter still "provides or enables computer access by multiple users to a computer service."  *Id.*  The court rejected the plaintiff's attempt to frame Twitter's advertising services as distinct from the social media website overall.  *Id.* (the "exact mechanism by which Twitter delivers content to its users does not change the fact that Twitter is a social media platform and provides the 'prototypical service entitling it to protections of [Section 230].'").  Likewise, the fact that Meta "generat[es] advertising revenue" (TAC ¶ 13) or that users can access its advertising tools "through an application called Ads Manager" (*id.* ¶ 11) does not change the fact that Meta is an online platform that provides the "prototypical service" entitling it to Section 230 protection.  *Dyroff*, 934 F.3d at 1097; *see, e.g.*, *Ynfante v. Google LLC*, 2023 WL 3791652, at *2 (S.D.N.Y. June 1,

---

[4] Further, the cases Plaintiff cites to support this "commercial speech" argument are unrelated to, and do not even mention, Section 230, making them wholly inapposite.  Opp. at 11-12.

[5] Plaintiff's reliance on *F.T.C. v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016) is misplaced. Notably, in *LeadClick*, the court did not reach the issue of whether the defendant was an ICSP.  *Id.* at 176. The court noted that LeadClick's business was merely to "route[] customers through [a server] before reaching" a third-party website, activity which was "wholly unrelated to its potential liability under the statute."  *Id.*  Plaintiff cannot plausibly contend that the main function of Meta—even the fictitious "Meta Ads"—is to place advertisements on "websites of 'affiliate' networks," or that Meta's conduct in providing third-party ad content to users is "wholly unrelated" to potentially liability under Section 230.

[6] As Plaintiff notes, Meta's Motion mistakenly attributed this quote to *Sikhs for Justice*, 144 F. Supp. 3d at 1093.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
Case No.  22-cv-03699-PCP

2023) (dismissing claims under Section 230 involving alleged scam ads posted through "Google Ads");[7] *Calise v. Meta Platforms, Inc.*, 2022 WL 1240860, at \*2 (N.D. Cal. April 27, 2022) (applying Section 230 to claims alleging Meta solicits, encourages, and assists scam advertisers); *see also* Order (sustaining demurrer under Section 230).  Accordingly, Meta is an ICSP.[8]

### b.  Meta is not the information content provider of the "Scam Ads"

Plaintiff insists Meta was responsible for "producing" the offending ads.  *See* TAC ¶ 143. But, as shown in Meta's Motion (Mot. at 9), he concedes that the content at issue—the "Scam Ads" themselves—were "***supplied by criminal scammers***."  TAC ¶ 4 (emphasis added). In fact, the TAC repeatedly admits that third parties—***not Meta***—created the offending content.  *See, e.g.*, *id.* ¶¶ 58-60.  Plaintiff tries to downplay these admissions by claiming that "none of the [] TAC provisions Meta cites supports the notion that the scammers ***alone*** supplied the ads" to end users.  Opp. at 15.  This incorrect argument would negate Section 230 entirely because every "publisher" of third-party content has a role to play in "supplying" the content to end users.

The relevant question here is not whether the scammers ***alone*** supplied the ads to end users but whether Meta made a "material contribution" to the "creation or development" of the ***purportedly unlawful aspect of the content***.  *Kimzey v. Yelp! Inc*., 836 F.3d 1263, 1269 (9th Cir. 2016); *see also Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (*en banc*).  The "material contribution" test "draw[s] the line at the 'crucial distinction between, on the one hand, taking actions ... that are necessary to display ... actionable content and, on the other hand, responsibility for what makes the displayed content illegal or actionable." *Kimzey,* 836 F.3d at 1269 n.4.  Thus, to avoid Section 230, Plaintiff must

---

[7] Plaintiff claims that *Ynfante*—a similar case involving scam ads published to users by Google through "Google Ads"—is distinguishable because "the complaint acknowledged that the advertisement was produced by a third party who then submitted the advertisement to Google for publication." Opp. at 15. This is a distinction without a difference and does not affect whether Meta is an ICSP.  More importantly, Plaintiff confirms that Section 230 applies because, as in *Ynfante*, Plaintiff ***does*** acknowledge that third parties produced and submitted the purported scam ads to Meta for publication. *See, e.g.*, TAC ¶ 60.

[8] Plaintiff cites *In re Social Media Adolescent Addiction/Personal Injury Product Liability Litig*., No. 4:22-MD-03047-YGR, 2023 WL 7524912 (N.D. Cal. Nov. 14, 2023) to argue that the Court should apply a "conduct-specific approach" to whether Meta is an ICSP.  That court, however, used a "conduct-specific approach" to determine whether the claims treated the defendants as publishers, it did not apply that same approach to determine whether the services were ICSPs. *Id.*

6

plead facts showing that Meta functioned as the information content provider "for the portion of the statement or publication *at issue*"—*i.e.*, the alleged scam content involving Dr. Forrest. *Rigsby v. GoDaddy Inc.,* 59 F.4th 998, 1008 (9th Cir. 2023) (emphasis added).  He cannot do so.

Plaintiff ignores the fact that, as shown in Meta's Motion (Mot. at 10-12), Meta's ad tools do not render it the developer of the "Scam Ads" *specifically*.  Plaintiff instead asks the Court to reject established law holding that the provision of "neutral tools" does not convert an ICSP into an information content provider.  Opp. at 16.  Unsurprisingly, Plaintiff cites no case law to support that argument.  The ad development tools Meta allegedly offers to all its users—such as tools that (1) "optimize the ad creative for each person viewing the ads" (TAC ¶ 12), (2) make ads "more appealing when they are ultimately shown to individual viewers on Facebook" (TAC ¶ 123), and (3) help "improve ad performance" (TAC ¶¶ 125, 128)—do not specify or "prompt the type of content to be submitted" and thus do not render Meta a "co-developer" of the ads. *Gonzalez*, 2 F.4th at 895; *see In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 625 F. Supp. 3d 971, 995 (N.D. Cal. Sept. 2, 2022) (noting that the tools must "encourage the alleged illegality").

Furthermore, Plaintiff does not and cannot plead facts showing that Meta edited, developed, or produced the "Scam Ads" in a way that would make it an information content provider.  *See Doe v. Reddit, Inc.*, 2021 WL 5860904, at *5 (C.D. Cal. Oct. 7, 2021) (rejecting argument that defendant's use of moderators made defendant an information content provider). *At most*, the TAC alleges that Meta engaged in content-neutral activity that treated the purported "Scam Ads" the same way as other ads.  *Goddard*, 640 F. Supp. 2d at 1196 (Google's keyword tool was a neutral tool that did nothing more "than provide options that advertisers may adopt or reject at their discretion); *see* TAC ¶¶ 119-135 (not alleging that Meta treated scam ads differently than other ads or that Meta's purported contributions were what made content unlawful).  Many cases have affirmed that Section 230 applies to such content-neutral activity. *See, e.g.*, *Herrick*, 765 F. App'x at 591 (app did not create content by providing "tools and functionality available equally to bad actors and the app's intended users").

Because Plaintiff does not, and could not, plausibly allege that Meta's ad tools prompted

7

users to submit the illegal scam content as opposed to other content, Section 230 applies.  Indeed, courts in this District have affirmed these holdings in multiple cases.  *See, e.g.*, *Casino-Style Games*, 625 F. Supp. 3d at 995 (Section 230 applied to social media companies that allegedly "develop[ed] specific advertisements meant to attract users to [unlawful] social casino apps" and "shar[ed] data with the social casino app developers" because those companies acted within their "editorial function," and such contributions did not prompt the illegality of the gambling applications).  The California Court of Appeal also recently addressed highly similar claims in *Wozniak v. YouTube, LLC*, 2024 WL 1151750 (Cal. Ct. App. March 15, 2024).  The court there affirmed application of Section 230 to claims involving a cryptocurrency scam, where YouTube channels were purportedly hijacked by scammers to show fake videos depicting a celebrity hosting a live crypto event.  Plaintiffs claimed that the defendants let the scam continue, including by failing to remove or suspend "pre-existing verification badges," promoting the scam channels with algorithms, failing to implement security measures to detect and remove scam videos, and by profiting from the scams.  *Id.* at *8.  The court rejected the contention—which mirrors Plaintiff's argument here—that YouTube was an information content provider, noting that the complaint did not "actually allege that defendants created scam videos or advertisements."  *Id.* at *16.  The court also distinguished YouTube's conduct in "recommending videos and selling advertisements" that may "display or augment the illegal content" from actually "contribut[ing] to what makes it illegal."  *Id.*

Plaintiff's arguments suffer the same flaw as those in *Casino-Style Games* and *Wozniak*: Plaintiff does not allege that Meta contributed to what "makes [the ads] illegal" (*Wozniak*, 2024 WL 1151750 at *17), or "ha[d] a special way of handling [the Scam Ads] that [was] particularly permissive relative to other kinds of content."  *Reddit*, 2021 WL 5860904, at *5.  Indeed, ***all*** the purported website features identified in the TAC were available to ***any user*** who wished to publish an advertisement through Facebook.  Mot. at 10-13.  And Plaintiff does not (and cannot) allege that Meta treated the purported scam content differently than any other third-party created

content, so Section 230 bars his claims.[9]

Plaintiff contends that it is Meta's burden to establish that it was *not* involved in creating the Scam Ads, and that Meta could have already "demonstrate[d] its alleged lack of contribution if it want[ed] to." *See* Opp. at 16. As established in Meta's Motion (Mot. at 9-12) and herein (*see* Section II.A., *supra*), Meta's Motion can be decided without discovery because the TAC shows that Section 230 applies. *See, e.g.*, *Onuoha v. Facebook, Inc.*, 2017 WL 11681325, at *1 (N.D. Cal. April 7, 2017) (rejecting argument that plaintiffs needed "additional discovery to 'confirm' or 'show with greater specificity' that Facebook creates race and ethnicity labels for its users."); *Force*, 934 F.3d at 63 n.15 (rejecting claim that discovery was needed to show Facebook was a "developer" of content). To the extent Plaintiff contends that discovery is necessary, his argument is inconsistent with the fundamental purpose of Section 230—*i.e.*, to immunize ICSPs "not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Fair Hous. Council*, 521 F.3d at 1175.

### c.  Plaintiff's claims seek to treat Meta as the "Scam Ads'" "publisher"

Plaintiff next argues that Section 230 does not apply because his claims arise from "conduct that occurs before any content is even created." Opp. at 17. He suggests a fictitious and implausible distinction between Meta's "ad business" (which allegedly "produced" the "Scam Ads") and Meta's "social media platform business" (which later "published" them). *Id.* at 14 (discussing claimed distinction between Meta's ads business and its publisher activity). Crucially, Plaintiff's allegations on their face relate to Meta's ability to regulate or monitor third-party content, *see, e.g.,* Opp. at 2-3 (identifying five alleged instances of conduct, all of which relate to regulating or monitoring third-party content), and his unsupported assertion that Meta "produced" the ads is baseless.

Plaintiff cannot avoid Section 230 by narrowing his complaint to encompass only the purported screening and editing steps of the publication process—*i.e.*, by alleging that Meta

---

[9] In the few cases cited by Plaintiff (Opp. at 16), the defendant contributed to the *illegality* of the content, rather than simply formatting and amplifying on a content-neutral basis. *See, e.g.*, *LeadClick Media, LLC*, 838 F.3d at 174 (defendant ad agency hired advertising affiliates, managed their operations, and made substantive content changes to fake news sites produced by the affiliates as part of a deceptive ad scheme).

(1) failed to implement features to detect and remove scam advertisements (TAC ¶ 138), (2) did not enforce its policies that would have discovered and prevented the scam advertisements (TAC ¶ 150), and (3) failed to design tools to identify and reject certain prospective advertising clients (Opp. at 17).  These theories still treat Meta as publisher—they claim that Meta is liable because it does not postpone, block, or withdraw user-provided content from its services.

For example, Meta's purported failure to implement measures to screen prospective scam advertisers is inextricably tied to those advertisers' content—purported illegal third-party ads featuring Plaintiff.  Courts nationwide, including in the Ninth Circuit and California, have held similar claims were barred by Section 230.  *See, e.g.*, *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009) ("a publisher reviews material submitted for publication, . . . edits it for style or technical fluency, … then decides whether to publish it"—and such a publisher is protected by Section 230 for the entire course of conduct.); *Wozniak*, 2024 WL 1151750, at *10 (YouTube's purported failure to "implement reasonable security protocols to prevent or shut down the scam on their platforms" still sought "to hold YouTube liable for allowing the scam videos to be shown on the hijacked channels," and "amount[ed] to a publishing decision not to prevent or alter the videos—that is, 'deciding whether to exclude material that third parties seek to post online.'").[10]

Plaintiff relies on the court's analysis in *In re Social Media Adolescent Addiction/Personal Injury Product Liability Litig.*, a case involving a very different set of facts and claims—specifically, product liability claims alleging that Meta and other companies "target children as a core market and designed their platforms to appeal to and addict them."  2023 WL 7524912, at *4.  On that basis alone, Plaintiff's reliance on *In re Social Media* is misplaced.

But Plaintiff's claims are barred by Section 230, even under the reasoning of *In re Social Media*.  The court there determined that the plaintiffs' claims challenging alleged design features—including "defendants' use of algorithms to determine whether, when, and to whom to

---

[10] *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019), is distinguishable.  Opp. at 17.  There, Section 230 did not apply to an ordinance that required websites to "refrain from completing any [vacation rental] booking transaction for [unlicensed] properties" because engaging in those rental transactions was not an editorial function.  *HomeAway.com*, 918 F.3d at 680-82.  Here, by contrast, all of Meta's alleged conduct "is fairly seen as a classic editorial role," which means that its editorial choices are protected by Section 230.  *Casino-Style Games*, 2022 WL 400918, at *18.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
Case No.  22-cv-03699-PCP

publish third-party content"—directly "target[ted] defendants' role as publishers of third-party content" and were barred by Section 230. *Id.* at *13. And the court held that the plaintiffs' challenges to features that "would require defendants to refrain from publishing" certain content were likewise barred. *Id.* Here, the conduct Plaintiff alleges—which, at bottom, constitutes failing to postpone, block, or withdraw user-provided content from its service—is not "distinct from determinations of what to publish and how, or that the alleged duty could be met other than by changing the way defendant[] publish[es] third-party content." *Id.* at *16; *see* Opp. at 17 (claiming "Meta Ads" fails to identify and reject ad clients who seek to produce "financial and investment product ads depicting Dr. Forrest's name, or still or video images."). Plaintiff's claims are barred because they turn on the purported dissemination of third-party "Scam Ads."

Finally, Plaintiff does not address Meta's cases establishing that Plaintiff's liability theory is "the classic kind of claim that [has been] found to be preempted by [S]ection 230." *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 835 (2002). And his efforts to distinguish analogous cases fail. For example, the fact that *In re Facebook, Inc.*, 625 S.W.3d 80, 94 (Tex. 2021) "does not involve ad content produced by Meta Ads" (Opp. at 18) does not bear on whether the allegations regarding Meta's alleged "lack of safety features" to stop harmful third-party content—like here—sought to hold Meta "liable for its failure to combat" third-party purportedly harmful content. *Id.*

### B.    Plaintiff's Claims Are Time Barred

Because Plaintiff's claims for misappropriation of name and likeness and unjust enrichment accrued in 2014, these claims are time-barred. *See* Mot. at 15-16. Plaintiff argues that the statute of limitations as to these claims did not start running until 2019. Opp. at 24. But he also alleges that he was aware of purported misappropriation of his name and likeness ***as early as 2014***—knowledge that, itself, is sufficient to set the statute running. Mot. at 16. Although Plaintiff tries to suggest that he included those allegations only to show Meta's purported knowledge of the "Scam Ads," Opp. at 24, he cannot have it both ways. These allegations establish that ***Plaintiff too*** was aware of the Scam Ads as of 2014. His claim thus accrued in 2014, even if additional misappropriation occurred later. *See Boilermakers Nat. Annuity Tr. Fund*

*v. WaMu Mortg. Pass Through Certificates, Series AR1*, 748 F. Supp. 2d 1246, 1258 (W.D. Wash. 2010) (allegations that supported claim also supported that plaintiffs were on notice, such that the statute of limitations barred their claims); *accord In re Wells Fargo Mortg.-Backed Certificates Litig.*, 2010 WL 4117477, at *7 (N.D. Cal. Oct. 19, 2010).

### C.    Plaintiff Fails to State Any Viable Claim For Relief

#### 1.    Misappropriation of name and likeness

As Meta established (Mot. at 17-18), Plaintiff's misappropriation claim fails in the first instance because he has not alleged facts showing that Meta, as opposed to the third-party fraudsters, "used" his name or likeness.  *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 210 (2017).  His primary response is to double down on the "co-development" spin he uses in response to Meta's Section 230 defense—but again, the TAC, at most, alleges Meta's potential involvement in the non-substantive components of ***all ads*** on Facebook (like formatting and organization), *see* Section II.A.2.b, *supra*, not the substantive incorporation of Plaintiff's photo or name that would constitute "use."

Further, Plaintiff provides no case law suggesting that he can hold Meta liable for passively providing advertisers neutral means to create their own ads.  And the case law he does cite (Opp. at 19) is inapposite because each case involves an advertising service that ***plays an active role in the specific content used in the ads***. *See, e.g., Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1097 (9th Cir. 1992), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) (noting that defendant was responsible for writing the ad in question); *Nestle Purina PetCare Co. v. Blue Buffalo Co.*, 2015 WL 1782661, at *3 (E.D. Mo. Apr. 20, 2015) (finding liability where plaintiff alleged that advertiser actively developed the content at issue).  Here, according to Plaintiff's own allegations, Meta merely provides tools that allow advertisers to produce the content they choose, and it does not create the content that goes into the ads themselves. TAC ¶¶ 122-32.

Plaintiff tries unsuccessfully to distinguish *Cross*, which is directly on point.  Opp. at 19. In *Cross*, the court found there was no "use" because "third parties," not Facebook, created the content featuring the plaintiff's name and image.  14 Cal. App. 5th at 209.  Similarly, in *Perfect*

12

*10, Inc. v. Google, Inc.*, the court found there was no "use" even though Google's AdSense placed ads on Google relevant to models' likenesses. 2010 WL 9479060, at *5 (C.D. Cal. July 30, 2010), *aff'd*, 653 F.3d 976 (9th Cir. 2011). Plaintiff's unsupported assertion that Meta's "producing conduct" (Opp. at 19) differentiates this case from *Cross* and *Perfect 10* is meritless—all three cases clearly involve the placement of third-party ad content.[11]

Finally, Plaintiff argues that Meta benefits from "user engagement" and ad revenue from "scam ads." Opp. at 20. But the TAC alleges *no* facts indicating that the benefit Meta allegedly derives from advertisements using Plaintiff's likeness (whether direct advertising dollars or a generalized user engagement benefit) differs from the benefit it derives from advertisements that ***do not feature his likeness***. *See* Opp. at 20 (collecting TAC cites). As in *Newcombe v. Adolf Coors Co.*, the misappropriation of likeness claim fails because "the benefit [the defendant] received" by publishing ads is "unrelated to the contents of the advertising." 157 F.3d 686, 693 (9th Cir. 1998). In both *Newcombe* and here, a failure to identify a benefit specifically incurred ***because of the content of the ads at issue*** is fatal to a misappropriation claim, whether print or digital advertising is at issue.

### 2.     Negligence and negligent failure to warn

Plaintiff's negligence-based claims fail at the outset because he does not and cannot allege that Meta owes him a cognizable duty of care. *See* Mot. at 18-19. Plaintiff argues that (1) because he is not a "user," Meta owes him a duty as part of the general public, and (2) he has a "special relationship" with Meta based on his purported communications regarding the alleged "Scam Ads." Each of these arguments fails.

*First*, Plaintiff provides no authority for his contention that Meta owes a duty of care to members of the general public[12]—a proposition that courts have repeatedly rejected. *Twitter, Inc.*

---

[11] Further, as explained in Meta's Motion (Mot. at 17, n.5), the fact that similar conduct has been held by courts as insufficient to support secondary liability strongly suggests that such conduct cannot support the primary violation either, even if Plaintiff had asserted a secondary liability claim in this case. *Accord Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 809 (9th Cir. 2007) (rejecting claim for aiding and abetting right of publicity violation as unsupported by California law).

[12] Plaintiff cites cases outside the advertising context, including where courts found liability for manufacturers of products that caused physical injury. Opp. at 21. Plaintiff fails to explain how these cases bear on Meta's purported actions, which include offering neutral ad tools for all advertisers on

13

*v. Taamneh*, 598 U.S. 471, 489, 500 (2023) (rejecting claims that Meta, Twitter, and Google owed a duty to the general public as part of the alleged "aiding-and-abetting liability for mere passive nonfeasance"); *Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998, 1009 (N.D. Cal. 2022) ("Google does not owe a general duty to the public based on its operation of the [digital] Play Store").  And a California court recently rejected a negligence claim against Meta for harms from third-party conduct where the plaintiff's theory simply "ignore[d] the third-party conduct and treat[ed] it as a mere manifestation of Meta's [supposed] negligent design" and its duty to the public.  *Jacobs v. Meta Platforms, Inc.*, 2024 WL 1097923, at *5 (Cal. Sup. Ct. Mar. 5, 2024); *see also Jackson v. Airbnb, Inc.*, 654 F.Supp.3d 990, 995 (C.D. Cal. 2023) (no duty where defendant could only remove listings and revoke membership, not control the property at issue).[13] Combined with the fact that, as the state court already observed, the alleged misfeasance consists of acts within Meta's editorial discretion, Order at 6, Plaintiff fails to allege any duty owed by Meta to him.

*Second,* Plaintiff's purported communications with Meta do not create a "special relationship" that triggers a duty of care.  *See, e.g., Dyroff*, 934 F.3d at 1101.  Although Plaintiff cites several cases stating that a "special relationship" can arise from a contract, Opp. at 22, he does not (and cannot) allege that any of Meta's purported communications with him created a contract, nor does he cite authority suggesting that Meta owed him some affirmative duty.[14]  And as explained in Meta's Motion (Mot. at 20 n.6), Plaintiff does not and cannot establish that Meta's purported suggestion that he create a verified Facebook page otherwise gives rise to a "special

Facebook, and they do not.

[13] Plaintiff also cites *In re Social Media*, 2023 WL 7524912 to support his negligence theory.  The court there, distinguishing the cases Plaintiff cites in his Opposition, held that plaintiffs' product liability claims were subject to dismissal to the extent the plaintiffs alleged harm from third-party misconduct, as the plaintiffs failed to allege "that defendants had and breached a duty to protect platform users from hard by third parties, such as adult predators." *Id.* at *42.  Here too, Plaintiff attempts to hold Meta liable for third-party misconduct based on Meta's purported knowledge of the Scam Ads.  That attempt also fails.

[14] Plaintiff cites *Seo v. All Makes Overhead Door*, 97 Cal.App.4th 1193, 1203 (2002) to support his claim that the October 18, 2019 letter was sufficient to establish a special relationship between himself and Meta.  Plaintiff does not, and cannot, allege that this letter created a "contractual duty" or a "voluntary assumption of a duty" for Meta because there is no allegation of any express or implied contract between the parties regarding Meta's treatment of the purported Scam Ads.  *Id.* at 1203-05 (finding no implied contractual duty or voluntary assumption of duty based on defendant's course of conduct).

14

relationship" under California law, as special relationships of this nature are rare and limited to, for example, common carriers and their passengers. *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 235 (2005); *Dyroff*, 934 F.3d at 1101. Because Plaintiff cannot allege that Meta owed him a cognizable duty of care, his negligence claims fail.

### 3.     Unjust enrichment

Unjust enrichment claims must arise from a benefit received directly from the plaintiff. Mot. at 19-20. Plaintiff here concedes that he does not allege Meta received a benefit from him, *see* Opp. at 23, yet he then distorts California law and argues Meta received "consideration from the Scammers" for allegedly running the Scam Ads—an assertion that he contends is enough to support his claim. *Id.* Courts have rejected that argument. *See Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*, 2021 WL 2188138, at *14 (E.D. May 28, Cal. 2021) (that defendant received "increased profits flowing from business with [a third party]" did not sufficiently plead a direct benefit). Plaintiff also fails to refute Meta's point that his unjust enrichment claim merely duplicates his other claims (*see* Opp. at 24), and thus should be dismissed. *See, e.g.*, *Brown v. Wells Fargo Bank, N.A.*, 2019 WL 3318551, at *8 (E.D. Cal. July 24, 2019).

### 4.     Declaratory relief

Plaintiff provides no support for his declaratory relief claim, and for the reasons outlined in the Motion (Mot. at 21-22), it necessarily fails. Section 230 bars all of Plaintiff's claims, so there is no "substantial controversy" warranting declaratory relief. Mot. at 21. And Plaintiff offers no facts establishing a substantial controversy other than reiterating the factual basis for his claims. Opp. at 24. This is insufficient to save his pleading deficiencies. And he also does not even attempt to dispute that this relief duplicates other relief he seeks. Mot. at 21-22. Dismissal of this claim is therefore warranted. *See, e.g.*, *Achal v. Gate Gourmet, Inc.*, 114 F.Supp.3d 781, 819 (N.D. Cal. July 14, 2015) (dismissing prayer for declaratory relief where the declaratory relief sought was "commensurate with the relief sought through [plaintiff's] substantive claims.").

///

///

///

III.   **CONCLUSION**

For the foregoing reasons, Meta respectfully requests that the Court dismiss Plaintiff's TAC in its entirety with prejudice.

Dated:  March 28, 2024                                    ORRICK, HERRINGTON & SUTCLIFFE LLP


                                                 By:   *Jacob M. Heath*
                                                       Jacob M. Heath

                                                       Attorney for Defendant
                                                       META PLATFORMS, INC.

16