Karen L. Dunn (*pro hac vice*)
kdunn@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

Meredith R. Dearborn (SBN: 268312)
mdearborn@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

Jacob M. Heath (SBN: 238959)
jheath@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

*Attorneys for Defendant Meta Platforms, Inc.*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

DR. ANDREW FORREST,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 22-cv-03699-PCP

**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B) OF THE COURT'S ORDER GRANTING IN PART MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: August 22, 2024
Time: 10:00 a.m.
Courtroom: Courtroom 8
Judge: Hon. P. Casey Pitts

# TABLE OF CONTENTS


Table of Authorities ....................................................................................... ii

Notice of Motion and Motion ....................................................................................... 1

Statement of Relief Sought ....................................................................................... 1

Statement of Issues to Be Decided ....................................................................................... 1

I. Introduction ....................................................................................... 1

II. Factual Background and Procedural History ....................................................................................... 3

III. Legal Standard ....................................................................................... 5

IV. Argument ....................................................................................... 6

- A. The Order Raises a Controlling Question of Law ....................................................................................... 6
- B. There Are Substantial Grounds for Difference of Opinion ....................................................................................... 8
- C. Certification Will Materially Advance the Litigation's Ultimate Termination ..... 12

V. Conclusion ....................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ass'n of Irritated Residents* v. *Fred Schakel Dairy*,
634 F. Supp. 2d 1081 (E.D. Cal. 2008)....14

*Calise* v. *Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) .... *passim*

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1981) ....5, 7, 13

*Doe #1* v. *Twitter, Inc.*,
2023 WL 3220912 (9th Cir. May 3, 2023) ....8

*Doe* v. *Twitter, Inc.*,
2021 WL 12285614 (N.D. Cal. Oct. 26, 2021)....8

*Dyroff* v. *Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019) ....8

*Facebook Inc.* v. *Namecheap Inc.*,
2021 WL 961771 (D. Ariz. Mar. 15, 2021) ....8, 13, 14

*Fair Hous. Council of San Fernando Valley* v. *Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008) .... *passim*

*Force* v. *Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019)....8, 11

*Helman* v. *Alcoa Glob. Fasteners Inc.*,
2009 WL 2058541 (C.D. Cal. June 16, 2009) ....8, 13

*United States ex rel. Huangyan Import & Export Corp.* v.
*Nature's Farm Products, Inc.*,
370 F. Supp. 2d 993 (N.D. Cal. 2005) ....13

*J.B.* v. *G6 Hospitality, LLC*,
2021 WL 6621068 ....8, 13

*Jones* v. *Dirty World Ent. Recordings LLC*,
755 F.3d 398 (6th Cir. 2014) ....7

*Kimzey* v. *Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016) ....8, 10

*Kotrous* v. *Goss-Jewett Co. of N. Cal.*,
2005 WL 2452606 (E.D. Cal. Oct. 4, 2005)....12

*Kuehner* v. *Dickinson & Co.*,
84 F.3d 316 (9th Cir. 1996) ....................7

*Marshall's Locksmith Serv. Inc.* v. *Google, LLC*,
925 F.3d 1263 (D.C. Cir. 2019) ....................8, 11

*Nat'l Ass'n of Afr.-Am. Owned Media* v. *Charter Commc'ns, Inc.*,
2016 WL 10647193 (C.D. Cal. Dec. 12, 2016) ....................13

*Nemet Chevrolet, Ltd.* v. *Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) ....................2, 7, 14

*Reese* v. *BP Exploration (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ....................6, 8, 9, 12

*Rollins* v. *Dignity Health*,
2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) ....................12

*Wilton Miwok Rancheria* v. *Salazar*,
2010 WL 693420 (N.D. Cal. Feb. 23, 2010) ....................7, 13

**Statutes**

28 U.S.C. § 1292(b) .................... *passim*

47 U.S.C. § 230 .................... *passim*

**Other Authorities**

Derek E. Bambauer & Mihai Surdeanu, *Authorbots*,
3 J. Free Speech L. 375 (2023) ....................9

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on August 22, 2024, at 10:00 a.m., or as soon thereafter as may be heard by the Honorable Judge P. Casey Pitts, United States District Court, San Jose Division, 280 South First Street, San Jose, CA 95113, Defendant Meta Platforms, Inc. ("Meta"), by and through its counsel of record, will and hereby does move this Court to certify its June 17, 2024, order granting in part and denying in part Meta's motion to dismiss, Dkt. 121, for interlocutory appeal under 28 U.S.C. § 1292(b).

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Proposed Order filed concurrently herewith, all pleadings and papers on file in this action, the arguments of counsel, and such further oral and written argument and evidence as may be presented at or prior to the hearing on this motion.

## STATEMENT OF RELIEF SOUGHT

Meta respectfully seeks certification for interlocutory appeal under 28 U.S.C. § 1292(b) of the Court's order granting in part and denying in part Meta's motion to dismiss Plaintiff Dr. Andrew Forrest's Third Amended Complaint ("TAC"), Dkt. 101.

## STATEMENT OF ISSUES TO BE DECIDED

Whether an interactive computer service provider's provision of tools to advertisers that automatically optimize an advertiser's ad components to increase audience engagement precludes immunity from suit under Section 230 of the Communications Decency Act, 47 U.S.C. § 230, related to an advertiser's use of the tools to publish ads containing illegal content.

## I. INTRODUCTION

Pursuant to 28 U.S.C. § 1292(b), Meta respectfully requests that the Court certify for interlocutory appeal its order partially denying Meta's motion to dismiss, Dkt. 121, based in part on immunity under Section 230 of the Communications Decency Act, 47 U.S.C. § 230.

The Ninth Circuit has emphasized that Section 230 is "an immunity statute" that "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando Valley* v. *Roommates.Com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (en banc). Section 230 thus provides "'an *immunity from suit*

rather than a mere defense to liability,'" and "'it is effectively lost if a case is erroneously permitted to go to trial.'" *Nemet Chevrolet, Ltd.* v. *Consumeraffairs.com, Inc.*, 591 F.3d 250, 254–55 (4th Cir. 2009) (citations omitted and emphasis added). This immunity should therefore be resolved "at the earliest possible stage of the case." *Id.* This case, involving the pure legal question of the application of that immunity, is an appropriate candidate for interlocutory appellate review.

While Dr. Forrest's allegations in his Third Amended Complaint ("TAC"), Dkt. 101, must be taken at face value for purposes of a motion to dismiss, those allegations—even as pleaded—allege only that Meta provided neutral ad development tools to all advertisers. Dr. Forrest alleges that Meta has materially contributed to certain third-party "scam ads" through its provision of these automated ad tools. "Although Dr. Forrest does not clearly allege how Meta's ad tools work or contribute to the challenged ads," Dkt. 121 at 8, he alleges that the tools automatically optimize the advertiser's ad components, including through the use of "generative AI," so that the audience will be more likely to interact with the ad. TAC ¶¶ 120–23. Meta respectfully submits that, even if the tools optimize the ads in the way that Dr. Forrest alleges, the proper legal interpretation of Section 230 provides that those allegations describe only "neutral tools" that do not contribute "to the alleged illegality of" the ads in question. *Calise* v. *Meta Platforms, Inc.*, 103 F.4th 732, 744–45 (9th Cir. 2024). In any event, no court of appeals has directly addressed Section 230 immunity in the context of automated tools or "generative AI" that allegedly automatically optimizes material published on a website to increase audience engagement. Meta respectfully requests that the Court certify its order addressing this issue for interlocutory review under 28 U.S.C. § 1292(b).

All three Section 1292(b) factors weigh heavily in favor of certification.

***First***, the order presents a "controlling question of law": whether, accepting as true Dr. Forrest's allegations, an interactive computer service provider's provision of tools to advertisers that automatically optimize the advertiser's ad components to increase audience engagement precludes Section 230 immunity related to an advertiser's use of the tools to publish ads containing illegal content. This is a pure legal question that will materially affect the outcome of this case—indeed, it is likely case-dispositive.

***Second***, the Court's order presents substantial grounds for difference of opinion. The law of Section 230 is unsettled and dynamic. The Ninth Circuit's case law provides a substantial ground to argue that the provision of any ad development tools that operate equally on both legal and illegal ads—that automatically optimize the components of all ads, regardless of their content or creator—does not constitute "material contribution" to the illegality of the conduct.

***Third***, an immediate appeal of this Court's order would materially advance the termination of the litigation. If the Ninth Circuit were to decide that Meta is immune from suit with respect to the unlawful scam ads at issue here, then the case would likely end. Because a serious threshold question exists about Meta's immunity, the Court of Appeals should have an opportunity to address that question before the parties undertake protracted and expensive litigation—one of the principal harms that this "immunity statute" was designed to avoid. *Roommates*, 521 F.3d at 1174. The motion for certification for interlocutory appeal under Section 1292(b) should be granted.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Meta operates Facebook, an online service that, among other things, helps give people the power to build community and bring the world closer together, and also enables advertisers to create ads and to launch and manage advertising campaigns. Meta's advertising policies strictly prohibit scam ads. *See* TAC ¶¶ 72, 74. In addition, since 2018, Meta's policies have required that ads selling cryptocurrency products and services must have Meta's written permission to promote those products. TAC ¶ 170.

Dr. Forrest is a "prominent Australian businessman and philanthropist." TAC ¶ 31. Dr. Forrest alleges that "[s]cammers operating on Meta's (then Facebook's) Australian social media platforms have been co-opting [his] name and image in order to swindle innocent Australians since 2014." TAC ¶ 44. Dr. Forrest alleges that these bad actors have created scam ads on Facebook that use "his name and likeness to endorse cryptocurrency and other fraudulent investment products." TAC ¶ 54. According to Dr. Forrest, the creators of the alleged scam ads are third parties involved "with entities from various foreign countries, using sham entities, fake information, and false addresses." TAC ¶ 60.

Dr. Forrest alleges that criminal scammers use Meta's "Ads Manager application" and other ad development tools. TAC ¶ 4. The operative complaint does not allege that these tools, including Ads Manager, are exclusively used by scammers; instead, it is apparent that they are used by legitimate advertisers and scammers alike. *E.g.*, TAC ¶¶ 110–12, 119–33. For example, Dr. Forrest alleges that "Meta's Ads Manager software drives and ultimately determines what the completed, paid-for ads will look like." TAC ¶ 119. The "Dynamic Creative" tool allegedly "takes an advertiser's ad components, such as images, videos, text, [and] audio[,] and then 'mixes and matches' them to change the look of an ad to improve its performance," and "optimizes the ad creative for each person viewing the ads." TAC ¶¶ 120, 121. In addition, Meta's "Advantage+ Creative" tool allegedly "uses generative AI" and "automatically optimizes ads to versions the 'audience is more likely to interact with.'" TAC ¶ 123. Dr. Forrest also alleges that Meta "effectively controls to whom ad customers' ads are eventually shown" and that its tools "supercharge Meta's ability to produce and drive the Scam Ads to vulnerable viewers." TAC ¶¶ 126, 135.

In the operative complaint, Dr. Forrest asserts six causes of action under California law: misappropriation of name and likeness, promissory estoppel, negligence, negligent failure to warn, unjust enrichment, and declaratory relief. TAC ¶¶ 215–260.[1]

On January 19, 2024, Meta moved to dismiss the operative complaint for failure to state a claim. Dkt. 104. Among other grounds for dismissal, Meta argued that Section 230 bars Dr. Forrest's claims, which all seek to hold Meta liable as a publisher of third-party content. Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). As the Ninth Circuit has explained, a website is treated as a "content provider" for purposes of Section 230 only "if it contributes materially to the alleged illegality of the conduct," and "providing neutral tools as to the alleged unlawfulness" does not qualify. *Calise*, 103 F.4th at 744–45. In its motion to dismiss, Meta argued that (a) Meta is an "interactive computer

[1] Dr. Forrest agreed to dismiss his promissory estoppel claim voluntarily, without prejudice, subject to a tolling agreement between the parties tolling the statute of limitations for the claim for twelve months. The parties have agreed that Dr. Forrest can amend his complaint to add promissory estoppel in the future, and that Meta reserves its right to file a Rule 12 motion as to this claim. Dkt. 104 at 3 n.1.

service" provider, as courts have universally held; (b) the purported scam ads were created by "another information content provider," namely criminal scammers, and Meta's ad development tools were "neutral tools" that did not convert Meta into the "provider" of the ads; and (c) each of Dr. Forrest's claims seek to treat Meta as a "publisher." Dkt. 104 at 6–15. Separately, Meta argued that Dr. Forrest's claims are time-barred and that he did not allege facts sufficient to state any of his claims. *Id.* at 15–22.

On June 17, 2024, the Court granted in part and denied in part Meta's motion. Dkt. 121. As is relevant here, the Court first denied Meta's claim of Section 230 immunity. *Id.* at 5–9. The Court agreed with Meta that Meta is an "interactive computer service provider" but decided that "the allegations leave a potential factual dispute as to whether the challenged ads are provided entirely by another information content provider." *Id.* at 5–6. The Court acknowledged that "Dr. Forrest does not clearly allege how Meta's ad tools work or contribute to the challenged ads" but credited Dr. Forrest's allegations "that the tools affect ad content in a manner that could at least potentially contribute to their illegality." *Id.* at 8. More specifically, the Court stated that Meta's "automated" ad development tools, including "using generative artificial intelligence to 'automatically optimize[] ads to versions the audience is more likely to interact with,'" allegedly "'supercharge Meta's ability to produce and drive the Scam Ads to vulnerable viewers.'" Dkt. 121 at 8 (quoting TAC ¶¶ 120–23, 135). After deciding that Meta was not immune under Section 230, the Court held that Dr. Forrest had adequately pleaded his misappropriation and negligence claims but granted Meta's motion to dismiss the negligent failure to warn, unjust enrichment, and declaratory judgment claims. *Id.* at 9–14.

## III. LEGAL STANDARD

Certification of an order for interlocutory appeal under 28 U.S.C. § 1292(b) is appropriate where (i) the order involves a controlling question of law; (ii) there is a substantial ground for difference of opinion; and (iii) an immediate appeal may materially advance the termination of the litigation. Courts should exercise their discretion to allow interlocutory appeal where early resolution of a dispositive legal question would "avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). A "substantial ground for difference

of opinion" for purposes of interlocutory review exists where an "'appeal involves an issue over which reasonable judges might differ' and such 'uncertainty provides a credible basis for a difference of opinion' on the issue." *Reese* v. *BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (quoting *Cement*, 673 F.2d at 1028 (Boochever, J., dissenting on other grounds)).

**IV. ARGUMENT**

The Court's order holding that Section 230 does not bar Dr. Forrest's claims against Meta comfortably satisfies the requirements for certification of an interlocutory appeal under 28 U.S.C. § 1292(b). ***First***, the order presents an important controlling question of law warranting prompt appellate attention: namely, whether an interactive computer service provider's provision of tools to advertisers that automatically optimize an advertiser's ad components precludes Section 230 immunity from suit related to an advertiser's use of the tools to publish ads containing illegal content. ***Second***, reasonable jurists could reach different conclusions on this issue. No court of appeals has yet directly addressed Section 230 immunity in the context of automated tools or "generative AI" that allegedly automatically optimizes the material published on a website to increase audience engagement, like the ad development tools alleged here. ***Third***, resolving this issue now could materially affect the outcome of litigation: should the Ninth Circuit agree with Meta that Section 230 immunity applies, that will end the case against Meta.

**A. The Order Raises a Controlling Question of Law**

For purposes of Section 1292(b), "all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *Cement*, 673 F.2d at 1026. That is indisputably true here.

An interactive computer service provider like Meta can claim Section 230 immunity where the plaintiff's state-law claim attempts to treat the provider as the publisher or speaker of information "provided by another information content provider." *Calise*, 103 F.4th at 738. To determine whether a defendant created the content at issue "'in whole or in part,'" a court asks whether the defendant "'contribute[d] materially to the alleged illegality of the conduct.'" *Id.* at 744 (quoting *Roommates*, 521 F.3d at 1167–68). As the Ninth Circuit recently confirmed, "providing neutral tools as to the alleged unlawfulness does not amount to development." *Id.* at 745.

The legal question here is whether an interactive computer service provider's alleged provision of tools to advertisers that automatically optimize the appearance of an advertiser's ad components precludes immunity from suit under Section 230 related to an advertiser's use of the tools to publish ads containing illegal content. That question is controlling because its resolution will "materially affect the outcome of litigation." *Cement*, 673 F.2d at 1026. Specifically, if the Ninth Circuit decides that a third party's use of Meta's alleged ad development tools does not overcome Section 230 immunity, then "dismissal" would be "required." *Wilton Miwok Rancheria* v. *Salazar*, 2010 WL 693420, at *12 (N.D. Cal. Feb. 23, 2010); *cf. Kuehner* v. *Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996), as amended (July 5, 1996) ("[A]n order may involve a controlling question of law if it could cause the needless expense and delay of litigating an entire case in a forum that has no power to decide the matter.").

The question here is also purely legal. For purposes of appeal at this stage, Meta takes the allegations in the TAC as true. TAC ¶¶ 119–35. Meta respectfully submits, however, that its provision of the tools—even as Dr. Forrest describes them—does not constitute a material contribution to the illegality of an ad as a matter of law under Section 230 and the Ninth Circuit's decisions in cases such as *Calise*, *Roommates*, *Dyroff*, and *Kimzey*. That is a purely legal question appropriate for interlocutory appeal.

Indeed, Section 230 immunity questions are commonly resolved on the pleadings before discovery commences, as Meta requests here. Because Section 230 "'immunity is an *immunity from suit* rather than a mere defense to liability' . . . 'it is effectively lost if a case is erroneously permitted to go to trial.'" *Nemet*, 591 F.3d at 254 (citation omitted); *see also Jones* v. *Dirty World Ent. Recordings LLC*, 755 F.3d 398, 417 (6th Cir. 2014) (noting that "determinations of immunity under [Section 230] should be resolved at an earlier stage of litigation"). Courts "thus aim to resolve the question of [Section] 230 immunity at the earliest possible stage of the case." *Nemet*, 591 F.3d at 255. As the en banc Ninth Circuit explained in *Roommates*, "[T]his is an *immunity statute* we are expounding . . . . Websites are complicated enterprises, and there will always be close cases where a clever lawyer could argue that something the website operator did encouraged the illegality." 521 F.3d at 1174 (emphasis added). "Such close cases," the court instructed, "must be resolved in favor

of immunity, lest [courts] cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties." *Id.* District courts have thus frequently granted Section 230 immunity at the pleading stage, and the courts of appeals have accordingly affirmed those decisions. *E.g.*, *Calise*, 103 F.4th at 746; *Dyroff* v. *Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1096 (9th Cir. 2019); *Force* v. *Facebook, Inc.*, 934 F.3d 53, 71 (2d Cir. 2019); *Marshall's Locksmith Serv. Inc.* v. *Google, LLC*, 925 F.3d 1263, 1271 (D.C. Cir. 2019); *Kimzey* v. *Yelp! Inc.*, 836 F.3d 1263, 1269 (9th Cir. 2016); *J.B.*, 2021 WL 6621068, at *3 (granting a certificate of appealability from a decision under Section 230). For that reason, that "Section 230(c)(1) is an affirmative defense," *Calise*, 732 F.4th at 738, does not make the applicable question factual rather than legal.

Courts in this District previously have permitted interlocutory appeals after addressing legal questions concerning the scope of Section 230 immunity at the motion-to-dismiss stage. In *J.B.* v. *G6 Hospitality, LLC*, the court granted a certificate of appealability with respect to a decision under Section 230 because "the nature and extent of the CDA immunity to which Craigslist is entitled will materially affect the outcome (or at a minimum the required framing) of Plaintiff's claims against it." 2021 WL 6621068, at *3 (N.D. Cal. Dec. 16, 2021). Similarly, in *Doe* v. *Twitter, Inc.*, after the district court denied the defendant's motion to dismiss in part, it granted a certification of appealability on the scope of immunity under Section 230. 2021 WL 12285614, at *1 (N.D. Cal. Oct. 26, 2021). The Ninth Circuit, in turn, exercised jurisdiction and concluded that Twitter was entitled to immunity. *Doe #1* v. *Twitter, Inc.*, 2023 WL 3220912, at *1–*2 (9th Cir. May 3, 2023).

In sum, because this is a "'pure legal question' involving no factual issues," interlocutory appeal is appropriate. *Helman* v. *Alcoa Glob. Fasteners Inc.*, 2009 WL 2058541, at *5 (C.D. Cal. June 16, 2009), *aff'd*, 637 F.3d 986 (9th Cir. 2011); *see Facebook Inc.* v. *Namecheap Inc.*, 2021 WL 961771, at *2 (D. Ariz. Mar. 15, 2021).

### B. There Are Substantial Grounds for Difference of Opinion

There is also a "substantial ground for difference of opinion" regarding the legal question at hand. 28 U.S.C. § 1292(b). That requirement is satisfied where an "'appeal involves an issue over which reasonable judges might differ' and such 'uncertainty provides a credible basis for a

difference of opinion' on the issue." *Reese*, 643 F.3d at 688 (quoting *Cement*, 673 F.2d at 1028). Certification under Section 1292(b) "does not turn on a prior court's having reached a conclusion adverse to that from which appellants seek relief." *Id.* Instead, "'a substantial ground for difference of opinion exists where " . . . novel and difficult questions of first impression are presented,"'" and "where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Id.* (quoting *Couch* v. *Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)). That requirement is also satisfied here.

The law of Section 230 is rapidly evolving, as shown by the Ninth Circuit's decision grappling with the distinction between "material contribution" and "neutral tools" in *Calise* just a few weeks ago. No court of appeals has yet directly addressed the application of Section 230's "material contribution" standard to tools that automatically optimize the appearance of material published on websites to increase audience engagement, including emerging technologies such as "generative AI." *See, e.g.*, Derek E. Bambauer & Mihai Surdeanu, *Authorbots*, 3 J. Free Speech L. 375, 376 (2023) (discussing how Section 230 might be applied to ChatGPT). And the Ninth Circuit's case law provides a "credible basis for a difference of opinion" on the question. *Reese*, 643 F.3d at 688. The Ninth Circuit's precedents teach that Section 230(c)(1) immunity "does not attach when the defendant 'materially contribut[ed]' to the 'creation or development' of the offending content." *Calise*, 103 F.4th at 737 (quoting *Roommates*, 521 F.3d at 1162, 1168). Conversely, "providing neutral tools as to the alleged unlawfulness," even if those tools "can be manipulated by third parties for unlawful purposes," "does not amount to development." *Calise*, 103 F.4th at 745. "In other words, the service must specifically contribute to the aspect of the content that is allegedly illegal." Dkt. 121 at 8.

Even accepting all of Dr. Forrest's allegations as true, *see supra* Part II, Meta respectfully submits that they do not show material contribution sufficient to overcome Section 230 immunity. For example, Meta submits that its provision of an "Ads Manager application" that "criminal scammers" can use to produce alleged scam ads, TAC ¶ 4—even assuming that the application "drives and ultimately determines what the completed, paid-for ads will look like," TAC ¶ 119—does not materially contribute to the ad's illegality, because an application that third parties can use to

produce both legal and illegal ads is a prototypical "neutral tool." For instance, *Calise* decided that Meta's tools providing "assistance" to third-party advertisers were "neutral" tools that did not vitiate Meta's Section 230 immunity. 103 F.4th at 745. They were "allegedly used for unlawful purposes, but that does not result from Meta's efforts"—after all, "not *all* of Meta's third-party ads are fraudulent." *Id.* In *Kimzey*, the Ninth Circuit similarly held that an online review website, which provided third parties with a means to post their reviews, was neutral and not "content development or creation," notwithstanding the website's "unique star-rating system," because the website was "based on rating inputs from third parties" and simply "reduce[d] this information into a single, aggregate metric." 836 F.3d at 1269–70. In *Dyroff*, the Ninth Circuit held that a website used by some for unlawful purposes was neutral even though it employed "machine-learning algorithms" to "recommend[] groups for users to join, based on the content of their posts and other attributes." 934 F.3d at 1094–95.

Dr. Forrest alleges that Meta's tools are not neutral because, for example, "the 'Dynamic Creative' tool takes an advertiser's ad components, such as images, videos, text, [and] audio[,] and then 'mixes and matches them' to change the look of an ad to improve its performance," and because the "Advantage+ Creative" tool "uses generative AI" and "automatically optimizes ads to versions the 'audience is more likely to interact with.'" TAC ¶¶ 120, 123. But Meta respectfully submits that, even accepting those allegations as true, Meta's provision of those tools does not constitute material contribution because the tools are indifferent to whether the content of the ad is legal or illegal.

Again, *Roommates* is particularly instructive. In *Roommates*, the Ninth Circuit considered whether the roommate-matching website operated by the defendant violated discrimination laws. 521 F.3d at 1162. The website required users to identify protected characteristics (sex, family status, and sexual orientation) and then facilitated allegedly discriminatory searches based on those categories. *Id.* at 1161, 1164. The court explained that if "an individual uses an ordinary search engine to query for a 'white roommate,' the search engine has not contributed to any alleged unlawfulness in the individual's conduct," because the search engine would be a neutral tool. *Id.* at 1169. Similarly, a housing website that elicited "user-defined criteria . . . would be immune, so long

as it does not require the use of discriminatory criteria." *Id.* In *Roommates*, however, the website was *not* a "neutral tool" because there was no lawful and therefore neutral reason to ask someone seeking a roommate about protected characteristics, as the website required. The defendant's "work in developing the discriminatory questions, discriminatory answers and discriminatory search mechanism [was] directly related to the alleged illegality of the site"; the defendant was "directly involved with developing and enforcing a system that subjects subscribers to allegedly discriminatory housing practices." *Id.* at 1172–73.

Here, the complaint acknowledges that Meta's tools are available to all third-party advertisers and merely alleges that those tools "automatically optimize[]" an advertiser's ad components to increase engagement and "supercharge" its attractiveness to viewers regardless of whether that ad is a "scam ad" or legitimate, and regardless of whether the ad involves an improperly obtained photograph or it does not. TAC ¶¶ 121, 123, 135. Meta submits that these tools fall on the side of the line protected by Section 230's immunity under *Roommates*. While Meta accepts for purposes of a pleading motion that its ad development and "optimization" tools may affect "the appearance and content of an ad," the Ninth Circuit's precedent supports the argument that merely "augmenting the content" posted by a third party cannot overcome Section 230 protection. *Roommates*, 521 F.3d at 1167–68. Meta's tools are available to users regardless of the nature of the ad, and they "automatically optimize" and "supercharge" the performance of *all* ads, not only the alleged scam ads. TAC ¶¶ 123, 135.

Dr. Forrest's allegation that Meta uses "generative AI," TAC ¶ 123, does not, in Meta's view, convert this neutral tool into a material contribution. In *Force*, the Second Circuit held that "Facebook's algorithms" that made "content more 'visible,' 'available,' and 'usable'" did not defeat Section 230 immunity because "making information more available" "does not amount to 'developing' that information within the meaning of Section 230." 934 F.3d at 70. If anything, Dr. Forrest's allegation has the opposite effect, because, again, Meta's alleged "generative AI" tools allegedly apply equally across all ads. Similarly, in *Marshall's Locksmith Service*, certain locksmiths sued Google, Microsoft, and Yahoo concerning scam locksmith ads appearing on Google's websites. 925 F.3d at 1265. The plaintiffs argued that the defendants' creation of "enhanced" content,

including the "creation of map pinpoints that display scam-locksmith locations" (based on information from the scam locksmiths' webpages) overcame Section 230 immunity. *Id.* at 1269. The court found that defendants' "automated algorithms to convert third-party indicia of location into pictorial form" were "'neutral means'" that did not "distinguish between legitimate and scam locksmiths in the translation process." *Id.* at 1271. The plaintiffs claimed that the algorithm had been "tricked" into displaying scam information—but "[t]o recognize that Google has been 'tricked' is to acknowledge that its algorithm neutrally translates both legitimate and scam information in the same manner." *Id.*

While Meta accepts that the Court came to a different conclusion in its order, the state of the law in the Ninth Circuit provides a "credible basis" for a difference of opinion. That is particularly true because, as this Court acknowledged, "Dr. Forrest does not clearly allege how Meta's ad tools work or contribute to the challenged ads"—at best, he alleges "that the tools affect ad content in a manner that could at least potentially contribute to their illegality." Dkt. 121 at 8. As the en banc Ninth Circuit instructed, "[s]uch close cases . . . must be resolved in favor of immunity." *Roommates*, 521 F.3d at 1174. At the very least, given the complexity and novelty of this area of law, this case would benefit from the Ninth Circuit's input before proceeding to expensive and protracted litigation. "[W]hen novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal." *Reese*, 643 F.3d at 688. So too here.

**C. Certification Will Materially Advance the Litigation's Ultimate Termination**

Finally, "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). To satisfy that requirement, "neither [Section] 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688. In assessing this third factor, "the court should consider the effect of a reversal by the court of appeals on the management of the case." *Kotrous* v. *Goss-Jewett Co. of N. Cal.*, 2005 WL 2452606, at *2 (E.D. Cal. Oct. 4, 2005); *see Rollins* v. *Dignity Health*, 2014 WL 6693891, at *4 (N.D. Cal. Nov. 26, 2014). "Immediate appeal should be granted where there is 'a highly debatable question

that is easily separated from the rest of the case, that offers an opportunity to terminate the litigation completely, and that may spare the parties the burden of a trial that is expensive for them even if not for the judicial system.'" *Helman*, 2009 WL 2058541, at *6.

Certifying an interlocutory appeal on the question of Meta's Section 230 defense will "materially advance the ultimate termination of the litigation," because this question would likely be dispositive of the litigation. As discussed above, if the Ninth Circuit agrees with Meta that Meta's provision of its ad development tools does not preclude Section 230 immunity, then that immunity should end this case. *See supra* Part IV.A. District courts have held that similarly dispositive, case-ending legal questions are appropriate for certification under section 1292(b). *See, e.g.*, *Facebook*, 2021 WL 961771, at *3 (certifying an order for interlocutory appeal where, if "the Ninth Circuit reverses the Court on this question, Defendant may be dismissed as a party"); *Wilton Miwok Rancheria* v. *Salazar*, 2010 WL 693420, at *12 (N.D. Cal. Feb. 23, 2010) (certifying an order for interlocutory appeal because "dismissal is required" if the party seeking certification was correct); *United States ex rel. Huangyan Import & Export Corp.* v. *Nature's Farm Products, Inc.*, 370 F. Supp. 2d 993, 1005 (N.D. Cal. 2005). "In contrast, were this case to proceed . . . applying incorrect legal standards," then "the delay in reaching ultimate resolution would be significantly longer." *Nat'l Ass'n of Afr.-Am. Owned Media* v. *Charter Commc'ns, Inc.*, 2016 WL 10647193, at *6 (C.D. Cal. Dec. 12, 2016).

In addition, considerations of judicial economy weigh strongly in favor of resolving the disputed Section 230 issue now. Section 1292(b) exists for those "situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation," in order to save the parties and the Court "the time, effort, [and] expense of conducting a lawsuit." *Cement*, 673 F.2d at 1026–27. "Certification is appropriate if immediate appeal 'facilitate[s] disposition of the action by getting a final decision on a controlling legal issue sooner, rather than later[,] in order to save the courts and the litigants unnecessary trouble and expense.'" *Facebook*, 2021 WL 961771, at *2 (citation omitted). Here, "[r]ather than litigating the case to the finish under a standard that will be challenged on appeal, the Court and the parties will benefit from definitive guidance from the Ninth Circuit at the outset, before time and resources are invested." *J.B.*, 2021 WL 6621068, at *4

(certifying order of partial dismissal under Section 230). Because "the litigation is at an early stage," resolving the question of Section 230 now "would avoid great additional expense, costs, and time litigating," *Facebook*, 2021 WL 961771, at *3, and "conserve judicial resources," *Ass'n of Irritated Residents* v. *Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1093 (E.D. Cal. 2008).

These observations apply with particular force here because Section 230 provides "'*immunity from suit*'" and not merely a "'defense to liability.'" *Nemet*, 591 F.3d at 254–55 (citation omitted); *see Roommates*, 521 F.3d at 1175. Accordingly, Section 230 "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Id.* Courts thus aim to resolve the question of Section 230 immunity at the earliest possible stage of the case. *Nemet*, 591 F.3d at 254–55. That provides even more of a basis to certify this Court's order for interlocutory appeal, in addition to all of the other factors already discussed.

## V. CONCLUSION

The motion for certification for interlocutory appeal should be granted.

Dated: July 3, 2024 By: */s/ Karen L. Dunn*

Karen L. Dunn (*pro hac vice*)
kdunn@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, D.C. 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

Meredith R. Dearborn (SBN: 268312)
mdearborn@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

Jonathan S. Tam (SBN: 304143)
jtam@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2029 Century Park E, Ste 2000
Los Angeles, CA 90067
Telephone: (310) 982-4350
Facsimile: (310) 943-1805

Thomas Patrick Cordova (*pro hac vice*)
pcordova@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Jacob M. Heath (SBN: 238959)
jheath@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

*Attorneys for Defendant Meta Platforms, Inc.*