Joshua Matz*
Patrick Balke*
HECKER FINK LLP
1050 K Street NW | Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@heckerfink.com
pbalke@heckerfink.com

John C. Quinn*
Mark Weiner*
Amit Jain*
Jocelyn Hassel*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
jquinn@heckerfink.com
mweiner@heckerfink.com
ajain@heckerfink.com
jhassel@heckerfink.com

Leslie Brueckner (SBN 140968)
BAILEY & GLASSER LLP
1999 Harrison Street, Suite 660
Oakland, CA 94612
(510) 272-8000
lbrueckner@baileyglasser.com

Elizabeth Ryan*
BAILEY & GLASSER LLP
176 Federal Street, 5th Floor
Boston, MA 02110
(617) 439-6730
eryan@baileyglasser.com

* *admitted pro hac vice*

*Attorneys for Plaintiff Dr. Andrew Forrest*

[ADDITIONAL COUNSEL ON SIGNATURE PAGE]

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

DR. ANDREW FORREST,
Plaintiff,

v.

META PLATFORMS, INC.,
Defendant.

Case No. 5:22-cv-03699-PCP

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR A CERTIFICATE OF APPEALABILITY AND MOTION FOR STAY**

Hearing Date: August 22, 2024
Hearing Time: 10:00 a.m.
Courtroom: Courtroom 8
Judge: Hon. P. Casey Pitts

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

III. LEGAL STANDARD .......... 4

IV. ARGUMENT .......... 5

A. Meta Fails to Justify a Departure from the Final Judgment Rule .......... 6

1. The Court's factbound application of the law to the pleadings in assessing an affirmative defense is not a "controlling question of law." .......... 6

2. Meta's efforts to pre-litigate the allegations and evade its burden do not establish any "substantial ground for difference of opinion." .......... 11

3. Interlocutory appeal would not "materially advance the ultimate termination of the litigation." .......... 13

B. Meta Independently Fails to Establish That a New Stay is Warranted .......... 15

1. An additional stay is unwarranted under any standard. .......... 15

2. Meta will not suffer "hardship or inequity" absent a stay .......... 16

3. Dr. Forrest and others would be harmed by a stay .......... 17

4. The "orderly course of justice" does not support a stay .......... 18

V. CONCLUSION .......... 19

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ... 8

*Bowen v. Target Corp.*,
No. 16 Civ. 2587, 2021 WL 4860689 (C.D. Cal. Sept. 17, 2021) ... 16, 17

*Brantley v. NBC Universal, Inc.*,
No. 07 Civ. 6101, 2008 WL 11342692 (C.D. Cal. Aug. 4, 2008) ... 7

*Brown v. Hain Celestial Grp., Inc.*,
No. 11 Civ. 3082, 2012 WL 4364588 (N.D. Cal. Sept. 24, 2012) ... 5, 18, 19

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) ... *passim*

*Callahan v. PeopleConnect, Inc.*,
No. 20 Civ. 9203, 2022 WL 2132912 (N.D. Cal. June 14, 2022) ... 9

*Carrillo v. Schneider Logistics Trans-Loading & Distrib., Inc.*,
No. 11 Civ. 8557, 2014 WL 1155403 (C.D. Cal. Mar. 21, 2014) ... 11

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1981) ... 6, 14

*Consumer Fin. Prot. Bureau v. D & D Mktg., Inc.*,
No. 15 Civ. 9692, 2017 WL 5974248 (C.D. Cal. Mar. 21, 2017) ... 5, 16, 19

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) ... 4

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ... 7, 11, 12, 13

*Cousineau v. Microsoft Corp.*,
No. 11 Civ. 1438, 2012 WL 12847005 (W.D. Wash. Aug. 22, 2012) ... 15

*Craftwood II, Inc. v. Tomy Int'l, Inc.*,
No. 12 Civ. 1710, 2013 WL 12140946 (C.D. Cal. Nov. 15, 2013) ... 17

*CYBERsitter, LLC v. Google Inc.*,
905 F. Supp. 2d 1080 (C.D. Cal. 2012) ... 10

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
498 F.3d 1059 (9th Cir. 2007) ..... 16, 17

*Dister v. Apple-Bay East, Inc.*,
No. 07 Civ. 1377, 2007 WL 4045429 (N.D. Cal. Nov. 15, 2007) ..... 18

*Doe #1 v. Twitter, Inc.*,
No. 22-15103, 2023 WL 3220912 (9th Cir. May 3, 2023) ..... 10

*Doe v. Mindgeek USA Inc.*,
574 F. Supp. 3d 760 (C.D. Cal. 2021) ..... 8, 9

*Does 1-6 v. Reddit, Inc.*,
51 F.4th 1137 (9th Cir. 2022) ..... 8, 9

*Durnford v. MusclePharm Corp.*,
907 F.3d 595 (9th Cir. 2018) ..... 13

*Envt'l Prot. Info. Ctr. v. Pac. Lumber Co.*,
No. 01 Civ. 2821, 2004 WL 838160 (N.D. Cal. Apr. 19, 2004) ..... 5

*F.T.C. v. LeanSpa, LLC*,
920 F. Supp. 2d 270 (D. Conn. 2013) ..... 10

*In re Facebook Simulated Casino-Style Games Litig.*,
No. 22-16888, 2024 WL 2287200 (9th Cir. May 21, 2024) ..... 9

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) (en banc) ..... 8, 16

*Fed. Energy Regul. Comm'n v. Vitol Inc.*,
No. 20 Civ. 40, 2022 WL 583998 (E.D. Cal. Feb. 25, 2022) ..... 5, 16

*Flores v. Velocity Express, LLC*,
No. 12 Civ. 5790, 2015 WL 4463639 (N.D. Cal. July 21, 2015) ..... 14

*Gen. Steel Domestic Sales, L.L.C. v. Chumley*,
840 F.3d 1178 (10th Cir. 2016) ..... 8

*Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*,
820 F. Supp. 503 (C.D. Cal. 1982) ..... 19

*Hanni v. Am. Airlines, Inc.*,
No. 08 Civ. 732, 2008 WL 5000237 (N.D. Cal. Nov. 21, 2008) ..... 14

*Henley v. Jacobs*,
No. 18 Civ. 2244, 2019 WL 8333448 (N.D. Cal. Oct. 25, 2019) ..... 6, 11

*Hermès Int'l v. Rothschild*,
590 F. Supp. 3d 647 (S.D.N.Y. 2022)....................4

*Hilton v. Braunskill*,
481 U.S. 770 (1987)....................16

*House v. NCAA*,
No. 20 Civ. 3919, 2021 WL 4924776 (N.D. Cal. Feb. 25, 2021)....................16

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022)....................4, 5, 14

*J.B v. G6 Hosp., LLC.*,
No. 19 Civ. 7848, 2021 WL 6621068 (N.D. Cal. Dec. 16, 2021)....................11

*James v. Price Stern Sloan, Inc.*,
283 F.3d 1064 (9th Cir. 2002)....................4, 5

*James v. Walt Disney Co.*,
No. 23 Civ. 2500, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024)....................15

*Ji v. Naver Corp.*,
No. 21 Civ. 5143, 2024 WL 251402 (N.D. Cal. Jan. 23, 2024)....................7

*Johnson v. Jones*,
515 U.S. 304 (1995)....................14

*Johnson v. Starbucks Corp.*,
No. 18 Civ. 2472, 2020 WL 2039054 (E.D. Cal. Apr. 28, 2020)....................5

*K.H.B. by and through K.D.B. v. UnitedHealthcare Ins. Co.*,
No. 18 Civ. 4175, 2018 WL 4913666 (N.D. Cal. Oct. 10, 2018)....................17

*Kuang v. U.S. Dep't of Def.*,
No. 18 Civ. 3698, 2019 WL 1597495 (N.D. Cal. Apr. 15, 2019)....................16

*Lal v. Cap. One Fin. Corp.*,
No. 16 Civ. 6674, 2017 WL 282895 (N.D. Cal. Jan. 23, 2017)....................18

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)....................17

*Lockyer v. Mirant Corp.*,
398 F. 3d 1098 (9th Cir. 2005)....................17, 18

*M.G. v. Metro. Interpreters & Translators, Inc.*,
85 F. Supp. 3d 1195 (S.D. Cal. 2015)....................12

*McClung v. Addshopper, Inc.*,
No. 23 Civ. 1996, 2024 U.S. Dist. LEXIS 54305 (N.D. Cal. Mar. 26, 2024) ........................ 4

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*,
293 F. Supp. 3d 394 (S.D.N.Y. 2018)........................................................................... 7

*MRW, Inc. v. Big-O Tires, LLC*,
No. 08 Civ. 1732, 2009 WL 10694197 (E.D. Cal. Feb. 20, 2009) ....................................... 5

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009)........................................................................................ 8

*Nestle Purina PetCare Co. v. Blue Buffalo Co. Ltd.*,
No. 14 Civ. 859, 2015 WL 1782661 (E.D. Mo. Apr. 20, 2015) .......................................... 10

*Pedro v. Millenium Prods., Inc.*,
No. 15 Civ. 5253, 2016 WL 3029681 (N.D. Cal. May 27, 2016) ....................................... 17

*Rabin v. Google LLC*,
— F. Supp. 3d —, 2024 WL 1269313 (N.D. Cal. Mar. 26, 2024) ........................................ 4

*Research Corp. Techs. Inc. v. Eli Lilly & Co.*,
No. 16 Civ. 191, 2017 WL 9565409 (D. Ariz. May 9, 2017)............................................. 18

*Rieve v. Coventry Health Care, Inc.*,
870 F. Supp. 2d 856 (C.D. Cal. 2012)......................................................................... 14

*Sateriale v. RJ Reynolds Tobacco Co.*,
No. 09 Civ. 8394, 2015 WL 3767424 (C.D. Cal. June 17, 2015)....................................... 11

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
No. 22 MD 3047, 2024 WL 1205486 (N.D. Cal. Feb. 2, 2024) ...................................... 5, 9

*Steering Comm. v. United States*,
6 F.3d 572 (9th Cir. 1993)............................................................................................ 6

*Swift v. Zynga Game Network, Inc.*,
No. 09 Civ. 5433, 2010 WL 4569889 (N.D. Cal. Nov. 3, 2010)........................................ 10

*Turo Inc. v. City of Los Angeles*,
No. 18 Civ. 6055, 2020 WL 4287583 (C.D. Cal. July 27, 2020) .................................. 9, 12

*Villarreal v. Caremark LLC*,
85 F. Supp. 3d 1063 (D. Ariz. 2015)........................................................................... 14

*Weiner v. Ocwen Fin. Corp.*,
No. 14 Civ. 2597, 2017 WL 2797856 (E.D. Cal. June 28, 2017).......................................... 7

**Statutes**

28 U.S.C. § 1292(b) .......... *passim*

47 U.S.C. § 230 .......... *passim*

Cal. Civ. Proc. Code § 2025.210 .......... 2

Cal. Civ. Proc. Code § 2030.020 .......... 2

Cal. Civ. Proc. Code § 2031.020 .......... 2

**Federal Rules**

Fed. R. Civ. P. 12 .......... 3, 19

Fed. R. Civ. P. 26 .......... 2, 19

## I. INTRODUCTION

Since 2019, Meta has co-created, supercharged, and profited from an unyielding barrage of scam ads that have misappropriated the name and likeness of Plaintiff Dr. Andrew Forrest. In doing so, Meta has abused Dr. Forrest's brand, profiting from scams that have swindled countless Australians out of their life savings. And although Dr. Forrest sued Meta in 2021 to stop this conduct, nearly three years later, "no answer has been filed, no documents have been exchanged, no depositions have been noticed." ECF 131 ("Stay Mot.") at 2. As a result, "[f]ull information and documents regarding Meta's [ad] processes and tools" remain within Meta's "exclusive realm of control"—and, meanwhile, harmful scam ads continue unabated. ECF 101 ("TAC") ¶¶ 2, 108 n.24.

This state of affairs ought to end now. After receiving full briefing, hearing oral argument, and considering the parties' supplemental authorities, the Court denied Meta's motion to dismiss Dr. Forrest's Third Amended Complaint. *See* ECF 101; ECF 121 ("Order"). In a thorough, case-specific Order, the Court agreed with Meta that Section 230 barred Dr. Forrest's claims, even at the pleading stage, *unless* Meta's conduct "affect[ed] ad content in a manner that could at least potentially contribute to [the ads'] illegality." Order at 8. Applying that standard to the specific allegations in the TAC, the Court held that Dr. Forrest fell on the right side of the line for purposes of a motion to dismiss—and that Meta's counterargument presented "a quintessential factual disagreement." *Id.* at 4, 8-9. Meta now seeks to certify that pleading-stage Order for interlocutory appeal and on that basis asks the Court to again halt any further movement in this nearly three-year old litigation. *See* ECF 130 ("Mot."); ECF 131.

The Court should deny both motions. Although 28 U.S.C. § 1292(b) authorizes a district court, in its discretion, to certify an order for interlocutory review in an unusual case, certification is improper for routine, factbound orders denying motions to dismiss. It is therefore unsurprising that Meta fails to articulate a purely legal question controlling the Court's factbound Order, as it must do to demonstrate a "controlling question of law"; challenges only this Court's (correct) application of a settled legal standard to the specific facts alleged in the TAC, dooming its effort to establish a "substantial ground for difference of opinion"; and fails to show that a time-intensive appeal on a bare, undeveloped factual record would "materially advance the ultimate termination

of the litigation." § 1292(b). For any of these three independent reasons (or in its unreviewable discretion), this Court should deny certification, as many courts have done in analogous contexts.

The Court should also deny another renewal of the stay. Because the bases for Meta's prior stay motions are no longer present, and because Meta's sole basis for its pending stay motion (the § 1292(b) motion) is groundless, no stay is warranted. Even if this Court were to certify the Order, a stay would be inappropriate: Meta's routine litigation expenses do not amount to the type of "hardship" that might justify a stay; a stay would harm Dr. Forrest and countless victims; and keeping this nearly three-year old case stalled would not assist the orderly course of justice.

## II. STATEMENT OF FACTS

Dr. Forrest filed this suit against Meta (then known as Facebook) on September 17, 2021 in the Superior Court for the County of San Mateo. Voluntarily dropping one claim, Dr. Forrest amended his complaint as of right on November 21, 2021. Since then, Meta has stalled discovery at every turn. For instance, after Dr. Forrest served his first requests for the production of documents and interrogatories on Meta, Meta refused to comply, noting that it had demurred (which, under California law, does not stay discovery). *See* Resp. to Mot. to Stay at 6, *Forrest v. Facebook*, No. 21 Civ. 5055 (Cal. Super. Ct. San Mateo May 9, 2022); *id.*, Decl. of Jose Nuño, Exs. A-D; Cal. Civ. Proc. Code §§ 2030.020, 2031.020, 2025.210. Meta then moved for a "brief stay," assuring the court that it would "agree to supplement its discovery responses two weeks after an order holding that Plaintiff has stated a viable cause of action." *See* Mot. to Stay at 10, *Forrest v. Facebook*, No. 21 Civ. 5055 (Cal. Super. Ct. San Mateo Apr. 8, 2022). The state court sustained Meta's demurrer with leave to amend, but it denied Meta's requested stay, noting that under California law, "plaintiffs are permitted . . . to conduct discovery shortly after serving a complaint, regardless of what demurrers or other challenges . . . a defendant may assert." Order at 1-2, *Forrest v. Facebook*, No. 21 Civ. 5055 (Cal. Super. Ct. San Mateo May 20, 2022).

Soon thereafter, Dr. Forrest filed a Second Amended Complaint, and Meta filed a notice of removal. *See* ECF 1. The Court ordered the parties to exchange initial Rule 26 disclosures by October 3, 2022. *See* ECF 39 at 2. Instead, on October 3, Meta declined to identify a single person or document relevant to the case. *See* ECF 39, Ex. A; ECF 42 at 3. Meta initially promised to

supplement its deficient disclosures by November 18, 2022, "or maybe even earlier," but later switched tacks and "reassess[ed] [its] positions regarding this litigation and how best to proceed given the pending criminal proceedings in Australia." ECF 39 at 3. Dr. Forrest was forced to file a motion to compel and for a protective order, which Magistrate Judge DeMarchi granted on January 2, 2023, deeming Meta's assertion of "irreparable prejudice" to be "not plausible." ECF 42 at 4; *see* ECF 43.

Four days later, Meta filed its second motion to stay, citing the Australian criminal proceedings. *See* ECF 48. This time, the Court granted Meta's motion, holding that a "brief stay" was warranted during the pendency of the Australian criminal proceedings. ECF 79 at 5-6. Last October, however, over Meta's objection, this Court partially lifted the stay to allow Dr. Forrest to amend his pleading and enable the parties to brief Meta's Rule 12 motion. *See* ECF 95.

On December 1, 2023, Dr. Forrest filed his TAC. The TAC explains that Meta has for years "produced" "paid ads and sponsored content . . . in which [Dr. Forrest] falsely appears to be promoting fake cryptocurrency and other fraudulent financial schemes." TAC ¶ 1. These ads "have not just injured Dr. Forrest's reputation," but "have also ruined the lives of countless Australians who invested their life savings in fraudulent financial products and schemes based on their belief that, if Dr. Forrest endorsed them, they must be sound." TAC ¶ 6. Meta again moved to dismiss, arguing (as relevant) that Section 230 protected Meta unless it had "not merely augment[ed] the content generally, but materially contribute[d] to the content's alleged unlawfulness." ECF 104 at 9 (cleaned up).

After full briefing, oral argument, and submissions of supplemental authorities, the Court issued its written Order denying Meta's motion to dismiss. The Court agreed with Meta (citing the company's supplemental authority) that for Section 230's protections not to apply, "the service must specifically contribute to the aspect of the content that is allegedly illegal." Order at 8. Applying this standard, the Court held that because "Dr. Forrest . . . allege[s] that [Meta's own] tools affect ad content in a manner that could at least potentially contribute to their illegality," there existed a "factual dispute regarding whether Meta's ad systems . . . themselves contributed to the content of the ads, including to the aspects of the content that are allegedly illegal." *Id.* at 8-9.

Because Section 230 is "an affirmative defense," the Court explained, Dr. Forrest had succeeded in "plead[ing] facts demonstrating a potential factual dispute that could affect whether the defense applies," as necessary to survive a motion to dismiss. *Id.* at 4 (quoting *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024); *Rabin v. Google LLC*, — F. Supp. 3d —, 2024 WL 1269313, at *2 (N.D. Cal. Mar. 26, 2024)). Meta's counterargument, the Court concluded, amounted to a "quintessential factual disagreement" that was inappropriate to resolve in Meta's favor at the pleading stage. Order at 8; *see also id.* at 9.

On July 3, 2024, Meta moved this Court to certify its June 17, 2024 Order for interlocutory appeal. *See* Mot. at 1. The following week, Meta moved to stay the case for a third time. *See* Stay Mot. at 1. At this point, as Meta concedes, the grounds for its prior stay motions are no longer present; its motion to dismiss was denied in relevant part, and the Australian proceedings have concluded. But Meta "nonetheless requests that the stay be extended for a different reason"—namely, its certification motion. *Id.* at 1.

## III. LEGAL STANDARD

"Few presumptions are as integral to judicial efficiency in the federal courts as the one against granting interlocutory review." *Hermès Int'l v. Rothschild*, 590 F. Supp. 3d 647, 649 (S.D.N.Y. 2022) (Rakoff, J.). Congress authorized courts to "depart[] from th[is] normal rule" under § 1292(b), but only "[i]n rare circumstances." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002); *accord ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (interlocutory appeal is allowed only "when 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until the entry of a final judgment'" (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978))); *McClung v. Addshopper, Inc.*, No. 23 Civ. 1996, 2024 U.S. Dist. LEXIS 54305, at *2 (N.D. Cal. Mar. 26, 2024) (Section 1292(b) "was not intended merely to provide review of difficult rulings in hard cases.").

Before certifying an order for interlocutory appeal, a district court must find in writing that the order (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and that (3) "an immediate appeal from the order may materially advance

the ultimate termination of the litigation." § 1292(b). The Ninth Circuit has instructed that these three independent requirements "must be construed narrowly"—that is, in favor of the presumption against interlocutory review. *James*, 283 F.3d at 1067 n.6.

"Even if all three statutory requirements are met, the district court may still decline to certify an interlocutory appeal." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 22 MD 3047, 2024 WL 1205486, at *2 (N.D. Cal. Feb. 2, 2024). And "[e]ven where the district court makes such a certification, the court of appeals nevertheless has discretion to reject the interlocutory appeal, and does so quite frequently." *James*, 283 F.3d at 1067 n.6; *accord ICTSI Oregon*, 22 F.4th at 1131. A district court's denial of a motion to certify under § 1292(b) "is not reviewable by the appellate court." *Envt'l Prot. Info. Ctr. v. Pac. Lumber Co.*, No. 01 Civ. 2821, 2004 WL 838160, at *2 n.6 (N.D. Cal. Apr. 19, 2004).

Finally, even when a district court certifies an order for interlocutory appeal, "[s]taying a case, including discovery, is not an automatic consequence." *MRW, Inc. v. Big-O Tires, LLC*, No. 08 Civ. 1732, 2009 WL 10694197, at *3 (E.D. Cal. Feb. 20, 2009). Indeed, courts in this Circuit regularly permit discovery to proceed even when granting § 1292(b) applications.[1]

## IV. ARGUMENT

Meta fails to satisfy *any* of the three statutory requirements for certification of an interlocutory appeal. *See* § 1292(b). To begin, Meta does not identify any "controlling question of law" of the kind the statute contemplates; rather, it contests this Court's application of the law to the allegations in Dr. Forrest's TAC—precisely the kind of factbound dispute that court after court has held to be ill-suited to interlocutory review, particularly on a bare record. Meta independently fails to demonstrate any "substantial ground for difference of opinion," *id.*, deflecting instead to the same factual disagreements it raised in its motion to dismiss and ignoring its burden to prove its

[1] *See, e.g.*, *Consumer Fin. Prot. Bureau v. D & D Mktg., Inc.*, No. 15 Civ. 9692, 2017 WL 5974248, at *6 (C.D. Cal. Mar. 21, 2017) (certifying potentially dispositive order for interlocutory appeal but denying motion to stay); *MRW, Inc.*, 2009 WL 10694197, at *3-4 (granting § 1292(b) certification but denying motion to stay); *Fed. Energy Regul. Comm'n v. Vitol Inc.*, No. 20 Civ. 40, 2022 WL 583998, at *4 (E.D. Cal. Feb. 25, 2022) (same); *Brown v. Hain Celestial Grp., Inc.*, No. 11 Civ. 3082, 2012 WL 4364588, at *5 (N.D. Cal. Sept. 24, 2012) (same); *cf. Johnson v. Starbucks Corp.*, No. 18 Civ. 2472, 2020 WL 2039054, at *2-3 (E.D. Cal. Apr. 28, 2020) (denying stay pending appeal of related cases).

Section 230 affirmative defense at the pleading stage. And far from "materially advanc[ing] the ultimate termination of the litigation," *id.*, an interlocutory appeal would only further delay this three-year-old case and deprive the Court and the Ninth Circuit of factual development crucial to properly resolving the legal issues.

Even if Meta could satisfy all three statutory criteria (and it cannot), and even if this Court exercised its discretion to certify its Order, imposing a new stay on account of certification would not be warranted. Meta does not identify any hardship from proceeding in the ordinary course, beyond routine litigation expenses that courts reject as a sufficient basis for a stay; meanwhile, Dr. Forrest and innocent Australians would suffer substantial harm from a stay, during which time Meta would keep co-creating and disseminating scam ads; and because a stay would delay resolution of the key fact dispute in this case, it would not advance the orderly administration of justice. Meta's motions should be denied.

### A. Meta Fails to Justify a Departure from the Final Judgment Rule

#### 1. The Court's factbound application of the law to the pleadings in assessing an affirmative defense is not a "controlling question of law."

Meta has not identified any "controlling question of law" that underlies this Court's Order and can be properly certified for an interlocutory appeal. *See Henley v. Jacobs*, No. 18 Civ. 2244, 2019 WL 8333448, at *2 (N.D. Cal. Oct. 25, 2019) (emphasizing that a "purely legal" question is one that "can be resolved quickly without delving into a particular case's facts" (citing *Steering Comm. v. United States*, 6 F.3d 572, 575-76 (9th Cir. 1993))). Instead, Meta improperly seeks interlocutory review of what this Court correctly termed a "quintessential factual disagreement" over whether Meta materially contributed to the harmful scam ads that misappropriated Dr. Forrest's name and likeness. Order at 8. This inherently factbound question is not "purely legal."

The Ninth Circuit has long instructed courts to interpret "the 'controlling question of law' requirement" consistent with "the congressional directive that section 1292(b) is to be applied sparingly and only in exceptional cases." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir. 1981). Consistent with this legislative directive, courts throughout the country (including in the Ninth Circuit) consistently hold that "a question that turns on the assessment of the pleadings[]

is not a pure question of law suited for interlocutory appeal." *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 399 (S.D.N.Y. 2018) (cleaned up). "While sufficiency of a pleading is, in the broadest sense, 'a controlling question of law,' if section 1292(b) were interpreted this broadly virtually every denial of a motion to dismiss would be subject to interlocutory review." *Brantley v. NBC Universal, Inc.*, No. 07 Civ. 6101, 2008 WL 11342692, at *1 (C.D. Cal. Aug. 4, 2008). Such a rule, by entitling defendants to review of any "straightforward ruling simply declining to dismiss [a plaintiff's] claims," would explode § 1292(b)'s "'narrow exception' to the final judgment rule" and prevent its requirements from "serving [their] gatekeeping purpose." *Ji v. Naver Corp.*, No. 21 Civ. 5143, 2024 WL 251402, at *2 (N.D. Cal. Jan. 23, 2024) (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)).

Here, too, the Court's case-specific, factbound resolution of Meta's motion to dismiss is not a "pure question of law" for purposes of § 1292(b). *See Weiner v. Ocwen Fin. Corp.*, No. 14 Civ. 2597, 2017 WL 2797856, at *4 (E.D. Cal. June 28, 2017) ("[Where] the alleged controlling question of law raised by Defendants is 'inextricably intertwined' with an analysis of Plaintiff's factual allegations, 'an interlocutory appeal is not appropriate.'").

Meta seeks to escape that conclusion by hypothesizing a broad legal question: "[W]hether an interactive computer service provider's alleged provision of tools to advertisers that automatically optimize the appearance of an advertiser's ad components precludes immunity from suit under Section 230 related to an advertiser's use of the tools to publish ads containing illegal content." Mot. at 7. But this framing mischaracterizes Dr. Forrest's factual allegations, which—despite Meta's shroud of secrecy, *see* TAC ¶¶ 108 n.24, 114 n.25—go well beyond claims of automated optimization. Far from depicting user-provided inputs in a slightly modified format or recommending such content to other users, Dr. Forrest alleges "that 'Meta's Ads manager software drives and ultimately determines what the completed, paid-for ads will look like'" and that Meta's "additional tools" have contributed materially to scam ads' illegality in several ways, "including by 'mix[ing] and match[ing]' ad components like images, videos, text, and audio" and by adding new "music" or "3-D animation." Order at 3, 8 (quoting TAC ¶¶ 119-23). As the Court correctly recognized, Meta's ongoing refusal to accept these allegations presents a "factual dispute"

regarding whether "Meta's ad systems . . . themselves contributed to . . . the aspects of the content that are allegedly illegal," such as the scam ads' misappropriation of Dr. Forrest's name and likeness (through text, images, audio, video, and the juxtaposition of these elements) for unlawful purposes. Order at 9. Now, however, Meta tries once again to elide this key point by identifying a "controlling question of law" that presupposes its own mistaken characterization of the allegations.

Equally significant, Meta's proposed "controlling question of law" fails to reckon with the standard of review that applies to affirmative defenses at the pleading stage. If accepted, this way of defining a controlling question would blast a hole in the many cases affirming that disputes about the factual sufficiency of a pleading are not properly certifiable under § 1292(b).

Quoting dicta and out-of-circuit authority, Meta attempts an end-run around that principle by asserting that Section 230 provides an immunity from suit whose denial demands immediate, automatic appellate attention. Mot. at 7-8; *see also id.* at 1-2, 14 (citing *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174-75 (9th Cir. 2008) (en banc); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009)). That is markedly overstated as a characterization of governing law in the Ninth Circuit. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009) (noting that *Roommates.com* "rested not on broad statements of immunity but rather on a careful exegesis of the statutory language"); *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1139 (9th Cir. 2022) (describing Section 230 more precisely as an "immunity from liability"). Indeed, Meta's rhetoric suggests a protection akin to official immunity doctrines. If Section 230's protections were truly so broad, Meta would have no need to seek certification; it could simply appeal under the collateral order doctrine. Yet courts have properly deemed the collateral order doctrine inapplicable here. *See Gen. Steel Domestic Sales, L.L.C. v. Chumley*, 840 F.3d 1178, 1181 (10th Cir. 2016) (rejecting application of collateral order doctrine to Section 230 denial).

In any event, Meta's contentions are beside the point. Neither *Roommates.com* nor *Nemet* considered the propriety of certification for interlocutory appeal under § 1292(b). And courts have repeatedly declined to certify orders rejecting Section 230 defenses, including in at least one case this year involving Meta. *See Doe v. Mindgeek USA Inc.*, 574 F. Supp. 3d 760, 775-76 (C.D. Cal.

2021); *Turo Inc. v. City of Los Angeles*, No. 18 Civ. 6055, 2020 WL 4287583, at *5 (C.D. Cal. July 27, 2020); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2024 WL 1205486, at *2; *Callahan v. PeopleConnect, Inc.*, No. 20 Civ. 9203, 2022 WL 2132912, at *6-7 (N.D. Cal. June 14, 2022); *see also In re Facebook Simulated Casino-Style Games Litig.*, No. 22-16888, 2024 WL 2287200, at *2 (9th Cir. May 21, 2024) (vacating order granting permission for interlocutory appeal as improvidently granted). For good reason: Section 230 ultimately provides an "affirmative defense" (as Meta is forced to concede). Mot. at 8 (quoting *Calise*, 103 F.4th at 738); Order at 4, 5, 9. As this Court has explained, the bar for dismissal at the pleading stage based on an affirmative defense is high. *See* Order at 4.

*Mindgeek* is particularly instructive. In that case, a survivor of child sex trafficking sued a group of operators of pornographic websites on behalf of a putative class, alleging that these operators had knowingly posted, enabled the posting of, and profited from child pornography. 574 F. Supp. 3d at 763. As here, the defendants moved to dismiss, claiming protection under Section 230. *Id.* And, as here, the court denied the motion because the plaintiff had "sufficiently allege[d]" that the defendants "create[d] or materially contribute[d] to the content at issue." *Id.* at 774-75. The defendants then moved for certification under § 1292(b). *Id.* at 775. In response, the *Mindgeek* court held that its material contribution ruling presented no "controlling question of law" under § 1292(b). *Id.* at 775. As the court explained, "Defendants purport to raise a pure question of law, but the question instead impermissibly challenges 'whether the district court properly applied settled law to the facts or evidence of a particular case.'" *Id.* "This is plain," the court elaborated, "because whether Defendants are content creators within the meaning of Section 230 is an inherently factual inquiry, depending upon the very nature of the platforms at issue and the specific features available to its users." *Id.* at 775-76. That principle governs here: Because the question presented by Meta is the same as the "inherently factual" question in *Mindgeek*, Meta fails to identify any "pure question of law," as it must to justify § 1292(b) review. *Id.* at 775.[2]

---

[2] The *Mindgeek* court separately held Section 230 inapplicable as to some of the plaintiffs' claims under an exemption to Section 230 created by the Allow States to Fight Online Sex Trafficking Act of 2017 ("FOSTA"). *See Mindgeek*, 574 F. Supp. 3d at 772-75. Although this second holding was later abrogated, *see Does 1-6 v. Reddit, Inc.*, 51 F.4th at 1142, the *Mindgeek* court's distinct, case-specific holding on material contribution was not.

In contrast, Meta's authorities are inapt. Meta notes that courts have "frequently granted Section 230 immunity at the pleading stage," Mot. at 8, but not one of its appellate citations here involves interlocutory review under § 1292(b). At most, these cases stand for the unremarkable proposition that Section 230 defenses can be resolved at the pleading stage in cases where (unlike here) the allegations in a complaint make clear that this affirmative defense applies. In contrast, where (as here) the applicability of this affirmative defense is *not* established by the complaint, courts have denied Section 230 motions to dismiss at the pleading stage. *See, e.g.*, *CYBERsitter, LLC v. Google Inc.*, 905 F. Supp. 2d 1080, 1086 (C.D. Cal. 2012) ("Because Defendant's entitlement to immunity under the CDA depends on whether Defendant 'developed' or materially contributed to the content of these advertisements, it is too early at th[e pleading stage] to determine whether CDA immunity applies."); *Swift v. Zynga Game Network, Inc.*, No. 09 Civ. 5433, 2010 WL 4569889, at *6 (N.D. Cal. Nov. 3, 2010) (denying motion to dismiss under Section 230 as premature where plaintiff did not concede that defendant was a "'neutral' website"); *F.T.C. v. LeanSpa, LLC*, 920 F. Supp. 2d 270, 277 (D. Conn. 2013) ("[O]n the face of the Amended Complaint, it is plausible that LeadClick is an information content provider; and the LeadClick defendants cannot claim immunity under the CDA."); *Nestle Purina PetCare Co. v. Blue Buffalo Co. Ltd.*, No. 14 Civ. 859, 2015 WL 1782661, at *10 (E.D. Mo. Apr. 20, 2015) ("Blue Buffalo is correct that it is not required to plead around affirmative defenses, and PRCG/Haggerty's defense of immunity [under Section 230] is such an affirmative defense.").

Ultimately, Meta identifies just two cases in which courts certified orders relating to Section 230 for interlocutory review. *See* Mot. at 8. Tellingly, both involved pure questions of statutory interpretation, far afield from the factbound issue here. In *Doe #1 v. Twitter, Inc.*, the district court certified an order involving two questions relating to the FOSTA exception to Section 230: "(1) whether the immunity carve-out in Section 230(e)(5)(A) requires that a plaintiff plead a violation of Section 1591," and "(2) whether 'participation in a venture' under Section 1591(a)(2) requires that a defendant have a 'continuous business relationship' with the traffickers in the form of business dealings or a monetary relationship." No. 22-15103, 2023 WL 3220912, at *1 (9th Cir. May 3, 2023). And in *J.B. v. G6 Hosp., LLC.*, the district court granted interlocutory review on the

first issue from *Doe #1*. *See* No. 19 Civ. 7848, 2021 WL 6621068, at *3 (N.D. Cal. Dec. 16, 2021). Thus, these cases sought appellate guidance on unsettled legal questions "at a high enough level of abstraction to lift the question[s] out of the details of . . . a particular case." *Sateriale v. RJ Reynolds Tobacco Co.*, No. 09 Civ. 8394, 2015 WL 3767424, at *2 (C.D. Cal. June 17, 2015). These are precisely the types of questions that appellate courts can resolve efficiently "without delving into [the] particular case[s'] facts." *Henley*, 2019 WL 8333448, at *2.

The Court's ruling here is categorically different. Unlike the decisions in *Doe #1* and *J.B.*, this Court's Order simply assessed the sufficiency of the allegations under a settled legal standard, and it determined that Dr. Forrest alleged sufficient facts to survive the motion to dismiss, and that Meta could not "establish based on the pleadings alone that Section 230 provides an impenetrable defense." Order at 4, 6. Because this factbound conclusion is not a pure question of law, the Court should deny certification.

**2. Meta's efforts to pre-litigate the allegations and evade its burden do not establish any "substantial ground for difference of opinion."**

Meta also fails to identify any "substantial ground for difference of opinion," as § 1292(b) independently demands. "[J]ust because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Couch*, 611 F.3d at 633. More to the point: "That settled law might be applied differently does not establish a substantial ground for difference of opinion." *Id.*; *see also, e.g.*, *Carrillo v. Schneider Logistics Trans-Loading & Distrib., Inc.*, No. 11 Civ. 8557, 2014 WL 1155403, at *4 (C.D. Cal. Mar. 21, 2014) ("[T]he fact that other courts have applied the same law and reached different results does not demonstrate substantial grounds for a difference of opinion . . . .").

Here, Meta contends that its Section 230 affirmative defense applies unless it "specifically contribute[s] to the aspect of the content that is allegedly illegal." *See* Mot. at 9 (quoting Order at 8). In other words, Meta argues, Section 230's protections are not displaced by the provision of "neutral tools" that are "allegedly used for unlawful purposes" but "do[] not materially contribute to the ad's illegality." Mot. at 9-10 (quoting *Calise*, 103 F.4th at 745). Even assuming that standard

applies to allegations of co-creating content, as opposed to merely editing or augmenting it, that is exactly the standard the Court applied in rejecting Meta's pleading-stage defense. As the Court explained, "[t]he Ninth Circuit has 'interpreted [47 U.S.C. § 230(f)(3)] to mean that a website helps to develop unlawful content if it contributes materially to the alleged illegality of the conduct.' In other words, the service must specifically contribute to the aspect of the conduct that is allegedly illegal." Order at 8 (quoting *Calise*, 103 F.4th at 744). And Dr. Forrest so pleaded: "Dr. Forrest alleges not simply that Meta provided 'neutral tools' which may have been used by other parties for 'unlawful purposes,' . . . but that . . . [Meta's] tools themselves contributed to the content of the ads, including to the aspects of the content that are allegedly illegal." Order at 8-10 (quoting *Calise*, 103 F.4th at 745).[3]

Because this Court applied precisely the standard Meta espouses to the allegations in Dr. Forrest's TAC, there can be no substantial ground for difference of opinion on any broader legal issues. The issue is simply (in Meta's own words) on which "side of the line" Dr. Forrest's allegations fall, Mot. at 11—*i.e.*, whether this Court "properly applied settled law[] to the facts," *Turo*, 2020 WL 4287583, at *5. That is "the antithesis of a proper § 1292 appeal" and does not constitute a substantial ground for disagreement. *Id.*; *see Couch*, 611 F.3d at 633.[4]

In all events, the Court did not err in its application of the law to Dr. Forrest's TAC. In arguing otherwise, Meta rehashes the "quintessential factual disagreement" that this Court rightly

[3] As the TAC explains, "[f]ull information and documents regarding Meta's processes and tools is not publicly available and is part of Facebook's closely held and exclusive realm of control. Discovery will shed further light into how these processes work." TAC ¶ 108 n.24.

[4] To the extent Meta relies on a purported dearth of authorities concerning the interaction between Section 230 and generative AI, this falls short of a substantial ground for difference of opinion. As the Ninth Circuit has explained, the substantial-ground standard is not satisfied "just because a court is the first to rule on a particular question." *Couch*, 611 F.3d at 633. Moreover, Meta has long been on notice of Dr. Forrest's allegations that it co-creates scam ads in part through the use of generative AI, *see* TAC ¶ 123, but it did not argue that this would make any difference for purposes of the material contribution analysis, *see generally* ECF 104, 112, and it has yet to articulate such an argument even now, *see* Mot. at 9 (citing one law review article "discussing how Section 230 might be applied to ChatGPT"). If Meta wished to assert such an argument, it should have done so in its motion to dismiss—or, at minimum, in a timely motion for reconsideration—rather than in a motion to certify under § 1292. *See M.G. v. Metro. Interpreters & Translators, Inc.*, 85 F. Supp. 3d 1195, 1200 (S.D. Cal. 2015) ("[I]t is generally inappropriate to review legal issues entwined with factual considerations raised for the first time on a motion for interlocutory appeal.").

declined to resolve, Order at 8, and ignores its own burden at this early stage of the proceedings. Starting with the factual point, Meta claims it is accepting Dr. Forrest's allegations as true. *See* Mot. at 9, 10. But it premises its argument on a skewed view of his allegations, which go well beyond the fact that Meta's tools "optimize the appearance of" scam ads. *Id.* at 9. As set forth above—and the point bears repetition—Dr. Forrest does not merely allege that Meta Ads provided generic optimization tools. Instead, he plainly alleges that Meta's "additional tools" have contributed materially to the scam ads' illegality in important and specific respects. Order at 3, 8-9.

Meta also complains that Dr. Forrest has not comprehensively alleged "how Meta's ad tools work" in every respect, Mot. at 12 (quoting Order at 8); *see also* Mot. at 2, 9. But such comprehensive facts are possessed and controlled exclusively by Meta. *See* TAC ¶ 108 n.24. And at the pleading stage, Dr. Forrest need not conclusively disprove Meta's Section 230 affirmative defense. To the contrary, it is Meta that "bears the 'burden of showing that § 230(c)(1) applies.'" Order at 4 (quoting *Calise*, 103 F.4th at 738). And for all its rhetoric about the extent of Section 230's protections, Meta cannot dispute that only when the plaintiff's complaint "admits all the ingredients of an impenetrable defense" may an otherwise viable complaint be dismissed for failure to state a claim. Order at 4 (quoting *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 (9th Cir. 2018)). Applying this standard, the Court properly held that Meta failed to meet its burden of "demonstrat[ing] that there can be no dispute, based on the allegations in the complaint, that . . . Meta's only contributions to the ads are entirely unrelated to the aspects of the ads that allegedly make them illegal." Order at 9. That narrow, factbound conclusion is plainly correct—and even assuming otherwise, Meta's "strong disagreement" with the Court's application of law to the allegations would not satisfy the substantial-ground requirement. *Couch*, 611 F.3d at 633.

**3. Interlocutory appeal would not "materially advance the ultimate termination of the litigation."**

Even if Meta had met the first two requirements for interlocutory review under § 1292(b), its motion would flounder at the third: Meta cannot show that immediate review would "materially advance the ultimate termination of the litigation."

"[T]he 'materially advance' prong is satisfied when the resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *ICTSI Oregon*, 22 F.4th at 1131 (quoting *In re Cement*, 673 F.2d at 1027). That is not true here. This case has been pending for three years without discovery. Allowing Meta another bite at the apple on its Section 230 affirmative defense would only prolong matters further, delaying resolution of the factual disputes at the heart of this case—especially "given that [Meta] ha[s] also requested a stay in connection with the appeal." *Flores v. Velocity Express, LLC*, No. 12 Civ. 5790, 2015 WL 4463639, at *4 (N.D. Cal. July 21, 2015). This is not what § 1292(b) is designed to accomplish. *See Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 880 (C.D. Cal. 2012) ("[W]here 'the Court concludes certification would actually delay the resolution of the litigation, certification is not appropriate.'").

Meta's counterargument is inextricable from its apparent belief that interlocutory review will lead to reversal. *See* Mot. at 13 (warning of delay if "this case [were] to proceed applying incorrect legal standards" (cleaned up)). But for the reasons explained above, it is more likely that the Ninth Circuit would deny permission to appeal or, at most, would exercise jurisdiction and affirm. In either scenario, certification "would have delayed the termination of this case" by months (if not years). *Hanni v. Am. Airlines, Inc.*, No. 08 Civ. 732, 2008 WL 5000237, at *7 (N.D. Cal. Nov. 21, 2008); *see also Villarreal v. Caremark LLC*, 85 F. Supp. 3d 1063, 1071 & n.5 (D. Ariz. 2015) (criticizing similar argument as "speculation built upon several assumptions").

Meta's position also rests on the false premise that the parties' dispute is best suited for appellate review at the pleading stage, without discovery, even where "[f]ull information . . . regarding Meta's processes and tools is not publicly available" and is "closely held" by Meta. TAC ¶ 108 n.24. In truth, prematurely elevating an issue concerning the sufficiency of the TAC's allegations would deny both this Court and the Ninth Circuit the ability to review the case on a fully developed record. *See Johnson v. Jones*, 515 U.S. 304, 309 (1995) (interlocutory appeal not only "threaten[s] [trial] proceedings with delay," but "also risks additional, and unnecessary, appellate court work either when it presents appellate courts with less developed records or when it brings them appeals that, had the trial simply proceeded, would have turned out to be

unnecessary"). By contrast, allowing cases to proceed in the ordinary course enables "the development of a factual record" that will "aid the appellate court in its consideration of the legal questions presented." *Cousineau v. Microsoft Corp.*, No. 11 Civ. 1438, 2012 WL 12847005, at *2 (W.D. Wash. Aug. 22, 2012); *see also James v. Walt Disney Co.*, No. 23 Civ. 2500, 2024 WL 664811, at *2 (N.D. Cal. Feb. 16, 2024) ("Where complete facts are in need of development, certification under § 1292(b) is not appropriate."). If Meta wishes to prove its side of the parties' "quintessential factual disagreement," Order at 8, it remains free to move for summary judgment at the appropriate time.

Finally, Meta again insists that its arguments as to this requirement have "particular force" under its broad account of Section 230's protections. Mot. at 14. But ultimately, as the Ninth Circuit (and this Court) have repeatedly and correctly held, Section 230 is an affirmative defense—and Meta's inability to conclusively establish its applicability at the pleading stage is unremarkable. *See, e.g.*, *Calise*, 103 F.4th at 738 & n.1; Order at 4, 9; *supra* at 8. Because Meta has not satisfied any of the three statutory requirements for a departure from the final judgment rule—and because, at bottom, discovery in this case should commence—the Court should deny the motion.

**B. Meta Independently Fails to Establish That a New Stay is Warranted**

Meta further asks the Court to stay all proceedings pending the resolution of its motion to certify (and, if certification is granted and the Ninth Circuit accepts it, the resolution of its ensuing appeal). *See* ECF 131. Of course, if the Court declines to certify an appeal (as it should), a stay should be denied. But even if the Court were to certify its Order, Meta identifies no sufficient basis for an additional stay. Whatever standard the Court applies, Meta will not face any hardship from proceeding in the ordinary course, Dr. Forrest and innocent victims would suffer under a stay, and the normal administration of justice militates against further delay. Discovery should commence.

**1. An additional stay is unwarranted under any standard.**

Courts in this Circuit are split on the standard governing stays. Some apply the four-part standard employed for adjudicating preliminary injunctions, which requires a "strong showing [by the stay applicant] that he is likely to succeed on the merits," a showing of "irreparabl[e] injur[y] absent a stay," consideration of "whether issuance of the stay will substantially injure the other

parties interested in the proceeding," and evaluation of "where the public interest lies." *E.g.*, *Vitol*, 2022 WL 583998, at *4 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 770-71 (1987)). Other courts have applied a less exacting standard, under which a party seeking a stay must demonstrate "hardship or inequity . . . if the case is allowed to go forward," address "the possible damage which may result from the granting of a stay," and consider "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Kuang v. U.S. Dep't of Def.*, No. 18 Civ. 3698, 2019 WL 1597495, at *2 (N.D. Cal. Apr. 15, 2019) (alteration omitted).

Because a stay is clearly unwarranted under either standard, Dr. Forrest will address Meta's Stay Motion under the latter, more permissive standard.[5]

**2. Meta will not suffer "hardship or inequity" absent a stay.**

Meta does not show that it will suffer "hardship or inequity" if discovery moves forward. Meta yet again points to the Ninth Circuit's statement in *Roommates.com* that Section 230 must be interpreted to protect "websites . . . from having to fight costly and protracted legal battles." Stay Mot. at 1, 14 (quoting *Roommates.com*, 521 F.3d at 1175); *see also* Stay Mot. at 2. But *Roommates.com* is even further afield here: the case simply had nothing to do with stays. And to the extent Meta complains of expenses related to routine discovery, such expenses are not a sufficient reason to warrant a stay. *See, e.g.*, *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' . . . ."); *D & D Mktg., Inc.*, 2017 WL 5974248, at *6 (holding "mere litigation expense, even substantial and unrecoupable cost" insufficient for stay pending § 1292(b) appeal); *cf. House v. NCAA*, No. 20 Civ. 3919, 2021 WL 4924776, at *1 (N.D. Cal. Feb. 25, 2021) ("Defendants have presented no evidence showing that they would suffer

---

[5] If the Court does consider the more rigorous standard, Meta is unlikely to succeed on the merits of its claim for the reasons the Court identified in its Order, as well as the reasons articulated above in Section IV.A.2. *See Vitol*, 2022 WL 583998, at *4 (granting § 1292(b) certification but denying stay of discovery because "[f]or the same reason the court previously denied defendants' motion to dismiss, the court concludes defendants are unlikely to succeed on the merits."); *Bowen v. Target Corp.*, No. 16 Civ. 2587, 2021 WL 4860689, at *4 (C.D. Cal. Sept. 17, 2021) (same).

hardship or inequity if they are required to conduct document discovery" while awaiting an appellate decision.). Indeed, "every party seeking a stay pending appeal faces the possibility of incurring additional litigation expenses." *Bowen*, 2021 WL 4860689, at *4 (granting § 1292(b) certification but denying stay). Meta has identified no case holding that routine litigation expenses incurred pending a Section 230 appeal warrant special treatment. That is because no such rule exists.

**3. Dr. Forrest and others would be harmed by a stay.**

By contrast, Dr. Forrest and members of the Australian public would suffer harm from a new stay. Meta's scam ads "started running in 2019 and have not stopped to this day, despite this lawsuit having been pending for [nearly three] years. In fact, their number appears to be growing." TAC ¶ 2. Meta's conduct is not only injurious to Dr. Forrest—it has "ruined the lives of countless Australians." *Id.* ¶ 6; *see Dependable Highway Exp., Inc.*, 498 F.3d at 1066 (considering "possibility that the stay will work damage to some one else" (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936))). Thus, Dr. Forrest seeks injunctive relief, *see* TAC, Prayer for Relief, ¶ 4, and "stays are disfavored where, as here, the plaintiff seeks an award of injunctive relief" to prevent ongoing harm. *Pedro v. Millenium Prods., Inc.*, No. 15 Civ. 5253, 2016 WL 3029681, at *6 (N.D. Cal. May 27, 2016) (citing *Lockyer v. Mirant Corp.*, 398 F. 3d 1098, 1112 (9th Cir. 2005)); *accord, e.g.*, *K.H.B. by and through K.D.B. v. UnitedHealthcare Ins. Co.*, No. 18 Civ. 4175, 2018 WL 4913666, at *4 (N.D. Cal. Oct. 10, 2018); *Craftwood II, Inc. v. Tomy Int'l, Inc.*, No. 12 Civ. 1710, 2013 WL 12140946, at *3 (C.D. Cal. Nov. 15, 2013) (denying stay where plaintiff requested injunctive relief "including ordering [d]efendant to not send further junk faxes, to adopt education and training initiatives, and to place on its website warnings notifying consumers of the law"). Meta's claim that Dr. Forrest "seeks money damages, which weighs in favor of a stay," Stay Mot. at 3, blatantly ignores the overarching goal of this litigation, *see* TAC ¶ 17 ("Above all else, Dr. Forrest wants these Scam Ads to *stop* . . . ." (emphasis in original)).

Meta further contends that a stay will cause no harm because "[t]his case is still in its early stages." Stay Mot. at 2. But Meta made the same argument over two years ago, when it moved (unsuccessfully) for a stay in state court. *See* Mot. to Stay at 9, *Forrest v. Facebook*, No. 21 Civ.

5055 (Cal. Super. Ct. San Mateo Apr. 8, 2022). Meta now notes that "no documents have been exchanged." Stay Mot. at 2. But that is because Meta refused to respond to Dr. Forrest's initial discovery requests pending its state court demurrer (and, thereafter, failed to serve sufficient initial disclosures). *See supra* at 2-3; *cf. Hain Celestial Grp.*, 2012 WL 4364588, at *5 (denying stay because "[f]or much of this litigation, [defendant] has unilaterally imposed a stay of discovery").

In addition, Meta perceives "no risk of evidence becoming stale, as Meta previously explained." Stay Mot. at 3. But the 18-month-old argument that Meta cites relied on its preservation and disclosure obligations in the Australian proceedings, *see* ECF 46 at 16-18, which are no longer ongoing, *see* Stay Mot. at 1. While Dr. Forrest expects that Meta is complying with its preservation obligations, there remains a risk that memories will fade and relevant records will be lost or accidentally destroyed. *See, e.g.*, *Lal v. Cap. One Fin. Corp.*, No. 16 Civ. 6674, 2017 WL 282895, at *3 (N.D. Cal. Jan. 23, 2017). Simply put, while Meta has not identified any "hardship or inequity" beyond routine discovery costs, Dr. Forrest (and other non-parties) will continue to face prejudice the longer the case is stalled.

**4. The "orderly course of justice" does not support a stay.**

Finally, the "orderly course of justice" weighs against a further stay. *Lockyer*, 398 F. 3d at 1111. This matter is nearly three years old; a stay "would require both parties to simply sit and wait for months on the sidelines of their own action" and "would foreclose any possibility of the parties resolving their dispute in a timely fashion." *Dister v. Apple-Bay East, Inc.*, No. 07 Civ. 1377, 2007 WL 4045429, at *5 (N.D. Cal. Nov. 15, 2007). This Court correctly identified a "factual dispute regarding whether Meta's ad systems . . . themselves contributed to the content of the ads, including to the aspects of the content that are allegedly illegal." Order at 8-9; *see supra* at 6-8, 12-13. Discovery will allow the parties to develop the factual record needed to resolve (and/or appeal) their dispute. *See supra* at 14-15.

Meta's primary counterargument is that "the Court may be called upon to resolve potential discovery disputes." Stay Mot. at 3. But this is far from inevitable, and if such disputes arise, the Court can manage its docket accordingly; such speculative concerns are hardly sufficient to upset the normal administration of justice in a civil case. *See, e.g.*, *Research Corp. Techs. Inc. v. Eli Lilly*

*& Co.*, No. 16 Civ. 191, 2017 WL 9565409, at *2 (D. Ariz. May 9, 2017) (declining to grant motion for stay based on "conceivable discovery disputes[, ]should they even arise").

Finally, the possibility that the Ninth Circuit could rule in favor of Meta on an interlocutory appeal (if such an appeal is certified and accepted) does not require a stay. Even courts certifying case-dispositive interlocutory appeals have denied stays pending those appeals. *See, e.g.*, *D & D Mktg., Inc.*, 2017 WL 5974248, at *3; *Hain Celestial Grp.*, 2012 WL 4364588, at *4 (where dismissal of all claims was "one possible outcome" of appeal, granting certification but denying stay); *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 512 (C.D. Cal. 1982) (same).[6]

## V. CONCLUSION

The Court should deny Meta's motions in their entirety. If the Court grants Meta's request for § 1292(b) certification, the Court should nonetheless deny Meta's request for a stay. Finally, if the Court grants both motions, the Court should permit limited discovery pending the § 1292 application to the Ninth Circuit, and, if granted, the interlocutory appeal.

[6] At minimum, even if the Court were to grant both of Meta's motions, it should allow the parties to engage in limited discovery. Just as the Court partially lifted the stay pending the Australian proceedings to permit the filing of the TAC and Rule 12 motion practice, *see* ECF 95, a partial stay could enable the case to move forward without implicating some of the burdens asserted by Meta (unavailing though they may be). For instance, the Court could permit the parties to propound requests for production of documents and interrogatories, and require written responses and objections to the same; require Meta to supplement its initial Rule 26(a) disclosures pursuant to the Court's January 2, 2023 order, *see* ECF 42; and require the parties to file a Stipulated Order Regarding Discovery of Electronically Stored Information ("ESI").

Dated: July 23, 2024
Washington, DC

*/s/ Joshua Matz*

**HECKER FINK LLP**
Joshua Matz*
jmatz@heckerfink.com
Patrick Balke*
pbalke@heckerfink.com
1050 K Street NW | Suite 1040
Washington, DC 20001
T: 212.763.0883

John Quinn*
jquinn@heckerfink.com
Mark Weiner*
mweiner@heckerfink.com
Amit Jain*
ajain@heckerfink.com
Jocelyn Hassel*
jhassel@heckerfink.com
350 Fifth Avenue, 63rd Floor
New York, NY 10118
T: 212.763.0883

**BAILEY & GLASSER LLP**
Leslie Brueckner (SBN 140968)
lbrueckner@baileyglasser.com
1999 Harrison Street, Suite 660
Oakland, CA 94612
T: 510.272.8000
F: 510.463.0291

Elizabeth Ryan*
eryan@baileyglasser.com
John Roddy*
jroddy@baileyglasser.com
176 Federal Street, 5th Floor
Boston, MA 02110
T: 617.439.6730
F: 617.951.3954

Katherine E. Charonko*
kcharonko@baileyglasser.com
209 Capitol Street
Charleston, WV 25301
T: 304.345.6555
F: 304.342.1110

Elizabeth L. Stryker*
estryker@baileyglasser.com
94 Long Street, Suite 200
Westover, WV 26501
T: 304.594.0087
F: 304.594.9709

** admitted pro hac vice*

**DEREK G. HOWARD LAW FIRM, INC.**
Derek G. Howard (SBN 118082)
derek@derekhowardlaw.com
Ashley M. Romero (SBN 286251)
ashley@derekhowardlaw.com
42 Miller Avenue
Mill Valley, CA 94941
T: 415.432.7192
F: 415.524.2419

*Attorneys for Plaintiff Dr. Andrew Forrest*