Karen L. Dunn (*pro hac vice*)
kdunn@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

Jacob M. Heath (SBN: 238959)
jheath@orrick.com
**ORRICK, HERRINGTON &**
  **SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

Walter F. Brown Jr. (SBN: 130248)
wbrown@paulweiss.com
Meredith R. Dearborn (SBN: 268312)
mdearborn@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

*Attorneys for Defendant Meta Platforms, Inc.*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DR. ANDREW FORREST,<br><br>       Plaintiff,<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>       Defendant. | Case No. 22-cv-03699-PCP<br><br>**DEFENDANT META PLATFORMS, INC.'S COMBINED REPLY IN SUPPORT OF MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B) OF THE COURT'S ORDER GRANTING IN PART MOTION TO DISMISS AND MOTION TO STAY**<br><br>Date: August 22, 2024<br>Time: 10:00 am<br>Dept.: Courtroom 8, 4th Floor<br>Judge: Hon. P. Casey Pitts |

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES .................................................................................................. i

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT ........................................................................................................... 2

     A.      The Court's Order Should Be Certified for Interlocutory Appeal          2

          1.      The Order Raises a Controlling Question of Law ...................................... 2

          2.      There Are Substantial Grounds for Difference of Opinion ........................ 9

          3.      Certification Will Materially Advance the Ultimate Termination of the Litigation ........................................................................................... 13

     B.      A Stay Pending Interlocutory Appeal Is Warranted          15

III.    CONCLUSION ...................................................................................................... 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ali* v. *JP Morgan Chase Bank*,
5
   2014 WL 12691084 (N.D. Cal. Mar 10, 2014) ...................................................................... 17

6
*United States* v. *Allergan, Inc.*,
7
   46 F.4th 991 (9th Cir. 2022) ....................................................................................................... 4

8
*Amylin Pharms., Inc.* v. *Eli Lilly & Co.*,
   456 F. App'x 676 (9th Cir. 2011) ............................................................................................. 16

9
*Andrade Rico* v. *Beard*,
10
   2019 WL 4127206 (E.D. Cal. Aug. 30, 2019) .......................................................................... 16

11
*Ass'n of Irritated Residents* v. *Fred Schakel Dairy*,
   634 F. Supp. 2d 1081 (E.D. Cal. 2008) ................................................................................... 15
12

13
*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007) .................................................................................................................. 16

14
*Best Carpet Values, Inc.* v. *Google, LLC*,
15
   2021 WL 4355337 (N.D. Cal. Sept. 24, 2021) .......................................................................... 4

16
*Best Carpet Values, Inc.* v. *Google, LLC*,
   2022 WL 22843012 (N.D. Cal. May 2, 2022) ........................................................................... 4
17

18
*Best Carpet Values, Inc.* v. *Google, LLC*,
   90 F.4th 962 (9th Cir. 2024) ...................................................................................................... 4

19
*Brown* v. *Hain Celestial Grp., Inc.*,
20
   2012 WL 4364588 (N.D. Cal. Sept. 24, 2012) ........................................................................ 18

21
*Bruno* v. *Potts*,
   2018 WL 3207908 (N.D. Cal. June 29, 2018) ........................................................................ 16
22

23
*Calise* v. *Meta Platforms, Inc.*,
   103 F.4th 732 (9th Cir. 2024) ..................................................................................... 8, 9, 10, 11

24
*Callahan* v. *PeopleConnect, Inc.*,
25
   2022 WL 2132912 (N.D. Cal. June 14, 2022) .......................................................................... 7

26
*Casas* v. *Victoria's Secret Stores, LLC*,
   2015 WL 13446989 (C.D. Cal. Apr. 9, 2015) ........................................................................... 5

27
*Cascades Comp. Innovation, LLC* v. *RPX Corp.*,
28
   2014 WL 900376 (N.D. Cal. Mar. 4, 2014) ............................................................................ 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Cement Antitrust Litig. (MDL No. 296)*,
    673 F.2d 1020 (9th Cir. 1981) .................................................................................... 2, 9

*CFPB* v. *D&D Mktg., Inc.*,
    2017 WL 5974248 (N.D. Cal. Mar. 21, 2017) ............................................................... 18

*City of Oakland* v. *Wells Fargo & Co.*,
    14 F.4th 1030 (9th Cir. 2021) (en banc) ........................................................................ 4

*CMAX, Inc.* v. *Hall*,
    300 F.2d 265 (9th Cir. 1962) ........................................................................................ 16

*Couch* v. *Telescope Inc.*,
    611 F.3d 629 (9th Cir. 2010) ........................................................................................ 4

*Cousineau* v. *Microsoft Corp.*,
    2012 WL 12847005 (W.D. Wash. Aug. 22, 2012) ........................................................ 15

*CYBERsitter, LLC* v. *Google Inc.*,
    905 F. Supp. 2d 1080 (C.D. Cal. 2012) ......................................................................... 8

*Doe #1* v. *Twitter, Inc.*,
    2023 WL 3220912 (9th Cir. May 3, 2023) .................................................................... 8

*Doe* v. *Mindgeek USA Inc.*,
    574 F. Supp. 3d 760 (C.D. Cal. 2021) ....................................................................... 7, 12

*Does 1-6* v. *Reddit, Inc.*,
    51 F.4th 1137 (9th Cir. 2022) ..................................................................................... 6, 7

*Dyroff* v. *Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) .................................................................................... 8, 10

*Facebook Inc.* v. *Namecheap Inc.*,
    2021 WL 961771 (D. Ariz. Mar. 15, 2021) ................................................................. 13

*In re Facebook Simulated Casino-Style Games Litigation*,
    2024 WL 2287200 (9th Cir. May 21, 2024) .................................................................. 7

*Fair Hous. Council of San Fernando Valley* v. *Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) (en banc) ............................................................. *passim*

*Finder* v. *Leprino Foods Co.*,
    2017 WL 1355104 (E.D. Cal. Jan. 20, 2017) .............................................................. 16

*Flores* v. *Velocity Express*,
    2015 WL 4463639 (N.D. Cal. July 21, 2015) ............................................................. 13

*Force* v. *Facebook*,
    934 F.3d 53 (2d Cir. 2019) ...................................................................................... 11, 12

*Gonzalez* v. *Google*,
2 F.4th 871 (9th Cir. 2021) ............................................................... 11

*Gonzalez* v. *Google*,
598 U.S. 617 (2023) ........................................................................... 11

*Goodyear Tire & Rubber Co.* v. *McDonnell Douglas Corp.*,
820 F. Supp. 503 (C.D. Cal. 1992) ................................................... 18

*Hanni* v. *American Airlines*,
2008 WL 5000237 (N.D. Cal. Nov. 21, 2008) ................................. 14

*Harris* v. *Procter & Gamble Cellulose Co.*,
73 F.3d 321 (11th Cir. 1996) .............................................................. 5

*Hart* v. *Charter Commc'ns, Inc.*,
2019 WL 7940684 (C.D. Cal. Aug. 1, 2019) ................................... 16

*Hopkins* v. *Cornerstone America*,
545 F.3d 338 (5th Cir. 2008) .............................................................. 5

*United States ex rel. Huangyan Import & Export Corp.* v.
*Nature's Farm Products, Inc.*,
370 F. Supp. 2d 993 (N.D. Cal. 2005) ............................................. 13

*J.B.* v. *Craigslist, Inc.*,
2022 WL 17729414 (9th Cir. Feb. 28, 2022) ..................................... 8

*James* v. *Walt Disney Co.*,
2024 WL 664811 (N.D. Cal. Feb. 16, 2024) .................................... 15

*Johnson* v. *Starbucks Corp.*,
2020 WL 2039054 (E.D. Cal. Apr. 28, 2020) .................................. 18

*Kimzey* v. *Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016) ................................................... 8, 9, 10

*Klayman* v. *Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014) .......................................................... 6

*Krangel* v. *Crown*,
791 F. Supp. 1436 (S.D. Cal. 1992) ................................................. 10

*Kuang* v. *U.S. Dep't of Def.*,
2019 WL 1597495 (N.D. Cal. Apr. 15, 2019) .................................. 15

*Landis* v. *North American Co.*,
299 U.S. 248 (1936) ........................................................................... 15

- iii -

DEFENDANT META PLATFORMS, INC.'S COMBINED REPLY ISO MOTION FOR CERTIFICATION
UNDER 28 U.S.C. § 1292(B) AND MOTION TO STAY - CASE NO. 22-CV-03699-PCP

*F.T.C.* v. *LeanSpa, LLC*,
    920 F. Supp. 2d 270 (D. Conn. 2013) ....................................................................... 8

*Marshall's Locksmith Serv. Inc.* v. *Google, LLC*,
    925 F.3d 1263 (D.C. Cir. 2019) .................................................................... 10, 11

*MRW, Inc.* v. *Big-O Tires, LLC*,
    2009 WL 1069197 (E.D. Cal. Feb. 20, 2009) ........................................................ 18

*Nat'l Ass'n of Afr.-Am. Owned Media* v. *Charter Commc'ns, Inc.*,
    2016 WL 10647193 (C.D. Cal. Dec. 12, 2016) ..................................................... 13

*Nestle Purina PetCare Co.* v. *Blue Buffalo Co.*,
    2015 WL 1782661 (E.D. Mo. Apr. 20, 2015) ......................................................... 8

*Ottesen* v. *Hi-Tech Pharms, Inc.*,
    2024 WL 589089 (N.D. Cal. Feb. 13, 2024) ......................................................... 16

*Peck* v. *County of Orange*,
    528 F. Supp. 3d 1100 (C.D. Cal. 2021) ................................................................ 16

*Pirani* v. *Slack Techs., Inc.*,
    13 F.4th 940 (9th Cir. 2021) .................................................................................. 4

*Pirani* v. *Slack Techs., Inc.*,
    2020 WL 7061035 (N.D. Cal. June 5, 2020) .......................................................... 4

*Premier Nutrition, Inc.* v. *Organic Food Bar, Inc.*,
    475 F. Supp. 2d 995 (C.D. Cal. 2007) ................................................................. 16

*Reese* v. *BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) ...................................................................... *passim*

*Rieve* v. *Coventry Health Care*,
    870 F. Supp. 2d 856 (C.D. Cal. 2012) ................................................................. 13

*Sams* v. *Yahoo! Inc.*,
    713 F.3d 1175 (9th Cir. 2013) .......................................................................... 5, 12

*Scheid* v. *PNC Bank, N.A.*,
    2022 WL 17430306 (9th Cir. Dec. 6, 2022) .......................................................... 5

*In re Social Media Adolescent Addiction/*
    *Personal Injury Products Liability Litigation*,
    2024 WL 1205486 (N.D. Cal. Feb. 2, 2024) .......................................................... 7

*Sweet* v. *City of Mesa*,
    2022 WL 912561 (D. Ariz. Mar. 29, 2022) ......................................................... 16

*Swift* v. *Zynga Game Network, Inc.*,
  2010 WL 4569889 (N.D. Cal. Nov. 3, 2010) ............................................................................ 8

*In re Text Messaging Antitrust Litig.*,
  630 F.3d 622 (7th Cir. 2010) ................................................................................................... 5

*In re Trump*,
  874 F.3d 948 (6th Cir. 2017) ................................................................................................... 5

*Turo Inc.* v. *City of Los Angeles*,
  2020 WL 4287583 (C.D. Cal. July 27, 2020) .......................................................................... 7

*Twitter, Inc.* v. *Taamneh*,
  598 U.S. 471 (2023) ............................................................................................................... 11

*Villareal* v. *Caremark*,
  85 F. Supp. 3d 1063 (D. Ariz. 2015) ..................................................................................... 14

*FERC* v. *Vitol, Inc.*,
  2022 WL 583998 (E.D. Cal. Feb. 25, 2022) .......................................................................... 17

*Wilton Miwok Rancheria* v. *Salazar*,
  2010 WL 693420 (N.D. Cal. Feb. 23, 2010) .......................................................................... 13

**Statutes**

28 U.S.C. § 1292(b) ................................................................................................................... *passim*

47 U.S.C. § 230 .......................................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 502(d) ..................................................................................................................... 17

1

## I.  INTRODUCTION

Section 230 of the Communications Decency Act, 47 U.S.C. § 230, is "an immunity stat-ute" that protects "websites not merely from ultimate liability, but from having to fight costly and protracted legal battles."  *Fair Hous. Council of San Fernando Valley* v. *Roommates.Com, LLC*, 521 F.3d 1157, 1174–75 (9th Cir. 2008) (en banc).  That is why Section 230 is often applied as a matter of law on a motion to dismiss.  At this stage, Meta accepts Dr. Forrest's allegations as true; the only question for the Ninth Circuit is whether the facts as pleaded—which show that the adver-tiser, not Meta, provides the "components" of the allegedly illegal advertisements—demonstrate that Meta is entitled to Section 230 immunity.  Consistent with the principles animating this im-munity statute, the Ninth Circuit should answer this question now rather than later.

As Meta explained in its motion for certification, Dkt. 130 ("Mot."), this Court's order sat-isfies all of the requirements for interlocutory appeal under 28 U.S.C. § 1292(b).  The availability of Section 230 immunity for websites using ad optimization tools is (1) a novel legal question, (2) on which there is a substantial ground for a difference of opinion, and (3) resolution of this question would be outcome-determinative.  A stay pending interlocutory appeal is also warranted because Meta will unquestionably be drawn into a "costly and protracted legal battle[]" where the Ninth Circuit may reach a different conclusion on the dispositive immunity issue.  *See* Dkt. 131 at 2.

Dr. Forrest's contrary arguments are unpersuasive.  First, Dr. Forrest repeatedly insists that there is a dispute of fact concerning precisely how Meta's advertisement tools work.  But as Meta has made clear, Meta accepts as true all of the allegations of the complaint for purposes of this motion and appeal.  What remains is a purely legal question: whether the allegations in the com-plaint, taken as true, demonstrate that Section 230 immunity applies.  Dr. Forrest is forced to take the untenable position that certification under Section 1292(b) is never appropriate on the question of what a plaintiff must allege in order to state a claim under a given legal standard, but he cites no Ninth Circuit authority for that sweeping proposition, and numerous cases contradict it.

Second, Dr. Forrest ignores that substantial grounds for disagreement are present where the legal issue is "novel," and precedent demonstrates that "fair-minded jurists might reach

1  contradictory conclusions." *Reese* v. *BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir.

2  2011).  And third, Dr. Forrest does not contest that the Ninth Circuit's reversal of the denial of the

3  motion to dismiss could materially advance the ultimate termination of this litigation.

4       Dr. Forrest's arguments against a stay pending appeal fare no better.  He ignores the hard-

5  ship imposed on defendants for litigating cases in which they may have immunity and overstates

6  the impact to him of a stay in a case where he seeks money damages.

7       Meta's motions for certification of an interlocutory appeal and a stay should be granted.

8  ## II.    ARGUMENT

9  ### A.    The Court's Order Should Be Certified for Interlocutory Appeal

10       All of the elements for certification of this Court's order denying in part Meta's motion to

11  dismiss are satisfied: (1) the order "involves a controlling question of law"; (2) "there is substantial

12  ground for difference of opinion" on that question; and (3) "an immediate appeal from the order

13  may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Dr.

14  Forrest's contrary arguments lack merit.

15  #### 1.    The Order Raises a Controlling Question of Law

16       As Meta has explained, the controlling question of law raised by the Court's order is

17  whether, taking the allegations in the operative complaint as true, Section 230 bars Dr. Forrest's

18  state-law tort claims.  Dr. Forrest does not contest that the question is "controlling," in that its res-

19  olution "could materially affect the outcome of litigation in the district court." *In re Cement Anti-*

20  *trust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981) (cleaned up).  And the question is

21  one of law, because it involves the sufficiency of a complaint under a federal statute.

22       Dr. Forrest argues that the Court's order presents no "question of law" because a "quintes-

23  sential factual disagreement" exists and Meta is "refus[ing] to accept" his allegations concerning

24  the operation of Meta's advertising tools.  Opp. 6–7 (cleaned up). But Meta could not have said any

25  more clearly that it "takes the allegations in the [operative complaint] as true." Mot. 7.  It is thus

26  unsurprising that, beyond baldly stating that factual disagreements exist, Dr. Forrest cannot actually

27  describe any way in which Meta is quibbling with his allegations.  Meta repeats here: Meta does

28  <u>not</u> dispute, for present purposes, that its ad development tools do what the complaint alleges.  For

example, Meta accepts Dr. Forrest's allegations that its tools "take[] an advertiser's ad components, such as images, videos, text, [and] audio[,] and then 'mix[] and match[] them' to change the look of an ad to improve its performance." TAC ¶ 120 (cited at Opp. 7). Meta further accepts that its tools can "add music" or "3D animation" and use "generative AI." TAC ¶¶ 123–24 (cited at Opp. 7). And Meta accepts that its tools "optimize[] the ad creative for each person viewing the ads." TAC ¶ 121.

To the extent Dr. Forrest claims there is a factual dispute as to whether Meta "contributed to the <u>content</u> of the ads," Opp. 10 (emphasis added; cleaned up), that is incorrect. Dr. Forrest clearly alleges the <u>advertiser</u>, not Meta, supplies the "ad components." TAC ¶ 120. Instead, all that Dr. Forrest alleges (beyond conclusory proclamations) is that Meta makes unspecified "optimizations," like "mix[ing] and match[ing]," of those "ad components," designed to "improve" ad "performance." TAC ¶¶ 120–21; *see also id.* ¶¶ 123, 125, 127, 128, 129 (Meta's tools make the ad "successful," extend "reach," and improve "performance").[1] Dr. Forrest never alleges that Meta actually creates or supplies the images that allegedly misappropriated his name or likeness. In fact, he admits that the allegedly unlawful content violates Meta's express policies. *See id.* ¶¶ 72, 74, 170.

The legal question raised by the Court's order is thus, as Meta said, "whether an interactive computer service provider's alleged provision of tools to advertisers that automatically optimize the appearance of an advertiser's ad components precludes immunity from suit under Section 230 related to an advertiser's use of the tools to publish ads containing illegal content." Mot. 7. That question does not "mischaracterize[] Dr. Forrest's factual allegations," Opp. 7—it summarizes them accurately.[2] And this question is a squarely legal one about the scope of Section 230: namely,

---

[1] The Court should, and did, ignore allegations that have nothing to do with alleged changes to the unlawful content—*i.e.*, the alleged misappropriation of Dr. Forrest's name and likeness. *See, e.g.*, TAC ¶ 124 (Meta's tools "can add music").

[2] If anything, it is Dr. Forrest who overstates the allegations in claiming that Meta's ad tools "go well beyond claims of automated optimization," Opp. 7, and that Meta "co-created" the ads' content, *id.* at 1; *see also id.* at 6, 12 & n.4. The complaint alleges that Meta's tools "<u>automatically optimize</u>[] ads to versions the 'audience is more likely to interact with.'" TAC ¶ 123 (emphasis

what a plaintiff must allege in order to state a claim for material contribution to illegal content under this Circuit's precedents.

Dr. Forrest insists that any order that "turns on the assessment of the pleadings" is unsuitable for interlocutory appeal. Opp. 6–7 (citation omitted). But he cites no Ninth Circuit authority in support of that argument. And the Ninth Circuit routinely accepts interlocutory appeals from denials of motions to dismiss to address the application of a legal rule to the factual circumstances raised in the complaint. *E.g.*, *City of Oakland* v. *Wells Fargo & Co.*, 14 F.4th 1030, 1032 (9th Cir. 2021) (en banc) (reversing partial denial of motion to dismiss Fair Housing Act claims); *Pirani* v. *Slack Techs., Inc.*, 13 F.4th 940, 945 (9th Cir. 2021) (interlocutory appeal from partial denial of motion to dismiss securities case on standing grounds), *vacated and remanded sub nom. Slack Techs., LLC* v. *Pirani*, 598 U.S. 759 (2023); *United States* v. *Allergan, Inc.*, 46 F.4th 991, 993 (9th Cir. 2022) (reversing denial of motion to dismiss False Claims Act suit).[3]

*Best Carpet Values, Inc.* v. *Google, LLC* is instructive. There, the district court denied Google's motion to dismiss a claim of trespass to chattels relating to Google ads, crediting the plaintiff's allegations that the ads "obscured and blocked their websites." 2021 WL 4355337, at *6 (N.D. Cal. Sept. 24, 2021). The court later certified its prior order under Section 1292(b) because the order raised the controlling legal question whether a plaintiff states a claim for trespass to chattels by alleging functional harm or disruption to a website. 2022 WL 22843012, at *2–3 (N.D. Cal. May 2, 2022). The Ninth Circuit then analyzed the sufficiency of the complaint's allegations and reversed the denial of the motion to dismiss. 90 F.4th 962, 968–970 (9th Cir. 2024); *see also Pirani* v. *Slack Techs., Inc.*, 2020 WL 7061035, at *1–2 (N.D. Cal. June 5, 2020)

added). Dr. Forrest cannot avoid the consequence of his own allegations through such recharacterization.

[3] Dr. Forrest cites *Couch* v. *Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010), *see* Opp. 7, but that case does not stand for the broad proposition that "factbound orders denying motions to dismiss" are inappropriate for interlocutory appeal, Opp. 1. *Couch* did not even address the presence of a controlling legal question; instead, the Ninth Circuit dismissed the appeal for lack of a substantial ground for difference of opinion where defendants had "not provided a single case that conflicts with the district court's construction or application" of the relevant statute. 611 F.3d at 633–34. As described *infra* Part II.A.2, Meta has supplied those cases and raised a substantial ground for difference of opinion here.

1   (certifying decision where "the standing issue here is purely legal as the operative facts . . . are

2   undisputed"); *Casas* v. *Victoria's Secret Stores, LLC*, 2015 WL 13446989, at *2–4 (C.D. Cal.

3   Apr. 9, 2015) (certifying decision where dismissal of state-law pay claim based on facts "as alleged

4   in the FAC" was "fact-insensitive" legal question).[4]

5        Other courts of appeals also accept interlocutory appeals from denials of motions to dismiss

6   to decide "whether the complaint states a facially valid claim."  *In re Trump*, 874 F.3d 948, 951

7   (6th Cir. 2017); *see Harris* v. *Procter & Gamble Cellulose Co.*, 73 F.3d 321, 324, 343 (11th Cir.

8   1996) (interlocutory appeal from partial denial of motion to dismiss to decide whether factual alle-

9   gations, taken as true, stated claim for intentional infliction of emotional distress); *see also In re*

10  *Text Messaging Antitrust Litig.*, 630 F.3d 622, 625 (7th Cir. 2010) (Posner, J.) (allowing interloc-

11  utory appeal, from decision granting leave to amend complaint, in order "to apply a legal stand-

12  ard—the pleading standard set forth in *Twombly*—to a set of factual allegations taken as true for

13  purposes of the appeal").[5]

14       So too here.  Even if there will be a factual dispute later regarding the question of precisely

15  how Meta's advertising tools operate, the Court's order presents a purely legal issue: namely,

16  whether Section 230 bars Dr. Forrest's claims even taking the facts alleged in the complaint as true.

17       Dr. Forrest falls back on the refrain that Section 230 is an affirmative defense. *See* Opp. 8–

18  10.  But he makes no effort to explain how Meta "fails to reckon" with the standard of review for

19  affirmative defenses.  *Id.* at 8.  It is black-letter law that "the assertion of an affirmative defense

20  may be considered properly on a motion to dismiss where the allegations in the complaint suffice

21  to establish the defense." *Sams* v. *Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (cleaned up).

22  Section 230 "can still support a motion to dismiss if the statute's barrier to suit is evident from the

23

---

24  [4] The district court cases that Dr. Forrest cites for the proposition that a question turning on an
    assessment of the pleadings is unsuitable for interlocutory appeal, Opp. 6–7, contradict the author-

25  ities Meta cites here and, Meta respectfully submits, are contrary to the weight of Ninth Circuit
    authority.

26  [5] Appellate authorities at the summary-judgment stage likewise confirm that the application of legal

27  standards to admitted facts is a pure question of law suitable for interlocutory appeal.  *See, e.g.*,
    *Scheid* v. *PNC Bank, N.A.*, 2022 WL 17430306, at *1–2 (9th Cir. Dec. 6, 2022); *Hopkins* v. *Cor-*

28  *nerstone America*, 545 F.3d 338, 346 (5th Cir. 2008).

face of the complaint." *Klayman* v. *Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014). That is what Meta argues: even accepting the allegations as true, Section 230 bars his claims on the face of the complaint. Dr. Forrest's circular assertion that "the applicability of this affirmative defense is <u>not</u> established by the complaint," Opp. 10, simply assumes away the question at issue.

Dr. Forrest disagrees that Section 230 provides "immunity from suit," Opp. 8 (citing *Roommates*, 521 F.3d at 1174–75), but cannot dispute the Ninth Circuit's own words: "close cases . . . must be resolved <u>in favor of</u> immunity, lest [courts] cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties," 521 F.3d at 1174 (emphasis added). Meta does not, as Dr. Forrest claims, invoke *Roommates* for "broad statements of immunity." Opp. 8 (quoting *Barnes* v. *Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009)). *Roommates* should be read to mean precisely what it says: courts should interpret the statute to avoid "costly and protracted legal battles" and cutting "the heart out of section 230" in "close cases" where the allegations of material contribution to the illegality of the conduct rest only on "enhancement by implication or development by inference." 521 F.3d at 1174–75.[6] In *Roommates*, the website's comments field prompted subscribers' comments but did not urge them to input discriminatory preferences; the Ninth Circuit held that Section 230 precluded liability for users' discriminatory inputs in this field, as any claim that Roommates contributed to the illegality of that content was mere implication or inference. *Id.* This case presents a similar "enhancement by implication," *id.* at 1174: while "Dr. Forrest does not clearly allege how Meta's ad tools work or contribute to the challenged ads," Dkt. 121 at 8, he alleges Meta's tools "change the look of an ad to improve its performance" and "optimize[] ads to versions the 'audience is more likely to interact with'"—in each case, operating on ad components that are undisputedly supplied by third-party advertisers, TAC ¶¶ 120, 121, 123, 130.

---

[6] Although Dr. Forrest cites *Does 1-6* v. *Reddit, Inc.*, for its description of Section 230 as an "immunity from liability" rather than "immunity from suit," Opp. 8 (quoting 51 F.4th 1137, 1139 (9th Cir. 2022)), *Reddit* affirmed the district court's order granting a motion to dismiss, 51 F.4th at 1146.

Dr. Forrest also cites a string of cases in which "courts have repeatedly declined to certify orders rejecting Section 230 defenses." Opp. 8–9. But each of those cases is distinguishable:

- *In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation* did not analyze whether a "controlling question of law" existed. 2024 WL 1205486, at *2 (N.D. Cal. Feb. 2, 2024). Instead, in that complex, multidistrict litigation (with parallel litigation in state court), the court denied the motion as "premature" because other pending motions to dismiss raised issues that overlapped with the issues on which Section 1292(b) certification was sought. *Id.* at *1–2. The court's analysis does not apply to this single-plaintiff, single-defendant action.

- In *Callahan* v. *PeopleConnect, Inc.*, the court denied an untimely Section 1292(b) motion that was, unlike here, filed over five months after the court's order on the motion to dismiss. 2022 WL 2132912, at *5 (N.D. Cal. June 14, 2022). Furthermore, the question was "narrow in scope" such that, even if the movant prevailed, "that still would not guarantee it CDA immunity," *id.* at *6—unlike the admittedly "broad," Opp. 7, case-dispositive question here.

- In *In re Facebook Simulated Casino-Style Games Litigation*, the Ninth Circuit vacated its prior order granting interlocutory appeal because the district court had discussed and dismissed "theories of liability" but had not actually "ruled on the claims at issue" or dismissed any causes of action in the complaint. 2024 WL 2287200, at *2–3 (9th Cir. May 21, 2024). Here, by contrast, the Court did rule on the claims at issue: it dismissed certain of Dr. Forrest's claims while denying Meta's motion to dismiss others. Dkt. 121.

- In *Turo Inc.* v. *City of Los Angeles*, the court denied certification where it would be redundant because the appeal of the preliminary injunction motion raised the same issue, 2020 WL 4287583, at *5 (C.D. Cal. July 27, 2020), a circumstance that does not apply here. The court also concluded there was no substantial ground for difference of opinion because Ninth Circuit precedent had already rejected the plaintiff's Section 230 argument in an analogous context, *id.*—a feature that, as explained *infra* Part II.A.2, is not present here.

Nor is *Doe* v. *Mindgeek USA Inc.*, 574 F. Supp. 3d 760 (C.D. Cal. 2021) (subsequent history omitted), "particularly instructive," Opp. 9. *Mindgeek* was a putative class action alleging that pornographic website operators violated federal sex-trafficking and child-pornography laws. 574 F. Supp. 3d at 763. Dr. Forrest claims that *Mindgeek* presented "the same" question as this case, Opp. 9, but that is plainly untrue: the defendants there allegedly <u>encouraged</u> the posting of child pornography through developing tags and categories and soliciting users to provide unlawful content, 574 F. Supp. 3d at 770, similar to *Roommates*, *cf.* 521 F.3d at 1169–70. Here, Dr. Forrest's claims rest on tools that operate equally across all types of ads, whether scam or legitimate. TAC ¶¶ 119–35.

Likewise unavailing are the cases Dr. Forrest cites to argue that "courts have denied Section 230 motions to dismiss at the pleading stage." Opp. 10. The weight of Ninth Circuit authority grants Section 230 immunity at the pleading stage, not denies it. *E.g.*, *Calise* v. *Meta Platforms, Inc.*, 103 F.4th 732, 746 (9th Cir. 2024); *Dyroff* v. *Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1096–1101 (9th Cir. 2019); *Kimzey* v. *Yelp! Inc.*, 836 F.3d 1263, 1269–71 (9th Cir. 2016). In several of the cases cited by Dr. Forrest, the plaintiffs alleged that the defendants themselves created the relevant content—unlike here, where the allegedly illegal content was allegedly supplied by third-party bad actors and only "optimized" by Meta. *See supra* p. 3; *see also CYBERsitter, LLC* v. *Google Inc.*, 905 F. Supp. 2d 1080, 1086 (C.D. Cal. 2012) (plaintiff alleged that Google had "made untrue and misleading statements" in false ads concerning plaintiff; court noted that a provider "does not become liable . . . merely by augmenting online material"); *Swift* v. *Zynga Game Network, Inc.*, 2010 WL 4569889, at *5 (N.D. Cal. Nov. 3, 2010) (plaintiff alleged that Zynga was responsible for "creating or developing" actionable "special offers" by providing "free virtual currency to be used in Zynga games," in exchange for participation in offers, thereby "encourag[ing]" users to acquire virtual currency); *Nestle Purina PetCare Co.* v. *Blue Buffalo Co.*, 2015 WL 1782661, at *2, *10 (E.D. Mo. Apr. 20, 2015) (counterclaim-plaintiff alleged that advertising agency "designed and built" "false and disparaging advertising campaign," including by building website with false information). Even further afield, in the District of Connecticut's decision in *F.T.C.* v. *LeanSpa, LLC*, the court concluded that the complaint sufficiently alleged that the defendant was not "an interactive computer service provider" under Section 230 (a question that this Court has already decided in Meta's favor) and that the defendant had "coordinated directly" with codefendants to use affiliates' fake news sites to promote products (a far cry from the facts here). 920 F. Supp. 2d 270, 275–76 (D. Conn. 2013) (citations omitted).

Finally, Dr. Forrest acknowledges, as he must, that courts have "certified orders relating to Section 230 for interlocutory review." Opp. 10. He falsely states that Meta cites no "appellate" decisions involving interlocutory review under Section 1292(b) from Section 230 decisions. *Id.* That is simply untrue. *See Doe #1* v. *Twitter, Inc.*, 2023 WL 3220912, at *1–*2 (9th Cir. May 3, 2023) (cited at Mot. 8); *see also J.B.* v. *Craigslist, Inc.*, 2022 WL 17729414, at *1 (9th Cir. Feb. 28,

2022).  Dr. Forrest further dismisses Meta's cases as involving "pure questions of statutory inter-pretation" under Section 230. Opp. 10.  But certification under Section 1292(b) is not limited to questions of statutory interpretation.  In any event, assessment of whether ad development and optimization tools fall within the scope of Section 230 <u>does</u> involve interpretation of the statute: as Dr. Forrest admits, the Ninth Circuit's consideration of analogous questions in *Roommates* in-volved "a careful exegesis of the statutory language."  Opp. 8 (quoting *Barnes* v. *Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009)).  The question here is controlling, and it squarely presents an issue of law for appellate review.  *See Cement*, 673 F.2d at 1026.

## 2.   There Are Substantial Grounds for Difference of Opinion

Meta also has shown that there is a "substantial ground for difference of opinion" with the Court's decision, 28 U.S.C. § 1292(b), because the decision presents a "novel and difficult ques-tion[] of first impression," and "fair-minded jurists might reach contradictory conclusions," *Reese*, 643 F.3d at 688 (citation omitted).  No court has directly addressed the issue that Meta presents here, and Dr. Forrest cites no such case, but the Ninth Circuit and other courts have held that fea-tures of services that are available to all users but that can be used to adjust content or deliver harmful messages do not "materially contribut[e] to the unlawfulness of content." *Calise*, 103 F.4th at 744 (cleaned up). That "uncertainty provides a credible basis for a difference of opinion," *Reese*, 643 F.3d at 688 (cleaned up), and one Meta respectfully submits would be resolved in its favor.

Dr. Forrest does not argue that the Ninth Circuit (or any other court) has already decided whether Section 230 confers immunity on providers for ad development and optimization tools such as those alleged here.  Nor does he try to explain why the Ninth Circuit's decisions regarding the scope of Section 230 in related contexts do not indicate a substantial ground for difference of opinion. *See* Mot. 9–12 (discussing *Calise*, 103 F.4th 732; *Kimzey*, 836 F.3d 1263; *Roommates*, 521 F.3d 1157).  Instead, he merely repeats his arguments that the Court's decision here turned entirely on a factual disagreement.  *See* Opp. 11–13.  Neither assertion is responsive to Meta's argument—or even withstands scrutiny on its own terms.

Dr. Forrest first contends that Meta has not identified an issue on which fair-minded jurists may differ, because this Court relied on the Ninth Circuit's guidance that "a website helps to

develop unlawful content"—and therefore loses Section 230 immunity—"if it contributes materially to the alleged illegality of the conduct."  *Id.* at 12 (quoting Dkt. 121 at 8 (quoting *Calise*, 103 F.4th at 744)).  But courts have not settled on whether automated "optimization" tools are exempted from Section 230's immunity when an advertiser uses the tools to publish ads containing illegal content.  Meta's motion concerns that question.[7]

Dr. Forrest offers no response to the decisions cited in Meta's motion that demonstrate that reasonable judges could disagree on this issue and already have differed on the scope of the material-contribution test, particularly when it comes to tools that expand audiences or optimize content. In *Calise*, the Ninth Circuit concluded that allegations that Meta "'manipulated' its third-party ads to skew fraudulent content . . . by targeting certain advertisers" did not amount to material contribution, because Meta's "'solicitation' and 'assistance' for third-party advertisers" were offered to all advertisers; these "tools" were "neutral" even though allegedly "used for unlawful purposes." 103 F.4th at 745–46.  In *Kimzey*, the Ninth Circuit held that a website did not materially contribute to allegedly defamatory reviews by designing a "rating system" "based on rating inputs from third parties" that "reduces this information into a single, aggregate metric," 836 F.3d at 1269–70, even though that system determined what user reviews "will look like," TAC ¶ 132; *see Marshall's Locksmith Serv. Inc.* v. *Google, LLC*, 925 F.3d 1263, 1271 (D.C. Cir. 2019) (holding Section 230 immunity applied to a tool that converted location descriptions into map pinpoints).  Even in *Roommates*, the Ninth Circuit concluded that an open-ended prompt was a "neutral" tool entitled to immunity, even though it "encourages subscribers to provide <u>something</u> in response to the prompt." *Roommates*, 521 F.3d at 1172, 1174; *see also Dyroff* v. *Ultimate Software Grp., Inc.*, 934 F.3d

---

[7] Dr. Forrest takes issue with Meta's observations that the legal question may affect tools using "generative AI," as Dr. Forrest alleges here with respect to Meta's tools. Opp. 12 n.4; *see also* TAC ¶ 123. But that criticism confuses the question on appeal with a potential consequence of a court's answer. Whether a legal question affects other cases is an appropriate consideration in granting an interlocutory appeal. *See Krangel* v. *Crown*, 791 F. Supp. 1436, 1449 (S.D. Cal. 1992). And as Dr. Forrest acknowledges, Meta's appeal does not rest solely on his allegations of generative AI use; rather, the question concerns the applicability of Section 230 in the context of automated ad optimization tools. *See* Opp. 7. That this question may affect other alleged "generative AI" tools is a feature, not a bug, of the "substantial grounds for difference of opinion" prong of Section 1292(b).

1093, 1099 (9th Cir. 2019) ("recommendation and notification functions" were neutral tools that,

as in *Roommates*, "did not materially contribute . . . to the alleged unlawfulness of the content").

As previously noted, many decisions interpreting the material-contribution test were de-cided on appeals from motions to dismiss—notwithstanding those parties' limited opportunities for factual development and discovery. *See supra* Part II.A.1; *see also Marshall's Locksmith Serv.*, 925 F.3d at 1265. Equally important, and reflecting the grounds for disagreement on the controlling issue among reasonable jurists, several decisions drew separate opinions. *See Roommates*, 521 F.3d at 1183 (McKeown, J., concurring in part and dissenting in part) (arguing that if Google pub-lishes "responsive listings" for a user's query seeking discriminatory criteria, "Google is surely 'materially contributing to the alleged unlawfulness' of information created by third parties"); *Cal-ise*, 103 F.4th at 747 (R. Nelson, J., concurring) ("it is suspect whether—under a view that § 230(c) was intended to incorporate common law concepts and bring them online—§ 230(c)(1) should bar Plaintiffs' claims, at least at the motion to dismiss stage").

Other divided opinions further demonstrate that "fair-minded jurists might reach contradic-tory conclusions" on the reach of Section 230 immunity to ad optimization tools. *Reese*, 643 F.3d at 688 (citation omitted). In *Gonzalez* v. *Google*—yet another instance of appellate review at the motion-to-dismiss stage—the Ninth Circuit accepted as true plaintiffs' allegations that "Google's algorithms recommend ISIS content to users" on YouTube, but held that despite these recommen-dation tools, YouTube was "a neutral platform that did not specify or prompt the type of content to be submitted, nor determine particular types of content its algorithms would promote." 2 F.4th 871, 894–95 (9th Cir. 2021);[8] *accord Force* v. *Facebook*, 934 F.3d 53, 70 (2d Cir. 2019) (conclud-ing that Facebook's algorithms to make content more "visible," "available," and "usable" did not "amount to 'developing' that information within the meaning of Section 230") (citation omitted). Yet the dissent would have held that companies were not immune under Section 230 for the same tools that "amplie[d]" and "disseminat[ed]" messages. *Gonzalez*, 2 F.4th at 923 (Gould, J.,

---

[8] As this Court previously observed, *see* Dkt. 121 at 5 n.2, the Supreme Court vacated *Gonzalez* and reversed its companion case on other grounds. *See Twitter, Inc.* v. *Taamneh*, 598 U.S. 471 (2023); *Gonzalez* v. *Google*, 598 U.S. 617 (2023).

1    concurring in part and dissenting in part); *see Force*, 934 F.3d at 82 (Katzmann, C.J., concurring in

2    part and dissenting in part) (arguing that Facebook's friend- and content-suggestion algorithms "do

3    not inherently treat Facebook as the publisher of third-party content").  Regardless of the merits of

4    those views, the divisions simply prove the point made in Meta's motion:  courts have "struggled

5    to draw a bright-line rule for determining when an ICS is responsible 'in whole or in part, for the

6    creation or development' of unlawful content," and that uncertainty is particularly evident when

7    considering the automated ad-development tools at issue in this case.  *Mindgeek*, 574 F. Supp. 3d

8    at 767.

9        Setting aside Dr. Forrest's attempt to recast the question Meta presented for certification,

10   he once again asserts that this question turns on a factual disagreement.  *See* Opp. 12–13.  To reit-

11   erate, Meta takes the allegations in the operative complaint as true for the purposes of appeal at this

12   stage.  Mot. at 7; *see supra* Part II.A.1.  Dr. Forrest's exaggerated recasting of his allegations as

13   Meta "co-creating content," Opp. 12 & n.4, does not create a factual dispute; the facts as he pleaded

14   them do not establish co-creation.

15       Even assuming there are "additional tools" beyond those specifically identified in the com-

16   plaint on which Dr. Forrest's claims might rely, *see* Opp. 13, the substantial grounds for difference

17   of opinion would remain the same.  In its order, the Court reasoned that Dr. Forrest had sufficiently

18   alleged that the automated, widely available tools at issue affected the appearance of ads, deter-

19   mined their audience, and "supercharge[d] Meta's ability to produce and drive" the ads.  Dkt. 121

20   at 8–9 (quoting TAC ¶ 135).  The Ninth Circuit could fairly reach a different conclusion on the

21   issue of whether tools that achieve those functions materially contribute to alleged unlawful content

22   under Section 230(c)(1).  The resolution of that legal question does not require any additional fac-

23   tual development, because it turns solely on the complaint's allegations.  *See Sams*, 713 F.3d at

24   1179.

25       In short, because "reasonable judges might differ," and the "uncertainty" in the case law

26   "'provides a credible basis for a difference of opinion' on the issue," there is a substantial ground

27   for difference of opinion on the question presented.  *Reese*, 643 F.3d at 688 (citation omitted).

28

### 3.     Certification Will Materially Advance the Ultimate Termination of the Litigation

Finally, Meta has shown that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  Although an appeal need not "have a final, dispositive effect" to materially advance the litigation, *Reese*, 643 F.3d at 688, resolution of the question presented here in Meta's favor would very likely be dispositive.  *See* Mot. 6–14; *United States ex rel. Huangyan Import & Export Corp.* v. *Nature's Farm Products, Inc.*, 370 F. Supp. 2d 993, 1005 (N.D. Cal. 2005) (explaining that appellate review may materially advance the litigation "whether by dismissal, compromise or transfer for want of jurisdiction"); *see also Facebook Inc.* v. *Namecheap Inc.*, 2021 WL 961771, at *3 (D. Ariz. Mar. 15, 2021); *Wilton Miwok Rancheria* v. *Salazar*, 2010 WL 693420, at *13 (N.D. Cal. Feb. 23, 2010); *Nat'l Ass'n of Afr.-Am. Owned Media* v. *Charter Commc'ns, Inc.*, 2016 WL 10647193, at *6 (C.D. Cal. Dec. 12, 2016).

Dr. Forrest's contrary arguments make little sense.  Dr. Forrest contends that, simply because this case has been pending for several years without discovery, the resolution of Meta's question will not "appreciably shorten the time, effort, or expense of conducting" the suit.  Opp. 14 (cleaned up).  To be clear, the length of time this lawsuit has been pending has depended in large part on Dr. Forrest's <u>own actions</u>, as he initiated unfounded and ultimately unsuccessful Australian criminal proceedings, which resulted in a stay.[9]  Moreover, Plaintiff falls into the sunk-cost fallacy when he argues that the substantial <u>future</u> burden and expense of litigating this case are warranted simply because this case has been pending for several years.  If the Ninth Circuit reverses, the parties will avoid all of the substantial time and expense of events to come: discovery, summary judgment, and trial.  The decisions that Dr. Forrest cites for the proposition that interlocutory appeal is inappropriate where certification would delay resolution, Opp. 14, which involve cases at much more developed stages, are inapposite.  *See Rieve* v. *Coventry Health Care*, 870 F. Supp. 2d 856, 880 (C.D. Cal. 2012) (class certification hearing was imminent and "any interlocutory appeal would only be binding on Plaintiff . . . and not the rest of the class"); *Flores* v. *Velocity Express*, 2015 WL

---

[9] The Australian criminal proceedings were discontinued after prosecutors announced that they had found insufficient evidence to prosecute Meta. Dkt. 131 at 1.

- 13 -

DEFENDANT META PLATFORMS, INC.'S COMBINED REPLY ISO MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B) AND MOTION TO STAY - CASE NO. 22-CV-03699-PCP

4463639, at *4 (N.D. Cal. July 21, 2015) (appeal on successor-liability question would not materially advance litigation where plaintiffs "would still try the issue of successor liability, as well as the issue of joint employer status, to a jury, regardless of the outcome of an interlocutory appeal").

Dr. Forrest also points to no additional proceedings that could occur in this litigation if the Ninth Circuit reverses.  That deficiency distinguishes the decisions he cites for the proposition that certification here would needlessly delay inevitable affirmance (or denial of interlocutory appeal) by the Ninth Circuit.  Opp. 14.  In *Hanni* v. *American Airlines*, the court explained that, if the movant prevailed and the Ninth Circuit reversed a partial grant of a motion to dismiss, "the claims will go forward and one party may take a second appeal."  2008 WL 5000237, at *7 (N.D. Cal. Nov. 21, 2008).  And in *Villareal* v. *Caremark*, the court reasoned that interlocutory appeal of a conditional class certification order under the Fair Labor Standards Act would not materially advance the litigation, because regardless of an appeal's outcome, "a substantial amount of litigation still remains and the certified question may very well be mooted with the second stage of FLSA certification, where collective plaintiffs would be subjected to a more stringent inquiry."  85 F. Supp. 3d 1063, 1072 (D. Ariz. 2015) (cleaned up).  No such specific procedural complications are at play here.

Dr. Forrest also insists that it is more likely than not that the Ninth Circuit would deny Meta permission to appeal or that it would affirm this Court's order.  Opp. 14.  This Court's assessment of how the Ninth Circuit will rule on any Section 1292(b) petition and the ultimate merits is not relevant to the inquiry; the statute calls on this Court to make an independent assessment as to whether the requirements of Section 1292(b) are satisfied.  His prediction is unfounded in any event, for all of the reasons already explained.  *See supra* Part II.A.1; Mot. 6–14.

Finally, Dr. Forrest once again argues this appeal concerns "factual disputes," asserting that certification would "prematurely elevat[e] an issue concerning the sufficiency of the [operative complaint's] allegations" that would prevent "the ability to review the case on a fully developed record."  Opp. 14.  Once again, he ignores that Meta has accepted the allegations for purposes of this appeal.  Mot. 11; *see supra* Part II.A.1.  Because the question here requires the Ninth Circuit to consider only whether those allegations, if proven, overcome Section 230 immunity, other

1    courts' rejections for interlocutory appeal of questions purportedly "intertwined with various un-

2    derdeveloped and unresolved factual issues" are inapt.  *Cousineau* v. *Microsoft Corp.*, 2012 WL

3    12847005, at *2 (W.D. Wash. Aug. 22, 2012) (Section 230 question "intertwined" with, e.g., how

4    Windows Phones operated and whether Microsoft generated and accessed geolocation data); *see*

5    *also James* v. *Walt Disney Co.*, 2024 WL 664811, at *3 (N.D. Cal. Feb. 16, 2024) (plaintiffs' ar-

6    gument on standing depended on "the exact nature" of their "browsing history, search history, and

7    purchase behavior").  Addressing a "clear-cut question of law against a background of established

8    facts" now will "conserve judicial resources" and provide an opportunity to resolve this litigation.

9    *Ass'n of Irritated Residents* v. *Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1092–93 (E.D. Cal.

10   2008).

11       **B.      A Stay Pending Interlocutory Appeal Is Warranted**

12           This case should continue to be stayed pending resolution of Meta's motion for certification

13   and, if granted, a subsequent appeal of the Court's order.

14           Dr. Forrest does not meaningfully contest that the "more permissive" standard laid out in

15   *Landis* v. *North American Co.*, 299 U.S. 248, 254 (1936), applies to Meta's request for a stay pend-

16   ing interlocutory appeal.[10]  *See, e.g., Kuang*, 2019 WL 1597495, at *6.  Here, all three *Landis* fac-

17   tors militate in favor of staying this case.

18           <u>First</u>, Meta will suffer "hardship or inequity" if the case is not stayed.  *Kuang*, 2019 WL

19   1597495, at *4.  Section 230 was enacted to protect defendants, like Meta, from "having to fight

20   costly and protracted legal battles."  *Roommates*, 521 F.3d at 1175; *see also supra* Part II.A.  If this

21   case proceeds while Section 230's scope is on appeal, Meta will be forced to "fight[] off [Dr. For-

22   rest's] claims that [it] promoted or encouraged—or at least tacitly assented to—the illegality of

23   third parties."  *Roommates*, 521 F.3d at 1174.  That would "cut the heart out of Section 230." *Id.*

24

25   ———————————————

26   [10] Dr. Forrest states that courts are "split" on the "standard governing stays."  Opp. 15–16.  He
     ignores that "district courts that have directly confronted the question" of the proper standard "have
27   <u>overwhelmingly concluded</u> that the *Landis* test or something similar governs." *Kuang* v. *U.S. Dep't
     of Def.*, 2019 WL 1597495, at *3 (N.D. Cal. Apr. 15, 2019) (emphasis added).  At any rate, Meta
28   <u>is</u> likely to succeed on appeal.  *See supra* Part I; *see also* Mot. 6–14.

Dr. Forrest protests that *Roommates* "had nothing to do with stays." Opp. 16. That is irrelevant. Courts have repeatedly stayed cases where, as here, the protections at issue would effectively be lost if the case were to go forward—exactly what *Roommates* cautioned against. *E.g.*, *Sweet* v. *City of Mesa*, 2022 WL 912561, at *3 (D. Ariz. Mar. 29, 2022) (granting stay pending appeal, as allowing the case to proceed would "subvert[] the purpose of qualified immunity and harm[] individual defendants"); *Peck* v. *County of Orange*, 528 F. Supp. 3d 1100, 1105–07 (C.D. Cal. 2021) (similar); *Andrade Rico* v. *Beard*, 2019 WL 4127206, at *3 (E.D. Cal. Aug. 30, 2019) (similar).

Dr. Forrest adds that "expenses related to routine discovery" are "not a sufficient reason to warrant a stay." Opp. 16. But none of the cases he cites involved a stay pending appeal of a decision involving immunity under a statute designed to protect defendants from the cost and burdens of litigation. In any event, courts have held that "substantial, unrecoverable, and wasteful discovery and pretrial motions practice on matters that could be mooted by a pending appeal may amount to hardship or inequity sufficient to justify a stay." *Hart* v. *Charter Commc'ns, Inc.*, 2019 WL 7940684, at *5 (C.D. Cal. Aug. 1, 2019); *Finder* v. *Leprino Foods Co.*, 2017 WL 1355104, at *4 (E.D. Cal. Jan. 20, 2017). If this case proceeds pending appeal, Meta will be forced to expend substantial, unrecoverable, and wasteful resources, principally on discovery. *Cf. Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 559 (2007) (noting the "enormous" expense of modern discovery as a reason to disallow "anemic" cases to proceed past the pleading stage).

<u>Second</u>, Dr. Forrest will not suffer harm from a further stay; to the contrary, the issuance of a stay will avoid "significant and potentially unnecessary" investment of resources by "both parties." *Ottesen* v. *Hi-Tech Pharms., Inc.*, 2024 WL 589089, at *4 (N.D. Cal. Feb. 13, 2024). And any delay in recovering the money damages he seeks does not militate against a stay. *See, e.g.*, *CMAX, Inc.* v. *Hall*, 300 F.2d 265, 268–69 (9th Cir. 1962).

Dr. Forrest responds, Opp. 17, that he also seeks prospective injunctive relief. But that is of no moment. Dr. Forrest alleges harm to the commercial value of his own reputation and financial losses by third parties. *See, e.g.*, TAC ¶¶ 63, 221–22. Both are compensable through money damages. Neither is irreparable. *See, e.g.*, *Amylin Pharms., Inc.* v. *Eli Lilly & Co.*, 456 F. App'x 676, 678 (9th Cir. 2011); *Bruno* v. *Potts*, 2018 WL 3207908, at *2 n.2 (N.D. Cal. June 29, 2018);

1    *Premier Nutrition, Inc.* v. *Organic Food Bar, Inc.*, 475 F. Supp. 2d 995, 1007 (C.D. Cal. 2007).

2        Dr. Forrest also warns that "memories will fade and relevant records will be lost or acci-

3    dentally destroyed" pending appeal.  Opp. 18.  But his "concern . . . exists anytime a court issues a

4    stay and does not supply sufficient grounds to refrain from issuing an otherwise appropriate stay."

5    *Cascades Comp. Innovation, LLC* v. *RPX Corp.*, 2014 WL 900376, at *3 (N.D. Cal. Mar. 4, 2014).

6    He fails to "point to any specific witness or type of evidence that is actually at risk of being lost."

7    *Ali* v. *JP Morgan Chase Bank*, 2014 WL 12691084, at *1 (N.D. Cal. Mar 10, 2014).

8        <u>Third</u>, Dr. Forrest does not disagree that judicial efficiency gains militate in favor of a stay.

9    When the shoe was on the other foot, it was Dr. Forrest who sought to adjourn resolution of Meta's

10    motion to dismiss until the Supreme Court decided a case bearing on Section 230's applicability.

11    *See* Dkt. 50 at 2–3.  He argued that his requested stay would "conserve the time and resources of

12    [the] Court and the parties and promote judicial efficiency."  *Id.* at 5.  This Court agreed.[11]  *See*

13    Dkt. 79 at 5.  The same result is warranted here.

14        Dr. Forrest instead claims it is merely "speculative" that the Court "may be called upon to

15    resolve potential discovery disputes."  Opp. 18.  Yet Dr. Forrest has already "file[d] a motion to

16    compel and for a protective order."  *Id.* at 3.  In any event, there is nothing "speculative" about the

17    Court needing to address disputes involving, for example, the parties' protective order, stipulated

18    ESI protocol, and Rule 502(d) order, as well as inevitable motions to compel and for protective

19    orders.

20        Dr. Forrest also lists a handful of decisions certifying interlocutory appeals without staying

21    district-court proceedings.  Opp. 5 n.1 & 19.  Yet it is entirely unremarkable that different courts

22    have declined to issue stays under different circumstances and for different reasons.[12]  *See FERC* v.

23

---

24  [11] Dr. Forrest is also responsible for the other reason the case was stayed, due to his unsuccessful

25  attempt to initiate a criminal case against Meta in Australia.  *See* Dkt. 79 at 4.  It is simply untrue, as he claims, that Meta "has unilaterally imposed a stay . . . [f]or much of this litigation."  Opp. 18.

26  [12] Meta previously offered to engage in limited, non-custodial discovery pending appeal, including

27  negotiation of an ESI stipulation and protective order, and service of initial disclosures.  *See* Opp. 19 n.6.  Dr. Forrest declined.  While Meta continues to believe that a full stay is the most

28  appropriate course of action, Meta's prior offer stands.

*Vitol, Inc.*, 2022 WL 583998, at *5 (E.D. Cal. Feb. 25, 2022) ("Defendants have not shown that ongoing litigation will pose any undue hardship"); *CFPB* v. *D&D Mktg., Inc.*, 2017 WL 5974248, at *6 (N.D. Cal. Mar. 21, 2017) ("the public has an interest in the 'swift and prompt' enforcement of laws that protect the integrity of financial markets"); *Brown* v. *Hain Celestial Grp., Inc.*, 2012 WL 4364588, at * (N.D. Cal. Sept. 24, 2012) ("it seems relatively unlikely that appellate resolution will dispose of the entire case"; defendant "has unilaterally imposed a stay of discovery that has unnecessarily delayed the proceedings"); *MRW, Inc.* v. *Big-O Tires, LLC*, 2009 WL 1069197, at *3 (E.D. Cal. Feb. 20, 2009) (discovery "will continue to be relevant against" a non-appealing defendant); *Goodyear Tire & Rubber Co.* v. *McDonnell Douglas Corp.*, 820 F. Supp. 503, 512 (C.D. Cal. 1992) (denying stay without any explanation); *cf. Johnson* v. *Starbucks Corp.*, 2020 WL 2039054, at *2 (E.D. Cal. Apr. 28, 2020) (appeal in related case would not resolve all of plaintiff's claims).

## III.   CONCLUSION

The motions for certification for interlocutory appeal and for a stay should be granted.

Dated: July 30, 2024

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ Karen L. Dunn*

Karen L. Dunn (*pro hac vice*)
kdunn@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, D.C. 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

Walter F. Brown Jr. (SBN: 130248)
wbrown@paulweiss.com
Meredith R. Dearborn (SBN: 268312)
mdearborn@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

Jonathan S. Tam (SBN: 304143)
jtam@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2029 Century Park E, Ste 2000
Los Angeles, CA 90067
Telephone: (310) 982-4350
Facsimile: (310) 982-1805

Thomas Patrick Cordova (*pro hac vice*)
pcordova@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Jacob M. Heath (SBN: 238959)
jheath@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

*Attorneys for Defendant
Meta Platforms, Inc.*

- 19 -

DEFENDANT META PLATFORMS, INC.'S COMBINED REPLY ISO MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B) AND MOTION TO STAY - CASE NO. 22-CV-03699-PCP