**Pages 1 - 44**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable P. Casey Pitts, Judge

DR. ANDREW FORREST, )
)
Plaintiff, )
)
VS. ) **NO. 5:22-CV-03699-PCP**
)
META PLATFORMS, INC., )
)
Defendant. )
______________________________)

San Jose, California
Thursday, August, 22, 2024

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
HECKER FINK, LLP
350 Fifth Avenue, Suite 63rd Floor
New York, NY 10118
**BY: JOSHUA MATZ**
**ATTORNEY AT LAW**

HECKER FINK, LLP
1050 K Street Northwest, Suite 1040
Washington, DC 20001
**BY: PATRICK BALKE**
**ATTORNEY AT LAW**

DEREK G. HOWARD LAW FIRM, INC.
42 Miller Avenue
Mill Valley, CA 94941
**BY: DEREK G. HOWARD**

REPORTED REMOTELY BY: Stephen W. Franklin, RMR, CRR, CPE
Official United States Reporter

**APPEARANCES (CONT.'D):**

For Plaintiff:

BAILEY & GLASSER
1999 Harrison Street, Suite 660
Oakland, CA 94612
**BY: Leslie A. Brueckner**
**ATTORNEY AT LAW**

For Defendant:

PAUL, WEISS, RIFKIND, WHARTON & GARRISON
2001 K Street Northwest
Washington, DC 20006
**BY: WILLIAM T. MARKS**
**ATTORNEY AT LAW**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON
535 Mission Street, 24th Floor
San Francisco, CA 94105
**BY: MEREDITH R. DEARBORN**
**ATTORNEY AT LAW**

**Thursday, August 22 2024, 10:00 a.m.**

**P R O C E E D I N G S**

**---o0o---**

**THE COURT:** Be seated.

**THE COURTROOM DEPUTY:** Calling case number 22-CV-3699 Forrest versus Meta Platforms, on today for the Motion for Certificate of Appealability and the Motion to Stay. Will the parties please approach and state their appearances for the record beginning with plaintiff's counsel.

**MR. MATZ:** Good morning, Your Honor. Joshua Matz from Hecker Fink for plaintiff Andrew Forrest. I'm joined by my colleague, Patrick Balke, today, as well as Derek Howard and Leslie Brueckner. Thank you.

**THE COURT:** Good morning.

**MR. MARKS:** Good morning, Your Honor. I'm William Marks from Paul Weiss for Meta. I'm joined by my colleague, Meredith Dearborn from Paul Weiss and Abi Oladokun, in-house counsel for Meta.

**THE COURT:** Good morning. So we are here on Meta's Motion for a Certificate of Appealability and a Motion to Stay. So I will hear from the moving party, Meta, first.

**MR. MARKS:** Thank you, Judge Pitts. William Marks of Paul Weiss for Meta, and may it please the Court.

The Court's order granting in part and denying in part Meta's Motion to Dismiss satisfies each of the factors for

certification under Section 1292(b) and warrants interlocutory appeal.

First, the order involves a controlling question of law. At this stage, Meta is accepting that its advertising tools operate exactly as Dr. Forrest is alleging. Our submission is that Meta still did not materially contribute to the illegal aspects of the advertisements in question, because Meta did not supply or acquire or encourage the use of Dr. Forrest's name and likeness.

**THE COURT:** I mean, isn't that though ultimately, that's really a question of how we construe the allegations of the complaint. I mean, this -- the analysis here seems to be incredibly bound up in the specific allegations in the complaint rather than presenting the kind of clean question of law that is typical for a Certificate of Appealability. Right?

**MR. MARKS:** So I think the issue here really does involve a dispute concerning the legal standard, really what the meaning and operation of the material contribution standard is.

**THE COURT:** I mean, I guess the thing -- they allege, for example, right, that Meta provides generative AI, correct?

**MR. MARKS:** Yes, that's correct.

**THE COURT:** So say for example that someone -- we don't know. These are facts we don't know. Right? Presumably this is appropriate for factual development. But say that

someone came in wanting to promote their crypto product, and they had maybe a truthful statement that Dr. Forrest had made at some point and what they provided that said something like, you know, he had said "crypto is interesting," and Meta, in its generative AI, it looks out and it says, hey, our generative AI knows that this really works, like these Dr. Forrest ads really work. So why don't you include his picture, and why don't you -- maybe if you make it seem like you add this language, it will seem even more compelling, like a supportive point that that, you know, that -- wouldn't, in that case, it'd be pretty clear that Meta, rather than the third parties, are adding that content to the ads?

**MR. MARKS:** So I think that under our rule there's a distinction between the situation that Your Honor has just posited and the allegations in the complaint themselves. I think in a situation where Meta itself is actually supplying Dr. Forrest's name and likeness to the advertisement, that might --

**THE COURT:** Well, but I guess from here, my take is Dr. Forrest comes in because they have a true comment. They say, "Dr. Forrest has said that crypto is interesting and may have great hope for the future." Maybe that's true. But the generative AI knows that, you know, there's all of these wildly successful but scam ads in its system, and they've been -- they've really worked for getting user engagement. So the

generative AI knows that, hey, if you want to increase user engagement do this, and that's -- the generative AI is the one -- I mean, garbage in, garbage out sort of the situation, but it's kind of the problem with generative AI, isn't it?

**MR. MARKS:** Sure. So I --

**THE COURT:** Couldn't -- isn't that a possible -- it seems like that's a possible circumstance that these allegations could support.

**MR. MARKS:** So I think there's a couple points to make on this point, Your Honor.

I think, first, if you look specifically at the allegations in the complaint concerning generative AI, this is what they say: "The advantage creative tool automatically optimizes ads to versions the audience is more likely to interact with. These changes are intended to make the ads more appealing when they are ultimately shown to individual viewers on Facebook." The allegations go on to say that Meta may add materials to the advertisement.

If you take those in the context of some other allegations in the complaint, I point the Court for example to paragraph 109, "Meta's tools produce advertisements using prompted input from the advertisers." Paragraph 112, "Meta's tools are designed to improve the look of the prospective advertiser's ads." And as this Court cited in its order, paragraph 120, "the dynamic creative tool takes the

advertiser's ad components, such as images, video, text and audio, and mixes and matches them."

So I think what the complaint is saying here is that it's third parties who are supplying the basic building blocks of the advertisement, and then Meta's tools are --

**THE COURT:** I mean, yeah, the issue here it seems to be that the argument you're making here is not, you know, it's not a question about the standard, it's not a question of bad faith. In a sense you're saying I misconstrued the pleadings as in my order. I mean, that's the theory, is that I, you know, that maybe, you know, that there is a question, Meta views the complaint, you know, is narrowing a particular allegation in the complaint on the basis of other allegations in the complaint, and, you know, maybe there's a question about 12(b)(6) and how you apply that to an affirmative defense, which is what we're dealing with here. I mean, that's a different question from the sort of attempt to say -- you know, that's deeply bound up in the sort of question of law you've presented as being appropriate for a Certificate of Appealability, and I'm not sure that the Ninth Circuit's that interested from diving into that question right now, you know, how -- should we look at this complaint, and how do we read paragraph 120 versus as compared to paragraph 118. I mean, that seems to be what your arguing about at some level, isn't it?

**MR. MARKS:** Well, I want to try to come at this in another direction, and then I want to make the point about the Ninth Circuit's cases in the 1292(b) posture.

So to come at this at a different angle, again, our view is that unless Meta -- and this is the legal rule that we believe is correct, is that unless Meta has been the one to supply Dr. Forrest's name or image to the advertisement, or encouraged or required third parties to input that information, that Section 230 applies --

**THE COURT:** You're not arguing that I -- that the standard I set forth in the Motion to Dismiss order was incorrect. Correct?

**MR. MARKS:** So I think we are, because the necessary upshot of the Court's order is that if the allegations in the complaint were proven to be true, then Section 230 immunity would not apply.

**THE COURT:** But I articulated the correct standard. Correct?

**MR. MARKS:** So I would respectfully disagree with Your Honor. I think if the Court looks --

**THE COURT:** But you haven't moved for reconsideration. Correct?

**MR. MARKS:** No, no, Your Honor.

And I actually want to be clear here. To the extent we're talking about the merits and the second prong of the 1292(b)

standard, you know, we're not seeking reconsideration, and, you know, the Court doesn't have to agree with us on this position. The question is really just could a reasonable jurist agree with our position, and we think the answer to that is correct.

To go directly to the Court's point about the legal standard, I think on page 9 of the Court's decision, the Court said that really the question here is whether Meta's contribution to -- Meta's contribution to the advertisements are entirely unrelated to the aspects of the ads that allegedly make them illegal. I think that's where the disagreement is coming in. We think that it does not preclude Section 230 immunity if Meta's ad tools ultimately somehow change the appearance, or to use the language of the complaint, drives or ultimately determines the appearance if its third parties, who are providing Dr. Forrest's name and likeness, and there's nothing Meta is doing to encourage or require, you know, the use of either his name or likeness or even more broadly, images of third parties who have not given consent to the images being used.

**THE COURT:** So your view would be if Meta -- I mean, I guess, again, the question is what's going on here and what do the allegations support. Because, you know, say the company -- say someone came in with a whole series of images that they were thinking of using, and Meta says, hey, there's one here that's a picture of Dr. Andrew Forrest, and we know

that that's going to be a -- generative AI says it's going to be incredible effective. And instead of it being this tiny little picture, what about this, you know, why don't we blow it up so the entire thing is like an ad on that. I mean, would that constitute encouraging the use of that image for purposes of Sections 230?

**MR. MARKS:** So I don't want to fight too hard on the merits here, just because we are under the reasonable jurist standard. But on that hypothetical, I think the answer on our proposed rule is that, no, that there wouldn't be a material contribution there, because Meta has not done anything to supply that image. It's third parties --

**THE COURT:** But if I said encouraging the use of the image, it would also -- standard under the standard. Correct?

**MR. MARKS:** Right. And I think the encouragement prong is the website is doing something to specifically say to a third party, you know, we either want you in this case to use Dr. Forrest's name and likeness and input that into our system, or, you know, it's a situation where they are somehow encouraging people to take images that belong to third parties, use their name and likeness without their consent.

Unless Meta is doing those types of things, our view is that there is Section 230 immunity, and there's no material contribution.

**THE COURT:** I just want to be clear. I mean, I guess

to me this is less a second prong question than the first prong question, because it really goes to what kind of question of law are we dealing with here. Right? Are we dealing with -- you know, we're dealing with an affirmative defense, which as I understand it under the Ninth Circuit case law, can only be a basis for dismissal under 12(b)(6) if it's absolutely certain under the -- that the plaintiff -- if the plaintiff has effectively pleaded themselves out of court. I mean, there's a question in my head of whether could they simply say, admit all of these allegations, say Meta provides advertising tools, those tools have added, encouraged the use of Dr. Forrest's image in a matter. Very -- single sentence.

**MR. MARKS:** So --

**THE COURT:** You know, they don't have an obligation to necessarily provide plausible -- you know, satisfy *Iqbal* and *Twombly* in order to avoid an affirmative defense, I don't think. So could they do a essentially notice pleading way to get around the Section 230 issue?

**MR. MARKS:** So I don't think the situation Your Honor just posited would work. I mean, I think the problem with that particular allegation is that it would be, you know, the kind of legal allegation that doesn't create a factual dispute, you're just pleading that the standard is satisfied. But with respect --

**THE COURT:** Again, it's, you know, it's an

affirmative defense, so you're -- we're not under an *Iqbal* and *Twombly* standard.

**MR. MARKS:** Well, that's correct.

And I think what the Ninth Circuit has said on this issue is that the complaint must be clear. And as Your Honor recognized in your order, you know, the standard for determining whether there's a fact dispute on the defense is whether a plaintiff must plead facts demonstrating a potential factual dispute that affects whether the defense applies. Now in our view, the complaint is clear that it's third parties who are providing the ultimate ad components. I think at one point the complaint calls it the ad created is the components of the advertisement, and says that Meta is producing these ads -- this is paragraph 4 -- using basic materials supplied by scammers. So I think the complaint is clear on that point.

Then on the question of whether there's encouragement or requirement, I think if you read all of the allegations about how Meta's advertising tools operate, there's really nothing in there that suggests that Meta is requiring advertisers to input either Dr. Forrest's name and likeness or to encourage his -- the name and -- the use of his name and likeness. And so I think in our view because the relevant facts are supply, requirement, encouragement and the complaint is clear on those points, we think that Section 230 immunity should apply, even accepting everything that Dr. Forrest alleges about how Meta's

tools operate.

Now, I recognize Your Honor may have a difference of opinion on that, but I do think that a reasonable jurist could read the Ninth Circuit's decision to support that line. And, you know, I point the Court first, as the Court knows, to *Calise*, which says that: "'Material contribution' means a material contribution to the illegal aspect of the content." And then I --

**THE COURT:** I just want to be clear, that ultimately I do think a dispute we seem to be having, again, comes down not to a dispute about the standard, I don't think. I think it's a dispute about what -- you know, how Meta views sort of the complaint and what it's alleging and what plausibly flows from what's alleged in the complaint, or might possibly flow, which is really I think kind of the standard that applies in determining whether a complaint is dismissed on the basis of an affirmative defense. I mean, that's kind of where there's a difference of opinion really, rather than this question, the sort of a question about the scope of Section 230 immunity. I mean, I think that's -- and I -- to me, that doesn't strike me as a particularly appropriate question for certification to the Ninth Circuit under a Certificate of Appealability.

I mean, I also want to talk about the third prong, as well, because I do think part of -- you know, it is true, you know, Meta's absolutely right, if the Ninth Circuit were to

accept this what I see is kind of a dispute about what kind of factual inferences will be drawn from the allegations of the complaint, were to accept that certification and then were to agree with Meta's position it would end the case, there's no question about that. On the other hand, if it didn't, then we're exactly back where we are right now.

So it's a little different from a much cleaner question that will say, you know, usually one way or the other, either I construe the statute correctly or I construe the statute incorrectly. And if I construe the statute correctly, that outcome itself advances the litigation, because from that point forward we know that, well, at least that question is resolved. It's not going to be revisited on appeal absent an en banc petition or a Supreme Court intervention.

That's very different from what we're talking about here where, if, you know, the Court agrees that there is at least a possibility on the alleged facts that there wasn't material contribution sufficient to satisfy the Ninth Circuit test for Section 230 non-immunity, you know, we're back here. We're exactly where we are today. So the -- we haven't moved forward at all, and we have to do what, to me, I mean, to be very frank, this seems like a really good question for summary judgment. You know, we can figure out -- presumably the parties can develop the evidence and we can know exactly what actually is happening.

And, you know, Meta may have an incredibly strong summary judgment argument for Section 230 immunity. At that point, you know, we decide on the basis of the facts about what actually happened and what Meta's actually doing, whether there's Section 230 immunity, you know, and maybe then if we have undisputed facts we move forward, and it should. It seems like a question that shouldn't be particularly subject to factual dispute, you know. And then I can make a decision about whether Section 230 is satisfied or not, and then, you know, maybe that would be the right moment. We have the facts. We know it. Either -- I'm either -- there's either immunity or not immunity. But that's not the kind of circumstance we have right here.

**MR. MARKS:** So there's a few points I want to make in response to the points Your Honor was just making.

And I think to take them in reverse order, I mean, I think with respect to the material contribution prong, you know, I just, I think to start off, I don't think it's correct that even if we were not to prevail on interlocutory appeal, that it wouldn't provide any guidance to the Court. I think, you know, if we don't prevail we are likely to raise this question at summary judgment, and a decision from the Ninth Circuit could inform both the parties and the Court about what the proper standard is. And if the question were to survive summary judgment, it would affect how the parties litigate and the

Court decides the issue at trial.

I also don't think that's the standard under prong 3 is whether we're going to prevail on appeal. The statute says an immediate appeal may materially contribute to the ultimate outcome, and I think if you were to --

**THE COURT:** It's not -- the point I was making is more in the classic case. It's more clear that either outcome is beneficial to the subsequent litigation. Maybe you're right it would be influenced. It's certainly a lot less clear here that if Meta's unsuccessful on appeal, that that's going to help us going forward.

**MR. MARKS:** So I take that point. I think the truth is, as Your Honor has indicated in our earlier colloquy, is that if we do prevail on appeal, it will terminate the litigation entirely. And one point that I want to make here is that I think, you know, this isn't just kind of your everyday average 1292(b) motion. We are talking about Section 230 here, which the Ninth Circuit has said is not just designed to be protection and an immunity from liability, but is also really designed to protect websites from the costs and burdens of litigation. And so, you know, if there is no appeal right now and ultimately we were to prevail at the end of trial, a lot of the immunity that we're supposed to have here, a lot of the protection is essentially lost.

So we think, you know, this really is kind of a special

situation that warrants appeal. And so I do think kind of that weighs more heavily in favor, even if the Court believes that an affirmance of the Court's ruling would not provide -- you know, would not necessarily provide as clear a guidance.

You know, another point I wanted to make in response to the colloquy we were having is that, you know, on the merits, I think the reason we think -- sorry, not on the merits. On the first prong, I think the reason we think that this is, you know, kind of the type of question that's subject to review under 1292(b) is, you know, one, I think you can ask my friend on the other side, but I suspect they disagree with our view that the standard is that Meta has to have supplied or required or encouraged the use of Dr. Forrest's name and likeness, and I think they would say that the fact that our tools allegedly contributed to the ultimate appearance of the advertisement is sufficient. I think that right there is the legal dispute at issue and could be resolved by the Ninth Circuit.

I also think when the Court looks at the Ninth Circuit's decisions that have taken questions in the 1292(b) posture, they routinely take questions that kind of involve this issue of, you know, a legal standard, the material contribution standard, but how it applies to an abstract set of facts and the situation that could apply across numerous cases, and I think that's essentially what we're saying here is that, you know, we have tools that allegedly automatically optimize

advertisements. And to the extent the Court thinks there's a disagreement about the extent to which they're optimized we accept what Dr. Forrest says, that our tools -- ultimately at this stage of the litigation, we accept that the tools ultimately drive the outcome. Our point is that we just don't think that's relevant to the Section 230 analysis, and that's really the legal issue, which I think is the type of legal issue that the Ninth Circuit has taken in the 1292(b) posture.

You know, I'd point the Court just to two examples. First, in the *City of Oakland Versus Wells Fargo* decision, the Ninth Circuit accepted 1292(b) certification, but the question of whether a complaint pleaded proximate cause under a federal statute, which I think feels much more like a kind of quintessential mixed question of law and fact where there's no dispute about the legal standard and you're just trying to determine whether the facts satisfy it, I think our case is actually quite similar to the *Best Carpet Values* case, and that was a case that involved -- there was no dispute about kind of what the elements of trespass to chattels were, but the question was: How do you apply those elements to a claim alleging functional interference with a website.

And so that's essentially what we're arguing here, is that this is a question about how you apply the material contribution standard to tools that allegedly optimize automatically the ultimate appearance of the ad. I mean, the

dispute that I think --

**THE COURT:** When I looked at those cases, it did strike me that, you know, we -- that they didn't present this much -- this wrinkle of trying to figure out what is -- you know, where there's obviously a difference of opinion as to what the actual facts that we're looking at are. Right? I mean, there was no question about what was alleged, what the key facts were with the, you know, in terms of the Google Ads placement on the pages and the question of whether that constituted trespass to chattels. Right? Whereas here, we're sliding between what are the -- what is, you know, possible under the set of facts that are alleged for purposes of this affirmative defense, and there's obviously a disagreement on that.

So those cases did seem notably different to me, where there's -- you don't -- we don't have this -- like kind of this gray area about what actually is alleged, what is possible to be alleged under the basis of the complaint as applied to the underlying standard, so that they were different in that sense.

**MR. MARKS:** Yes.

So I think, you know, respectfully we don't agree. We don't read them as different. And I think, you know, maybe this is a question for my friend on the other side, but, you know, I just don't think the complaint, when you read it, indicates that Meta is supplying Dr. Forrest's name or

likeness, or encouraging it, or requiring it. And I think, you know, frankly, I don't think that those allegations could be pleaded consistent with Rule 11. I mean, there's no reason to believe that Meta is requiring third parties to, you know, to submit Dr. Forrest's name and likeness or even encouraging parties to submit it.

And so, you know, our view really is that on that legal standard, which we understand the Court may disagree with, but on that legal standard the complaint does satisfy all of the elements. And we understand there may be a disagreement there, but that's precisely the disagreement that we think should go to the Ninth Circuit.

**THE COURT:** I mean, is there any -- what would be the harm to Meta, but besides some degree of litigation costs which is obviously clear, but beyond some degree of litigation costs, what would be the harm to Meta of having this resolved on an early summary judgment motion where Meta can show what it does and does not do and what its tools do and do not do with respect to third-party advertisers and the -- in particular, the third-party advertisers at issue here? Why is that not -- you know, what would be so harmful to Meta about having this issue resolved in that way?

**MR. MARKS:** I think the reason it's harmful, as we discussed earlier, is that if that's the way the case proceeds and we ultimately were to prevail on appeal on the 12 -- on the

Section 230 defense, then a portion of our statutory protection would be eliminated.

So this isn't just a question of kind of traditional litigation costs. This is really a question --

**THE COURT:** Yeah, but, I mean, they make the point. Like, they have. Right? This is not qualified immunity. This is not -- they haven't -- it's not such a -- it's not -- it's an immunity, but it's not the kind of immunity that the courts have recognized does warrant an immediate appeal from the denial of a Motion to Dismiss on that basis. Which, you know, there is a set of immunities that get that protection. This is not one of them.

**MR. MARKS:** That's correct, Your Honor. We're, of course, not arguing that. And if we thought that it were an immunity in the sense of appellate jurisdiction, we wouldn't be here asking for Section 1292(B) review.

But we do think -- and this is, you know, entirely consistent with what the en banc Ninth Circuit said in Roommates, which is that the statute does more than just provide protection against liability. It really is a protection against the cost and burdens of litigation. And I think where you have statutory protection against the costs and burdens of litigation, there is unique harm in requiring a case to go forward that's kind of different than your everyday case where the parties are just disputing about ordinary litigation

costs outside of the context of such a statutory protection.

And I think, you know, look, I want to be clear. We do think this is a protection that's in the statute. The statute itself, it doesn't just say that there is, you know, preemption defense. It says -- you know, this is Section (e)(3) of Section 230, that, you know, no cause of action can be brought. I think it's that language that really gives the protection here, and essentially that's lost if we have to proceed without going on interlocutory appeal and of course having a stay pending that appeal.

**THE COURT:** Right. Unless it's, you know, that you just have to prove up the facts. I mean, if there's a factual dispute that require -- or at least, you know, on the pleadings there's a factual dispute, you have to -- you know, it's not -- it's just not that significant a burden, especially when all the evidence -- well, presumably all the evidence relevant to the defense is in Meta's possession at this time. And so really the discovery needed is just giving, you know, plaintiffs some reasonable opportunity to see that evidence and test it. You know, that's not -- in the context of litigation that's not the most incredibly burdensome, you know, thing to hold a party to that's seeking -- you know, seeking to get out of litigation on the basis of an affirmative defense.

**MR. MARKS:** Yes.

I mean, I think what I would say is that, you know, we

really are not trying to fight the facts here. And I think, you know, again, this may be a question for my friend on the other side. But I just don't see anything in the complaint that alleges supply, requirement or encouragement. And, you know, maybe they can try to point to something and we can address that on rebuttal. But I think on the standard we're suggesting, the complaint is just clear.

And even if the Court believes there's a factual dispute to how, for example, the generative AI operates or the dynamic creative tool, we just think that however those tools act, the most the complaint is alleging is that there are third parties who are submitting the ad components, and then the tools are doing something on top of that. And whatever they do on top of that, our point is that the on-top-of-that doesn't preclude Section 230 immunity. And that's really why we think it's a legal question. It's about how that works rather than, you know, what does the complaint allege.

So whatever they say about the tools and whether they contribute, whether they drive, whether they ultimately determine the appearance, we think really the dispositive point is that it is the third-party scammers who are supplying Dr. Forrest's name and likeness, and because Meta isn't doing anything to encourage or require the submission of that name and likeness, this is just a legal dispute about which facts are relevant under the standard.

**THE COURT:** And I think that -- and I do want to give plaintiffs an opportunity to respond.

**MR. MARKS:** Yes, Your Honor.

**THE COURT:** I mean, it seems to me the core is, you know, the question in part is particularly the allegations about generative AI and the -- and, you know, I think as you quoted to me, there are allegations there about aspects being added, and the question of whether the other suggestions that there are third -- that it -- whether I limit that based on other parts of the complaint that talk about the individuals themselves bringing these unlawful elements to that. I mean, it is -- you know, the question, again, if the standard is possibility, is the allegation of generative AI enough to make that possible, and I -- you know, that seems to be the question to me.

But let me hear from plaintiffs and I'll give you an opportunity for rebuttal.

**MR. MARKS:** Thank you, Your Honor.

**MR. MATZ:** Good morning, Your Honor.

**THE COURT:** Good morning. State your appearance again for the court reporter, who's virtual today.

**MR. MATZ:** Sorry about that. My name is Joshua Matz from Hecker Fink. I'm here on behalf of the plaintiff.

I'm prepared to address the 1292(b) certification issue, and if the Court would find separate argument on the state

standard or issues, my colleague, Mr. Balke, with the Court's permission, will be prepared to address that.

**THE COURT:** Okay. I don't -- I think I can -- I'll decide the stay issue without further argument based on the decision I make on the Motion for Interlocutory Appeal.

**MR. MATZ:** Understood, Your Honor. Thank you.

So we agree with the Court that the first and third certification factors are the most important ones. There are a couple of points I want to put at the front of those, if that's okay, recognizing that this is an unreviewable court of -- exercise of the Court's discretion. And ultimately the real issue is, given the extraordinarily narrow set of circumstances where interlocutory appeal certificate under 1292(b) is proper, and disruption of the final judgment rule is appropriate, is this one of those cases that it just kind of makes practical sense to send up to the Ninth Circuit.

And separate of the first and third factors, I think there are a couple of threshold points that are significant. One is this immunity point. It runs across a number of their arguments. The Court made this point, but I just kind of want to echo it back and highlight the facts that they're placing a lot of reliance on some very broad language that Judge Kozinski wrote in *Roommates* 15 years ago, describing this as not just a sort of ordinary defense, but characterizing it more robustly as liability.

But 15 years ago was a long time in the world of Section 230 law. And since then, in the *Barnes* case in 2009 and then in the *Calise* case in 2024, the Ninth Circuit has retrenched, I think it's fair to say, on that capacious view of Section 230, and in *Calise* the Court noted that simply that Section 230 "precludes liability" which is exactly the right way to think about it. It's an immunity from liability, not an immunity from suit. And the Tenth Circuit made that unequivocally clear when it held that the collateral order doctrine is not available. It's not --

**THE COURT:** Was it the Tenth or the Ninth?

**MR. MATZ:** I'm sorry?

**THE COURT:** Was it the Tenth Circuit or the Ninth Circuit that did that? You said the Tenth.

**MR. MATZ:** Oh, it was actually the Tenth Circuit.

**THE COURT:** So the Ninth Circuit hasn't addressed the issue?

**MR. MATZ:** To my knowledge, the Tenth Circuit is the only court that has addressed the issue, and the Tenth Circuit held -- and it's -- I think it's sort of fair to say that my friends on the other side are plenty motivated to look for every opportunity everywhere to try to expand appeal options and put procedural protections. The Tenth Circuit has been the only court presented with the issue, and it made mincemeat of the argument that that is an official-like immunity that goes

up as a direct right outside the 1292(b) framework.

As we pointed out in our papers, many district courts, including the *Doe versus Mindgeek* court, found no difficulty in concluding that certification on the Motion to Dismiss stage of the denial of a Section 230 defense based on material contribution, you know, wasn't the way to go. And so the idea that this is in the nature of an official immunity and that, you know, God forbid there be discovery, and Section 230 stands for the proposition that there should never be discovery without immediate appellate intervention, isn't consistent went law as described by the Ninth Circuit, as held by the Tenth Circuit, or as applied by other judges in this district.

The other threshold point that I would want to raise is that I came into the hearing today not entirely sure what Mr. Marks was going to say, because their position has been a bit of a moving target. He got up today and said that the question is~-- the question that he would want the Court to certify is whether material contribution requires showing that the platform, as opposed to third parties, supplied, encouraged or required the inclusion of the content that was allegedly illegal. That phrase, that statement does not appear in their brief, nor, for that matter, did it appear in their Motion to Dismiss briefing, or did it come up at the oral argument, the transcript of which I recently read, where they took a more maybe myopic view of the protections of Section 230.

In their papers in advance of this hearing, what they asked the Court to certify was, instead, a somewhat more convoluted question. I could read it to you, but I'm sure the Court's familiar with it, the one about in which the central theme seemed to be something about --

**THE COURT:** Neutral third-party -- neutral tools that optimized third-party something or other, I believe.

**MR. MATZ:** Well, so here's the interesting thing. You're right that the neutral tools concept seemed like a big deal coming into the hearing and then was suddenly jettisoned from their presentation today. That actually wasn't in the question that they had put in their brief as the thing they wanted to send up. What they wanted to sent up was the following: "Whether accepting as true Dr. Forrest's allegations in interactive computer service provider's provision of tools to advertisers that automatically optimize the advertiser's ad components to increase audience engagement, preclude Section 230 immunity related to an advertiser's use of the tools to publish ads containing illegal content."

Now, I'll just say, I'm an appellate lawyer for the most part. I would never write a question presented like that, because it sure just feels like a fact-bound dispute over the application of why facts as Your Honor pointed out. That was the question they said they wanted to certify. That question is not the question that Mr. Marks stood up today and asked you

to certify, nor is it the question that most of the rest of their brief asks you to certify, which is, instead, a question, as far as I could tell, about whether this includes neutrality of their tools, even if that's a fair reading of the allegations, which I don't think it is, whether the supposed neutrality of their tools is an independent basis for a Section 230 defense outside the material contribution framework.

And so I just want to highlight at the outset that it was helpful to get some clarification today about what exactly it is that they think the controlling question of law is. Ordinarily that would be readily apparent. You know, is there a right to do "X," does the statute require "Y." The fact that their question has been itself in motion, I think it's fair to say, is some indication that what we're ultimately talking about is a relatively fact-bound dispute about the appropriate application of the legal standard to the allegations in the complaint.

**THE COURT:** I mean, let -- so let's turn to that. I mean, what -- you know, there were questions to you about what is actually alleged and what is not alleged here.

**MR. MATZ:** Sure.

**THE COURT:** And so what is -- what do you view the complaint as alleging with respect to the contribution by Meta to the unlawful aspects of the advertisements at issue?

**MR. MATZ:** Sure. Let me answer that, if I can, in two ways. First by reference to what's actually in the complaint, and then second, in the language that we've been using as a legal matter to describe the significance of that.

So what the complaint alleges is that -- and this is at paragraph 108 -- that through its comprehensive suite of advertising tools and applications, Meta Ads controls every aspect of the production of echap (phonetic). That's the first thing. It then goes on, and I'm focused here in particular on paragraphs 119 to 125, which the Court repeatedly referenced at pages 8 and 9 in its order on the Motion to Dismiss.

It then goes on to allege that the software drives and determines what the completed paid-for ads will look like, as well as who will see them. That it does so by taking user-uploaded content and modifying it in any number of significant ways. They sort of use the word "optimization" as what I take to be a bit of a euphemism for the actual allegations, which are that it can turn still images into videos, that it can move text around, that it can add music, that it can sort of take those elements and quite drastically change them.

And the reason I should say that that matters is when you're talking about a misappropriation claim in particular, the organization and distribution of the elements of the thing are central to the misappropriation claim. And so in that respect we think it's very obvious, even under the standard

that Mr. Marks described, that by operating on content in that manner and doing whatever else the generative AI set of tools are able to do, they are in fact implicated in the creation or development of what is illegal about the content. That, at the heart, is what we allege.

And again, the allegations sort of speak for themselves, and the Court is quite familiar with them. But the claim is not -- you know, it is not our submission in the complaint that the tools are, as it were, creating brand new, totally new images out of nothing, although discovery may reveal that their generative AI tools are actually capable of mixing and matching and gathering content outside of what third-party individuals uploaded into it. What we do allege is that they take in some cases what might be quite primitive raw materials and modify them in very significant ways, and in ways that may bear directly on what makes the ultimate final product that is controlled and created by their tools, illegal with respect to a misappropriation or negligence theory.

Does that address the Court's question?

**THE COURT:** It does. I mean, I -- so you would acknowledge that, you know, there may be some what seems like a legal dispute about the question of does Section 230 apply where, you know, the image -- the fact of an image of Dr. Forrest comes from third parties in the first instance?

**MR. MATZ:** I mean, actually, no. I would resist

that. Because the standard that they gave the Court was -- they didn't say, if it comes from third parties, then the platform can do whatever it wants with it and can never be thought of as having engaged in creation or development.

I mean, imagine a user uploaded the colors red, yellow and blue, and the platform had tools that transformed that into images of people and did all sorts of things. Right? It would be surprising to say that, you know, that -- there's sort of -- I think the way I think of it is that there is a mixed question of law and fact about how you think about the interaction between the user-uploaded elements, the transformation of those elements that occurs on the platform itself, and the connection of that transformation to the illegality of the ensuing scam ad content.

And in the context of a misappropriation or a negligence claim, at least at the stage that we're at, which is at the motion to dismiss stage, it is kind of at the~-- the Court correctly recognized that it was incorrect to say that we had, as it were, pleaded ourselves out of court by alleging that the tools on the platform take this user-uploaded content, and again, possibly other things, although that's something we couldn't possibly know, because it is meticulously kept secret by the defendant, but then transform it in potentially very significant ways.

Turning, for example, a still image into a video seems to

me like it can be quite relevant in thinking about whether Facebook is liable for having developed something that bears on the illegality of the content with respect to a misappropriation claim. We're mixing and matching elements of text and video, when what you're talking about is the effects of the combined organization of elements would have on a viewer, which is also relevant to a misappropriation or a negligence claim, would seem -- so the implication of that to me is even if you take a broader view of material contribution, then, is today's formulation of choice from the other side. And again, they keep changing, but let's take the latest one which is this, this supply, encourage, require formulation.

The point that I would make is I'm actually not sure that I agree with them that that is the correct statement of the law, that that was the only way that the law recognizes that material contribution can occur. However, what I would say is even accepting that standard, even accepting their proposed standard, which is the standard that I take to be pretty close to what Your Honor had in your opinion, if not what Your Honor did have in Your Honor's opinion, at least for purposes of this pleading stage question, we would still properly survive the motion to dismiss.

So to the extent that we have a broader view than they do of material contribution, it's not one that's properly outcome determinative at this stage, because the allegations, fairly

read, support the denial of their Motion to Dismiss under any of these views.

**THE COURT:** Let me ask you, you know, a different question. What would -- what would be the harm to Dr. Forrest if I were to permit an appeal, you know, the interlocutory appeal they seek, without staying these proceedings?

**MR. MATZ:** Without staying these proceedings?

**THE COURT:** Yeah. I mean, obviously -- and again, separate and apart, there would be costs incurred in the Ninth Circuit presumably, but ...

**MR. MATZ:** I can give you a formal answer and the practical answer. The practical answer is that everyone here knows they will railroad us throughout those discovery proceedings in hopes of winning the appeal, and that would require very active management by the Court in order to make sure that the discovery process is moving forward in an appropriate way.

The practical harm, however, is that the kind of intensely fact-bound question that we're talking about here is exactly the kinds that courts have recognized even in a post-*Iqbal/ Twombly* world. It's the kind of question where, when a defendant maintains strenuous efforts to prohibit everyone else from learning about their confidential information, that that confidential information is intimately connected to a harm that someone suffers and you adequately allege a connection between

that conduct and the harm, that it is appropriate to authorize discovery to get to the bottom of what happened.

And, you know, sending up to the Ninth Circuit this very preliminary question that is intensely fact bound and that, as you pointed out correctly, Your Honor, really may not clarify the law decisively in either way, as compared to just doing this on a full summary judgment motion, I think would potentially deprive Dr. Forrest of the opportunity to have these issues and the harm that he and many others have suffered resolved on a kind of full proper understanding of the relevant facts.

**THE COURT:** Right. I mean, unless -- but again, if it is not stayed, then we may get there. You know, now that said, maybe the Ninth Circuit would stay these proceedings. I mean, I can't -- I can't -- I don't have so much control over what they do with respect to what's going on here, but ...

**MR. MATZ:** Yeah. The harm that he would suffer, I think it's fair to say, the classic harm that a plaintiff suffers when there is the substantial risk for further delay in their case and the harm that a plaintiff would view themselves appropriately as suffering, when they have made their level-best effort, despite a defendant's active concealment of all of the relevant information, to allege facts that would sufficiently entitle them to discovery to have the chance to prove their claim. And then the discovery process unfolds, but

essentially another irregular hurdle, the premise of which -- the premise of the final judgment rule being that that hurdle shouldn't usually exist, is sort of put in their way as they attempt to get to discovery and then summary judgment, where they can be heard on a fair shake, with a full understanding of what the actual facts are. Right?

The law is not overwhelmingly generous about opportunities, you know, in a the Section 230 context. Facebook prevails on a fair number of those motions. Our client went through very substantial efforts over a period of years to assemble, as best we could and not withstanding their meticulous efforts to keep this confidential, enough of an understanding of what's happening here to show that he, and again, many others, are suffering harm as a result of the continuance and perpetuation of these scam ads, and he did it in a way that Your Honor has correctly concluded authorizes him to move forward to the next stage in the case; sort of upending the final judgment rule and creating this simultaneous appeal discovery process, in my mind, would interpose a set of obstacles and barriers not otherwise complicated by the law as he tries to do what a plaintiff is entitled to do and prove his case on the facts.

**THE COURT:** Okay. Thank you.

**MR. MATZ:** Thank you, Your Honor.

**THE COURT:** I'll give five minutes for rebuttal.

**MR. MARKS:** Thank you, Your Honor. Four points on rebuttal.

First, we are accepting, and we are still behind the question that was presented in our motion, and that question is whether the provision of advertising tools that automatically optimize an advertisement to increase audience engagement precludes Section 230 immunity. The point I was making in my presentation is simply that the reason we believe the answer to that question goes in our favor is because of the legal rule that we think applies in this case. So we think Your Honor can certify the exact question as we wrote it, and it would tee up all of the issues that we have discussed.

Second, I think it was telling. In Mr. Matz's presentations, he expressly said that he is not -- the complaint is not alleging that Meta is the one supplying Dr. Forrest's name and likeness, and I didn't hear anything about where in the complaint it indicates that Meta is requiring or encouraging the use of Dr. Forrest's name and likeness. I think at one point when the issue of generative AI came up he said that, you know, discovery may reveal that generative AI does something. I don't think that's enough.

And I would point the Court to the Ninth Circuit's decision in *Kimzey*, where the plaintiff had argued on appeal that *Yelp!* had authored a particular review on its website, and the Court said, well, there's no allegation in the complaint

that says that's true, and you can't create a factual allegation simply because there's an absence of -- an absence of a pleading in the complaint. That was a Section 230 case at the motion to dismiss stage, so the issue of it being an affirmative defense was directly before the Court.

I think on the question that we are alleging, I heard Mr. Matz to say that the question is a mixed question. And I think that's important, because, you know, one, I think that our view is that under the Ninth Circuit's precedence in the 1292(b) context and simply the statute itself, that a mixed question is sufficient. I pointed the Court to the *City of Oakland versus Wells Fargo* case, where it really is application of proximate cause to the pleadings in a complaint. And of course as we discussed, we really think that this is kind of a broader legal question about what the standard means, how it applies, and how it applies kind of to these automated tools.

The last point that I would make is that we've heard a lot of I think ad hominem about Meta concerning confidential information. I would just note finally for the Court that there is significant information about Meta's advertising tools on the websites that are cited in the complaint here, and if someone wants to create an advertiser account and look at how those tools works, they're free to do so.

**THE COURT:** I mean, I -- but presumably there are agreements that are required in creating an account, and

perhaps an arbitration agreement, I'm not certain. I mean, my guess is that there are strings that may be attached, and Meta may not want people creating fake companies to explore its technology, I assume. Is that correct?

**MR. MARKS:** That's certainly true, Your Honor. But I think the point stands that there is information on Meta's website itself about how the advertisement tools work. And again, I think the dispositive fact here is that there's nothing in the complaint that indicates that Meta is supplying or requiring or encouraging the use of Dr. Forrest's name or likeness.

For those reasons, we'd ask that the Court would certify its order for interlocutory appeal under Section 1292(b) and stay proceedings pending that appeal. Thank you.

**THE COURT:** Thank you.

The case has been well briefed and well argued today. I appreciate everyone's time.

I am going to deny the Motion for Interlocutory Appeal. In order to keep things moving, I'm going to do that orally here instead of submitting and writing a written decision. So, and I'm going to deny it on the ground that I do not think that the question presented is particularly appropriate as a controlling question of law. I do think that at some level it involves a question about what is -- what facts are possible based on the various pleadings in the complaint, as opposed to

a clean question of law. And I also think that certifying the question won't be particularly helpful in advancing the ultimate termination of this litigation. So on that ground -- those grounds and in my discretion, I am going to deny the Motion for Interlocutory Appeal, which also effectively moots the pending Motion to Stay. So that is -- the Motion to Stay is denied on that ground. I am going to lift the stay, make it clear that the stay has now been lifted, and the parties can proceed to litigate this matter.

What I would like to propose is that we set a case management conference in this case for either October 3rd or October 10th, if that date, if one of those dates works.

**MR. MATZ:** I think that's when the Jewish high holidays are.

**THE COURT:** Oh, that's a fair point.

(Reporter clarification.)

**THE COURT:** You need to say your name for the reporter, as well.

**MR. MATZ:** This is Joshua Matz.

I was going to say I can't make it on October 3rd or 10th because those are the Jewish high holidays. Unless one of my co-counsel would like to come alternatively, I may ask if the Court has other days that are available.

**THE COURT:** Would the -- I think the 24th~-- the 17th is not available, I will be out. I think the 24th is

available. Is that correct? Twenty-fourth is not available. Halloween? We could also do -- is September 25th available or September 26th available?

So September 26th is also available.

**MR. MATZ:** Your Honor, September 26th is good for plaintiffs.

**THE COURT:** Put your name on the record, please, for the court reporter.

**MS. DEARBORN:** I apologize, Your Honor. Meredith Dearborn for Meta.

If October 31st is available for the Court, that would be preferable for Meta just based on counsels' schedule.

**THE COURT:** Would October 31st work?

**MR. MATZ:** Yes, Your Honor, I'm available on October 31st. That is a fair bit of time, so I might propose if that's the date, that there be some direction as to meeting and conferring and proposing something in the meantime, so we don't just stall for a few months.

**THE COURT:** No, and I understand that.

**MR. MATZ:** Thank you Your Honor.

**MS. DEARBORN:** That's fine, Your Honor. We would be willing to meet and confer and submit a case management statement with a proposed scheduled for the case in advance of that conference.

**THE COURT:** Absolutely.

So let me say, I wanted to get this on calendar. So we'll set a case management conference for 1:00 p.m. on October 31st here in my courtroom, and I want -- two weeks in advance of that, I'll need a full joint case management conference statement that includes a proposed litigation schedule.

I do think that this question of Section 230 immunity does seem like an appropriate question for an early summary judgment motion, you know, from both sides, so we can get this resolved. And I think that I generally have a rule of one summary judgment motion for party. I will waive that, and I hereby waive that rule to allow a early summary judgment motion focused exclusively on the question of Section 230 immunity.

So what I would like the parties to do in their proposed schedule is to propose a -- include in that a proposed briefing schedule and a hearing schedule on a Motion for Summary Judgment on the Section 230 question, and obviously you'll need to work together to decide what time is necessary for discovery focused on that. And I'll make it clear that, you know, my understanding is that is going to be an early motion, so I will expect plaintiffs to undertake the discovery early in the process that they think they need on that motion, and if we -- I see a summary judgment motion and the plaintiffs come in and ask for a -- do a 56(d) request for more time, you know, and they haven't done everything and you haven't done everything necessary to develop that factual record in advance,

you know, I'll look askance at that request to some extent.

So that to me seems like, you know, the next step forward really should be, you know, we've spent a lot of time on it, and we'll get to spend more time on it, but hopefully including in the plan for litigating the entirety of the case, you know, revisiting this issue as quickly as we can after the parties have had an opportunity to develop the factual record.

**MS. DEARBORN:** Understood, Your Honor.

**MR. MATZ:** Thank you, Your Honor. May I ask one quick follow-up question?

Some of the questions relating to the Section 230 immunity are probably going to involve some fairly complicated technological matters.

**THE COURT:** Uh-huh.

**MR. MATZ:** Would it be safe to say that it would be appropriate to include at least some period of expert discovery in that initial phase for Section 230 so we have the chance to ensure that we fully understand what potentially may be a fair amount of more technological information?

**THE COURT:** I mean, I think the parties should meet and confer on that topic --

**MR. MATZ:** Okay.

**THE COURT:** -- and then have that discussion. And if we need -- if there's a dispute about that, put that in the joint case management conference statement and we'll discuss

that on October 31st.

**MR. MATZ:** Thank you.

**MS. DEARBORN:** Thanks, Your Honor.

**THE COURT:** Anything else that the parties need from me today?

**MS. DEARBORN:** I don't believe so, Your Honor.

**MR. MATZ:** No, thank you, Your Honor.

**THE COURT:** Okay. Thank you.

(Proceedings concluded at 10:52 a.m.)

**---o0o---**

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Monday, August 26, 2024

Stephen W. Franklin, RMR, CRR, CPE
Official Reporter, U.S. District Court