Karen L. Dunn (*pro hac vice*)
kdunn@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

Walter F. Brown Jr. (130248)
wbrown@paulweiss.com
Meredith R. Dearborn (SBN: 268312)
mdearborn@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

Jacob M. Heath (SBN: 238959)
jheath@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

DR. ANDREW FORREST,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 22-cv-03699-PCP (VKD)

**STIPULATION AND ~~[PROPOSED]~~ ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

The Honorable Judge Virginia K. DeMarchi

Re: Dkt. No. 176

MODIFIED BY THE COURT

**1. PURPOSE**

This Stipulation will govern discovery of electronically stored information ("ESI") ("eDiscovery") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of ESI, and any other applicable orders and rules.

**2. COOPERATION AND PROPORTIONALITY**

The parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI to promote the "just, speedy, and inexpensive determination" of this action, as required by Fed. R. Civ. P. 1. The parties' cooperation includes propounding reasonably particular discovery requests, identifying appropriate limits to eDiscovery, including limits on custodians, identifying relevant and discoverable ESI, establishing time periods for eDiscovery and other parameters to limit and guide preservation and eDiscovery issues. The failure of counsel or the parties to cooperate in facilitating and reasonably limiting eDiscovery requests and responses will be considered in cost-shifting determinations. The parties agree to use reasonable, good faith, and proportional efforts to preserve relevant information and to identify responsive information for review and potential production, consistent with Fed. R. Civ. P. 26(b) and the Sedona Conference Principles.[1]

**3. LIAISON**

Each party shall designate or make available, an individual or individuals as eDiscovery Liaison(s) who must:

(a) be prepared to meet and confer on eDiscovery-related matters and to participate in eDiscovery dispute resolution;

(b) be knowledgeable about the party's eDiscovery efforts;

(c) be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

[1] The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1 (2018).

(d) be, or have reasonable access to those who are, knowledgeable about the technical aspects of eDiscovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**4. PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

(a) The parties will continue discussing the sources and types of relevant ESI they believe should be preserved.

(b) The parties will agree on the number of custodians per party for whom ESI will be preserved. The parties agree to meet & confer to discuss additional custodians as reasonably necessary (i.e., when specific evidence warrants expanding the initial custodian list).

(c) The following data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and matter-specific measures will not be taken to preserve ESI from these sources, which may be retained pursuant to standard business processes, unless otherwise ordered by the Court:

1. backup systems and/or tapes used for disaster recovery; and
2. systems no longer in use that cannot be accessed by using systems currently in use by the party.

(d) In addition to the agreements above, the parties agree data from these sources could contain relevant information but under the proportionality factors, should not be preserved:

1. Deleted, slack, fragmented, or unallocated data only accessible by forensics.
2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last-opened or last modified dates.

5. Mobile device activity logs.

6. Server, system, or network logs.

7. Dynamic fields in databases or log files not stored or retained in the usual course of business.

8. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the party.

(e) The parties acknowledge that Meta Platforms, Inc. is subject to various privacy regulations and court orders that require the disposition of identifiable user data. To the extent that identifiable user data subject to routine disposition as required by privacy regulations and court orders is identified by a Requesting Party[2] as relevant to the claims or defenses in this case, the parties will meet and confer on preservation of such information as it exists at that time, including the feasibility of such preservation and the type and import of the user data implicated.

**5. SEARCH**

Each Producing Party[3] agrees to disclose the method or methods the party is employing to identify responsive documents, including but not limited to identification of custodians, search terms, and date ranges.

(a) Search Terms: After a meet-and-confer process concerning sources, custodians, data types, date ranges, and search terms, each Producing Party may use the search terms associated with such protocol to locate potentially responsive documents for collection and/or culling after collection. If intending to use search terms, each

---

[2] The term "Requesting Party" shall have the same ~~definition~~ meaning as the term "Receiving Party" as set forth in the Protective Order entered in this matter.

[3] The term "Producing Party" shall have the same definition as set forth in the Protective Order entered in this matter.

Producing Party will first develop and share its proposed reasonable search terms to locate documents within its possession, custody or control that are potentially responsive to discovery. At or around the time it makes this disclosure, the Producing Party shall also provide a hit report (to include unique hits, hits with families, and total number of documents hit) for the search terms proposed to be applied to each data source. In preparing its proposed search terms, a Producing Party may review a "null set sample" for each data source. The "null set sample" is a statistically valid (95% ±5), randomly generated sample set of documents from a given data source that do not hit on any search terms, which the Producing Party reviews for relevant, responsive, and non-privileged documents. At the time the Producing Party discloses its proposed search terms to the Requesting Party, it may provide the results of its review of the "null set sample"—i.e., a disclosure of how many relevant, responsive, and non-privileged documents from the null set sample were not captured by the proposed search terms—to demonstrate the effectiveness of its proposed search terms. If the Requesting Party objects to the sufficiency of the Producing Party's search terms, the parties agree to conduct one round of the two-step process identified below:

1. No later than 5 business days after receiving the Producing Party's disclosure of proposed search terms and accompanying information, the Receiving Party may propose to the Producing Party a reasonable number of additional or alternative search terms for one or more data sources, and may request that the Producing Party provide hit reports for the additional or alternative search terms for one or more data sources.

2. The Producing Party will apply the search terms to evaluate whether they return a sufficient number of additional responsive documents to warrant the addition of the search terms. The Producing Party will inform the Requesting Party whether or not the Producing Party will include the additional or alternative proposed search terms. In the event the Producing

Party does not agree to include the additional or alternative proposed search terms, the Producing Party will make a good faith effort to provide a de-duplicated hit count or, if it is not reasonably practical to do so, will provide some basis or explanation for the declination to include the additional or alternative proposed search terms.

(b) Technology Assisted Review: A Producing Party will disclose its use of technology assisted review ("TAR") when used to filter out or exclude non-responsive documents. A Producing Party shall disclose the following information about its use of TAR or similar advanced analytics to filter out or exclude non-responsive documents: (1) the custodians and data sources against which TAR or advanced analytics will be run; (2) the TAR or advanced analytics tool being used; and (3) the measure(s) used to validate the results of the TAR methodology or similar advanced analytics.

(c) Nothing in this Stipulation may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents (1) captured by search terms; (2) identified as potentially responsive through TAR; or (3) identified as potentially responsive based on location, source or other criteria, are in fact responsive to the Requesting Party's discovery requests. Similarly, nothing may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be responsive. Further, nothing in this Order requires the production of documents captured by any search term that are not responsive to the Requesting Party's request, privileged, or otherwise protected from disclosure. For the avoidance of doubt, if any part of a document is responsive, the entire document and its attachments will be produced, except any that must be withheld or redacted on the basis of any privilege or work-product protection.

(d) Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. For

example, hash values may be filtered out during this process using the National Software Reference Library ("NSRL") NIST hash set list.

(e) De-Duplication: Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI based on hash values (e.g., MD5 or SHA-1) across custodians. For emails with attachments, the hash value will be generated based on the parent/child document grouping.

(f) Email Threading: Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced.

**6. PRODUCTION FORMATS**

The parties agree to produce documents in the formats described in Appendix 1 to this Stipulation. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree, to the extent practicable, not to materially degrade the searchability of documents as part of the document production process.[4]

**7. TIMING OF PRODUCTIONS**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties may produce documents on a rolling basis (i.e. breaking the full document production into multiple productions made on different dates).

**8. DOCUMENTS PROTECTED FROM DISCOVERY**

The parties have submitted a separate 502(d) Order that governs the treatment of

[4] For any social media, messages (e.g., SMS, MMS, iMessage, etc.), collaboration tools (e.g., MS Teams, Slack, GroupMe), mobile phone data, cloud environments (e.g., Dropbox, Google Drive, One Drive, etc.), databases, or proprietary systems, the parties will meet and confer regarding the production format prior to collection, review, and production.

confidential documents and information produced or disclosed in discovery.

**9. PRIVILEGE LOGS**

(a) Production of Privilege Logs[5]: Except as provided otherwise below, for any document withheld in whole, the Producing Party will produce privilege logs in MS Excel format. The Producing Party shall make reasonable efforts, consistent with Section 4 of the Standing Order for Civil Cases for Magistrate Judge Virginia K. DeMarchi, to provide privilege logs on a rolling basis. In all events, the Producing Party will ensure that all final privilege logs are produced within 60 calendar days following the substantial completion of document production.

(b) Exclusions from Logging Documents Reflecting Privileged Communications or Work Product: Communications or work product involving counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications or work product sent to, received from, or authored by counsel that relate to this case likewise need not be placed on a privilege log.

(c) Metadata Log: Each party's privilege log must provide the objective metadata listed below (to the extent it is reasonably available and does not reflect privileged or protected information) and the privilege or protection being asserted (e.g., attorney-client; attorney work product; joint defense and/or common interest, etc.). In all events, each party's privilege log must be sufficiently detailed and informative to justify the privilege or protection claimed, as required by Magistrate Judge Virginia K. DeMarchi's Standing Order, and must "describe the nature of the documents, communications, or tangible things not produced or disclosed," as required by Fed. R. Civ. P. 26(b)(5)(A)(ii). Attorneys or their staff must be identified on the log with an asterisk (or similar notation).

[5] For the avoidance of doubt, the provisions of this Section 9 shall not apply to privilege logs created for purposes of other cases or investigations and re-produced in this case. To the extent such logs are re-produced, they shall be provided in the same format in which they were originally produced.

1. Objective metadata includes the following fields, as defined in this Order (to the extent these fields are available for a particular document), though it does not have to be in the order set forth below:

   1. BEGBATES
   2. ENDBATES
   3. BEGATTACH
   4. ENDATTACH
   5. FILENAME
   6. EMAIL SUBJECT
   7. AUTHOR
   8. TO/FROM/CC/BCC
   9. DATE SENT
   10. DATE RECEIVED
   11. DATE CREATED
   12. ALL CUSTODIANS

2. Email: The parties agree to log only the Last In Time Emails in a thread and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the Last In Time Email. Further, each individual email within the thread of the Last In Time Email need not be logged if the participants of each email within the thread are all disclosed in the log entry. Attachments to emails shall be logged as separate documents on the log, with family relationships identified.

(d) Challenges to Privilege Claims: Following the receipt of a privilege log or documents that have been redacted for privilege, a Receiving Party may identify, in writing (by Bates/unique ID), the particular documents that it believes require further explanation. The Producing Party shall use reasonable efforts to respond to

reasonable requests (in number or volume) within 14 calendar days. If a Party challenges a request for further information, the parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court in accordance with the procedure outlined in the Standing Order for Magistrate Judge Virginia K. DeMarchi.

(e) Changes to Redactions or Privilege Designations: Where a Producing Party changes, in whole or in part, the redaction or privilege designation of a document, the updated document shall be produced with an overlay and load file indicating the document being replaced. The replacement document shall bear the same Bates numbers.

(f) Nothing in this Section 9 shall be interpreted to require disclosure of nonresponsive information or responsive information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Nothing in this Stipulation waives any applicable privilege or other legal basis under which information may not be subject to production.

(g) The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

(h) Nothing in this Section 9 shall preclude or impair any and all protections provided by any Protective Order(s) or 502(d) Order agreed and entered into by the parties.

(i) Communications may be identified on a privilege log by category, rather than individually, if appropriate.

**10. MODIFICATION**

This Stipulation may be modified by Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

[SIGNATURES APPEAR ON NEXT PAGE]

Dated: December 27, 2024

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Karen L. Dunn*

Karen L. Dunn (*pro hac vice*)
kdunn@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, D.C. 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

Walter F. Brown Jr. (SBN: 130248)
wbrown@paulweiss.com
Meredith R. Dearborn (SBN: 268312)
mdearborn@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

Jacob M. Heath (SBN: 238959)
jheath@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

*Attorneys for Defendant Meta Platforms, Inc.*

Dated: December 27, 2024

**HECKER FINK LLP**

*/s/ John C. Quinn*

John C. Quinn*
jquinn@heckerfink.com
Amit Jain*
ajain@heckerfink.com
Hyatt Mustefa*
hmustefa@heckerfink.com
Jocelyn Hassel*
jhassel@heckerfink.com

Tayonna Ngutter*
tngutter@heckerfink.com
350 Fifth Avenue, 63rd Floor
New York, NY 10118
T: 212.763.0883

Joshua Matz*
jmatz@heckerfink.com
1050 K Street NW | Suite 1040
Washington, DC 20001
T: 212.763.0883

* *admitted pro hac vice*

**SINGLETON SCHREIBER, LLP**

Leslie Brueckner (SBN: 140968)
lbrueckner@singletonschreiber.com
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
Telephone: (619) 573-1851

**BAILEY & GLASSER LLP**

Elizabeth Ryan (*pro hac vice*)
eryan@baileyglasser.com
176 Federal Street, 5th Floor
Boston, MA 02110
Telephone: (617) 439-6730

**DEREK G. HOWARD LAW FIRM, INC.**

Derek G. Howard (SBN: 118082)
derek@derekhowardlaw.com
Ashley M. Romero (SBN: 286251)
ashley@drekhowardlaw.com
42 Miller Avenue
Mill Valley, CA 94941
Telephone: (415) 432-7192
Facsimile: (415) 524-2419

*Attorneys for Plaintiff Dr. Andrew Forrest*

**CIVIL LOCAL RULE 5-1(i)(3) ATTESTATION**

I, Karen L. Dunn, am the ECF user whose identification and password are being used to file this document. I attest under penalty of perjury that concurrence in this filing has been obtained from counsel listed above.

Dated: December 27, 2024

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ Karen L. Dunn*
Karen L. Dunn (*pro hac vice*)

AS MODIFIED BY THE COURT
**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated: December 31, 2024

Virginia K. DeMarchi
Hon. Virginia K. DeMarchi
UNITED STATES MAGISTRATE JUDGE

## APPENDIX 1: PRODUCTION FORMAT

1. **Production Components.** Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

(a) an ASCII (or UTF8) delimited data file (.DAT) using standard delimiters;

(b) an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance or Relativity);

(c) TIFF images;

(d) and document level .TXT files for all documents containing extracted full text or OCR text.

(e) Parent-child relationships will be maintained in production. Links within a document are not considered attachments. Non-substantive automatically-generated embedded files, such as logos, embedded, non-substantive formatting files such as .ole or .dll formats, or confidentiality legends need not be produced as separate attachments. If a particular document warrants a different production format, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

2. **Production Media and Access Controls.** Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media shall also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the Producing Party's name; (d) the production date; and (e) the Bates Number range of the materials contained on the Production Media. Nothing in this Stipulation will preclude or impair any and all protections provided to the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the Producing Party must be protected in transit, in use, and at rest by all in receipt of such data. The parties will use best

efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, the parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

3. **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

4. **Metadata Fields.** Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate or edit manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALLCUSTODIAN(S), (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, (j) TEXTFILEPATH, and (k) HASHVALUE, which should be populated by the party or the party's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| PRODVOL | Production volume |
| ALLCUSTODIAN(S)[6] | Individuals from whom the document was obtained and de-duplicated out during global de-duplication |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| HASHVALUE | hash value of document (e.g. MD5 or SHA-1) |
| AUTHOR | Any value populated in the Author field of the document properties (Edoc or attachment only) |
| DOCDATE | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) (Edoc or attachment only) |
| FILENAME | Filename of an electronic document |
| ALLFILEPATH(S)[7] | Original paths to the individual source file(s). Includes path up to and including internal path of containers |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the “To” line of the email |
| CC | All recipients that were included on the “CC” line of the email |

[6] The parties agree to use reasonable efforts to supplement this field for all produced documents on each subsequent production.

[7] The parties agree to use reasonable efforts to supplement this field for all produced documents on each subsequent production.

| Field Name | Field Description |
|---|---|
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM SS) as processed per the TIMEZONE field |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM SS) as processed per the TIMEZONE field |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| REDACTIONS | Indicate Yes/No if document redacted |
| TIMEZONE | Reflects the time zone corresponding to the DATETIMERECEIVED and DATETIMESENT fields |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |

5. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except as provided below. The parties shall take reasonable efforts to process presentations (*e.g.* MS PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF image. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Upon written request, the Producing Party shall provide a higher quality TIFF image or the native or original file provided the volume of documents selected for such re-production is reasonable.

6. **Color.** The parties may request color copies of a limited number of documents where color is necessary to accurately interpret the document.

7. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

8. **Native files.** Spreadsheets (*e.g.*, MS Excel) will be produced in native format. Spreadsheets may be redacted in native format or as redacted TIFF files with OCR Text Files. To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

9. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

10. **Databases and Other Structured Data.** The parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the Receiving Party and that its production does not impose an undue burden on the Producing Party, by, for example, requiring development of reports and/or software code to extract the information. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a party is constrained from producing responsive ESI because of a third-party license or because software necessary to view

the ESI is hardware-dependent, the parties shall meet and confer to reach an agreement on alternative methods to enable the Requesting Party to view the ESI.