PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

NEW YORK
BRUSSELS
HONG KONG
LONDON
LOS ANGELES

SAN FRANCISCO
TOKYO
TORONTO
WILMINGTON

DIRECT DIAL: +1 202 223 7458
EMAIL: MZAPPALA@PAULWEISS.COM

May 8, 2025

**VIA CM/ECF**

Hon. Virginia K. DeMarchi
United States District Court
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

      Re: *Dr. Andrew Forrest* v. *Meta Platforms, Inc.*, No. 5:22-cv-03699-PCP (N.D. Cal.)

Dear Judge DeMarchi:

      Pursuant to this Court's Standing Order for Civil Cases, Plaintiff Dr. Andrew Forrest and Defendant Meta Platforms, Inc. respectfully submit this Joint Discovery Letter Brief.

**I.      STATEMENT OF DISPUTE**

      Meta requested that Plaintiff search for documents concerning Meta's advertising tools and the alleged scam advertisements in Plaintiff's possession, custody, or control, including through a custodial search.  Plaintiff produced scam advertisements in his possession and the documents he disclosed in the Australian criminal proceedings.  He objected to additional searches as irrelevant to Section 230, and disproportionate.  In addition, the complaint alleges Plaintiff identified 1,154 scam advertisements, and Plaintiff produced far fewer.  Plaintiff explained this is because the alleged advertisements were "track[ed]" through "imperfect" efforts.  Meta seeks information about those efforts, and Plaintiff objects on work product and other grounds.

**II.     DEFENDANT'S POSITION**

      **A.  Plaintiff Refused to Search for Documents Responsive to Meta's Requests**

      The first phase of discovery encompasses "what tools or other processes (whether automated or not) impact[] the content" of an alleged scam advertisement "from the 'input' by a third party to the 'output' to the end user or audience."  Dkt 192 ¶ 1.  Accordingly, Meta requested from Plaintiff documents and information concerning:

- Meta's advertising tools, RFPs 6-8;

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2

- Plaintiff's allegations about Meta's advertising tools, RFPs 15-27, ROG 1;

- Plaintiff's use of Meta's advertising tools/Plaintiff's creation of advertisements, RFPs 9-11, ROGs 2-3; and

- The alleged scam advertisements about which Plaintiff complains, RFPs 2, 5, 11-14, ROGs 1, 4.

Plaintiff produced certain scam advertisements and associated metadata. He also produced filings and his prior disclosures from the unsuccessful criminal proceedings he commenced against Meta in Australia. But Plaintiff refused to search for any other documents within his possession, custody, or control concerning Meta's advertising tools or the alleged scam advertisements. He should be ordered to do so.

The materials Meta requested are likely to exist within Plaintiff's possession, custody, or control, especially in his custodial files. Plaintiff publicly touted his close involvement in the investigation of alleged scam advertisements, and Meta's advertising tools purportedly used to create them. For example, Plaintiff alleges that he "spent hundreds of thousands of dollars investigating the criminals behind the Scam Ads, . . . enhancing his cybersecurity team's capabilities, and engaging external fraud detection services to monitor Meta's real time response to these Scam Ads." TAC ¶ 59. Likewise, Plaintiff reportedly "created a mission-control-style room with four to seven cybersecurity professionals" who work "around the clock" to "scour Meta platforms for fake profiles and advertisements featuring his likeness and report them to the company," and "sen[t] members of his private security team to work with Australian Federal Police to track down the international crime syndicates alleged to be behind the advertisements." Alex Perry, *The Billionaire Suing Facebook to Remove His Face from AI Scams*, WALL ST. J. (Aug. 12, 2024 10:00 a.m.), https://www.wsj.com/tech/ai/the-billionaire-suing-facebook-to-remove-his-face-from-ai-scams-50aa222e. Plus, Plaintiff alleges he "penned an open letter" to Mark Zuckerberg in which Plaintiff complained that his "image[] and the images of others are being used to encourage [Facebook's] users to invest in fraudulent cryptocurrency schemes," and that "[t]he criminals responsible continue to purchase advertising space from Facebook, running new incarnations of the same scams." TAC ¶ 78.

The documents and information Meta seeks are directly relevant to the first phase of discovery, on multiple grounds. For example, Plaintiff's documents regarding the capabilities of Meta's advertising tools and processes—such as whether and the extent to which (i) Meta's so-called targeting tools do not affect an advertisement's content; (ii) Meta's advertising tools (including its generative AI tools) cannot conjure a celebrity's name or image; or (iii) Meta's advertising tools do not encourage the use of celebrity names or likenesses—reflect party admissions on issues at the core of the first phase of discovery. They also relate directly to the Third Amended Complaint's allegations about the functionality of Meta's advertising tools and processes. *See, e.g.*, TAC ¶¶ 119, 133, 135. Meta is entitled to discover information and documents related to those allegations. *See McColm* v. *S.F. Hous. Auth.*, 2007 WL 218920, at *2 (N.D. Cal. Jan. 29, 2007). For the same reasons, communications about the alleged investigations into scam advertisements that Plaintiff directed are also relevant. *See, e.g.*, TAC

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

3

¶¶ 57, 59, 60, 80.  Such communications could include, among other things, communications illustrating Plaintiff's understanding that alleged scam advertisements were created by scam advertisers, and not by Meta, or Plaintiff's views as to whether a particular advertisement even qualifies as a "scam" advertisement.  Tellingly, in response to these explanations, Plaintiff does not claim these materials are irrelevant, only that they may be inadmissible.  That is not a valid objection, as "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

None of the reasons Plaintiff has offered for his refusal to search for additional documents responsive to Meta's requests within his possession, custody, or control hold water.

*First*, Plaintiff contended that searching for responsive documents is unnecessary because any relevant documents, to the extent they exist, would have been encompassed in Plaintiff's re-produced disclosures from the Australian criminal proceedings.  Not so.  Plaintiff has never represented that his disclosures involved a custodial collection or application of search terms across Plaintiff's email accounts, devices, or hard copy documents, much less any entities from which Plaintiff has a legal right to obtain documents.  And even if they did, Plaintiff's prior disclosures were focused on different topics.  Meta's advertising tools, and the use of those tools with respect to the alleged scam advertisements, is the focus of the first phase of discovery.  By contrast, the Australian criminal proceedings—and, accordingly, Plaintiff's disclosures in those proceedings—were focused almost entirely on Meta's efforts to combat scams and frauds appearing on its services.  Of the 47 paragraphs in Dr. Forrest's Statement of Material Facts in the criminal proceeding, only three mention Meta's advertising tools, in passing.

*Second*, Plaintiff maintained that a search would be fruitless because relevant materials simply do not exist within his possession, custody, or control.  Plaintiff, his counsel reported, is "too busy" to have corresponded about Meta's advertising tools or the alleged scam advertisements.  But Plaintiff cannot excuse himself from producing responsive documents by claiming they do not exist *unless and until* he has first conducted a reasonable search for them—exactly what he refused to do.  *See, e.g.*, *Zhou* v. *Chai*, 2023 WL 3409460, at *3 (N.D. Cal. May 11, 2023), *report and recommendation adopted*, 2023 WL 4991859 (N.D. Cal. June 14, 2023); *Bakhtiari Corp.* v. *Register Tapes Unlimited Inc.*, 2013 WL 2253182, at *2 (N.D. Cal. May 22, 2013); *Medora* v. *City & County of San Francisco*, 2007 WL 9810901, at *5 (N.D. Cal. June 8, 2007); *Collaboration Props., Inc.* v. *Polycom, Inc.*, 224 F.R.D. 473, 477-78 (N.D. Cal. 2004); *see also* ECF No. 179 at 3-4.  In other words, it is Plaintiff's obligation to show that the requested materials do not exist.  Nor did Judge Pitts categorically say that "all the evidence relevant to the defense is in Meta's possession at this time." Pl.'s Letter.  What Judge Pitts said was that this was "presumably" the case, but did not foreclose Meta from seeking discovery from Plaintiff.  8/22/2024 Tr. at 22:16-17 (Pitts, *J.*).

*Third*, Plaintiff claimed, without any detail, that it would be unduly burdensome and disproportionate to search for documents in response to Meta's requests.  But Meta repeatedly offered to work collaboratively with Plaintiff to locate responsive materials while attempting to minimize Plaintiff's burden, including by negotiating custodians and search terms.  Plaintiff inexplicably declined.

*Fourth*, Plaintiff's purported threat to seek discovery from Mr. Zuckerberg—which Plaintiff has raised only now in response to Meta's request for discovery from Plaintiff— is merely an attempt to distract from Plaintiff's own refusal to engage in custodial discovery. Mr. Zuckerberg is not an appropriate source of discovery on the capabilities of Meta's advertising tools and processes, in light of the materials, information, and witnesses that Meta has disclosed—and continues to disclose—on that topic. In contrast, Plaintiff has confirmed that he is an appropriate source of discovery as he listed himself on his own initial disclosures.

### B. Plaintiff Refused to Explain or Produce Documents Showing How He Tracked the Alleged Scam Advertisements Alleged in His Own Complaint

Meta requested that Plaintiff produce "Every Alleged Advertisement," RFP 1, as well as "All Documents concerning the allegation, in Paragraph 80 of the [Third Amended] Complaint, that 'Dr. Forrest identified *1,154* fraudulent advertisements using his image and/or manipulated footage of him in the six-month period between April 26, 2023 and November 14, 2023,'" RFP 14.

Although Plaintiff agreed to produce alleged scam advertisements, and associated metadata, he produced far fewer than the 1,154 alleged in the Third Amended Complaint. Plaintiff's explanations for his failure to do so have been insufficient. Plaintiff suggested, without much detail, that he is incapable of producing 1,154 alleged scam advertisements, because they were "track[ed]" through "imperfect" efforts. Mar. 25, 2025 Hrg. Tr. 21:2-13. Meta seeks not privileged information, but merely an explanation or documents showing how the 1,154 alleged scam advertisements were "track[ed]"—information to which Meta is entitled.

### C. Proposed Resolution

Meta respectfully requests this Court to order Plaintiff to conduct a diligent and reasonable search for materials within Plaintiff's possession, custody, or control that are responsive to Meta's requests concerning Meta's advertising tools and the alleged scam advertisements. That should include a search of Plaintiff's custodial documents.

Meta also requests this Court to order Plaintiff to produce non-privileged documents showing how he "track[ed]" the 1,154 alleged scam advertisements, or to otherwise explain the same. Plaintiff has not previously asserted that the "tracking" information is privileged, and Meta does not seek any privileged information.

### III. PLAINTIFF'S POSITION

As Meta requested, the only question during this phase is "whether Meta's ad systems . . . contribute[] to the content of the ads." ECF 121 at 9. And because Meta's proprietary ad systems are the prototypical black box, "all the evidence relevant to the defense is in Meta's possession at this time." *See* 8/22/2024 Tr. at 22:16-17 (Pitts, *J*).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

5

Nevertheless, Meta demands that Plaintiff conduct custodial searches for communications that are either entirely fanciful, irrelevant to material contribution, or already in Meta's possession. There is no coherent argument that these documents bear on the limited Section 230 question. Rather, this custodial search demand is a tool that Meta has wielded throughout discovery like a lever—cranking up or easing off as negotiations ebb and flow. Now, having been forced to broaden the scope of discovery and actually answer Plaintiff's interrogatories, with mere weeks to substantial completion, Meta fires its shot. The Court should reject Meta's tactics and keep discovery on track.

**A. Meta Has Not Shown a Need For a Custodial Search of Plaintiff's Documents**

Meta is the party with exclusive access to the *only* information that will answer whether Meta's proprietary tools or processes contribute to the content of Scam Ads. *Meta* identified over 230,000 Scam Ads. *Meta* has all versions, all Ad Creative, and all data showing which tools and processes operated on them and what they did. And only *Meta* knows its source code and how its systems were designed. In this phase, focused solely on Meta's affirmative defense, about Meta's own proprietary software, Meta exclusively possesses the relevant evidence. Accordingly, insofar as Meta's document requests sought sweeping searches, Plaintiff promptly objected on relevance and proportionality grounds (among others), and he has not budged from that position.

Meta has never established any relevance or proportionality with respect to custodial searches in this phase, and its position statement fails to do so here. *See Gilead Scis. v. Merck*, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) ("[A] party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case.").

First, there is no basis for Meta's fanciful notion that Plaintiff may have made defense-bolstering admissions that Meta's "tools do not affect an advertisement's content." In fact, all indications are to the contrary. Plaintiff has already produced the voluminous disclosures made in the Australian criminal proceedings, which—at Meta's urging—Judge Davila deemed sufficiently parallel to this case to warrant temporarily staying this litigation. *See* ECF 79. And because Plaintiff served as private prosecutor, under Australian criminal law he bore an affirmative obligation to disclose all evidentiary material relevant to the underlying charge—including any documents that may have assisted Meta's defense. *See* Criminal Procedure Act (WA) [2004] § 42 (Austl.). These disclosures were assembled with extensive, active engagement by Meta's counsel. If a defense-bolstering admission existed, some trace of it would surely be found there. But Meta offers nothing.

Second, even if Plaintiff had fired off some email expressing an opinion about "the capabilities of Meta's advertising tools and processes," as Meta imagines, such a statement would not weigh on the material contribution issue. This is not like *McColm*, where the plaintiff's direct experiences were pivotal to assessing her discrimination claims. *See McColm v. S.F. Hous. Auth.*, 2007 WL 1575883, at *6 (N.D. Cal. May 29, 2007). Here, the imaginary Forrest admissions would not be based on any firsthand knowledge of Meta's proprietary systems—how could they, when

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

6

Meta *still* has not produced any meaningful non-public information about its systems.[1] Courts regularly find such testimony "substantially more prejudicial than probative," because it lacks foundation or amounts to inadmissible lay opinion. *See Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 504101, at *1-2 (N.D. Cal. Feb. 20, 2008); *see also Bartlett v. Mut. Pharm. Co.*, 2010 WL 3156555, at *5 (D.N.H. July 26, 2010) (plaintiff's admission "has little probative value, not only because of her lack of expertise, but also because a witness who actually has such expertise...will testify").

In reality, Meta's demand for custodial searches is a discovery tactic—a retaliatory and dilatory one. Meta first demanded custodial searches at the end of January, after we spent weeks pressing Meta on its deficient discovery responses. Meta also insisted that its custodial search demand be included in lead counsel conferences about the Scam Ad search and interrogatory disputes, but chose not to bring the issue to the Court. Nor did Meta raise the issue at the March 18 conference, despite having raised it again and insisted on receiving our response—unchanged since January—the day before the hearing. And Meta still did not follow up with Plaintiff for nearly a month after that, only raising the issue just before substantial completion when Meta has finally been forced to produce meaningful data about the Scam Ads. The Court should not indulge this gamesmanship.

Finally, if Meta intends to use Plaintiff's communications about his subjective views to try to prove its Section 230 defense, Plaintiff will have to prepare to rebut that by taking additional discovery, including testimony, of Meta executives' subjective views. After all, Meta's executives—unlike Plaintiff—would actually know how Meta's content modification and targeting tools and processes work. Just last week, Mark Zuckerberg opined that Meta's tools are "pretty close" to fully creating—not just contributing to—the Ad Creative, and that increasingly Meta—not advertisers—determines who sees the ads.[2] Clearly, Mr. Zuckerberg has unique insight into Meta's ad systems (notwithstanding Meta's suggestion that the head of Meta is not a knowledgeable witness about some of its most important software), and he and other executives would certainly be involved in highest-level discussions about these systems.

In the end, Meta has offered no basis to grant its dilatory request for irrelevant and disproportionate searches for Plaintiff's communications. The Court should reject Meta's tactics and keep discovery on track.

### B. Meta Has Not Shown a Need for Scam Ads It Already Has, Nor a Substantial Need For Plaintiff's Work Product

Early in discovery, to aid Meta's production of Scam Ads and associated data, Plaintiff produced copies of Scam Ads and ad IDs in his possession, custody, and control located after a reasonable search. As Plaintiff has explained repeatedly to Meta—a good-faith explanation that

---

[1] Accordingly, the topics associated with Dr. Forrest in the Initial Disclosures did not include Meta's proprietary tools and systems.
[2] *See* https://stratechery.com/2025/an-interview-with-meta-ceo-mark-zuckerberg-about-ai-and-the-evolution-of-social-media/.

Meta now mocks with crib quotes—the documents Plaintiff produced were collected pursuant to real-time tracking efforts by counsel and agents, all of whom were external to Meta's platforms. As a result, these efforts were necessarily imperfect: Scam Ads may have been noted by other means (*e.g.*, advertiser page or advertiser ID); Scam Ads may have been taken down between being noted by counsel and captured; or Ads Library may have displayed one ad ID while noting there were additional ads using the same Ad Creative. Meta now quibbles over the size of those productions, wafting suggestions that the best estimate counsel could muster at the pleading stage—a mere 1,154, *see* TAC ¶ 59—might have been inaccurate.

This is baffling. Meta itself identified over 230,000 Scam Ads, confirming that Plaintiff's counsel's pre-filing attempts to track down Scam Ads were indeed, as outsiders, unavoidably imperfect.[3] Rather than move on and focus on the actual population, Meta now seeks to pry into what counsel and its agents did and communicated about as they crafted the pleadings. The request is plainly improper—irrelevant, wasteful, and an obvious (again dilatory) effort to pry into and threaten Plaintiff's privileges and work-product protection.

Obviously, counsel's notes, summaries, and analyses regarding these Scam Ads constitute attorney work product, *see Rubalcava v. City of San Jose*, 2022 WL 484988, at *2 (N.D. Cal. Feb. 16, 2022) (VKD)—a point we did make both in a February 6 conference and a February 7 letter. As a matter of law, such material cannot be disclosed absent a showing by Meta that it "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* at *7 (citing Rule 26(b)(3)(A)(ii)). Meta has not shown *any* need for Plaintiff's documents regarding how counsel tracked Scam Ads prior to filing, much less a substantial one. Indeed, Meta does not even explain how it would use these documents, or how they are tied to material contribution.

Here, too, the Court should see Meta's tactics for what they are and shut them down, so that the parties can proceed to briefing the material contribution issue on the schedule Judge Pitts directed. *See* 10/13/2024 Tr. at 6:14-17.

IV. **WHETHER THE COURT SHOULD HOLD A HEARING**

A. **Defendant's Position**

Meta believes this Court should conduct a hearing. The most recent hearing the Court conducted—concerning scam advertisement identification and production, and Meta's responses to Plaintiff's interrogatories—was productive in resolving the parties' disputes. Meta is optimistic that a hearing on the issues raised herein would be similarly beneficial.

---

[3] This massive number, first revealed at the March 18 conference, raises questions about the ad-creation process—including whether ads were created using API access—and underscores the importance of Meta's response to Interrogatory No. 1, which it still has not supplemented, notwithstanding the Court's very direct guidance on that point.

### B. Plaintiff's Position

Given the pace and status of discovery and the straight-forward nature of this dispute, Plaintiff does not believe a hearing is necessary to assist the Court in resolving the issue. Nevertheless, counsel are always happy to appear before the Court as requested, whether in person or remotely, to answer any questions or to present further argument.

### V. CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

On March 21, 2025, Judge Pitts granted the parties' stipulation and proposed order to revise the case management schedule, Dkt. 196, as follows:

| Event | Deadline |
|---|---|
| Substantial completion of document production | May 30, 2025 |
| Completion of fact discovery | July 29, 2025 |
| Meta's Motion for Summary Judgment on Section 230 defense and opening expert report(s) (if applicable) | September 15, 2025 |
| Dr. Forrest's Opposition to Meta's Summary Judgment Motion; Cross-Motion for Partial Summary Judgment (if applicable); and opening expert report(s) (if applicable) | October 30, 2025 |
| Meta's Reply in Further Support of Summary Judgment; Opposition to Dr. Forrest's Cross-Motion for Partial Summary Judgment (if applicable); and rebuttal expert report(s) (if applicable) | December 1, 2025 |
| Dr. Forrest's Reply in Further Support of Partial Summary Judgment (if applicable) and rebuttal expert report(s) (if applicable) | December 31, 2025 |

### VI. COMPLIANCE WITH MEET-AND-CONFER REQUIREMENT

Lead counsel conferred by video conference on February 6, 2025 and April 17, 2025. John Quinn of Hecker Fink represented Dr. Forrest. Meredith Dearborn, Walt Brown, and Melissa Zappala of Paul, Weiss represented Meta. The parties agreed to extend this Court's five-day filing deadline to May 8, 2025.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

9

VII. **ATTACHMENTS**

The following discovery requests and responses are attached to this letter:

- Exhibit 1: Meta's First Set of Requests for Production

- Exhibit 2: Dr. Forrest's Responses and Objections to Defendant's First Set of Requests for Production

- Exhibit 3: Meta's First Set of Interrogatories

- Exhibit 4: Dr. Forrest's Responses and Objections to Defendant's First Set of Interrogatories

Dated: May 8, 2025            PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

                              By: /s/ Melissa F. Zappala
                                  Melissa F. Zappala
                                  Attorney for Defendant
                                  Meta Platforms, Inc.

Dated: May 8, 2025            HECKER FINK LLP

                              By: /s/ John C. Quinn
                                  John C. Quinn
                                  Attorney for Plaintiff
                                  Dr. Andrew Forrest