Hecker Fink LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.HECKERFINK.COM

DIRECT DIAL 212.763.0886
DIRECT EMAIL jquinn@heckerfink.com

May 8, 2025

**VIA CM/ECF**

Hon. Virginia K. DeMarchi
United States District Court
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re: *Dr. Andrew Forrest v. Meta Platforms, Inc.*, No. 5:22-cv-03699-PCP (N.D. Cal.)

Dear Judge DeMarchi:

Pursuant to Your Honor's Standing Order for Civil Cases, Plaintiff Dr. Andrew Forrest and Defendant Meta Platforms, Inc. ("Meta") respectfully submit this Joint Discovery Letter Brief. Lead counsel conferred by video conference most recently on April 17, 2025. The parties agreed to extend the Court's five-day filing deadline to May 8, 2025.

## I. STATEMENT OF DISPUTE

Plaintiff asserts that the operative Amended Protective Order, ECF 178 ("Operative PO"), and the previous protective order, ECF 64 ("Prior PO"), permit Plaintiff to share "Confidential" documents with his personal lawyers who assist him with respect to this case in his native Australia. Meta disagrees, and Plaintiff seeks confirmation from the Court. Plaintiff also seeks to amend the Operative PO's "Export Control" provision to permit the sharing of "Confidential" documents with Plaintiff and his personal lawyers outside the U.S. without undue burden. Meta does not object to Plaintiff viewing documents in Australia, but opposes Plaintiff's proposed amendments.

## II. PLAINTIFF'S POSITION

This case is before this Court because Meta's Terms of Service require any individual anywhere in the world to sue Meta only in the Northern District of California (or San Mateo state court). Accordingly, Plaintiff, an Australian citizen, is litigating from afar, outside his home legal system. In doing so, he is advised and supported by long-time personal lawyers who help him stay informed, digest information and U.S. legal advice, and make decisions about his case.

Meta previously conceded that the terms of the Prior (and Operative) PO permit Plaintiff and his personal lawyers to review "Confidential" material. *See* ECF 78 at 3. And rightly so—the text plainly supports that conclusion, and any other conclusion would unfairly prejudice Plaintiff for being forced to litigate in a foreign forum.

To avoid that prejudice, Plaintiff also seeks a modest amendment to the "Export Control" provision, which was added to the Operative PO as the parties negotiated the potential production of source code, but which, as written, applies too broadly—even to "Confidential" material. Plaintiff seeks to limit the Export Control provision to "Highly Confidential" material, so that Plaintiff can be adequately informed about the discovery record without undue geographic restrictions and notice requirements, which infringe on privilege and work-product protections.

**A. Procedural History**

Plaintiff first sought a protective order in December 2022, in light of Meta's concerns regarding Plaintiff's parallel private criminal prosecution against Meta in Australia. *See* ECF 41. This Court largely adopted Plaintiff's proposal, except that, as relevant here, the Court struck the provision allowing "house counsel" to access Protected Material. *See* ECF 43 at 4. The Court expressed uncertainty about the role of Plaintiff's "in-house counsel," particularly in connection with the then-pending criminal case. *Id.* at 2 & n.1. The Court noted, however, that the "house counsel" provision could be included if "the parties agree." *Id.* at 4. Even without the "house counsel" provision, though, the Prior PO permitted disclosure of "Confidential" material to "officers, directors, and employees of the Receiving Party to whom disclosure is reasonably necessary for this litigation." ECF 64 § 7.3(b). And Meta agreed this provision permitted the disclosure of "Confidential" material to Plaintiff's long-time personal lawyer, Simon Clarke. *See* ECF 78 at 3.[1]

In crafting the Prior PO, the Court also rejected Meta's proposal to include an "Export Control" provision that would bar disclosure of protected material outside the U.S. ECF 43 at 5. The Court explained Meta had made "no showing that any technical data subject to export control laws and regulations will be exchanged during discovery." *Id.*

The parallel criminal prosecution in Australia has now ended, and substantial discovery is underway. Last December, the parties negotiated an amended protective order, *see* ECF 178. The Operative PO broadened the permitted disclosure of "Confidential" material to include "contractors (including House Counsel)," and defined "House Counsel" as "attorneys who are employees, including contractors, of a Party to this action." ECF 178 §§ 2.9, 7.3(b).

Given the expectation that forthcoming discovery might include source code and other "technical data subject to export control laws," the parties also agreed to add an Export Control provision. *Id.* § 14.3. But as written, the provision arguably applies not just to source code but broadly to all "Protected Material," including merely "Confidential" material, and it imposes a categorical bar, providing that no Protected Material may leave or be viewed electronically outside the U.S. *Id.*

---

[1] Consistent with that position and the terms of the Operative PO, Mr. Clarke viewed "Confidential" material when in the U.S., after executing the required acknowledgement.

Following the March 18 discovery hearing, Plaintiff sought Meta's agreement to modify the Operative PO so that "Confidential" material could be disclosed to Plaintiff and his personal lawyers abroad, subject to their written agreement to the Operative PO's terms. Contrary to its earlier position before the Court, Meta now takes the view that Plaintiff's personal lawyers should not be permitted to see Protected Material at all. Such a prohibition would significantly hamper Plaintiff's ability to be fully informed about his case, and to take legal advice from counsel of his choosing. And Meta's alternative proposal, that Dr. Forrest's personal lawyers be treated differently, by having to not just sign the Acknowledgment and Agreement appended to the Protective Order (which they have) but to turn those acknowledgements over to Meta before viewing Protected Material, would be imbalanced and unfair, and would infringe Plaintiff's ability to protect his privilege and work product.

**B. Plaintiff And His Personal Lawyers Are Entitled To View "Confidential" Material**

Given the complexities and demands of Plaintiff's multinational businesses and philanthropic ventures, Plaintiff works with long-time personal lawyers who live and work abroad and provide him legal and strategic advice in view of Plaintiff's international footprint. These lawyers have been deeply involved in Plaintiff's efforts to combat Scam Ads since 2017 and have unique knowledge about the evolution of Scam Ads across Meta's platforms and the legal issues to be litigated here. The plain text of the Operative PO allows disclosure of "Confidential" material to these lawyers.

*First*, Section 7.3(b) allows disclosure to "contractors (including House Counsel)." ECF 178 § 7.3(b). House Counsel is defined as "attorneys who are employees, including contractors, of a Party to this action." *Id.* § 2.9. While Meta argues that counsel are not contractors, both provisions explicitly equate the two. *See also Contractor*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "contractor" as "a party to a contract"; "one who contracts to do work for...another").

*Second*, these lawyers fall under the definition of "Party," which includes a Party's "consultants." *See* ECF 178 § 2.11. Indeed, Meta is judicially estopped from claiming otherwise. Meta used the fact that Plaintiff's personal attorney, Simon Clarke, could view "Confidential" discovery material to argue for a stay during the pendency of the parallel Australian criminal case, and Meta got its stay. *See* ECF 78 at 3; ECF 79. Having prevailed on that position, Meta cannot now argue the even broader Operative PO prevents Mr. Clarke from viewing "Confidential" material. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-83 (9th Cir. 2001) (discussing judicial estoppel factors).

For both reasons, the Court should confirm that Plaintiff's personal attorneys may view "Confidential" material—bound, of course, by the terms of the Operative PO.

In addition, there is good cause to amend the Operative PO to permit the disclosure of "Confidential" material to Plaintiff and his personal lawyers outside the U.S., by narrowing the "Export Control" provision just to "Highly Confidential" material (including source code). The present, broader restriction unduly prejudices Plaintiff's ability to be informed about the discovery record, consider informed advice, and make strategic decisions, simply because he lives abroad.

*See Standard Space Platforms Corp. v. United States*, 35 Fed. Cl. 505, 509 (1996) (denying plaintiff the right to assist in litigation "could well border on a denial of due process."). This is particularly true in this phase of discovery, where the viability of Meta's Section 230 defense—and the strategic choices Plaintiff will have to make in briefing his opposition—will turn on complex and voluminous data Meta produces about the Scam Ads.[2]

By contrast, Meta has not shown any need, much less good cause, for the heightened restrictions it seeks. "Courts may not deny access to confidential information solely on the basis of counsel's in-house or retained status." *Amgen Inc. v. Sandoz Inc.*, 2017 WL 22502, at *1 (N.D. Cal. Jan. 3, 2017). Meta offers no explanation why Plaintiff's personal lawyers are more likely to breach their duties under the Operative PO. Nor is Plaintiff a Meta competitor, with personal attorneys who are "competitive decisionmakers." *See Aristocrat Techs. v. Int'l Game Tech*., 2007 WL 9747649, at *4 (N.D. Cal. Feb. 1, 2007).

Moreover, Meta's alternative proposal that Plaintiff's personal counsel should have to turn over their signed Acknowledgments before viewing Protected Material is a one-sided and "unnecessary intrusion" into the "zone of privacy" protected by the work-product doctrine. *In re Grand Jury*, 23 F.4th 1088, 1093 (9th Cir. 2021). Indeed, Plaintiff has a right to choose his own counsel, *see NAACP v. Button*, 371 U.S. 415, 437 (1963), and the attorney-client privilege protects "the giving of information to the lawyer to enable him to give sound and informed advice," *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981).

In the end, the Operative PO already provides robust protection for Confidential material, and it binds both Plaintiff and his personal lawyers. Further prohibitions that apply only to the overseas party are unfair and unwarranted. Accordingly, Plaintiff respectfully requests that the Court enter the Second Amended Protective Order attached as Exhibit A.

## III. DEFENDANT'S POSITION

Meta has no objection to Plaintiff's review of material that Meta designated "Confidential" ("Protected Materials") in Australia, but objects to disclosure of such materials to Plaintiff's personal lawyers ("Personal Counsel") in or outside the U.S. These attorneys have not entered an appearance in this litigation, and are not employees or contractors of Plaintiff. Nor has Plaintiff established that his disclosure of Protected Materials to Personal Counsel is reasonably necessary for this litigation, as the Operative PO requires. As this Court has already noted, because Plaintiff brought this action as an individual, "it is not clear who 'in-house counsel' is or what role such counsel serves with respect to this action." ECF 43 at 2 n.1.

Personal Counsel thus do not fit within any category of persons permitted access to Protected Materials. Plaintiff's argument that Personal Counsel are a "contractor" or "Party" stretches the intended meanings of those Operative PO terms. The Operative PO is meant to protect Meta's competitively sensitive information, and wider distribution of such materials,

[2] Again, Plaintiff does not dispute that Highly Confidential material like source code may be subject to export control laws, and does not seek to amend the prohibition on the disclosure of such information outside the U.S.

especially outside the U.S., only increases the risk of potential inadvertent disclosure. Plaintiff's request that he be permitted to disclose Protected Materials to Personal Counsel should be rejected.

### A. Background

After receiving Plaintiff's requests for production of documents, it became clear that he sought technical documents and potentially source code relating to how Meta's tools functioned. Such documents contain commercially sensitive information that if disclosed could cause competitive harm to Meta. Should such materials be inadvertently disclosed outside the U.S., mitigating potential competitive damage might be more difficult than it would be in the U.S. Meta therefore advised Plaintiff that the Prior PO needed to be amended. The parties agreed upon the Operative PO, including the Export Control Provision.

In March 2025, Plaintiff requested that the Operative PO be amended to permit the review of Protected Materials in Australia. Over the course of the ensuing negotiation, Meta learned that Plaintiff intended to disclose documents to Personal Counsel, and wanted no geographical limitation. When Meta asked whether such attorneys were Plaintiff's employees, counsel for Plaintiff advised that Personal Counsel were not employees, but had typical engagement letters with Plaintiff.

Nonetheless, in an effort to shoehorn Personal Counsel into the terms of the Operative PO, Plaintiff claimed that they were contractors and thus were entitled to review Meta's Protected Materials. To Meta's surprise, counsel for Plaintiff advised that such materials had already been shared with Personal Counsel in the U.S., even though a plain reading of the Operative PO does not permit such disclosure.[3] Meta again objected to having its Protected Materials disclosed to Personal Counsel—regardless of their geographic location—although it was willing to amend the Operative PO to allow Plaintiff to view materials in Australia.

### B. Plaintiff is Not Entitled to Disclose Protected Material to Personal Counsel.

Plaintiff's request for Personal Counsel's continued access to Protected Material should be rejected pursuant to the Operative PO. Personal Counsel does not fall into any category of persons that are entitled to receive Protected Materials, and Plaintiff's attempts to stretch the language of the Operative PO otherwise are without merit.

*First*, Personal Counsel are not "contractors" as intended by the Operative PO. As used in the Operative PO, contractors refer to the functional equivalent of internal employees, which by Plaintiff's own concession, Personal Counsel are not. Indeed, "contractors" are equated to "employees" under Section 2.9 of the Operative PO, which defines "House Counsel" as "attorneys who are employees, including contractors, of a Party to this action." ECF 178 § 2.9. Section 7.3 also includes the term "contractors" in a list of individuals internal to the company. ECF 178 § 7.3(b) (limiting disclosure of Protected Material to "officers, directors, employees, and contractors (including House Counsel)"). To interpret this instance of the term "contractors" to include outside counsel is inconsistent with "contractors" as used in Section 2.9. *See Churchill* v. *Winter*

[3] Because Meta considers this a breach of the Operative PO, Plaintiff should be ordered to produce the acknowledgements required by the Operative PO that Personal Counsel should have signed so that Meta has knowledge of who improperly reviewed such documents if further protective action is required.

*Chevrolet*, 2005 WL 8162543, at *14 (N.D. Cal. June 9, 2005) ("[W]ords used in a certain sense in one part of a contract are deemed to have been used in the same sense elsewhere in that instrument." (citation omitted)). Moreover, the Operative PO contains definitions expressly addressed to attorneys; namely, "House Counsel" and "Outside Counsel of Record." If any attorney could simply be an external "contractor" under 7.3(b), there would be no need to have these defined terms or to include the parenthetical "(including House Counsel)" with "contractors."

*Second*, Personal Counsel are not "consultants" such that they fall within the definition of a "Party." The definition of "Party" includes "officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs)." ECF 178 § 2.12. The inclusion of Outside Counsel *of Record* inherently means that attorneys who are not of record are excluded from being a "Party." Moreover, the individuals included in the definition of "Party" are not inherently permitted to review Protected Materials as a "Party"; otherwise, there would be no need to specifically identify them in Section 7.3. Notably, "consultants" are not included in Section 7.3. Again, Plaintiff's interpretation of the term "Party" would render provisions in the Operative PO superfluous and the agreement illogical as read together.

*Third*, Meta is not judicially estopped from objecting to the disclosure of its Protected Materials to Personal Counsel. In the brief cited by Plaintiff, Meta speculated that Protected Materials could find their way to Plaintiff's counsel in Australia because the Prior PO allows such material to be shared with Plaintiff's employees. Meta gave the example of Plaintiff's Australia-based counsel, Simon Clarke. *See* ECF 78 at 3. Plaintiff has represented, however, that Mr. Clarke is not his employee, contrary to what Meta may have believed at the time that it filed its previous papers. Meta is therefore not taking an inconsistent position. *See Hamilton* v. *State Farm Fire & Cas. Co.*, 270 F.3d 778, 782–83 (9th Cir. 2001) (previous inconsistent position required for the doctrine of judicial estoppel to apply).

*Finally*, Plaintiff has not demonstrated that disclosure of Protected Materials to his Personal Counsel is "reasonably necessary for this litigation." ECF 178 § 7.3(b). Plaintiff's claim that his Personal Counsel have "unique knowledge" about the facts and legal issues being litigated does not explain why it would be reasonably necessary for them to have access to Protected Materials, which are relevant to Meta's Section 230 defense, an issue of U.S. statutory law. Plaintiff concedes that he relies on Personal Counsel for "legal and strategic advice" "[g]iven the complexities and demands of [his] multinational businesses and philanthropic ventures," which has nothing to do with this case. Nor can Plaintiff demonstrate that he will be prejudiced if he is unable to disclose Protected Materials to Personal Counsel.[4] Meta is not objecting to Plaintiff having access to Protected Material in Australia. Plaintiff also has multiple attorneys from four U.S. law firms who all qualify as Outside Counsel of Record under the Operative PO that can assist him in staying informed and making decisions about this case. *See Intel Corp.* v. *Via Tech., Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000) ("Requiring a party to rely on its competent outside counsel does not create an undue and unnecessary burden.") (internal quotation marks omitted).

[4] Plaintiff chose to bring this lawsuit. That he had to bring suit where he could effectuate jurisdiction is not an indicia of prejudice.

**C. Extraterritorial Disclosure Should Protect Meta's Protected Materials.**

Because Plaintiff has failed to demonstrate that his Personal Counsel are entitled to receive Protected Materials, Plaintiff's suggestion that Meta must show good cause for its limiting disclosure outside the U.S. is a red herring. Meta does not object to Plaintiff having access to its Protected Materials, but access under the Export Control provision should be restricted to Australia, as reflected in Exhibit B, to mitigate the risk of Meta's competitively sensitive information being disclosed. *Brown Bag Software* v. *Symantec Corp.*, 960 F.2d 1465, 1469–70 (9th Cir. 1992) (recognizing court's obligation to consider disclosure of competitively sensitive information when issuing protective order). Even were this Court to determine that Personal Counsel may have access to Protected Materials, any extraterritorial disclosure should be limited to Australia, with the requirement that Plaintiff provide the executed acknowledgements to Meta required by the Operative PO.[5] *See* Exhibit C.

* * *

This Court should reject the expansive reading that Plaintiff gives to the Operative PO, which would permit Personal Counsel to review Meta's Protected Materials. This Court should enter the version of the Second Amended Protective Order attached as Exhibit B, or alternatively the version attached as Exhibit C if the Court deems that Personal Counsel may review Meta's Protected Materials.

## IV. WHETHER THE COURT SHOULD HOLD A HEARING

**A. Plaintiff's Position**

Given the pace and status of discovery, Plaintiff is prepared to rest on the letter brief. Of course, Plaintiff's counsel are always happy to appear before the Court as requested to answer any questions or to present further argument.

**B. Defendant's Position**

Meta agrees that a hearing is not necessary for the Court to resolve this dispute, but is also happy to answer any questions or present further argument.

## V. CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

Document discovery is to be substantially completed by May 30, 2025. Fact discovery is to be completed by July 29, 2025. The parties submitted, and the Court approved, a schedule in which expert discovery occurs in parallel with early summary judgment briefing, as follows:

[5] Providing Meta the acknowledgement, which only discloses their names, does not implicate any work product or privileged information.

| **Event** | **Deadline** |
|---|---|
| Meta's Motion for Summary Judgment on Section 230 defense and opening expert report (if applicable) | September 15, 2025 |
| Dr. Forrest's Opposition to Meta's Summary Judgment Motion; Dr. Forrest's Cross-Motion for Partial Summary Judgment (if applicable); and Dr. Forrest's opening expert report (if applicable) | October 30, 2025 |
| Meta's Reply in Further Support of Summary Judgment; Opposition to Dr. Forrest's Cross-Motion for Partial Summary Judgment (if applicable); and rebuttal expert report (if applicable) | December 1, 2025 |
| Dr. Forrest's Reply in Further Support of Partial Summary Judgment (if applicable) and rebuttal expert report (if applicable) | December 31, 2025 |

## VI. COMPLIANCE WITH MEET-AND-CONFER REQUIREMENT

Lead counsel conferred by video conference on April 17, 2025. John Quinn of Hecker Fink represented Dr. Forrest. Meredith Dearborn, Walt Brown, Melissa Zappala, and Amy Barton of Paul, Weiss represented Meta. The parties agreed to extend the Court's five-day filing deadline to May 8, 2025.

## VII. ATTACHMENTS

The following are attached to this letter:

- Exhibit A: Plaintiff's Proposed Second Amended Protective Order
- Exhibit B: Meta's Proposed Second Amended Protective Order
- Exhibit C: Meta's Proposed Second Amended Protective Order (alternative)

Dated: May 8, 2025

HECKER FINK LLP

By: */s/ John C. Quinn*
John C. Quinn
Attorney for Plaintiff
Dr. Andrew Forrest

Dated: May 8, 2025

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ Walter F. Brown*
Walter F. Brown
Attorney for Defendant
Meta Platforms, Inc.