09:54:54

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

5    FORREST,                        )   CV-22-3699-PCP
                                     )
6                   PLAINTIFF,       )   SAN JOSE, CALIFORNIA
                                     )
7         VS.                        )   MAY 20, 2025
                                     )
8    META PLATFORMS, INC.,           )   PAGES 1-27
                                     )
9                   DEFENDANT.       )
                                     )
10   _____ )

11                TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE VIRGINIA K. DEMARCHI
12              UNITED STATES MAGISTRATE JUDGE

13   A-P-P-E-A-R-A-N-C-E-S:

14   FOR THE PLAINTIFF:     HECKER FINK LLP
                            350 FIFTH AVENUE, 63RD FLOOR
15                          NEW YORK, NY 10118
                            BY:  **JOHN QUINN**
16                               **TAYONNA NGUTTER**

17
                            DEREK G. HOWARD LAW FIRM, INC.
18                          42 MILLER AVENUE
                            MILL VALLEY, CA 94941
19                          BY:  **DEREK G. HOWARD**

20

21           APPEARANCES CONTINUED ON THE NEXT PAGE

22

23   OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                  CERTIFICATE NUMBER 13185
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER

```
1      APPEARANCES (CONT.'D)

2      FOR THE DEFENDANT:      PAUL, WEISS, RIFKIND, WHARTON &
                               GARRISON LLP
3                              2001 K STREET, NW
                               WASHINGTON D.C., DC 20006
4                         BY:  MELISSA BROOKE FELDER ZAPPALA

5                              PAUL, WEISS, RIFKIND, WHARTON &
                               GARRISON LLP
6                              535 MISSION STREET, 24TH FLOOR
                               SAN FRANCISCO, CA 94105
7                         BY:  WALTER F. BROWN
                               KATARINA COOPER
8                              RUSSELL WIRTH

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| | 1 | SAN JOSE, CALIFORNIA                    MAY 20, 2025 |
| | 2 | P R O C E E D I N G S |
| | 3 | (COURT CONVENED AT 10:06 A.M.) |
| 10:06:12 | 4 | THE COURT:  GOOD MORNING.  PLEASE BE SEATED. |
| 10:06:14 | 5 | THE CLERK:  CALLING CASE 22-CV-03699-PCP. |
| 10:06:20 | 6 | FORREST VERSUS META PLATFORMS, INC., ON FOR DISCOVERY |
| 10:06:22 | 7 | HEARING. |
| 10:06:23 | 8 | IF THE PARTIES COULD STATE THEIR APPEARANCES, PLEASE, |
| 10:06:25 | 9 | BEGINNING WITH PLAINTIFF. |
| 10:06:26 | 10 | MR. QUINN:  GOOD MORNING, YOUR HONOR. |
| 10:06:26 | 11 | JOHN QUINN FROM HECKER FINK FOR PLAINTIFF, |
| 10:06:30 | 12 | DR. ANDREW FORREST. |
| 10:06:31 | 13 | WITH ME IS MY TAYONNA NGUTTER AND OUR CO-COUNSEL, |
| 10:06:36 | 14 | DEREK HOWARD. |
| 10:06:36 | 15 | THE COURT:  GOOD MORNING. |
| 10:06:37 | 16 | AND YOU ARE SORT OF BEHIND THIS LITTLE -- IT'S THE ONE ON |
| 10:06:40 | 17 | THE LEFT. |
| 10:06:43 | 18 | (PAUSE IN PROCEEDINGS.) |
| 10:06:49 | 19 | THE COURT:  ALL RIGHT.  AND LET'S HAVE THE |
| 10:06:50 | 20 | DEFENDANT'S APPEARANCE. |
| 10:06:51 | 21 | MS. ZAPPALA:  GOOD MORNING. |
| 10:06:52 | 22 | ON BEHALF OF DEFENDANTS, MELISSA ZAPPALA FROM PAUL WEISS. |
| 10:06:57 | 23 | AND WITH ME ARE MY COLLEAGUES, WALTER BROWN, KATARINA COOPER |
| 10:07:01 | 24 | AND RUSSELL WIRTH. |
| 10:07:02 | 25 | THE COURT:  GOOD MORNING. |

```
10:07:03   1          WE ARE HERE FOR A DISCOVERY DISPUTE AT DOCKET 205 THAT'S

10:07:08   2   REGARDING META'S DISCOVERY FOR DR. FORREST.  SO I'M GOING TO

10:07:12   3   BEGIN WITH META ON THIS QUESTION.

10:07:14   4          AND MY FIRST QUESTION, AND I WILL ASK IT OF BOTH PARTIES,

10:07:17   5   IS BOTH OF YOU REFER TO THIS FIRST PHASE OF DISCOVERY.  ARE WE

10:07:22   6   NOT PAST A FIRST PHASE OF DISCOVERY AT THIS POINT?

10:07:24   7          I MEAN, IT SEEMS THAT YOUR CLOSE OF DOCUMENT --

10:07:28   8   SUBSTANTIAL DOCUMENT PRODUCTION -- IS MAY 30TH, AND ALL FACT

10:07:32   9   DISCOVERY CLOSES ON JULY 29TH, SO DO I NEED TO WORRY ABOUT

10:07:36  10   PHASES AT THIS POINT?

10:07:37  11                MS. ZAPPALA:  I AM HAPPY TO TAKE THAT ISSUE.

10:07:41  12                THE COURT:  YES, PLEASE.

10:07:41  13                MS. ZAPPALA:  SO YES, WE ARE STILL IN PHASE ONE OF

10:07:44  14   DISCOVERY, AND WE ARE STILL LOOKING TO THE QUESTION OF, AS

10:07:48  15   YOUR HONOR NOTED IN THE PREVIOUS HEARING, WE PROCESSED THE

10:07:54  16   EXCLUSION AND THE FACT OF THE EFFECTIVE CONTENT OF THAT AS TO

10:07:56  17   INPUT AND OUTPUT.

10:07:57  18          WE ARE CURRENTLY IN THE PROCESS OF CONTINUING TO

10:08:00  19   INVESTIGATE THAT ON META'S SIDE, AND WE DO BELIEVE THAT THE

10:08:03  20   DOCUMENTS AND INFORMATION WE HAVE REQUESTED FROM PLAINTIFF GO

10:08:07  21   TO THAT ISSUE.

10:08:08  22          WE UNDERSTAND WE HAVE SAT DOWN AND IDENTIFIED, YOUR HONOR,

10:08:11  23   AND WE WOULD BE WILLING TO WORK WITH PLAINTIFF ON A PRODUCTION

10:08:14  24   OF INFORMATION OF DOCUMENTS PAST THE SUBSTANTIAL COMPLETION

10:08:18  25   DEADLINE.
```

10:08:18  1         THE COURT:  OKAY.  I'M NOT SURE THAT PHASES MATTER AT

10:08:21  2    THIS POINT, LET ME ASK DR. FORREST'S SIDE, DO WE NEED TO FOCUS

10:08:26  3    ON PHASES?

10:08:27  4         MR. QUINN:  I'M HAPPY TO ABANDON THE WORD "PHASES."

10:08:29  5    I DO THINK TWO POINTS THAT ARE IMPORTANT.

10:08:32  6    ONE, WE ARE IN A LIMITED PERIOD -- A CABINED DISCOVERY

10:08:36  7    PROCESS FOCUSED EXCLUSIVELY ON META'S AFFIRMATIVE DEFENSE UNDER

10:08:40  8    230 WHICH IS JUST A QUESTION ABOUT WHETHER THEIR TOOLS AND

10:08:43  9    PROCESSES ARE MAKING A MATERIAL CONTRIBUTION TO AD CONTENT.  SO

10:08:47 10    I DO THINK IT'S SIGNIFICANT TO THIS DISPUTE THAT THAT'S ALL

10:08:49 11    THAT WE ARE ADDRESSING IN DISCOVERY AT THIS TIME.

10:08:51 12         THE COURT:  LIKE EVER IN THE CASE?

10:08:53 13    SO LET ME JUST ASK THIS BETTER QUESTION:  SO BY JULY 29TH,

10:08:58 14    2025, PER JUDGE PITT'S ORDER, WHAT ARE YOU TO HAVE COMPLETED,

10:09:02 15    JUST THE DISCOVERY REGARDING THE SECTION 230 ISSUE?

10:09:05 16         MR. QUINN:  I THINK THAT'S THE SHARED UNDERSTANDING

10:09:07 17    OF THE PARTIES, YOUR HONOR, YES.

10:09:08 18         MS. ZAPPALA:  I WOULD ALSO NOTE WE HAVE REQUESTED AN

10:09:12 19    EXTENSION OF THE SUBSTANTIAL COMPLETION DEADLINE.  WE ARE

10:09:14 20    CURRENTLY IN DIALOG WITH PLAINTIFF ON THAT ISSUE.

10:09:17 21         THE COURT:  OKAY.  BECAUSE WHEN I LOOKED AT THE CASE

10:09:20 22    SCHEDULE THAT YOU HAVE, IT SEEMED LIKE IT WAS NOT LIMITED TO

10:09:25 23    JUST THIS ISSUE, WELL MAYBE IT IS.  SO THE SUMMARY JUDGEMENT

10:09:33 24    BRIEFING IS ONLY GOING TO BE IN THE 230.

10:09:36 25         OKAY.  SO I'M NOT SURE IT MAKES SENSE TO TALK ABOUT

10:09:39   1    PHASES, BUT IN ANY EVENT, I UNDERSTAND THE POINT NOW.

10:09:41   2         OKAY.  THANK YOU FOR THAT.

10:09:42   3         SO THEN WE HAVE THIS DISPUTE SORT OF FRAMED IN TERMS OF

10:09:46   4    CATEGORIES OF DISCOVERY THAT META WANTS, AND SORT OF THE

10:09:52   5    PROCESS TO GET AT THAT INFORMATION.

10:09:55   6         IT'S NOT REALLY BRIEFED IN THE SENSE OF THIS SPECIFIC

10:10:00   7    REQUEST IS OBJECTIONABLE FOR THIS REASON VERSUS THAT REQUEST OR

10:10:03   8    THIS INTERROGATORY, SO I MAY HAVE SOME QUESTIONS ALONG THE

10:10:07   9    LINES -- ALONG THE WAY WITH THOSE ISSUES, BUT KIND OF TREATING

10:10:12  10    THE DISPUTE IN THE WAY THE PARTIES HAVE FRAMED IT, IT SEEMS TO

10:10:16  11    ME THAT WITH MAYBE A COUPLE OF EXCEPTIONS IN THE

10:10:20  12    INTERROGATORIES, THE REQUEST THAT META HAS TRACK PRETTY CLOSELY

10:10:25  13    THE ALLEGATIONS IN THE COMPLAINT.

10:10:26  14         SO FROM META'S PERSPECTIVE, IS IT JUST A QUESTION OF HOW

10:10:30  15    DO WE GET AT ESI, FOR EXAMPLE, CUSTODIANS, SEARCH TERMS, THOSE

10:10:36  16    KINDS OF THINGS.  AND IF THAT'S THE CASE, HAS META MADE A

10:10:39  17    PROPOSAL ALONG THOSE LINES WITH RESPECT TO CUSTODIAN, SEARCH

10:10:44  18    TERMS AND THE OTHER THINGS YOU WOULD NEED TO GET AT THE ESI?

10:10:49  19         MS. ZAPPALA:  CERTAINLY, YOUR HONOR.

10:10:51  20         WHAT I WOULD SAY IS WE ARE CURRENTLY AT THE POINT WHERE

10:10:53  21     PLAINTIFF HAS REFUSED TO ENGAGE IN ANY DISCUSSION REGARDING

10:10:58  22     PRODUCTION OF DOCUMENTS OR INFORMATION RELEVANT TO PHASE ONE.

10:11:01  23         SO WE ARE MORE THAN HAPPY TO ENGAGE IN DISCUSSION WITH

10:11:10  24     PLAINTIFF REGARDING CUSTODIANS THAT -- WHERE DOCUMENTS MIGHT BE

10:11:10  25      IN THE POSSESSION OF DR. FORREST, BUT PLAINTIFF HAS EXTENSIVELY

10:11:17  1    REFUSED TO PRODUCE OR CONSIDER PRODUCING ANY DOCUMENTS RELEVANT

10:11:20  2    TO PHASE ONE OTHER THAN TO VERY LIMITED DISCREET SETS OF

10:11:25  3    DOCUMENTS.

10:11:25  4         ONE, THE ALLEGED SCAM ADS AT ISSUE, BUT PLAINTIFF HAS NOT

10:11:30  5    PRODUCED ANY DOCUMENTS OR COMMUNICATIONS ABOUT THOSE SCAM ADS

10:11:33  6    OTHER THAN THOSE THAT REFER TO THE SECOND BUCKET OF DOCUMENTS

10:11:37  7    THAT PLAINTIFF HAS PRODUCED WHICH ARE DOCUMENTS THAT THEY

10:11:41  8    PRODUCED IN THE AUSTRALIA CRIMINAL PROCEEDING, WHICH I WILL

10:11:44  9    SUBMIT ARE NOT RELEVANT TO PHASE ONE, ESSENTIALLY THEY ARE

10:11:48 10    DOCUMENTS THAT GO TO PHASE TWO WHICH ESSENTIALLY ADDRESSES THE

10:11:52 11    QUESTION OF META'S ISSUE TO COMBAT REGARDING SCAM ADS, HOWEVER

10:11:59 12    THIS PHASE ADDRESSES META'S ADVERTISING AND PROCESSES AND

10:12:02 13    PLAINTIFF HAS NOT WANTED TO ENGAGE IN THOSE DISCUSSIONS.

10:12:06 14         THE COURT:  OKAY.  AND IS IT YOUR UNDERSTANDING THAT

10:12:07 15    THE ONLY CUSTODIAN WHO IS RELEVANT HERE IS DR. FORREST HIMSELF,

10:12:10 16    OR DO YOUR REQUESTS ENCOMPASS PEOPLE HE MAY HAVE EMPLOYED TO DO

10:12:16 17    THE KIND OF INVESTIGATION AND MONITORING?

10:12:19 18         MS. ZAPPALA:  YOUR HONOR, IT WOULD NOT JUST ENCOMPASS

10:12:24 19    DR. FORREST, AND WE WOULD WANT TO HAVE A DISCUSSION ABOUT

10:12:26 20    POTENTIAL CUSTODIAN AND SOURCES OF DATA.

10:12:28 21         THE COURT:  OKAY.  I DO HAVE -- BEFORE I LEAVE META'S

10:12:31 22    SIDE AND GO TO DR. FORREST'S SIDE, I DO HAVE SOME QUESTIONS

10:12:34 23    ABOUT INTERROGATORIES, NOT DOCUMENT REQUESTS, BUT THE

10:12:38 24    INTERROGATORIES, AND I THINK THOSE ARE AT -- EXCUSE ME --

10:12:46 25    EXHIBIT 3.

| | |
|---|---|
| 10:12:50 | 1 |
| 10:12:54 | 2 |
| 10:13:04 | 3 |
| 10:13:07 | 4 |
| 10:13:09 | 5 |
| 10:13:12 | 6 |
| 10:13:13 | 7 |
| 10:13:19 | 8 |
| 10:13:23 | 9 |
| 10:13:28 | 10 |
| 10:13:32 | 11 |
| 10:13:37 | 12 |
| 10:13:41 | 13 |
| 10:13:44 | 14 |
| 10:13:49 | 15 |
| 10:13:51 | 16 |
| 10:13:54 | 17 |
| 10:13:58 | 18 |
| 10:13:59 | 19 |
| 10:14:03 | 20 |
| 10:14:05 | 21 |
| 10:14:08 | 22 |
| 10:14:11 | 23 |
| 10:14:15 | 24 |
| 10:14:18 | 25 |

1    INTERROGATORY NUMBER TWO ASKS FOR INFORMATION ABOUT

2  ADVERTISEMENTS THAT DR. FORREST PLACED HIMSELF.  AND I WAS

3  WONDERING HOW THIS INFORMATION, THE DETAILS THAT ARE BEING

4  REQUESTED IN INTERROGATORY NUMBER TWO, ARE RELEVANT TO A CLAIM

5  OR DEFENSE?

6         MS. ZAPPALA:  SURE.  ABSOLUTELY.

7    SO SINCE THIS PHASE OF DISCOVERY ADDRESSES META'S

8  ADVERTISING TOOLS, PROCESSES, AND IF DR. FORREST HAS IN FACT

9  CREATED ADVERTISING TOOLS, AND WE UNDERSTAND FROM THE DOCUMENTS

10  PRODUCED IN THE AUSTRALIA MATTER THAT DR. FORREST MAY HAVE

11  ENGAGED EXPERTS TO, IF NOT CREATE ADVERTISEMENTS, BUT CERTAINLY

12  ENGAGE IN THE PROFFER, THEN HE OR THE PEOPLE HE'S WORKED WITH

13  MAY HAVE AN UNDERSTANDING OF THE VARIOUS TOOLS AND PROCESSES

14  AND HOW THEY IMPACT HOW -- THE CREATION OF ADVERTISEMENTS.

15         THE COURT:  I'M SORRY, YOU ARE SAYING THAT YOUR

16  UNDERSTANDING IS THAT DR. FORREST MAY HAVE CREATED ADS, LIKE

17  FOR TESTING PURPOSES, OR HAD AN EXPERT CREATE ADS FOR

18  INVESTIGATION PURPOSES?

19         MS. ZAPPALA:  I'M NOT ENTIRELY SURE EXACTLY WHY, BUT

20  I DO BELIEVE THAT MAY HAVE HAPPENED.

21         THE COURT:  OKAY.  SO -- BUT I'M STILL NOT CLEAR ON

22  WHY, PER THE INTERROGATORY, META WOULD NEED TO KNOW HOW LONG AN

23  AD RAN, HOW MANY IMPRESSIONS IT RECEIVED, WHAT THE BUDGET WAS,

24  AND -- WELL MAYBE THE PURPOSE IS RELEVANT, BUT I'M NOT SURE.

25         WHY DO YOU NEED ALL THIS INFORMATION ABOUT HIS ADS?

10:14:21  1              MS. ZAPPALA:  SURE.

10:14:22  2          I THINK WE WOULD BE OPEN TO A DISCUSSION ABOUT POTENTIALLY

10:14:25  3      NARROWING THE SCOPE OF THE INTERROGATORY, BUT I THINK THE FACT

10:14:28  4      REMAINS THE PLAINTIFF HAS REFUSED TO PROVIDE ANY INFORMATION

10:14:31  5      RESPONSIVE TO THAT INTERROGATORY.

10:14:32  6              THE COURT:  OKAY.  AND THEN WHILE WE ARE AT IT, LET

10:14:35  7      ME ASK ABOUT INTERROGATORY NUMBER FOUR, WHICH WAS THE OTHER ONE

10:14:39  8      THAT CAUGHT MY EYE.  "IDENTIFY AND DESCRIBE THE EFFORTS OF YOU

10:14:42  9      OR THE CYBERSECURITY PROFESSIONALS TO IDENTIFY, ANALYZE,

10:14:46 10      INVESTIGATE AND INSPECT, ASSESS, EXAM OR EVALUATE THE ALLEGED

10:14:50 11      ADVERTISEMENTS."

10:14:51 12          SO WHAT DO YOU HAVE IN MIND THERE?  A MASSIVE NARRATIVE

10:14:54 13      ABOUT THE ENTIRE INVESTIGATION, OR SOMETHING MORE TAILORED?

10:14:58 14              MS. ZAPPALA:  WELL I THINK AGAIN, THIS IS SOMETHING

10:15:00 15      WE WOULD BE WILLING TO DISCUSS WITH PLAINTIFF.  PERHAPS

10:15:03 16      PLAINTIFF WANTS TO PROVIDE A 33(D) RESPONSE, BUT WHAT WE HAVE

10:15:07 17      THERE IS TO UNDERSTAND PRECISELY WHAT PLAINTIFF HAS DONE TO

10:15:12 18      ENGAGE IN INVESTIGATION OF THE ADVERTISEMENTS.  THERE HAS BEEN

10:15:14 19      A LOT OF PUBLICITY ABOUT DR. FORREST'S EFFORTS TO INVESTIGATE,

10:15:20 20      AND WE AGREE WITH PLAINTIFF ON A REASONABLE SCOPE.

10:15:24 21              THE COURT:  OKAY.  THANK YOU.

10:15:25 22          ARE THERE ANY OTHER MATTERS THAT YOU WOULD LIKE TO ARGUE

10:15:27 23      IN SUPPORT OF META'S POSITION BEFORE I TURN TO DR. FORREST?

10:15:31 24              MS. ZAPPALA:  JUST A COUPLE OF THINGS THAT I WOULD

10:15:33 25      NOTE.

10:15:34   1         PLAINTIFF HAS REFUSED TO EVEN SHOW DOCUMENTS, AND

10:15:41   2    PLAINTIFF HAS SUGGESTED THAT THERE ARE NO DOCUMENTS THAT ARE

10:15:43   3    SORT OF RELEVANT TO PHASE ONE THAT THEY HAVE NOT ENGAGED IN AN

10:15:48   4    INITIAL REVIEW.  AND I THINK WHAT WE ARE ASKING FOR IS A

10:15:51   5    REASONABLE SEARCH TO DETERMINE WHETHER OR NOT DOCUMENTS EVEN

10:15:54   6    EXIST.

10:15:55   7         AND I WOULD ALSO NOTE THAT PLAINTIFF HAS ALSO ASSERTED

10:15:58   8    THAT IT WOULD BE BURDENSOME FOR THEM TO GO AND LOOK FOR

10:16:01   9    DOCUMENTS ON THE THEORY THAT MOST OF THE DOCUMENTS WOULD BE IN

10:16:05  10    META'S POSSESSION.

10:16:06  11         BUT AGAIN, WHAT WE HAVE SEEN IS THAT DR. FORREST HAS IN

10:16:11  12    FACT ENGAGED IN SUBSTANTIAL ANALYSIS AND INVESTIGATION OF THE

10:16:18  13    SCAM ADS AND HAS NOT SUPPORTED A SOLUTION THAT IT WOULD BE

10:16:22  14    BURDENSOME.

10:16:22  15         AND THE FACT THAT HE HAS ENGAGED IN THESE INVESTIGATIONS

10:16:24  16    DEMONSTRATES THAT A REASONABLE SEARCH WOULD NOT BE BURDENSOME.

10:16:29  17              THE COURT:  AND WHAT ABOUT THE PRIVILEGE AND/OR WORK

10:16:32  18     PRODUCT ARGUMENTS THAT ARE ADDRESSED AT A PRETTY HIGH LEVEL IN

10:16:36  19     THE BRIEFING?

10:16:37  20              MS. ZAPPALA:  THANK YOU FOR THAT REMINDER,

10:16:40  21     YOUR HONOR.

10:16:40  22         YES, PLAINTIFF HAS, IN THE COMPLAINT, ASSERTED THAT THERE

10:16:44  23    ARE 1,154 SCAM ADS THAT HE HAS IDENTIFIED.  AND HE HAD ASKED

10:16:50  24    PLAINTIFF TO IDENTIFY HOW HE HAS TRACKED THOSE SCAM ADS BECAUSE

10:16:56  25    PLAINTIFF HAS PRODUCED TO US ROUGHLY I BELIEVE 700 SCAM ADS.

10:17:01   1    WE ARE TRYING TO UNDERSTAND THE DELTA BETWEEN THE ALLEGATION IN

10:17:04   2    THE COMPLAINT AND WHAT PLAINTIFF HAS PRODUCED.

10:17:06   3         AND THE PLAINTIFF HAS ASSERTED THAT HE HAS TRACKED THEM IN

10:17:10   4    SOME WAY.  SO WE ARE ASKING FOR INFORMATION ABOUT THE TRACKING.

10:17:15   5         NOW PLAINTIFF DID, IN THE BRIEFING, ASSERT PRIVILEGE OVER

10:17:19   6    THIS TRACKING INFORMATION, WE BELIEVE FOR THE FIRST TIME, AND I

10:17:22   7    WANT TO EMPHASIZE WE ARE NOT LOOKING FOR PRIVILEGED

10:17:25   8    INFORMATION, BUT TO THE EXTENT THERE IS NON-PRIVILEGED

10:17:28   9    INFORMATION REGARDING THIS TRACKING, WE THINK WE ARE ENTITLED

10:17:30  10    TO IT.

10:17:31  11         THE COURT:  AND HAVE THE PARTIES EXCHANGED PRIVILEGE

10:17:34  12    LOGS AT THIS POINT?

10:17:35  13         MS. ZAPPALA:  NO, WE HAVE NOT.

10:17:36  14         THE COURT:  IS THERE A SECOND DEADLINE FOR DOING THAT

10:17:38  15    THAT YOU ALL HAVE AGREED TO?

10:17:40  16         MS. ZAPPALA:  NO, THERE IS NO NOT A DEADLINE FOR

10:17:41  17    DOING THAT.

10:17:42  18         THE COURT:  ALL RIGHT.  THANK YOU.

10:17:43  19         LET ME TURN TO DR. FORREST.

10:17:45  20         AND I WILL JUST TELL YOU MY TENTATIVE IMPRESSION FROM

10:17:51  21    HAVING READ THE PAPERS.

10:17:53  22         I REALLY DON'T UNDERSTAND WHY DR. FORREST IS RESISTING THE

10:17:56  23    DISCOVERY HERE, AND I WILL TELL YOU WHY.  HIS COMPLAINT

10:18:00  24    INCLUDES A NUMBER OF FACTUAL ALLEGATIONS THAT NOT ONLY SUGGEST

10:18:05  25    THAT HE HAS RELEVANT AND RESPONSIVE INFORMATION, AT LEAST AS OF

10:18:09 1    THE TIME THE COMPLAINT WAS PREPARED AND FILED, BUT THE DISPUTE

10:18:15 2    BEFORE JUDGE PITTS IN THE BRIEFING ON THE MOTION TO DISMISS

10:18:19 3    RESULTED IN A CONCLUSION -- A FINDING BY JUDGE PITTS THAT THERE

10:18:24 4    WAS A DISPUTE OF FACT BETWEEN THE PARTIES.

10:18:26 5        SO IT SEEMS TO ME THAT IN THIS SITUATION, DR. FORREST GETS

10:18:30 6    TO TAKE DISCOVERY OF META OF THE INFORMATION THAT META HAS AND

10:18:34 7    WILL RELY ON REGARDING ITS POINT OF VIEW ON THE SECTION 230

10:18:38 8    ISSUE, I'M USING THAT AS SHORTHAND, AND CONVERSELY META GETS TO

10:18:43 9    TAKE DISCOVERY OF DR. FORREST ON THE CONTRARY INFORMATION THAT

10:18:46 10   HE PURPORTS TO HAVE REGARDING HIS VIEW ABOUT THE ADVERTISING

10:18:50 11   TOOLS AND HOW THEY WORK.

10:18:53 12       AND SO HE'S NOT -- DR. FORREST IS NOT JUST A PASSIVE

10:18:57 13   VICTIM IN THIS SITUATION, HE WAS VERY ACTIVE, ACCORDING TO HIS

10:19:01 14   OWN COMPLAINT, IN INVESTIGATING WHAT WAS GOING ON, HOW THE ADS

10:19:06 15   WERE CREATED, ET CETERA, ET CETERA.

10:19:09 16       AND THIS INFORMATION IS NOT ONLY IN THE COMPLAINT BUT IT'S

10:19:12 17   BEEN IN PUBLISHED ARTICLES ABOUT THIS CASE.

10:19:17 18       SO DR. FORREST IS HERE IN U.S. COURT SEEKING RELIEF, AND

10:19:22 19   THAT MEANS U.S. DISCOVERY, WHICH IS UNPLEASANT, BUT IT JUST

10:19:26 20   SEEMS TO ME THAT WE HAVE TO LOOK AT RULE 26 AND THE RULES THAT

10:19:31 21   GOVERN ALL DISCOVERY, AND THAT'S RELEVANCE AND PROPORTIONALITY.

10:19:35 22       SO IF THE DISCOVERY REQUESTED IS RELEVANT TO A CLAIM OR

10:19:40 23   DEFENSE, AS IT APPEARS GENERALLY TO BE, AND IT'S NOT REALLY

10:19:45 24   ARGUED, AS I SAID, BETWEEN THE PARTIES ABOUT THIS PARTICULAR

10:19:48 25   REQUEST IS NOT RELEVANT, THAT THEN IT SEEMS LIKE THE FOCUS OF

```
10:19:53   1    THE DISPUTE IS PROPORTIONALITY.

10:19:56   2         THAT'S JUST MY TAKE, HAVING READ THE PAPERS, SO I INVITE

10:19:59   3    YOU TO RESPOND TO THAT AND ANYTHING ELSE YOU WOULD LIKE TO

10:20:01   4    RESPOND TO AT THE OUTSET.

10:20:02   5           MR. QUINN:  SURE.  THANK YOU, YOUR HONOR.

10:20:03   6         A NUMBER OF POINTS.

10:20:04   7         YOU KNOW, FIRST OFF I WILL AVOID THE WORD "PHASE" BUT WE

10:20:08   8    ARE IN THIS LIMITED -- HAVE A LIMITED SCOPE BEFORE US AT META'S

10:20:12   9    REQUEST ABOUT HOW ITS TOOLS AND PROCESSES DO OR DON'T MAKE A

10:20:15  10    MATERIAL CONTRIBUTION.

10:20:17  11         AND WE HAVE ALL USED THE TERM, PROVERBIAL BLACK BOX, TO

10:20:21  12    DESCRIBE THE NATURE OF THOSE FACTS.  SO THAT'S JUST PROPRIETARY

10:20:24  13    INFORMATION, IT'S NONPUBLIC.  THE COMPLAINT WAS BASED ON PUBLIC

10:20:27  14    INFORMATION, INTERVIEWS THAT MR. ZUCKERBERG HAS GIVEN ABOUT

10:20:31  15    MOVING IN THE DIRECTION OF AUTOMATED ADS AND AI ADS, BUT THE

10:20:37  16    COMPLAINT IS ASSEMBLED WITH THE ASSISTANCE OF COUNSEL AND SO

10:20:39  17    THERE ARE SERIOUS PRIVILEGE AND WORK PRODUCT ISSUES THERE.

10:20:42  18         AS FOR THE DOCUMENTS IN DR. FORREST'S POSSESSION,

10:20:45  19    CERTAINLY THERE ARE A NUMBER OF DOCUMENTS ABOUT DAMAGES,

10:20:47  20    CAUSATION, ET CETERA, ALL OF WHICH HAVE BEEN LEFT FOR AFTER

10:20:51  21    THIS PARTIAL SUMMARY JUDGEMENT MOTION IS DEALT WITH.

10:20:54  22         WE HAVE BEEN TRYING TO ADHERE TO JUDGE PITT'S GUIDANCE,

10:20:58  23    BOTH IN SOME OF THE EARLIER HEARINGS AND AT THE SCHEDULING

10:21:01  24    CONFERENCE, WHERE THE GUIDANCE REALLY WAS, I WANT TO GET THIS

10:21:04  25    BRIEFED BY THE END OF THE YEAR.  HE REJECTED A JOINT SCHEDULE
```

10:21:06  1    PROPOSED BY THE PARTIES TO GIVE US THE GUIDANCE.  LET'S JUST

10:21:09  2    GET THE DOCUMENTS FROM META ABOUT HOW THEIR TOOLS WORK AND GET

10:21:13  3    THIS BRIEFED THIS CALENDAR YEAR, AND THAT IS WHAT WE HAVE BEEN

10:21:16  4    ATTEMPTING TO DO.

10:21:17  5         DR. FORREST HAS NOT RESISTED ALL DISCOVERY, I FULLY ACCEPT

10:21:17  6    THE COURT'S POINT OF RULE 26 AND --

10:21:17  7              (REPORTER CLARIFICATION.)

10:21:17  8              MR. QUINN:  SURE.

10:21:22  9         DR. FORREST HAS NOT RESISTED ALL DISCOVERY, AND IN FACT

10:21:26  10   HAS PRODUCED AT THIS POINT SUBSTANTIALLY MORE THAN META HAS

10:21:29  11   PRODUCED.  WE HAVE PRODUCED, AS COUNSEL INDICATED, MANY

10:21:31  12   HUNDREDS OF SCAM ADS, UNTIL WE GOT A LATE PRODUCTION LAST

10:21:36  13   NIGHT, THEY HAD PRODUCED 14.  WE STILL DON'T HAVE A RESPONSE TO

10:21:39  14   INTERROGATORY NUMBER ONE WHICH WE SERVED IN --

10:21:42  15             THE COURT:  I'M SORRY, BUT THAT'S NOT RELEVANT TO

10:21:44  16   THIS DISCUSSION.

10:21:44  17        YOU CAN FILE YOUR OWN JUDGE DISCOVERY DISPUTE LETTER ON

10:21:48  18   THAT ISSUE AND I'M HAPPY TO HEAR ABOUT IT BUT IT'S NOT A

10:21:51  19   COMPARER -- IT'S NOT A CONTEST, WHO HAS DONE BETTER.  IT'S IS

10:21:54  20   THE DISCOVERY RELEVANT AND RESPONSIVE AND IS IT PROPORTIONAL TO

10:21:59  21   THE NEEDS OF THE CASE.

10:22:00  22        SO I DON'T MEAN TO CUT YOU OFF IF THERE'S SOMETHING MORE

10:22:03  23   YOU WANTED TO SAY ABOUT THAT.

10:22:04  24             MR. QUINN:  THERE IS.

10:22:05  25        WE HAVE PRODUCED THE SCAM ADS THAT WE CAN PRODUCE WITHOUT

10:22:12  1      SERIOUS WORK PRODUCT COMPLICATION BECAUSE THE TRACKING AND THE

10:22:14  2      COMPILATION WAS DONE BY COUNSEL IN THE PROCESS OF PREPARING A

10:22:16  3      COMPLAINT.

10:22:18  4           EVEN STILL, WE WENT AND WE PROPOSED AN AGREEMENT BETWEEN

10:22:20  5      THE PARTIES TO DEAL WITH SOME WORK PRODUCT CONCERNS.  THAT THEN

10:22:24  6      ENABLED US TO PRODUCE HUNDREDS OF SCAM ADS EVEN THOUGH MANY OF

10:22:28  7      THEM ARE SCREEN SHOTS AND E-MAILS BETWEEN LAWYERS AND THE LIKE.

10:22:30  8      WE HAVE KIND OF GONE THE EXTRA MILE TO PRODUCE ALL OF THAT.

10:22:33  9           AND WE HAVE REPRODUCED THE AUSTRALIAN CRIMINAL PROCEEDINGS

10:22:38  10     PRODUCTION WHICH IS THOUSANDS OF DOCUMENTS THAT DID INCLUDE

10:22:41  11     SEARCHES THROUGH DR. FORREST'S BUSINESS, THROUGH HIS E-MAILS,

10:22:43  12     THROUGHOUT E-MAILS OF HIS ASSISTANTS AND HIS CONSULTANTS, AND

10:22:46  13     META ITSELF AT THE TIME WAS DEEPLY ENGAGED, THERE ARE DOZENS OF

10:22:49  14     FOLLOW-UPS, I'VE READ THEM, BETWEEN THE PARTIES.

10:22:52  15          THE COURT:  I'M SORRY, THE SEARCHES YOU ARE

10:22:54  16      DESCRIBING WERE DONE IN CONNECTION WITH THE CRIMINAL

10:22:56  17      PROCEEDINGS?

10:22:56  18          MR. QUINN:  THAT'S CORRECT, YOUR HONOR.

10:22:57  19       AND WITH THE HELP OF DR. FORREST'S ASSISTANCE AND TEAM AT

10:23:02  20     DIFFERENT ORGANIZATIONS.  SO THEY HAVE ALL OF THAT.  THEY HAVE

10:23:05  21     NEVER IDENTIFIED ANY DEFICIENCY OR GAP, THEY THEMSELVES USE --

10:23:08  22          THE COURT:  OKAY.  WELL HANG ON.  ON THAT, JUST SO I

10:23:11  23      UNDERSTAND WHAT WAS DONE AND WHAT META KNOWS ABOUT IT, FOR

10:23:14  24      THOSE SEARCHES, DO YOU HAVE RECORDS OF WHICH CUSTODIANS WERE

10:23:17  25      SEARCHED, WHICH TERMS WERE USED OR WHAT THE METHODOLOGY OF THE

10:23:21  1    SEARCH WAS?

10:23:22  2              MR. QUINN:  WE DO.  I CAN SUMMARIZE SOME OF THAT

10:23:24  3    INFORMATION OR WE CAN KIND OF MEET AND CONFER.

10:23:26  4              THE COURT:  BUT YOU CAN SHARE THAT WITH META.

10:23:28  5              MR. QUINN:  SURE.  AND HAVE, IN FACT, IN THOSE

10:23:30  6    PROCEEDINGS WITH THEIR COUNSEL THERE.

10:23:32  7              THE COURT:  SO IF THERE WERE SOMETHING THAT META FELT

10:23:34  8    WAS MISSED BY THOSE SEARCH TERMS OR THOSE -- THERE WEREN'T THE

10:23:38  9    RIGHT CUSTODIANS OR THE RIGHT TIME FRAME, OR WHATEVER IT MAY

10:23:41  10   BE, THEN THE PARTIES COULD HAVE A DISCUSSION ABOUT WHAT MIGHT

10:23:44  11   NEED TO BE ADDED OR CHANGED.

10:23:46  12             MR. QUINN:  CERTAINLY WE COULD HAVE THAT KIND OF

10:23:48  13   TARGETED DISCUSSION.

10:23:49  14             THE COURT:  OKAY.  ALL RIGHT.

10:23:50  15        SO I UNDERSTAND WORK PRODUCT.  SEARCHES HAVE ALREADY BEEN

10:23:54  16   DONE.  WHAT ELSE DID YOU WANT TO BRING TO MY ATTENTION?

10:23:56  17             MR. QUINN:  YEAH, I THINK I WOULD JUST EMPHASIZE TO

10:23:59  18   AS TO THE AUSTRALIAN PROCEEDINGS, META'S OWN REQUESTS TO STAY

10:24:05  19   REPEATEDLY USE THE PHRASES "NEARLY IDENTICAL" AND TALKED ABOUT

10:24:09  20   THE CLOSE RELATIONSHIP BETWEEN THOSE ACTIONS.

10:24:12  21        ALSO JUST THAT THERE IS AN EXPERT PHASE COMING.  SO

10:24:14  22   INSOFAR AS DR. FORREST HAS ENGAGED EXPERTS, CONSULTING EXPERTS

10:24:20  23   WHICH WE DISCUSSED WITH THE COURT PREVIOUSLY, COUNSEL IN

10:24:23  24   PREPARING THE COMPLAINT, THERE WILL BE AN OPPORTUNITY FOR

10:24:26  25   EXPERTS TO DEAL WITH ALL OF THIS.

```
10:24:28   1        AT THIS PHASE THE GOAL IS TO JUST GET DISCOVERY ABOUT HOW

10:24:31   2   META'S TOOLS AND PROCESSES WORK, AND DR. FORREST AS AN

10:24:34   3   OUTSIDER, HE REALLY DOESN'T HAVE THAT INFORMATION, THAT IS THE

10:24:38   4   CRUX OF WHAT WE ARE DOING AT THIS POINT, YES.

10:24:40   5        THE COURT:  OKAY.  SO HERE'S THE DIFFICULTY WITH THAT

10:24:43   6   POSITION, I'M JUST GOING TO START WHERE YOU ENDED, WHICH IS

10:24:49   7   WHETHER DR. FORREST HAS INFORMATION.  AND WHEN I SAY

10:24:51   8   DR. FORREST, I MEAN HIM AND HIS TEAM OF CYBERSECURITY

10:24:53   9   PROFESSIONALS AND EXTERNAL FRAUD PROFESSIONALS, IF THOSE ARE

10:24:57  10   TWO DIFFERENT CATEGORIES, THOSE ARE ALL DESCRIBED IN DETAIL IN

10:25:02  11   THE COMPLAINT, AND THE REQUEST FOR PRODUCTION THAT I UNDERSTAND

10:25:04  12   ARE AT ISSUE HERE, TRACK THE ALLEGATIONS IN THE COMPLAINT.

10:25:07  13        SO IT'S NOT REALLY, IN MY VIEW, PERSUASIVE TO SAY, WELL HE

10:25:14  14   DOESN'T HAVE ANYTHING, BECAUSE HE HAS ALLEGED THAT HE DOES.

10:25:17  15   AND IF THE ANSWER IS, I MADE THAT ALLEGATION, OR DR. FORREST

10:25:21  16   MADE THE ALLEGATION, AND HE DOES NOT HAVE ANY DOCUMENTS THAT

10:25:24  17   REFLECT ANY OF THAT, THEN YOU CAN SAY THAT.  BUT YOU CAN'T SAY

10:25:29  18   THAT WITHOUT HAVING DONE A SEARCH.

10:25:31  19        AND IF THE SEARCH HAS ALREADY BEEN DONE, OKAY, BUT IF THE

10:25:35  20   SEARCH HAS NOT REALLY LOOKED FOR THESE KINDS OF THINGS, BECAUSE

10:25:37  21   IT HAPPENED BEFORE HE MADE THESE ALLEGATIONS.  I AM NOT

10:25:42  22   ENTIRELY SURE OF THE TIMING OF THE CRIMINAL PROCEEDINGS AS IT

10:25:45  23   PERTAINS TO THE OPERATIVE COMPLAINT, BUT META IS ENTITLED TO

10:25:49  24   FIND OUT WHAT CONTRARY EVIDENCE -- AND IT DOESN'T HAVE TO WAIT

10:25:53  25   UNTIL EXPERT DISCOVERY BECAUSE THIS IS PRE-LITIGATION
```

10:25:57  1    INVESTIGATION THAT IS USED AS A FACTUAL BASIS FOR THE

10:26:01  2    ALLEGATIONS IN THE COMPLAINT THAT JUDGE PITTS IN TURN RELIED ON

10:26:04  3    IN DENYING THE MOTION TO DISMISS ON THE SECTION 230 ISSUE

10:26:09  4    BECAUSE HE FOUND THAT THERE WAS A DISPUTE OF FACT BETWEEN THE

10:26:13  5    PARTIES.

10:26:13  6         SO IF DR. FORREST AND HIS VARIOUS PROFESSIONALS HAVE

10:26:16  7    INFORMATION ABOUT HOW THE ADS WERE CREATED USING THE TOOLS,

10:26:22  8    THAT IS CONTRARY TO THE INFORMATION THAT META HAS, WELL THEN

10:26:26  9    THAT'S WHAT JUDGE PITTS IS HOPING THE PARTIES WILL DISCOVER OF

10:26:31  10   EACH OTHER IN PREPARATION FOR YOUR FURTHER PROCEEDINGS.

10:26:35  11        IT'S CLEARLY WITHIN THE SCOPE OF THE ISSUE, AS I

10:26:37  12   UNDERSTAND IT.  I DID NOT SEE ANY DOCUMENT REQUESTS THAT SEEM

10:26:40  13   TO BE OUTSIDE OF PHASE ONE.  SO IF THERE IS SOMETHING AMONG

10:26:43  14   THEM THAT YOU THINK IS OUTSIDE OF THE SCOPE, IT'S NOT

10:26:47  15   PARTICULARLY CALLED OUT.

10:26:49  16        SO IS THERE SOMETHING THAT YOU ARE TRYING TO ALERT ME TO

10:26:52  17   THAT YOU THINK IS OUTSIDE THE SCOPE?

10:26:53  18           MR. QUINN:  NO, I THINK OUR POSITION IS THAT THE

10:26:56  19   PRODUCTION OF THE SCAM AD COMPILATIONS AND COLLECTIONS AS BEST

10:27:00  20   WE CAN MUSTER THEM IN THE AUSTRALIAN PRODUCTIONS HAVE LARGELY

10:27:05  21   ADDRESSED THOSE ISSUES INSOFAR AS DR. FORREST HAS THOSE IN HIS

10:27:10  22   POSSESSION.

10:27:11  23        WE ARE STILL WORKING, AS WE APPROACH SUBSTANTIAL

10:27:13  24   COMPLETION, IF THERE ARE ADDITIONAL REPORTS FROM CONSULTING

10:27:15  25   EXPERTS, THOSE KINDS OF DOCUMENTS, WE DON'T HAVE ANY OBJECTION

10:27:18  1    TO PRODUCING THOSE MATERIALS TO META.  OUR RESISTANCE, AND THE

10:27:21  2    WAY THIS HAS ALWAYS BEEN FRAMED IN DISCUSSIONS BETWEEN THE

10:27:24  3    PARTIES, IS ABOUT RERUNNING A BUNCH OF ESI SEARCHES AND

10:27:28  4    CUSTODIAL SEARCHES, WHEN REALLY GIVEN THE KIND OF INFORMATION

10:27:31  5    WE ARE TALKING ABOUT HERE, WE HAVE ALWAYS, BOTH SIDES REALLY

10:27:34  6    APPROACHED THIS LIMITED PERIOD OF DISCOVERY ON THE 230 QUESTION

10:27:39  7    AS ONE THAT'S LARGELY NONCUSTODIAL.

10:27:42  8        SO IT'S JUST THAT BURDEN WE ARE SEEKING TO AVOID.  THERE

10:27:45  9    IS NO INFORMATION WITHIN THE SCOPE OF THE 230 QUESTION IN OUR

10:27:49  10   POSSESSION THAT WE HAVE ANY OBJECTION TO PRODUCING OTHER THAN

10:27:52  11   PRIVILEGE AND WORK PRODUCT INFORMATION.

10:27:54  12        THE COURT:  WHAT DO YOU MEAN BY NONCUSTODIAL?

10:27:57  13   DR. FORREST IS AN INDIVIDUAL, SO HE IS A CUSTODIAN, HE'S NOT A

10:28:01  14   COMPANY, SO I'M NOT SURE WHAT YOU MEAN BY NONCUSTODIAL.

10:28:05  15        MR. QUINN:  I GUESS I JUST MEAN THAT A CATEGORICAL

10:28:08  16   APPROACH, IF THERE ARE THIRD PARTY CONSULTING REPORTS, WE

10:28:11  17   SHOULD GATHER AND PRODUCE THOSE AS OPPOSED TO THE MULTI-YEAR

10:28:14  18   SEARCH TERM.

10:28:14  19        THE COURT:  SO LET ME JUST CLARIFY MY VIEW ON THIS,

10:28:17  20   AND I AM HAPPY TO HEAR ARGUMENT.  IF DR. FORREST HAS DONE AS

10:28:20  21   HE'S DESCRIBED IN HIS COMPLAINT AND EMPLOYED THIRD PARTIES TO

10:28:25  22   DO INVESTIGATIONS AND GATHER INFORMATION AT HIS DIRECTION, THAT

10:28:28  23   IS FAIR GAME BECAUSE THAT WOULD BE WITHIN HIS POSSESSION,

10:28:30  24   CUSTODY OR CONTROL, AS I UNDERSTAND IT.

10:28:32  25        SO I DON'T UNDERSTAND YOU TO BE SUGGESTING THAT -- MAYBE

10:28:36  1      I'M WRONG -- THAT THERE'S SOME THIRD PARTY, IN THE SENSE THAT

10:28:39  2      YOU WOULD HAVE TO GO GET A SUBPOENA TO GET THAT INFORMATION AT

10:28:42  3      ISSUE HERE; IS THAT RIGHT?

10:28:44  4             MR. QUINN:  I AGREE WITH WHAT THE COURT SAID, AND I

10:28:46  5      DON'T TAKE ANY ISSUE WITH THAT.

10:28:48  6             THE COURT:  OKAY.  SO IT MAY BE THAT THE SEARCHES YOU

10:28:50  7      HAVE ALREADY RUN ONCE YOU DISCLOSE THAT DETAIL TO META IN THE

10:28:52  8      CONTEXT OF THIS CASE, THE PARTIES WILL BE IN VEHEMENT AGREEMENT

10:28:56  9      THAT THOSE ARE SUFFICIENT, AND AS LONG AS YOU REVIEW THEM,

10:28:59 10      BECAUSE THERE MIGHT HAVE BEEN A DIFFERENT PARAMETER FOR -- SO

10:29:02 11      YOU DO THE SEARCH, YOU FIND THE NARROWED COLLECTION OF ESI AND

10:29:06 12      THEN YOU REVIEW FOR RESPONSIVENESS, AND IF THOSE ARE NOT

10:29:09 13      ENTIRELY ALIGNED BETWEEN THE CRIMINAL PROCEEDING AND THIS CASE,

10:29:11 14      YOU ARE GOING TO NEED TO RELOOK AT WHAT THOSE SEARCH TERMS HIT

10:29:16 15      AND MAKE A DETERMINATION, AS YOU WOULD IN ANY CASE.  BUT IT MAY

10:29:20 16      BE THERE ARE OTHER SEARCH TERMS THAT MAY BE NECESSARY.

10:29:22 17          AND THEN IF THERE ARE OTHER DOCUMENTS, ADDITIONAL

10:29:25 18      DOCUMENTS TO PRODUCE, I THINK YOU OWE IT TO META TO TELL THEM

10:29:30 19      THAT PART AFTER YOU'VE CONDUCTED A SEARCH SO THAT WE CAN ALL BE

10:29:33 20      ON THE SAME PAGE ABOUT WHAT THERE IS AND ISN'T.

10:29:37 21             CONVERSELY, IF YOU ARE PREPARED TO SAY WHATEVER META HAS

10:29:40 22      IS THE DEFINITIVE EVIDENCE OF HOW THE TOOLS WORK AND YOU HAVE

10:29:43 23      NO CONTRARY INFORMATION, WELL THEN MAYBE THE PARTIES SHOULD

10:29:46 24      CONSIDER THAT AS A RESOLUTION.  BUT IT SOUNDS LIKE THAT'S NOT

10:29:51 25      DR. FORREST'S POSITION.

10:29:55  1         SO YOU KNOW, YOU CAN'T JUST WAIT UNTIL LATER, IS MY POINT.

10:29:59  2    NOW IS THE TIME TO PRODUCE WHAT YOU'VE GOT THAT YOU THINK

10:30:02  3    SUPPORTS THE ARGUMENTS THAT WERE MADE TO JUDGE PITTS OF A

10:30:06  4    FACTUAL MATTER, OKAY?

10:30:09  5         LET ME ADDRESS THE QUESTION OF -- AND BY THE WAY, I DON'T

10:30:12  6    SEE THAT AS PARTICULARLY BURDENSOME.  THAT'S WHAT YOU DO WITH

10:30:16  7    THE SEARCH TERMS IS TO REDUCE THE BURDEN SO THE REVIEW CAN BE

10:30:21  8    TAILORED.

10:30:21  9         SO I'M INCLINED TO ORDER YOU TO DO THAT, BUT LET'S TALK

10:30:25  10   ABOUT THE WORK PRODUCT.  I UNDERSTAND IT'S WORK PRODUCT, NOT

10:30:28  11   PRIVILEGE; IS THAT CORRECT?

10:30:30  12        MR. QUINN:  I THINK FOR THE -- THE WHOLE CATEGORY

10:30:34  13   HERE PRESENTS A WORK PRODUCT ISSUE.  THERE MAY BE DOCUMENTS

10:30:36  14   THAT WOULD RAISE PREJUDICE ISSUES, BUT I DO THINK WORK PRODUCT

10:30:39  15   IS THE PRINCIPAL PARADIGM, IF I COULD PUT IT THAT WAY.

10:30:44  16        THE COURT:  OKAY.  SO TYPICALLY IF YOU ARE GOING TO

10:30:46  17   MAKE A WORK PRODUCT OBJECTION TO A RESPONSIVE DOCUMENT -- A

10:30:50  18   DOCUMENT THAT'S RESPONSIVE TO A REQUEST, YOU NEED TO LOG IT,

10:30:53  19   YOU NEED TO DESCRIBE IT IN A WAY THAT ALLOWS THE ADVERSARY TO

10:30:58  20   ASSESS THE PRIVILEGE.  YOU MAY BE ABLE TO LOG THESE THINGS

10:31:01  21   COLLECTIVELY, SOMETIMES THERE IS A CATEGORICAL APPROACH, IT'S

10:31:05  22   IN RULE 26, IF IT'S APPROPRIATE YOU CAN DO THAT, SOMETIMES IT'S

10:31:08  23   NOT APPROPRIATE.

10:31:09  24        BUT KEEP IN MIND THAT WORK PRODUCT CAN BE WAIVED IF YOU

10:31:14  25   DISCLOSE IT.  AND I DON'T KNOW IF YOU'VE DISCLOSED IT IN THE

10:31:18  1    COMPLAINT OR IF YOU PUT IT AT ISSUE.  AND IT DOESN'T PROTECT

10:31:24  2    FACTS.

10:31:26  3         SO THAT GETS ME TO THE INTERROGATORIES.  SO THE

10:31:29  4    INTERROGATORIES MAY CALL FOR, IF A DOCUMENT IS PROTECTED BY A

10:31:31  5    PRIVILEGE OR WORK PRODUCT, THE INTERROGATORY MAY NEVERTHELESS

10:31:35  6    REQUIRE YOU TO DESCRIBE A NARRATIVE FORM, THE FACTUAL

10:31:40  7    INFORMATION THAT YOU HAVE, YOU MEANING DR. FORREST.

10:31:42  8         SO THERE'S SOME ADDITIONAL WORK THE PARTIES NEED TO DO ON

10:31:47  9    THE PRIVILEGE AND WORK PRODUCT ISSUE BECAUSE I DON'T HAVE

10:31:49  10   ANYTHING IN FRONT OF ME THAT ALLOWS ME TO MAKE A DETERMINATION

10:31:53  11   ON THOSE POINTS, AND I CAN'T SORT OF SAY, OH, YES, EVERYTHING

10:31:56  12   THAT YOU DID PRE-INVESTIGATION AND POSSIBLY DISCLOSED IN YOUR

10:31:59  13   COMPLAINT IS NEVERTHELESS PROTECTED.

10:32:04  14        DO YOU UNDERSTAND MY POINT?  I MEAN MAYBE THERE IS SOME

10:32:07  15   "THERE" THERE BUT I CAN'T TELL FROM THE PAPERS.  SO THAT MIGHT

10:32:11  16   REQUIRE A FURTHER SUBMISSION, BUT I'M HAPPY TO HEAR ARGUMENT

10:32:14  17   FURTHER ON THE WORK PRODUCT POINT IF YOU WOULD LIKE TO SHARE

10:32:17  18   THAT.

10:32:17  19             MR. QUINN:  I THINK JUST TO EXPLAIN THE POINT WE WERE

10:32:19  20   MAKING WAS REALLY WORK PRODUCT WAS ONE OF THE FACTORS IN THE

10:32:22  21   PROPORTIONALITY ANALYSIS WHERE HAVING MADE THE PRODUCTION OF

10:32:26  22   SCAM ADS, HAVING DONE THE AUSTRALIAN DISCLOSURE PROCESS, DOING

10:32:31  23   MORE, IT SEEMED TO US, WAS NOT CONSISTENT WITH JUDGE PITTS'S

10:32:34  24   GUIDANCE, NOT RELEVANT, AND THE WORK PRODUCT WAS ONE OF THE

10:32:38  25   REASONS THAT STRUCK US AS NONPROPORTIONAL.

10:32:40  1              BUT I CERTAINLY UNDERSTAND THE COURT'S GUIDANCE ON THAT

10:32:43  2    POINT, JUST TO EXPLAIN WHERE WE WERE COMING FROM.

10:32:45  3              THE COURT:  OKAY.  SO NORMALLY I TEND TO TREAT WORK

10:32:48  4    PRODUCT AND PRIVILEGE AS DISTINCT -- IT'S BURDENSOME, BUT IT'S

10:32:53  5    ALSO JUST LIKE NOT ALLOWED UNLESS YOU CAN MEET THE REQUIREMENT

10:32:56  6    FOR DISCLOSURE OF WORK PRODUCT WHERE YOU NEED THE INFORMATION

10:32:59  7    FOR SOME REASON.

10:33:01  8         BUT I DON'T THINK THE PARTIES HAVE CRYSTALIZED THEIR

10:33:04  9    DISPUTE ON THIS POINT, IS MY ASSESSMENT.

10:33:06 10         SO I AM -- I THINK SOME FURTHER EFFORT IS REQUIRED, AND

10:33:11 11    I'M HAPPY TO HEAR FROM YOU BOTH ABOUT WHAT YOU THINK THAT

10:33:14 12    SHOULD LOOK LIKE, BUT I'M INCLINED TO HAVE YOU REPORT BACK TO

10:33:18 13    ME ON THAT POINT.

10:33:19 14         AND I CAN ISSUE A SHORT ORDER, AS I'M INCLINED TO DO, THAT

10:33:24 15    SAYS THIS DISCOVERY SHALL BE HAD, IT IS RELEVANT, AND IT IS

10:33:27 16    RESPONSIVE, AND IT DOES NOT APPEAR TO BE BURDENSOME,

10:33:29 17    PARTICULARLY IF CUSTODIANS AND CERTAIN TERMS ARE NEGOTIATED AND

10:33:33 18    THE REVIEW IS CONDUCTED AFTER THOSE ARE APPLIED.

10:33:37 19         AND I CAN'T RESOLVE THE WORK PRODUCT OR PRIVILEGE

10:33:41 20    OBJECTIONS IN A VACUUM.  SO I'M INCLINED TO GIVE YOU THAT

10:33:44 21    GUIDANCE AND SEND YOU OFF TO DO SOME FURTHER WORK.

10:33:46 22         SO LET ME GIVE YOU, MR. QUINN, AN OPPORTUNITY TO RESPOND

10:33:51 23    TO THAT SUGGESTION AND THEN I WILL TURN BACK TO MS. ZAPPALA.

10:33:56 24              MR. QUINN:  I THINK WE ALWAYS WELCOME THE COURT'S

10:33:58 25    GUIDANCE, AND ALWAYS, EVEN IF WE DO SOMETIMES VEHEMENTLY

10:34:03  1      DISAGREE, CONFER PRODUCTIVELY.  SO VERY HAPPY TO DO THAT AND

10:34:07  2      REPORT BACK.

10:34:08  3          I WILL SAY FOR BROADER CONTEXT, THEY HAVE MADE A REQUEST

10:34:11  4      FOR EXTENSION WHICH WE ARE CONSIDERING AND DISCUSSING, WE HAVE

10:34:15  5      ALSO MADE A PROPOSAL THIS MORNING TO TRY TO RESOLVE THE

10:34:20  6      PROTECTIVE ORDER THAT'S PENDING.

10:34:20  7          SO I THINK THERE ARE A NUMBER OF THINGS THE PARTIES CAN

10:34:21  8      CONFER PRODUCTIVELY ON AND REPORT BACK TO THE COURT, ON

10:34:23  9      INCLUDING THAT PROTECTIVE ORDER ISSUE WHICH REMAINS OPEN.

10:34:25  10          THE COURT:  OH, IS THE PROTECTIVE ORDER ISSUE ALREADY

10:34:27  11     BRIEFED BEFORE ME?

10:34:28  12          MR. QUINN:  IT IS.  I THINK NOBODY REQUESTED A

10:34:31  13     HEARING ON IT SO IT WASN'T NOTICED FOR TODAY.

10:34:33  14          THE COURT:  OH, I HAVE IT, AND I HAVEN'T LOOKED AT

10:34:33  15     IT.

10:34:34  16          SO WHEN DO YOU THINK YOU WILL KNOW WHETHER I HAVE TO

10:34:36  17     DECIDE ON THAT OR NOT?

10:34:38  18          MR. QUINN:  I THINK MAYBE A STATUS REPORT IN 14 DAYS

10:34:39  19     ON ALL THESE ISSUES.

10:34:40  20          THE COURT:  SO I HAVE A PROPOSAL FOR A STATUS REPORT

10:34:45  21     IN 14 DAYS AFTER SOME GUIDANCE AND ORDER ON THIS PARTICULAR

10:34:45  22     DISPUTE.

10:34:48  23          LET'S SEE, SO 14 DAYS WILL PUT YOU PAST THE MAY 30TH DATE.

10:34:53  24          WHAT IS THE -- WHAT IS META'S PROPOSAL?

10:34:58  25          MS. ZAPPALA:  I'M SORRY, META'S PROPOSAL?

10:35:01  1          THE COURT:  WHAT IS META'S PROPOSAL FOR OUR NEXT

10:35:04  2     STEPS HERE ON THIS DISPUTE?

10:35:05  3          MS. ZAPPALA:  I THINK YOUR PROPOSAL MAKES SENSE.  I

10:35:06  4     THINK THE PARTIES CAN MEET AND CONFER TO DETERMINE IF THEY CAN

10:35:10  5     REACH AGREEMENT ON A REASONABLE SCOPE OF DISCOVERY.

10:35:13  6          I SUSPECT THE PARTIES WILL HAVE SOME DISAGREEMENT BECAUSE

10:35:15  7     I THINK WE HAVE DISAGREEMENT AS TO THE RELEVANCE OF THE

10:35:20  8     AUSTRALIAN PROCEEDINGS, AND THE SUFFICIENCY OF THOSE, BUT WE

10:35:21  9     WILL ENGAGE IN A MEET AND CONFER, AND IF WE ARE NOT ABLE TO

10:35:24  10    REACH A RESOLUTION, WE WILL COME BACK TO YOUR HONOR.

10:35:27  11         THE COURT:  AND DO YOU THINK THE 14 DAYS IS ENOUGH

10:35:29  12    TIME TO REPORT BACK TO THE COURT ON THAT ISSUE?

10:35:30  13         MS. ZAPPALA:  I THINK WE MAY NOT BE COMPLETE, BUT WE

10:35:34  14    SHOULD BE CLOSE IN TEN DAYS.

10:35:38  15         THE COURT:  OKAY.  WELL I WILL SET THE 14-DAY

10:35:42  16    DEADLINE AND THEN IF YOU NEED MORE TIME, BECAUSE YOU ARE

10:35:44  17    ENGAGED IN PRODUCTIVE DISCUSSIONS, JUST LET ME KNOW AND I CAN

10:35:47  18    EXTEND IT.

10:35:47  19         BUT I WANT TO MAKE SURE THAT NEITHER PARTY IS PREJUDICED

10:35:51  20    BY DELAY GIVEN THE DEADLINES YOU CURRENTLY HAVE AND MAYBE YOU

10:35:52  21    WILL GET RELIEF FROM THOSE, BUT I THINK THAT'S IMPORTANT TO

10:35:55  22    KIND OF KEEP ON TRACK.

10:35:56  23         AND THEN PLEASE DO LET ME KNOW IF I DON'T NEED TO DO

10:35:58  24    ANYTHING ON YOUR PROTECTIVE ORDER ISSUE.

10:36:02  25         IS THERE ANYTHING ELSE THAT META WOULD LIKE TO RESPOND TO

10:36:05  1      BY THE WAY, I DIDN'T GIVE YOU AN OPPORTUNITY TO REPLY?

10:36:08  2              MS. ZAPPALA:  NOT AT THIS TIME, YOUR HONOR.

10:36:09  3              THE COURT:  OKAY GREAT.

10:36:09  4          THEN THAT'S WHAT I WILL DO, I WILL ISSUE A SHORT ORDER

10:36:12  5      GIVING YOU THAT DIRECTION AND GUIDANCE AND THEN I WILL WAIT TO

10:36:16  6      HEAR FROM YOU IN 14 DAYS.

10:36:18  7          ALL RIGHT.  THANK YOU ALL VERY MUCH.

10:36:19  8              MR. QUINN:  THANK YOU, YOUR HONOR.

10:36:19  9              MS. ZAPPALA:  THANK YOU, YOUR HONOR.

10:36:20  10         (THE PROCEEDINGS WERE CONCLUDED AT 10:36 A.M.)

          11

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

1

2

3                          <u>**CERTIFICATE OF REPORTER**</u>

4

5

6

7              I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE

8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10   HEREBY CERTIFY:

11             THAT THE FOREGOING TRANSCRIPT, CERTIFICATE

12   INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF

13   PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

14

15

16

17

18

19

20

21

22   _____
     SUMMER A. FISHER, CSR, CRR
23   CERTIFICATE NUMBER 13185

24
     DATE:  5/21/25
25