Hecker Fink LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.HECKERFINK.COM

DIRECT DIAL 212.763.0886
DIRECT EMAIL jquinn@heckerfink.com

August 1, 2025

**VIA CM/ECF**

Hon. Virginia K. DeMarchi
United States District Court
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re: *Dr. Andrew Forrest v. Meta Platforms, Inc.*, No 5:22-cv-03699-PCP (N.D. Cal.)

Dear Judge DeMarchi:

Pursuant to Your Honor's Standing Order for Civil Cases, Plaintiff Dr. Andrew Forrest and Defendant Meta Platforms, Inc. respectfully submit this Joint Discovery Letter Brief.

## I. STATEMENT OF DISPUTE

In November 2024, Plaintiff served RFPs seeking Design and Review Documents.[1] Regarding Design Documents, the parties disagree on the sufficiency and timing of Meta's production. Regarding Review Documents, the parties disagree on whether Meta has narrowed the definition of Review Documents and on the timing of Meta's production of "preliminarily withh[e]ld[]" documents and privilege logs. Plaintiff seeks an order directing Meta to produce responsive Design Documents, provide a partial log relating to withheld Review Documents, and produce non-privileged Review Documents by August 15. Meta contends that accelerated timing is unnecessary and improper.

## II. PLAINTIFF'S POSITION

### A. Relevant Background

From the outset of discovery, Plaintiff has sought internal documents concerning how Meta's proprietary ad tools and processes actually work. Specifically, RFP 15 requested Design Documents, defined as "any proposal, concept, design, or engineering Document," for each responsive tool, product, feature, or service. For all the same tools, products, features, or services, RFP 16 sought all Review Documents, defined as "any Document related to any assessment or evaluation concerning risk, trust and safety, integrity, counter-abuse, security, or other similar

[1] Capitalized terms are defined in the attached excerpts.

review with respect to any Meta feature, tool, product, or service, as well as all process reports or analyses, activity and data flow analyses, or similar compilations of data and information, and including any comments on such Documents."

In December, Meta objected to RFP 15, RFP 16, and certain associated definitions. Specifically, Meta sought to limit Design Documents to "source code" and Review Documents to "documents memorializing Meta's policies and procedures regarding its Ad-Review process." Plaintiff rejected both of these limitations in a January 15 letter, because "such documents may not shed light on how Meta's ad tools actually function—*i.e.*, how they were designed and what trade-offs went into their calibration."

During a January 31 meet-and-confer, Plaintiff offered to limit RFPs 15 and 16 to documents related to Content Modification Tools and Optimization Tools. As noted below, Meta adopted that limitation in a subsequent letter to the Court. Plaintiff did not propose, nor did he agree to, any other limitations on the scope of these RFPs.

Following the January 31 meet-and-confer, Meta never pursued further narrowing of RFPs 15 and 16. To the contrary, on March 7, Meta represented to this Court that it was "searching for and producing available design documents relating to the tools." ECF 186 at 7. Thus, Plaintiff understood that Meta was producing Design and Review Documents in accordance with the RFPs, as narrowed to Content Modification and Optimization Tools.

Meta's rolling productions proceeded, but over time it became clear to Plaintiff that they contained few, if any, Design or Review Documents. Plaintiff raised the issue in a July 2 letter, Meta responded on July 9, and the parties held a lead counsel conference on July 15.

Although Meta now seeks to distance itself from the some of the characterizations in its July 9 letter, the bottom line is unchanged: Meta is refusing to timely produce relevant documents and privilege logs. Regarding Design Documents, Meta asserted in its July 9 letter that Plaintiff's concerns were "premature" and stated that it was searching for "Design Documents" (using Plaintiff's capitalized, defined term) and working to substantially complete its document production by July 29, which was the substantial completion deadline at the time. Meta now insists that an even *later* date, August 15, is too soon. Critically, Meta also acknowledges for the first time that its production of Design Documents does not include any proposal documents, any concept documents, or basic technical documents such as product requirements documents and software documentation.

Regarding Review Documents, the July 9 letter announced that Meta had "narrowed" RFP 16 to "reviews of the Tools related to risk, trust and safety, and integrity," a limitation that Plaintiff had never approved or even been asked to consider. Now, Meta partially retreats from this characterization—saying that it is searching for those documents "and more"—but it continues to rely on an underinclusive, unilaterally narrowed definition that is not "near verbatim from Plaintiff's definition in his RFPs," as Meta claims.

Plaintiff has asked Meta to promptly provide a partial privilege log with respect to the withheld Review Documents, but Meta has not agreed to do so.

### B. The Court Should Order Meta to Produce All Design Documents by August 15

Information contained in Design Documents, especially engineering and other technical documents, is indispensable to understanding how Meta's advertising tools have been designed (including fine-tuned and improved over time), and thus how they contributed to Scam Ads. Accordingly, Design Documents are too important to leave to the end of discovery. Yet, eight months after Plaintiff served the RFPs—and four months after Meta represented to this Court that it was "producing available design documents relating to the tools"—Meta has produced only a handful of documents that could possibly qualify as Design Documents, and even fewer that contain a meaningful level of technical detail.

Meta employees create many Design Documents in the normal course of business—software documentation, product requirements documents, and technical design documents, to name a few. In the absence of such documentation, Meta's ad business could not function. In its July 9 letter, Meta contends it has produced "numerous documents explaining how the Tools work," pointing to examples of product launch announcements, internal wiki pages, six-month benchmarks, and posts on sales-related message boards. But if the 12 documents cited in Meta's July 9 letter were representative of the Design Documents it actually maintains, new software engineers could not be onboarded; engineering, product management, and design teams could not collaborate to build, modify, and improve tools and features; and the company could not make decisions based on metrics or testing data. The few documents produced by Meta do not satisfy its obligation to produce "any proposal, concept, design, or engineering Document" with respect to Optimization and Content Modification Tools.

**Proposed resolution**. The Court should order Meta to produce all Design Documents by August 15, prior to substantial completion, to ensure that Plaintiff has an opportunity to assess the sufficiency of the production with respect to this critical category of documents. In particular, given the specialized nature of the tools, Plaintiff may need time to consult with experts once Meta has completed its production.

### C. The Court Should Order Meta to Timely Produce Non-Privileged Review Documents and Support Its Privilege Claims in a Partial Privilege Log

Review Documents, like Design Documents, are critical to understanding how Meta's tools operated on Scam Ads. Yet Meta only this month, and only in response to Plaintiff's letter, revealed that it did not intend to produce the full scope of Review Documents to which Plaintiff is entitled. Meta also announced that it has been "preliminarily withholding" *the entire category* of Review Documents—privileged and non-privileged—"for further privilege review."

First, there is no basis for Meta's belated and unilateral narrowing of Review Documents to "reviews of the Tools related to risk, trust and safety, and integrity" (the characterization in its July 9 letter) or "documents concerning risk, trust, safety, integrity, and more, as relates to the ad tools" (its latest recharacterization). Plaintiff never agreed to either limitation, and Meta never requested it from the Court. Meta's representation that Plaintiff consented to this narrowing through his "characterization" of Review Documents at the January 31 meet-and-confer is incorrect.

Nor can Meta tie these new limitations to its R&Os from December 2024, which proposed an entirely different definition of Review Documents: "documents memorializing Meta's policies and procedures regarding its Ad-Review process." Meta abandoned this objection by failing to pursue it, either with Plaintiff or with the Court, and it may not now unilaterally redefine RFP 16. *See Chapman v. California Dep't of Educ.*, No. C-01-1780 CRB (EMC), 2002 WL 32854376, at *3 (N.D. Cal. Feb. 6, 2002) ("So long as the information sought is within the broad bounds of relevancy … and is otherwise properly discoverable, the respondent may not unilaterally reshape or rephrase the discovery request."). Meta cites to two inapposite cases, but neither establishes (or even suggests) that a party may rely on prior R&Os to support new and different limitations down the road, particularly where the opposing party rejected the first set of proposed limitations.

Second, Meta should be required to provide a partial privilege log and produce non-privileged Review Documents on a rolling basis, rather than "preliminarily withholding" the entire category. Such withholding makes it impossible for Plaintiff to evaluate Meta's privilege claims or identify potential deficiencies in the production. At minimum, Meta must comply with Section 4 of the Court's Standing Order for Civil Cases, which directs that "[p]rivilege logs … be promptly provided … as documents are reviewed for production" to allow "any disputes about claims of privilege or work product protection to be addressed in advance of the discovery cut-off." Meta has declined to expedite the requested privilege log, pointing to the ESI Order's final deadline for the parties to complete the exchange of all privilege logs. But that deadline is an outside limit and does not control where, as here, the parties have identified a discrete, time-sensitive dispute.

**Proposed resolution**. The Court should order Meta to produce Review Documents it is not withholding and provide a partial privilege log for any withheld Review Documents by August 15, so Plaintiff can evaluate and—if necessary—challenge Meta's privilege assertions before the close of discovery. In addition, the Court should reject Meta's belated and unilateral narrowing of RFP 16 and order Meta to produce non-privileged Review Documents in accordance with the RFPs, as narrowed to Content Modification Tools and Optimization Tools.

## III. DEFENDANT'S POSITION

There is no need for the Court's intervention on Design and Review Documents. Meta is already searching for, reviewing, and producing these documents, based on Plaintiff's representations as to what he seeks with respect to those requests, and with the intention of finishing its production by the substantial completion deadline. Plaintiff misstates the record in an effort to re-trade on the scope of discovery and extract arbitrary deadlines two weeks ahead of those Plaintiff himself recently proposed, and which were so-ordered by Judge Pitts just last week. This should be rejected.

### A. Meta Is Producing Design Documents, with No Need for Court Intervention

Meta understands that Plaintiff's request for Design Documents—as articulated the limited times Plaintiff has addressed it—fundamentally seeks documents explaining "how Meta's ad tools actually function." (Plaintiff's Jan. 15, 2025 Letter.) That is what Meta has been searching for and producing, just as it informed Plaintiff.

Plaintiff now demands for the first time "product requirements documents" and "software documentation" (*supra* at 3), which were not included in Plaintiff's original definition of Design Documents. To show "how the tools actually function," Meta has been collecting the exact types of documents encapsulated by Plaintiff's definition of Design Documents—design layouts, product briefs, engineering documents, technical reviews, and the like.[2] Nothing in Plaintiff's RFP or definition requires Meta to produce documents sufficient to onboard new engineers to design code for ad tools, as Plaintiff suggests.

Plaintiff expresses dissatisfaction with the level of technical detail in the documents Meta has produced (*supra* at 3)—including the very Design Documents that meet his definition and request—yet does not make clear what technical detail he believes is missing. To the extent Plaintiff is referring to source code, he stated six months ago that source code "may not shed light on how Meta's ad tools actually function" and has not engaged on the issue since. Accordingly, Plaintiff's untenable complaints about lack of technical detail in Meta's productions should be rejected.

### B. Meta Has Collected Review Documents as Plaintiff Articulated and Is Working to Produce Non-Privileged Portions

With respect to Review Documents, Plaintiff misrepresents the meet-and-confer history, accusing Meta of unilaterally narrowing his definition, when Meta has only relied on the language Plaintiff himself provided in the definition and at the parties' only meet-and-confer on the issue.

Following Meta's objection to the definition of Review Documents, Plaintiff sent one letter and the parties had one meet-and-confer in January where the definition was discussed. In both forums, Plaintiff emphasized the focus on how the ad tools work. At the meet-and-confer, counsel for Meta asked Plaintiff to distinguish between Design and Review Documents, and Plaintiff explained Review Documents as focusing on documents concerning risk, trust, safety, integrity, and more, as relates to the ad tools. To be clear, that language concerning the document types requested is near verbatim from Plaintiff's definition in his RFPs. And Plaintiff himself proposed limiting his requests for both Design and Review Documents to documents that concerned the relevant ad tools at the January meet-and-confer. Plaintiff's allegation that Meta has come up with new or unilateral limitations, either in this letter or in its July 9 letter is simply not true—rather, Meta is relying on Plaintiff's own words. It is therefore unclear where Plaintiff thinks the daylight is, much less what he expects this Court to order.

Consistent with Plaintiff's request, Meta has collected certain reviews concerning the Tools and trust, safety, integrity, and similar risk issues. As might be expected, documents of that nature tend to bear indicia of privilege, and thus Meta is conducting further privilege review of these documents. There is nothing improper about that.[3] And Meta never suggested it was holding back an entire set of documents simply because they may be Review Documents or that it is holding

---

[2] Meta is not producing documents regarding "proposals" or "concepts" as these refer to forward-looking documents that do not relate to how existing tools actually function.

[3] Meta has not received any privilege logs from Plaintiff. It is unclear whether Plaintiff is not holding back any responsive documents on the basis of privilege or whether he too has held such documents for later in the discovery process for additional review.

back clearly non-privileged material. (*Supra* at 3.) Meta will shortly produce redacted or de-designated documents along with a timely privilege log, as appropriate.

**C. Plaintiff's Only Remaining Issue—Timing—Is an Issue of His Own Making that the Court Need Not Redress**

Plaintiff also blames Meta for perceived timing issues, but this is a problem of his own making, and Plaintiff's request that the Court order Meta to produce Design and Review Documents and privilege logs just two weeks from now should be rejected.

*First*, Plaintiff failed to diligently pursue questions he purports to have had about the parties' respective understandings of RFPs 15 and 16. Instead of timely engaging in a meet-and-confer process to come to ground on his questions from his January 15 letter and the parties' January 31 meet-and-confer, Plaintiff waited until July 2 to substantively reengage on the issue of Design and Review Documents and then demanded a lead counsel conference on July 9 without even waiting for Meta's response to his letter.

Plaintiff attempts to shift the consequences for not following up to Meta, suggesting Meta has waived or abandoned its objections to any request or definition (*supra* at 4), but this is incorrect. Meta properly served its objections to Plaintiff's RFPs within the 30 days required by the Federal Rules and has collected and produced documents in accordance with its R&Os. Plaintiff may have expressed dissatisfaction with Meta's R&Os, but if he had concerns, it was his responsibility to pursue those concerns. *See In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 337 (N.D. Ill. 2005) (finding target of discovery may provide written objections and "leav[e] it to the party seeking discovery to file a motion to compel" and that propounding party's motion to compel at the end of the discovery period was untimely); *Khasin* v. *Hershey Co.*, 2014 WL 690278, at *3 (N.D. Cal. Feb. 21, 2014) (denying motion to compel where party seeking discovery previously failed to object to defendant's proposed limits on discovery). It was Plaintiff who chose to "let the matter languish." *In re Sulfuric*, 231 F.R.D. at 337.

*Second*, Plaintiff now seeks to impose more stringent deadlines than those he has otherwise agreed to, including the extension of the substantial completion deadline he proposed just two weeks ago. There is no basis to order Meta to produce Design and Review Documents, and related privilege logs, by August 15. If Plaintiff wanted Meta's substantially complete production, along with privilege logs, before August 28, he should have made a different proposal for the extension of the substantial completion deadline. Plaintiff cannot unilaterally decide that certain types of documents are more urgent or important than others and thus demand an accelerated production schedule. Further, although the Court's Standing Order does encourage prompt production of privilege logs, it also states that the parties should agree on the dates for production of such logs, which is precisely what the parties did here when they agreed in the ESI Order that privilege logs should be served no later than 60 days after the substantial completion deadline. (Stip. & Order re: Disc. of Electronically Stored Information ("ESI Order"), ECF 179, Paragraph 9(a).) *See also AbCellera Biologics Inc.* v. *Berkeley Lights, Inc.*, 2021 WL 2461266, at *2 (N.D. Cal. June 17, 2021) (DeMarchi, M.J.) (honoring parties' prior agreement regarding timing of privilege logs). In any event, Meta does not intend to wait until after the substantial completion deadline to begin its production of redacted material or rolling privilege logs, and there is no risk that Plaintiff cannot

raise any issues with Meta's privilege claims before the fact discovery cut-off (which is now October 29). Plaintiff should not be allowed to force earlier deadlines than those he agreed to (both in the ESI Order and with the extended substantial completion deadline he just proposed).

In sum, Meta is working diligently to produce documents responsive to Plaintiff's RFPs 15 and 16, subject to its proper objections, by the substantial completion deadline Plaintiff just proposed extending. There is, therefore, no need for the Court's intervention in these issues.

## IV. WHETHER THE COURT SHOULD HOLD A HEARING

### A. Plaintiff's Position

The Court should conduct a hearing. A hearing would assist the Court in resolving the dispute because these issues (and the timeline for resolving them) are interrelated with other, highly technical disputes on which Plaintiff has requested a hearing. The Court's guidance on past disputes has been productive in resolving the parties' disputes.

### B. Defendant's Position

Defendant does not believe a hearing is necessary because of the progress Meta has made in its search for, review of, and production of responsive Design and Review Documents. Meta intends to continue rolling productions in the coming weeks to produce additional Design Documents and to produce Review Documents with appropriate privilege redactions and logging as needed.

## V. CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

Document discovery is to be substantially completed by August 28, 2025. Fact discovery is to be completed by October 29, 2025. The parties submitted, and the Court approved, a schedule in which expert discovery occurs in parallel with early summary judgment briefing, as follows:

| Event | Deadline |
|---|---|
| Substantial completion of document production | **August 28, 2025** |
| Completion of fact discovery | **October 29, 2025** |
| Meta's Motion for Summary Judgment on Section 230 defense and opening expert report(s) (if applicable) | **December 15, 2025** |
| Dr. Forrest's Opposition to Meta's Summary Judgment Motion; Cross-Motion for Partial Summary Judgment (if applicable); and opening expert report(s) | **January 30, 2026** |

| | |
|---|---|
| (if applicable) | |
| Meta's Reply in Further Support of Summary Judgment; Opposition to Dr. Forrest's Cross-Motion for Partial Summary Judgment (if applicable); and rebuttal expert report(s) (if applicable) | **March 2, 2026** |
| Dr. Forrest's Reply in Further Support of Partial Summary Judgment (if applicable) and rebuttal expert report(s) (if applicable) | **April 1, 2026** |

## VI. COMPLIANCE WITH MEET-AND-CONFER REQUIREMENT

Lead counsel conferred by video conference on July 15, 2025. John Quinn of Hecker Fink represented Dr. Forrest. Melissa Felder Zappala of Dunn Isaacson Rhee LLP and Walter F. Brown and Amy L. Barton of Paul, Weiss, Rifkind, Wharton & Garrison LLP represented Meta.

## VII. ATTACHMENTS

The following discovery requests and responses are attached:

- Exhibit 1: Plaintiff's First Set of Requests for Production of Documents
- Exhibit 2: Defendant Meta Platforms Inc.'s Responses and Objections to Plaintiff's First Set of Requests for Production of Documents

Dated: August 1, 2025

HECKER FINK LLP

By: */s/ John C. Quinn*
John C. Quinn
Attorneys for Plaintiff
Dr. Andrew Forrest

Dated: August 1, 2025

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ Walter F. Brown*_________________
Walter F. Brown
Attorney for Defendant
Meta Platforms, Inc.