# EXHIBIT 4

Karen L. Dunn (*pro hac vice*)
kdunn@dirllp.com
Melissa F. Zappala (*pro hac vice*)
mzappala@dirllp.com
**DUNN ISAACSON RHEE LLP**
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900
Facsimile (202) 240-2050

Meredith R. Dearborn (SBN: 268312)
mdearborn@dirllp.com
**DUNN ISAACSON RHEE LLP**
345 California Street, Suite 600
San Francisco, CA 94104-2671
Telephone: (202) 240-2900
Facsimile: (202) 240-2050

Walter F. Brown, Jr. (SBN: 130248)
wbrown@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

Amy L. Barton (*pro hac vice*)
abarton@paulweiss.com
Thomas Patrick Cordova (*pro hac vice*)
pcordova@paulweiss.com
Anne Simons (*pro hac vice*)
asimons@paulweiss.com
Paloma Rivera (*pro hac vice*)
privera@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

DR. ANDREW FORREST,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 22-CV-03699-PCP (VKD)

**DECLARATION OF ROBERT TOBKES IN SUPPORT OF META PLATFORMS, INC.'S POSITION IN SUPPLEMENTAL JOINT DISCOVERY LETTER BRIEF**

The Honorable Virginia K. DeMarchi

I, Robert Tobkes, declare as follows:

1. I am a software engineering manager at Meta. The information in this declaration is based on my personal knowledge and discussion with relevant personnel. If called and sworn as a witness, I could and would testify competently to this information.

2. I have worked at Meta since November 2, 2020 when I was hired as an engineering manager. My job responsibilities include, among other things, understanding and working with Meta's data systems, including Hive and the production stores. During the entirety of my career at Meta, I have worked on and investigated data related to Facebook ads. As a software engineering manager, I work on a daily basis with the engineers I oversee who conduct analyses and investigations of data within Meta's systems related to Facebook ads, including the creation and rendering of Facebook ads.

3. I understand that the Plaintiff in this case seeks additional "native" data that would show how Meta's tools and processes impacted the content of the alleged Scam Ads at issue in this case. I further understand that Plaintiff's expert believes this additional data exists in Hive, or in Meta's other data sources.

4. I understand that Plaintiff also seeks "schemas" related to Meta's data sources, which Plaintiff claims will enable his expert to develop searches to identify additional data beyond what Meta has produced that would show how Meta's tools or processes impacted the content of the alleged Scam Ads at issue in this litigation.

5. I understand the alleged Scam Ads at issue in this litigation total 28,296 ads from a time period of January 1, 2019 to January 31, 2025.

**Ad Data in Meta's Data Sources**

6. Ad data is stored in various places across Meta's systems.

7. I understand that the primary source of data in Meta's production in this litigation has been Hive. Hive is Meta's business-driven data warehouse that stores data on a table-by-table basis. A key purpose of Hive is to enable the analytics of data logged in an organized and accessible format. For the review and analysis of historical ad data, Hive is the most comprehensive and reasonably accessible source of data.

8. Ad data also exists in Meta's production stores. Depending on the production store, ad data exists among other data related to Meta's services, such as organic content posted by users of Meta's services. I understand the production stores that contain ad data include [redacted] As relevant to ads, [redacted]

9. Data in the production stores are not stored in an organized and centralized manner. Nor is there any single data source that contains all data about any particular ad.

10. The production stores are not accessible directly. Accessing data in the production stores requires using the "Ent Framework," [redacted] Ents. Within the Ent Framework, [redacted]

11. Within the Ent Framework, EntSchemas [redacted] Each EntSchema [redacted]

12. Determining which Ent to query for specific data, and whether it will pull the intended specific data, requires significant investigation with subject-matter experts and engineers across multiple product teams. Subject-matter experts' and engineers' knowledge can be limited to a single ad tool (e.g., text generation), meaning one might need to consult with a different Meta employee for every Ent or tool in which one was interested. Although the EntSchema [redacted]

[redacted]

13. While each EntSchema provides [redacted] Such an understanding would require a thorough knowledge of Meta's ad-related source code to understand [redacted] how they relate to other [redacted] and how they would be used [redacted]

14. Accessing the Ent and fetching the data requires [redacted] Furthermore, even if an Ent with specific data point was identified, a bespoke engineering solution would then have to be created in order to extract the data for the ads at issue in this litigation and consolidate the data in an accessible format. Such an engineering solution could take weeks to develop and test for accuracy.

15. The Ents do not provide [redacted] The creative optimizations are [redacted] The enum values corresponding to the creative optimizations [redacted] The information reflecting those creative optimizations is [redacted] Rather, Hive is considered the means of logging this kind of information on a historical basis in the ordinary course of business.

16. Accordingly, I do not believe that individuals external to Meta—i.e., without knowledge or experience comparable to Meta's engineers that understand the complexities and limitations of Meta's systems—would be able to develop queries to identify all data reflecting the tools or processes that impacted the content of an ad, or create the requisite engineering solutions necessary to extract and consolidate the data, much less without the significant efforts described above.

I declare under penalty of perjury that the foregoing is true and correct, and that I executed this declaration on October 3, 2025, in Seattle, Washington.

DATED this 3rd day of October 2025.

/s/ ______________________