Hecker Fink LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.HECKERFINK.COM

DIRECT DIAL 212.763.0886
DIRECT EMAIL jquinn@heckerfink.com

November 24, 2025

**VIA CM/ECF**

Hon. Virginia K. DeMarchi
United States District Court
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re: *Dr. Andrew Forrest v. Meta Platforms, Inc.*, No. 5:22-cv-03699-PCP/VKD (N.D. Cal.)

Dear Judge DeMarchi:

Pursuant to Your Honor's Standing Order for Civil Cases, *see* Standing Order for Civil Cases at 3-4, and the Court's October 29, 2025 Order, *see* ECF 289 at 3, Plaintiff Dr. Andrew Forrest and Defendant Meta Platforms, Inc. ("Meta") respectfully submit this Joint Discovery Letter Brief.

## I. STATEMENT OF DISPUTE

Plaintiff seeks leave to serve RFAs he contends are directed at recently disclosed preservation failures and technical topics going to the heart of Meta's material contribution defense, which will aid the Court in understanding how Meta's ad tools work and how Meta's preservation failures should impact its consideration of material facts. Meta contends Plaintiff fails to demonstrate the good cause standard needed to modify the case schedule. Meta argues Plaintiff's RFAs do not further the narrow purpose fact discovery was extended—completing Meta's investigation and production—and all the RFAs could have been served during the prior fact discovery period.

## II. PLAINTIFF'S POSITION

### A. Relevant Background

The proposed RFAs react to and depend on Meta's ongoing document production and investigation, and Plaintiff prepared them as soon as Meta supplied sufficient information to do so. The parties began litigating Meta's production obligations in August, and it was not until October that a series of court orders forced Meta to disclose substantial new information about its investigation—including preservation failures—and submit to further discovery. Plaintiff

consistently reserved his right to serve RFAs once Meta provided the necessary information and the Court resolved the parties' dispute. And Plaintiff did exactly that: the Court issued its final ruling on October 29, and Plaintiff provided the RFAs to Meta on November 7.

For over a year, Plaintiff has sought to work cooperatively with Meta to gather Scam Ad data and address increasingly troubling concerns regarding Meta's preservation responsibilities. As early as September 2024, Plaintiff asked Meta whether "there [was] any obstacle to collecting and producing" all Scam Ad Inputs and outputs. Although Meta initially refused to answer, it represented in a January 2025 letter that finished ads rendered to End-Users are "retained indefinitely." Plaintiff relied on that representation for months, only to be told in July that Meta had not retained "pictorial representations" of rendered ads.[1]

Plaintiff has followed up repeatedly with Meta and, when necessary, sought court intervention. ECFs 186, 262, 274. These efforts resulted in a series of orders directing Meta to investigate and report on the data it maintains, investigate specific optimizations pursuant to a detailed plan negotiated by the parties in late October, and produce additional data related to those optimizations by mid-December. ECFs 259, 270, 276, 284, 289. As the Court's orders required, Meta disclosed substantial new information last month, including in the days leading up to the October 21 hearing.[2]

Plaintiff memorialized the still-developing preservation issues in dispute letters and court appearances going back to March, reserving all rights to pursue them. *See, e.g.*, ECF 186 at 4; ECF 262 at 3 n.4; ECF 274 at 4 n.3. And as Meta has acknowledged, Plaintiff repeatedly informed Meta of his intention to serve RFAs, *see* ECF 286-1 at 4, 6, including during meet-and-confers in July, September, and October. Despite all this, in late October, Meta asserted for the first time that Plaintiff's RFAs were already too late, at which point Plaintiff immediately raised the issue with the Court. ECF 286-1 at 3-4.

**B. The Court Should Grant Plaintiff Leave to Serve the Proposed RFAs**

The Court should permit Plaintiff to serve the RFAs, all of which will facilitate and streamline Judge Pitts' consideration of Meta's Section 230 defense. Here, Plaintiff's RFAs will "serve[] two vital purposes": "facilitate proof" and "narrow the issues." Fed. R. Civ. P. 36 advisory committee's note to 1970 amendment. Because the operative case schedule authorizes this Court to permit RFAs so long as they are "issue[d]" by December 19, ECF 287 at 3, good cause to modify

---

[1] Indeed, Meta represented to Dr. Forrest's counsel in October 2019 that it was "looking for misleading ads featuring [Dr. Forrest]," then reiterated before Judge Davila that it was doing "the work on the back end here at Meta to make sure that documents are being preserved." 3/23/23 Tr. at 37:25-38:3. In fact, it now appears that Meta made no effort to preserve any ad-related data concerning Dr. Forrest.

[2] In particular, Meta acknowledged that: (1) additional optimization and other data exist in Meta's data production stores; (2) Hive data Meta previously provided is incomplete; (3) some component parts of ads may be retained in the production stores and retrieved using the "Ent" framework; and (4) Meta failed to retain relevant data from certain Hive tables.

a case schedule is not required (though Plaintiff would also satisfy that standard).[3] The Court should exercise its discretion to permit this important discovery.

**1. The RFAs Will Aid the Court**

Plaintiff proposes to serve 77 RFAs regarding Meta's failure to preserve critical evidence relating to Scam Ad outputs and the changes its tools and processes made to Scam Ad Inputs. The admissions will streamline both the evidence and issues for review.

First, the admissions will confirm Meta's spoliation of evidence relating to outputs and changes, the keys to assessing material contribution. In particular, the requested admissions will aid the Court in determining which evidence is and is not available—and, for unavailable evidence, establish whether Meta destroyed or failed to retain it. Given the severity of Meta's discovery misconduct and the significant prejudice to Plaintiff, Plaintiff intends to move at the appropriate time for sanctions, including inferences, related to Meta's preservation failures. Evidence of these failures is dispersed throughout correspondence, hearing transcripts, and other sources. Thus, while the contemplated summary judgment and sanctions motions do not depend solely on the requested admissions, establishing relevant facts through RFAs would distill and refine the core of the dispute for the Court's determination.

Second, because the spoliated evidence concerns what Meta's tools and processes did to Scam Ads, the RFAs also seek to confirm key facts about the capabilities of those tools and processes. *See, e.g.*, RFAs 39, 42, 46, 54, 57, 60, 64, 71, 74. These proposed admissions would assist the Court in distilling material facts from a voluminous and complex record. For example, Meta produced 16 terabytes of material designated as "Source Code," as well as hundreds of technical documents designated as "Attorneys' Eyes Only." In the absence of RFAs, the parties will need to establish the same facts through exhibits, vastly complicating summary judgment briefing. Meta's sweeping confidentiality designations and the protective order's limitations on attaching Source Code will add further complexity.

Meta suggests that the RFAs must "advance the completion of Meta's investigation and production," but there is no such requirement. Rather, this Court may grant leave for any RFAs issued "in connection with Meta's ongoing document production and investigation" and "during the extended period of fact discovery" (i.e., between now and December 19). ECF 287 at 3.

**2. The RFAs Are Timely and Warranted Under the Circumstances**

The RFAs are timely, and the fact that they were prepared toward the end of an extended discovery period is due to Meta's failure to comply with its discovery obligations, not Plaintiff's lack of diligence. *See* ECFs 259, 270, 276, 284, 289. Plaintiff could not have served the RFAs—

[3] Under the applicable factors, there is good cause because: (1) trial is not imminent; (2) Meta would not be prejudiced; (3) Plaintiff has been diligent in seeking discovery and Meta's discovery shortcomings have been the sole cause of any delay; (4) the proposed RFAs (and their timing) were foreseeable given the history of proceedings and Plaintiff's repeated notice to Meta; and (5) the RFAs will elicit critical evidence. *See City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017).

all of which relate to recently produced information or depend on a holistic assessment of Meta's investigation and productions—before the Court's October orders forced Meta to disclose the results of its investigation.[4] Indeed, Plaintiff could not have anticipated information that Meta provided for the first time in October, nor could he have crafted effective requests relating to known data sources without a fuller picture of Meta's investigation and a ruling on Meta's contested production obligations. Those ongoing processes had the potential to, and did, dramatically affect the evidentiary landscape and thus the proper focus and substance of any RFAs.

Furthermore, the timing of Plaintiff's RFAs "was not due to Plaintiff's negligence, but instead his reasonable reliance on [Defendant's] assertion[s]." *Thompson v. BMW of N. Am., LLC*, 334 F.R.D. 230, 233 (C.D. Cal. 2020). From January through July, Meta represented that it had preserved all versions of the Scam Ads, including outputs. Even after disclosing in July that it had not retained "pictorial representations" of rendered Scam Ads, Meta continued to represent to Plaintiff and later the Court that it would produce other data that was "sufficient . . . to understand what [Plaintiff is] interested in with respect to optimizations and content modification." 8/12/25 Tr. at 40:19-21. Had these representations been accurate, many of the RFAs would be unnecessary.

Despite knowing about Plaintiff's planned RFAs since July, Meta waited until late October to assert that the RFAs were already too late—all while seeking an extension to December 19 to satisfy its own discovery obligations. Plaintiff should not be penalized for Meta's delay.

### 3. Proposed Resolution

The Court should order the following relief:

(1) Grant Plaintiff leave to serve the attached RFAs.

(2) Order Meta to respond to the RFAs by December 7, 30 days after receiving them from Plaintiff.

(3) Order that, if a dispute arises regarding the sufficiency of Meta's responses, the parties shall submit a joint discovery letter within 14 days of the date that Meta serves its responses.

## III. <u>DEFENDANT'S POSITION</u>

Plaintiff must demonstrate good cause to expand the scope of the extended fact discovery period to permit him to serve his proposed Requests for Admission ("RFAs"). *See* Fed. R. Civ. P. 16(b)(4).[5] Plaintiff cannot meet that standard.

---

[4] Meta's productions are ongoing through December 12. While Plaintiff has made every effort to craft comprehensive RFAs, he reserves the right to seek leave for additional requests based on new information.

[5] Plaintiff's argument that the good cause standard is inapplicable is misplaced. Judge Pitts delegated the decision of whether RFAs were permissible to this Court. (ECF 287 at 3.) The determination of whether the existing case schedule should be modified to permit RFAs requires a good cause showing.

Plaintiff concedes he seeks admissions concerning "Meta's [purported] failure to preserve critical evidence relating to Scam Ad outputs and the changes its tools and processes made to Scam Ad Inputs." This is not the purpose for which Judge Pitts extended discovery. The fact discovery period was extended for the narrow purpose of completing the "investigation and production regarding the matters addressed in ECF 284, ECF 276, and ECF 273." (ECF 286 at 2.) Plaintiff's proposed RFAs do nothing to advance the completion of Meta's investigation and production and bring fact discovery to a close, in accordance with the Court's October 29, 2025 Order.[6] Instead, Plaintiff seeks to obtain admissions to initiate a new discovery dispute related to preservation. All of the RFAs could have been served prior to the October 29 close of fact discovery (the "Prior Deadline") and therefore Plaintiff failed to act diligently in obtaining this discovery.

**A. All of Plaintiff's RFAs Could Have Been Served Before the Prior Deadline.**

Plaintiff could have served all these RFAs before the Prior Deadline—including, in some cases, many *months* before the Prior Deadline. Although courts may consider several factors when deciding whether to modify a schedule, the "good cause" standard "primarily considers the diligence of the party seeking the amendment." *Johnson* v. *Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *Multiple Energy Techs., LLC* v. *Casden*, No. 221CV01149ODWRAOX, 2022 WL 16972482, at *3–4 (C.D. Cal. Nov. 16, 2022). "If that party was not diligent, the inquiry should end." *Johnson,* 975 F.2d at 609. Plaintiff was in possession of sufficient information that would have enabled him to serve all of the RFAs before the Prior Deadline. Plaintiff concedes he intended to serve RFAs since July, but chose not to serve a single RFA before the Prior Deadline.[7]

Attempting to excuse his delay, Plaintiff argues that he could not have served the RFAs before the Court's October 2025 orders "forced Meta to disclose the results of its investigation" because they all "relate to recently produced information or depend on a holistic assessment of Meta's investigation and productions." We explain below, however, why all the RFAs are untimely:

<u>RFA Nos. 1-5</u>: Plaintiff's first RFA asks Meta to admit that "during the period from January 1, 2019 to January 31, 2025, Meta Rendered Scam Ad Impressions to End-Users on its platforms." (Ex. 1, RFA No. 1.) Plaintiff could have served this RFA at any point in the discovery period. Indeed, Plaintiff alleges in his complaint that Scam Ads were rendered to users on Meta's services. (*See* Third Amend. Compl. ("Compl.") ¶ 1.) Meta also expressly offered to Plaintiff as early as January 2025 to produce impressions data for the alleged Scam Ads. Likewise, RFA Nos. 2-5 could have been served well before the Prior Deadline. They seek admissions regarding data Meta has available about Scam Ads at the time of delivery, including whether Meta has "pictorial representations" of the alleged Scam Ads. Yet, as Plaintiff acknowledges, Meta informed Plaintiff by July 2025 that it does not retain in the ordinary course of business a pictorial representation of all ads as delivered to users.

---

[6] Plaintiff's RFAs also do not relate to information that was provided by Meta after the October 29 close of fact discovery.

[7] Plaintiff attempts to lay blame for his delay on Meta's purported representations. But that excuse ignores that Meta's investigations and productions were ongoing. Meta continuously provided Plaintiff new information or corrections in sufficient time for Plaintiff to serve RFAs had he been diligent.

<u>RFA Nos. 18-20, 31-38[8], 40-41, 43-45, 47-53, 55-56, 58-59, 61-63, 65-70, 72-73, and 75-77</u>: RFA Nos. 18-20 seek general admissions concerning the application of creative optimizations to alleged Scam Ads and Meta's possession of data reflecting that application. The other RFAs seek admissions concerning the application of specific creative optimizations to text, image, and video of the alleged Scam Ads; whether "altered" text, image, and video were rendered to users; and what Meta "possess[es]" or can recreate as to the content and arrangement of text, image, and video that was rendered to users. Plaintiff has been aware of creative optimizations at least since filing the operative complaint. (*See* Compl. ¶ 121 (alleging that "Ads Manager lists approximately 15 possible optimizations that it may apply to the ad creative").) Meta also produced documents regarding creative optimizations by June 2025 and produced the creative optimization enums in August 2025.

<u>RFA Nos. 21-30</u>: RFA Nos. 21 and 22 ask questions about the data available in the Hive table [redacted], which was produced on July 25, 2025. RFA Nos. 23-29 ask questions about the data available in the Hive table [redacted], along with its retention, and Meta's preservation of the data. This table was also produced on July 25. RFA No. 30 asks about the data available in [redacted], which was produced on September 19, 2025.

<u>RFA Nos. 39, 42, 46, 54, 57, 60, 64, 71, and 74</u>: These RFAs seek Meta's admission that the representations in produced documents concerning how optimizations operate are accurate. The documents cited in RFA Nos. 39, 46, 60, 64, 71, and 74 were produced in August 2025. The documents cited in RFA Nos. 42 and 57 were produced in May 2025. The document cited in RFA No. 54 was produced in March 2025.

<u>RFA Nos. 6-17</u>: These RFAs seek admissions concerning the data available in [redacted] and [redacted], along with its retention, and Meta's preservation of data. Even though good cause does not exist to permit Plaintiff to serve any of these RFAs, in the interest of compromise, Meta offered during the lead counsel conference to respond to these RFAs in exchange for Plaintiff withdrawing the remaining RFAs. Plaintiff declined. Meta informed Plaintiff of these tables and their limited retention on an October 17 meet and confer and in October 19 correspondence. Plaintiff could have served RFAs concerning these tables before the Prior Deadline and sought an extension of time for Meta to respond. Plaintiff chose not to do so. Moreover, as with the others, these RFAs do not seek to bring fact discovery to a close by advancing toward the completion of Meta's investigation and production.

### B. Plaintiff's Justifications Do Not Overcome Plaintiff's Delay.

Plaintiff sets forth two reasons why he should be granted leave to serve these RFAs:

First, he argues that these RFAs will purportedly "confirm Meta's spoliation of evidence relating to outputs and changes." Meta denies that any spoliation of evidence has occurred.

[8] RFA Nos. 31-34 seek admissions concerning text "suggested" by Meta during ad creation, which Meta understands to be text, if any, suggested by the tools available in Ads Manager, which are creative optimizations. To the extent Plaintiff seeks admissions concerning the text Meta retains prior to an ad being published in Ads Manager (RFA No. 32), Meta informed Plaintiff in January 2025 that Meta retains the text of an ad after it is published.

Regardless, such admissions are not in furtherance of bringing Meta's investigation and production to an end, so that the parties can proceed to the merits.

Second, Plaintiff argues that the RFAs distill "a voluminous and complex record," citing Meta's production of source code and the "complexity" of confidentiality designations. But the exemplar RFAs Plaintiff provides belie that rationale. Rather than distilling any information, they simply seek to confirm high-level descriptions of the optimizations. Plaintiff's complaints about source code and confidentiality are a sideshow. Plaintiff sought review of source code and Meta produced it in compliance with this Court's order. Plaintiff's expert sought access to the code for only 3 days. The restrictions relating to production were agreed upon by the parties in the Second Amended Protective Order. And in any event, Plaintiff fails to draw any connection between the RFAs he asks and the source code. Lastly, Plaintiff's reliance on the purported "complexity" of Meta's confidentiality designations will not be resolved by his RFAs.

These justifications do not overcome Plaintiff's delay in serving his RFAs.

**Proposed Resolution**

A. Plaintiff is not permitted to serve any of its proposed 77 RFAs.

B. If the Court is inclined to permit Plaintiff to serve a subset of RFAs, Plaintiff should only be permitted to serve RFA Nos. 6-17, as they relate to tables produced less than 30 days before the Prior Deadline.[9]

## IV. WHETHER THE COURT SHOULD HOLD A HEARING

### A. Plaintiff's Position

Given the straightforward nature of the dispute, Plaintiff does not believe a hearing is necessary or would assist the Court in resolving this issue. Of course, Plaintiff's counsel are always happy to appear for a hearing or respond to any questions the Court may have.

### B. Defendant's Position

Meta does not believe a hearing is necessary because Plaintiff has not demonstrated good cause to serve the 77 proposed RFAs.

## V. CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

The parties sought, and the Court approved, an extension of the case schedule as follows:

[9] Meta requests that absent stipulation by the parties, any responses be due 30 days from any Court order granting Plaintiff leave to serve the RFAs.

| **Event** | **Deadline** |
|---|---|
| Completion of fact discovery, limited to: (1) completion of investigation and production regarding the matters addressed in ECF 284, ECF 276, and ECF 273 [agreed upon by all Parties] | **December 19, 2025** |
| Meta's Motion for Summary Judgment on Section 230 defense and opening expert report(s) (if applicable) | **February 4, 2026** |
| Dr. Forrest's Opposition to Meta's Summary Judgment Motion; Cross-Motion for Partial Summary Judgment (if applicable); and opening expert report(s) (if applicable) | **March 30, 2026** |
| Meta's Reply in Further Support of Summary Judgment; Opposition to Dr. Forrest's Cross-Motion for Partial Summary Judgment (if applicable); and rebuttal expert report(s) (if applicable) | **May 7, 2026** |
| Dr. Forrest's Reply in Further Support of Partial Summary Judgment (if applicable) and rebuttal expert report(s) (if applicable) | **June 8, 2026** |

## VI. COMPLIANCE WITH MEET-AND-CONFER REQUIREMENT

Lead counsel conferred by video conference on November 17, 2025. Kaitlin Konkel of Hecker Fink represented Dr. Forrest. Walter F. Brown Jr. and Amy L. Barton of Paul, Weiss represented Meta. The parties agreed to file this dispute letter on November 24, 2025.

## VII. ATTACHMENTS

The following discovery requests are attached:

- Exhibit 1: Plaintiff's First Set of Requests for Admission

Dated: November 24, 2025

HECKER FINK LLP

By: */s/ John C. Quinn*
John C. Quinn
Attorney for Plaintiff
Dr. Andrew Forrest

Dated: November 24, 2025

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ Walter F. Brown*
Walter F. Brown
Attorney for Defendant
Meta Platforms, Inc.