John C. Quinn*
Hyatt Mustefa*
Jocelyn Hassel*
Tayonna Ngutter*
Tanveer Singh*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York
Telephone: (212) 763-0883
jquinn@heckerfink.com
hmustefa@heckerfink.com
jhassel@heckerfink.com
tngutter@heckerfink.com
tsingh@heckerfink.com

Joshua Matz*
Kaitlin Konkel*
Joanne Grace Dela Peña*
Brian Remlinger*
HECKER FINK LLP
1050 K Street NW | Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@heckerfink.com
kkonkel@heckerfink.com
jdelapena@heckerfink.com
bremlinger@heckerfink.com

* *admitted pro hac vice*

*Attorneys for Plaintiff Dr. Andrew Forrest*

[additional counsel on signature page]

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA SAN JOSE DIVISION**

| | |
|---|---|
| DR. ANDREW FORREST,<br>Plaintiff,<br>v.<br>META PLATFORMS, INC.,<br>Defendant. | Case No. 5:22-cv-03699-PCP<br><br>**PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION** |

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Plaintiff Dr. Andrew Forrest ("Dr. Forrest" or "Plaintiff"), by and through his undersigned counsel, hereby serves on Defendant Meta Platforms, Inc. ("Meta" or "Defendant") the following First Set of Requests for Admission ("Request for Admission" or "Requests"). These Requests are to be answered separately and fully, in writing and under oath, within 30 days of the date of service in accordance with the Federal Rules of Civil Procedure or as otherwise ordered by the Court.

The Definitions and Instructions below form an integral part of the Requests that follow and must be read in conjunction with them and followed when responding to the Requests.

## I. DEFINITIONS

1. The terms "***all***", "***any***", "***each***," and "***every***" shall each be construed as both "each" and "every" to bring within the scope of the Requests all responses which might otherwise be construed to be outside of their scope.

2. The term "***Ad Creation***" shall mean and refer to the stage in an Advertisement's creation where an Advertiser first creates an Advertisement within Meta Ads Manager, or uploads such Advertisement to Meta's systems through the Marketing API, whether or not the Advertisement has actually been displayed to any End-Users at that point in time. This term includes the description explained in Meta's Supplemental Responses and Objections to Interrogatory No. 1.

3. The term "***Ad-Creative***" shall mean and refer to all visual, textual, and audio elements of an Advertisement, including but not limited to images, video, text and typography, text and visual hierarchy, layout, color scheme, whitespace, audio and music, animations, navigation elements, and any other design features or aspects of the appearance of an Advertisement.

4. The term "***Advertisement***" shall mean and refer to any message, notice, or other content that appears on any Meta platform (*e.g.*, Facebook, Instagram), and/or on any other website or application through Meta's Audience Network, in exchange for a payment to Meta, or any draft of such message, notice, or other content, and including any version or iteration thereof, including as described on Meta's Business Help Center webpage, currently available at https://www.facebook.com/business/help/714656935225188?id=802745156580214.

5. The term "***Advertiser***" shall mean and refer to any user of Meta Ads Manager or the Marketing API that creates, or begins or attempts to create, one or more Advertisements.

6. The term "***Artificial Intelligence***" or "***AI***" shall mean any technological tools and/or techniques that use automated computation to perform tasks such as predictions, decisions, or recommendations, which tools or techniques may include, but are not limited to, machine learning, natural language processing, or software and algorithmic processes used to automate workflows and help people complete tasks or make decisions.

7. The term "***Complaint***" is used herein to mean the Complaint filed on September 17, 2021, by Plaintiff, in California Superior Court, case number 21-CIV-05055.

8. The term "***Creative Optimization***" shall mean and refer to any Meta feature, tool, process, or enhancement that engages or interacts with an Input and changes, modifies, or impacts Ad-Creative, and includes the description of "creative enhancements" explained in Meta's Supplemental Responses and Objections to Plaintiff's Interrogatory No. 1.

9. The term "***during***" shall mean at any point within the time period described in the Request to bring within the scope of the Request all responses which might otherwise be construed to be outside of its scope.

10. The term "***End-User(s)***" shall mean and refer to any individual(s) to whom a Scam Ad was displayed, presented, targeted, transmitted, or communicated.

11. The term "***Generative AI***" shall mean and refer to any technological tools and/or techniques that use automated computation to generate new content or modify existing content by adding new information to that content, including, but not limited to, large language models, diffusion models, tools or techniques that generate new text, that generate new images or video frames, that enlarge images or videos by adding new pixels to the edges of images or video frames, or that otherwise modify images or video frames by the insertion or addition of new pixels.

12. The term "***Impression(s)***" shall mean and refer to each instance where Meta Renders an Advertisement on an End-User's device.

13. The term "***Input***" shall mean and refer to any and all data and information provided by an Advertiser to Meta, or made available to Meta from or concerning the Advertiser, in

connection with the creation of an Advertisement, whether actively or passively, and whether knowingly or unknowingly, including but not limited to any Ad-Creative provided by the Advertiser, as well as any settings, classification codes, configurations, directives, or instructions provided or set by the Advertiser.

14. The term "***Meta***" shall mean and refer to Defendant Meta Platforms, Inc. as defined above and all of its agents, assigns, employees, principals, members, officers, directors, executives, representatives, subsidiaries, affiliates, related companies, predecessor companies, attorneys and/or all persons authorized to act or purporting to act on its behalf.

15. The terms "***person***" or "***persons***" shall mean natural persons, as well as all other entities including, but not limited to, corporations, limited liability companies, partnerships, associations, firms, joint ventures, organizations, governmental agencies or bodies or any division, department or unit thereof. Any reference to a person in these Requests should be construed as also referring to any persons acting, engaged to act, or purporting to act for them or on their behalf, including all subsidiaries, divisions, successors, predecessors, assigns, parents, affiliates, representatives, servants, agents, employees, officers, or attorneys.

16. The term "***Plaintiff***" shall mean and refer to Plaintiff Dr. Andrew Forrest as defined above, along with anyone authorized to or purporting to act on his behalf.

17. The term "***possess***" or "***possession***" shall mean and refer to physical possession as well as custody or control of an item.

18. The term "***Promotion***" shall mean and refer to the stage in an Advertisement's creation where an Advertiser internally saves an Advertisement within Meta Ads Manager, or uploads such Advertisement to Meta's systems through the Marketing API, whether or not the Advertisement has actually been displayed to any End-Users at that point in time, and includes the description explained and represented by counsel for Meta on January 9, 2025. This term is also equivalent to Meta's use of the term "publishing" in its correspondence to Plaintiff dated January 21, 2025.

19. The term "***Render***" or "***Rendered***" shall mean and refer to the process by which Meta's ad delivery system determines which Advertisement iteration (including which image and

video) to show to an End-User and which additional Creative Optimizations to apply and in what variations; applies those selections; and displays the Advertisement as an Impression on the End-User's device. *See* Meta's Supplemental Responses and Objections to Plaintiff's Interrogatory No. 1.

20. The terms "***relate(s) to,***" "***related to***" or "***relating to***" mean to refer to, reflect, concern, pertain to, evidence or in any manner be connected with a matter discussed.

21. The term "***Scam Ads***" shall mean and refer to Advertisements that use Plaintiff's name or likeness, including (for the avoidance of doubt) all drafts, versions, and iterations thereof, and including all Scam Ads as defined in the Third Amended Complaint.

22. The term "***Third Amended Complaint***" is used herein to mean the Third Amended Complaint filed on December 1, 2023, by Plaintiff, ECF No. 101.

23. The terms "***You***," "***Your***," or "***Yourself***," shall mean Meta as defined above, along with anyone authorized to or purporting to act on its behalf.

24. The connectives "***and***" and "***or***" shall be construed disjunctively or conjunctively if necessary to bring within the scope of Requests all information that might otherwise be construed to the outside of its scope.

**II. GENERAL INSTRUCTIONS**

1. Each Request should be construed independently and not by reference to any other Request for the purpose of limitation or exclusion, unless the context requires otherwise.

2. Please respond to each Request separately by setting forth the Request followed by Your response to the Request. Unless otherwise indicated, no Request shall be construed to limit the scope of any other Request.

3. If you object to a Request, in whole or in part, state the reason for your objection.

4. If your response to any Request is anything other than an unqualified admission or denial, set forth in detail the reasons why you cannot truthfully admit or deny the matter.

5. If you qualify an answer or deny only part of a Request, admit the portion of the Request that is true and qualify or deny the remainder.

6. Respond to the fullest extent possible to each Request. If you are unable to respond to any Request, explain your inability to respond and state whatever information or knowledge you have regarding this Request.

7. Under Rule 36(a) of the Federal Rules of Civil Procedure, you may not give lack of information or knowledge as a reason for failure to admit or deny unless you state that you have made reasonable inquiry and that the information known or readily knowable by you is insufficient to enable you to admit or deny.

8. In answering the Requests, consider all available information, including information in the possession, custody, or control of your attorneys, directors, officers, agents, employees, representatives, associates, investigators or division affiliates, partnerships, parents or subsidiaries, and persons under your control.

9. If you claim any information requested in these Requests is privileged, immune from discovery, or otherwise not discoverable in whole or in part, please describe all facts supporting such privilege or immunity, and describe each person having knowledge of the factual basis upon which the privilege or immunity is asserted.

10. Your obligation to respond to these Requests is continuing, and your responses must be supplemented to include information you acquire later in accordance with Rule 26(e)(1) of the Federal Rules of Civil Procedure.

## III. REQUESTS FOR ADMISSION

### A. OUTPUTS

**REQUEST FOR ADMISSION NO. 1**

Admit that, during the period from January 1, 2019 to January 31, 2025, Meta Rendered Scam Ad Impressions to End-Users on its platforms.

**REQUEST FOR ADMISSION NO. 2**

Admit that, during the period from January 1, 2019 to January 31, 2025, when Meta Rendered an Impression on its platform, Meta possessed the Impression it Rendered.

**REQUEST FOR ADMISSION NO. 3**

Admit that Meta does not currently possess pictorial representations of each Scam Ad Impression that Meta Rendered during the period from January 1, 2019 to January 31, 2025.

**REQUEST FOR ADMISSION NO. 4**

Admit that Meta does not currently possess data showing the exact content and appearance of each Scam Ad Impression that Meta Rendered during the period from January 1, 2019 to January 31, 2025.

**REQUEST FOR ADMISSION NO. 5**

Admit that it is not possible to recreate each Scam Ad Impression that Meta Rendered during the period from January 1, 2019 to January 31, 2025.

**REQUEST FOR ADMISSION NO. 6**

Admit that the [redacted] table captures and contains [redacted].

**REQUEST FOR ADMISSION NO. 7**

Admit that the [redacted] table has a retention period of [redacted].

**REQUEST FOR ADMISSION NO. 8**

Admit that You did not suspend, alter, extend, or otherwise change the retention period for the [redacted] table upon receiving a letter from Plaintiff, dated September 13, 2019, in which Plaintiff informed You that if no solution were proposed and agreed with respect to misleading advertisements on Your platforms, Plaintiff was "determined (and has the resources) to end the ongoing misleading Campaign, now knowingly facilitated by Facebook in Australia, by the commencement of proceedings."

**REQUEST FOR ADMISSION NO. 9**

Admit that You did not suspend, alter, extend, or otherwise change the retention period for the [redacted] table upon the filing of the Complaint.

**REQUEST FOR ADMISSION NO. 10**

Admit that You did not preserve Scam Ad [redacted] data contained in the [redacted] table beyond the retention period.

**REQUEST FOR ADMISSION NO. 11**

Admit that Meta no longer possesses data concerning Scam Ad [redacted] that had been captured and contained in the [redacted] table.

**REQUEST FOR ADMISSION NO. 12**

Admit that the [redacted] table captures and contains information about [redacted].

**REQUEST FOR ADMISSION NO. 13**

Admit that the [redacted] table has a retention period of [redacted].

**REQUEST FOR ADMISSION NO. 14**

Admit that You did not suspend, alter, extend, or otherwise change the retention period for the [redacted] table upon receiving Plaintiff's September 13, 2019 letter. *See* Request No. 8.

**REQUEST FOR ADMISSION NO. 15**

Admit that You did not suspend, alter, extend, or otherwise change the retention period for the [redacted] table upon the filing of the Complaint.

**REQUEST FOR ADMISSION NO. 16**

Admit that You did not preserve Scam Ad [redacted] data from the [redacted] table beyond the retention period.

**REQUEST FOR ADMISSION NO. 17**

Admit that Meta no longer possesses data concerning Scam Ad [redacted] that had been captured and contained in the [redacted] table.

**B. CHANGES**

**REQUEST FOR ADMISSION NO. 18**

Admit that, during the period from January 1, 2019 to the January 31, 2025, Meta applied different Creative Optimizations to each Scam Ad Impression.

**REQUEST FOR ADMISSION NO. 19**

Admit that, for each Scam Ad Impression Rendered during the period between January 1, 2019 and January 31, 2025, Meta does not currently possess data showing all Creative Optimizations that were applied to each Impression.

**REQUEST FOR ADMISSION NO. 20**

Admit that, for each Scam Ad Impression Rendered during the period between January 1, 2019 and January 31, 2025, Meta does not currently possess data showing exactly how the Creative Optimizations that were applied to each Impression impacted such Impression.

**REQUEST FOR ADMISSION NO. 21**

Admit that the Creative Optimizations that appear in the [redacted] column of the [redacted] table produced at META-0105714 comprise all Creative Optimizations that could be applied to the Scam Ads in this table.

**REQUEST FOR ADMISSION NO. 22**

Admit that the [redacted] table does not contain Creative Optimization data for all Scam Ads.

**REQUEST FOR ADMISSION NO. 23**

Admit that the Creative Optimizations that appear in the [redacted] column of the [redacted] table, produced beginning at META-0105699, comprise all [redacted] in this table.

**REQUEST FOR ADMISSION NO. 24**

Admit that the [redacted] table does not contain data for all Scam Ad [redacted].

**REQUEST FOR ADMISSION NO. 25**

Admit that the [redacted] table has a limited retention period.

**REQUEST FOR ADMISSION NO. 26**

Admit that you did not suspend, alter, extend, or otherwise change the retention period for the [redacted] table upon receiving Plaintiff's September 13, 2019 letter. *See* Request No. 8.

**<u>REQUEST FOR ADMISSION NO. 27</u>**

Admit that You did not suspend, alter, extend, or otherwise change the retention period for the [redacted] table upon the filing of the Complaint.

**<u>REQUEST FOR ADMISSION NO. 28</u>**

Admit that you did not preserve Scam Ad [redacted] data captured and contained in the [redacted] table beyond the retention period.

**<u>REQUEST FOR ADMISSION NO. 29</u>**

Admit that you no longer possess all Scam Ad [redacted] data that had been captured and contained in the [redacted].

**<u>REQUEST FOR ADMISSION NO. 30</u>**

Admit that the Creative Optimizations that appear in the [redacted] column of the [redacted] table, produced beginning at META-0112447, comprise [redacted].

### 1. Text Creative Optimizations

**<u>REQUEST FOR ADMISSION NO. 31</u>**

Admit that, during the period from January 1, 2019 to January 31, 2025, Meta did suggest text to one or more Advertisers during Ad Creation prior to Promotion.

**<u>REQUEST FOR ADMISSION NO. 32</u>**

Admit that Meta does not retain text, suggested text, or changes to text prior to Promotion.

**<u>REQUEST FOR ADMISSION NO. 33</u>**

Admit that, during Ad Creation prior to Promotion, Meta suggested text to one or more Scam Ad Advertisers.

**<u>REQUEST FOR ADMISSION NO. 34</u>**

Admit that, for Scam Ads in which Meta suggested text prior to Promotion, Meta does not currently possess data showing whether an Advertiser adopted text suggested by Meta prior to Promotion.

**REQUEST FOR ADMISSION NO. 35**

Admit that, during the period from January 1, 2019 to January 31, 2025, Meta applied Creative Optimizations that altered text input by an Advertiser.

**REQUEST FOR ADMISSION NO. 36**

Admit that for one or more Scam Ads, Meta applied Creative Optimizations that altered text input by the Advertiser.

**REQUEST FOR ADMISSION NO. 37**

Admit that, for Scam Ad Impressions that included text altered from the original text input by an Advertiser, Meta possessed the altered text it rendered to End-Users.

**REQUEST FOR ADMISSION NO. 38**

Admit that, for Scam Ad Impressions that included text altered from the original version input by an Advertiser to End-Users, Meta cannot ascertain what text it Rendered to End-Users.

**REQUEST FOR ADMISSION NO. 39**

Admit that the text generation Creative Optimization described at META-0110345 uses Generative AI to create text "variations based on the input text."

**REQUEST FOR ADMISSION NO. 40**

Admit that, during the period from January 1, 2019 to January 31, 2025, Meta applied the text generation Creative Optimization referenced in Request No. 39 to some Scam Ads.

**REQUEST FOR ADMISSION NO. 41**

Admit that for the Impressions of Scam Ads referenced in Request No. 40, Meta cannot determine what text it displayed to End-Users.

**REQUEST FOR ADMISSION NO. 42**

Admit that the [redacted] Creative Optimization described at META-0016460 used Generative AI to [redacted]

**REQUEST FOR ADMISSION NO. 43**

Admit that, during the period from January 1, 2019 to January 31, 2025, Meta applied the [redacted] Creative Optimization referenced in Request No. 42 to some Scam Ads.

**<u>REQUEST FOR ADMISSION NO. 44</u>**

Admit that for the Impressions of Scam Ads referenced in Request No. 43, Meta cannot ascertain the content and arrangement of keyword text Rendered to End-Users.

**<u>REQUEST FOR ADMISSION NO. 45</u>**

Admit that for the Impressions referenced in Request No. 43, it is not possible to recreate the exact content and arrangement of keyword text Rendered to End-Users.

**<u>REQUEST FOR ADMISSION NO. 46</u>**

Admit that the [redacted] Creative Optimization described at META-0110838 uses AI to [redacted]

**<u>REQUEST FOR ADMISSION NO. 47</u>**

Admit that, during the period from January 1, 2019 to January 31, 2025, Meta applied the [redacted] Creative Optimization referenced in Request No. 46 to some Scam Ads.

**<u>REQUEST FOR ADMISSION NO. 48</u>**

Admit that for the Impressions of Scam Ads referenced in Request No. 47, Meta cannot ascertain the exact arrangement of text elements Rendered to End-Users.

**<u>REQUEST FOR ADMISSION NO. 49</u>**

Admit that for the Impressions of Scam Ads referenced in Request No. 47, it is not possible to recreate the exact arrangement of text elements Rendered to End-Users.

**2. IMAGE CREATIVE OPTIMIZATIONS**

**<u>REQUEST FOR ADMISSION NO. 50</u>**

Admit that, during the period from January 1, 2019 to January 31, 2025, Meta applied Creative Optimizations that altered images uploaded by an Advertiser.

**REQUEST FOR ADMISSION NO. 51**

Admit that, during the period from January 1, 2019 to January 31, 2025, Meta Rendered images altered from the original version uploaded by an Advertiser.

**REQUEST FOR ADMISSION NO. 52**

Admit that, for Impressions that included images altered from the original version uploaded by an Advertiser, Meta possessed the altered images it Rendered to End-Users.

**REQUEST FOR ADMISSION NO. 53**

Admit that, for Scam Ad Impressions that included images altered from the original version uploaded by an Advertiser, Meta does not currently possess the altered images it Rendered to End-Users.

**REQUEST FOR ADMISSION NO. 54**

Admit that the [redacted] Creative Optimization described at META-0011048 uses Generative AI to [redacted]

**REQUEST FOR ADMISSION NO. 55**

Admit that, during the period from January 1, 2019 to January 31, 2025, Meta applied the [redacted] Creative Optimization referenced in Request No. 54 to some Scam Ads.

**REQUEST FOR ADMISSION NO. 56**

Admit that, for the Impressions of Scam Ads referenced in Request No. 55, it is not possible to recreate the exact images Rendered to End-Users.

**REQUEST FOR ADMISSION NO. 57**

Admit that the Creative Optimization described at META-0076942 uses Generative AI to "replac[e] [backgrounds] with generated variants."

**REQUEST FOR ADMISSION NO. 58**

Admit that, during the period from January 1, 2019 to January 31, 2025, Meta applied the background Creative Optimization referenced in Request No. 57 to some Scam Ads.

**REQUEST FOR ADMISSION NO. 59**

Admit that, for the Impressions of Scam Ads referenced in Request No. 58, it is not possible to recreate the exact images Rendered to End-Users.

**<u>REQUEST FOR ADMISSION NO. 60</u>**

Admit that the image animation Creative Optimization described at META-0110282 "applies motion effects to existing Image Ads, transforming them into brief animations."

**<u>REQUEST FOR ADMISSION NO. 61</u>**

Admit that, during the period from January 1, 2019 to January 31, 2025, Meta applied the image animation Creative Optimization referenced in Request No. 60 to some Scam Ads.

**<u>REQUEST FOR ADMISSION NO. 62</u>**

Admit that for the Impressions of Scam Ads referenced in Request No. 61, Meta does not possess the exact animation Rendered to End-Users.

**<u>REQUEST FOR ADMISSION NO. 63</u>**

Admit that, for the Impressions of Scam Ads referenced in Request No. 61, it is not possible to recreate the exact animation Rendered to End-Users.

**<u>REQUEST FOR ADMISSION NO. 64</u>**

Admit that the Creative Optimization described at META-0106557 uses AI to [redacted]

**<u>REQUEST FOR ADMISSION NO. 65</u>**

Admit that, during the period from January 1, 2019 to January 31, 2025, Meta applied the cropping Creative Optimization referenced in Request No. 64 to some Scam Ads.

**<u>REQUEST FOR ADMISSION NO. 66</u>**

Admit that for the Impressions of Scam Ads referenced in Request No. 65, Meta cannot ascertain the exact appearance of the cropped images Rendered to End-Users.

**3. VIDEO CREATIVE OPTIMIZATIONS**

**<u>REQUEST FOR ADMISSION NO. 67</u>**

Admit that, during the period from January 1, 2019 to January 31, 2025, Meta applied Creative Optimizations that altered the videos uploaded by an Advertiser.

**<u>REQUEST FOR ADMISSION NO. 68</u>**

Admit that, during the period from January 1, 2019 to January 31, 2025, Meta Rendered to End-Users videos altered from the original versions uploaded by Advertisers.

**REQUEST FOR ADMISSION NO. 69**

Admit that, for Scam Ad Impressions that included videos, Meta possessed the altered videos it Rendered to End-Users.

**REQUEST FOR ADMISSION NO. 70**

Admit that, for Scam Ad Impressions that included videos, Meta does not currently possess the altered videos it Rendered to End-Users.

**REQUEST FOR ADMISSION NO. 71**

Admit that the Thumbnail Creative Optimization described at META-0110711 utilizes Artificial Intelligence to [redacted]

**REQUEST FOR ADMISSION NO. 72**

Admit that, during the period from January 1, 2019 to January 31, 2025, Meta applied the Thumbnail Creative Optimization referenced in Request No. 71 to some Scam Ads.

**REQUEST FOR ADMISSION NO. 73**

Admit that for the Impressions of Scam Ads referenced in Request No. 72, Meta cannot identify the precise thumbnails Rendered to End-Users.

**REQUEST FOR ADMISSION NO. 74**

Admit that the [redacted] Creative Optimization described at META-0106635 utilizes AI to [redacted]

**REQUEST FOR ADMISSION NO. 75**

Admit that, during the period from January 1, 2019 to January 31, 2025, Meta applied the [redacted] Creative Optimization referenced in Request No. 74 to some Scam Ads.

**REQUEST FOR ADMISSION NO. 76**

Admit that for the Impressions of Scam Ads referenced in Request No. 75, Meta cannot identify the [redacted] Rendered to End Users.

**REQUEST FOR ADMISSION NO. 77**

Admit that, for the Scam Ads referenced in Request No. 75, it is not possible to recreate the exact carousels Rendered to End-Users.

November 7, 2025
New York, New York

**HECKER FINK LLP**
John C. Quinn*
jquinn@heckerfink.com
Hyatt Mustefa*
hmustefa@heckerfink.com
Jocelyn Hassel*
jhassel@heckerfink.com
Tayonna Ngutter*
tngutter@heckerfink.com
Tanveer Singh*
tsingh@heckerfink.com
350 Fifth Avenue, 63rd Floor
New York, New York
Telephone: (212) 763-0883

Joshua Matz*
jmatz@heckerfink.com
Kaitlin Konkel*
kkonkel@heckerfink.com
Joanne Grace Dela Peña*
jdelapena@heckerfink.com
1050 K Street NW | Suite 1040
Brian Remlinger*
bremlinger@heckerfink.com
Washington, DC 20001
Telephone: (212) 763-0883

**SINGLETON SCHREIBER**
Leslie Bruckner (SBN 140968)
lbrueckner@singletonschreiber.com
591 El Camino de la Reina, Suite 1025
San Diego, CA 92108
Telephone: (619) 573-1851

**BAILEY & GLASSER LLP**
Elizabeth Ryan*
eryan@baileyglasser.com
John Roddy*
jroddy@baileyglasser.com
176 Federal Street, 5th Floor
Boston, MA 02110
Telephone: (617) 439-6730

Katherine E. Charonko*
kcharonko@baileyglasser.com
209 Capital Street6
Charleston, WV 25301
Telephone: (304) 345-6555

Elizabeth L. Stryker*
estryker@baileyglasser.com
94 Long Street, Suite 200
Westover, WV 26501
Telephone: (304) 594-0087

* *admitted pro hac vice*

**DEREK G. HOWARD LAW FIRM, INC.**
Derek G. Howard (SBN 118082)
derek@derekhowardlaw.com
42 Miller Avenue
Mill Valley, CA 94941
Telephone: (415) 432-7192

*Attorneys for Plaintiff Dr. Andrew Forrest*