| | |
|---|---|
| John C. Quinn (*pro hac vice*) <br> jquinn@heckerfink.com <br> Hyatt Mustefa (*pro hac vice*) <br> hmustefa@heckerfink.com <br> Jocelyn Hassel (*pro hac vice*) <br> jhassel@heckerfink.com <br> Tayonna Ngutter (*pro hac vice*) <br> tngutter@heckerfink.com <br> Tanveer Singh (*pro hac vice*) <br> tsingh@heckerfink.com <br> **HECKER FINK LLP** <br> 350 Fifth Avenue, 63rd Floor <br> New York, NY 10118 <br> Telephone: (212) 763-883 <br><br> Joshua Matz (*pro hac vice*) <br> jmatz@heckerfink.com <br> Joanne Grace Dela Peña (*pro hac vice*) <br> jdelapena@heckerfink.com <br> Kaitlin Konkel (*pro hac vice*) <br> kkonkel@heckerfink.com <br> Brian Remlinger (*pro hac vice*) <br> bremlinger@heckerfink.com <br> **HECKER FINK LLP** <br> 1050 K Street NW, Suite 1040 <br> Washington, DC 20001 <br> Telephone: (212) 763-0883 <br><br> *Attorneys for Plaintiff Dr. Andrew Forrest* <br><br> [Additional Counsel on Signature Page] | Karen L. Dunn (*pro hac vice*) <br> kdunn@dirllp.com <br> Melissa F. Zappala (*pro hac vice*) <br> mzappala@dirllp.com <br> **DUNN ISAACSON RHEE LLP** <br> 401 9th Street NW <br> Washington, DC 20004 <br> Telephone: (202) 240-2900 <br> Facsimile: (202) 240-2050 <br><br> Walter F. Brown Jr. (SBN: 130248) <br> wbrown@paulweiss.com <br> **PAUL, WEISS, RIFKIND,** <br> **WHARTON & GARRISON LLP** <br> 535 Mission Street, 24th Floor <br> San Francisco, CA 94105 <br> Telephone: (628) 432-5100 <br> Facsimile: (628) 232-3101 <br><br><br><br><br><br><br><br><br><br><br> *Attorneys for Defendant Meta Platforms, Inc.* <br><br> [Additional Counsel on Signature Page] |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DR. ANDREW FORREST, <br><br> Plaintiff, <br><br> v. <br><br> META PLATFORMS, INC., <br><br> Defendant. | Case No. 22-cv-03699-PCP <br><br> **JOINT STATUS REPORT** <br><br> The Hon. Judge Virginia K. DeMarchi |

1    Pursuant to this Court's October 29, 2025 Order (the "October 29 Order"), *see* ECF 289, Plaintiff Dr. Andrew Forrest and Defendant Meta Platforms, Inc. (together, the "Parties") jointly submit this status report. The October 29 Order provides that the Parties "shall file a joint status report regarding the results of Meta's investigation, and shall include any additional requests for relief relating to Meta's investigation and production of additional alleged Scam Ad data arising out of the following orders of this Court: Dkt. 276, Dkt. 284, and the instant order." ECF 289 ¶ 6.

1.  On October 27, 2025, Plaintiff identified to Meta the creative optimizations for which Plaintiff asks Meta to further investigate the existence of relevant data and the feasibility of its production, as stated in Paragraph 1 of the October 29 Order.

2.  On October 30, 2025, Meta substantially completed its production of what it understands to be the original videos uploaded by advertisers in connection with the alleged Scam Ads, per Paragraph 3 of the October 29 Order.

3.  On October 31, 2025, the Parties met and conferred concerning Plaintiff's identified optimizations, per Paragraph 2 of the October 29 Order. Plaintiff agreed to deprioritize one category of optimization, narrowed another, and provided specific enums that Plaintiff believes are relevant to certain of his requested optimizations.

4.  On November 7, 2025, Meta began its production of additional text data, per Paragraph 3 of the October 29 Order.

5.  On November 17, 2025, per Paragraph 4 of the October 29 Order, Meta reported to Plaintiff by letter on the results of its investigation thus far and reported that it believed additional time would be needed to complete its investigation into the optimizations identified by Plaintiff and to complete any associated production of materials.

6.  On November 20, 2025, per Paragraph 5 of the October 29 Order, the Parties met and conferred concerning Meta's November 17 letter, the results of Meta's investigation thus far, and Meta's position that it would need additional time to complete its investigation and production of associated data, if any.

7.  On November 21, 2025, Plaintiff informed Meta of his position on an extension as outlined in Plaintiff's position statement below.

1

**Plaintiff's Position:**

After months of motion practice and negotiation, the Parties worked out a detailed schedule and overall deadline for Meta to complete its investigation into the availability of key data and produce it to Plaintiff, which this Court and Judge Pitts so-ordered in late October. *See* ECFs 287, 289. On November 17, the deadline for Meta to complete its investigation, Meta informed Plaintiff that it had not completed its investigation as required. The Parties met and conferred on November 20, and Meta further informed Plaintiff that it does not expect to meet the substantial completion deadline of December 5, ECF 289 ¶ 7, the full production deadline of December 12, *id.*, or the fact discovery deadline of December 19, ECF 287. Meta proposed that the Parties jointly seek to extend all further deadlines by a substantial period, likely a month or more. Following the meet-and-confer, Plaintiff informed Meta that he was not willing to stipulate to a blanket extension, but he would consider more targeted requests—for example, requests limited to particular optimizations—if Meta demonstrated good cause and otherwise continued meeting the operative deadlines.

Meta now asks this Court to suspend its December 5 and December 12 production deadlines without Meta's having sought, let alone obtained, a revised case schedule from Judge Pitts. Indeed, under Meta's plan, Meta would not even "set forth a proposal … for a revised schedule" until December 8. Plaintiff's overriding priority remains the timely and complete production of the ad data that is central to Meta's Section 230 defense—including evidence of inputs, outputs, and changes—with respect to the optimizations that Plaintiff identified and then narrowed. Rather than advancing the Parties toward that goal, Meta's sweeping proposal would delay its obligations by a month or more.

Instead of delaying until December 8, Meta should immediately seek any scheduling modifications it believes are warranted and demonstrate good cause for such relief. In the meantime, Meta must comply with its obligations unless and until Judge Pitts and this Court modify their prior orders. *See* ECFs 287, 289.

**Relevant Background**

Since early 2025, Meta has failed to meet its discovery obligations with respect to the investigation and production of Scam Ad data, forcing Plaintiff to litigate the issue. ECFs 186, 262, 274. At the conclusion of this process, the Parties negotiated a final, limited extension of the fact discovery deadline to allow Meta to complete its work, as well as a set of interim deadlines to ensure that the investigation and production remained on track. ECFs 287, 289.

This Court's October 29 Order entering these deadlines noted that Plaintiff had already "identified to Meta the creative optimizations for which Plaintiff asks Meta to further investigate the existence of relevant data and the feasibility of its production." ECF 289 ¶ 1. The order did not restrict Plaintiff's list of optimizations or require that the Parties negotiate an agreed-upon list, but it permitted Meta to request a meet-and-confer, and Meta did so. *Id.* ¶ 2. At Meta's request, Plaintiff subsequently deprioritized one of his identified optimizations, narrowed another, and provided specific enums of focus for several others.

The next deadline was Meta's. By November 17, Meta was required to "(1) complete its investigation as to whether it can identify and retrieve the component parts of the Scam Ads that were impacted by the creative optimizations identified by Plaintiff; and (2) report its findings in writing to Plaintiff." *Id.* ¶ 4. In addition, Meta was required to notify Plaintiff of specified feasibility issues so that the Parties could meet and confer ahead of filing this joint status report. *Id.* ¶¶ 3-6.

On November 17, Meta provided a written update informing Plaintiff that its investigation was ongoing—and thus had not been "complete[d]" by November 17. *See id.* ¶ 4. Meta requested, and Plaintiff declined to agree to, a blanket extension of undetermined length.

**Meta Must Comply with Its Obligations or Demonstrate Good Cause to Change Them**

Meta has suggested that it will seek a lengthy, across-the-board extension of the current schedule. There is no basis for such sweeping relief.  Unfortunately, past experience in this case has been that in the absence of interim deadlines and close supervision, Meta has resisted its obligations, rebuffed requests for information, and withheld key disclosures until the last possible

moment. *See, e.g.*, ECF 186 at 2; ECF 187 at 2; 3/18/2025 Tr. at 23:18-20; 46:7-15; ECF 239 at 2; ECF 262 at 4; ECF 274 at 4.

There is a better alternative. As the Court is aware, Meta is currently investigating the specific optimizations identified by Plaintiff.[1] *See* ECF 289 ¶ 1. If Meta believes that it cannot meet its obligations for particular optimizations (or sets of optimizations that are being investigated together),[2] it should immediately seek targeted relief and explain why there is good cause for any modifications it seeks. *See City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1065-66 (9th Cir. 2017). For now, the December 5 and 12 production deadlines are still weeks away, and Meta should continue working diligently to meet its existing obligations for as many optimizations as possible.

Requested Relief:

1. Because Meta has not sought, and Judge Pitts has not granted, any modifications to the case schedule, all obligations imposed by the October 29 Order should remain in place.
2. In the event that Meta seeks and obtains a revised case schedule from Judge Pitts, this Court should reset the relevant dates in the October 29 Order with respect to optimizations for which Meta has not satisfied its obligations, preserving the structure, relative timing, and substance of the current dates and obligations.

**Meta's Position:**

Meta has diligently and expeditiously undertaken the additional investigation into data concerning the impact of Meta's ad tools and processes on the content of the alleged Scam Ads ordered by this Court. Meta has determined—given the number of optimizations Plaintiff requested, and not for lack of effort—that it cannot complete its investigation and production within the deadlines the Parties initially agreed upon, set forth in the Order, and within the current fact discovery deadline. Meta so reported to Plaintiff and proposed the parties discuss a reasonable extension of deadlines. Plaintiff currently has not agreed to any extension.

---

[1] As Meta's statement explains, the Parties do not dispute the scope of Meta's investigation and production—only Meta's timing obligations.

[2] Meta's assertion that "aspects of [its] investigatory work involve multiple optimizations" may be a reason to group or sequence Meta's obligations in a specific way, but it is not a reason to push off all deadlines.

4

JOINT STATUS REPORT                                                     Case No. 22-cv-3699-PCP

Plaintiff suggests that Meta seeks an unbounded extension of time. Not so. Meta plans to seek an extension of the fact discovery deadline from Judge Pitts, but it is not realistic to do so by December 5, this Court's next deadline. Meta requests the opportunity to analyze the amount of time needed to complete its investigation and production. It anticipates that it should be able to identify, by December 8, that timeline for doing so and hopes to be able to negotiate with Plaintiff a reasonable extension. If Judge Pitts grants an extension, Meta will propose revised interim deadlines for reporting on its investigation and completing production in accordance with the new fact discovery deadline. Accordingly, Meta requests relief from the deadlines in Paragraph 7 of the Order and that the Parties submit a joint status report on December 8 to update the Court on progress.

Meta believes that good cause exists for an extension of the fact discovery deadline.[3] On October 27, 2025, Plaintiff identified 11 *categories* of optimizations—some of which comprised multiple individual optimizations—for investigation over a compressed three-week period. To realistically meet the deadlines set forth in the Order, Meta requested that Plaintiff narrow his list of requested optimizations, including to exclude (1) optimizations that did not appear to have been used on any alleged Scam Ads and (2) optimizations that, on their face, bore little relevance to a Section 230 analysis (*e.g.*, image resolution improvement). To further focus the investigation, Meta also requested that Plaintiff provide Meta with information regarding the ads on which Plaintiff believed certain optimizations had been used and the enum values (from Meta's Hive production) Plaintiff associated with the requested optimization categories. In response, Plaintiff declined to meaningfully narrow his list.

Even though Plaintiff's October 27 list of optimizations is overly broad, Meta is not objecting to investigating the identified categories of optimizations and producing what resulting data it can. Tasked with this expansive assignment, Meta has worked tirelessly to attempt to meet

---

[3] As Meta will set forth in greater detail when it seeks to extend the fact discovery deadline, good cause exists because the extension is necessary to permit the production of discovery materials Plaintiff himself has argued are relevant and necessary to address prejudice in the alleged insufficiency of Meta's existing productions. *See City of Pomona* v. *SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017). Meta has been diligent in pursuing this additional data investigation and production and simply needs a reasonable extension to complete its work. *Id.* Trial is not imminent, and Plaintiff will not be prejudiced—quite the opposite. *Id.*

the deadlines set forth in the Order. Meta has consulted with at least 18 subject-matter experts to identify relevant data sources, understand what is contained in data sources, write and rewrite bespoke scripts from scratch to retrieve data from Meta's production stores through the complex Ent Framework (because Meta does not otherwise possess in the ordinary course of business a means to retrieve this data), troubleshoot errors and unexpected outputs, and develop new mechanisms to process voluminous relevant data, images, and videos for production.

Meta accomplished much in the four weeks following Plaintiff's initial identification of optimizations for investigation. It substantially completed its production of the videos originally uploaded by advertisers, began its production of additional text data (from Hive), and provided Plaintiff with additional information about its prior productions of data. By the week of December 1, Meta anticipates it will have produced both the thumbnails selected by advertisers and thumbnails generated by Meta from frames of advertisers' videos. As Meta reported to Plaintiff, Meta wrote new scripts to pull additional text data from the production stores, but those scripts did not generate the expected output, so Meta continues to work to identify additional text data. It is making progress identifying sources that contain data reflecting all text options provided or adopted by advertisers, all text generated by Meta's Text generation tool, and any text impacted by text swapping. Meta is also making progress creating scripts to retrieve the references necessary to pull the actual images and videos from the production stores for interim outputs related to several of the optimizations Plaintiff requested.[4] Even if Meta is successful in retrieving the references to the images and videos, it will still need to determine the feasibility of pulling the images and videos themselves from the production stores and perform additional work to render images and videos into a producible format, including manual work to overlay information to allow Plaintiff to link the outputs to the relevant ad.

To be clear, Meta has not ceased its work and is committed to completing its investigation and production. It simply needs a reasonable extension of time.

---

[4] Because aspects of Meta's investigatory work involve multiple optimizations, seeking extensions on an optimization-by-optimization basis is not practical. Meta will produce information on a rolling basis as it identifies interim outputs.

Requested Relief:

1. While Meta will continue to make all reasonable efforts to complete its investigation and continue production, Meta requests relief from the deadlines in Paragraph 7 of the Order.
2. The parties will file an additional joint status update on December 8, which will set forth a proposal (whether jointly or from Meta) for a revised schedule for the completion of Meta's investigation and related production.

Dated: November 25, 2025

Respectfully submitted,

By:
/s/ John C. Quinn
John C. Quinn (*pro hac vice*)
jquinn@heckerfink.com
Hyatt Mustefa (*pro hac vice*)
hmustefa@heckerfink.com
Jocelyn Hassel (*pro hac vice*)
jhassel@heckerfink.com
Tayonna Ngutter (*pro hac vice*)
tngutter@heckerfink.com
Tanveer Singh (*pro hac vice*)
tsingh@heckerfink.com
**HECKER FINK LLP**
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883

Joshua Matz (*pro hac vice*)
jmatz@heckerfink.com
Joanne Grace Dela Peña (*pro hac vice*)
jdelapena@heckerfink.com
Kaitlin Konkel (*pro hac vice*)
kkonkel@heckerfink.com
Brian Remlinger (*pro hac vice*)
bremlinger@heckerfink.com
**HECKER FINK LLP**
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883

Leslie Brueckner (SBN: 140968)
lbrueckner@singletonschreiber.com
**SINGLETON SCHREIBER**
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
Telephone: (619) 573-1851

/s/ Walter F. Brown Jr.
Karen L. Dunn (*pro hac vice*)
kdunn@dirllp.com
Melissa F. Zappala (*pro hac vice*)
mzappala@dirllp.com
**DUNN ISAACSON RHEE LLP**
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900
Facsimile: (202) 240-2050

Meredith R. Dearborn (SBN: 268312)
mdearborn@dirllp.com
**DUNN ISAACSON RHEE LLP**
345 California Street, Suite 600
San Francisco, CA 94104-2671
Telephone: (202) 240-2900
Facsimile: (202) 240-2050

Walter F. Brown Jr. (SBN: 130248)
wbrown@paulweiss.com
**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

Amy L. Barton (*pro hac vice*)
abarton@paulweiss.com
T. Patrick Cordova (*pro hac vice*)
pcordova@paulweiss.com
Anne Simons (*pro hac vice*)
asimons@paulweiss.com
Paloma Rivera (*pro hac vice*)

Elizabeth Ryan (*pro hac vice*)
eryan@baileyglasser.com
**BAILEY & GLASSER LLP**
176 Federal Street, 5th Floor
Boston, MA 02110
Telephone: (617) 439-6730

Derek G. Howard (SBN: 118082)
derek@derekhowardlaw.com
**DEREK G. HOWARD LAW FIRM, INC.**
42 Miller Avenue
Mill Valley, CA 94941
Telephone: (415) 432-7192

*Attorneys for Plaintiff Dr. Andrew Forrest*

privera@paulweiss.com
**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Jacob M. Heath (SBN: 238959)
jheath@orrick.com
**ORRICK, HERRINGTON &
SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

*Attorneys for Defendant Meta Platforms, Inc.*

**FILER'S ATTESTATION**

I, Walter F. Brown Jr., am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: November 25, 2025         By:      */s/ Walter F. Brown Jr.*
                                                   Walter F. Brown Jr.