# EXHIBIT 3

John C. Quinn*
Amit Jain*
Hyatt Mustefa*
Jocelyn Hassel*
Tayonna Ngutter*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York
Telephone: (212) 763-0883
jquinn@heckerfink.com
ajain@heckerfink.com
hmustefa@heckerfink.com
jhassel@heckerfink.com
tngutter@heckerfink.com

Joshua Matz*
HECKER FINK LLP
1050 K Street NW | Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
jmatz@heckerfink.com

* *admitted pro hac vice*

*Attorneys for Plaintiff Dr. Andrew Forrest*

[ADDITIONAL COUNSEL ON SIGNATURE PAGE]

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| DR. ANDREW FORREST,<br><br>    Plaintiff,<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>    Defendant. | Case No. 5:22-cv-03699-PCP<br><br>**PLAINTIFF'S FIRST SET OF INTERROGATORIES** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Dr. Andrew Forrest ("Dr. Forrest" or "Plaintiff"), by and through his undersigned counsel, hereby requests that Defendant Meta Platforms, Inc. ("Meta" or "Defendant" and, together with Plaintiff, the "Parties") fully and completely answer in writing, in accordance with the Definitions and Instructions set forth herein, each of the following Interrogatories under oath and serve such answers at the offices of Hecker Fink LLP, 350 Fifth Avenue, 63rd Floor, New York, New York 10118, within thirty (30) days from the date of service of this First Set of Interrogatories (the "Interrogatories"), unless otherwise agreed by the Parties or ordered by the Court.[1]

## I. DEFINITIONS

1. The term **"Ad-Creative"** shall mean and refer to all visual, textual, and audio elements of an Advertisement, including but not limited to images, video, text and typography, text and visual hierarchy, layout, color scheme, whitespace, audio and music, animations, navigation elements, and any other design features or aspects of the appearance of an Advertisement.

2. The term **"Ad-Review"** shall mean and refer to any machine, system, technology, process, approach, or practice that Meta uses to review Advertisements, including but not limited to the Advertisement review process described on the Meta Business Help Center webpage, currently available at https://www.facebook.com/business/help/204798856225114?id=649869995454285.

3. The term **"Advertisement"** shall mean and refer to any message, notice, or other content that appears on any Meta platform (*e.g.*, Facebook, Instagram), and/or on any other website or application through Meta's Audience Network, in exchange for a payment to Meta, or any draft of such message, notice, or other content, and including any version or iteration thereof, including as described on Meta's Business Help Center webpage, currently available at https://www.facebook.com/business/help/714656935225188?id=802745156580214.

4. The term **"Advertiser"** shall mean and refer to any user of Meta Ads Manager that creates, or begins or attempts to create, one or more Advertisements.

---

[1] All capitalized terms shall have the meaning ascribed to them herein or, if not defined herein, the meaning ascribed to them in the Third Amended Complaint.

PLAINTIFF'S FIRST SET OF INTERROGATORIES - 1

5. The term "*Audience*" shall mean and refer to the group of individuals to whom a Campaign or Advertisement is displayed or targeted, including through the host of features, services, tools, and products offered by Meta to deliver Advertisements "beyond the original selected audience," as described on the Meta Business Help Center webpage, currently available at https://www.facebook.com/business/help/414975413946182?id=1629569087788063.

6. The term "*Audience Network*" shall mean and refer collectively to Placements of Advertisements by Meta on platforms other than Meta's own platforms.

7. The term "*Communication*" shall be afforded the broadest possible definition and shall include any transmission or exchange of information, content, or other expression of any kind between two or more persons or entities.

8. The term "*Content Modification*" shall mean and refer to any act or conduct of any kind by Meta that engages or interacts with an Input and affects in any manner the Ad-Creative.

9. The term "*Content Modification Tool*" shall mean and refer to any Meta feature, tool, product, or service that performs or engages in Content Modification.

10. The term "*End-User*" shall mean and refer to any individual to whom a Scam Ad was displayed, presented, targeted, transmitted, or communicated.

11. The term "*identify*" shall mean, when used in reference to a team, group, or department, to state the name by which Meta refers to the team/group/department, provide a brief description of the role, assignment, and authority of the team/group/department, and name the individual(s) responsible for such team/group/department or the relevant portion of such team/group/department.

12. The term "*Input*" shall mean and refer to any and all data and information provided by an Advertiser to Meta, or made available to Meta from or concerning the Advertiser, in connection with the creation of an Advertisement, whether actively or passively, and whether knowingly or unknowingly, including but not limited to any Ad-Creative provided by the Advertiser, as well as any settings, classification codes, configurations, directives, or instructions provided or set by the Advertiser.

PLAINTIFF'S FIRST SET OF INTERROGATORIES - 2

13. The term "***Meta***" shall mean and refer to Defendant Meta Platforms, Inc. and all of its agents, employees, contractors, vendors, members, officers, directors, executives, principals, representatives, subsidiaries, affiliates, related companies, predecessor companies, assigns, attorneys and/or all persons authorized or purporting to act on its behalf.

14. The term "***Meta Ads Manager***" shall mean and refer to Meta's interface for creating, storing, managing, revising, optimizing, and tracking Advertisements (including but not limited to Meta Advantage), including as described on the Meta Business Help Center webpage, currently available at https://www.facebook.com/business/tools/ads-manager.

15. The term "***Meta Advantage***" shall mean and refer to any of Meta's automated features, tools, services, or products that engage or interact with or affect Advertisements, including but not limited to Advantage+ and Advantage+ Creative. Some of these are described on the Meta Business Help Center webpage, currently available at https://www.facebook.com/business/help/733979527611858.

16. The term "***Optimization***" shall mean and refer to any act or conduct of any kind by Meta with the goal or effect of affecting the Audience of, or User Engagement with, an Advertisement.

17. The term "***Optimization Tool***" shall mean and refer to any Meta feature, tool, product, or service that performs or engages in Optimization.

18. The term "***Performance Evaluation***" shall mean and refer to any assessment of, or metrics or compilations of data or information related to, how users interact with an Advertisement, including but not limited to anomaly analysis, and as described on the Meta Business Help Center webpage, currently available at https://www.facebook.com/business/help/318580098318734?id=369013183583436.

19. The terms "***Person***" or "***Persons***" shall mean and refer to natural persons, as well as all other entities including, but not limited to, corporations, limited liability companies, partnerships, associations, firms, joint ventures, organizations, governmental agencies or bodies or any division, department or unit thereof.

20. The term "**Placement**" shall mean and refer to the location (including any specific URL, where applicable) where an Advertisement is displayed, presented, transmitted, or communicated, whether on a platform, webpage, or mobile application, or other application on any device.

21. The term "**Plaintiff**" shall mean Plaintiff Dr. Andrew Forrest.

22. The term "**Scam Ads**" shall mean and refer to Advertisements that use Plaintiff's name or likeness, including (for the avoidance of doubt) all drafts, versions, and iterations thereof, and including all Scam Ads as defined in the Third Amended Complaint.

23. The terms "**Third Amended Complaint**" or "**TAC**" mean the Third Amended Complaint filed on December 1, 2023, ECF 101.

24. The term "**User Engagement**" shall mean and refer to the manner in which an Audience member, whether on or off Meta's platforms, views or interacts with any Advertisement, including, but not limited to, how frequently, for how long, and in what manner.

25. The terms "**You**" and "**Your**" shall refer to Meta, as defined above.

## II.  GENERAL INSTRUCTIONS

1. Any Interrogatory that inquires as to the knowledge, conduct, activities, or materials possessed by Defendant shall be taken to include the knowledge, conduct, activities, or materials possessed by Defendant's subsidiaries, parents, affiliates, and merged or acquired predecessors, as well as the present or former investigators, accountants, attorneys, directors, officers, partners, employees, and other agents of Defendant, and references to the Defendant shall include such individuals.

2. The use of the singular shall be deemed to include the plural and vice versa.

3. The use of the present tense shall be deemed to include the past tense with reference to the Relevant Time Period. Accordingly, for example, the definition of "Ad-Review" as "any machine, system, technology, process, approach, or practice that Meta uses to review Advertisements" includes any such machine, system, technology, process, approach, or practice that Meta used at any point during the Relevant Time Period. Similarly, an Interrogatory that asks

PLAINTIFF'S FIRST SET OF INTERROGATORIES - 4

You to describe a process requires You to specify any changes to that process during the Relevant Time Period.

4. The connectives "*and*" and "*or*" shall be construed disjunctively or conjunctively if necessary to bring within the scope of Interrogatory or Interrogatories all information that might otherwise be construed to be outside of its scope.

5. Except as otherwise defined herein, capitalized terms have the meanings ascribed to them in the Third Amended Complaint.

6. For each Interrogatory herein, all undefined terms shall be construed in an ordinary common-sense manner and not in a hyper-technical, strained, overly literal, or otherwise restrictive manner.

7. If You object to an Interrogatory, state with specificity the legal and factual basis for Your objection(s) with respect to such Interrogatory. You should respond to all portions of that Interrogatory that do not fall within the scope of Your objection. Thus, for example, if You object to an Interrogatory on the ground that it is overly broad, provide the response that You believe is appropriate.

8. If and to the extent that You purport to rely on any business record that has been produced in Your response to an Interrogatory pursuant to Rule 33(d), You must identify that business record with specificity (by Bates number) and reasonably explain the manner in which that business record relates to the interrogatory.

9. If You claim any form of privilege, work product, or other protection, whether based on statute or otherwise, as a ground for not answering an Interrogatory or any part of an Interrogatory, You must comply with the Local Rules of the Northern District of California and any applicable Standing Orders of the Judges assigned to this case, including but not limited to setting forth in detail the facts upon which the assertion of privilege is based and/or providing a privilege log.

10. Each Interrogatory should be construed independently and without reference to any other Interrogatory. Each Interrogatory should be responded to fully whether or not You consider such Interrogatory or some portion thereof duplicative with another Interrogatory.

PLAINTIFF'S FIRST SET OF INTERROGATORIES - 5

11. These Interrogatories are continuing in nature. If at any time during the pendency of the above-captioned action You obtain or become aware of any further knowledge responsive to these Interrogatories, or if additional information You or any persons acting on Your behalf obtain would augment, clarify, or otherwise modify Your responses, You are required to supplement Your responses.

### III. RELEVANT TIME PERIOD

The relevant time period for responses to these Interrogatories is January 1, 2019 to the present (the "Relevant Time Period"), unless otherwise specified by the individual Interrogatory, agreed upon by the Parties, or directed by any subsequent Order of the Court. However, any knowledge or response which relates or would relate to the subject matter of the operative Third Amended Complaint should be deemed responsive to the Interrogatories. Thus, if any Interrogatory relates to a policy or business practice employed during the Relevant Time Period, but which was first drafted, conceived, designed, discussed, tested, implemented, sent, received, or used before or after the Relevant Time Period, You are required to provide responses from outside the Relevant Time Period insofar as they relate to such policy, practice, document, product, service, or event.

### IV. INTERROGATORIES

**INTERROGATORY NO. 1**:

Describe the step-by-step process that occurs when an Advertiser creates an Advertisement, including all steps taken by the Advertiser and all steps taken by Meta, from the beginning of the process through and including any Content Modification, Optimization, and Placement.

**INTERROGATORY NO. 2**:

List and describe every product, service, feature, or tool provided or used by Meta that can affect in any way the content or display of an Advertisement.

**INTERROGATORY NO. 3**:

List and describe every Content Modification Tool.

PLAINTIFF'S FIRST SET OF INTERROGATORIES - 6

**INTERROGATORY NO. 4**:

Identify any team(s), group(s), or department(s) involved in Content Modification.

**INTERROGATORY NO. 5**:

List and describe every Optimization Tool.

**INTERROGATORY NO. 6**:

Identify any team(s), group(s), or department(s) involved in Optimization.

**INTERROGATORY NO. 7**:

Describe Meta's Ad-Review process step-by-step, including when such process takes place vis-à-vis creation and/or Placement, and including any impact that the results of such process, or any data or information collected or created by such process, can have on Content Modification or Optimization.

**INTERROGATORY NO. 8**:

Describe Meta's Performance Evaluation process step-by-step, including any impact that the results of such process, or any data or information collected or created by such process, can have on Content Modification or Optimization.

**INTERROGATORY NO. 9**:

List and describe every Meta Advantage feature, tool, product, or service that was used in connection with any of the Scam Ads.

**INTERROGATORY NO. 10**:

List every field of data that was collected or inferred by or made available to Meta in connection with each End-User.

PLAINTIFF'S FIRST SET OF INTERROGATORIES - 7

| | | |
|---|---|---|
| 1 | November 21, 2024 | **HECKER FINK LLP** |
| 2 | New York, New York | John C. Quinn* |
| | | jquinn@heckerfink.com |
| 3 | | Amit Jain* |
| | | ajain@heckerfink.com |
| 4 | | Hyatt Mustefa* |
| | | hmustefa@heckerfink.com |
| 5 | | Jocelyn Hassel* |
| | | jhassel@heckerfink.com |
| 6 | | Tayonna Ngutter* |
| | | tngutter@heckerfink.com |
| 7 | | 350 Fifth Avenue, 63rd Floor |
| | | New York, New York |
| 8 | | Telephone: (212) 763-0883 |
| 9 | | Joshua Matz* |
| | | jmatz@heckerfink.com |
| 10 | | 1050 K Street NW | Suite 1040 |
| | | Washington, DC 20001 |
| 11 | | Telephone: (212) 763-0883 |
| 12 | | **SINGLETON SCHREIBER** |
| | | Leslie Bruckner (SBN 140968) |
| 13 | | lbrueckner@singletonschreiber.com |
| | | 591 El Camino de la Reina, Suite 1025 |
| 14 | | San Diego, CA 92108 |
| | | Telephone: (619) 573-1851 |
| 15 | | |
| | | **BAILEY & GLASSER LLP** |
| 16 | | Elizabeth Ryan* |
| | | eryan@baileyglasser.com |
| 17 | | John Roddy* |
| | | jroddy@baileyglasser.com |
| 18 | | 176 Federal Street, 5th Floor |
| | | Boston, MA 02110 |
| 19 | | Telephone: (617) 439-6730 |
| 20 | | Katherine E. Charonko* |
| | | kcharonko@baileyglasser.com |
| 21 | | 209 Capital Street |
| | | Charleston, WV 25301 |
| 22 | | Telephone: (304) 345-6555 |
| 23 | | Elizabeth L. Stryker* |
| | | estryker@baileyglasser.com |
| 24 | | 94 Long Street, Suite 200 |
| | | Westover, WV 26501 |
| 25 | | Telephone: (304) 594-0087 |
| 26 | | * admitted pro hac vice |
| 27 | | **DEREK G. HOWARD LAW FIRM, INC.** |
| | | Derek G. Howard (SBN 118082) |
| 28 | | derek@derekhowardlaw.com |
| | | Ashley M. Romero (SBN 286251) |

PLAINTIFF'S FIRST SET OF INTERROGATORIES - 8

ashley@derekhowardlaw.com
42 Miller Avenue
Mill Valley, CA 94941
Telephone: (415) 432-7192

*Attorneys for Plaintiff Dr. Andrew Forrest*