# EXHIBIT 5

| | |
|---|---|
| Karen L. Dunn (*pro hac vice*) | Jacob M. Heath (SBN: 238959) |
| kdunn@paulweiss.com | jheath@orrick.com |
| Melissa F. Zappala (*pro hac vice*) | **ORRICK, HERRINGTON &** |
| mzappala@paulweiss.com | **SUTCLIFFE LLP** |
| **PAUL, WEISS, RIFKIND, WHARTON** | 1000 Marsh Road |
| **& GARRISON LLP** | Menlo Park, CA 94025-1015 |
| 2001 K Street, NW | Telephone: (650) 614-7400 |
| Washington, DC 20006-1047 | Facsimile: (650) 614-7401 |
| Telephone: (202) 223-7300 | |
| Facsimile: (202) 223-7420 | |

Walter F. Brown Jr. (SBN: 130248)
wbrown@paulweiss.com
Meredith R. Dearborn (SBN: 268312)
mdearborn@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
**& GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| DR. ANDREW FORREST,<br><br>  Plaintiff,<br><br>  v.<br><br>META PLATFORMS, INC.,<br><br>  Defendant. | Case No. 5:22-cv-03699-PCP<br><br>**DEFENDANT META PLATFORMS, INC.'S SUPPLEMENTAL RESPONSES & OBJECTIONS TO PLAINTIFF'S INTERROGATORIES NOS. 4, 6, 7** |

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Meta Platforms, Inc. ("Meta"), by their undersigned counsel, provide supplemental responses to Plaintiff's Interrogatories Nos. 4, 6, and 7 (the "Interrogatories," and each Interrogatory set forth therein, an "Interrogatory"):

## GENERAL OBJECTIONS

Meta incorporates by reference, as though fully set forth herein, its General Objections as set forth in its Responses and Objections to Plaintiff's First Set of Interrogatories, served December 23, 2025, and in its Supplemental Responses and Objections to Plaintiff's Interrogatories Nos. 2, 3, and 5, served March 25, 2025.

Meta objects to the Interrogatories, and the definitions and instructions contained therein, to the extent they are inconsistent with or premature due to the bifurcated discovery schedule focusing first on Meta's Section 230 defense, as ordered by the Court. Dkt. 172.

Meta objects to the Interrogatories, and the definitions and instructions contained therein, to the extent they are inconsistent with or purport to impose requirements that exceed those set forth in the Federal Rules of Civil Procedure, the Local Civil Rules of the United States District Court for the Northern District of California, the case law interpreting each of them, or any other laws or rules applicable to proceedings in this Court.

Meta objects to the Interrogatories to the extent they are overbroad and not proportional to the needs of this case, considering the importance of the issues in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Meta objects to the Interrogatories, and the definitions and instructions therein, to the extent they are inconsistent with the agreement of the parties under the Amended Protective Order, Dkt. 178, ESI Protocol, Dkt. 179, Rule 502(d) Order, Dkt. 180, or other Order of the Court in this case.

Meta objects to the Interrogatories to the extent they seek information not within its possession, custody, or control or require Meta to obtain information not currently in its possession, custody, or control.

Meta objects to the Interrogatories to the extent they ask Meta to provide information that (a) is readily available to Plaintiff as a matter of public record or otherwise or (b) can be obtained from some other source that is more convenient, less burdensome, or less expensive than obtaining it from Meta.

Meta objects to the Interrogatories to the extent they seek information that is in whole or in part protected from disclosure under the attorney-client privilege, the work product doctrine, or the joint defense or common interest privilege; were prepared in anticipation of litigation or for trial; or are subject to any other privilege or exemption from discovery under applicable laws or rules. Meta will not produce information protected by such privileges or protections. Nothing contained in these Responses is intended to be, nor shall in any way be construed as, a waiver of any such privilege, immunity, or protection. Specific Objections contained in the Responses below on the grounds of privilege are provided for emphasis and clarity only, and the absence of such an objection is neither intended, nor should be interpreted, as evidence that Meta does not object to a specific Interrogatory on the basis of an applicable privilege, immunity, or protection. Any disclosure of any such privileged or protected material in response to any Interrogatory is not intended to waive those privileges and protections. Any such disclosure shall be handled consistent with the agreement of the parties under the Amended Protective Order, Dkt. 178, ESI Protocol, Dkt. 179, Rule 502(d) Order, Dkt. 180, or other Order of the Court in this case. Meta reserves the right to demand that Plaintiff return, destroy, or sequester any privileged or protected information produced and all copies thereof consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and any other agreement of the parties and/or Order of the Court in this case.

Meta objects to the Interrogatories to the extent they assert, imply, suggest, or are premised upon any underlying express or implied assumptions of fact or law with respect to matters at issue in this case. These Responses are not intended to be, and should not be construed as, an agreement or concurrence by Meta with Plaintiff's characterization of any facts, circumstances, and/or legal obligations. Meta reserves the right to contest any such characterization as inaccurate.

Meta objects to the Interrogatories to the extent they seek the production of trade secrets; information that is confidential, proprietary, commercially sensitive, or competitively significant; personal information relating to Meta, its affiliates, and Meta's employees, clients, customers, or counterparties; or information that is subject to other protective orders, nondisclosure agreements, or other confidentiality

undertakings or is protected from disclosure by legal protections governing the privacy rights of consumers and other persons. Any such information will be provided consistent with the Amended Protective Order, Dkt. 178, and any/all other such requirements applicable to the requested information.

Meta's Responses to the Interrogatories shall not be construed as an admission of the relevancy, materiality, or admissibility of any document, fact, issue, or piece of information. Meta reserves the right to object to the admissibility in evidence of all or any part of the Responses herein or of any documents referenced or produced in response to these Interrogatories.

Meta's Responses and production of documents or information shall not be construed as an admission of authenticity upon their use in a deposition or at trial.

Meta's Responses and production of documents or information as part of phase one of the bifurcated discovery schedule, which focuses on Meta's Section 230 defense, should not be construed as an admission of relevancy or lack of overbreadth, vagueness, ambiguity, burden, or privilege with respect to requests for production of documents served in phase two.

Meta objects to the Interrogatories to the extent they seek documents or information created or dated prior to January 1, 2019.

If a Response indicates that Meta will produce documents, that Response is not an actual or implied representation that any such documents exist or are within the possession, custody, and/or control of Meta.

Meta reserves all rights and objections, whether or not stated herein, including, without limitation, the right to supplement, modify, or amend its Responses and Objections.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

Meta incorporates by reference, as though fully set forth herein, its Objections to Definitions and Instructions, as set forth in its Responses and Objections to Plaintiff's First Set of Interrogatories, served December 23, 2025, in its Supplemental Responses and Objections to Plaintiff's Interrogatories Nos. 2, 3, and 5, served March 25, 2025.

Meta objects to the Definitions and Instructions as vague and ambiguous because they reference other Definitions and Instructions, and because they purport to use terms that Meta does not use in the ordinary course of its business.

1  Meta objects to the definition of "Ad-Review" as overbroad and unduly burdensome because it includes "any machine, system, technology, process, approach, or practice that Meta uses to review Advertisements." Meta will construe "Ad-Review" to refer to Meta's process for reviewing Advertisements for scams and frauds.

Meta objects to the definition of "Advertisement" as overbroad and unduly burdensome because it includes "any message, notice or other content that appears on any Meta platform (e.g., Facebook, Instagram), and/or on any other website or application through Meta's Audience Network." Meta will construe "Advertisement" to refer to an advertisement that appears on Facebook or Instagram.

Meta objects to the definition of "Content Modification" as overbroad and unduly burdensome because it includes "any act or conduct of any kind by Meta that engages or interacts with an Input and affects in any manner the Ad-Creative." Meta will construe "Content Modification" to refer to the process through which Advertisers use Ad-Creative in Advertisements on Facebook and Instagram.

Meta objects to the definition of "Content Modification Tool" as overbroad and unduly burdensome because it includes "any Meta feature, tool, product, or service that performs or engages in Content Modification." Meta will construe "Content Modification Tool" to refer to the tools identified in the Third Amended Complaint ("TAC") that Advertisers can use to create Advertisements on Facebook and Instagram.

Meta objects to the definition of "Input" as overbroad and unduly burdensome because it includes "any and all data and information provided by an Advertiser to Meta, or made available to Meta from or concerning the Advertiser." Meta will construe "Input" to refer to the Ad-Creative that an Advertiser provides for use in an Advertisement.

Meta objects to the definition of "Meta" as overbroad and unduly burdensome because it includes "Defendant Meta Platforms, Inc. and all of its agents, employees, contractors, vendors, members, officers, directors, executives, principals, representatives, subsidiaries, affiliates, related companies, predecessor companies, assigns, attorneys and/or all persons authorized or purporting to act on its behalf." Meta will construe "Meta" to refer to Defendant Meta Platforms, Inc., individuals and entities within Meta Platforms, Inc.'s control, and the entity formerly known as Facebook, Inc.

Meta objects to the definition of "Meta Advantage" as overbroad and unduly burdensome because it includes "any of Meta's automated features, tools, services, or products that engage or interact with or affect Advertisements." Meta will construe "Meta Advantage" to refer to Tools offered by Meta that can affect the Ad-Creative of an Advertisement. For purposes of this Objection, Meta defines a "Tool" as a technology developed by Meta that carries out a particular function.

Meta objects to the definition of "Optimization" as overbroad and unduly burdensome because it includes "any act or conduct of any kind by Meta." Meta will construe "Optimization" to refer to the process through which Advertisers impact their Audience, and/or User Engagement with respect to an Advertisement using an "Optimization Tool."

Meta objects to the definition of "Optimization Tool" as overbroad and unduly burdensome because it includes "any Meta feature, tool, product, or service that performs or engages in Optimization." Meta will construe "Optimization Tool" to refer to the tools identified in the TAC that allow Advertisers to impact their Audience, and/or User Engagement with respect to an Advertisement.

Meta objects to the definition of "Performance Evaluation" as vague and ambiguous.

Meta objects to the definition of "Placement" as overbroad and unduly burdensome because it includes an Advertisement being "displayed, presented, transmitted, or communicated, whether on a platform, webpage, or mobile application, or other application on any device." Meta will construe "Placement" to refer to an Advertisement that is displayed or presented on Facebook and Instagram.

Meta objects to the definition of "Scam Ads" as overbroad and unduly burdensome because it includes "Advertisements that use Plaintiff's name or likeness" and "all drafts, versions, and iterations thereof." Meta will construe "Scam Ads" to refer to Advertisements that Plaintiff has specifically identified for Meta, and that allegedly feature Plaintiff's name and/or likeness without Plaintiff's authorization, promote fake cryptocurrency or other fraudulent financial schemes, and have appeared on Facebook and Instagram.

Meta objects to the definition of "User Engagement" as overbroad, unduly burdensome, and vague and ambiguous, because it includes the "manner in which an Audience member, whether on or off Meta's platforms, views or interacts with any Advertisement." Meta will construe "User Engagement" to refer to

the data and metrics that Meta collects regarding a viewer's engagement with an Advertisement appearing on Facebook and Instagram.

Meta objects to the Instruction that "[a]ny Interrogatory that inquires as to the knowledge, conduct, activities, or materials possessed by Defendant shall be taken to include the knowledge, conduct, activities, or materials possessed by Defendant's subsidiaries, parents, affiliates, and merged or acquired predecessors, as well as the present or former investigators, accountants, attorneys, directors, officers, partners, employees, and other agents of Defendant, and references to the Defendant shall include such individuals" to the extent it purports to impose obligations on Meta beyond those imposed by the Federal Rules of Civil Procedure or any other applicable law or procedure.

Meta objects to the Instruction that "capitalized terms have the meanings ascribed to them in the Third Amended Complaint" to the extent Meta objected to those same terms in its Answer to the TAC. Dkt. 155.

Meta objects to the Instruction that "all undefined terms shall be construed in an ordinary common-sense manner and not in a hyper-technical, strained, overly literal, or otherwise restrictive manner" to the extent doing so would require Meta to construe undefined terms in a vague, unspecific or overbroad manner.

Meta objects to the Instruction requiring Meta to "identify [any] business record with specificity (by Bates number) and reasonably explain the manner in which that business record relates to the interrogatory" if Meta "purports to rely on any business record that has been produced in [Meta's] response to an Interrogatory" to the extent that it purports to impose obligations on Meta beyond those imposed by the Federal Rules of Civil Procedure or any other applicable law or procedure.

Meta objects to the Instruction that Meta follow generally applicable rules or orders "including but not limited to setting forth in detail the facts upon which the assertion of privilege is based and/or providing a privilege log" to the extent it is inconsistent with the agreement of the parties under the Amended Protective Order, Dkt. 178, ESI Protocol, Dkt. 179, Rule 502(d) Order, Dkt. 180, or other specific Orders of the Court in this case.

Meta objects to the Instruction that "[e]ach Interrogatory should be construed independently and without reference to any other Interrogatory" and that they "should be responded to fully whether

or not You consider such Interrogatory or some portion thereof duplicative with another Interrogatory" to the extent that it is inconsistent with the Interrogatories, which refer and relate to each other.

### SPECIFIC RESPONSES AND OBJECTIONS

Subject to and without waiving any of the foregoing General Objections and Objections to Definitions and Instructions (collectively, "General Objections"), which are incorporated by reference into each of the following specific responses and objections, Meta responds and objects to the Interrogatories as follows:

**INTERROGATORY NO. 4:**

Identify any team(s), group(s), or department(s) involved in Content Modification.

**RESPONSE TO INTERROGATORY NO. 4**

Meta incorporates its Objections to the defined terms used in this Interrogatory. Subject to and without waiving any of the foregoing General and Specific Objections, pursuant to Federal Rule of Civil Procedure 33(d), Meta will conduct a reasonable search proportional to the needs of this case and produce any non-privileged documents sufficient to ascertain the answer to this Interrogatory. Meta will amend these Responses to provide the Bates numbers of such documents.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

Subject to and without waiving any of the foregoing General and Specific Objections, Meta supplements its Response to Interrogatory No. 4 as follows:

Employees in the following ▮▮▮ in Meta are involved with Tools and processes that, *inter alia*, can affect the Ad-Creative of an Advertisement: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In these ▮▮▮, employees in the following ▮▮▮▮▮ are involved with Tools and processes that, *inter alia*, can affect the Ad-Creative of an Advertisement: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In these ▮▮▮▮▮▮, employees in the following ▮▮▮▮▮ are currently involved with Tools and processes that, *inter alia*, can affect the Ad-Creative of an Advertisement: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  In these ▊▊, employees in the following ▊▊ are involved with Tools and processes
2  that, *inter alia*, can affect the Ad-Creative of an Advertisement: ▊▊

3  ▊▊
4  ▊▊
5  ▊▊
6  ▊▊
7  ▊▊

8  The ▊▊ that have employees involved with Tools and
9  processes that, *inter alia*, can affect the Ad-Creative of an Advertisement may have changed over time,
10 and may be subject to further change.

11  For purposes of this Response, Meta defines a "Tool" as a technology developed by Meta that
12 carries out a particular function.

13  Meta's investigation is ongoing. Meta reserves the right to further supplement its Response to this
14 Interrogatory.

15 **INTERROGATORY NO. 6:**

16  Identify any team(s), group(s), or department(s) involved in Optimization.

17 **RESPONSE TO INTERROGATORY 6:**

18  Meta incorporates its Objections to the defined terms used in this Interrogatory. Subject to and
19 without waiving any of the foregoing General and Specific Objections, pursuant to Federal Rule of Civil
20 Procedure 33(d), Meta will conduct a reasonable search proportional to the needs of this case and produce
21 any non-privileged documents sufficient to ascertain the answer to this Interrogatory. Meta will amend
22 these Responses to provide the Bates numbers of such documents.

23 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

24  Subject to and without waiving any of the foregoing General and Specific Objections, Meta
25 supplements its Response to Interrogatory No. 6 as follows:

26  Employees in the following ▊▊ in Meta are involved with Tools and processes that, *inter alia*,
27 can affect the Audience and/or help compare certain User Engagement for an Advertisement: ▊▊
28 ▊▊

1   In these ▮, employees in the following ▮ are involved with Tools and processes
2   that, *inter alia*, can affect the Audience and/or help compare certain User Engagement for an
3   Advertisement: ▮
4   In these ▮, employees in the following ▮ are involved with Tools and
5   processes that, *inter alia*, can affect the Audience and/or help compare certain User Engagement for an
6   Advertisement: ▮
7   ▮
8   In these ▮, the following ▮ are currently involved with Tools and processes that,
9   *inter alia*, can affect the Audience and/or help compare certain User Engagement for an Advertisement:
10  ▮
11  ▮
12  ▮
13  The ▮ that have employees involved with Tools and
14  processes that, *inter alia*, can affect the Audience and/or help compare certain User Engagement for an
15  Advertisement may have changed over time, and may be subject to further change.
16  For purposes of this Response, Meta defines a "Tool" as a technology developed by Meta that carries out
17  a particular function.
18  Meta's investigation is ongoing. Meta reserves the right to further supplement its Response to this
19  Interrogatory.
20  **INTERROGATORY NO. 7:**
21  Describe Meta's Ad-Review process step-by-step, including when such process takes place vis-à-
22  vis creation and/or Placement, and including any impact that the results of such process, or any data or
23  information collected or created by such process, can have on Content Modification or Optimization.
24  **RESPONSE TO INTERROGATORY NO. 7:**
25  Meta incorporates its Objections to the defined terms used in this Interrogatory. Meta further
26  objects to this Interrogatory to the extent that it seeks information relating to Ad-Review and Placement
27  as not relevant to Meta's Section 230 defense in accordance with the bifurcated schedule as ordered by
28



the Court. *See* Dkt. 172. Based on the foregoing General and Specific Objections, Meta contends that there is no basis for this Interrogatory, and therefore no further response is required.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

Subject to and without waiving any of the foregoing General and Specific Objections, Meta supplements its Response to Interrogatory No. 7 as follows:

Meta diligently works to prevent and remove Advertisements and other content that violate its advertising and community standards. Through Ad Review, Meta employs Tools and strategies to review Advertisements for compliance with its advertising and community standards, and rejects or takes down Advertisements when it determines that they do not comply with those standards. Under Meta's policies, Advertisements are reviewed for potential violations before the Advertisements go live, and all Advertisements remain subject to re-review. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

For purposes of this Response, Meta defines a "Tool" as a technology developed by Meta that carries out a particular function.

Meta's investigation is ongoing. Meta reserves the right to further supplement its Response to this Interrogatory.

April 25, 2025
Washington, DC

/s/ *Karen L. Dunn*
Karen L. Dunn (*pro hac vice*)
kdunn@paulweiss.com
Melissa F. Zappala (*pro hac vice*)
mzappala@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

Walter F. Brown Jr. (SBN: 130248)
wbrown@paulweiss.com
Meredith R. Dearborn (SBN: 268312)
mdearborn@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON

& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

Jonathan S. Tam (SBN: 304143)
jtam@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
2029 Century Park East, Suite 2000
Los Angeles, CA 90067-3006
Telephone: (310) 982-4350
Facsimile: (628) 226-3210

Amy L. Barton (*pro hac vice*)
abarton@paulweiss.com
Thomas Patrick Cordova (*pro hac vice*)
pcordova@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Jacob M. Heath (SBN: 238959)
jheath@orrick.com
ORRICK, HERRINGTON &
SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

*Attorneys for Defendant Meta Platforms, Inc.*

# CERTIFICATE OF SERVICE

I am employed in the County of New York, State of New York. I am over the age of 18 years and not a party to this action. My business address is Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064.

On April 25, 2025, I caused the following document(s) to be served:

**DEFENDANT META PLATFORMS, INC.'S SUPPLEMENTAL RESPONSES & OBJECTIONS TO PLAINTIFF'S INTERROGATORIES NOS. 4, 6, 7**

via electronic mail delivery to the person(s), address(es), and email address(es) set forth below:

John C. Quinn (*pro hac vice*)
jquinn@heckerfink.com
Hyatt Mustefa (*pro hac vice*)
hmustefa@heckerfink.com
Jocelyn Hassel (*pro hac vice*)
jhassel@heckerfink.com
Tayonna Ngutter (*pro hac vice*)
tngutter@heckerfink.com
**HECKER FINK LLP**
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883

Joshua Matz (*pro hac vice*)
jmatz@heckerfink.com
Joyce Dela Peña
jdelapena@heckerfink.com
**HECKER FINK LLP**
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883

Leslie Brueckner (SBN: 140968)
lbrueckner@singletonschreiber.com
**SINGLETON SCHREIBER**
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
Telephone: (619) 573-1851

Elizabeth Ryan (*pro hac vice*)
eryan@baileyglasser.com
John Roddy (*pro hac vice*)
jroddy@baileyglasser.com
**BAILEY & GLASSER LLP**
101 Arch Street, 8th Floor
Boston, MA 02110
Telephone: (617) 439-6730

Katherine E. Charonko (*pro hac vice*)
kcharonko@baileyglasser.com
**BAILEY & GLASSER LLP**
209 Capital Street
Charleston, WV 25301
Telephone: (304) 345-6555

Elizabeth L. Stryker (*pro hac vice*)
estryker@baileyglasser.com
**BAILEY & GLASSER LLP**
94 Long Street, Suite 200
Westover, WV 26501
Telephone: (304) 594-0087

Derek G. Howard (SBN: 118082)
derek@derekhowardlaw.com
**DEREK G. HOWARD LAW FIRM, INC.**
42 Miller Avenue
Mill Valley, CA 94941
Telephone: (415) 432-7192

*Attorneys for Plaintiff Dr. Andrew Forrest*

1   The party on whom this electronic mail has been served has agreed in writing to such form of
2   service pursuant to agreement.
3   I declare under penalty of perjury that the foregoing is true and correct and that this declaration
4   was executed on April 25, 2025 at New York, New York.

*/s/ T. Patrick Cordova*