1   John C. Quinn (*pro hac vice*)
    jquinn@heckerfink.com
2   Hyatt Mustefa (*pro hac vice*)
    hmustefa@heckerfink.com
3   Jocelyn Hassel (*pro hac vice*)
    jhassel@heckerfink.com
4   Tayonna Ngutter (*pro hac vice*)
    tngutter@heckerfink.com
5   Tanveer Singh (*pro hac vice*)
    tsingh@heckerfink.com
6   **HECKER FINK LLP**
    350 Fifth Avenue, 63rd Floor
7   New York, NY 10118
    Telephone: (212) 763-0883
8
    Joshua Matz (*pro hac vice*)
9   jmatz@heckerfink.com
    Kaitlin Konkel (*pro hac vice*)
10  kkonkel@heckerfink.com
    Joanne Grace Dela Peña (*pro hac vice*)
11  jdelapena@heckerfink.com
    Brian Remlinger (*pro hac vice*)
12  bremlinger@heckerfink.com
    **HECKER FINK LLP**
13  1050 K Street NW, Suite 1040
    Washington, DC 20001
14  Telephone: (212) 763-0883

    Leslie Brueckner (SBN: 140968)
    lbrueckner@singletonschreiber.com
    **SINGLETON SCHREIBER, LLP**
    591 Camino de la Reina, Suite 1025
    San Diego, CA 92108
    Telephone: (619) 573-1851

    Elizabeth Ryan (*pro hac vice*)
    eryan@baileyglasser.com
    **BAILEY & GLASSER LLP**
    176 Federal Street, 5th Floor
    Boston, MA 02110
    Telephone: (617) 439-6730

    Derek G. Howard (SBN: 118082)
    derek@derekhowardlaw.com
    **DEREK G. HOWARD LAW FIRM, INC.**
    42 Miller Avenue
    Mill Valley, CA 94941
    Telephone: (415) 432-7192
    Facsimile: (415) 524-2419

15                  *Attorneys for Plaintiff Dr. Andrew Forrest*

16              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
17                    **SAN JOSE DIVISION**

18

19  DR. ANDREW FORREST,                    Case No. 22-CV-03699-PCP (VKD)

20                  Plaintiff,             **PLAINTIFF DR. ANDREW
                                           FORREST'S NOTICE OF MOTION
21          v.                             AND MOTION FOR SANCTIONS
                                           RE: SPOLIATION OF EVIDENCE
22  META PLATFORMS, INC.                   AND MEMORANDUM OF POINTS
                                           AND AUTHORITIES IN SUPPORT
23                  Defendant.             THEREOF**

24                                         Judge: Hon. P. Casey Pitts
                                           Courtroom: Courtroom 8, 4th Floor
25                                         Hearing Date: April 2, 2025
                                           Hearing Time: 10:00 AM
26

27

28

1

# TABLE OF CONTENTS

2   TABLE OF AUTHORITIES...........................................................................................ii

3   I.    INTRODUCTION ....................................................................................................1

4   II.   STATEMENT OF FACTS .......................................................................................3

5       A.   The Scam Ads, Plaintiff's Notice and Preservation Demands, and This Litigation...........3

6       B.   Discovery Regarding Inputs, Outputs, and Meta's Changes to Scam Ads .........................5

7       C.   The Requested Data, If Preserved, Would Have Illustrated the Operation of Meta's Tools
8            and Processes on Each Scam Ad .....................................................................................6

9       D.   It Is Undisputed That Meta No Longer Has Certain Scam Ad Data ..................................7

10  III.  LEGAL STANDARD ..............................................................................................9

11  IV.   ARGUMENT............................................................................................................10

12      A.   Meta Spoliated Output Data and Actual Optimization Data ..............................................10

13          1.   Meta's Duty to Preserve the Relevant Data Arose No Later Than 2019.....................10

14          2.   Meta Failed to Take Reasonable Steps to Preserve Output Data and Actual
15               Optimization Data—Instead, Meta Destroyed Them .....................................................11

16          3.   The Destroyed Data Cannot Be Restored or Replaced..................................................12

17      B.   Meta's Destruction of Key Data Warrants Substantial Sanctions .....................................14

18          1.   Meta's Spoliation Prejudices Plaintiff ............................................................................15

19          2.   Sanctions Are Warranted to Cure the Prejudice to Plaintiff.........................................16

20          3.   Meta's Spoliation Was Intentional.................................................................................17

21          4.   Because Meta Intentionally Spoliated, Adverse Inferences Are Warranted..................19

22  V.    CONCLUSION.........................................................................................................21

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**

*Apple, Inc. v. Samsung Elecs. Co. (Apple)*,
  888 F. Supp. 2d 976 (N.D. Cal. 2012)..................................................................9, 10, 20

*Behrend v. S.F. Zen Ctr., Inc.*,
  108 F.4th 765 (9th Cir. 2024) ...........................................................................................16

*Best Label Co. v. Custom Label & Decal, LLC*,
  No. 19 Civ. 3051, 2022 WL 1525301 (N.D. Cal. May 13, 2022) .....................................10

*BlackBerry Ltd. v. Facebook, Inc.*,
  No. 18 Civ. 1844, 2019 WL 13447227 (C.D. Cal. Sep. 30, 2019)....................................19

*Burris v. JPMorgan Chase & Co.*,
  Nos. 21-16852, 22-15775, 2024 WL 1672263 (9th Cir. Apr. 18, 2024)....................18, 19

*Colonies Partners, L.P. v. County of San Bernardino*,
  No. 18 Civ. 420, 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020)........................................17

*Doe v. MG Freesites, Ltd.*,
  No. 21 Civ. 220, 2024 WL 5339485 (N.D. Ala. Dec. 19, 2024).......................................13

*Est. of Bosco ex rel. Kozar v. County of Sonoma*,
  640 F. Supp. 3d 915 (N.D. Cal. 2022)..........................................................................17, 20

*Facebook, Inc. v. OnlineNIC, Inc.*,
  No. 19 Civ. 7071, 2022 WL 2289067 (N.D. Cal. Mar. 28, 2022)....................................15

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ..........................................................................................14

*Fanucci v. Allstate Ins. Co.*, 638 F. Supp. 2d 1125 (N.D. Cal. 2009) ..........................................16

*Glaukos Corp. v. Ivantis, Inc.*,
  2020 WL 10501850 (C.D. Cal. June 17, 2020) ................................................................18

*Gregory v. Montana*, 118 F.4th 1069 (9th Cir. 2024) ......................................................................9

*Harris-Williams v. Am. Freight Outlet Stores, LLC*,
  No. 22 Civ. 76, 2023 WL 6621394 (D. Del. Oct. 11, 2023) ............................................17

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
  655 F. Supp. 3d 899 (N.D. Cal. 2023)...............................................................................19

*In re Facebook, Inc. Derivative Litig.*,
  C.A. Cons. No. 2018-0307 (Del. Ch. Jan. 21, 2025).........................................................19

ii

*In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981 (N.D. Cal. 2023) ...................18, 20

*In re Meta Pixel Healthcare Litig.*, 2025 No. 22 Civ. 3580 (N.D. Cal. 2025) .............................18

*In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060 (N.D. Cal. 2006).................11, 14, 15

*In re Social Media Cases*,
      No. 22 STCV 21355, JCCP No. 5255 (Cal. Super. Ct. Sep. 25, 2025)............................19

*Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730 (9th Cir. 2024)..........................................................17

*Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006) ...................................................................14

*Lopez v. Apple, Inc. (Lopez)*,
      No. 19 Civ. 4577, 2024 WL 4561320 (N.D. Cal. July 17, 2024)........10, 11, 17, 18, 19, 20

*Maziar v. City of Atlanta*,
      No. 21 Civ. 2172, 2024 WL 2928534 (N.D. Ga. June 10, 2024)......................................17

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
      605 F. Supp. 3d 1218 (N.D. Cal. 2022).....................................................................11, 20

*Nursing Home Pension Fund v. Oracle Corp.*,
      254 F.R.D. 559 (N.D. Cal. 2008).........................................................................................20

*Resnik v. Coulson*,
      No. 17 Civ. 676, 2019 WL 2256762 (E.D.N.Y. Jan. 4, 2019) ...........................................20

*Scalia v. County of Kern*, 658 F. Supp. 3d 809 (E.D. Cal. 2023)............................................10, 12

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978 (9th Cir. 2007) .................................................15

*Youngevity Int'l v. Smith*,
      No. 3:16 Civ 704-BTM-JLB, 2020 WL 7048687 (S.D. Cal. July 28, 2020) ....................21

**FEDERAL STATUTES**

47 U.S.C. § 230...................................................................................................................................2

**OTHER AUTHORITIES**

Jeff Horwitz, *Meta Created 'Playbook' to Fend Off Pressure to Crack Down on*
      *Scammers, Documents Show*, Reuters (Dec. 31, 2025).....................................................11

**FEDERAL RULES**

Fed. R. Civ. P. 37..................................................................................................................*passim*

iii

**<u>NOTICE OF MOTION AND MOTION; RELIEF REQUESTED</u>**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on April 2, 2025, or as soon thereafter as this matter can be heard before the Honorable P. Casey Pitts, in Courtroom 8, San Jose Courthouse, Plaintiff Dr. Andrew Forrest will and hereby does move the Court for an order finding that Defendant Meta Platforms, Inc. ("Meta") spoliated evidence in violation of Fed. R. Civ. P. 37(e) and imposing sanctions. This motion is based on this Notice of Motion, the incorporated Memorandum of Points and Authorities, the Declaration of John C. Quinn ("Quinn Decl.") and exhibits, and all papers on file in this matter, as well as any oral argument. Plaintiff respectfully requests a hearing, including to address appropriate relief.

Plaintiff seeks evidentiary sanctions under Rule 37(e)(1) that: (1) hold that a triable issue of fact exists with respect to Meta's assertion of Section 230 immunity, which would effectively resolve Meta's anticipated summary judgment motion in Plaintiff's favor; and/or (2) preclude Meta from relying on the absence of the data it destroyed in moving for summary judgment or at trial. Plaintiff also seeks sanctions under Rule 37(e)(2), in the form of adverse inferences, both that the Court draws at summary judgment and that the jury is instructed it may draw at trial, specifically that: (3) the destroyed evidence is unfavorable to Meta; and/or (4) where outputs and change data are missing, the data would have shown that all eligible tools in fact acted upon the ads, and that each of those tools made the most substantial contributions it was capable of making, according to the record evidence and reasonable inferences that can be drawn from it.

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

## I.    INTRODUCTION

More than a year and a half ago, this Court denied Meta's motion to dismiss on the basis of Section 230 immunity, identifying "a factual dispute regarding whether Meta's ad systems were neutral tools that anyone could use (or misuse) or whether the tools themselves contributed to the content of the ads, including to the aspects of the content that are allegedly illegal." ECF 121 at 9. In the discovery that followed, Plaintiff proceeded from a simple premise: For each scam ad misappropriating Dr. Forrest's name or likeness, an advertiser provided inputs, Meta made changes, and Meta produced an output. So, to test whether Meta's "tools themselves contributed

to the content of the ads," *id.*, Plaintiff sought the inputs, the outputs, and the changes—all of which, by definition, Meta had in its possession. Meta resisted this discovery at every turn, but in order after order, this Court compelled Meta to go beyond curated policy documents, beyond made-for-litigation data summaries, and beyond logged tables in structured databases; the Court required Meta to investigate the tools and processes by which it actually changed ad content and appearance, the repositories in which it stored altered ad components, and the algorithms and processes by which it rendered final ads to end users. The North Star throughout remained: inputs, outputs, and changes. Last Friday was the fact discovery deadline, and the outcome is both stark and revelatory: Meta cannot produce much of the evidence, because Meta destroyed it.

Plaintiff put Meta on written notice in August 2019 that he intended to bring this suit, and he demanded Meta find the scam ads misappropriating his name and likeness and preserve the evidence about them. Meta said that it would, but Meta did nothing. Once the case began, Meta repeatedly assured both Plaintiff and this Court that it was preserving all evidence. These were outright falsehoods—Meta took no steps, at any point in time, to preserve anything at all.

As a result, there are no outputs. Meta did not retain the final ads rendered to end users, and Meta cannot recreate them. For the 28,299 scam ads at issue, Meta's conduct has prevented Plaintiff and the Court from knowing what each looked like, sounded like, or said. Meta's systems also tracked what tools and optimizations were in fact applied to each output, and Meta destroyed the vast majority of those records, too. Last year, this Court criticized Meta in another case for failing to preserve the same kind of data, and the Delaware Chancery Court actually sanctioned Meta in yet another case—still, Meta took no steps here to preserve anything at all.

What remains are advertiser inputs, records of what tools and processes could have been (or were eligible to have been) applied to them, and scattershot pieces of ad content—maybe post-optimization, maybe pre-optimization, maybe mid-optimization—pulled from various repositories. So when Meta again asserts that it is immune from suit because the final outputs were limited to "information provided by another information content provider," 47 U.S.C. § 230(c)(1), Plaintiff will not have the final outputs or full record of Meta's changes to challenge that assertion.

To be sure, on its forthcoming summary judgment motion, Meta already bears a double

PLAINTIFF DR. ANDREW FORREST'S MOTION FOR SANCTIONS RE: SPOLIATION OF EVIDENCE |
CASE NO. 22-CV-03699-PCP (VKD)

burden: It is asserting an affirmative defense, and it will be the moving party on a summary judgment standard that requires all reasonable inferences be drawn in Plaintiff's favor. But still, Meta's intentional destruction of key evidence, which Plaintiff could have used to prove Meta's material contributions and demonstrate genuine disputes of material fact, puts Plaintiff at a considerable and unfair disadvantage—heavily constraining his ability, for example, to rebut any initial showing Meta might make. And so, Plaintiff respectfully requests that the Court enter an order finding that Meta spoliated evidence in violation of Rule 37(e) and imposing sanctions.

Specifically, to cure the prejudicial effect of Meta's spoliation, Plaintiff seeks a ruling under Rule 37(e)(1) that a triable issue of fact exists with respect to Meta's assertion of Section 230 immunity, which effectively resolves Meta's anticipated summary judgment motion in Plaintiff's favor. In addition, Meta should be precluded under Rule 37(e)(1) from using the absence of missing data to its advantage, at summary judgment or at trial. Indeed, where the record is silent but spoliated data would have spoken, the silence should work against the spoliator. Further, pursuant to Rule 37(e)(2), Plaintiff seeks a permissive adverse inference which the Court may draw at summary judgment and the jury at trial, or else an inference that where outputs and data on actual changes are missing, the output and change data would have shown that the eligible tools in fact acted upon the ads, and made the most substantial contributions they were capable of making, according to the record evidence and reasonable inferences that can be drawn from it.

## II.    STATEMENT OF FACTS

### A.  The Scam Ads, Plaintiff's Notice and Preservation Demands, and This Litigation

Plaintiff Dr. Andrew Forrest is a prominent and respected Australian businessman, philanthropist, and public figure. ECF 101 (Third Am. Compl.) ¶¶ 1, 31-40. Plaintiff's business acumen and charitable profile have earned him widespread recognition, *id.* ¶¶ 39-40, making his name and image instantly recognizable by the Australian public, *id.* ¶¶ 41-42.

As early as March 2019, advertisements misappropriating Plaintiff's name and likeness and representing that Plaintiff endorsed cryptocurrency or financial products or services ("Scam Ads") appeared on Meta's social media platforms. *Id.* ¶ 2. In an August 9, 2019 letter to Meta, Plaintiff demanded that Meta take steps to address these Scam Ads and placed Meta on notice of

this anticipated litigation if it did not. Quinn Decl. ¶ 3 & Ex. B at 4. That letter expressly demanded that Meta "take all reasonable steps to preserve all data about the Advertisements, their timetable, their viewership, the identity of any related advertisers, and any other related data." *Id.*

In an August 27, 2019 response, Meta's attorneys ███████████████████ ████████████████████████████████████████████████████ Quinn Decl. ¶ 4 & Ex. C at 4. In further correspondence dated October 18, 2019, counsel for Meta (previously known as Facebook) ██████████████████████████████████████████████████████████ ███████████████████████ Quinn Decl. ¶ 4 & Ex. D at 2.

When Meta failed to take any action to stem the growing tide of Scam Ads, Plaintiff filed this suit against Meta on September 17, 2021 in the Superior Court for the County of San Mateo. Quinn Decl. ¶ 5. In mid-2022, Meta removed the case to this Court. *See* ECF 1.

Between April and November 2023, counsel for Plaintiff sent six preservation letters demanding that Meta preserve all ads associated with 87 advertiser pages, as well as seven additional Scam Ads. Quinn Decl. ¶ 6 & Exs. E, F. Plaintiff sought preservation of all "versions" of the listed ads, as well as "[a]ll data and records regarding the creation and run of these advertisements," and in the later letters, "[a]ll data or records related to use of Meta's advertising tools including, but not limited to, Dynamic Creative and Advantage+." *Id.* ¶ 6. Meta's counsel assured both Plaintiff and this Court that it was preserving all relevant and responsive evidence. *Id.* ¶ 7. In a hearing before Judge Davila in March 2023, Meta's counsel represented, "[W]e're taking the steps required under Rule 37 and 34 to make sure that we're preserving everything that is relevant and responsive based on what they've already—the super broad request that they have already asked of us and what we think is important there." *Id.*; 3/23/23 Tr. 38:11-15.

In 2023, Meta moved to dismiss the operative Third Amended Complaint, relying in part on Section 230 immunity. ECF 104 at 6-15. In denying that motion, the Court held that Plaintiff "allege[s] that [Meta's own] tools affect ad content in a manner that could at least potentially contribute to their illegality," such that there was a "factual dispute regarding whether Meta's ad systems . . . themselves contributed to the content of the ads, including to the aspects of the content that are allegedly illegal." ECF 121 at 8-9. The Court ordered the parties to proceed with discovery

on a bifurcated schedule. *See* 8/22/24 Tr. 42:6-21.

## B. Discovery Regarding Inputs, Outputs, and Meta's Changes to Scam Ads

The parties proceeded to discovery in late 2024. From the beginning, Plaintiff focused on three core categories of relevant data: (1) inputs provided by advertisers; (2) outputs (final rendered Scam Ads); and (3) data showing the changes that Meta's tools and processes made to content or appearance between input and output. Quinn Decl. ¶ 8. In a September 16, 2024 letter, Plaintiff asked Meta to identify "any obstacle to collecting and producing" all Scam Ad inputs and outputs "in full." *Id.* ¶ 9. "These are self-evidently relevant," the letter explained, "and will be important for Dr. Forrest to obtain in discovery, since they cut to core aspects of the Section 230 defense." *Id.* Plaintiff followed up on September 27, this time in reference to the Court's ESI checklist, inquiring about preservation, location, and format of this material, and asking Meta to confirm that it had "preserved every version of every ad that ran on any of its user platforms using Dr. Forrest's likeness from 2019 to the present," and whether it had "preserved all inputs and outputs, including metadata, for each such ad." *Id.* ¶ 10. Meta refused to answer, writing, "the ESI checklist is voluntary" and "does not require that Meta provide all the information you demand." *Id.*

Plaintiff followed up again on October 22, 2024, advising Meta that if it had not preserved all inputs, outputs, and versions of the Scam Ads, "that would require the Court's immediate attention and intervention." *Id.* ¶ 11. In an October 29, 2024 response, Meta assured Plaintiff it was taking "a multi-pronged approach to identify and preserve relevant ads and accompanying relevant data," including "the ads and pages identified by Plaintiff in prior correspondence." *Id.*

In a meet-and-confer on January 9, after Plaintiff had served his discovery requests, Plaintiff's counsel again raised the question of preservation. *Id.* ¶ 13. Counsel for Meta replied forcefully that Plaintiff needed to put the issue to bed: Meta was preserving all potentially relevant information and nothing was being deleted. *Id.* Meta solidified that position in a January 21, 2025 letter, again assuring Plaintiff that █████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.* ¶ 14 & Ex. G at 2.

1    **C.  The Requested Data, If Preserved, Would Have Illustrated the Operation of**

2    **Meta's Tools and Processes on Each Scam Ad**

3    As discovery proceeded, it confirmed the importance of Plaintiff's early focus on inputs,

4    outputs, and changes. Meta's own discovery responses and document production show that these

5    data exist—or once existed—for each Scam Ad, *id.* ¶ 15, and the Court repeatedly recognized

6    Plaintiff's entitlement to obtain these data in discovery, *see* ECFs 192, 259, 289, 303.

7    As described in the accompanying Quinn Declaration and exhibits,[1] the process begins

8    with advertiser inputs. The advertiser can select the format of the ad, or Meta can choose it, and

9    the advertiser can then upload media and text. Then the changes by Meta begin. Through its

10   Advantage+ Creative suite of tools, Meta offers various "creative optimizations," which can

11   generate, "improve," or otherwise alter text input by the advertiser; expand, animate, or otherwise

12   alter images; generate videos; and make any number of other content-altering changes. For

13   example, through "Text improvements," Meta selects keywords from text input by the advertiser

14   and displays them in prominent overlays, footers, or headlines. Through "Text generation," Meta

15   suggests more compelling variations of the input text. Optimizations like Image generation,

16   Background generation, Expand image, Image animation, Text generation, Text improvements,

17   and Visual touch-ups utilize generative AI. ████████████████████



18   ████████████████████████████████ Quinn Decl. ¶ 19 & Ex. I.

19   ████████████████████████████████

20   ████████████████████████████████████

21   ████████████████████████████████████

22   ████████████████████████████████████

23   ████████████████████████████████████

24   ████████████████████████████ ECF 274-4 at 2.

25   ████████████████████████████████

26   ████████████████████████████████████

27   ████████████████████████████████████

28

---

[1] The facts in this subsection correspond to Quinn Decl. ¶¶ 16-23 & Exs. H, I, J, K.

PLAINTIFF DR. ANDREW FORREST'S MOTION FOR SANCTIONS RE: SPOLIATION OF EVIDENCE |
CASE NO. 22-CV-03699-PCP (VKD)

1 █████████████████████████████████████████████████████

2 █████████████████████████████████████████████████████

3 █████████████████████████████████████████████████████

4 █████████████████████████████████████████████████████

5 █████████████████████████████████████████████████████

6 █████████████████████████████████████████████████████

7 ██████████████████████████████████████  *Id.* ¶ 22 & Ex. H at 7.

8 ██████████████████████████████████████████████████

9 ████████████████████████████████  *Id.* ¶ 22 & Ex. K. Meta logs

10  these data in structured tables in Hive, "a data warehouse used for data analysis, business

11  intelligence, and reporting." ECF 262 at 5. As Meta has explained, a "key purpose of Hive is to

12  enable the analytics of data logged in an organized and accessible format," and Meta maintains

13  that Hive is "the most comprehensive and reasonably accessible source of data." ECF 274-4 at 1.

14 █████████████████████████████████████████████████████

15 █████████████████████████████████████████████████████

16 █████████████████████████████████████████████████████

17 █████████████████████████████████████████████████████

18 █████████████████████████████████████████████████████

19 ████████████████████████████  *Id.* ███████████████████

20 █████████████████████████████████████████████████████

21 ██████████████████████████  *Id.* at 5 & n.3.

22      **D.  It Is Undisputed That Meta No Longer Has Certain Scam Ad Data**

23      In mid-2025, Meta abandoned its consistent representations that it had preserved all

24  relevant data. At that time, Meta revealed that it no longer has, and therefore cannot produce, the

25  two categories of critical data that give rise to this motion: (1) all outputs (*i.e.*, final rendered ads,

26  and/or data sufficient to recreate them); and (2) for the vast majority of Scam Ads, data showing

27  which Meta creative optimizations were in fact applied prior to output. Quinn Decl. ¶¶ 24-25 &

28  Ex. L at 5.

Meta announced the latter deficiency first. In a letter dated July 11, 2025, Meta admitted that ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████ *Id.* ¶ 24 & Ex. L at 5. According to Meta, ████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ *See id.* ███

████████████████████ Meta either actively deleted or chose not to suspend auto-deletion of that table for years, and had only █████████████ worth of data when it went looking. *Id.* ¶ 24. A few days later, in a July 15 meet-and-confer, Meta admitted that it had failed to retain *any* final Scam Ad impressions for the 28,299 Ads Meta had identified. *Id.* ¶ 25; *see also* ECF 262 at 5.

Plaintiff promptly raised the issue with the Court and, citing the destruction of outputs in particular, pushed even harder for all available data about changes. *See* ECF 262. Specifically, Plaintiff sought the "native" or "code-level" data showing all changes that Meta's tools had made to the Scam Ads. Quinn Decl. ¶ 26. Though Meta vigorously resisted, the resulting court orders led to the production of substantial additional data, including data from Meta's production stores. *Id.* ¶ 27. In mid-October, Meta acknowledged that two Hive tables, ███

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

*Id.* Meta subsequently admitted in its RFA responses that it did not suspend the auto-deletion of these two tables. *Id.* ¶ 27 & Ex. M. Meta also explained in a January 14, 2026 letter that it ███

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████████ *Id.* ¶ 27.

Fact discovery closed on Friday of last week, when Meta completed the last of the investigations ordered by Judge DeMarchi. *See* ECF 303. The closed record has two critical gaps, because Meta destroyed two categories of key evidence. *Id.* ¶ 28.

*First*, Meta has destroyed all final rendered Scam Ads, data sufficient to recreate them, and associated Hive data about these Scam Ad impressions ("Output Data"). Meta itself rendered and displayed the final Ads on its platform, but it apparently took no steps to retain the data. *Id.* ¶ 29.

1 ███████████████████████████████████████████████████████

2 ███████████████████████████████████████████████████████

3 ████████████████████████████████████ *Id.* ¶ 29 & Ex. M. And Meta never

4 suspended the auto-delete policy on either table, so it no longer has the data. *Id.*

5     *Second*, Meta destroyed data reflecting which of its tools and processes actually made

6 changes to inputs to create final rendered Scam Ads ("Actual Optimization Data"). In its normal

7 course of business, ████████████████████████████████████████████

8 ███████████████████████████████████████████████████████

9 ██████████████████████████████████ *Id.* ¶ 30 & Ex. L at

10 5. ██████████████████████ *See id*.

11 ███████████████████████████████████████████████████████

12 ███████████████████████████████████████████████████████

13 ████████████████████████████████████████████ *Id.* ¶ 30.

14 In either case, Meta destroyed (either actively or through automated deletion) years' worth of

15 impression-level Actual Optimization Data showing which optimizations made changes—not

16 those toggled on, or the optimizations created that could have acted, but the optimizations that

17 actually did act and make changes. *Id.* These deletions continued after Meta was on notice of this

18 litigation, after Plaintiff filed his complaint, and even after discovery had begun. *Id.*

19 **III.    LEGAL STANDARD**

20     Rule 37(e) authorizes sanctions where a party fails to preserve electronically stored

21 information ("ESI"). *See Gregory v. Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024). Courts find

22 spoliation when discoverable ESI (1) "should have been preserved in the anticipation or conduct

23 of litigation," (2) "is lost because a party failed to take reasonable steps to preserve it," and

24 (3) "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). As to the

25 first element, a party's duty to preserve potentially relevant evidence is triggered when litigation

26 is pending or becomes "reasonably foreseeable." *Apple, Inc. v. Samsung Elecs. Co*. (*Apple*), 888

27 F. Supp. 2d 976, 989 (N.D. Cal. 2012) (citation omitted). As to the second, a party fails to take

28 reasonable steps to preserve ESI when it fails to pause auto-deletion practices or affirmatively

PLAINTIFF DR. ANDREW FORREST'S MOTION FOR SANCTIONS RE: SPOLIATION OF EVIDENCE |
CASE NO. 22-CV-03699-PCP (VKD)

deletes evidence. *Lopez v. Apple, Inc.* (*Lopez*), No. 19 Civ. 4577, 2024 WL 4561320, at *7 (N.D. Cal. July 17, 2024). As to the third, ESI is irreplaceable when there is "no available alternative method to restore or replace the deleted ESI," *id.*, or when there is no "complete and fair substitute," *Scalia v. County of Kern*, 658 F. Supp. 3d 809, 816 (E.D. Cal. 2023).

Once spoliation has been established, the court must consider the appropriate remedy. Where the court finds the spoliation has prejudiced the moving party, it "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If the court finds that the spoliating party "acted with the intent to deprive another party of the information's use in the litigation," it may impose sanctions in the form of a permissive adverse inference, a mandatory inference, or dismissal. Fed. R. Civ. P. 37(e)(2).

## IV.    ARGUMENT

### A.  Meta Spoliated Output Data and Actual Optimization Data

Meta violated Rule 37(e) by destroying Output Data and Actual Optimization Data long after it was put on notice of this litigation, and these key data cannot be restored or replaced.

#### 1.    Meta's Duty to Preserve the Relevant Data Arose No Later Than 2019

Meta's duty to preserve Output Data and Actual Optimization Data arose years ago, when this litigation became reasonably foreseeable. *See Apple*, 888 F. Supp. 2d at 989. Specifically, in an August 9, 2019 letter, Plaintiff's counsel notified Meta of the Scam Ad problem, *see* Quinn Decl. ¶ 3 & Ex. B at 4, and "referred explicitly to potential litigation." *Best Label Co. v. Custom Label & Decal, LLC*, No. 19 Civ. 3051, 2022 WL 1525301, at *3 (N.D. Cal. May 13, 2022). Meta's counsel ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in its August 27, 2019 response, ▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Quinn Decl. ¶ 4 & Ex. C at 4.

Plaintiff's August 2019 letter made clear that Plaintiff's claims were based on the misappropriation of his name and likeness in Scam Ads, so the Scam Ads themselves plainly had to be preserved. *See Apple*, 888 F. Supp. 2d at 991 ("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." (citation omitted)). Nor was there any doubt that the Actual Optimization Data—the record of the changes Meta actually made to the final Ads—would be relevant. Meta's very

first move was to file a demurrer based on its claimed Section 230 immunity, *see* ECF 1-2, and so it was entirely foreseeable the discovery in this case would include "what tools or other processes (whether automated or not) impacted the content" of the Scam Ads, ECF 192 at 1.

What's more, Plaintiff's August 2019 letter expressly demanded that Meta "take all reasonable steps to preserve all data about the Advertisements, their timetable, their viewership, the identity of any related advertisers, and any other related data." Quinn Decl. ¶ 4 & Ex. B at 4.

### 2. Meta Failed to Take Reasonable Steps to Preserve Output Data and Actual Optimization Data—Instead, Meta Destroyed Them

As Meta admitted on the record, it failed to retain *any* final rendered Scam Ads. *See* ECF 262 at 5. Even if Meta does not in the "ordinary course of business" preserve final rendered ads, *id.*, suspending the deletion of obviously relevant data is precisely the kind of "reasonable step[]" Rule 37(e) requires,[2] *see In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006) (holding that even if the accused party had a "long standing polic[y]" of deleting ESI, it was "required to cease deleting [ESI] once the duty to preserve attached").

Likewise, Meta was required to take the reasonable step of suspending any routine auto-deletion of relevant Hive tables. *See, e.g.*, *Lopez*, 2024 WL 4561320, at *7 (granting spoliation motion where company "had an obligation to suspend its auto-deletion policy under its retention policy for relevant evidence, which is a *broad* standard"). Meta should know as much—in *Meta Platforms, Inc. v. BrandTotal Ltd.*, at Meta's request, this Court held that the other party's failure to suspend auto-deletion of log data warranted a permissive adverse inference jury instruction. 605 F. Supp. 3d 1218, 1237 (N.D. Cal. 2022). Here, had Meta suspended the auto-deletion of the ████████████████████ table when it received Plaintiff's August 2019 letter, these data

---

[2] It is no answer that Meta could not easily identify Scam Ads that misappropriated Plaintiff's name and likeness. Once in discovery and under court supervision, Meta quickly identified over 230,000 such Scam Ads by searching Hive tables. *See* 3/18/25 Tr. 23:10-23. Meta also could have simply searched its own Ads Library for Plaintiff's name. According to recent reporting sourced from internal Meta documents, Meta frequently employs this very tactic to give regulators a false sense of the efficacy of Meta's anti-fraud systems. *See* Jeff Horwitz, *Meta Created 'Playbook' to Fend Off Pressure to Crack Down on Scammers, Documents Show*, Reuters (Dec. 31, 2025), https://www.reuters.com/investigations/meta-created-playbook-fend-off-pressure-crack-down-scammers-documents-show-2025-12-31 (describing how Meta searched its Ads Library for "top keywords and celebrity names" in order to identify fraudulent ads).

would show ██████████████████████████████████████████████████████

████████████████████ Quinn Decl. ¶ 32. And had Meta suspended the auto-deletion of the

██████████████████████████████ table and the ████████████████. table, those

tables could well contain ██████████████████████████ *Id.* ¶ 33. But Meta did

not suspend the deletion of either table. *Id.* ¶ 29.

### 3.   The Destroyed Data Cannot Be Restored or Replaced

By Meta's own account, the Output Data and Actual Optimization Data are permanently

gone and "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).

While Meta has produced a scattershot of Scam Ad data, these data fall far short of providing a

"complete and fair substitute." *Scalia*, 658 F. Supp. 3d at 816.

In the end, Meta's production of Scam Ad data consists of snapshots of the Ads at various

steps of the process: original advertiser inputs; a patchwork of Hive data and production store data

indicating for most (but not all) Scam Ads the created optimizations that *could* have been applied

to final rendered impressions; and ██████████████████████████████████

██████████████████████████████████████████████ But these data do

not allow Plaintiff to recreate what any final Scam Ad looked like or what changes Meta's tools

and processes actually made as each final Scam Ad came together.

For example, while Meta produced advertiser inputs and data showing optimizations that

were created and could have acted, Meta did not produce complete Actual Optimization Data that

would show which optimizations actually changed final impressions. *See* Quinn Decl. ¶ 35. As

explained in the Quinn Declaration and above, *id.*; *supra* Section II.D, ████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. In short,

1    because Meta did not preserve the data in these key tables, they are irreversibly incomplete.

2          Moreover, Meta's component ad data are not a complete and fair substitute. *See* ¶ 36. █████

3    ████████████████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████████████

6    ███████████████████████████████████████ *Id.* ████████████████████████████████

7    ████████████████████████████████████████████████████████████████████████████

8    Meta can display the video ad with a "preferred" thumbnail, which may have been selected by the

9    advertiser or suggested by Meta, or an "automatic" thumbnail selected by Meta. *Id.* ¶ 37. █████

10   ████████████████████████████████████████████████████████████████████████████

11   ██████████████████████████████████████████████ *Id.* ████████████████████████████

12   ████████████████████████████████████████████████████████████████████████████

13   █████████████████ *Id.* ██████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████████████████

15   ████ *Id.* Whether Meta created and showed a thumbnail of Plaintiff bears directly on the question

16   of material contribution. *See Doe v. MG Freesites, Ltd.*, No. 21 Civ. 220, 2024 WL 5339485, at

17   *9 (N.D. Ala. Dec. 19, 2024) (finding platform's creation of thumbnails a plausible material

18   contribution to the illegality of the content). ██████████████████████████████████████

19   ████████████████████████████████████████████████████████████████████████████

20   ██████████ Quinn Decl. ¶ 37.

21        ████████████████████████████████████████████████████████████████████████

22   █████████████ *See id.* ¶ 38. ███████████████████████████████████████████████████

23   ████████████████████████████████████████████████████ *Id.* ██████████████████████

24   ████████████████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████████████████████

26   ██████████████████████████████████████████████████████████████████████ *Id.*

27   ████████████████████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████████████████████

13

PLAINTIFF DR. ANDREW FORREST'S MOTION FOR SANCTIONS RE: SPOLIATION OF EVIDENCE |
CASE NO. 22-CV-03699-PCP (VKD)



*Id.*

*Id.*

*See* Quinn Decl. ¶ 39. As a result, Plaintiff does not know what appeared in captions that accompanied the Scam Ads, though he does know that Meta's "Text improvements" optimizations can select which text—either advertiser inputs or Meta-generated—appears. *Id.* These kinds of changes (selecting and swapping text so that it appears more prominently, burning overlaid text onto images, zooming and cropping images and videos) are the types of changes that, in a misappropriation case, can "not merely . . . augment[] the content generally, but . . . materially contribut[e] to its alleged unlawfulness." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1167-68 (9th Cir. 2008).

**B. Meta's Destruction of Key Data Warrants Substantial Sanctions**

Meta's destruction of critical evidence warrants sanctions under Rule 37(e). *See In re Napster*, 462 F. Supp. 2d at 1074 ("[T]he abject failure to preserve an entire source of relevant evidence is sanctionable conduct.").

First, because the destruction of the Output Data and Actual Optimization Data prejudices Plaintiff, the Court may order sanctions under Rule 37(e)(1) sufficient to cure that prejudice. Prejudice exists where, as here, "the spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (cleaned up). To cure this prejudice, the Court should conclude that triable issues of fact exist with respect to Meta's Section 230 defense, and the Court should further bar Meta from arguing at trial that Plaintiff failed to make certain showings on account of the missing data, or from otherwise using the lack of data to its advantage.

Second, because Meta's spoliation was intentional, the Court should draw at summary

judgment and the jury may draw at trial the adverse inference that the destroyed data would have been unfavorable to Meta. Specifically, the Court should infer that each optimization created for a Scam Ad acted on it, and each optimization acted to the fullest extent possible given its capabilities.

### 1. Meta's Spoliation Prejudices Plaintiff

"The prejudice inquiry looks to whether [Meta's] actions impaired [Plaintiff's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Id*. (cleaned up). "Courts in the Ninth Circuit have found prejudice where another party's failure to produce documents forced the non-spoliating party to 'rely on incomplete and spotty evidence.'" *Facebook, Inc. v. OnlineNIC, Inc*., No. 19 Civ. 7071, 2022 WL 2289067, at *10 (N.D. Cal. Mar. 28, 2022).

Data showing the inputs, outputs, and changes made to the Scam Ads are key to resolving the factual dispute that underlies Meta's Section 230 affirmative defense. The destruction of Output Data is prejudicial on its face. *See In re Napster*, 462 F.Supp.2d at 1074 ("[T]he loss of an entire source of documents significantly hampers [an opposing party's] ability to prepare and prosecute their case."). Simply put, Meta's failure to preserve any final Scam Ad severely hampers Plaintiff's ability to prosecute a misappropriation case that centers around what the Scam Ads looked like and what message they conveyed. And the destroyed Output Data, combined with the advertiser inputs, would have provided a before-and-after record of how Meta's tools and processes changed the text and multimedia originally uploaded by advertisers.

The prejudicial effect of Meta's spoliation of Output Data, while serious, could have been mitigated in part by the production of complete Actual Optimization Data. But Meta destroyed that evidence, too. Without such data, Plaintiff is limited to an unrepresentative sampling from the ████████████████████████ and ████████████████████████████ These two tables are severely time-limited, cover less than half the Scam Ads, and fail to capture all optimizations that could have been—and likely were—applied to other impressions not represented in those tables.

Importantly, Meta's spoliation has led to an absence of impression-specific evidence at summary judgment, where Meta, not Plaintiff, bears the burden of coming forward with the requisite proof. To prevail at summary judgment, Meta is required to "demonstrate that no reasonable trier of fact could find" for Plaintiff. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978,

15

984 (9th Cir. 2007). Because Meta is relying on the affirmative defense of Section 230 immunity, it must establish that no reasonable factfinder could determine that Meta has fallen short of its burden of proving that the immunity applies. *See Fanucci v. Allstate Ins. Co.*, 638 F. Supp. 2d 1125, 1132-33 (N.D. Cal. 2009). Plaintiff can defeat Meta's motion by pointing to one or more genuine factual disputes, and the district court is obligated to "view[] the evidence and draw[] all reasonable inferences in the light most favorable" to Plaintiff. *Behrend v. S.F. Zen Ctr., Inc.*, 108 F.4th 765, 768 (9th Cir. 2024). But Meta's spoliation substantially limits the ways in which Plaintiff can demonstrate a genuine dispute of material fact—an obviously prejudicial result.

For instance, Meta may argue that guardrails in its AI tools should be treated as evidence that certain outcomes did or did not occur. But it is entirely possible— ███████████████ ██████████—that Meta's tools could have altered advertiser images and videos in unintended ways. Such "hallucinations" are not hypothetical. ██████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ Quinn Decl. ¶ 40 & Ex. N (META-0104805). ████████████████████████ ██████████████████████████████████ *See id.* ¶ 40 & Ex. N (META-0104813, META-0104809. ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████ *See id.* ¶ 40 & Ex. N (META-0104871).

Lastly, the spoliation of Output Data and complete Actual Optimization Data is especially prejudicial in this case because, in the context of AI tools, knowing the inputs and tools used does not necessarily enable recreation of the output. Rather, because these tools are "non-deterministic"—meaning they may produce different outputs when given the same inputs—every impression is potentially non-replicable and unique. ECF 274-1 ¶ 21.

### 2. Sanctions Are Warranted to Cure the Prejudice to Plaintiff

Pursuant to Rule 37(e)(1), the Court "may order measures no greater than necessary to cure the prejudice" Plaintiff suffers. *See* Fed. R. Civ. P. 37(e)(1). To alleviate the prejudice from Meta's

spoliation of data, the Court should conclude that by virtue of Meta's spoliation, a genuine issue of triable fact exists with respect to Meta's Section 230 defense, which would effectively resolve Meta's anticipated summary judgment motion in Plaintiff's favor. This is much like the sanction awarded under Rule 37(e)(1) in *Maziar v. City of Atlanta*, where the court denied summary judgment because the spoliation "deprives [the adverse party] of access to other evidence that may have created disputed issues of material fact." No. 21 Civ. 2172, 2024 WL 2928534, at *5 (N.D. Ga. June 10, 2024); *see also Harris-Williams v. Am. Freight Outlet Stores, LLC*, No. 22 Civ. 76, 2023 WL 6621394, at *6 (D. Del. Oct. 11, 2023).

At a minimum, the Court should preclude Meta from affirmatively arguing that Plaintiff has failed to make certain showings that would have turned on the missing data, or from relying on the absence of data it destroyed in moving for summary judgment or at trial. This the same sanction imposed in *Lopez* pursuant to Rule 37(e)(1), where Apple deleted Siri data that reflected Apple's privacy violations, and the court held that "Apple should be precluded from affirmatively arguing or otherwise using Plaintiffs' failure to make certain showings that they could have made if they had access to the deleted Siri data." 2024 WL 4561320, at *9.

### 3. Meta's Spoliation Was Intentional

Meta's conduct reflects that Meta "purposefully destroyed evidence to avoid its litigation obligations." *Est. of Bosco ex rel. Kozar v. County of Sonoma*, 640 F. Supp. 3d 915, 927 (N.D. Cal. 2022). While a showing of intent is a high bar, Plaintiff can meet it here, including through evidence that Meta was deleting relevant data at the same time it was representing otherwise to the Court. *See* 3/23/23 Tr. 37:24-38:3, 38:11-15.

"Because intent can rarely be shown directly, a district court may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions." *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024). Courts find a variety of circumstantial evidence probative of intent, including "the timing of the destruction, affirmative steps taken to delete the evidence, and selective preservation." *Id*. at 735; *see also Colonies Partners, L.P. v. County of San Bernardino*, No. 18 Civ. 420, 2020 WL 1496444, at *9-10 (C.D. Cal. Feb. 27, 2020) ("Intent may be inferred if a party is on notice that documents were potentially

relevant and fails to take measures to preserve relevant evidence," especially where that party is a "sophisticated party who had the assistance of experienced civil litigation counsel."). The Ninth Circuit has also recognized that "obfuscatory actions" are relevant to a defendant's "intent to deprive [the other party] of potentially relevant ESI." *Burris v. JPMorgan Chase & Co.*, Nos. 21-16852, 22-15775, 2024 WL 1672263, at *2 (9th Cir. Apr. 18, 2024) (citation omitted).

Here, Meta knew that the data it destroyed were central to this litigation. In particular, the August 2019 letter from Plaintiff's counsel, the allegations in the Complaint, and numerous detailed preservation notices identifying specific Scam Ads for preservation placed Meta on clear notice of its preservation obligations and sources of relevant data. But Meta destroyed all Output Data it once possessed. Likewise, Meta either deleted or chose not to suspend the auto-deletion of Hive tables that contained data about ███████████████████████████████ ███████████████ This destruction continued well after litigation in this case was already underway. The court in *Glaukos Corp. v. Ivantis, Inc.* found that these sorts of actions—the "intentional decision to continue deleting documents once litigation was not only anticipated but actually underway"—supplied evidence of the requisite intent to deprive the opposing party of the spoliated material. No. 18 SA Civ. 620, 2020 WL 10501850, at *5 (C.D. Cal. June 17, 2020).

In evaluating intent, courts have also looked to the sophistication of the spoliating party and its experience with preservation. *See Lopez*, 2024 WL 4561320, at *8; *see also In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 993 (N.D. Cal. 2023). In *Lopez*, for example, the court ordered a permissive adverse inference after weighing, among other factors, that "Apple is a large, sophisticated company represented by experienced counsel, and Apple has been previously sanctioned for its failure to place its ESI under a litigation hold." *Lopez*, 2024 WL 4561320, at *8. Like Apple, Meta has been brought to court numerous times over its failure to preserve ESI. A court in this district recently found that Meta acted in "conscious disregard of its [discovery] obligations" where it "did not take reasonable steps to preserve" data contained in two Hive tables—"key data" that Meta "knew or consciously disregarded . . . was not located in the other tables being preserved." Order at 1, *In re Meta Pixel Healthcare Litigation*, No. 22 Civ. 3580 (N.D. Cal. Feb. 20, 2025), ECF 880. Another court found that Meta flouted its "well established . . .

obligation to preserve potentially relevant information" by failing to preserve relevant datasets. *BlackBerry Ltd. v. Facebook, Inc.*, No. 18 Civ. 1844, 2019 WL 13447227, at \*6-7 (C.D. Cal. Sep. 30, 2019). And a third court sanctioned Meta for failing to suspend the auto-deletion of relevant ESI. *In re Facebook, Inc. Derivative Litig.*, C.A. Cons. No. 2018-0307 (Del. Ch. Jan. 21, 2025). In addition, a motion for sanctions against Meta for strikingly similar conduct is pending in California Superior Court. *See* Pls.' Not. of Mot. to Compel and Mot. for Sanctions, *In re Social Media Cases*, No. 22 STCV 21355, JCCP No. 5255 (Cal. Super. Ct. Sep. 25, 2025), BL-1809. That motion alleges that Meta "knowingly allow[ed]" critical data "to be deleted on a rolling basis" after litigation began and after extensive discovery discussions about these data. *Id.* at 5.

Simply put, Meta is a highly sophisticated company represented by sophisticated counsel, and its litigation history suggests that such practices are a feature of its litigation strategy—not a bug. One court in this district, in sanctioning Meta for deliberately concealing the existence of Hive tables, summed up the company's litigation "playbook" as follows: to "resist discovery as long as possible" and "make things increasingly difficult and expensive and frustrating for the opposition." *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 655 F. Supp. 3d 899, 919, 935 (N.D. Cal. 2023). Meta's egregious behavior here is consistent with this playbook.

Finally, the Court may infer intent from Meta's obfuscatory actions. *See Burris*, 2024 WL 1672263, at \*2. *Lopez*, for example, found Apple's misleading representations regarding the volume and sufficiency of data it had preserved was a factor that weighed in favor of a permissive adverse inference. *See Lopez*, 2024 WL 4561320, at \*8. Here, Meta was deleting relevant data while telling the Court, "We do the work on the back end here at Meta to make sure that documents are being preserved," and that "we're taking the steps required under Rule 37 and 34 to make sure that we're preserving everything that is relevant and responsive . . . ." 3/23/23 Tr. 37:24-38:3, 38:11-15. And for months after Plaintiff had served his discovery requests, Meta continued to represent that it ███████████████████████████████████████████████████████████

███████████████████████████ *See* Quinn Decl. ¶ 14 & Ex. G at 2. That statement was untrue.

### 4.  Because Meta Intentionally Spoliated, Adverse Inferences Are Warranted

In addition to the sanctions pursuant to Rule 37(e)(1), *see supra* Sections IV.B.1-2,

additional sanctions, including adverse inferences, are warranted under Rule 37(e)(2) because "the evidence shows or it is reasonable to infer, that a party purposefully destroyed evidence to avoid its litigation obligations." *Est. of Bosco*, 640 F. Supp. 3d at 927 (cleaned up).

Accordingly, if this case proceeds to trial, the Court should instruct the jury that Meta had a duty to preserve the Output Data and Actual Optimization Data from August 2019 through January 2025, and should further instruct the jury that: (1) you may consider whether one party concealed or destroyed evidence, or intentionally allowed evidence to be lost; and (2) if you decide that a party did so, you may decide that the evidence would have been unfavorable to that party. *See Meta Platforms*, 605 F. Supp. 3d at 1240; *see also Lopez*, 2024 WL 4561320, at *8. The Court should also draw this same inference at summary judgment. *See Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 567-68 (N.D. Cal. 2008).

Plaintiff seeks two specific adverse inferences or presumptions. See *Apple*, 888 F. Supp. 2d at 993 ("Where one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court must draw the strongest allowable inferences in favor of the aggrieved party." (citation omitted)). First, because Meta has destroyed the data showing which creative optimizations Meta actually applied to each Scam Ad impression, the Court should infer that Meta actually applied each optimization created—or, if available, each interim ad component Meta created for that ad. Second, because Meta destroyed the final Ads showing what these creative optimizations actually did, the Court should presume that the optimizations acted to the fullest extent possible given the capabilities described in Meta's documents, source code, and record evidence.[3] *See Resnik v. Coulson*, No. 17 Civ. 676, 2019 WL 2256762, at *16 (E.D.N.Y. Jan. 4, 2019) (recommending, where defendant spoliated evidence concerning use of spyware, that "defendant be deemed to have installed and used spyware on [plaintiff's] telephone").

The Court may also craft additional relief (including at Plaintiff's request) now or later, including at summary judgment and trial. *See Lopez*, 2024 WL 4561320, at *9; *see also In re Google Play Store*, 664 F. Supp. 3d at 994. Meta's intentional and prejudicial destruction of

---

[3] At an October 2025 hearing before Judge DeMarchi, Meta ███████████ ████████, *see* 10/21/25 Tr. 19:19-21:7 (excerpted at Quinn Decl. Ex. O), and the parties are discussing whether they can agree to an adverse inference.

1  important records may require even stronger medicine as this case advances.

2  Finally, because Plaintiff was forced to pursue discovery of the spoliated data and bring

3  this motion to enforce Meta's discovery obligations and to "cure the prejudice" caused by Meta's

4  misconduct, Fed. R. Civ. P. 37(e)(1), Meta should pay the fees and costs Plaintiff has incurred,

5  *see, e.g.*, *Youngevity Int'l v. Smith*, No. 3:16 Civ 704-BTM-JLB, 2020 WL 7048687, at *5 (S.D.

6  Cal. July 28, 2020).

7  **V.    CONCLUSION**

8  For these reasons, the Court should grant Plaintiff's motion and order a hearing. Plaintiff's

9  fees and costs resulting from Meta's spoliation are ongoing as of the time of this filing, but he is

10  prepared to submit an accounting of his fees and costs in accordance with the Court's instructions.

11  Dated: February 20, 2026                                    Respectfully submitted,

12

13  */s/ John C. Quinn*
    John C. Quinn (*pro hac vice*)                             Leslie Brueckner (SBN: 140968)
    jquinn@heckerfink.com                                      lbrueckner@singletonschreiber.com
14  Hyatt Mustefa (*pro hac vice*)                             **SINGLETON SCHREIBER, LLP**
    hmustefa@heckerfink.com                                    591 Camino de la Reina, Suite 1025
15  Jocelyn Hassel (*pro hac vice*)                            San Diego, CA 92108
    jhassel@heckerfink.com                                     Telephone: (619) 573-1851
16  Tayonna Ngutter (*pro hac vice*)
17  tngutter@heckerfink.com                                    Elizabeth Ryan (*pro hac vice*)
    Tanveer Singh (*pro hac vice*)                             eryan@baileyglasser.com
18  tsingh@heckerfink.com                                      **BAILEY & GLASSER LLP**
    **HECKER FINK LLP**                                        176 Federal Street, 5th Floor
19  350 Fifth Avenue, 63rd Floor                               Boston, MA 02110
20  New York, NY 10118                                         Telephone: (617) 439-6730
    T: 212.763.0883
21
    Joshua Matz (*pro hac vice*)                               Derek G. Howard (SBN: 118082)
22  jmatz@heckerfink.com                                       derek@derekhowardlaw.com
    Kaitlin Konkel (*pro hac vice*)                            **DEREK G. HOWARD LAW FIRM, INC.**
23  kkonkel@heckerfink.com                                     42 Miller Avenue
24  Joanne Grace Dela Peña (*pro hac vice*)                    Mill Valley, CA 94941
    jdelapena@heckerfink.com                                   Telephone: (415) 432-7192
25  Brian Remlinger (*pro hac vice*)                           Facsimile: (415) 524-2419
    bremlinger@heckerfink.com
26  **HECKER FINK LLP**                                        *Attorneys for Plaintiff Dr. Andrew Forrest*
27  1050 K Street NW | Suite 1040
    Washington, DC 20001
28  T: 212.763.0883

PLAINTIFF DR. ANDREW FORREST'S MOTION FOR SANCTIONS RE: SPOLIATION OF EVIDENCE |
CASE NO. 22-CV-03699-PCP (VKD)