Hecker Fink LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.HECKERFINK.COM

DIRECT DIAL 212.763.0886
DIRECT EMAIL jquinn@heckerfink.com

April 3, 2026

**VIA CM/ECF**

Hon. Virginia K. DeMarchi
United States District Court
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re: *Dr. Andrew Forrest v. Meta Platforms, Inc.*, No. 5:22-cv-03699-PCP/VKD (N.D. Cal.)

Dear Judge DeMarchi:

Pursuant to the Order Re Further Proceedings Re February 9, 2026 Discovery Dispute Letter, ECF 336, Plaintiff Dr. Andrew Forrest and Defendant Meta Platforms, Inc. ("Meta") respectfully submit this Supplemental Joint Discovery Letter Brief.

## I. STATEMENT OF DISPUTE

Plaintiff contends that Meta has not provided information sufficient to understand its fraud-scoring processes, contrary to the Court's order. Instead, Meta provided preliminary information and refused to answer Plaintiff's follow-up questions. This preliminary information, though incomplete, confirms that fraud scores and associated documents are relevant and discoverable in Phase One.

Meta contends that, in compliance with this Court's order, it provided Plaintiff with detailed information concerning Meta's Ad Review process. That information confirmed that "fraud scoring" does not bear on material contribution, the focus of Phase 1. Additional discovery and information concerning "fraud scoring" is, therefore, unwarranted in Phase 1.

## II. PLAINTIFF'S POSITION

Meta was ordered to provide "[i]nformation sufficient to explain [Meta's] scoring," ECF 322; 2/24/2026 Tr. 37:13-14. Meta's lawyers confirmed that Meta [redacted], but have provided inadequate information and refused to answer follow-up questions. Nevertheless, Meta has shared enough to confirm that fraud scoring is discoverable now.

After an advertiser provides Inputs, [redacted] In a March 5 letter (Exhibit 1), Meta confirmed that [redacted] Meta's policies, including those prohibiting frauds and scams. Meta indicates there are [redacted], but it refuses to say whether there are [redacted] aimed at fraud and/or misappropriation specifically.

Meta also won't say *which* optimizations [redacted], and undergo [redacted]. Though Meta contends below that many optimizations [redacted], Meta has elsewhere explained that, [redacted] ECF 338 at 7, 9-10 & n.11. Meta now equivocates (offering no explanation), but counsel previously stated that for [redacted].

The results of this [redacted] process are [redacted], though Meta refuses to explain how. Meta [redacted]. Nor will Meta explain penalty bids applied to likely fraudulent ads.

Finally, Meta's letter discusses [redacted]. Because this score mixes [redacted], Plaintiff reserves rights and does not now seek [redacted].

* * *

Plaintiff is entitled to discovery into Meta's scoring of Scam Ad variants, penalty bids applied, and information about how [redacted].[1] Insofar as scoring was specific to fraud/misappropriation violations, Plaintiff is prepared to narrow his requests. This discovery is relevant to Phase One in two ways.

*First*, differences in scores among [redacted] would indicate that, by Meta's own measure, the optimization has likely made a material contribution "to the aspect of the content that is allegedly illegal," ECF 121 at 8. While Meta protests that this is a new theory, Plaintiff has always sought to compare fraud scores of related ad variants to assess whether optimization-driven changes resulted in different scores. And Meta admits [redacted] and create [redacted], Ex. 2 at 11. These [redacted], Ex. 1 at 2. So, imagine that an image-altering optimization [redacted] with an altered image, and a [redacted]. The difference in scores would be valuable evidence, probative of contribution to illegality. And while the likelihood of fraud and degree of

[1] Meta states for the first time in its response that [redacted] and penalty bids are subject to short retention periods and likely were not retained. Even so, an order compelling this discovery is warranted, particularly if other data could substitute. *See* ECF 314 at 12.

fraud may be distinct in theory, they are related in practice—an egregiously fraudulent ad is one that an AI would assess more likely to be fraudulent.

*Second*, the same discovery, including penalty bids, supports Plaintiff's argument that Meta's enhancement of ads of known fraudsters is non-publisher conduct and not immunized. This theory is not foreclosed by Judge Pitts' ruling that Meta is an "interactive computer service," because that is separate from whether Meta is a publisher. *See In re Soc. Media Adolescent Litig.*, 753 F. Supp. 3d 849, 879, 883 (N.D. Cal. 2024) (finding non-publisher conduct not immune where ICS-status was undisputed). Though the Court need not decide this argument's merits, the requested discovery will serve multiple purposes at summary judgment.

**Proposed Resolution**

Meta must provide:

(1) All scores for each Scam Ad reflecting the likelihood of fraud or misappropriation, discovery sufficient to show how [redacted], and records created by both;

(2) All penalty bids applied to Scam Ad impressions; and

(3) If any scores, records, or penalty bids are unavailable, a declaration explaining why.

## III. DEFENDANT'S POSITION

Meta provided Plaintiff with detailed information concerning Meta's processes for reviewing advertisements for compliance with its standards and policies. *See* Dkt. 322. That information established that "fraud scoring" has no bearing on material contribution, the agreed-upon focus of Phase 1. Dkt. 164 at 5; *see* Dkt. 168 at 8:6-8. Plaintiff has now developed a new theory of purported relevance which also fails for a number of reasons, including because it would not isolate the purported effect of Meta's optimizations.

At the February 24 hearing, Plaintiff espoused his first theory for "fraud scoring's" purported relevance to material contribution. He hypothesized that comparing pre- and post-optimization "fraud scores" for the same [redacted] could reveal Meta's assessment of how "optimization[s] affected the fraudulent aspects of the ad." Dkt. 324 at 6:16-20.

Without conceding that such a comparison would be relevant to material contribution, Meta soundly disproved that theory. As Meta explained to Plaintiff, in Ad Review, [redacted] with Meta's advertising standards and policies: [redacted]

[2] Based on Meta's investigation to date, [redacted] and penalty bid data are subject to short retention periods in the ordinary course of business, making it unlikely that this historical data exists for the alleged Scam Ads. Meta is continuing to investigate whether potential sources of this data exist.

[redacted]

Undeterred, Plaintiff pivoted theories to justify his requested discovery. Plaintiff now claims he can ascertain Meta's alleged material contribution [redacted]. That misunderstands optimization application and [redacted].

Most importantly, nearly all the optimizations Plaintiff identified as part of Meta's interim output investigation, *see* Dkt. 289, [redacted], [redacted] Comparing [redacted] would, therefore, not capture the effect of those optimizations. There is no equivocation. Meta explained that optimizations [redacted] to Ad Review. Meta did not state that [redacted]," which is incorrect.

Even if it were otherwise, Plaintiff's comparison would be unworkable. For example, [redacted] in Ads Manager. So [redacted] to the images uploaded by the advertiser, as opposed to [redacted]. It would not isolate any [redacted].

[redacted] are also not pertinent to Meta's purported material contribution. The [redacted] related to Meta's advertising standards and policies concerning scams and frauds [redacted].[3] *See* Dkt. 324 at 6:21-7:14. Moreover, Meta's subjective assessments are of no moment to material contribution, an objective legal determination to be made by the Court. *See In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 625 F. Supp. 3d 971, 992 (N.D. Cal. 2022); *see also* Dkt. 324 at 17:25-18:3.

Finally, Meta has not identified evidence that Ad Review [redacted] in Ads Manager [redacted]; contributes to the [redacted]; or impacts how [redacted] in Ads Manager is [redacted]. *See* Dkt. 324 at 20:3-14.

Perhaps recognizing as much, Plaintiff suggests discovery concerning "fraud scores" supports his argument that Meta is engaged in "non-publisher conduct." *Supra* at 2. Even Plaintiff acknowledges "this argument ... is separate from Meta's [alleged] material contribution," Dkt. 324 at 15:18-24, the focus of Phase 1 discovery. Plaintiff's obvious attempt to obtain premature Phase 2 discovery should be rejected.

---

[3] Plaintiff suggests "likelihood of fraud and degree of fraud may be distinct in theory." *Supra* at 2. But what matters is the distinction between those concepts and the [redacted].

For these reasons—in addition to Plaintiff's failure to establish good cause, *see* Dkt. 308-3 at 6-7—discovery concerning "fraud scoring" is unwarranted in Phase 1.

## IV. CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

Over Plaintiff's objection, the Court approved an extension of the case schedule as follows:

| Event | Deadline |
|---|---|
| Completion of fact discovery[4] | **February 13, 2026** |
| Meta's Motion for Summary Judgment on Section 230 defense and opening expert report(s) (if applicable) | **14 days after a final decision on Plaintiff's Spoliation Motion** |
| Dr. Forrest's Opposition to Meta's Summary Judgment Motion; Cross-Motion for Partial Summary Judgment (if applicable); and opening expert report(s) (if applicable) | **60 days after the filing of Meta's Motion for Summary Judgment** |
| Meta's Reply in Further Support of Summary Judgment; Opposition to Dr. Forrest's Cross-Motion for Partial Summary Judgment (if applicable); and rebuttal expert report(s) (if applicable) | **40 days after the filing of Plaintiff's Opposition or Cross-Motion** |
| Dr. Forrest's Reply in Further Support of Partial Summary Judgment (if applicable) and rebuttal expert report(s) (if applicable) | **30 days after the filing of Meta's Reply** |

[4] The deadline was extended only for the completion of Meta's data investigation. *See* Dkt. 298.

## VII. ATTACHMENTS

The following discovery requests are attached:

- Exhibit 1 (under seal): Meta's March 5, 2026 Letter[5]
- Exhibit 2: (under seal): Meta's Supplemental Responses & Objections to Plaintiff's Interrogatories No. 1, 2, 4, 6, and 9 (excerpt)

Dated: April 3, 2026

HECKER FINK LLP

By: /s/ John C. Quinn
John C. Quinn
Attorney for Plaintiff
Dr. Andrew Forrest

Dated: April 3, 2026

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: /s/ Walter F. Brown
Walter F. Brown
Attorney for Defendant
Meta Platforms, Inc.

---

[5] While Plaintiff acknowledges the Court's standing rule that the parties may not attach discovery correspondence to a dispute letter absent leave of court, *see* Standing Rule for Civil Cases ⁋ 4(c)(vi), Plaintiff also notes the Court's specific instruction at the February 24 hearing that Meta provide "a writing" or "documentation" that the parties could cite to the Court and that would be more concrete than the parties' competing declarations explaining the new information. *See* 2/24/2026 Tr. 39:6-40:9. Plaintiff understands the Court's statements at the hearing to qualify as leave to attach the new information disclosed by Meta, notwithstanding its letter format.