# Exhibit 1

# [REDACTED]

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

535 Mission Street, 25th Floor
San Francisco, CA 94105
+1 628 432 5100

**Walter F. Brown**
**Direct Dial:** +1 628 432 5111
**Email:** wbrown@paulweiss.com

New York
Brussels
Hong Kong
London
Los Angeles
Tokyo
Toronto
Washington, DC
Wilmington

March 5, 2026

**By Email**

Joshua Matz
Kaitlin Konkel
Joyce Dela Peña
Brian Remlinger
Hecker Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
jmatz@heckerfink.com
kkonkel@heckerfink.com
jdelapena@heckerfink.com
bremlinger@heckerfink.com

John C. Quinn
Hyatt Mustefa
Jocelyn Hassel
Tayonna Ngutter
Tanveer Singh
Hecker Fink LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
jquinn@heckerfink.com
hmustefa@heckerfink.com
jhassel@heckerfink.com
tngutter@heckerfink.com
tsingh@heckerfink.com

Re: *Forrest* v. *Meta Platforms, Inc.*
Civ. No. 5:22-cv-3699 (N.D. Cal.)

Dear Counsel:

We write on behalf of Meta Platforms, Inc. ("Meta"), in response to Judge DeMarchi's instruction that Meta provide "information sufficient to explain what, if any, review for violation of Meta's fraud or scam policies Meta undertakes." Dkt. 322 at 1. Outlined below are Meta's post-publication, pre-impression processes for reviewing advertisements for compliance with its standards and policies, including those concerning scams and frauds,

based on a reasonable investigation conducted to date. Meta's investigation is ongoing, and Meta reserves the right to supplement this information as necessary.

As we have repeatedly explained, and expand upon further below, these processes are outside the scope of Phase 1 discovery. They have no bearing on whether Meta "materially contributed to the unlawfulness of content," *Calise* v. *Meta Platforms, Inc.*, 103 F.4th 732, 744 (9th Cir. 2024) (cleaned up), the agreed-upon focus of Phase 1.

*Advertiser Publication and* [redacted]

After an advertiser "publishes" an advertisement [redacted]

*Ad Review*

[redacted] Ad Delivery Stack, *infra*, an [redacted] undergoes Ad Review. Ad Review is Meta's process for reviewing an [redacted] for compliance with its advertising standards and policies. [redacted] goes through Ad Review [redacted]

In Ad Review, [redacted]—including, but not limited to, [redacted] Meta's advertising standards and policies. [redacted] While the advertising standards and policies applicable to Ad Review [redacted] Meta's standards and policies prohibiting frauds and scams. [redacted] Meta's standards and policies related to frauds and scams, [redacted]

[redacted]

[1] [redacted] was not applied to any of the roughly 27,000 alleged Scam Ads purportedly featuring Dr. Forrest's name or likeness.

Meta has not identified evidence that Ad Review affects how [redacted] in Ads Manager [redacted]; contributes to [redacted]; or impacts how [redacted] in Ads Manager [redacted]

*The Ad Delivery Stack*

[redacted] Ad Review, [redacted] the Ad Delivery Stack. The Ad Delivery Stack [redacted] the Ad Delivery Stack [redacted] The Ad Delivery Stack [redacted]

[redacted] the Ad Delivery Stack's [redacted] is an auction, [redacted] Meta's auction, [redacted] Meta's auction, [redacted] Meta's auction relies on multiple factors [redacted] "ad quality," [redacted]

Ad Review and ad quality [redacted] As described above, Ad Review assesses [redacted] for compliance with its advertising standards and policies, and [redacted] may be rejected and prevented from appearing on Meta's services. Ad quality, [redacted].

[redacted]

One component of ad quality is [redacted] It is based primarily on [redacted] It is also based, in part, [redacted] Ad Review [redacted] the Ad Delivery Stack.

As with Ad Review, Meta has not identified evidence that ad quality affects how [redacted] in Ads Manager [redacted]; contributes to [redacted]; or impacts how [redacted] in Ads Manager [redacted]

***

As Meta has now repeatedly explained, Ad Review and [redacted] are not proper subjects of discovery in Phase 1.

The "parties . . . agreed" that Phase 1 discovery would concern Meta's "asserted Section 230 affirmative defense, focusing on whether and how Meta allegedly materially contributed to the allegedly illegal content." Dkt. 164 at 4; *see also* Dkt. 168 at 8:6-24 ("[W]e're going to take discovery to assess whether that process is a material contribution . . . ." (Quinn, J., at the October 26, 2024 case management conference)). Following motion practice, the scope of Phase 1 was further defined to focus on "what tools or other processes (whether automated or not) impacted the content [of each alleged scam ad], from the 'input' by a third party to the 'output' to the end user or audience." Dkt. 192 at 1. And, with respect to Ad Review specifically, Judge DeMarchi was clear that, if "there's nothing about the ad review process that actually affects . . . any current ad . . . [or] any subsequent ad in terms of the content of the ad," then "further discovery" would be "forestall[ed]." Dkt. 193 at 55:7-16.

Ad Review and [redacted] fall outside of this well-defined scope. For starters, Meta has not identified any evidence that either Ad Review or [redacted] "impacted," Dkt. 192 at 1, or "affect[ed]," Dkt. 193 at 55:7-16, the content of any alleged scam advertisements [redacted] Specifically, Meta has not identified evidence that either Ad Review or ad quality affects how [redacted] Ads Manager [redacted] contributes to [redacted] or impacts how [redacted]

Perhaps recognizing as much, Plaintiff has argued that "fraud scoring" is nonetheless relevant to material contribution because such scores are "probative of the extent to which the particular optimizations applied to [a] variant contributed to the fraudulent aspects of the final ad." Dkt. 307 at 4. In particular, Plaintiff has hypothesized that comparing pre- and post-optimization "fraud scores" will reveal Meta's assessment of how "optimizations affected the fraudulent aspects of the ad." Dkt. 324 at 6:16-20.

Plaintiff's argument is unpersuasive, for multiple reasons. For one, [redacted] Ad Review [redacted] Ad Review process. [redacted] Moreover, as described above, [redacted] Meta's advertising standards and policies concerning scams and frauds [redacted]

[redacted] *See* Dkt. 324 at 7:6-9 ("[T]his is where I'm really struggling, because . . . [redacted]" (DeMarchi, J.)). So, [redacted] Finally, because Ad Review [redacted], it cannot be used to ascertain the impact *vel non* of any "particular optimization[]."[2] Dkt. 307 at 4.

Yet even assuming there existed multiple comparable "fraud scores," and even assuming those "fraud scores" measured Meta's assessment of how fraudulent an advertisement is pre- and post-optimization, those scores would *still* not be relevant to material contribution. *See* Dkt. 324 at 20:5-15 ("If you accept the premise or the proposition or the assertion that Meta has made that [redacted] . . . I don't see how it's a measure of material contribution." (DeMarchi, J.)).

"Fraud scores" reflect, at most, [redacted] advertising standards and policies. Material contribution, by contrast, is an objective determination, to be made by the finder of fact. *See In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 625 F. Supp. 3d 971, 992 (N.D. Cal. 2022) ("[T]o determine if Section 230 immunizes a website, *the court must determine* the degree to which the website contributed to 'the alleged illegality of the conduct.'" (emphasis added; citation omitted)). As Judge DeMarchi observed, "if it's Meta's knowingness . . . I don't think that has anything to do with the immunity argument on material contribution." Dkt. 324 at 17:25-18:3.

Thus, neither Ad Review nor [redacted] bears on material contribution, and both are outside the scope of Phase 1 discovery.[3] We trust the information and explanation provided

[2] Plaintiff has also suggested he could ascertain Meta's contributions by comparing the "fraud scores" of [redacted]. *See* Dkt. 307 at 4. Plaintiff, however, has not explained how that would work in practice. For example, [redacted] an advertiser uploads multiple images in Ads Manager. [redacted] different images uploaded by the advertiser. In other words, it would not isolate Meta's purported contribution. Plaintiff also ignores [redacted], as explained above.

[3] If Ad Review or [redacted] were relevant to Meta's alleged material contribution, which they are not, Plaintiff would still not be entitled to obtain discovery on those topics as part of Phase 1. The deadline for Phase 1 fact discovery has long since passed, *see* Dkt. 233 at 2, and Plaintiff failed to act with the requisite diligence to justify extending the deadline

should suffice to resolve this matter, and that Plaintiff will no longer seek information concerning "fraud scoring" as part of Phase 1.

Sincerely,

*/s/ Walter F. Brown*

Walter F. Brown

to obtain the materials and information he has only belatedly sought, *see* Dkt. 307 at 6-7; *see also* Dkt. 324 at 16:22-17:7.