John C. Quinn (*pro hac vice*)
jquinn@heckerfink.com
Hyatt Mustefa (*pro hac vice*)
hmustefa@heckerfink.com
Jocelyn Hassel (*pro hac vice*)
jhassel@heckerfink.com
Tayonna Ngutter (*pro hac vice*)
tngutter@heckerfink.com
Tanveer Singh (*pro hac vice*)
tsingh@heckerfink.com
**HECKER FINK LLP**
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883

Joshua Matz (*pro hac vice*)
jmatz@heckerfink.com
Kaitlin Konkel (*pro hac vice*)
kkonkel@heckerfink.com
Joanne Grace Dela Peña (*pro hac vice*)
jdelapena@heckerfink.com
Brian Remlinger (*pro hac vice*)
bremlinger@heckerfink.com
**HECKER FINK LLP**
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883

Leslie Brueckner (SBN: 140968)
lbrueckner@singletonschreiber.com
**SINGLETON SCHREIBER, LLP**
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
Telephone: (619) 573-1851

Elizabeth Ryan (*pro hac vice*)
eryan@baileyglasser.com
**BAILEY & GLASSER LLP**
176 Federal Street, 5th Floor
Boston, MA 02110
Telephone: (617) 439-6730

Derek G. Howard (SBN: 118082)
derek@derekhowardlaw.com
**DEREK G. HOWARD LAW FIRM, INC.**
42 Miller Avenue
Mill Valley, CA 94941
Telephone: (415) 432-7192
Facsimile: (415) 524-2419

*Attorneys for Plaintiff Dr. Andrew Forrest*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| DR. ANDREW FORREST,<br><br>                         Plaintiff,<br><br>     v.<br><br>META PLATFORMS, INC.<br><br>                         Defendant. | Case No. 22-CV-03699-PCP (VKD)<br><br>**PLAINTIFF DR. ANDREW FORREST'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS RE: SPOLIATION OF EVIDENCE**<br><br>Judge: Hon. P. Casey Pitts<br>Courtroom: Courtroom 8, 4th Floor<br>Hearing Date: April 16, 2026<br>Hearing Time: 10:00 AM |

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................................1

ARGUMENT .....................................................................................................................................3

I.  As an Initial Matter, Plaintiff's Motion Is Timely................................................................3

II.  Meta Had a Duty to Preserve the Spoliated Data ................................................................4

III.  Meta Failed to Take Reasonable Steps to Preserve .............................................................6

    A.  Output Data ................................................................................................................ 6

    B.  Actual Optimization Data ......................................................................................... 9

IV.  There Is No Substitute for the Spoliated Data, and It Cannot Be Restored or Replaced .......10

V.  Meta's Spoliation Caused Prejudice that Meta's Proposed Inference Does Not Cure...........11

VI.  Meta Acted with Intent, and an Adverse Inference Under Rule 37(e)(2) Is Warranted.........13

    A.  Meta Acted with Intent............................................................................................ 13

    B.  An Adverse Inference and Accompanying Instruction Are Warranted ...................... 15

CONCLUSION.................................................................................................................................15

i

## TABLE OF AUTHORITIES

*CASES*

*Al Otro Lado, Inc. v. Nielsen*,
   328 F.R.D. 408 (S.D. Cal. 2018) ................................................................................. 4, 5

*Apple Inc v. Samsung Elecs. Co., Ltd.*,
   881 F. Supp. 2d 1132 (N.D. Cal. 2012) ..................................................................... 4, 12

*Apple, Inc. v. Samsung Elecs. Co.*,
   888 F. Supp. 2d 976 (N.D. Cal. 2012) ........................................................................... 4

*Ashton v. Knight Transp., Inc.*,
   772 F. Supp. 2d 772 (N.D. Tex. 2011) ........................................................................... 5

*BlackBerry Ltd. v. Facebook, Inc.*,
   No. 18 Civ. 1844, 2019 WL 13447227 (C.D. Cal. Sep. 30, 2019) ................................. 15

*Calise v. Meta Platforms, Inc.*,
   21-cv-6186 (N.D. Cal. Oct. 8, 2021) ............................................................................... 5

*Chinitz v. Intero Real Estate Servs.*,
   No. 18-cv-5623, 2020 WL 1308340 (N.D. Cal. Jan. 13, 2020) ....................................... 3

*Cross v. Facebook, Inc.*,
   No. CIV537384 (Cal. Super. Ct. Mar. 30, 2016) ............................................................ 5

*Est. of Schuck v. County of San Diego*,
   No. 3:23-cv-00785, 2025 WL 2180987 (S.D. Cal. Aug. 1, 2025) ............................... 4, 11

*In re Facebook, Inc. Derivative Litig.*,
   C.A. Cons. No. 2018-0307 (Del. Ch. Jan. 21, 2025) ...................................................... 15

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
   655 F. Supp. 3d 899 (N.D. Cal. 2023) .......................................................................... 15

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*,
   No. 15-CV-1893-HRL, 2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) .............................. 14

*Force v. Facebook, Inc.*,
   16-cv-5158 (E.D.N.Y. Jan. 13, 2017) .............................................................................. 5

*Goodman v. Praxair Servs., Inc.*,
   632 F. Supp. 2d 494 (D. Md. 2009) ................................................................................ 4

*In re Google RTB Consumer Privacy Litigation*,
   No. 21-cv-2155, 2025 WL 28641 (N.D. Cal. Jan. 2, 2025) .............................................. 4

PLAINTIFF DR. ANDREW FORREST'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS
RE: SPOLIATION OF EVIDENCE | CASE NO. 22-CV-03699-PCP (VKD)

*Gov't Emps. Health Ass'n v. Actelion Pharms. Ltd.*,
   343 F.R.D. 474 (D. Md. 2023)..................................................................................... 5

*Groves Inc. v. R.C. Bremer Mktg. Assocs.*,
   No. 22-cv-50154, 2024 WL 4871368 (N.D. Ill. Nov. 22, 2024) ....................................... 4

*Jones v. Riot Hosp. Grp. LLC*,
   95 F.4th 730 (9th Cir. 2024) ..................................................................................... 13, 15

*Klayman v. Zuckerberg*,
   11-cv-874 (D.D.C. Apr. 13, 2012).................................................................................. 5

*Larios v. Lunardi's Markets, Inc.*,
   442 F. Supp. 3d 1303 (N.D. Cal. 2020) ......................................................................... 4

*Lopez v. Apple, Inc.*,
   No. 19 Civ. 4577, 2024 WL 4561320 (N.D. Cal. July 17, 2024) ...................................... 12

*Lopez v. Cardenas Markets, LLC*,
   No. 2:21-cv-1915, 2023 WL 3182658 (D. Nev. May 1, 2023) ........................................ 11

*Maziar v. City of Atlanta*,
   No. 21 Civ 2172, 2024 WL 2928534 (N.D. Ga. June 10, 2024) ...................................... 12

*In re Meta Pixel Healthcare Litigation*,
   No. 22 Civ. 3580 (N.D. Cal. Feb. 20, 2025)................................................................... 15

*Muhammad v. Walmart Stores, Inc.*,
   No. 19-cv-7970, 2022 WL 4292341 (S.D. Cal. Sep. 15, 2022)......................................... 4

*Scalia v. County of Kern*,
   658 F. Supp. 3d 809 (E.D. Cal. 2023)....................................................................... 11, 12

*Smahi v. STMicroelectronics, Inc.*,
   789 F. Supp. 3d 690 (N.D. Cal. 2025) ......................................................................... 13

*Small v. Univ. Med. Ctr.*,
   No. 2:13-cv-0298, 2018 WL 3795238 (D. Nev. Aug. 9, 2018)..................................... 7, 9

*Waymo LLC v. Uber Techs., Inc.*,
   No. 17-cv-939, 2018 WL 646701 (N.D. Cal. Jan. 30, 2018)............................................ 4

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) ................................................................................... 4

*Zubulake v. UBS Warburg*,
   229 F.R.D. 422 (S.D.N.Y. 2004) ................................................................................... 9

iii

*FEDERAL RULES*

Fed. R. Civ. P. 37 .................................................................................................................. *passim*

iv

**INTRODUCTION**

Meta's opposition concedes or is silent on the key elements the Court must find to grant Plaintiff's spoliation motion.

*First*, Meta concedes that it owed a duty to preserve beginning in 2019. Meta quibbles about the scope of this duty, but its argument misstates the law and ignores the facts. The law requires preservation of data that a party reasonably should know is relevant to any party's claims or defenses; that duty has never been limited only to issues supposedly "focused on" in pre-filing communications or early filings. Here, Meta surely knew that it would assert a defense under Section 230, the longstanding, foundational, legally infamous pillar of its litigation defense playbook (which it routinely invoked in other cases during the same period). And Meta also knew that material contribution would be central to this defense here (after all, the case has always concerned Meta's co-development and co-creation of Scam Ads). Indeed, Meta raised the same defense in its 2022 demurrer, arguing that it had not materially contributed to the Scam Ads. Yet in the face of all this, Meta's opposition has nothing to say about its own defense and its own filing.

*Second*, Meta claims it "has continuously taken reasonable steps to preserve information," but its opposition shows the very opposite. Meta identifies not one actual step it took to preserve relevant data for nearly *four years* after it concedes a duty arose. With respect to final rendered Scam Ads, Meta claims that it never had them and that it would be technically impossible to preserve them or the instructions used to render them. But Meta's own declarations establish that rendering occurs within Meta's software ecosystem (including its mobile apps and website), that Meta can and does beam data about rendered impressions back to its own servers, and that it simply chose to sample those efforts for other purposes and do nothing to meet its duty to preserve relevant data here. When put to the test, Meta does not claim it tried and failed. It simply did not try.

As for the relevant tables in Meta's data warehouse, Hive, which Meta admits it auto-deleted, Meta's current counsel at Paul, Weiss take pains to note that the firm was not engaged until June 2024. But the duty to preserve runs to the party. And although counsel claims to have gotten up to speed on prior preservation efforts, counsel's declaration tellingly does not describe any such efforts. Even after 2024, the preservation efforts Meta does describe, on closer review,

1

evince a pattern of obfuscation and delay. Counsel discovered the fct_creative_delivery_metrics table (which Meta calls the "Delivery Table") in April 2025, but did not disclose to Plaintiff until July 2025 that most of the relevant data in that table had already been deleted. Counsel discovered the ad_convs_annotated_v2_offsite table in May 2025 but describes no steps to preserve it. Counsel discovered the ad_post_impression_rendering_validation table and the ad_client_render_events table (which Meta calls the "Post-Impression Tables") at some point— Meta still does not reveal when—and claims their contents had already been deleted. Although the opposition frames each of these belated discoveries as something that "Meta identified," Meta does not contain such multitudes: Meta created these tables, decided what data to capture in them, and used them regularly for data analytics—so Meta could not "discover" what its employees already knew. Rather, what these statements about belated discovery suggest is that Meta apparently kept these relevant data sources from its counsel for months or years and, in many instances, until the relevant contents had been wiped. That is an admission of spoliation, not a defense to it.

*Third*, there is no substitute for the spoliated data, and it cannot be restored or replaced through additional discovery. Meta's opposition concedes that there is no substitute for the final rendered Scam Ads or data sufficient to recreate them, acknowledging that "only Final Rendered Ads would show what a final delivered alleged Scam Ad looked like to an end-user." As for the Hive tables, Meta limits its "fair substitute" argument to the Delivery Table, pointing to other data that show only "the menu of eligible optimizations that *were generated and could be applied*"— not which ones actually were applied and what they did. Meta's opposition reveals (for the first time, we might add) that that the Post-Impression Tables captured "the optimizations that were applied to the ad for a given impression's delivery," the very data Plaintiff needs. And those tables existed in 2019 and throughout this litigation. Alas, Meta chose not to preserve those either.

Tellingly, Meta agrees that an inference is appropriate, at least under Rule 37(e)(1), effectively conceding the existence of significant prejudice. While Plaintiff agrees that such an inference is appropriate (and therefore requested a similar one in his motion), Meta's proposal is not sufficient to cure the full prejudice flowing from Meta's misconduct: a spoliation finding is required and should be entered now; the scope and gravity of Meta's spoliation conduct merit a

finding that a genuine issue of material fact exists; and Plaintiff is further entitled to costs.

In addition, Meta acted with intent as set forth under Rule 37(e)(2), and so an adverse inference and corresponding jury instruction are appropriate under that provision. Meta's pattern of failure over more than six years, its false representations to Plaintiff and the Court, its deletion of Hive tables pursuant to retention policies it set unilaterally, and prior sanctions in other cases based on similar conduct more than suffice to establish the requisite state of mind.

For the reasons explained below and in Plaintiff's motion, Plaintiff respectfully requests that the Court enter an order finding that Meta spoliated evidence in violation of Rule 37(e) and imposing sanctions under Rule 37(e)(1) and Rule 37(e)(2).

## ARGUMENT

### I.     As an Initial Matter, Plaintiff's Motion Is Timely

A spoliation motion is timely if it is filed (1) within seven days of the fact discovery cutoff, *see* L.R. 37-3, and (2) "as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate," L.R. 7-8(c). Plaintiff complied with both requirements.

*First*, Meta's opposition concedes that the October discovery deadline was "extended," Opp. at 9, and Meta has acknowledged in other filings that fact discovery closed on February 13, 2026. *See, e.g.*, ECFs 298-2, 318-1 ¶ 4. Plaintiff filed his motion on February 20, 2026, one week after the close of fact discovery and four business days after Meta made its final document production and served supplemental discovery responses relevant to the spoliation issues. Quinn Decl. ¶ 43; *see Chinitz v. Intero Real Estate Servs.*, No. 18-cv-5623, 2020 WL 1308340, at *1 (N.D. Cal. Jan. 13, 2020) (explaining that, under Rule 37-3, plaintiff's motion to compel was due seven days after the "*extended* deadline for fact discovery" (emphasis added)).

*Second*, the cutoff was extended precisely because Meta was representing to the Court that its investigation was ongoing and might yield additional data. As late as November 2025, Meta's counsel told Plaintiff it would "have to see if we are able to pull the right thing" and that certain data "may be in substitute Ents" it had "identified tied to that investigation." *See* Declaration of Joanne Dela Peña ("Dela Peña Decl."), ¶ 3. Two weeks later, Meta filed a motion asking this Court for more time to "determine whether additional data exists." ECF 298 at 2. Importantly, spoliation

3

motions can be filed too early as well as too late, including "when the movant hasn't yet established that the ESI can't be restored or replaced"—"a prerequisite to obtaining relief under Rule 37(e)." *See Groves Inc. v. R.C. Bremer Mktg. Assocs.*, No. 22-cv-50154, 2024 WL 4871368, at *4 (N.D. Ill. Nov. 22, 2024). Here, because Plaintiff's spoliation motion relates to Meta's investigation and production of Scam Ad data—and because Meta did not complete that investigation and production until February 13, 2026—Plaintiff filed his motion "as soon as practicable" on February 20. *See Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-939, 2018 WL 646701, at *17 (N.D. Cal. Jan. 30, 2018) (motion timely where movant who lacked "clear view of the facts" until court-ordered production continued gathering facts for months after learning of spoliation).

Plaintiff thus meets all the factors articulated in *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 506-08 (D. Md. 2009), which courts in this Circuit apply, *see, e.g.*, *Est. of Schuck v. County of San Diego*, No. 3:23-cv-00785, 2025 WL 2180987, at *2-4 (S.D. Cal. Aug. 1, 2025). Meta's cases, in contrast, are inapposite. In *Muhammad v. Walmart Stores, Inc.*, the plaintiff knew the key facts sixteen months before filing and waited until the eve of trial. No. 19-cv-7970, 2022 WL 4292341, at *7 (S.D. Cal. Sep. 15, 2022). In *Larios v. Lunardi's Markets, Inc.*, the motion came nine months after discovery closed. 442 F. Supp. 3d 1303, 1305-06 (N.D. Cal. 2020). And in *In re Google RTB Consumer Privacy Litigation*, the plaintiff missed the discovery-motion deadline after having notice for almost nine months. No. 21-cv-2155, 2025 WL 28641, at *5 (N.D. Cal. Jan. 2, 2025). Here, Plaintiff filed within seven days of the discovery cutoff, as required by the local rule, and did not have clear notice before the end of discovery.

## II.    Meta Had a Duty to Preserve the Spoliated Data

Meta's opposition concedes that Meta owed a duty to preserve beginning in August 2019. Opp. at 13. Meta quibbles about scope, but its arguments misstate the law and ignore the record.

The law is clear that a party must preserve evidence it "reasonably should know is relevant" to "the claims or defenses of any party." *Apple, Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) (citation omitted); *Apple Inc v. Samsung Elecs. Co., Ltd.* ("*Apple I*"), 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012) (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)). And a party bears an affirmative obligation to assess and consider both. *Al*

PLAINTIFF DR. ANDREW FORREST'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS RE: SPOLIATION OF EVIDENCE | CASE NO. 22-CV-03699-PCP (VKD)

*Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 416 (S.D. Cal. 2018) ("[P]arties must . . . independently evaluate their obligation to preserve.").

Here, Meta should have concluded that the final rendered Scam Ads and associated data—including evidence of what the Scam Ads looked like and how Meta's tools acted on them—would be relevant to a case about Meta's liability for misappropriation and negligence in connection with those same Scam Ads. Independently, Meta surely knew it would assert Section 230 immunity as a defense—it did so in many other cases around the same time as a tool-of-first-resort in its litigation playbook[1]—and that issues concerning material contribution would be central to that defense here, in a case about how Meta's tools "amplify" fraudulent ads and "materially contribute[] to the[ir] content by changing [their] potency." *See* Ex. B to Brown Decl. ¶ 74 (Complaint). Indeed, Meta's own January 2022 demurrer invoked the "material contribution test" and cited Plaintiff's allegation that Meta's tools "materially contributes to the content." Ex. P, Demurrer to Am. Compl. at 7-12, *Forrest v. Facebook, Inc.*, No. 21-CIV-05055 (Cal. Sup. Ct. Jan. 18, 2022), Dkt. No. 24; *see also Gov't Emps. Health Ass'n v. Actelion Pharms. Ltd.*, 343 F.R.D. 474, 486 (D. Md. 2023) (preservation duty where evidence was potentially relevant to spoliator's defense); *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 805 (N.D. Tex. 2011) (same).

Finally, even though Meta's preservation obligations were neither constrained by an opposing party's "explicit[] request[s for] preservation" nor limited by an opposing party's articulation of the case, *Al Otro Lado, Inc.*, 328 F.R.D. at 416, Plaintiff's pre-filing letters nonetheless did address Meta's contribution to ad creation, an issue central to both Plaintiff's claims and Meta's standard-issue Section 230 defense. *See* Quinn Decl. ¶ 3; Ex. B. Meta's opposition effectively concedes as much, acknowledging that Plaintiff "contended that Meta was somehow responsible for creating these alleged Scam Ads," and referenced its tools. Opp. at 3.

Meta's silence on these key points—including its own defense, its own demurrer—is

---

[1] *See, e.g., Cross v. Facebook, Inc.*, No. CIV537384 (Cal. Super. Ct. Mar. 30, 2016), Dkt. No. 40 (raising Section 230 defense against misappropriation-of-likeness claim); *Klayman v. Zuckerberg*, 11-cv-874 (D.D.C. Apr. 13, 2012), ECF 35 (raising Section 230 defense against tort claim regarding allegedly harmful content on Facebook); *Force v. Facebook, Inc.*, 16-cv-5158 (E.D.N.Y. Jan. 13, 2017), ECF 35 (same); *Calise v. Meta Platforms, Inc.*, 21-cv-6186 (N.D. Cal. Oct. 8, 2021), ECF 20 (raising Section 230 defense to dismiss claims regarding scam advertising).

PLAINTIFF DR. ANDREW FORREST'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS
RE: SPOLIATION OF EVIDENCE | CASE NO. 22-CV-03699-PCP (VKD)

deafening. And all those points (as well as common sense) compel the conclusion that Meta's duty not only existed, but encompassed both Output Data and Actual Optimization Data, since 2019.[2]

## III.    Meta Failed to Take Reasonable Steps to Preserve

Under Rule 37(e), a party that has a duty to preserve must "take reasonable steps" to do so. Whether steps were reasonable depends on the party's "sophistication," its resources, and the "proportionality" of the preservation efforts to the case. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Meta—one of the most sophisticated ad-tech companies in the world—did not come close to satisfying these obligations.

Meta claims it "has continuously taken reasonable steps to preserve information." Opp. at 4. Neither its brief nor its supporting declarations back up that representation—in fact, they refute it. Meta points to no steps at all that it took in nearly four years between 2019 and 2023. As to final rendered Scam Ads, Meta identifies no steps ever to preserve them. And as for the optimization data, it hangs its hat on the notion that its preservation duty did not include that data until 2023. That is wrong as explained above in Section II. And the steps Meta does describe, in 2023 and after, fell far short of its obligations, as its own opposition and supporting declarations confirm.

### A.  Output Data

Meta identifies no actual steps to preserve Output Data until April 2023. Even then, Meta admits that its ninth inning efforts consisted merely of pulling "available ads and pages" when Plaintiff provided specific Scam Ad IDs that he had been able to gather on his own. Opp. at 4. Only once discovery was well underway and after months of pushing did Meta try to find Scam Ads relating to Dr. Forrest on its own, and it promptly located tens of thousands of them—proving it was always possible. ECF 186 (Joint Discovery Letter Brief Regarding Scam Ad Production); ECF 192 (Order on Joint Discovery Brief); ECF 202 (Joint Status Report explaining Meta had identified 27,150 Scam Ads). This was collection, not preservation—and belated collection at that.

More fundamentally, the ads Meta did collect were not the final rendered ads. They were

---

[2] Plaintiff's motion defines "Output Data" as "all final rendered Scam Ads, data sufficient to recreate them, and associated Hive data about these Scam Ad impressions." Mot. at 8. The motion defines "Actual Optimization Data" as "data reflecting which of [Meta's] tools and processes actually made changes to inputs to create final rendered Scam Ads." *Id.* at 9.

PLAINTIFF DR. ANDREW FORREST'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS RE: SPOLIATION OF EVIDENCE | CASE NO. 22-CV-03699-PCP (VKD)

interim drafts of ads, and Meta concedes that additional optimization occurs when an ad is rendered. Opp. at 10 n.11; Tobkes Decl. ¶ 5; Zhu Decl. ¶¶ 5, 11. To be sure, Meta insists that its preservation duties end before this final rendering step. On this telling, rendering an advertisement is much like beaming a signal into the void—once the ad-rendering process shifts to the end-user's device, Meta neither controls what happens to the ad nor can it access or retrieve data about it. *See, e.g.*, Opp. at 14. The defect in that story is simple: when Meta renders an ad on an end-user's device, it renders the ad *in its own programs*, including the Instagram and Facebook mobile and web applications. Declaration of James Mickens ("Mickens Decl.") ¶¶ 12, 15-18. Meta therefore retreats to the notion that it does not *retain* the rendering data in the ordinary course. But this is where it gets the law wrong: reasonable steps necessarily include "[s]teps . . . to suspend business as usual so that discoverable information is not lost, modified or destroyed." *Small v. Univ. Med. Ctr.*, No. 2:13-cv-0298, 2018 WL 3795238, at *60 (D. Nev. Aug. 9, 2018). And, notably, Meta does not argue that it *could not* store these instructions. *Cf.* Tobkes Decl. ¶ 7 (limiting feasibility discussion to storing "visual representations of every impression"). For good reason: While a final rendered ad might be megabytes in size in its "visual representation" form, the instructions needed to build it would be orders of magnitude smaller. Mickens Decl. ¶ 22. In fact, Meta's own documents state that it retains "cached ads"—the instructions needed to assemble ads—for a period after rendering. Mickens Decl. ¶¶ 15, 20.

At this point, Meta falls back on a technological impossibility argument, with carefully-lawyered assertions that it does not store "*complete* packages of information necessary to render each impression of an ad," so it is not possible to recreate the Scam Ads "*exactly* as they would have been rendered on an end-user's device when delivered during the relevant period." Opp. at 4-5 (emphases added). But in the end, Meta's own submission refutes its argument, in two ways.

*First*, as explained, Meta wrote the code that controls every step of the rendering process, and the rendered ads are displayed in a software ecosystem that Meta controls, too. Mickens Decl. ¶¶ 15-17. This means that when "Meta packages the components of the ad (*e.g.*, text, a link to the image or video to be displayed, optimizations) and delivers that information to the end-user's device," the "[c]ode on the end-user's device [that] then assembles and renders the ad" is Meta's

PLAINTIFF DR. ANDREW FORREST'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS RE: SPOLIATION OF EVIDENCE | CASE NO. 22-CV-03699-PCP (VKD)

code, which renders the ad within Meta's own systems. Opp. at 5; Mickens Decl. ¶¶ 15-17.

Meta's multiple software engineering declarations do not contend otherwise. To the contrary, Meta admits that it possessed the *instructions* its systems created and used to render each impression: "Meta packages all the necessary components of an ad to deliver to the end-user's device (*e.g.*, text, a link to the image or video to be displayed, optimizations to apply)." Tobkes Decl. ¶ 5. Meta's attempt to focus the Court on whether it stores or could store "visual representations of rendered impressions" is thus a red herring. Opp. at 4-5; *see also* Tobkes Decl. ¶¶ 6-7; Zhu Decl. ¶ 6-7. Meta possessed the key instructions when it "package[d]" them on its servers and it possessed them when its applications rendered the impressions. Mickens Decl. ¶ 12.

Unable to argue otherwise, Meta quickly pivots to claim—without elaboration—that even if it had these instructions, it could not "recreate a *visual representation* of any of the 28,296 alleged Scam Ads *exactly* as they would have been rendered on an end-user's device when delivered during the relevant period." Opp. at 5 (emphases added); *see also* Zhu Decl. ¶ 10 ("I am not aware of any way for Meta to *completely* recreate as of today a rendered ad *exactly* as it would have appeared on the end-user's device at the time it was delivered.") (emphases added). These statements are red herrings, too. Meta cannot deny that at the moment it rendered the impression, its software knew everything about what to display. Mickens Decl. ¶ 18. This means that the instructions, if preserved, would be sufficient to recreate how Meta intended the ad to be viewed. *Id.* ¶ 23-24. Surely it would have left Plaintiff and the Court quite better off than the current record does in addressing Meta's defense. Meta possessed this information and had a duty to preserve it.

*Second*, even if Meta's possession of the instructions and control of the software that executed them were not enough, Meta's own declarations establish that Meta can and does transmit rendering data back to its servers when it chooses to do so. Indeed, Meta has two Hive tables that contain Output Data (the ad_post_impression_rendering_validation and ad_client_render_events tables, or Post-Impression Tables), proving that it can retain data about ads after they have been rendered. *See* Opp. at 7, 8; Cheng Decl. ¶ 5. Meta elected to sample this data for its own business purposes, but not to preserve the data for purposes of this litigation. Mickens Decl. ¶¶ 27-31. Simply put, Meta had the resources and technical capacity to preserve this data. It chose not to.

8

## B.  Actual Optimization Data

Meta admits it made no effort to preserve the Delivery Table until April 29, 2025, one and a half years after it concedes it had a duty to do so in September 2023 (and nearly five and a half years after the duty actually arose in August 2019).[3] Nor did Meta take any steps to preserve the Post-Impression Tables.[4] Meta claims it should be excused for these failures because "[i]t took time to investigate Meta's complex ad creation and delivery system to understand where relevant data might be stored." Opp. at 16. This is not remotely good enough.

To start, the various discoveries attributed to "Meta" appear, in fact, to relate only to Meta's current outside counsel. Meta created and uses all these tables—it did not "discover" anything about its own existing technologies years later. Maybe its outside counsel did, which is why Paul, Weiss is careful to note it was not engaged until June 2024. Brown Decl. ¶ 2. But the duty to preserve runs to the party, not to counsel. *Zubulake v. UBS Warburg*, 229 F.R.D. 422, 436 (S.D.N.Y. 2004) ("[T]he duty to preserve and produce documents rests on the party."). And when new counsel enters a case, counsel "has an obligation to educate himself or herself about what data the client has, who has it, how it is stored, what document retention and destruction policies the client has, who has access to the data, and how it is preserved, or how it may be modified or destroyed." *Small*, 2018 WL 3795238, at *60. Counsel acknowledges the duty to get up to speed, but even after (presumably) complying with that legal duty, counsel cannot describe preservation efforts undertaken by prior counsel. *See* Brown Decl. ¶ 2. Meta's failure thus remains inescapable.

Even after June 2024, Meta's own description of its efforts begs more questions than it answers. For example, Meta claims that it (or, more accurately, its outside counsel) did not learn until March 5, 2025 that optimizations "selected during ad creation" might not actually be applied to rendered ads. Opp. at 6. But Meta ties this "realization" to allegations in the Third Amended

---

[3] Meta claims that it preserved the all_ads_details table in 2023, but that table showed only what optimizations an advertiser opted into, not what optimizations could actually be applied or were applied. Dela Peña Decl. ¶ 7. To preserve that table is to acknowledge the duty, and Meta offers no explanation for why it did not then go find tables with data on actual changes its tools made.

[4] The Post-Impression Tables fall within Plaintiff's definition of "Output Data," *see* Mot. at 8, but Meta's opposition reveals that they also contain data about optimizations that could constitute "Actual Optimization Data." Opp. at 20; Cheng Decl. ¶ 5.

9

Complaint—which was filed in December 2023, 15 months earlier. Meta does not explain the gap. Meta also claims that it discovered the Delivery Table in April 2025, but it did not disclose it to Plaintiff until July 2025. Meta offers no explanation for this gap, either. That is not a record of reasonable efforts, but of piecemeal and half-hearted ones, accompanied by obfuscation and delay.

**IV.    There Is No Substitute for the Spoliated Data, and It Cannot Be Restored or Replaced**

Meta does not identify a substitute for any of the categories of data it destroyed: the final rendered Scam Ads, data sufficient to recreate them, the Post-Impression Tables, or the Delivery Table. As to the first three, Meta does not even purport to provide a substitute. *See* Opp. at 17-19. With respect to final rendered Scam Ads and data sufficient to recreate them, Meta does not argue that any substitute exists. To the contrary, Meta concedes that "only Final Rendered Ads would show what a final delivered alleged Scam Ad looked like to an end-user." Opp. at 17. And as to the Post-Impression Tables, Meta's opposition reveals—for the first time—that these tables captured "the optimizations that were applied to the ad for a given impression's delivery." Cheng Decl. ¶ 5. That is precisely the data Plaintiff needs: not what optimizations were enabled, not what optimizations could have been applied, but what optimizations were actually applied to ads actually rendered to users. And unlike the Delivery Table, which Meta claims was not created until March 2023, Opp. at 15, the Post-Impression Tables would have spanned nearly all the relevant period, *see* Cheng Decl. ¶ 4 (explaining that these tables were created in August and December 2019, respectively). But in contravention of its legal obligations, Meta did not preserve the Post-Impression Tables. Meta's opposition claims that outside counsel were not aware of those tables until Meta had already deleted the relevant data. Opp. at 8; Cheng Decl. ¶ 8. Meta thus destroyed the next-best evidence available in light of its failure to preserve the final rendered Scam Ads or instructions used to render them. That is a confession of spoliation, not a defense against it.

Ultimately, Meta limits its "fair substitute" argument to the Delivery Table, pointing to other optimization data and offering a proposed inference to help "replace the optimization data that was not retained from the Delivery Table." Opp. at 19. But the other tables that Meta cites show only the optimizations that could have been applied—not which ones actually were applied and what they did. Opp. at 20 (acknowledging that these tables "only identify *whether* an

PLAINTIFF DR. ANDREW FORREST'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS
RE: SPOLIATION OF EVIDENCE | CASE NO. 22-CV-03699-PCP (VKD)

optimization was utilized, and do not provide any information regarding the actual execution of the optimization"). Yet again, this is an admission of a gap rather than a substitute for one.[5] And Meta's proposal that the Court adopt an inference to help "replace the optimization data that was not retained from the Delivery Table," Opp. at 19, effectively concedes that there is no substitute.

## V.    Meta's Spoliation Caused Prejudice that Meta's Proposed Inference Does Not Cure

Under Rule 37(e)(1), if the Court finds that the loss of information has prejudiced Plaintiff, the Court may impose sanctions to cure the prejudice. Meta agrees that an inference is appropriate—at least under Rule 37(e)(1)—conceding that significant prejudice exists. But Meta's proposed inference is not sufficient. As an initial matter, although Meta's proposed inference is similar to the one that Plaintiff requested in his spoliation motion, the Court should modify the language to clarify ambiguities. *See* Suppl. Quinn Decl. ¶ 19 (setting forth proposed inference with Plaintiff's revisions).  More fundamentally, Meta's proposal falls short in four principal respects.

*First*, a spoliation finding is required and should be entered now. The Local Rules require that spoliation motions be filed promptly so that the issue can be resolved while the facts are clear. *See* L.R. 7-8(c). The facts are clear. Meta had a duty to preserve; the evidence was lost because Meta failed to do so; the evidence is gone and cannot be restored or replaced through additional discovery; and Plaintiff has been prejudiced. Finding those facts now is particularly important because this case is in Phase 1, with dispositive motions, additional discovery in Phase 2, and trial proceedings all still ahead. The gap created by Meta's spoliation will persist, and its consequences may compound. A finding now would establish the baseline against which future issues can be

---

[5] Meta's attempt to cast away *Scalia v. County of Kern*, which held that an adverse jury instruction is warranted where there is not a "complete and fair substitute" for relevant evidence, fails on two counts. 658 F. Supp. 3d 809, 816 (E.D. Cal. 2023); *see* Opp. at 17 n.15. First, Meta mischaracterizes *Scalia*'s standard. What constitutes a "complete and fair substitute" for relevant evidence is not whether "the substitute evidence [is] categorically different from the lost evidence," as Meta suggests. Rather, evidence is not a "complete and fair substitute" if it cannot provide the same "level of objective information" about the contested issues that the destroyed evidence would have. *Scalia*, 658 F. Supp. 3d at 816. Second, it is irrelevant that "Rule 37(e) does not contain" *Scalia*'s precise language. Opp. at 17 n.15; *see also Lopez v. Cardenas Markets, LLC*, No. 2:21-cv-1915, 2023 WL 3182658, at *6 (D. Nev. May 1, 2023) (referencing "complete and fair substitute" standard); *Est. of Schuck*, 2025 WL 2180987, at *8 (same). *Scalia*'s standard simply operationalizes Rule 37(e)'s requirement that the ESI is "lost" and cannot be "replaced through additional discovery." *See* Fed. R. Civ. P. 37(e).

11

assessed. Indeed, even Meta admits that a spoliation ruling would provide "clarity about the scope of the evidentiary record," which would benefit the parties and factfinder in later stages of the case. ECF 318 at 5. A finding would also serve the public interest in a clear record of what occurred. *See Apple I*, 881 F. Supp. 2d at 1134 n.4 (noting compelling public interest in spoliation case).

*Second*, given the scope and gravity of Meta's spoliation and the resulting prejudice to Plaintiff, the only adequate cure is a finding that a genuine issue of material fact exists with respect to Meta's Section 230 defense. Indeed, even with Meta's proposed inference, the spoliation of ad data forces Plaintiff to rely on generic evidence explaining how these optimizations were designed and programmed. *See Scalia*, 658 F. Supp. 3d at 816. This is much like attempting to describe and analyze a painting only by reading an entry from the painter's diary describing the subject of the painting, the position of the subject, and the types of paint the painter intended to use, but with no opportunity to actually view the painting for oneself. Mickens Decl. ¶ 25. The real cure to this prejudice is a finding that a genuine issue of material fact exists, essentially deciding Meta's forthcoming summary judgment motion in Plaintiff's favor. Mot. at 16-17; *see Maziar v. City of Atlanta*, No. 21 Civ. 2172, 2024 WL 2928534, at *5 (N.D. Ga. June 10, 2024) (denying summary judgment because spoliation "deprives [the adverse party] of access to other evidence that may have created disputed issues of material fact").

*Third*, Meta should be precluded from using the absence of missing data to its advantage, at both summary judgment and at trial. This is the same sanction imposed in *Lopez v. Apple* pursuant to Rule 37(e)(1), where the court held that "Apple should be precluded from affirmatively arguing or otherwise using Plaintiffs' failure to make certain showings that they could have made if they had access to the deleted . . . data." *Lopez v. Apple, Inc.* (*Lopez*), No. 19 Civ. 4577, 2024 WL 4561320, at *9 (N.D. Cal. July 17, 2024); *see also* Mot. at 17.

*Fourth*, Plaintiff is entitled to costs. Meta's preservation failures have forced Plaintiff to expend substantial resources over many months: pursuing discovery, pressing Meta to investigate, analyzing piecemeal productions, and ultimately bringing this motion. Those costs are compensable under Rule 37(e)(1), and the Court should award them.

## VI.    Meta Acted with Intent, and an Adverse Inference Under Rule 37(e)(2) Is Warranted

If this Court makes a factual finding that a party "acted with the intent to deprive another party of [] information's use in the litigation," Rule 37(e)(2) authorizes the Court to instruct the jury that it "may or must presume" the lost evidence "was unfavorable to the party" that failed to preserve it. Plaintiff has met that standard and requests an appropriate adverse inference.

### A.  Meta Acted with Intent

Meta's opposition ignores or concedes many of the key points establishing the requisite intent. So, Meta tries to shift the standard. But Rule 37(e)(2) does not require Plaintiff to show that Meta *affirmatively* deleted any data, contrary to Meta's suggestion. *See* Opp. at 22 ("Plaintiff presents no evidence that Meta took any affirmative steps to delete the Post-Impression or Delivery Tables."). Rather, the test for intentional spoliation is whether Meta acted with an "intent to deprive [Plaintiff] of the information's use in the litigation"—whether by affirmatively deleting the evidence, allowing it to be auto-deleted, or otherwise causing it to be "lost." Fed. R. Civ. P. 37(e)(2). Under the preponderance of the evidence standard that applies to spoliation motions, *Smahi v. STMicroelectronics, Inc.*, 789 F. Supp. 3d 690, 694 (N.D. Cal. 2025), the Court should conclude that there is sufficient circumstantial evidence proving Meta's acted with an intent to deprive Plaintiff of the use of the spoliated evidence. *See Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024) ("Because intent can rarely be shown directly, a district court may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions."). Four distinct points powerfully support this conclusion.

*First*, Meta's pattern of failure over six years is itself evidence of intent. Meta concedes that its duty arose in August 2019. Opp. at 13. It identifies no preservation steps for Output Data until April 2023, and no steps for Actual Optimization Data until September 2023—four years into the litigation. Even after September 2023, Meta's efforts were marked by lengthy delays in identifying and preserving relevant tables, months-long delays between identifying tables and disclosing them, and piecemeal productions and preservation that continued through the close of discovery. In short, Meta engaged in over six years' worth of purposeful actions and omissions, resulting in the widespread deletion of relevant data, including during the pendency of this case.

PLAINTIFF DR. ANDREW FORREST'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS RE: SPOLIATION OF EVIDENCE | CASE NO. 22-CV-03699-PCP (VKD)

This pattern of behavior supports a finding of intent. *See First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, No. 15-CV-1893-HRL, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016).

*Second*, Meta made repeated representations to Plaintiff and to this Court that it was preserving relevant data and investigating what additional data might exist—while in fact it was doing neither. In a hearing before Judge Davila in March 2023, Meta's counsel stated: "[W]e're taking the steps required under Rule 37 and 34 to make sure that we're preserving everything that is relevant and responsive based on what they've already—the super broad request that they have already asked of us and what we think is important there." Quinn Decl. ¶ 7; 3/23/23 Tr. 38:11-15. Meta's only response is that this statement does not establish that Meta knew that it was failing to preserve relevant data or that it believed it was not complying with its preservation obligations, pointing to the fact that a single Hive table (the Delivery Table) was not created until after the hearing. Opp. at 23. But that does not explain why Meta failed to preserve the remainder of the Scam Ad data, particularly since it had already asserted its Section 230 defense.

Unsurprisingly, Meta seeks to downplay its many months of representations that it was preserving all inputs and outputs and had retained the final ads. *See* Opp. at 23. Meta presents this exchange as consisting of a single misstatement in January 2025 followed by a correction in July. But that timeline leaves out most of the story. Rather, Plaintiff followed up repeatedly throughout late 2024 and the first half of 2025 to confirm that Meta was preserving all inputs and outputs, including final rendered Scam Ads, and Meta insisted throughout this period that it was complying with its preservation obligations and had "retain[ed] versions of an ad once the advertiser has published it, which would include those displayed to end users." Suppl. Quinn Decl. ¶¶ 8-13; Quinn Decl. ¶ 14 & Ex. G at 2; *see* Mot. at 5. Even as late as August, Meta's counsel assured the Court its productions would be "sufficient for them [Plaintiff] to understand what they're interested in with respect to optimizations." 8/12/25 Tr. at 40:18-22. But that was unfortunately not the case.

*Third*, Meta's opposition reveals that it deleted the contents of the Post-Impression Tables pursuant to a retention policy it set unilaterally long after it concedes its preservation duty applied (including specifically to data like this). Meta offers no cognizable justification for that newly revealed (and seemingly ongoing) spoliation. Meta knew these tables existed. Meta knew they

14

contained data about optimizations applied to rendered ads. Meta let them be wiped by its own policies and systems. That establishes intent. *See Jones*, 95 F.4th at 735 (looking to "the timing of the destruction" and "selective preservation").

*Fourth*, Meta has been sanctioned or criticized for similar preservation failures in other litigation. *See* Order, *In re Meta Pixel Healthcare Litigation*, No. 22 Civ. 3580 (N.D. Cal. Feb. 20, 2025), ECF 880; *BlackBerry Ltd. v. Facebook, Inc.*, No. 18 Civ. 1844, 2019 WL 13447227, at *6-7 (C.D. Cal. Sep. 30, 2019); *In re Facebook, Inc. Derivative Litig.*, C.A. Cons. No. 2018-0307 (Del. Ch. Jan. 21, 2025); *cf. Order, In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899 (N.D. Cal. 2023) (sanctioning Meta for bad-faith conduct in discovery). A party that has been told by other courts that its preservation practices are deficient, and that nonetheless fails to preserve in subsequent and concurrent litigation, cannot credibly claim naïve innocence.

### B.  An Adverse Inference and Accompanying Instruction Are Warranted

Because Meta acted with the required intent, additional sanctions are warranted under Rule 37(e)(2). As an initial matter, Meta obliquely suggests that the detailed inference Plaintiff sought pursuant to Rule 37(e)(2) should instead be granted under Rule 37(e)(1). *See* Opp. at 19. As a result, Meta drafted its proposed inference in neutral terms—omitting any mention of its spoliation. Plaintiff would rather have the inference than not, under either provision of Rule 37. But in practice, the inference is an adverse one. As Meta admits, "Plaintiffs will be permitted to assume that a broader set of optimizations than what would have been identified in the Delivery Table was utilized by the alleged Scam Ads." Opp. at 19. And, for the reasons above, the intent required to cast the inference as an adverse one is amply established. *See supra* Section VI.A.

But that is not the end of things. Meta ignores that Plaintiff requested an adverse inference at trial too, along with a jury instruction: that the jury may presume the spoliated Output Data and Actual Optimization Data would have been unfavorable to Meta on the question of material contribution. Meta's opposition is silent on this request, which we submit the Court should grant.

### CONCLUSION

The Court should grant Plaintiff's motion and order additional proceedings regarding Plaintiff's request for fees.

Dated: April 7, 2026                    Respectfully submitted,

/s/ John C. Quinn
_____
John C. Quinn (*pro hac vice*)              Leslie Brueckner (SBN: 140968)
jquinn@heckerfink.com                       lbrueckner@singletonschreiber.com
Hyatt Mustefa (*pro hac vice*)              **SINGLETON SCHREIBER, LLP**
hmustefa@heckerfink.com                     591 Camino de la Reina, Suite 1025
Jocelyn Hassel (*pro hac vice*)             San Diego, CA 92108
jhassel@heckerfink.com                      Telephone: (619) 573-1851
Tayonna Ngutter (*pro hac vice*)
tngutter@heckerfink.com                     Elizabeth Ryan (*pro hac vice*)
Tanveer Singh (*pro hac vice*)              eryan@baileyglasser.com
tsingh@heckerfink.com                       **BAILEY & GLASSER LLP**
**HECKER FINK LLP**                         176 Federal Street, 5th Floor
350 Fifth Avenue, 63rd Floor                Boston, MA 02110
New York, NY 10118                          Telephone: (617) 439-6730
T: 212.763.0883

                                            Derek G. Howard (SBN: 118082)
Joshua Matz (*pro hac vice*)                derek@derekhowardlaw.com
jmatz@heckerfink.com                        **DEREK G. HOWARD LAW FIRM, INC.**
Kaitlin Konkel (*pro hac vice*)             42 Miller Avenue
kkonkel@heckerfink.com                      Mill Valley, CA 94941
Joanne Grace Dela Peña (*pro hac vice*)     Telephone: (415) 432-7192
jdelapena@heckerfink.com                    Facsimile: (415) 524-2419
Brian Remlinger (*pro hac vice*)
bremlinger@heckerfink.com
**HECKER FINK LLP**
1050 K Street NW | Suite 1040
Washington, DC 20001
T: 212.763.0883

*Attorneys for Plaintiff Dr. Andrew Forrest*

PLAINTIFF DR. ANDREW FORREST'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS
RE: SPOLIATION OF EVIDENCE | CASE NO. 22-CV-03699-PCP (VKD)